IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-0106C<br>(Chief Judge Damich) |

DEFENDANT'S SUPPLEMENTAL STATUS REPORT

Pursuant to this Court's February 22, 2006 order, defendant, the United States, ("the Government") submits this supplemental status report. The Court directed the Government to explain why the Court should determine whether the Department of Energy ("DOE") is required to accept Greater-Than-Class-C waste ("GTCC") pursuant to the Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 10 C.F.R. § 961.11 ("Standard Contract"), before fact discovery begins in this case.

As discussed below, the Government believes that both parties would benefit if the GTCC issue were resolved early in the litigation process rather than after trial. Although it is the Government's preference that the GTCC issue be resolved before fact discovery ever begins, the Government, after consideration, will not object to having this matter briefed and decided early in the discovery process, even though the parties have agreed that fact discovery would begin with the exchange of initial disclosures on July 28, 2006. Nevertheless, in accordance with the spirit of the Court's order, we address the reasons that this issue is important to this litigation.

## DISCUSSION

### I. WHETHER GTCC IS COVERED BY THE STANDARD CONTRACT INFLUENCES BOTH THE FORMULATION OF THE CLAIM AS WELL AS THE GOVERNMENT'S DEFENSES

The GTCC issue should be decided early in this case, regardless of how that issue is ultimately decided, because that issue influences both parties in the conduct of this litigation. If DOE were required to accept GTCC pursuant to the Standard Contract, it would affect the manner in which the queue for acceptance of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") is calculated and, ultimately, the date on which the last SNF would have been removed from Dairyland Power Cooperative's plant in the but for world. Alternatively, if GTCC waste is not covered by the Standard Contract, the GTCC issue presents an affirmative defense to Dairyland's claim.

#### A. Whether GTCC Waste Is Covered By The Standard Contract Affects The Date In Which DOE Was Required To Accept The Last Of Dairyland's Waste In The But For World

The Standard Contract does not identify a particular rate of SNF and HLW acceptance, but provides for DOE's periodic issuance of annual capacity reports ("ACRs") and acceptance priority rankings ("APRs"), followed by various submissions and approvals resulting in an acceptance schedule. The ACR specified, in metric tons of uranium ("MTUs"), the quantity of SNF and HLW that DOE would collectively accept from all of the contract holders in a given year. Beginning January 1, 1992, contract holders were required to submit delivery commitment schedules ("DCSs") identifying the SNF and/or HLW that the contract holder wanted DOE to accept in accordance with the allocation specified in the 1991 ACR. The Standard Contract also provides a framework for determining the order of acceptance based upon the age of the SNF as

calculated from the date of discharge of such material from the civilian nuclear power reactor. 10 C.F.R. § 961.11, Art. VI.B.1. Thus, the order of DOE's acceptance is generally based upon an "oldest fuel first" scenario. Together, this process establishes a queue composed of specific allocations of the quantity of each contract holder's waste that DOE will accept at a particular time.

If GTCC is included in the quantity of waste that DOE is required to accept pursuant to the Standard Contract, each allocation has to be adjusted to take account of GTCC and the age of that GTCC.[1] Because DOE is only capable of accepting a fixed amount of waste each year, adding the quantity of any utility's GTCC to the allocation that DOE is required to accept in a given year would have a ripple effect upon all those contract holders that have a later place in the queue. Although DOE has, in the past, published an acceptance queue in the ACRs based upon the age of the nuclear industry's SNF, as reported by each of the contract holders, that queue does not include GTCC. Accordingly, GTCC would have to be incorporated into that schedule, based upon the age of each piece of GTCC. If a piece of GTCC is older than some of the SNF in the current acceptance queue, all of that newer SNF would have to be displaced from its current position in the queue and a new queue established. This displacement would have the effect of moving many contract holders' acceptance rights further down the acceptance queue into later years than currently identified.

Dairyland presents a case that is particularly sensitive to this issue. Dairyland is presently storing its SNF in a spent fuel pool. Because the cost of maintaining a spent fuel pool is

---

[1] Technically, GTCC is not "discharged" from the reactor because the majority of it comes from decommissioning a nuclear reactor. The age of GTCC is a question that needs to be determined if it is covered by the Standard Contract.

essentially the same whether the pool is full or nearly empty, damages arising from the cost of operating a spent fuel pool longer than if DOE had performed are driven by the date on which the last of Dairyland's waste would have been removed by DOE in the "but for" world. Consequently, even a slight change in the quantity of waste that DOE was required to accept pursuant to the Standard Contract could have a significant effect upon the size of Dairyland's claim. Additionally, if DOE is required to accept GTCC pursuant to the Standard Contract, analysis of the "but for" world is more complicated because it requires analysis of the effect of that determination upon the entire queue. In other words, we would not only have to consider how much Dairyland's GTCC would affect the quantities of waste that DOE would have accepted from Dairyland in the "but for" world, but we would have to perform an analysis of how DOE's acceptance of GTCC from the other utilities with places in the queue that are ahead of Dairyland's would affect the removal of the last of Dairyland's waste. This complex analysis takes time and requires that the Government gather information, possibly from utilities other than Dairyland.[2] Therefore, resolution of the GTCC issue early in the litigation process would provide sufficient time to permit us to gather this information and perform this analysis.

B. If GTCC Is Not Covered by the Standard Contract, That Issue Presents a Powerful Affirmative Defense To Dairyland's Claim

GTCC waste is a form of low-level radioactive waste that contains concentrations of certain radioactive nuclides, such as Cesium-137 or Carbon-14, that exceed the concentration limits established by the Nuclear Regulatory Commission ("NRC") for Class C waste. See 10 C.F.R. § 61.55; see also 10 C.F.R. § 61.2 (definition of "waste"). Low-level radioactive waste is

[2] We are not currently aware of a central location at which information about all nuclear utilities' GTCC exists.

classified as GTCC waste if it exceeds the Class C concentration limits for either the long-lived radionuclides contained in Table 1 of 10 C.F.R. § 61.55 or the Class C limits for the short-lived radionuclides contained in Table 2 of 10 C.F.R. § 61.55. In general, reactor-related GTCC wastes can be grouped into two categories. The first, which is the more typical form, is activated metals components from nuclear reactors such as core shrouds, support plates, nozzles, core barrels, and in-core instrumentation. The second is process wastes such as filters and resins resulting from the operation and decommissioning of reactors. In addition, there may be a small amount of GTCC waste generated from other activities associated with the reactor's operation (e.g., reactor start-up sources). 66 Fed. Reg. 51,823, 51,824 (Oct. 11, 2001). Thus, GTCC waste from nuclear utilities primarily arises when the utility decommissions its plant.

Even though plaintiff utilities have uniformly argued that DOE is required to accept GTCC waste pursuant to the Standard Contract, the Government has always contended that GTCC is not.[3] Thus, any Standard Contract claim for the cost of storing GTCC cannot be allowed. Because most GTCC waste arises only after operations have ceased, the GTCC issue has been avoided in cases involving operating utilities. See Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 673 (2004) ("Indeed, it is not apparent that TVA has produced any GTCC waste that is subject to disposal in light of the fact that its power plants remain in operation."); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656-59 (2003). However, in the cases involving shutdown utilities, the GTCC issue has been a powerful

---

[3] In fact, GTCC is covered by another statute altogether, the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("LLRWPA"), Pub. L. No. 99-240 (codified at 42 U.S.C. §§ 2021b-2021i).

affirmative defense to the utility plaintiff's claims regarding SNF storage costs. See Defendant's Initial Post-Trial Brief at pp. 73-79, Yankee Atomic Electric Company v. United States, (No. 98-126). Even in a case in which the shutdown utility claimed that GTCC storage costs were not included in its claim, the Government has argued that the GTCC issue negated much of the plaintiff utility's claim. See Defendant's Post-Trial Brief at pp. 80-85, Sacramento Municipal Utility District v. United States, (No. 98-488). The GTCC issue is critical in any case in which the plaintiff utility claims that, had DOE performed in accordance with the Standard Contract, it would have avoided costs because, so long as the utility has to store GTCC as well as SNF, those costs would have been incurred regardless of whether DOE had timely performed.

Dairyland ceased operating its nuclear power plant in April 1987 and is currently storing 37 MTUs of SNF in its spent fuel pool. Apparently, after shutting down, Dairyland's nuclear operations were placed in SAFSTOR - a decommissioning process that involves the gradual dismantlement of its nuclear plant. NRC records indicate that, at some point in the future, Dairyland plans to send its reactor pressure vessel to the low-level waste facility in Barnwell, South Carolina. After reviewing the available information regarding the waste that Dairyland possesses, it remains unclear whether Dairyland has any GTCC in its pool. Nevertheless, we hope to promptly resolve this factual issue.

If, in the "but for" world, Dairyland's SNF would have been completely removed by the time its complaint was filed, its continued storage of any GTCC would negate many of its claimed storage costs. Thus, to the extent that Dairyland possesses GTCC, the GTCC issue will have a profound effect upon the degree to which DOE's delay affected Dairyland's costs.

Case 1:04-cv-00106-EJD Document 32 Filed 03/16/2006 Page 7 of 8

CONCLUSION

For these reasons, we believe that it would assist in rendering discovery more efficient if the Court decided the GTCC issue early in this discovery process. We anticipate that, with the Court's permission, we could file a motion regarding the GTCC issue on or before May 1, 2006.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-9640
Fax: (202) 514-8640

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 16, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 16th day of March 2006, a copy of foregoing "DEFENDANT'S SUPPLEMENTAL STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Russell A. Shultis