IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | Filed electronically: March 23, 2006 |

DAIRYLAND POWER COOPERATIVE'S RESPONSE TO
DEFENDANT'S SUPPLEMENTAL STATUS REPORT

Plaintiff Dairyland Power Cooperative ("Dairyland") respectfully submits its response to defendant, the United States's March 16, 2006 supplemental status report concerning Greater-Than-Class-C ("GTCC") waste issues.

In its February 22, 2006 order, the Court asked the government to address why resolution of the question of whether GTCC waste is covered by the DOE spent fuel contract should necessarily be resolved prior to the start of fact discovery in this case. In its supplemental status report, the government states that it now agrees with Dairyland's position and no longer has any objection to commencing fact discovery prior to resolution of the GTCC waste issue, although the government would still like this issue to be decided "early in the discovery process." The government's belated concession means that there is no longer any dispute between the parties with regard to Dairyland's proposed schedule set forth in the parties' January 20, 2006 Joint Preliminary Status Report ("JPSR").

Dairyland, a relatively small company with limited resources, reiterates its request that a trial date in this case be set now, preferably during the Fall of 2007, in order to help prevent unfocused and inefficient discovery efforts. In accordance with a Fall 2007 trial date, Dairyland proposed in the JPSR that discovery commence on July 28, 2006, with the exchange of initial disclosures. However, due to the delay in setting the trial and discovery schedule and the fact that Dairyland's counsel is currently immersed in preparations for the trial of the *PG&E* spent fuel case scheduled for June 2006, Dairyland now believes that, if a Fall 2007 trial date is set, fact discovery in this case should not commence earlier than August 28, 2006, and each of the dates in Dairyland's proposed discovery and pretrial scheduling plan set forth in section (j) (pp. 17-18) of the JPSR should accordingly be pushed back by one month. Furthermore, although the government requests that the GTCC issue be decided "early in the discovery process" and proposes filing a summary judgment motion regarding this issue on or before May 1, 2006, due to the *PG&E* trial and post-trial briefing in that case, Dairyland's counsel will not be in a position to respond to such motion until the Fall of 2006, *i.e.*, after the commencement of discovery under Dairyland's proposed schedule.

The government spends the bulk of its supplemental status report unnecessarily posturing about why it believes the GTCC issue needs to be "resolved" early in the discovery process, although not before the commencement of discovery. The government's arguments, however, are based upon erroneous assumptions and fail to demonstrate how the GTCC waste issues present a pure question of law that can be resolved on summary judgment.

## DISCUSSION

### I. EVEN IF THE QUESTION OF WHETHER GTCC WASTE IS COVERED BY THE DOE CONTRACT CAN BE RESOLVED ON SUMMARY JUDGMENT, THE IMPACT OF SUCH DECISION ON DAIRYLAND'S DAMAGES CLAIM NECESSARILY INVOLVES OTHER DISPUTED FACTUAL ISSUES THAT CANNOT BE RESOLVED ON SUMMARY JUDGMENT

The government argues that whether GTCC waste is covered by the DOE spent fuel contract is an issue that can and needs to be decided early in this case because this issue, regardless of how it is decided, will allegedly influence how the parties will conduct this litigation. This argument erroneously presupposes that (i) Dairyland in fact has GTCC waste, (ii) the storage costs associated with such waste are essentially equivalent to the costs that have been incurred by Dairyland for storing its spent fuel as a result of the government's breach, and (iii) DOE would not have removed GTCC waste from Dairyland's site when DOE picked up Dairyland's spent fuel or it would not have removed it in time for Dairyland to avoid incurring any storage costs. However, the first of these issues is plainly a question of fact, and the latter two involve factual disputes between the parties, none of which can be resolved on summary judgment, no matter if the motion is made early or late in the discovery process, and regardless of whether or not GTCC waste is covered by the DOE contract.

#### A. Dairyland Does Not Believe it Has Any GTCC Waste

As previously discussed in the JPSR and at the February 8, 2006 preliminary status conference, to the best of Dairyland's knowledge at this time, it *has no GTCC waste*, or any damages to store it. Furthermore, Dairyland does not anticipate knowing for sure whether it has any GTCC waste until June 2007 at the earliest, when it is scheduled to remove its spent fuel from its pool. Once the spent fuel and the racks that

hold the spent fuel are removed, the bottom of Dairyland's spent fuel pool will be inspected to determine if there is any GTCC waste present there.[1]

But even in the event DPC does discover more than a year from now that it actually has GTCC waste, it will almost certainly be a very small quantity, and Dairyland expects that this waste would be stored on-site in a small shielded canister within the containment facility with minimal security and at modest cost. Put another way, even if Dairyland has some GTCC waste, and even if GTCC waste is not covered under its DOE contract and would not have been picked up anyway by DOE (as discussed below), Dairyland contends it would have incurred very little or perhaps no incremental cost to store such waste if the government had picked up Dairyland's spent fuel as required and left the GTCC waste "stranded" at Dairyland's site. The government's assertion that Dairyland's damages "disappear" if it turns out that it in fact has GTCC waste has no basis in reality.

B. Whether and When the Government Would Have Picked up GTCC Waste Are Issues of Fact

The government presents the question of whether it is obligated to pick up GTCC waste under the DOE contract as a pure question of law that, once it is decided, necessarily resolves the question of whether in fact the government would have picked up GTCC waste in the non-breach world. Dairyland, however, contends that, whether or not GTCC waste is covered by the contract (Dairyland believes it is), DOE would still have picked it up as a matter of fact at the same time it picked up the utilities' spent fuel pursuant to its undisputed obligation to accept GTCC waste under the Low-Level

[1] In addition, some decommissioning reactors have GTCC waste because they remove the reactor internals from the reactor pressure vessel ("RPV") in the course of decommissioning. Because Dairyland plans to dispose of its RPV intact, that unit will not be deemed to contain any GTCC waste.

Radioactive Waste Policy Amendments Act of 1985. This fact is supported by reams of documents and prior testimony from DOE officials showing that DOE long planned to take utility GTCC waste to the Yucca Mountain repository along with the utilities' spent fuel.

Finally, the government attempts to get around the fundamental question of whether Dairyland has any GTCC waste by concocting a theory, never before asserted in any case (including the *Yankee* cases where the GTCC issues were comprehensively vetted and tried), that asserts that, even if Dairyland has no GTCC waste, coverage of GTCC waste under the DOE contract affects the schedule on which the government would have accepted spent fuel by creating a "ripple effect" on the acceptance queue. As an initial matter, the government's argument about the potential impact of GTCC waste on the queue is way overblown: the actual known quantities of GTCC waste held by the various utilities is in fact quite small. More importantly, the government's theory presumes a rigidly-prescribed contractual removal schedule, but the DOE contract does not prescribe any such schedule or rate for DOE's acceptance of spent fuel. Therefore, a "reasonable" schedule must be imposed, which this Court has already determined is a quintessential issue of fact. *See Energy Northwest v. United States,* 69 Fed. Cl. 500, 505 (2006) ("Plaintiff's earliest possible acceptance date, . . . [and] the appropriate rate of acceptance . . . are disputed questions of fact that go to damages. . . ."); *Power Auth. of N.Y. v. United States,* No. 00-703 C, 2004 WL 3461071 (Fed. Cl. Sept. 30, 2004) ("The acceptance rate, and the 'ramp-up' period necessary to reach a steady-state acceptance rate, is a fact-laden inquiry that the Court finds does not lend itself to resolution on summary judgment.").

In sum, questions of fact predominate all of the issues the government raises: whether Dairyland has any GTCC waste, what storage of stranded GTCC waste would have cost Dairyland (assuming it in fact has GTCC waste), whether DOE would have picked up GTCC waste, and the schedule and rate of waste acceptance. The government's proposed GTCC waste summary judgment motion will do nothing to resolve these fact issues or influence the conduct of this litigation no matter when it is made and will serve no purpose except to impose unwarranted costs on Dairyland.

CONCLUSION

Because the government no longer objects to commencement of fact discovery before the GTCC waste issue is resolved, Dairyland respectfully requests that the Court set a trial date in this case for the Fall of 2007 and, in accordance with a Fall 2007 trial date, set a discovery schedule whereby fact discovery would commence no earlier than August 28, 2006. If the government chooses to file a summary judgment motion on the GTCC waste issue, Dairyland respectfully requests that it not be required to respond to such motion no earlier than the Fall of 2006.

Respectfully submitted,

Dated: March 23, 2006

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP