**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:RAShultis
154-04-106

Telephone: (202) 305-7561
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

April 26, 2006

**VIA FACSIMILE AND UNITED STATES MAIL**

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.)

Dear Mr. Stouck:

Enclosed please find the Defendant's First Set of Interrogatories and First Set of Requests for Production of Documents. As stated in the Joint Preliminary Status Report, you agreed to respond by July 28, 2006.

Give me a call if you have any questions.

Sincerely,

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch

Enclosures

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DAIRYLAND POWER COOPERATIVE** **Plaintiff,** | |
| **v.** | **No. 04-0106C** **(Chief Judge Damich)** |
| **THE UNITED STATES,** **Defendant.** | |

**DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims, defendant, the United States, hereby requests that plaintiff, Dairyland Power Cooperative ("Dairyland"), answer separately, in writing and under oath, the following continuing interrogatories within thirty (30) days after service. Because these interrogatories are continuing, they require supplemental response(s) if plaintiff obtains additional information and/or discovers additional documents after service of its original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

## I. DEFINITIONS AND INSTRUCTIONS

A. The following definitions apply in responding to these interrogatories:

1. "Plaintiff," "you," "your," and "yourself" shall refer to the plaintiff in this action, as well as its present or former officers, employees, agents, attorneys, or representatives and every person acting upon its behalf and/or connected with plaintiff in the context of the matters at issue in this action.

2. "Person" and "individual" shall include any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. "Document" shall be construed in the broadest sense possible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports, files, file jackets, analyses,

studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, proposed changes, schedules, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but not limited to, "e-mail" (to the extent required pursuant to the court's March 14, 2005 order), digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any interrogatory or production request was, but no longer is, in your possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

5. "Complaint" shall refer to the pleadings filed by plaintiff to commence this action in the United States Court of Federal Claims.

6. "Identify" or "identity" shall have the following meanings:

a. When used with reference to an entity or organization, the response shall state the type of entity or organization (*e.g.*, corporation, partnership, joint venture, or sole proprietorship) and give the full name and present or last known address of the entity or organization.

b. When used with reference to a person, the response shall state the person's full name, current or last known home and work address and telephone numbers, current or last known business affiliation and job description, and any past or present affiliation with plaintiff or defendant. If such information is not current, the date of this information shall be specified.

c. When used with reference to a document, the response shall state the type of document (*e.g.*, memorandum, letter, note, contract), its date, author(s), addressee(s) (if any), synopsis of content, and present location. In lieu of providing this information, plaintiff may attach a copy of the document to its response to this discovery request. A request that you identify a document is not limited to documents in your possession, custody, or control.

d. When used in reference to a source of information (*e.g.*, a conference, communication, conversation, discussion, meeting, or presentation), the response shall identify each individual providing information. The response shall also state whether the information has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

e. When used in reference to an item of property, the response shall identify the precise location of that property and the property interest involved. The response shall also state whether the ownership interest has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

7. "Describe in detail," "state in detail," "state each fact," "state all facts," or "explain in detail," as used herein, shall mean the following:

a. Describe fully by reference to detailed underlying facts rather than the ultimate facts or conclusions of law or fact.

b. Disclose each and every fact, circumstance, condition, and thing known to you about the subject of the interrogatory and provide a full identification and description of the source(s) of such facts, circumstances, conditions, and things, including, but not limited to:

(1) the identity of each person involved in each such event, including, but not limited to, persons employed by plaintiff and/or those persons purporting to act for plaintiff;

(2) the specific acts of each person participating in each such event;

(3) the date and time of each such event;

(4) the address and location of each such event; and

(5) the identity of each person present during each such event.

8. The word "explain" means to state with specificity each and every fact, ultimate fact, particular circumstances, incident, act, omission, detail, and event that relates to the reference, contention, or response.

9. Use of the phrase "making sure to" means that the subsequent issues should be addressed specifically in addition to your response to the general question that was raised in the interrogatory.

10. The word "substantiate" means to identify each document and/or communication, including each and every provision of the contract, upon which you rely in

making the reference, contention, or response, and to state any other facts relating to the reference, contention, or response.

11. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

12. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

13. "Plaintiff's contract" or "your contract" refers to the Standard Contract that the plaintiff, or plaintiffs, in this action (regardless of whether the relationship is as purchaser or licensee) entered with the Department of Energy.

14. "DOE" refers to the United States Department of Energy.

15. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

16. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

17. "ISFSI" refers to independent spent fuel storage installation, such as that used in the dry storage of spent nuclear fuel.

18. "Delivery commitment schedules" or "DCS" refers to the forms described in Article V, paragraph B, of the Standard Contract and includes any schedules that have been proposed by the utility, any schedules proposed by DOE if the utility's schedule is rejected, and

any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

19. "FERC" refers to the Federal Energy Regulatory Commission.

20. "NRC" refers to the Nuclear Regulatory Commission.

21. "GTCC" refers to Greater-Than-Class-C waste, which is radioactive waste that exceeds the concentration limits of radionuclides established for Class C waste in 10 C.F.R. § 61.55.

22. "MTU" refers to Metric Tons of Uranium.

23. "Re-racking" means the process by which additional and/or space-conserving racks are added to the spent fuel pool as a means of increasing SNF storage capacity.

24. The term "full core offload capability" or "full core offload reserve" refers to the practice of reserving spent fuel pool space at all times to permit the unloading of all of the fuel bundles in the reactor core. A fuel pool is considered full when the normal fuel cycle discharge of fuel would violate the reserve spaces required for full core offload.

25. "NWPA" refers to the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270 (1982).

26. "MRS" refers to a monitored retrievable storage facility as contemplated in 1987 amendments to the Nuclear Waste Policy Act.

27. "LACBWR" refers to the LaCrosse Boiling Water Reactor which includes the nuclear power plant and all related properties.

28. "PFS" refers to Private Fuel Storage, LLC.

29. "PSC" refers to the Public Service Commission of Wisconsin.

B. To bring within the scope of these discovery requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, *etc.*) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. The masculine shall be construed to include the feminine, and vice versa;

7. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

8. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

9. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

C. In answering these interrogatories, furnish all information, however obtained, including hearsay, that is within your possession, custody, and/or control, including information known by, or in the possession, custody, or control of, yourself, or any of your officials, directors, officers, employees, agents, investigators, consultants, and attorneys.

D. If plaintiff cannot answer the following interrogatories in full after exercising due diligence to secure the information, so state, and answer to the extent possible. Explain in detail the reasons for plaintiff's inability to answer the remainder, and identify whatever information or knowledge plaintiff has concerning the unanswered portion.

E. Provide separate responses for each interrogatory or its subpart; do not join together and provide a common response or answer to two or more interrogatories or to subparts of an interrogatory.

F. Where exact statistical or numerical information, including dates or times, cannot be furnished, estimated or approximate information shall be supplied. Where an estimate or approximation is supplied, it should be so indicated, and an explanation provided as to the basis upon which the estimate or approximation was made. State the reason(s) why exact statistical or numerical information cannot be furnished.

G. If any response, or any portion of any response, to any of the following interrogatories or subparts thereof is not made on or by the present knowledge of the person signing or swearing to such response, identify each person from whom the information was obtained and whether it is a matter of each such person's personal knowledge. State the number of the interrogatory for which each such person supplied information.

H. To the extent that you consider any of the following interrogatories, or their subparts, to be objectionable, answer that portion of the interrogatory, or subpart, to which you have no objection and separately state the portion of the interrogatory, or subpart, to which you object and state with specificity all grounds for your objection. If you object to an interrogatory upon the ground that it is too broad (*i.e.*, that it calls both for information which is relevant to the subject matter of the action and information which is not relevant), provide the information that is relevant. If you object to an interrogatory upon the ground that to provide an answer would constitute an undue burden, provide all requested information that can be supplied without undertaking an undue burden. For those portions of an interrogatory to which you object or otherwise decline to answer, state the reason for such objection or declination.

I. Unless indicated otherwise in the specific interrogatory, these interrogatories call for information and documents beginning in 1982 up to the present.

J. To the extent you believe information and/or documents responsive to these interrogatories have already been produced to the Government by Dairyland identify with specificity where in the prior production the information or documents may be found.

**INTERROGATORIES**

INTERROGATORY NO. 1

For every current or former Dairyland employee identified in Dairyland's RCFC 26(a)(1) Disclosures, please provide the following information: (i) dates of employment; (ii) most recent job title at Dairyland; (iii) department in which the employee works; (iv) responsibilities in employee's most recent job at Dairyland; (v) whether the employee has supervisory authority at Dairyland; (vi) categories of damages of which each employee may possess knowledge; (vii) all prior job titles and job descriptions relevant to employee's knowledge concerning categories of damages sought by Dairyland; and (viii) description of employee's knowledge concerning the damages sought by Dairyland.

INTERROGATORY NO.2

Identify the persons most knowledgeable about each technology or facility that Dairyland has ever used to store SNF or HLW, or both, making sure to identify persons with knowledge of the cost and technical aspects of each technology or facility, knowledge of the history of each technology or facility, and identify all documents relating to your response.

INTERROGATORY NO. 3

Describe in detail any plans to change the technology or facility that Dairyland currently uses to store SNF or HLW, or both, including plans that were never implemented, making sure to identify those persons who are most knowledgeable about each plan, explain why each plan was considered, and identify all documents relating to your response.

INTERROGATORY NO. 4

Identify all categories of damages sought by Dairyland arising from DOE's breach of the Standard Contract including any costs associated with your wet pool storage facilities for which you claim DOE should be liable and identify all documents relating to your response.

INTERROGATORY NO. 5

Identify those persons, both within plaintiff's organization and outside of plaintiff's organization, who are most knowledgeable about the parties' understanding, prior to, at the time of, as well as subsequent to the execution of plaintiff's contract, as to the rate and sequence of SNF and HLW acceptance that DOE would be obligated to maintain under the Standard Contract, making sure to identify: (i) each person's area of expertise; (ii) the nature of each person's knowledge; (iii) how each person obtained that knowledge; (iv) when each person gained that knowledge; (v) each person's position within and relationship to plaintiff, if any; and (vi) all documents that relate to each person's understanding of the rate of SNF and/or HLW acceptance that DOE would be obligated to maintain under the Standard Contract.

INTERROGATORY NO. 6

Describe in detail all spent fuel acceptance schedules or acceptance scenarios used by Dairyland, including all decommissioning studies submitted to FERC, the NRC, or the PSC, making sure to: (i) identify the assumed start date for SNF acceptance; (ii) identify the annual rate at which SNF would be removed from the site (in MTUs) according to each schedule; (iii) identify when all the SNF was to be removed from the site under each schedule; and (iv) identify each person who has knowledge regarding each schedule.

INTERROGATORY NO. 7

Describe in detail all modifications that were made, or that will be made, to Dairyland's spent fuel pool buildings, making sure to identify any modifications relating to the removal of SNF from the pool or to move SNF from the pool into casks of any kind, and identify all documents related to your response.

INTERROGATORY NO. 8

Describe in detail Dairyland's current and projected SNF, HLW, and GTCC waste, making sure to identify where each type of waste is being stored, quantify the amount in each waste category, and identify all documents relating to your response.

INTERROGATORY NO. 9

Describe in detail each of Dairyland's decommissioning cost studies, making sure to identify each individual who worked upon those studies, identify the source of knowledge and area of expertise for each of the individuals identified, and identify all documents relating to your response.

INTERROGATORY NO. 10

Identify all documents relating to the costs of spent fuel storage at LACBWR including any estimates prepared on Dairyland's behalf.

INTERROGATORY NO. 11

Describe in detail Dairyland's decision to shut down the LACBWR making sure to explain when Dairyland first considered closing LACBWR, when Dairyland finally decided to shut down LACBWR, identify the individuals most knowledgeable about the decision to shut down LACBWR, and identify all documents relating to your response.

INTERROGATORY NO. 12

Identify all actions taken by Dairyland to mitigate the damages allegedly incurred as a result of the Government's delay in acceptance of SNF from the LACBWR and identify all documents relating to your response.

INTERROGATORY NO. 13

Identify all "non-standard fuel," "failed fuel," and nonfuel components," as those terms are defined by the Standard Contract, that is in the possession of Dairyland making sure to identify where the non-standard, failed fuel and non-fuel components are currently stored, quantify the amounts in each category, identify all persons with knowledge of those subjects, and identify all documents relating to your response.

INTERROGATORY NO. 14

Describe in detail the organizational structure of Dairyland, making sure to identify senior management, including name and position title, from 1983 to the present and identify all documents relating to your response.

INTERROGATORY NO. 15

Identify all owners and their respective ownership interests (as a percentage) in both Dairyland and LACBWR.

INTERROGATORY NO. 16

Describe in detail when Dairyland would have lost its full core offload capability if it had continued to operate the LACBWR, making sure to specify the amount of space that was available in the spent fuel pool in terms of the number of assemblies that the pool can accommodate prior to the last discharge from the reactor, the number of assemblies that were

typically discharged from the reactor during each fuel cycle, the number of spaces that are currently available in the spent fuel pool, and identify all documents relating to your response.

INTERROGATORY NO. 17

Describe in detail all analyses by, or on behalf of, Dairyland relating to the exchange of delivery commitment schedules pursuant to the Standard Contract making sure to identify each person with knowledge regarding this topic and identify all documents relating to your response.

INTERROGATORY NO. 18

Identify all persons with knowledge concerning DOE's obligations to accept GTCC waste or failed fuel, including persons with knowledge of the timing of such acceptance, and identify all documents relating to your response.

INTERROGATORY NO. 19

Describe in detail Dairyland's relationship with PFS making sure to describe the history of this relationship, identify all persons with knowledge of this relationship, and identify all documents relating to your response.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288
FAX: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LORE
Senior Trial Counsel
JOHN C. EKMAN
SONIA ORFIELD
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

April 26, 2006

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 26th of April, 2006, I caused to be sent by first class mail and facsimile a copy of "DEFENDANT'S FIRST SET OF INTERROGATORIES," addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)

______________________________

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DAIRYLAND POWER COOPERATIVE** <br> **Plaintiff,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant.** | **No. 04-0106C** <br> **(Chief Judge Damich)** |

**DEFENDANT'S FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims, defendant, the United States, hereby requests that plaintiff, Dairyland Power Cooperative ("Dairyland"), produce all documents in its possession, custody, and/or control, or otherwise available to plaintiff, that are responsive to the requests in the numbered paragraphs below and that plaintiff produce them within thirty (30) days after service of these requests. Because these requests for production are continuing, they require supplemental response(s) if plaintiff obtains additional information and/or discovers additional documents after service of its original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

I. **DEFINITIONS AND INSTRUCTIONS**

A. The following definitions apply in responding to these interrogatories:

1. "Plaintiff," "you," "your," and "yourself" shall refer to the plaintiff in this action, as well as its present or former officers, employees, agents, attorneys, or representatives

and every person acting upon its behalf and/or connected with plaintiff in the context of the matters at issue in this action.

2. "Person" and "individual" shall include any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. "Document" shall be construed in the broadest sense possible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals,

instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, proposed changes, schedules, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but not limited to, "e-mail" (to the extent required pursuant to the court's March 14, 2005 order), digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any interrogatory or production request was, but no longer is, in your possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

5. "Complaint" shall refer to the pleadings filed by plaintiff to commence this action in the United States Court of Federal Claims.

6. "Identify" or "identity" shall have the following meanings:

a. When used with reference to an entity or organization, the response shall state the type of entity or organization (*e.g.*, corporation, partnership, joint venture, or sole

proprietorship) and give the full name and present or last known address of the entity or organization.

b. When used with reference to a person, the response shall state the person's full name, current or last known home and work address and telephone numbers, current or last known business affiliation and job description, and any past or present affiliation with plaintiff or defendant. If such information is not current, the date of this information shall be specified.

c. When used with reference to a document, the response shall state the type of document (*e.g.*, memorandum, letter, note, contract), its date, author(s), addressee(s) (if any), synopsis of content, and present location. In lieu of providing this information, plaintiff may attach a copy of the document to its response to this discovery request. A request that you identify a document is not limited to documents in your possession, custody, or control.

d. When used in reference to a source of information (*e.g.*, a conference, communication, conversation, discussion, meeting, or presentation), the response shall identify each individual providing information. The response shall also state whether the information has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

e. When used in reference to an item of property, the response shall identify the precise location of that property and the property interest involved. The response shall also state whether the ownership interest has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

7. "Describe in detail," "state in detail," "state each fact," "state all facts," or "explain in detail," as used herein, shall mean the following:

a. Describe fully by reference to detailed underlying facts rather than the ultimate facts or conclusions of law or fact.

b. Disclose each and every fact, circumstance, condition, and thing known to you about the subject of the interrogatory and provide a full identification and description of the source(s) of such facts, circumstances, conditions, and things, including, but not limited to:

(1) the identity of each person involved in each such event, including, but not limited to, persons employed by plaintiff and/or those persons purporting to act for plaintiff;

(2) the specific acts of each person participating in each such event;

(3) the date and time of each such event;

(4) the address and location of each such event; and

(5) the identity of each person present during each such event.

8. The word "explain" means to state with specificity each and every fact, ultimate fact, particular circumstances, incident, act, omission, detail, and event that relates to the reference, contention, or response.

9. Use of the phrase "making sure to" means that the subsequent issues should be addressed specifically in addition to your response to the general question that was raised in the interrogatory.

10. The word "substantiate" means to identify each document and/or communication, including each and every provision of the contract, upon which you rely in making the reference, contention, or response, and to state any other facts relating to the reference, contention, or response.

11. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

12. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

13. "Plaintiff's contract" or "your contract" refers to the Standard Contract that the plaintiff, or plaintiffs, in this action (regardless of whether the relationship is as purchaser or licensee) entered with the Department of Energy.

14. "DOE" refers to the United States Department of Energy.

15. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

16. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

17. "ISFSI" refers to independent spent fuel storage installation, such as that used in the dry storage of spent nuclear fuel.

18. "Delivery commitment schedules" or "DCS" refers to the forms described in Article V, paragraph B, of the Standard Contract and includes any schedules that have been

proposed by the utility, any schedules proposed by DOE if the utility's schedule is rejected, and any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

19. "FERC" refers to the Federal Energy Regulatory Commission.

20. "NRC" refers to the Nuclear Regulatory Commission.

21. "GTCC" refers to Greater-Than-Class-C waste, which is radioactive waste that exceeds the concentration limits of radionuclides established for Class C waste in 10 C.F.R. § 61.55.

22. "MTU" refers to Metric Tons of Uranium.

23. "Re-racking" means the process by which additional and/or space-conserving racks are added to the spent fuel pool as a means of increasing SNF storage capacity.

24. The term "full core offload capability" or "full core offload reserve" refers to the practice of reserving spent fuel pool space at all times to permit the unloading of all of the fuel bundles in the reactor core. A fuel pool is considered full when the normal fuel cycle discharge of fuel would violate the reserve spaces required for full core offload.

25. "NWPA" refers to the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270 (1982).

26. "MRS" refers to a monitored retrievable storage facility as contemplated in 1987 amendments to the Nuclear Waste Policy Act.

27. "LACBWR" refers to the LaCrosse Boiling Water Reactor which includes the nuclear power plant and all related properties.

28. "PFS" refers to Private Fuel Storage, LLC.

29. "PSC" refers to the Public Service Commission of Wisconsin.

B. To bring within the scope of these discovery requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, *etc.*) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. The masculine shall be construed to include the feminine, and vice versa;

7. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

8. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

9. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

C. In answering these interrogatories, furnish all information, however obtained, including hearsay, that is within your possession, custody, and/or control, including information known by, or in the possession, custody, or control of, yourself, or any of your officials, directors, officers, employees, agents, investigators, consultants, and attorneys.

D. If plaintiff cannot answer the following interrogatories in full after exercising due diligence to secure the information, so state, and answer to the extent possible. Explain in detail the reasons for plaintiff's inability to answer the remainder, and identify whatever information or knowledge plaintiff has concerning the unanswered portion.

E. Provide separate responses for each interrogatory or its subpart; do not join together and provide a common response or answer to two or more interrogatories or to subparts of an interrogatory.

F. Where exact statistical or numerical information, including dates or times, cannot be furnished, estimated or approximate information shall be supplied. Where an estimate or approximation is supplied, it should be so indicated, and an explanation provided as to the basis upon which the estimate or approximation was made. State the reason(s) why exact statistical or numerical information cannot be furnished.

G. If any response, or any portion of any response, to any of the following interrogatories or subparts thereof is not made on or by the present knowledge of the person signing or swearing to such response, identify each person from whom the information was obtained and whether it is a matter of each such person's personal knowledge. State the number of the interrogatory for which each such person supplied information.

H. To the extent that you consider any of the following interrogatories, or their subparts, to be objectionable, answer that portion of the interrogatory, or subpart, to which you have no objection and separately state the portion of the interrogatory, or subpart, to which you object and state with specificity all grounds for your objection. If you object to an interrogatory upon the ground that it is too broad (*i.e.*, that it calls both for information which is relevant to the subject matter of the action and information which is not relevant), provide the information that is relevant. If you object to an interrogatory upon the ground that to provide an answer would constitute an undue burden, provide all requested information that can be supplied without undertaking an undue burden. For those portions of an interrogatory to which you object or otherwise decline to answer, state the reason for such objection or declination.

I. Unless indicated otherwise in the specific interrogatory, these interrogatories call for information and documents beginning in 1982 up to the present.

J. To the extent you believe information and/or documents responsive to these interrogatories have already been produced to the Government by Dairyland identify with specificity where in the prior production the information or documents may be found.

**REQUESTS FOR PRODUCTION**

REQUEST NO. 1

All documents relating to your responses to Defendant's First Set of Interrogatories.

REQUEST NO. 2

All documents relating to permanently shutting down LACBWR, including all documents relating to the projected timing for the permanent shutdown, and all documents relating to the reasons for any shutdown.

REQUEST NO. 3

All documents relating to the operations and maintenance associated with wet storage, including all documents relating to personnel and staffing for wet pool operations and the costs associated with wet pool operations.

REQUEST NO. 4

All documents relating to projected SNF discharge rates at LACBWR.

REQUEST NO. 5

All documents relating to the presence of high burn-up fuel, failed fuel, non-standard fuel, other than standard fuel, and/or GTCC radioactive waste in plaintiff's wet pools or upon plaintiff's reactor sites.

REQUEST NO. 6

All documents relating to decommissioning, including, but not limited to, all decommissioning studies, either developed by Dairyland or outside contractors.

REQUEST NO. 7

Any investigations, analyses, and/or studies of additional or alternative storage options for Dairyland's SNF and/or HLW.

REQUEST NO. 8

All documents relating to PFS, including all documents relating to Dairyland's participation in PFS and documents relating to Dairyland's damages attributable to PFS.

REQUEST NO. 9

All documents concerning or reflecting the substantive, technical, and/or economic bases for Dairyland's construction of an ISFSI.

REQUEST NO. 10

All spent fuel management studies produced by, or upon behalf of, Dairyland.

REQUEST NO. 11

All documents relating to any modifications to site facilities necessary to support the transfer of fuel from Dairyland's spent fuel pools.

REQUEST NO. 12

All documents relating to any modifications to site facilities necessary to support transfer of SNF to DOE from Dairyland's spent fuel pools.

REQUEST NO. 13

All documents relating to Dairyland's spent fuel pools, including, but not limited to: capacity, including but not limited to license capacity; historical changes in capacity; current inventory (including data relating to the type and composition of the material in Dairyland's spent fuel pools, as well as details about burn-up and enrichment of the material in the pools);

and specific identification (both in type and amount) of materials other than SNF that are stored in Dairyland's spent fuel pools.

REQUEST NO. 14

All documents relating to any re-racking at LACBWR including, but not limited to, memoranda, notes, letters, or printed e-mails relating to any decisions concerning re-racking and the extent of any actual or potential re-racking.

REQUEST NO. 15

All documents concerning Boraflex racks, including all documents concerning problems experienced at LACBWR as a result of any use of Boraflex racks.

REQUEST NO. 16

Copies of current certificates of compliance, including any amendments and/or pending modifications, for the casks that Dairyland is using or intends to use for its SNF.

REQUEST NO. 17

All documents relating to the design basis for Dairyland's ISFSI, including the number of casks to be used in the ISFSI and any analysis of the amounts and types of inventory to be stored in the ISFSI over time.

REQUEST NO. 18

All documents supporting or otherwise concerning the costs claimed as damages associated with SAFSTOR at LACBWR.

REQUEST NO. 19

All documents supporting or otherwise concerning the costs claimed as damages associated with and ISFSI .

REQUEST NO. 20

All documents supporting, refuting, or otherwise relating to Dairyland's damages.

REQUEST NO. 21

Any documents relating to the assignment of Dairyland's Standard Contract, of Dairyland's SNF and/or HLW, and/or of any claims arising out of the Standard Contract to any third parties.

REQUEST NO. 22

All documents, including all documents submitted to the Federal Energy Regulatory Commission, the Nuclear Regulatory Commission, state regulatory commissions, other utilities, and any other third parties, that relate to Dairyland's proposed, submitted, approved, or disapproved delivery commitment schedules.

REQUEST NO. 23

All documents relating to priority for the acceptance of SNF and/or HLW from shutdown reactors.

REQUEST NO. 24

All documents relating to the exchange of delivery commitment schedules among utilities.

REQUEST NO. 25

All documents relating to DOE's obligation to accept GTCC waste.

REQUEST NO. 26

All documents relating to DOE's responsibilities with respect to the timing, rate, and scheduling of acceptance of SNF and/or HLW from utilities under the Standard Contract and the Nuclear Waste Policy Act.

REQUEST NO. 27

All documents created at any time after 1976 relating to, referring to, or associated with the promulgation and/or formation of the Standard Contract and/or the NWPA, including all documents prepared by or upon behalf of Dairyland concerning the promulgation and/or formation of the Standard Contract and/or the NWPA.

REQUEST NO. 28

All drafts of the Standard Contract.

REQUEST NO. 29

All comments regarding the Standard Contract or proposed changes to the Standard Contract to or from nuclear industry groups or other third parties.

REQUEST NO. 30

All documents considered and/or reviewed by each of plaintiff's expert witnesses in forming his opinions, including any and all electronic files, analyses, spreadsheets, and models.

REQUEST NO. 31

All electronic files, documents, and analyses relating to any and all scenarios, actual or hypothetical, considered by each of plaintiff's expert witnesses.

REQUEST NO. 32

All communications between each of plaintiff's expert witnesses and counsel.

REQUEST NO. 34

All communications between each of plaintiff's expert witnesses and any Dairyland employee regarding or relating to the contents of the expert witness reports and/or work performed upon behalf of plaintiff.

REQUEST NO. 35

All of plaintiff's expert witnesses' work papers and notes, in electronic and hard copy, and all drafts of the expert reports.

REQUEST NO. 36

All communications with plaintiff's expert witnesses involving the request for expert services.

REQUEST NO. 37

All electronic files relating to the costs or categories of costs claimed in any of Dairyland's expert reports that contain analysis or output from Dairyland's accounting systems, human resources systems, procurement systems, or their equivalents. Such electronic files shall be in a form, to the extent that it exists, that permits data manipulation (i.e., spreadsheet, database, or accounting system files, but not image files).

REQUEST NO. 38

All electronic files of spreadsheets relating to Dairyland's expert reports or that are referenced in Dairyland's expert reports. Such electronic files shall be in a form, to the extent that it exists, that permits data manipulation (i.e., spreadsheet, database, or accounting system files, but not image files).

REQUEST NO. 39

All contracts and invoices for plaintiff's expert witnesses' services.

REQUEST NO. 40

All spreadsheets attached to Dairyland's expert reports in manipulative electronic format, with formulas.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288
FAX: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LORE
Senior Trial Counsel
JOHN C. EKMAN
SONIA ORFIELD
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

April 26, 2006

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 26th of April, 2006, I caused to be sent by first class mail and facsimile a copy of "DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS," addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)

_______________________