IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically: December 18, 2006

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF DAIRYLAND'S MOTION TO COMPEL DEPOSITIONS

The government has taken the remarkable position that Dairyland is not entitled to take a single deposition in this case, which involves a claim for more than $40 million in damages to date and a variety of important legal and factual issues. The government has taken that "no deposition" position even though Dairyland has sought a total of only four depositions, and even though the government has agreed in other cases to depositions of some of the same individuals that Dairyland wants to depose in this case.

The government's "no deposition" position is completely untenable and should be rejected. For the reasons set forth in this motion, and pursuant to Rule 37, the Court should compel the four depositions that Dairyland seeks and direct the government to cooperate in scheduling these depositions at a mutually convenient time and place.

DISCUSSION

The four depositions Dairyland requested, by letter of November 10, 2006, attachment 1, are of key witnesses Christopher Kouts, David Zabransky and Thomas Pollog, and a Rule 30(b)(6) witness. Mr. Zabransky is the DOE contracting officer under Dairyland's contract (and all other "standard" spent fuel contracts). Mr. Pollog is the contracting officer's technical

representative. Mr. Kouts is the Director of DOE's Office of Waste Management and is thus responsible, according to his testimony at the recent trial in Pacific Gas and Electric Co.'s ("PG&E") spent fuel case, for "management of the standard contracts with utilities and all the activities associated with that, such as testifying in court on certain issues." PG&E trial transcript at 2584:4-7, attachment 2. Dairyland's request, in this important breach of contract case, to depose those three senior contracting officials as well as an appropriate Rule 30(b)(6) witness on selected relevant topics, is as unremarkable – indeed, one would think routine – as the government's flat-out refusal to allow the depositions, absent a Court Order, is untenable and unsupportable.

The sole basis for the government's refusal to agree to depositions of Messrs. Zabransky, Pollog and Kouts, apart from purported scheduling concerns (*i.e.*, potential conflicts with scheduled testimony in other cases), is that those individuals have previously been deposed and testified at trials in other spent fuel cases. *See* Letter from Shultis to Shapiro, Dec. 6, 2006, attachment 3. That government letter did not address Dairyland's request for a Rule 30(b)(6) deposition, as Dairyland had not yet served a list of topics for that deposition. Dairyland has since done so, by letter of December 13, attachment 4. Dairyland is nevertheless moving now, even before the government responds to that December 13 letter, for an Order compelling the Rule 30(b)(6) deposition it seeks, given a) the passage of time, b) the Court's admonition in its Order of December 4 not to unduly delay discovery matters, c) the efficiency of filing one motion to compel all four of the depositions Dairyland seeks, and d) Dairyland's reasonable expectation that the government will continue to refuse any Rule 30 (b)(6) deposition in this case. Of course, if the government agrees to the Rule 30(b)(6) deposition as currently proposed, Dairyland will be pleased to delete that issue from this motion.

The fact that Messrs. Kouts, Zabransky and Pollog have testified previously in other spent fuel cases – the sole reason (other than scheduling issues) that the government asserts for objecting to their depositions in this case – provides no basis for denying Dairyland the opportunity to depose these individuals here. Nor for similar reasons does the Rule 30(b)(6) deposition of DOE witnesses taken in the spent fuel "common discovery" proceeding in 2002, before this case was filed, provide any basis for denying Dairyland the opportunity to conduct a Rule 30(b)(6) deposition in this case.

First, there can be no claim of undue burden to these witnesses, as the Court's Rule 30(d)(2) limits each deposition to seven hours (absent leave) and Dairyland would expect to adhere to that limitation. Unlike the government, Dairyland is paying hourly fees for its counsel, and it has absolutely no incentive either to take depositions that aren't needed or to needlessly prolong those depositions. In addition, the stakes are large. Dairyland has submitted and supported a claim for more than $40 million in damages through June of 2006. And the issues to be resolved in this litigation are likely to control Dairyland's entitlement to recover tens of millions of dollars in additional damages that it will incur in subsequent periods. Furthermore, given that the government's latest estimates are that it will not start to accept spent fuel from utilities until 2020 at the earliest, the government cannot credibly claim that it cannot afford to lose a day from each of these deponents, whose jobs focus on "waste acceptance" from utilities.

Second, there obviously can be no claim that these individuals have previously answered questions about the facts of Dairyland's claim, as they were never asked questions in the context of Dairyland's claim. Dairyland's complaint was filed in 2004, and its initial disclosures were submitted just earlier this year. Dairyland had no opportunity to participate at all in any of the prior depositions of these deponents. The fact that Dairyland's counsel participated in some

prior depositions of these individuals is utterly irrelevant. The significance of a deposition stems from the issues addressed in the questioning, not from the identity of counsel asking the questions.

And while it is true that the DOE contracts in all these cases are essentially the same, it is equally true that the claims of individual spent fuel plaintiffs vary greatly – as do the facts that individual Judges of this Court have found important in resolving those varied damages claims – depending upon the particular damages elements that individual spent fuel plaintiffs are claiming and other particular facts in the individual cases. These significant variations among the cases are reflected in the Court's opinions to date. *Compare, e.g., Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249 (2006) *with Pacific Gas & Elec. Co.*, 73 Fed. Cl. 333 (2006). Moreover, the government has had particular interactions with individual utilities, including Dairyland.

Third, subsequent to prior depositions of these government witnesses, both the substance of their testimony and the topics about which they claim to be able to testify *have changed.* Relatedly, subsequent to their previous testimony, additional decisions of this Court in spent fuel cases have highlighted new and different issues, and Dairyland is entitled to question these individuals about those issues. For these reasons alone, the Court should allow new depositions in this case. Otherwise, despite the availability of prior transcripts, Dairyland can't know what these witnesses will say in *this* case about issues material to Dairyland's claims.

The need for new depositions is vividly illustrated by the PG&E trial testimony of Mr. Kouts. There, when counsel for PG&E (the undersigned) attempted to impeach Mr. Kouts with the differing answers he gave at his 1999 deposition, Mr. Kouts blithely informed counsel that although those answers may have been true when given, they were no longer true, as Mr. Kouts

had assumed additional responsibilities since 1999 and also had studied up on topics he then knew nothing about:

> Q. Do you remember having your deposition taken in the Yankee Atomic case?
>
> A. I remember giving a deposition in that case, yes I do.
>
> Q. Let me hand you a transcript of that deposition. The date is June 4, 1999. If you would take a look, Mr. Kouts, at page 91 of this transcript. Starting on page excuse me, line 21 at the bottom, are you there?
>
> A. Yes.
>
> Q. You testified truthfully at this deposition, correct?
>
> A. To my knowledge, yes.
>
> Q. And you were under oath?
>
> A. Yes.
>
> Q. You were asked the following question and gave the following answer: "Turning your attention back to Exhibit 3, which is the 1995 ACR and table of that, which is on page four, the acceptance rates in these two documents are different, . . . . *Which one of these receipt rates is going to be binding on the utilities*, or which one of these receipt rates can utilities count on once the Department begins accepting spent fuel for disposal?"
>
> A. Right.
>
> Q. And your answer: *"I don't know that I'm the one to answer that question. I really don't know. I couldn't tell you.*" Is that your testimony?
>
> A. That's correct.
>
> Q. Okay. And the agreements that DOE has with utilities through the standard contract is not an area of your expertise, is that correct?
>
> A. At that time, it was not.
>
> Q. Okay.

. . . .

Q. Do you recall telling me at that deposition, or testifying at that deposition that only a lawyer would know if receipt rates and ACRs or APRs are binding?

[objection]

Q. *Mr. Kouts, you don't know if receipt rates in ACRs and APRs are binding, right, only a lawyer would know that*?

A. *At that time, that was my understanding yes.*

Q. *Is that your understanding today*?

A. *No, it's not*.

Q. Okay. So your understanding has been obtained, your understanding about the contractual obligations has been obtained since June 4, 1999, is that correct?

A. I've learned more about the issue, yes, that's correct.

**Q. Your understanding, whatever understandings you have about DOE's contractual obligations under the standard contract, you have obtained since June 4, 1999, correct?**

**A. That's correct.**

PG&E trial transcript 2741:15-2745:15, attachment 5 (emphasis and bold added).

Dairyland is entitled to depose Mr. Kouts to find out just what he has learned since that 1999 deposition.

Likewise regarding Messrs. Zabransky and Pollog, Dairyland is entitled to know how they will testify today, in this case, in the context of Dairyland particular damages claims. As with Mr. Kouts, it would not be reasonable or fair to require Dairyland to rely on prior depositions of these key contracting officials. Not only was Dairyland not a participant in any of those prior depositions, but the April 2002 depositions of Messrs. Zabransky and Pollog from the "common discovery" proceeding are more than four years old, and neither those depositions nor

the depositions (or trial testimony) these men gave in other spent fuel cases involved any questions about the facts of this case or any questions posed in the context of Dairyland's particular claims.

As for the Rule 30(b)(6) deposition that Dairyland seeks, the Court should also allow that for similar reasons. Although a Rule 30(b)(6) deposition was included in the "common discovery" process in early 2002, the Rule 30(b)(6) questioning was sharply limited by the presiding Discovery Judge, Judge Sypolt. Specifically, Judge Sypolt directed that discovery taken at that time should be limited to developing facts necessary to respond to the government's then-pending summary judgment motions on the rate of acceptance and GTCC waste issues. *See* Order of February 1, 2002 at 2, attachment 6 ("[T[he scope of discovery shall be limited by RCFC 56(g) factors, *i.e.* to discovering facts essential to justify plaintiff's opposition to the dispositive motions."). Based on that directive, the plaintiffs participating in that proceeding did not pursue the list of more than twenty Rule 30(b)(6) topics they had originally proposed; rather, as ordered by Judge Sypolt, plaintiffs limited the Rule 30(b)(6) questioning to only ten topics pertaining to the government's pending motions. *See* Order of March 5, 2002 at 2, attachment 7. More fundamentally, Dairyland did not and could not participate in that prior deposition because it was taken nearly two years before this case was filed.

Given those severe limitations on the Rule 30(b)(6) deposition plaintiffs took in the "common discovery" proceeding in 2002, and given the passage of time and development of facts and issues that have taken place (and the issuance of numerous decisions in spent fuel cases) during the four years since the "common discovery" proceeding ended, Dairyland should be allowed – as the Court's Rules expressly contemplate – to take a Rule 30(b)(6) deposition to

ascertain the government's position and contentions on various material disputed issues relevant to this case.

Importantly, the Court should reject any artificial limit on the scope of questioning at the depositions Dairyland seeks. In other spent fuel cases, the government has argued that plaintiffs should only be allowed to ask government witnesses "new" questions not addressed in prior testimony, or about facts arising subsequent to their prior testimonies. Such limitations are not only artificial, they are extremely burdensome, they invite needless bickering over where the line should be drawn, and they ultimately are both unworkable and simply unnecessary. These three key DOE officials (Messrs. Kouts, Zabransky and Pollog) have testified at every spent fuel damages trial to date and have given depositions in those cases and in numerous other cases not yet ready for trial. It would take many days – perhaps longer – for Dairyland's counsel just to read those transcripts and familiarize himself with what topics have been covered in that imposing testimonial record. And assuming counsel could even remember all the topics covered previously, an artificial limit on the depositions in this case would inevitably lead to discussion, and then argument, over whether questions Dairyland's counsel poses are or are not within the allowed scope of questioning. Such arguments about the permissible scope of questioning could consume the entire deposition.

There is no need for an artificial limit on these depositions, or the needless and avoidable inefficiencies such a limit would create. Under the Court's Rules Dairyland is limited to a single day of seven hours, and as noted above Dairyland has no incentive to take needless depositions or prolong questioning unduly. The most efficient way to proceed, by far, is to let Dairyland ask these witnesses one day's worth of questioning, unfettered by artificial limits, so that everyone on both sides of the case can get on with other tasks.

Finally, in order to avoid the need for duplicative depositions in the other spent fuel case pending before this Judge, *Energy Northwest v. United States*, No. 04-10C, Dairyland's counsel has coordinated with Energy Northwest's counsel. Energy Northwest desires to take the deposition of Mr. Kouts, and Energy Northwest and Dairyland are willing to conduct these depositions on a joint basis, provided the Court allows an additional three hours for Energy Northwest's additional questioning, only if needed, so that Energy Northwest may ask some additional or case-specific questions of Mr. Kouts following Dairyland's questioning during the initial seven hours provided for the Court's Rules.

CONCLUSION

For these reasons, the Court should grant this motion to compel depositions and direct the government to cooperate in scheduling the four depositions requested here at a mutually convenient time and place during the first two weeks of February. If schedules of the witnesses do not permit the depositions to occur in that time frame, Dairyland would be willing to conduct one or more of these depositions later in February (with leave of Court) even though the Court's Order of May 1, 2006 states that fact discovery should be concluded by February 16, 2006.

Respectfully submitted,

Dated: December 18, 2006

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP

# ATTACHMENT 1

Greenberg Traurig

Robert Shapiro
Tel. 202-331-3174
Fax 202-261-4752
shapiror@gtlaw.com

November 10, 2006

**VIA FACSIMILE**

Mr. Russell A. Shultis
U.S. Department of Justice
Commercial Litigation Branch
Federal Claims Section
1100 L Street, NW
Washington, D.C. 20530

Re: Dairyland Power Cooperative v. United States, No. 04-106C

Dear Russ:

Given that both parties plan to take depositions in the case in addition to those that have been scheduled for December, it behooves us to start work on scheduling them. We plan to depose Messrs. Kouts, Zabransky and Pollog. We would like to take these depositions in the last month of the period for fact discovery. Please let us know these individuals' availability during this period. In addition, we plan to depose a governmental designee pursuant to RCFC 30(b)(6). We will provide a list of matters for this examination in the next few weeks. We are aware that the government has objected to depositions of these government personnel by some plaintiffs in the spent fuel cases. We do not believe that these objections are meritorious. But if the government is inclined to object to Dairyland's depositions, you should let us know promptly so that the parties may take appropriate steps to present this issue to the Court for resolution in a timely manner. Also, please confirm which additional depositions the government intends to take and inform of us of any preferences you have for the scheduling of those depositions so that we may start collecting information on the witnesses' availability.

Please let us know if you have any questions regarding these matters. We look forward to hearing from you.

Sincerely,

Robert L. Shapiro

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

www.gtlaw.com

# ATTACHMENT 2

02286

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------x

PACIFIC GAS & ELECTRIC :
COMPANY, :No. 04-74C
Plaintiff, :
vs. :
THE UNITED STATES, :
Defendant. :

-------------------------------x

Courtroom 5
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday, June 13, 2006

VOLUME 7

The parties met, pursuant to the notice of the Judge at 9:03 a.m.

BEFORE THE HONORABLE EMILY C. HEWITT

02584

A. They're essentially the same as they are now. I am responsible for the waste acceptance component of the waste management system, which includes management of the standard contracts with utilities and all the activities associated with that, such as testifying in court on certain issues.

The other pieces of my responsibilities include systems analysis for the program, making sure that the various components of the program, the repository, the transportation component, and the waste acceptance component, work effectively and efficiently.

In addition to that, I'm primary coordinator for other DOE programs within the Department, the Office of Environmental Management, that manages most of the defense waste that the country has and also the Naval Nuclear Propulsion Program, which is responsible for providing essentially nuclear power to our nuclear fleet, plus other activities, including safeguards on security policy and other activities as assigned.

Q. And I think you touched on this in

# ATTACHMENT 3

U.S. Department of Justice

Civil Division

Telephone: (202) 305-7561
Facsimile: (202) 307-2503

Washington, D.C. 20530

PDK:DMC:HDL:RAShultis
154-04-106

December 6, 2006

VIA FACSIMILE AND UNITED STATES MAIL

Robert L. Shapiro
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.)

Dear Mr. Shapiro:

I received your letter dated November 10, 2006 regarding your desire to depose Messrs. Kouts, Zabransky, and Pollog. Because these individuals have already been deposed extensively, we cannot agree to additional depositions of these individuals absent an explanation as to why the existing exhaustive record of deposition testimony is not sufficient to meet Dairyland Power Cooperative's ("Dairyland's") trial preparation requirements.

As you know, all of the spent nuclear fuel cases concern the same subject matter - partial breach of the Standard Contract - and plaintiffs represented by the same counsel have already conducted extensive depositions of these individuals. Even though Dairyland was not a party to the coordinated discovery proceedings, the transcripts of those proceedings are available for this case and, consequently, are available for the purpose of impeachment at trial. See Rules of the Court of Federal Claims ("RCFC") 32(a)(1) ("Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness"). Further, the witnesses whom you want to depose do not have any information that is directly related to Dairyland's contract, as opposed to all of the Standard Contracts. Given that the subject matter which Messrs. Kouts, Pollog, and Zabransky have previously testified will be the same in this case, and given that you and other attorneys in your firm have taken much of their deposition testimony, it is possible that the Court would treat their deposition testimony as if it had been provided in this case. See RCFC 32(a)(4) ("when an action has been brought in any court of the United States or of any state and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor."); see also Shanklin v. Norfolk Southern Railway Co., 369 F.3d 978, 990-91 (6th Cir.

2004). Since you have not identified any new information which has been made available by the Government that requires the re-deposing of these individuals, we can see no reason why you need to do so again.

Further, it is quite clear that the burden of additional depositions to the individuals involved far outweighs the likely benefits to plaintiffs. To date, Mr. Zabransky has provided 19 days of deposition testimony, Mr. Pollog has testified in deposition for13 days, and Mr. Kouts has provided six days of deposition testimony. Additionally, in the Court of Federal Claims, Mr. Kouts has testified in spent nuclear fuel cases in excess of eight days, Mr. Zabransky has testified for more than seven days, and Mr. Pollog has testified for no less than five days at trial. Not only are those deposition and trial transcripts already available to you, but your firm recently deposed Mr. Zabransky and Mr. Pollog prior to their testifying in Pacific Gas & Electric Company v. United States, Nos. 04-0074, -0075C (Judge Hewitt). Given the amount of testimony that they have already given, it is difficult to imagine a relevant question that you could ask that Messrs. Zabransky, Kouts, and Pollog have not already answered.

We are also troubled by the fact that deposing individuals will interfere with their providing testimony in other spent nuclear fuel trials. Messrs. Kouts, Pollog, and Zabransky will likely be scheduled to testify in SFI/SER & Southern Mississippi v. United States, No. 03-2624C (Judge Braden) and SFI/Entergy Arkansas v. United States, No. 03-2623C (Judge Lettow). Those trials are scheduled to take place during the period from January 16, 2007 through February 23, 2007. In light of the fact that you wish to depose these individuals during the month prior to the close of fact discovery, February 16, 2007, it is clear that the schedule which you propose will interfere with their trial testimony in those spent nuclear fuel cases.

Finally, we have noted that you wish to take a deposition pursuant to Rule 30(b)(6) of the Court's rules. Because you have not indicated what matters you wish that witness to discuss, it is impossible for us to respond to that matter at this time.

If you have any questions or comments, please do not hesitate to contact me.

Sincerely,

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch

# ATTACHMENT 4

Greenberg Traurig

Jerry Stouck
Tel. 202.331.3173
Fax 202.331.3101
stouckj@gtlaw.com

December 13, 2006

*VIA E-MAIL, FAX AND US MAIL*

Russell Shultis
Department of Justice
Commercial Litigation Branch
Civil Division – Classification Unit
8th Floor Mailroom
1100 L Street, NW
Washington, D.C. 20530

*Re: Dairyland Power Cooperative vs. United States, No. 04-106C*

Dear Russ:

As requested in your December 6, 2006 letter, enclosed is a list of topics for the Rule 30(b)(6) deposition we want to take in this case. Please let us know whether the government is agreeable to this deposition, and if so, we will schedule it for some time during the first two weeks of February.

Based your response to our request for other depositions, we anticipate the government likely will oppose this one as well and will proceed on that basis unless we hear to the contrary.

Sincerely,

Jerry Stouck

JS/

Enclosure

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

www.gtlaw.com

# EXHIBIT A

1. The purpose and role of Delivery Commitment Schedules ("DCS") and Final Delivery Schedules under the Standard Contracts.

2. The purpose and role of instructions DOE has issued for completing DCSs, including the instructions issued in 1991 and in 2004.

3. DOE's responses to DCS forms submitted by the utility plaintiffs, including DOE's decision to stop approving such DCS forms.

4. The purpose and role of Annual Capacity Reports and Acceptance Priority Rankings under the Standard Contracts and the development of and basis for the acceptance rates contained therein.

5. The rate(s) of acceptance that DOE planned to use under the Standard Contracts (a) before DOE determined that it would not begin accepting spent fuel in a permanent repository in 1998, and (b) after that time.

6. DOE's purpose and intent in entering the Standard Contracts

7. DOE's understanding of the utilities' purpose and intent in entering the Standard Contracts.

8. How DOE's rate and schedule for acceptance of spent fuel is determined under the Standard Contracts.

9. A reasonable annual rate of acceptance for spent fuel under the Standard Contracts, and the factors to consider in determining a reasonable rate.

10. The purpose and role of exchanges under the Standard Contracts.

11. The purpose and role of the provision on priority for shutdown reactors under the Standard Contract.

12. The earliest date that DOE currently believes that it will begin accepting spent fuel under the Standard Contracts.

13. The acceptance rate that DOE is planning to use once spent fuel acceptance begins pursuant to the Standard Contracts.

14. The purpose and role of provisions of the Standard Contracts governing, and DOE's plans for, scheduling acceptance and acceptance of failed fuel, including failed fuel at Dairyland's site.

15. The schedule on which DOE plans to remove Dairyland's spent fuel pursuant to Dairyland's Standard Contract.

16. The date on which DOE currently plans to complete picking up spent fuel from Dairyland's site.

17. The reasonableness or unreasonableness of Dairyland's expenditures on private fuel storage initiatives.

18. The reasonableness or unreasonableness of Dairyland's storage of its spent fuel in its spent fuel pool during the period subsequent to January 31, 1998.

19. The reasonableness or unreasonableness of Dairyland's study, analysis investigation and implementation of dry storage for its spent fuel during the period subsequent to January 31, 1998.

20. All efforts undertaken by or on behalf of DOE to examine the manner or process by which DOE would remove spent fuel from Dairyland's site.

21. The role, purpose and development of DOE's Transportation, Aging and Disposal Canister System ("TAD") and DOE's plans, if any, consistent with use of TAD to accept spent fuel stored in other containers.

# ATTACHMENT 5

02633

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------x
PACIFIC GAS & ELECTRIC :
COMPANY, :No. 04-74C
Plaintiff, :
vs. :
THE UNITED STATES, :
Defendant. :
-------------------------------x

Courtroom 5
National Courts Building
717 Madison Place NW
Washington, D.C.

Wednesday, June 14, 2006

VOLUME 8

The parties met, pursuant to the notice of the Judge at 9:00 a.m.

BEFORE THE HONORABLE EMILY C. HEWITT

02741

direction.
And I am the responsible manager within the program that addresses issues associated with the standard contract.
THE COURT: And when did you take responsibilities of that job?
THE WITNESS: As I testified yesterday --
THE COURT: Yes, just a review.
THE WITNESS: On an acting basis, I believe it was October of 2002. On a permanent basis, it was, I believe, in July of 2003.
THE COURT: Thanks.
BY MR. STOUCK:
Q. Do you remember having your deposition taken in the Yankee Atomic case?
A. I remember giving a deposition in that case, yes, I do.
MR. STOUCK: Your Honor, may I approach? This is for impeachment.
THE COURT: You may.
BY MR. STOUCK:
Q. Let me hand you a transcript of that deposition. The date is June 4, 1999. If you would take a look, Mr. Kouts, at page 91 of

this transcript. Starting on page -- excuse me, line 21 at the bottom, are you there?

A. Yes.

Q. You testified truthfully at this deposition, correct?

A. To my knowledge, yes.

Q. And you were under oath?

A. Yes.

Q. You were asked the following question and gave the following answer:

"Turning your attention back to Exhibit 3, which is the 1995 ACR and table 1 of that, which is on page four, the acceptance rates in these two documents are different," referring back to a prior document, "at least after the third year, starting the third year of shipping.

Which one of these receipt rates is going to be binding on the utilities, or which one of these receipt rates can utilities count on once the Department begins accepting spent fuel for disposal?"

A. Right.

Q. And your answer: "I don't know that I'm the one to answer that question. I really

02743

don't know. I couldn't tell you." Is that your testimony?
A. That's correct.
Q. Okay. And the agreements that DOE has with utilities through the standard contract is not an area of your expertise, is that correct?
A. At that time, it was not.
Q. Okay.
THE COURT: Remind the Court of your position prior to 2002.
THE WITNESS: Prior to 2002, in this timeframe?
THE COURT: 1999.
THE WITNESS: Right. In 1999, I believe, as I testified yesterday I, was the liaison between the Yucca Mountain and the director's office, and I was responsible for working on major policy products. At this point in time, we were preparing, working, getting ready to work on the Yucca Mountain site recommendation in the 1999 timeframe.
BY MR. STOUCK:
Q. Do you recall telling me at that deposition, or testifying at that deposition that only a lawyer would know if receipt rates

and ACRs or APRs are binding?

MR. LO RE: Your Honor, I'm going to object on the grounds that this is hearsay. I understand that the Court has allowed for the designation of testimony at a deposition. However, I do not think this is appropriate questioning at trial, since we have a witness live.

THE COURT: I think that the objection is well-taken. If you have a refresh recollection situation or a situation of impeachment, that's fine, and if you want to argue the point in briefing, that's fine, but we're not here to read the deposition, if that's what you're doing.

MR. STOUCK: I wasn't reading it. I was just going to ask him if he recalled giving that testimony. If he says yes, we're done.

THE COURT: You ask him the question, he gives you a different answer, you deal with it in the traditional fashion.

BY MR. STOUCK:

Q. Mr. Kouts, you don't know if receipt rates in ACRs and APRs are binding, right, only a lawyer would know that?

A. At that time, that was my understanding, yes.
Q. Is that your understanding today?
A. No, it's not.
Q: Okay. So your understanding has been obtained, your understanding about the contractual obligations has been obtained since June 4, 1999, is that correct?
A. I've learned more about the issue, yes, that's correct.
Q. Your understanding, whatever understandings you have about DOE's contractual obligations under the standard contract, you have obtained since June 4, 1999, correct?
A. That's correct.
Q. Now, you had no responsibility for or involvement with delivery commitment schedules, is that correct?
A. No, that's not correct.
Q. Would you take a look at the transcript again? June 4, 1999, page 163, would you please take a look at it?
A. Sure.
Q. If you take a look, Mr. Kouts, at page 163, on line 14, you were asked the following

# ATTACHMENT 6

# In the United States Court of Federal Claims

(Filed February 1, 2002)

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY<br>CONNECTICUT YANKEE ATOMIC POWER COMPANY<br>MAINE YANKEE ATOMIC POWER COMPANY<br>FLORIDA POWER & LIGHT COMPANY<br>NORTHERN STATES POWER COMPANY<br>DUKE POWER, A Division of DUKE ENERGY CORP.<br>INDIANA MICHIGAN POWER COMPANY<br>SACRAMENTO MUNICIPAL UTILITY DISTRICT<br>SOUTHERN NUCLEAR OPERATING COMPANY, et al.<br>COMMONWEALTH EDISON COMPANY<br>BOSTON EDISON COMPANY<br>GPU NUCLEAR, INCORPORATED<br>WISCONSIN ELECTRIC POWER COMPANY<br>POWER AUTHORITY OF THE STATE OF NEW YORK<br>OMAHA PUBLIC POWER DISTRICT<br>NEBRASKA PUBLIC POWER DISTRICT<br>TENNESSEE VALLEY AUTHORITY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | **Case Nos.**<br>**98-126C, 98-154C, 98-474C, 98-483C, 98-484C, 98-485C, 98-486C, 98-488C, 98-614C, 98-621C, 99-447C, 00-440C, 00-697C, 00-703C, 01-115C, 01-116C, 01-249C**<br><br>**UNCONSOLIDATED**<br><br>**Judge Diane Gilbert Sypolt**<br><br>**Discovery Judge** |

RECORDS COPY
Pleadings
CLIENT / MATTER # 419.001

## Order

On January 22, 2002, defendant filed a motion to reconsider the court's January 3, 2002 order lifting the suspension on coordinated discovery.

Defendant argues that plaintiffs have failed to demonstrate, pursuant to Rule 56(g) of the Rules of the Court of Federal Claims (RCFC), the need for discovery to respond to the pending motions for summary judgment and to dismiss. Notwithstanding the strength of defendant's arguments, in the interest of fully developing the record, the lifting of the stay of discovery procedures shall remain in effect and defendant's motion to reconsider the January 3, 2002 order is denied.

However, the scope of discovery shall be limited by RCFC 56(g) factors, i.e. to discovering facts essential to justify plaintiff's opposition to the dispositive motions. See **Simmons Oil Corp. v. Tesoro Petroleum Corp.**, 86 F.3d 1138, 1144 (Fed. Cir. 1996) ("A trial court's denial of a motion for further discovery under Rule 56[g] will not be deemed an abuse of discretion if 'there is no reason to believe that it will lead to the denial of a pending motion for summary judgment.'") (citation omitted); **Opryland USA Inc. v. Great American Music Show, Inc.**, 970 F.2d 847, 852 (Fed. Cir. 1992) (discovery under Rule 56[g] must be permitted if it is reasonably directed to "facts essential to justify the party's opposition..."); **Keebler Co. v. Murray Bakery Prods.**, 866 F.2d 1386, 1389-90 (Fed. Cir. 1989) (no abuse of discretion to deny vague, unfocused request for discovery under Rule 56[g]). See generally **Am. Sav. Bank v. United States**, 50 Fed. Cl. 586 (Smith, Senior J., 2001) (denying Rule 56(g) discovery where it would, at most, produce evidence irrelevant to the issue being decided on summary judgement); **First Heights Bank, F.S.B. v. United States**, 2001 U.S. Claims LEXIS 160, at * 24 (Bruggink, J., Aug. 16, 2001) (denying Rule 56(g) discovery "[b]ecause the discovery defendant seeks is not reasonably calculated to lead to the discovery of admissible evidence").

On January 24, 2002, plaintiffs filed a motion to revise the dates in the September 26, 2001 order governing the conduct of coordinated discovery, necessitated by the suspension of discovery between November 16, 2001, and January 3, 2002. Defendant's January 29, 2002 response generally recognizes the need for revising the schedule, but reiterates its argument that additional discovery should not be granted unless plaintiffs justify it under RCFC 56(g).

Upon consideration of the parties' arguments, the following schedule shall apply: 1) the parties shall exchange privilege logs on or before February 10, 2002; 2) depositions of document custodians shall be conducted on or before February 21, 2002 (if plaintiffs do not agree to a reasonable number of such depositions, the court will); 3) supplemental interrogatories and requests for admission shall be served on or before March 1, 2002; and 4) depositions shall be completed on or before April 30, 2002.

Defendant's request to postpone its depositions until after plaintiffs file their responses to the dispositive motions is allowed. Plaintiffs may conduct up to 10 depositions; additional depositions must be shown not to be cumulative and to be relevant and necessary to support plaintiff's case.

DIANE GILBERT SYPOLT*
Judge, U.S. Court of Federal Claims

---

* Appointed as Diane Gilbert Weinstein.

# ATTACHMENT 7

Pldgs.

# In the United States Court of Federal Claims

(Filed March 5, 2002)

FILED
MAR 5 2002
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY<br>CONNECTICUT YANKEE ATOMIC POWER COMPANY<br>MAINE YANKEE ATOMIC POWER COMPANY<br>FLORIDA POWER & LIGHT COMPANY<br>NORTHERN STATES POWER COMPANY<br>DUKE POWER, A Division of DUKE ENERGY CORP.<br>INDIANA MICHIGAN POWER COMPANY<br>SACRAMENTO MUNICIPAL UTILITY DISTRICT<br>SOUTHERN NUCLEAR OPERATING COMPANY, et al.<br>COMMONWEALTH EDISON COMPANY<br>BOSTON EDISON COMPANY<br>GPU NUCLEAR, INCORPORATED<br>WISCONSIN ELECTRIC POWER COMPANY<br>POWER AUTHORITY OF THE STATE OF NEW YORK<br>OMAHA PUBLIC POWER DISTRICT<br>NEBRASKA PUBLIC POWER DISTRICT<br>TENNESSEE VALLEY AUTHORITY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case Nos. 98-126C, 98-154C, 98-474C, 98-483C, 98-484C, 98-485C, 98-486C, 98-488C, 98-614C, 98-621C, 99-447C, 00-440C, 00-697C, 00-703C, 01-115C, 01-116C, 01-249C<br><br>UNCONSOLIDATED<br><br>Judge Diane Gilbert Sypolt<br><br>Discovery Judge |

## Order

On February 25, 2002, defendant filed a motion to preclude or, in the alternative, defer, depositions pursuant to Rule 30(b)(6) of the Rules of the

Court of Federal Claims (RCFC). Defendant objects to plaintiffs' proposed topics for RCFC 30(b)(6) depositions as overbroad and unduly burdensome and proposes substitution of other discovery devices. Plaintiffs argue that the RCFC 30(b)(6) depositions should not be deferred or substituted for because "the government has failed to establish the heavy burden necessary for limiting discovery."

The court's February 1, 2002 order stated: "...the scope of discovery shall be limited by RCFC 56(g) factors, i.e. to discovering facts essential to justify plaintiffs' opposition to the dispositive motions." The order also limited plaintiffs to 10 depositions of fact witnesses. In light of the need to develop a full record while avoiding undue delay, the defendant's motion is denied and the court will allow RCFC 30(b)(6) depositions of up to 3 government witnesses, who shall be counted toward the 10 deponents permitted by the February 1, 2002 order. The RCFC 30(b)(6) depositions shall be conducted on the topics listed in plaintiffs' response under attachment B. Additional non-RCFC 30(b)(6) depositions will be permitted only upon a showing of extreme need, specifically, that the information sought from the proposed additional deponents is critical to responding to the dispositive motions and has not been, nor could be, obtained in any other way.

DIANE GILBERT SYPOLT*
Judge, U.S. Court of Federal Claims

* Appointed as Judge DIANE GILBERT WEINSTEIN.