ATTACHMENT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following responses to "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to any document so produced, or as to any other document.

2. Exceeding obligations imposed by the Court's rules and orders: Defendant objects to the instructions and definitions accompanying plaintiff's interrogatories to the extent that such instructions and definitions attempt to impose obligations on defendant other than those

imposed by RCFC 26 and 34 and the Court's prior orders, including but not limited to, information regarding electronic mail will be produced only in accordance with the requirements provided by the Court's prior order, dated March 14, 2005, limiting the parties' obligations to preserve or search e-mail tapes.

3. Conclusions regarding legal significance of documents: Defendant objects to the plaintiff's interrogatories upon the grounds and to the extent that, by them, plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

4. Work product information: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks information prepared and/or developed in anticipation of litigation and/or for trial when plaintiff has not shown that it has substantial need of such materials in the preparation of its case in that plaintiff is unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

5. Irrelevant material: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks the discovery of information which is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6. Vague, overly broad, and unduly burdensome: Defendant objects to plaintiff's interrogatories on the grounds that the manner in which they are worded, when read with their definitions and general instructions, are so vague, broad, general, and all inclusive that they do not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive. Defendant further objects to these interrogatories to the extent that, to respond to them, defendant would be required to make an extensive investigation, research, compilation,

and evaluation of data and records in its possession, which would constitute annoyance, harassment, oppression, undue burden, and undue expense to defendant.

7. Inferences from interrogatories: Defendant objects to any inference that can be drawn from any portion of plaintiff's interrogatories or the responses to them that the documents requested or events referenced in the requests actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by defendant that such information exists or that such events actually occurred.

8. Scope Of The Government As Responding Party: Defendant objects to plaintiff's interrogatories to the extent that they define the term "DOE," or the Department of Energy, to include any Government agencies, offices, bodies, affiliates, contractors, consultants, or individuals other than the Department of Energy itself. To define the term "DOE" as including entities other than DOE itself would render all of plaintiff's discovery requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, because doing so would require defendant to seek information from, and about, more than one million Federal employees in numerous offices, agencies, and departments, the missions of which have no relation whatsoever to plaintiff's contract and the locations of which are scattered across the nation and around the world. Further, defendant objects to these interrogatories to the extent that they purport to seek information from the files of the entire Federal Government. In responding to these interrogatories, defendant has focused upon the knowledge of the Department of Energy.

9. The objections set forth above apply to each of the numbered paragraphs of plaintiff's interrogatories.

DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES

INTERROGATORY NO. 1:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of any COMMUNICATIONS between DOE and/or NRC on the one hand and DAIRYLAND on the other hand RELATING TO SPENT FUEL. For each PERSON identified, DESCRIBE in detail all aspects of that PERSON's involvement.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section and because plaintiff has an equal ability to identify the requested information as defendant, given that plaintiff and defendant were both equally involved in communications between plaintiff and defendant. See Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005). Defendant further objects to this interrogatory as irrelevant, given that not every possible communication somehow relating to spent nuclear fuel is related to the damages that plaintiff seeks in this case. We are also unable to identify all such individuals for the reasons set forth in General Objections Nos. 1, 2, 4, 5, 6, and 8, which are incorporated into this response by reference. Defendant also objects to this interrogatory to the extent that it seeks information that is already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff. See Pacific Gas, 69 Fed. Cl. at 325-26.

Without waiving these objections, defendant states that, with regard to the Department of Energy ("DOE"), defendant has previously produced DOE's contract files relating to Dairyland's Standard Contract, which contain communications between Dairyland and DOE, and other files

containing communications between Dairyland and DOE from which, pursuant to RCFC 33(d), plaintiff may ascertain an answer to this interrogatory as easily as defendant. Defendant further states that individuals employed by DOE who may have had some involvement relating to communications with Dairyland may include David Zabransky, Thomas Pollog, Nancy Slater, Alan Brownstein, Susan Klein, and James Carlson. Defendant further states that, with regard to the Nuclear Regulatory Commission ("NRC"), plaintiff, pursuant to RCFC 33(d), should be able to identify a list of individuals who would have had such involvement from the database of documents previously made available, or to be made available, to plaintiff or from the ADAMS database that is available for searching at the NRC, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant.

INTERROGATORY NO. 2:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or of any DOCUMENTS or COMMUNICATIONS RELATED TO the decommissioning of LACBWR. For each PERSON identified, describe in detail all aspects of that PERSON's involvement.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section and because plaintiff should have an equal ability to identify the requested information as defendant, given that plaintiff and defendant were both equally involved in communications between plaintiff and defendant. See Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005). Defendant further objects to this interrogatory as irrelevant, given that not

every possible communication somehow relating to the decommissioning of the LaCrosse reactor is related to the damages that plaintiff seeks in this case. We are also unable to identify all such individuals for the reasons set forth in General Objections Nos. 1, 2, 4, 5, 6, and 8, which are incorporated into this response by reference. Defendant also objects to this interrogatory to the extent that it seeks information that is already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff. See Pacific Gas, 69 Fed. Cl. at 325-26.

Without waiving these objections, defendant states that, with regard to the Department of Energy ("DOE"), defendant has previously produced DOE's contract files relating to Dairyland's Standard Contract, which contain communications between Dairyland and DOE, and other files containing communications between Dairyland and DOE from which, pursuant to RCFC 33(d), plaintiff may ascertain an answer to this interrogatory as easily as defendant. Defendant avers, however, that it is currently unaware of any DOE documents or communications relating to the decommissioning of the LaCrosse reactor. Defendant further states that, with regard to the NRC and pursuant to RCFC 33(d), plaintiff should be able to identify a list of individuals who would have had such involvement from the database of documents previously made available, or to be made available, to plaintiff or from the ADAMS database that is available for searching at the NRC, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant.

INTERROGATORY NO. 3:

Do you contend that the annual receiving capacity listed in any of the Annual Capacity Reports issued by DOE since January 1, 1998 pursuant to the NWPA is binding on DOE and/or DAIRYLAND? If so, explain all bases for such a contention.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

Without waiving this objection, the table titled "Summary of Purchasers' Annual Allocations (MTU)" in the Annual Capacity Reports identifies an acceptance allocation to Purchasers. As set forth in the Standard Contract, the 1991 Annual Capacity Report ("ACR"), in conjunction with the 1991 Annual Priority Ranking ("APR"), was the document by which DOE began making firm acceptance commitments to individual utilities based upon the delivery commitment schedules submitted by Purchasers that DOE approved. After issuance of the 1991 ACR/APR, and in accordance with Article V.B.1 of the Standard Contract, the plaintiff in this action submitted several Delivery Commitment Schedules ("DCSs") to the Department of Energy. DOE also issued annual capacity reports and acceptance priority rankings dated 1992, 1994, and 1995, and many nuclear utility plaintiffs with cases pending before the Court of Federal Claims submitted DCSs in response to these ACR/APRs. In submitting their DCSs, the plaintiffs ultimately relied upon the allocations identified in the referenced ACR/APRs. DOE approved several DCSs for the plaintiff in this action. Those DCSs identify both the amount of spent nuclear fuel and high-level radioactive waste (collectively, "SNF") and the location of SNF for which an allocation exists under the relevant ACR/APR for a given year. No other binding "schedules" applicable to the Standard Contract were issued by the Department of Energy or accepted by the Department of Energy through the approval of DCSs. The basis for the rate and order of SNF acceptance identified in this interrogatory response are the ACR/APRs issued

beginning in 1991, the DCSs that the plaintiff and other contract holders submitted to DOE, and DOE's approval of those DCSs.

With regard to plaintiff's request regarding ACRs issued "since January 1, 1998," the only ACR that DOE issued since that time was the 2004 ACR. That ACR did not result in any approved DCSs and, as the 2004 ACR itself stated, the information contained in the 2004 ACR was for informational purposes only and was not binding on DOE.

INTERROGATORY NO. 4:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of responses to the delivery commitment schedules DAIRYLAND submitted to DOE. For each PERSON identified, DESCRIBE in detail the activities in which they engaged RELATED TO these activities.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant also objects to this interrogatory to the extent that it seeks information already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff.

Without waiving these objections, defendant states that, pursuant to RCFC 33(d), the answer(s) to this interrogatory may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. Defendant has previously produced DOE's files relating to Dairyland's Standard Contract, which contain DOE's records regarding

delivery commitment schedules that Dairyland submitted. Defendant further states that individuals employed by DOE who may have had some involvement relating to DCSs that Dairyland submitted in response to the 1991 ACR/APR may include Nancy Slater, Alan Brownstein, Linda Strand, and Michael Detmer and those who may have had some involvement relating to DCSs that Dairyland submitted in response to the 2004 ACR/APR may include David Zabransky, Thomas Pollog, and Christopher Kouts.

INTERROGATORY NO. 5:

On what schedule (measured in Metric Tons Uranium) does DOE contend it is obligated to remove DAIRYLAND's SPENT FUEL pursuant to DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? State all factual and legal grounds for this contention.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

Without waiving this objection, defendant incorporates by reference its response to Interrogatory No. 3.

INTERROGATORY NO. 6:

On what schedule (measured in Metric Tons Uranium) does DOE plan to remove DAIRYLAND's SPENT FUEL pursuant to DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? DESCRIBE if, how, and when this plan has changed since the execution of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT; IDENTIFY all documents and

evidence RELATED TO this plan; IDENTIFY the five people with the most knowledge of this plan and the nature of such knowledge.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

INTERROGATORY NO. 7:

IDENTIFY the earliest date on which DOE reasonably believes it will begin to take delivery of SPENT FUEL from PURCHASERS under their STANDARD CONTRACTS and/or DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir.

2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

INTERROGATORY NO. 8:

On what date does DOE currently plan to complete picking up SPENT FUEL from LACBWR? DESCRIBE how this plan has changed since the execution of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT; IDENTIFY all evidence RELATED TO this plan; IDENTIFY the five people with the most knowledge of this plan and the nature of such knowledge.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

INTERROGATORY NO. 9:

Do you contend that it was or would have been unreasonable for DAIRYLAND to study, analyze, investigate and/or implement dry storage of its SPENT FUEL at any time subsequent to DOE's partial breach of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, explain all bases for this contention.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature. Through discovery, defendant anticipates that it may analyze Dairyland's SNF storage decisions and make determinations, for purposes of this litigation, regarding the appropriateness of those decisions. We have not had sufficient discovery in this case to make those determinations at this time. Until we have obtained such discovery and evaluated Dairyland's storage decisions, such determinations are premature.

INTERROGATORY NO. 10:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of any DOCUMENT or COMMUNICATIONS RELATED TO the removal, transport, storage and disposal of the reactor pressure vessel from LACBWR. For each PERSON identified, DESCRIBE in detail all aspects of that PERSON's involvement.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section and because plaintiff should have an equal ability to defendant to identify the requested information regarding "communications" between the Government and plaintiff, given that plaintiff and defendant were both equally involved in communications between plaintiff and defendant. See Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005). Defendant further objects to this interrogatory as irrelevant, given that not every possible document or communication somehow relating to the removal, transport, storage, or disposal of

the reactor pressure vessel from the LaCrosse reactor is related to the damages that plaintiff seeks in this case. We are also unable to identify all responsive individuals for the reasons set forth in General Objections Nos. 1, 2, 4, 5, 6, and 8, which are incorporated into this response by reference. Defendant also objects to this interrogatory to the extent that it seeks information that is already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff. See Pacific Gas, 69 Fed. Cl. at 325-26.

Without waiving these objections, defendant states that, with regard to the Department of Energy ("DOE"), defendant has previously produced DOE's contract files relating to Dairyland's Standard Contract, which contain communications between Dairyland and DOE, and other files containing communications between Dairyland and DOE from which, pursuant to RCFC 33(d), plaintiff may ascertain an answer to this interrogatory as easily as defendant. Defendant avers, however, that it is currently unaware of any DOE documents or communications that would have involved DOE employees. Defendant further states that, with regard to the NRC and pursuant to RCFC 33(d), plaintiff should be able to identify a list of individuals who would have had such involvement, if any, from the database of documents previously made available, or to be made available, to plaintiff or from the ADAMS database that is available for searching at the NRC, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant.

INTERROGATORY NO. 11:

Has DOE given any consideration or undertaken any study, analysis, or investigation of the manner in which DOE will or could dispose of FAILED FUEL? If not, explain why DOE has not considered or studied this topic. If so, also IDENTIFY:

a. The nature of such consideration, study, analysis or investigation.

b. The timeframe of such consideration, study, analysis or investigation.

c. All individuals who participated in such consideration, study, analysis or investigation.

d. The results and/or conclusions of such consideration, study, analysis or investigation.

e. Whether such consideration, study, analysis or investigation included the possibility of storing or disposing of FAILED FUEL in a facility or location other than the deep geologic repository.

RESPONSE:

Defendant objects to this interrogatory as vague, overly broad, irrelevant, and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Plaintiff's interrogatory is not limited to failed fuel in the possession of or generated by Dairyland or other Standard Contract holders. Further, not every aspect of failed fuel is in any way related to Dairyland's damages claim in this litigation. Further, because of the manner in which Dairyland's request is broadly phrased, almost any document having anything to do with spent nuclear fuel storage or disposal could be "related" to this interrogatory, further rendering it overly broad and unduly burdensome.

Without waiving these objections, defendant states that there are large quantities of documents available on the Record Information System website ("RIS-Web") that are potentially responsive to this request and which, pursuant to RCFC 33(d), plaintiff can attempt to develop a response to this extremely broad inquiry. Without any further refinement and narrowing of

plaintiff's request, defendant cannot provide any further response to this inquiry. To the extent that plaintiff is able to narrow its interrogatory to permit a targeted search and response, defendant is willing to evaluate that narrowed request and respond appropriately.

INTERROGATORY NO. 12:

Does DOE plan to accept delivery of FAILED FUEL from DAIRYLAND on a different schedule than the rest of DAIRYLAND's SPENT FUEL before it completes taking delivery of other SPENT FUEL from DAIRYLAND? If so, DESCRIBE the schedule DOE is planning to use for picking up DAIRYLAND's FAILED FUEL.

RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

INTERROGATORY NO. 13:

Do you contend that DOE would have picked up DAIRYLAND's FAILED FUEL later than the rest of its SPENT FUEL had the government begun SPENT FUEL acceptance from utilities starting not later than January 31, 1998? If so, state all bases for this contention.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature prior to the completion of fact discovery, given that defendant does not have adequate information regarding plaintiff's failed fuel to respond appropriately to this interrogatory. Defendant objects to this interrogatory as vague, overly broad, and unduly burdensome. Given that the design parameters for any storage facility that DOE might operate have not yet been defined, it is impossible to identify every technical impediment that could occur in the acceptance of failed fuel from Dairyland's nuclear reactor.

Without waiving these objections, defendant responds that, during his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for a response to this interrogatory. Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

INTERROGATORY NO. 14:

Do you contend that DAIRYLAND's expenditures supporting PFS were unreasonable expenditures toward mitigation of DAIRYLAND's damages due to DOE's partial breach of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, state all bases for this contention.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as any determination of whether, from a business or profit-making standpoint upon Dairyland's part, it was "unreasonable" for Dairyland to invest in Private Fuel Storage ("PFS") cannot be made prior to the completion of discovery.

Without waiving these objections, defendant states that, as we have explained in prior briefing in several of the SNF cases pending before this Court, any investment in PFS was not foreseeable at the time of contract formation and, further, was wholly speculative. Any such investment could not be considered proper "mitigation" of DOE's delay in beginning SNF acceptance.

INTERROGATORY NO. 15:

Do you contend that it was unreasonable for DAIRYLAND to store its SPENT FUEL in the LACBWR wet fuel storage pool at any time after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, DESCRIBE when you contend it became unreasonable for DAIRYLAND to continue to store its SPENT FUEL in the LACBWR wet fuel storage pool and DESCRIBE the specific alternative storage options you believe would have been reasonable for DAIRYLAND to employ to store its SPENT FUEL from that point onward.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

INTERROGATORY NO. 16:

DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its SPENT FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its SPENT FUEL that are different from those options explored and/or implemented to store DAIRYLAND'S FAILED FUEL, DESCRIBE how and why they should have been different.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

INTERROGATORY NO. 17:

DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its FAILED FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its FAILED FUEL that are different from those options explored or implemented to store DAIRYLAND'S SPENT FUEL, DESCRIBE how and why they should have been different.

RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

INTERROGATORY NO. 18:

DESCRIBE all efforts undertaken by or on behalf of DOE to examine the manner or process by which DOE would remove SPENT FUEL from LACBWR. IDENTIFY the five people with the most knowledge of these efforts and the nature of such knowledge.

RESPONSE:

Defendant objects to this interrogatory as vague, overly broad, irrelevant, and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this request to the extent that it relates to the manner in which DOE may, in the future, remove fuel from the LaCrosse reactor because, in accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation. Defendant also objects to plaintiff's demand that defendant identify the "five people with the most knowledge" of the efforts identified, as plaintiff is requesting that counsel for defendant interview all individuals within DOE who may have had some involvement in matters and made judgment calls regarding the level of their current knowledge and memory, and plaintiff would then require defendant to disclose the results of the attorney work product; nevertheless, defendant will undertake to identify individuals whom, from a review of documents, may have some knowledge of the efforts identified based upon their apparent involvement in such efforts.

Without waiving these objections, defendant states that, pursuant to RCFC 33(d), the answer(s) to this interrogatory may be obtained from the database of documents previously made

available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. To the degree that it has not already done so, defendant will make the database of documents available to plaintiff at mutually acceptable times to allow plaintiff to inspect such records and make such copies as plaintiff deems appropriate. Documents that may contain information responsive to this request include the Facility Interface Data Study (MOL.20060121.0173), the Facility Interface Capability Assessment, the Near-Site Transportation Infrastructure study, and Service Planning Documents.

With regard to plaintiff's request for identification of individuals who may have been involved in the efforts identified in this interrogatory, defendant is unaware of any individuals who would have worked upon or studied the removal of spent nuclear fuel specifically from the LaCrosse reactor or the LaCrosse site itself. However, individuals may have contemplated the removal of spent nuclear fuel from nuclear utilities in general. Pursuant to RCFC 33(d), the names of those individuals – either DOE employees or contractor employees – may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. However, those individuals may include David Zabransky, Ned Larson, and Robert Burgoyne.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
FAX: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

December 8, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 8th day of December 2006, I caused to served by overnight courier (Federal Express, for next business-day delivery) a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES," addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

[signature]