ATTACHMENT 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-106C<br><br>(Chief Judge Damich) |

DECLARATION OF TODD MONROE
CONCERNING GOVERNMENT DOCUMENT PRODUCTION

1. I am currently an associate with Greenberg Traurig, LLP. I previously worked as a law clerk with Jerry Stouck and Robert Shapiro on other spent fuel cases pending before the court. In addition, I was actively involved with the Pacific Gas & Electric ("PG&E") case and am currently working on the above-captioned case. In that work, I have had extensive exposure with the government's document productions in the various spent fuel cases.

Dairyland Power Cooperative Document Production

2. I was one of the attorneys that supervised and conducted the collection, processing and subsequent production of documents from Dairyland Power Cooperative ("Dairyland"). Dairyland produced approximately 180,000 pages of responsive documents to the government as part of its initial disclosures and in response to the government's request for the production of documents and interrogatories. Dairyland provided in its interrogatory responses, where reasonable and relevant, citations to specific document titles, dates and Bates numbers. Endeavoring to assist the government with searching and reviewing Dairyland's document production, the documents were labeled with only two

Bates prefixes (indicating general geographic location where documents were collected) with the exception of approximately 2,000 pages which were intended solely as initial disclosures. In addition, Dairyland voluntarily provided bibliographic coding ("bib-coding") for nearly all of the documents produced to the government. Dairyland's bib-coding included for nearly every document, beginning and ending Bates number, document type (i.e., file folder/binder tabs, letter, e-mail, etc.) document date, title, author, recipient, copyee and custodian. Further, where available, we directed that file folders and binder tabs be scanned and included in the production. Over 1600 file folders and binder tabs are included in the bibliographic coding. These markers provide the government with the boundaries and subject matter of certain document collections.

3. Dairyland incurred great expense in processing its documents prior to production, including scanning the documents into portable electronic images, Bates numbering and bib-coding. While under no obligation to do so, Dairyland (and other spent fuel plaintiffs, including PG&E and the Yankees) provides this data to the government to assist in the review of the document production. These tools should allow the government to identify which documents may be responsive to particular document requests or interrogatories.

Government Document Production

4. The government has been producing documents for well over six years in the various spent fuel cases. Until recently, the government provided those productions directly to counsel for each utility plaintiff. On September 17, 2004, Marian Sullivan, a trial attorney with the Department of Justice sent a letter to various counsel for several spent fuel plaintiffs regarding "Access To The Secure Website For Government Production

of Documents." Exh. A. Ms Sullivan explained that "[t]he Government is prepared to make available the website upon which all future production of documents to plaintiffs in the spent nuclear fuel ("SNF") cases will be made." Exh. A at 1. This production website[1] lists May 6, 2005 as the day when the government loaded its first productions (identified as CDs) on the site. The government has since that date, loaded 264 separate CDs on the production website. Included on these CDs are well over 1,000,000 separate pages.

5. The government's method of providing documents to utility plaintiffs imposes a substantial burden. The government on numerous occasions has provided responses to documents requests and interrogatories with direction to search those documents already produced.[2] Since discovery commenced in this case on August 28, 2006 the government has not specifically produced to Dairyland's counsel, a single document, electronic or otherwise. Moreover, since discovery opened in this case, the government has posted less than 2500 pages to its website, noting however, that they were "[c]ontractor and/or DOE PFS documents gathered in response to a production request from Northern States Power."

6. Unlike Dairyland, the government provides no bib-coding with its document productions. It provides only the beginning and ending Bates number for each document and a general reference to from where the document was collected. Often, the custodial information provided is deficient. Instead of the name of a person from whose files the documents were collected, the government offers generically "Miscellaneous, FOIA

---

[1] Located at: http://65.242.120.195/snf/cgi-bin/main.pl. Last visited December 18, 2006.
[2] "[A]nswers to this interrogatory may be obtained from the database of documents previously made available, or to be made available, to plantiff. . ..," Def.'s Resp. to Dairyland's First Set of Interrogatories at 8, December 8, 2006. "[D]efendant states that it has previously produced or made available numerous non-privileged documents within its control responsive to this request that have been made available to plaintiff. . .." Def.'s Responses to Dairyland's First Request for Production of Documents at 13, December 8, 2006.

production; Pacific Northwest Laboratories contractors documents; Savannah River; Idaho Falls; Various File owners including J. Williams." There are dozens of custodians listed on the government's "Production CD List" and many custodians are listed numerous times. There is however, no indication of when a collection or production was initially made, so it is impossible to determine if the government collected the documents during an initial search of the files or if they were the result of a supplemental search and production or in response to a specific document request. Absent some method of organizing or sorting these million pages, it would be impossible to even begin reviewing these documents.

7. In it's September 17, 2004 letter the government explains that "[b]ecause the Government will use the website to produce documents to counsel in the recently filed cases, the Government's previous document production will be provided on the site, in the same format as the documents previously produced by disk." This statement implies some level of consistency between what was previously produced and what is posted on the website. The government however, lists forty CDs that appear to be revisions of earlier productions, including YA214NPR_REV2, YA213NPR_REV4, and YA166NPR_REV5. The government provides no information concerning these revisions, precluding Dairyland or any other utility plaintiff from determining why the production was changed, what was changed or even when the original production was made or even when later versions were posted. During preparation for trial *Pacific Gas and Electric v. United States*, No. 04-74C, PG&E was made aware of a problem with two of the aforementioned CDs (YA214NPR_REV2, YA213NPR_REV4). While preparing to perform the bib-coding of those documents, PG&E's vendor discovered that the production included different pages which were assigned the same Bates numbers and inconsistent with other productions,

document file names/numbers did not match the assigned Bates numbers. The issue was presented to Harold D. Lester, Assistant Director to the Commercial Litigation Branch, who explained in an August 30, 2005 letter (Exh. B) how DOJ planned to address the issue and promised to "repost those two CDs once that effort is completed." However, the government's website does not reflect a later revision nor a production date for these CDs subsequent to the date of Mr. Lester's letter. Although conceding that the government's document production duplicated Bates numbers, Mr. Lester expresses the expectation that we should be able to work around the issue, solely on the basis that "these documents were produced to counsel in the *Yankee Atomic* cases in December 2002." The government has on other occasions taken similar positions regarding the document production website. This issue arose in a production posted in May 2005. Despite that fact, the government wants Dairyland to rely upon documents produced almost three years prior to an unrelated plaintiff, before Dairyland's case was even filed.

8. In announcing the document production website, the government explained that "[a]lthough the material to which counsel will be given access will be the same, the website will be organized by case." Exh. A at 2. There is no indication the document production website is organized by case. Aside from a few of the 264 entries which indicate they were produced in response to a specific request (*i.e.,* YA926, "Contractor and/or DOE PFS documents gathered in response to a production request from Northern States Power"), the government provides no case-specific information. With no guidance from the producing party, it is impossible to know if a particular CD is responsive to the discovery requests of a specific plaintiff. Nor do the documents appear to be produced as they are kept in the usual course of business. Similarly, it was explained, and has been

standard procedure, that a notification email would be sent to counsel when a new CD was posted. We have not received a notification for the past five productions.

9. The government's production website includes seven Excel files, described as privilege and supplemental privilege logs. The last supplemental privilege log was posted in October 2005. The government has posted 15 new or revised CD's since October 2005, representing over 20,000 pages of documents. The government, thus, appears to take the position that there were no privileged documents or even privileged parts of documents in the entirety of the responsive documents resulting in the production of those 20,000 pages.

I declare under the penalty of perjury foregoing is true and correct.

12/28/06
Date

Todd Monroe

U.S. Departı. .t of Justice

Civil Division

RECORDS COPY
C & M

CLIENT / MATTER # 0419.0001

Washington, D.C. 20530

September 17, 2004

VIA FACSIMILE AND UNITED STATES MAIL

COUNSEL FOR PLAINTIFFS IN CASES ARISING UNDER THE STANDARD CONTRACT AT 10 C.F.R. PART 961 PENDING BEFORE THE UNITED STATES COURT OF FEDERAL CLAIMS

Re: Access To The Secure Website For Government Production Of Documents

Dear Counsel:

The Government is prepared to make available the website upon which all future production of documents to plaintiffs in the spent nuclear fuel ("SNF") cases will be made. As explained in previous correspondence, given the number of plaintiffs and the number of counsel representing the plaintiffs, the Government has worked to develop a procedure to allow for a more cost-efficient production of documents in these cases. Because the Government will use the website to produce documents to counsel in the recently filed cases, the Government's previous document production will be provided on the site, in the same format as the documents previously produced by disk. Information identifying the individuals from whom or organizations from which the documents were collected will also be made available upon the website. As new documents are produced, counsel will be notified by email that they have been added to the website and the manner in which counsel can locate the new materials on the website.

To access the site, counsel for plaintiffs will be provided with a site address and a password. So that these addresses and passwords may be distributed, the Government requests that counsel complete the attached form and forward the completed form to Jason Ivarone, CACI, fax number (202) 347-3618. Mr. Ivarone may also be contacted via e-mail at Jason.Ivarone@usdoj.gov. After the information in the access request form has been processed, Mr.

Ivarone will provide to counsel by email the site address and password. Depending upon the number of requests for access received, we expect that Mr. Ivarone will be able to provide the site address and passwords within a couple of days of receipt of the completed form. For counsel of record in cases for which the protective order has not been entered, the Government will continue to monitor the entry of the protective order and instruct CACI to provide the site address and password to counsel as soon as the protective order is entered.

Although the materials to which counsel will be given access will be the same, the website will be organized by case, so counsel must indicate on the request form all cases for which access is sought. Counsel may submit access request forms for as many individuals as necessary. If more than one access request form is submitted for a case, the Government requests that the counsel of record for that case be identified on the form. Alternatively, counsel may choose to employ the same site address and password for all of the individuals working on a case. If this method is employed, Government counsel expects that counsel for plaintiff will ensure that individuals granted access will be covered by the protective order.

Any technical questions regarding access to the site or downloading of documents can be addressed to Mr. Ivarone. Any substantive questions regarding the documents being produced or the timing of the production should be addressed to counsel of record in the case at issue or to me at (202) 307-6288.

Sincerely,

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch

Enclosure

Distribution:

M. Stanford Blanton
Balch & Bingham
1710 Sixth Avenue North
Birmingham, Alabama 35203

Howard Cayne
Arnold & Porter
555 Twelfth Street, N.W.
Washington, D.C. 20004

Richard Conway
Dickstein, Shapiro, Morin & Oshinsky LLP
2101 L Street, N.W.
Washington D.C. 20037

Brad Fagg
Morgan Lewis & Bochius, LLP
1111 Pennsylvania Ave., N.W.
Washington D.C. 20004

Stephen D. Harvey
BWX Technology, Inc.
2016 Mount Athens
Lynchburg, Virginia 24504-5447

Michael Henke
Vinson & Elkins
The Willard Office Building
Suite 600
1455 Pennsylvania Ave., N.W.
Washington D.C. 20004-1008

Norman M. Hirsch
Jenner & Block
One IBM Plaza
Chicago, Illinois 60611-7603

Barry S. Hyman
Schiff Hardin, LLP
6600 Sears Tower
Chicago, Illinois 60606

Thomas Mason
William, Mullen, Clark & Dobbins
8270 Greensboro Drive
McLean, Virginia 22102

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue
Suite 4800
Seattle, Washington 98101-3099

Peter K. Shea
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401

Jerry Stouck
Spriggs & Hollingsworth
1350 I Street, N.W., 9th Floor
Washington D.C. 20005-3305

Alex D. Tomaszczuk
Shaw Pittman, LLP
1650 Tysons Blvd.
McLean, Virginia 22102-4859

## Spent Fuel Production Access Request Form

**Requestor's Information**

Full Name (Last, First)

Company/Firm

Location

Phone

Email Address

Attorney of Record

Case Name (s)

Comments

Signature

Date

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL
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

Telephone: (202) 305-7562
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

August 30, 2005

VIA TELECOPY AND FIRST CLASS MAIL

Todd W. Monroe
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-074C, 04-075C (Fed. Cl.)

Dear Mr. Monroe:

This letter is in response to your letter to John C. Ekman dated August 23, 2005, which we received by telecopy in the late afternoon that day, and will summarize the information that I provided to you in a voicemail message on Friday morning, August 26, 2005. In your August 23, 2005 letter, you indicated that there were "several issues with document volumes posted on the government's Spent Fuel Production Website" and that there "are numerous examples where documents either share the same bates number or the tiff file names do not match the document bates numbers."

As a result of Mr. Ekman's telephone conversation with you in the late morning on August 24, 2005, as well as my telephone conversation with you later in the day on August 24, 2005, we understand that the problems that you identify in your August 23, 2005 letter are limited to the bates stamp numbering and tiff numbering on only two of the production CDs, CD Nos. 213 and 214. I understand from our telephone conversation on August 24, 2005, that the problems which your office has encountered on those two CDs are two-fold: first, some of the electronically-assigned tiff numbers do not correspond with the bates stamp numbers that had been affixed by hand to the documents produced on those two CDs, and, second, there are bates stamp numbers that duplicate one another. I further understand that, except for CD Nos. 213 and 214, your office has not otherwise identified these technical problems on any other production CDs.

PAGE 2/4 * RCVD AT 8/30/2005 2:53:51 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):01-42

BACKGROUND

The documents now contained in CD Nos. 213 and 214 were originally produced in hard copy paper form as YA213rev2 and YA214rev4 in December 2002 to counsel for the Yankee Atomic plaintiffs, who also serves as counsel for the plaintiff in this case. Before producing those documents in paper form, the Government embossed each page of that production with a bates stamp number, which was affixed to the page by hand before the documents were photocopied. The Government also produced a privilege log, identifying those documents from the YA213 and YA214 collections that had been withheld as privileged by reference to the previously affixed bates stamp numbers. When a document contained in YA213 and YA214 was identified as privileged, we removed that document from the collection and replaced it with a page labelled "Image Deleted Due To Privilege."

Subsequently, the documents were processed electronically for posting to the production website. Generally, when documents are to be processed and produced electronically, we do not manually affix bates stamp numbers to the hard copy pages of the documents to be produced. Instead, when the documents are processed electronically, a tiff file name or number is programatically assigned to the images, which allows the reader to see the unique identifier that is provided for that particular image. In electronic productions, these tiff numbers essentially become the bates stamp numbers.[1]

With regard to CD Nos. 213 and 214, the documents in those CDs contain both a hand-affixed bates stamp number and a tiff number (assigned automatically during the process of electronic processing). Because certain pages from those collections had been removed for privilege and then electronically renumbered, and because of the existence of additional suffix pages as part of the paper document production, the tiff numbering shifted somewhat from the original manual bates stamp numbering. As a result, in CD Nos. 213 and 214, there are two overlapping sets of bates numbers for some of these documents: the original bates stamp number and the electronically assigned tiff number. The only pages on CD Nos. 213 and 214 that do not contain both a bates stamp number and a tiff number are those pages containing the language "Image Deleted Due To Privilege;" for those pages, only a tiff number has been assigned, as no bates stamp numbers were manually affixed to these pages.

RESOLUTION OF THE PROBLEMS THAT YOU HAVE IDENTIFIED

In your August 23, 2005 letter, you first identify that there are two sets of bates stamp numbers for each of the documents contained in CD Nos. 213 and 214. To resolve this issue,

---

[1] In the transmittal cover sheet that accompanied your telecopy dated August 24, 2005, you mentioned that the "tiff name" for HQR2510103 was 00000085.tif. If the printer instructions requested that the tiff number be printed on the actual document, the tiff number would be converted and and printed on the document with a "HQR251" prefix.

and because the privilege log entries relate to the original hand-stamped bates stamp numbers, please disregard the tiff numbering for these two CDs. Instead, rely only on the hand-stamped bates stamp numbers that are embossed onto each of the documents on CD Nos. 213 and 214. Although the pages containing the language "Image Deleted Due To Privilege" do not contain any manually affixed bates stamp numbering, those pages are simply placeholders and are unnecessary to the identification of privileged documents in the Government's privilege log.

In your August 23, 2005 letter, you also identify that, in certain instances, there are duplicate bates stamp numbers. In this regard, you provided to me by telecopy (at my request) an example of this problem. In your August 24, 2005 telecopy, there was a page containing the language "Image Deleted Due To Privilege" and upon which was printed the tiff-imaged bates stamp number "HQR2500360." In addition, there was an actual document containing the hand-stamped bates stamp number "HQR2500360," but without a tiff-imaged bates stamp number printed on it. As previously mentioned, the pages inserted to replace privileged documents, containing the words "Image Deleted Due To Privilege," were not hand-stamped with a bates number, and the only number associated with those pages is the tiff-imaged number. It appears from your August 24, 2005 fax that the bates stamp numbers on each of the two pages containing bates number "HQR2500360" that you sent us were generated in a different manner: one contains only the manually generated number, and one contains only the tiff-generated number. Where a bates stamp number has been manually affixed, the tiff-generated number does not print on the page, unless you specifically request it in your printing instructions, but the tiff-generated numbers print anywhere there is not a manually affixed bates number. To resolve this issue, our litigation support contractor plans manually to add a bates stamp number, by hand, to each of the "Image Deleted Due To Privilege" pages. With those additions, only one bates stamp number should appear on each printed page: the manually affixed bates number that was used as the reference in the Government's privilege log for CD Nos. 213 and 214. We will repost those two CDs once that effort is completed.

Although we understand your confusion regarding the seeming duplication of bates stamp numbers, we expect that, given that these documents were produced to counsel in the Yankee Atomic cases in December 2002 and that he has had access to them since that time, your office has been able to work around this issue. If you have any further questions about this matter, please feel free to contact me.

Very Truly Yours,

[signature]

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch