17. The documents Bates-Stamped HQR0284037-HQR0284045 (E152), HQR320166-HQR320174 (E164), HQR0320280-HQR0320288 (E172), and HQR0320321-HQR0320327 (E173) are different versions or duplicates of an August 31, 1995 memorandum for the President from Alice Rivlin and Hazel O'Leary asking for President's decision on an Administration position for the storage of spent nuclear fuel and high level waste. The document reflects DOE's policy deliberations as they relate to how the Department will begin acceptance and storage of spent nuclear fuel and high level waste. The memorandum recommends a Presidential position, and includes recommendations to the President regarding various options of storing SNF, and discusses the advantages and disadvantages of each option. There is a danger that the options presented, if disclosed, could be viewed as the position of the President. If DOE decision-makers are faced with the fear that this mistake could be made, they are less likely to present the President with a thorough and well-rounded analysis of options, for fear that their suggestions may be misconstrued or mis-attributed. A thorough analysis of all possibilities must be presented to the President to allow him to make a well-informed policy decision.

18. The document Bates-Stamped HQR0290820-HQR0290832 (E156) consists of three drafts of a memorandum entitled "Talking Points for OMB-White House involving the Release of the Department of Energy letter stating the anticipated delay in 1998." The memorandum also includes talking points regarding the Administration's position on S.1936, radiation standards, environmental



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

protection, and interim storage. The document reflects DOE's policy deliberations as they relate to DOE's response to the delay in its acceptance of spent nuclear fuel. The Department's delay in accepting spent nuclear fuel is an issue that must continuously be addressed by the Administration. Release of the suggestions of DOE personnel would undermine the Administration's ability to speak with one voice regarding such important policy decisions, and would force the Administration to revisit the issue even more often than it already must. DOE personnel will become reluctant to provide suggestions if they believe that it will create additional scrutiny of the Administration.

19. The document Bates Stamped HQR0290839-HQR0290841 (E157) is a September 4, 1996 e-mail from BJ Johnson to Fidler, Holstein, and TJ Glauthier providing draft policy guidance to DOE regarding when and where DOE will begin to accept spent nuclear fuel. The document reflects DOE's policy deliberations regarding the time and place in which DOE intends to begin acceptance of spent nuclear fuel. There is an extremely delicate relationship between DOE and the constituencies being considered for siting an interim storage facility or a permanent disposal facility. Given the sensitivity of these issues, it is important that these constituencies not be provoked with mere ideas and suggestions, which may never become Department policy. The outcome of such provocation would be a future unwillingness of DOE personnel to present ideas, out of fear that their suggestions may result in difficulties for the Department and the Administration.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

20. The document Bates Stamped HQR0290308-HQR0290325 (E155) is a March 31, 1997 predecisional memorandum to TJ Glauthier from Elgie Holstein and Thomas Grumbly regarding DOE's 1997 policy options and alternatives involving DOE's acceptance of spent nuclear fuel. The memorandum was prepared for Secretary Pena's meeting with the nuclear utilities on April 3, 1997, and discusses potential proposals that DOE could offer to the utilities for the acceptance of spent nuclear fuel, and the advantages and disadvantages of each of the proposals. The document also contains potential questions that DOE could pose to utilities, the expected answers from the utilities, potential questions from utilities, and proposed DOE answers to the utilities' questions. The document reflects DOE's policy deliberations as they relate to DOE's response to the utilities' dissatisfaction with the Department's inability to begin acceptance of commercial spent nuclear fuel. It is vital that DOE personnel be able to brief the Secretary upon potential utility questions, and vet proposed responses, without fear that the proposed responses will be subject to the scrutiny of the utilities, even in the event that they do not become the Department's official response. If individuals believe that their suggestions could be misconstrued as the Secretary's official position, or that their suggestions could cause the Secretary embarrassment or inconvenience, they will be reluctant to offer suggestions in the future.

21. The document Bates Stamped HQR0430019 (E179) is a predecisional memorandum from Lake Barrett's files regarding the Administration's policy on nuclear waste, and includes options for the path forward once the Yucca Mountain



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

Viability Assessment is released to the public. The document reflects DOE's policy deliberations as they relate to DOE's response to accepting spent nuclear fuel once Yucca Mountain's Viability Assessment is released. This type of document is generated at each phase of the program, and is eventually developed into document to be submitted to the Secretary, followed by the President. It represents the recommendations of individual DOE personnel, which have not yet been vetted by the Department or the Administration, but which are necessary to assist the Department and the Administration in making policy decisions. The disclosure of the recommendations would hamper the willingness of DOE personnel to provide such recommendations in the future, for fear of the embarrassment that could result from having presented options that conflict with the ultimate policy decision.

22. The document Bates Stamped CTR0193318-CTR0193319 (E111) is an undated draft paper entitled, "Proposal: White Paper on Sabotage Issues Supporting the EIS's Covering Spent Fuel Shipments" that involves discussion of analyses to be performed that relate to the possible sabotage of spent nuclear fuel shipments to Yucca Mountain. The document reflects DOE's policy deliberations regarding how it will address potential sabotage issues in the transportation of spent nuclear fuel. Disclosure of such a document could cause undue criticism of the program, based upon concerns that the Department ultimately analyzed and determined to be unfounded. For security reasons it is vital that DOE personnel feel free to express any and all concerns along these lines. If employees believe that their



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

initial concerns could be publicized before they are put through the appropriate analysis, they will be less likely to express concerns in the future.

23. The documents Bates-Stamped HQR2500218 - HQR2500225 (E302), HQR2500227 - HQR2500234 (E304), and HQR0950014 - HQR0950025 (E185) are draft memoranda for Under Secretary of Energy Moniz from Assistant Secretary of Energy for Environmental Management Carolyn Huntoon regarding the possible acceptance of DOE-owned SNF and other SNF from General Atomic's facility at the request of General Atomics. The document lists a series of options to be decided upon and a recommendation for a specific option. Individuals within OCRWM, the Office of Environmental Management and the Office of General Counsel undertook an effort to analyze whether and how General Atomics' request could be met. [redacted]

REDACTION RETAINED PER CT'S COMMENT AT 5/4/06 TELECONFERENCE THAT REDACTION APPEARED SUPPORTABLE; DETAILS CONTENTS OF DOCUMENT RELATING TO SUGGESTED POSSIBLE OPTIONS FOR RESEARCH REACTOR FUEL, INCLUDING POLITICAL SENSITIVITIES WITH STATE



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

CONTINUATION OF REDACTION FROM PRIOR PAGE

[redacted]

Further, General Atomics and other similarly-situated interested parties presumably would like to question the individuals who drafted this memoranda or contributed to it regarding their opinions as to how this fuel can be moved and how the operation of the repository could be modified to accommodate this request. Such questioning would chill the willingness of individuals within DOE to undertake the analysis of such requests from General Atomics or other Standard Contract holders in the future.

24. The documents Bates-Stamped HQR0291737 - HQR0291739 (E159) and HQR0392003-HQR0392005 (E177) are duplicate copies of a memorandum setting forth talking points for a DOE telephone call to Jack Lew (Office of Management and Budget) regarding issues to be discussed for a proposed settlement of the SNF litigation currently before the Court of Federal Claims. This document was prepared by DOE legal counsel for use in negotiations with the nuclear utility plaintiffs. The document contains recommendations of M.L. Wagner, Senior Policy Advisor to the Secretary, and M.A. Sullivan, General Counsel, to the Secretary for a discussion to be held with Mr. Lew, OMB, regarding possible settlement of the now-pending litigation at the Court of Federal Claims. The discussion includes [redacted]

ATTY-CL PRIV'D INFO



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

[redacted]

ATTY-CL PRIV'D INFORMATION

Such questioning will hamper the development of other settlement ideas in the future.

25. The document Bates-Stamped HQR2360030 - HQR2360037 (E289) are notes of discussions with Under Secretary of Energy Robert Card regarding the possible transfer of program responsibility for disposal of Greater-Than-Class-C radioactive waste pursuant to the Low Level Radioactive Waste Amendments Act from DOE's Office of Environmental Management to another program within DOE, including OCRWM, and e-mails providing information to Under Secretary Card in response to his requests. The notes of the meeting identify the individuals who were assigned to investigate this issue for the Under Secretary. Release of this document would allow those individuals to be questioned about what information they provided to Under Secretary Card to inform his decision, the reasons they selected that information, and the reasons they did not select other information. Because there are many groups that are particularly interested in DOE's progress with regard to the management and disposal of GTCC pursuant to the LLRWPAA, the deliberations of the agency regarding the reassignment of responsibility within the Department could be of great interest. However, if those who assisted the Under Secretary in his consideration of this issue are identified and subsequently questioned about the information that they provided, individuals



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

will be reticent about providing advice and counsel about such reorganizations in the future, although such reorganizations may make the operations of the Department more efficient.

26. The documents Bates-Stamped COF0261673 - COF0261675 (E105), COF0261780 - COF0261781 (E106) and COF0261782 - COF0261785 (E107) are draft memoranda prepared by Mr. David Zabransky addressing the request from Dairyland Power Cooperative (a spent nuclear fuel case utility plaintiff) to DOE seeking assistance in the disposal of its SNF from its shutdown facility. The documents reflect Mr. Zabransky's opinions and recommendations regarding the factors that he believes should be considered in granting the request, including the need to grant priority removal, and contains discussion of the impact of such a policy decision. Decision makers need to be aware of the implications of requests. Release of this document would impinge upon the willingness of Mr. Zabransky and others within OCRWM to offer constructive advice regarding how to proceed in the face of requests like this one.

27. The document Bates-Stamped CTR0141786 - CTR0141787 (E108) is a memorandum recommending the release of a request for expression of interest and comments notice in the Commerce Business Daily and Federal Register supporting the market-driven acquisition approach for OCRWM's fulfillment of the NWPA's provision related to acceptance, transportation and storage of SNF. CTR0141798 - CTR0141799 (E109) is a duplicate version of the above-referenced memorandum. The internal memoranda recommends [redacted] SEE NEXT PAGE



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

REDACTION OF INFORMATION IDENTIFYING RECOMMENDATION MADE; PROVIDES NO ADD'L INFO REGARDING THE SUBJECT OF THE DOCUMENT

[redacted]. OCRWM still has not made a decision on how to procure transportation services, and as that decision is debated, the availability of this document could lead to questioning by interested parties as to why [redacted]. Moreover, if past recommendations regarding how to approach the transportation requirements of the program are released, program personnel will not be as likely to think creatively as to how best to procure transportation services for the program.

28. The document Bates-Stamped CTR1600071 - CTR1600085 (E115) is a draft presentation regarding the deferral of final waste package closure and emplacement. These documents were prepared at the request of Under Secretary Robert Card and advice and recommendations contained in these pages was provided to Under Secretary Card in a briefing. The draft document contains the opinions of the Yucca Mountain personnel charged with evaluating this idea regarding the benefits and drawbacks of the approach and recommendations regarding whether this course of action should be followed. This idea was not adopted. This type of analysis is often generated when a change in approach for repository operations is considered. Release of this document will lead to questioning as to why this approach is not being followed and such questioning will quell the ability of OCRWM to generate thoughtful consideration of such ideas in the future.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

29. The documents Bates-Stamped HQR2890199 - HQR2890200 (E368) HQR3390001- HQR3390003 (E387), HQR3390004 - HQR3390006 (E388) and HQR3420001 - HQR3420009 (E390) are draft action memoranda to the Secretary of Energy, from Dr. Margaret Chu, the then Director of OCRWM, for review by the Under Secretary, regarding DOE's issuance of the 2004 Annual Capacity Report/Acceptance Priority Ranking and the initiation of the Delivery Commitment Schedule process. The document Bates-Stamped HQR3390007 (E389) is a draft cover letter from the OCRWM contracting officer to the utility standard contract holders, to accompany the 2004 Annual Capacity Report/Acceptance Priority Ranking. These documents were prepared by David Zabransky and Thomas Pollog, and provide their recommendations and opinions regarding the issues that should be addressed when DOE resumed the delivery commitment schedule process. The draft memoranda also address the issues about which Mr. Zabransky and Mr. Pollog believed that the Under Secretary should be aware as this process resumed. The resumption of the Delivery Commitment Schedule process was of interest to every Standard Contract holder and Mr. Zabransky and Mr. Pollog have already been questioned about the resumption of the DCS process in depositions and during trial. Further, Mr. Zabransky and Mr. Pollog are currently the individuals who will be responsible for the issuance of the next ACR and the resumption of the DCS process in the future. If these documents are released, Mr. Zabransky and Mr. Pollog will be required to provide advice to the Director and the Secretary, knowing that they



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

can be questioned about that advice later. Having already experienced the deposition process, Mr. Zabransky and Mr. Pollog would be understandably wary of providing completely candid advice under such circumstances.

30. The document Bates-Stamped HQR3010001 - HQR3010009 (E372) is an e-mail forwarding an attached draft report to the Secretary of Energy regarding the DOE Inspector General's audit of the licensing support network ("LSN") for the repository at Yucca Mountain. Certification of the LSN is the first step in the license application proceeding. The draft report identifies several issues regarding the certification of the LSN and the e-mail forwarding the report identifies the participants in a meeting to coordinate OCRWM's response to this report. If this document is released, these individuals could be called upon to explain their advice regarding what OCRWM's response should be to the report, which would chill the willingness of these individuals to provide further advice in the effort to get the LSN certified. Release of the draft report, which contains the DOE IG's observations [redacted]. [redacted].

REDACTION OF DESCRIPTION OF HARM THAT WOULD RESULT FROM RELEASE OF DOCUMENT; PRIVILEGED; IRRELEVANT TO THIS LITIGATION

**Documents Related to Repository Design:**

Several of the documents that I have re-examined concern aspects of the design of the repository. OCRWM is still working to finalize the design of the repository and our concept of



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

operations at the repository as we prepare the license application. In the documents that follow, individuals within OCRWM are providing advice and recommendations on issues concerning the repository design. It is critical that individuals within the program be able to provide advice and recommendations at this stage in the program. Because of the heightened attention that the program receives from Congress, every design decision is potentially subject to extensive questioning by Congress and others regarding its basis and merits. To the extent that every suggestion regarding possible design, whether well-founded or not, becomes subject to the same level of scrutiny, employees will be significantly less likely to make such suggestions and the program will become less and less effective. Release of these documents would chill employees' willingness to provide such advice and would hinder the Director's ability to obtain the best advice possible in the future.

31. The documents Bates-Stamped CTR1720056 - CTR1720058 (E136), CTR1740067 - CTR1740069 (E141) and HQR2190057 - HQR2190074 (E263) are drafts of a graphic presentation regarding repository design options. The document Bates-Stamped HQR2190054 (E261) is a draft agenda for a briefing for Dr. Chu regarding potential repository design changes. The document Bates-Stamped CTR1720059 (E137) is a table containing background materials for the above-referenced presentation regarding repository design options. These documents reveal options for the design that were considered, but are not currently being pursued, as a way to meet the budgetary restrictions facing the program. For the reasons explained above, releasing these documents now will



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

chill employees' willingness to provide such advice and will hamper the ability of the program to choose the best final design for the repository.

32. The documents Bates-Stamped HQR3130001 - HQR3130003 (E381), HQR3130004 - HQR3130022 (E382) and HQR3130023 - HQR3130096 (E383) are notes, drawings, draft agenda and other materials prepared in connection with a briefing for Under Secretary Card regarding the design of the repository at Yucca Mountain. Under Secretary Card was provided with recommendations on matters such as how OCRWM should proceed with the license application. For the reasons explained above, because the design of the repository has not yet been finalized and the license application has not yet been submitted, release of these documents now will chill employees' willingness to provide such advice and will hinder OCRWM's efforts to finalize the design.

33. The document Bates-Stamped HQR2950001 - HQR2950003 (E371) is believed to be the handwritten notes of Mr. James Owendorf, an assistant to Dr. Chu, former Director, regarding the information and advice that was to be prepared for a meeting between Yucca Mountain Project personnel and Under Secretary Card on April 18, 2003. The YMP office was to provide strategies for how activities could be accomplished in the fiscal years 2003, 2004 and 2005. It is my understanding that this document was previously released by the Government in redacted form. As shown throughout the documents covered by my declaration, Under Secretary Card repeatedly sought advice and recommendations from the program regarding activities that might be accomplished within the budgets given and requested as



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

part of managing the program, constantly seeking new ideas and suggestions (thinking "outside the box") that may be wholly unrealistic or in conflict with other program needs, none of which ever necessarily become agency policy. Release of this document, which provides insight into the budget formulation process, would violate that principle that the budgets developed within the agency do not become the final budgets of the Executive Branch until issued by the President. Release of these documents now will chill employees' willingness to think "outside the box" about such problems.

34. The document Bates-Stamped HQR3060001 - HQR3060022 (E377) is a draft memorandum for Under Secretary Card regarding DOE's identification of a preferred rail corridor to the repository at Yucca Mountain. The document reveals the deliberations within DOE regarding the identification of the rail corridor and contains a detailed explanation as to why one corridor was recommended over the others. Although seemingly irrelevant to the litigation in the Court of Federal Claims, this decision is the subject of other litigation which could be impacted as the result of the release of this document. That litigation may have an impact upon DOE's ability to commence operations at Yucca Mountain. In addition, there are a myriad of other decisions like this one that will have to be made as the program moves forward in the licensing of Yucca Mountain. If memoranda such as this one are subject to disclosure, the authors may be inclined to be less detailed in providing recommendations regarding the pending decision, which could result in decisions being made without the benefit of a full consideration of the issues.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

35. The document Bates-Stamped HQR2640086 - HQR2640099 (E362) is a January 2004 presentation to Under Secretary Card regarding OCRWM program strategy, waste acceptance and transportation. The document reveals the recommendations presented to the Under Secretary regarding these issues and identifies the OCRWM personnel responsible for providing this information to the Under Secretary. The document specifically discusses the status of the license application and the issues surrounding its development. Because the license application is still in development, the release of this document could impede the development and submission of that application because interested constituencies raise questions based upon this document as well as chill the willingness of OCRWM personnel to provide frank advice regarding these matters. In addition, the presentation contains possible alternatives for the facilities to be included in the license application. As noted above, DOE has not finalized the design of the repository facilities.

36. The documents Bates-Stamped HQR2890184 - HQR2890198 (E367) and HQR2890201 - HQR2890240 (E369) are draft presentations titled "Proposed Approach for Initiating Modifications to Utility Disposal Contracts" prepared by Mr. Zabransky at the request of Under Secretary Card. The documents contain Mr. Zabransky's recommendations and opinions regarding the terms to be modified if modifications are undertaken. DOE has not made a final decision that the Standard Contract should be modified and what terms should be modified. Mr. Zabransky would certainly expect to be questioned in further depositions



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

about his opinions about these possible contract modifications (that the Department has not yet suggested to the Standard Contract holders and to which Standard Contract holders likely would have to agree) if this document is released, even though no decision as to whether the Standard Contract should be modified has been made. Such questioning will quell Mr. Zabransky's willingness and the willingness of others to make similar recommendations in the future or participate further in the deliberations regarding whether and how the Standard Contract should be modified.

**Budget-Related Documents:**

The next set of documents are all documents that were generated in the process of formulating the annual budget for OCRWM. On an annual basis, the submission of OCRWM's budget request to Congress for the upcoming fiscal year constitutes a major effort within the Department. This annual budget request must be approved by high-level DOE officials, submitted to OMB for a detailed review and, usually, following extensive revision, and then submitted to Congress. Many program personnel, including myself, are involved in activities related to the development of each budget submission, from developing the goals that the program expects to be able to accomplish in each budget cycle, to estimating the cost of those activities, to defending OCRWM's request to the Secretary's office and then before OMB before the President's budget is submitted to Congress.

As a DOE employee, I have always understood that the budget is not the budget until it is submitted by the President to Congress. I understand that principle to protect the Executive Branch from criticism of choices that are made in the formulation of the budget. The documents



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

that follow provide insight into that process of how the budget is formulated and what choices were made regarding requesting funding for certain program activities, but not for others. Department employees know that any suggestions that they make, whether adopted or not, could subject the Executive Branch to potentially intense scrutiny regarding the choices that are ultimately made regarding those suggestions, to the extent that unaccepted suggestions are made public. Further, any suggestions are typically vetted by numerous individuals so that the underlying rationale for the original suggestion may have no relationship to the reasons for the ultimate policy adopted. Yet, it is essential that individuals feel free to make candid and creative suggestions to allow the Department to make fully informed decisions.

While the documents referenced in my declaration as part of Under Secretary Card's initiative involved many of these same or similar budgetary issues, the budget-related documents described in this section of my declaration are the type of documents developed for particular fiscal year budget submissions. In addition to documents that address a particular fiscal year, a number of documents also address program activities over a multiple year period. These documents analyze and set forth recommendations within DOE for the longer-term aspects of the program.

As I previously described, numerous personnel within the Department are involved in developing the recommendations that support the annual budget request to Congress. The documents identified in this section of my declaration include recommendations, opinions and advice from DOE personnel, some of which were accepted and included as part of the budget request. Yet at the same time, many of the recommendations were not included in the budget request.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

DOE personnel who engaged in these activities to support the submission of the program's budget request, offered honest, candid recommendations and advice as part of the internal process to develop the budget requests. It is my view that these personnel were able to do so because of an understanding that their opinions and advice regarding these predecisional, deliberative types of matters would reviewed and discussed only within the Department. As a long-serving official with the federal government, in a program that is viewed by most constituencies as a controversial program, DOE employees must be allowed to offer their recommendations, opinions and advice in an environment that encourages them to be as frank, open and honest as possible. I believe that this type of environment encourages efficiency within government, and ultimately helps to produce a more effective and successful program.

At the same time, I recognize that without careful consideration, the deliberative process privilege can become too expansive in its application. Therefore, I have made a substantial effort, both with this declaration as well as my four prior declarations executed as part of the SNF litigation, to accurately identify and describe only those predecisional, deliberative documents whose release would undercut and inhibit the free and candid discussion necessary to ensure a successful, efficient government program.

37. The document Bates-Stamped HQR2500981 - HQR2500981.45 (E331) is an April 18, 2002 e-mail with a draft attachment, prepared for Under Secretary Card, that includes a draft check list and an internal memorandum discussing potential activities reviewed as part of OCRWM's efforts to respond to criticisms from the Nuclear Waste Technical Review Board ("NWTRB"), an independent agency of the Executive Branch with the sole purpose of providing scientific and technical



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

oversight to DOE's program for managing and disposing of spent nuclear fuel and high-level radioactive waste. This effort includes the need to decide how OCRWM could most effectively increase confidence in the planned design and operation of the geologic repository at Yucca Mountain. The document includes a "preliminary candidate list of initial activities" that were potential options to support the enhancement of the OCRWM program. The document addresses the potential impact of the proposed activities in terms of duration and cost for each activity, if selected. Staff members, identified by name, are providing input as to what they perceive to be potential problems for the Director of OCRWM and the Secretary of Energy. If this document is released, and these individuals are asked about these documents in deposition or another forum, it will have a chilling effect upon the willingness of these staff members to provide frank advice in the future because they do not want to be required to explain why they perceive certain problems within the program. Release of this document, which is not the final Department response to the NWTRB, would have a chilling effect on OCRWM's ability to request such comments and advice from contractors and staff members because they do not want to be questioned about their frank advice regarding DOE's potential response.

38. The documents Bates-Stamped CTR1660061 - CTR1660070 (E130), HQR2050015 - HQR2050018 (E206) and HQR2190046 - HQR2190052 (E259) are tables and several brief draft memoranda discussing the effect of the FY 2003 budgetary options upon DOE programs. These documents were prepared in the



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

process of formulating a recommendation for consideration by Under Secretary Card regarding DOE's FY2003 budget request. The documents reveal deliberations regarding the impact of possible budgets for the activities of OCRWM. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests to Congress and this could inhibit the openness of OCRWM employees to participate in and provide complete and uninhibited advice and opinions to Department decision makers.

39. The documents Bates-Stamped HQR3030001 - HQR3030009 (E373), HQR3030010 - HQR3030021 (E374), HQR3030022 - HQR3030023 (E375) and HQR3030024 - HQR3030027 (E376) are documents regarding the need to replan OCRWM's FY2003 budget due to the extended continuing budget resolution. The replan was necessary because the actual appropriation for FY2003 was substantially below OCRWM's budget request. These documents were requested by Dr. Margaret Chu, the then Director of OCRWM, and provide recommendations regarding DOE's policy deliberations on this matter. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests, and it would have a chilling effect on OCRWM's ability to request such comments and advice from contractors and staff members because they do not want to be questioned about their frank advice regarding DOE's potential response.

40. The document Bates-Stamped HQR2930031 - HQR2930044 (E370) is an OCRWM presentation titled "FY2005 OMB Budget Review" and reflects DOE



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

deliberations regarding a budgetary request prepared for submission to OMB. This document was prepared in the process of formulating a recommendation regarding DOE's FY2005 budget request and reflects DOE's policy deliberations in the budgetary process. The document was prepared during the early stages of DOE's internal budget formulation process and does not represent the final budget decisions. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests to Congress regarding the priorities selected by OCRWM for a given budget, especially when particular priorities were not selected or presented for consideration in future budget requests. The release of this document could inhibit the ability of DOE employees to offer complete and frank advice to DOE officials on budgetary matters.

41. The documents Bates-Stamped HQR2540001 - HQR2540083 (E356) are documents prepared for an amendment to DOE's FY 2003 budget request, including draft memoranda, draft presentations, to be given by me and others to the Under Secretary, and other documents generated in the analysis of whether DOE should seek the amendment. The documents contain recommendations of OCRWM personnel regarding how the development of the repository would have been affected and reflect the deliberations of DOE regarding this amendment. Release of these documents would reveal the advice and opinions of OCRWM personnel regarding the need for such an amendment. Such a release could chill and inhibit the willingness of personnel to provide similar input into the development of OCRWM's program activities in the future.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

42. The documents Bates-Stamped CTR0451252 - CTR0451269 (E113), CTR1660055 - CTR1660060 (E129), HQR2040006 (E198), HQR2040007 - HQR2040008 (E199), HQR2040009 - HQR2040011 (E200) , HQR2040012 - HQR2040014 (E201), HQR2070006 - HQR2070008 (E210), HQR2070009 - HQR2070011 (E211), HQR2100005 - HQR2100007 (E219) and HQR2140019 (E232) are several versions of a graphic depiction showing the effect of several budgetary options upon the construction of a repository at Yucca Mountain and SNF acceptance at the repository. The documents include assessments and recommendations by DOE personnel regarding the potential impact of schedules for repository construction and SNF acceptance resulting from potential budget reductions. These documents were prepared in the process of formulating a recommendation for consideration by Under Secretary Card regarding DOE's budget requests, which were ultimately submitted to OMB. The documents reveal DOE's deliberations regarding the budget process and reflect DOE's policy deliberations and form part of the deliberative process. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests to Congress and could be inhibited from providing full and free advice and input into future development of budget requests.

43. The documents Bates-Stamped HQR2500791 - HQR2500911 (E327), HQR2500916 - HQR2500976 (E329), and HQR2501246 - HQR2501272 (E342) are e-mails with attachments that are drafts of graphic presentations from April and June 2002 from Dr. Margaret Chu, Director, OCRWM, for Under Secretary



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

Card regarding the budget strategy for OCRWM for Fiscal Years 2004 to 2010. These documents represent the early stages of OCRWM's budget formulations and address decisions that would be made regarding program activities and strategy going forward. These documents address evolving and developing program activities, with a focus on the budget implications of these activities. Given the need to seek appropriations from Congress on an annual basis, and the anticipated increases in expenditures as the program moved forward with the actual construction of the repository, it was extremely important to provide the Department's officials with different options regarding program activities and goals in conjunction with the budget issues that the program was expected to face before Congress. If this document were to be released, the harm to the agency is the fact that staff members are providing input as to what they perceive to be potential problems for the Director of OCRWM and the Secretary of Energy, in the presentation of the budget. If these individuals are asked about these documents in deposition or another forum, it will have a chilling effect upon the willingness of these staff members to provide frank advice in the future because they do not want to be required to explain why they perceive certain problems for the program.

44. The documents Bates-Stamped HQR2100001 - HQR2100003 (E217), HQR2100004 (E218), and HQR2200001 - HQR2200012 (E265) are draft memoranda addressing the effect of budget reductions upon OCRWM's plans for submission of the license amendment and construction of the repository. The



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

draft memoranda provide recommendations regarding how the effect of budget reductions could be mitigated. These documents were prepared in the process of formulating a recommendation for consideration by Under Secretary Card regarding DOE's FY2003 budget request which was ultimately submitted to OMB. These documents reflect DOE's deliberations regarding the formulation of its budget, deliberations that should be shielded from review.

45. The documents Bates-Stamped HQR 2130028 - HQR2130031 (E228), HQR2140015 - HQR2140018 (E231), and HQR2190039 - HQR2190040 (E257) are spreadsheets presenting possible activities that could be undertaken to reduce the cost and schedule for the construction of the repository and opinions as to the likelihood of successfully implementing each of the ideas. This document was generated by OCRWM personnel in the process of creating a budget request for the program. The thoughtful preparation of documents such as these for decision makers is vital to the proper management of the program because decision-makers need good ideas as to how to reduce costs. If OCRWM personnel know that documents containing such ideas will be released and that they will be questioned about why certain cost reduction activities could or could not be undertaken, they will be unwilling to think creatively about how program costs can be reduced in the future.

46. The document Bates-Stamped CTR1620001 - CTR1620002 (E123) is an e-mail and attached graph prepared by Mr. David Siefken, a contractor, in response to a request by Chris Kouts regarding utilities' estimates of at-reactor storage costs for



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

spent nuclear fuel. Mr. Kouts requested this e-mail as part of OCRWM's preparation of our annual budget, to be able to defend the need for the funding of certain activities in the budget deliberations within the Department and with OMB. Accordingly, the document is one necessary to the development of the budget, a process that should be protected from disclosure. In addition, the e-mail contains Mr. Siefken's personal opinions regarding the accuracy of the estimates, opinions that Mr. Siefken would be less likely to provide if he knew he would be questioned about them.

47. The document Bates-Stamped HQR2500021 - HQR2500025 (E292) is an e-mail requesting assistance in the development of the FY 2002 budget for the Office of Management and Budget ("OMB"). The document contains sample questions that were anticipated to be asked in the budget rollout process, such as the potential schedule problems caused by budget shortfalls. The preparation of sample questions by program personnel is important to ensure that policy makers can properly defend the program's budget request when presented to the OMB and is an important part of the DOE budget preparation process. The document identifies the individual OCRWM staff members that were asked to provide answers to these questions. If this document were to be released, the harm to the agency is the fact that staff members, identified by name, are providing input as to what they perceive to be potential problems for the Director of OCRWM and the Secretary of Energy, in the presentation of the budget. If these individuals are asked about these documents in deposition or another forum, it will have a



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

chilling effect upon the willingness of these staff members to provide frank advice in the future because they do not want to be required to explain why they perceive certain problems for the program. In addition, as discussed above, the release of these documents will impede the proper development of the budget by the Executive.

48. The documents Bates-Stamped HQR2500026 - HQR2500028 (E293) are two e-mails regarding a request for a briefing by OMB on budgetary matters. The topics upon which OMB wanted a briefing are set forth in the e-mail, including a request for "an extensive detailed discussion of [DOE's] spending plans for the next year" and that DOE address the concerns of the [Technical Review Board]. Such briefings to OMB are necessary because the OMB formulates the final budget policy for the Executive Branch and the budget is not final until it is submitted by OMB on behalf of the President to Congress. Accordingly, these briefings should be considered to be the advice and recommendations to the OMB in the formulation of the final budget. The e-mail was sent to those individuals who were expected to provide the information necessary for the briefing to OMB. If these e-mails were released, the individuals identified could be expected to be asked to testify about what information they provided to the OMB regarding these matters, which would violate the principle that the budget is not final until it is issued as the President's budget and chill the willingness of these employees to provide frank and candid advice in the future.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

**Business Case Documents:**

In late 2001/early 2002, Under Secretary of Energy Card initiated a process within DOE, and more specifically, within OCRWM, to review and assess OCRWM's ongoing efforts to develop, construct and operate a geologic repository at Yucca Mountain. As part of this process, the Department conducted an intensive effort to develop, in response to the Under Secretary's direction, detailed recommendations for consideration by the Under Secretary, regarding program priorities, alternative scenarios, and effects upon upcoming fiscal year budget requests. Within OCRWM, the effort initiated by Under Secretary Card was described as an effort to develop the "business case" for the Yucca Mountain repository because it was to be an effort to identify and develop recommendations for the implementation of certain activities and strategies for the development of the Yucca Mountain repository made "business sense." The Yucca Mountain business case, in turn, would support the Secretary's budget request to OMB and, after extensive review, the President's budget request to Congress for OCRWM.

Under Secretary Card's request for analysis and recommendations focused upon two goals: one, to be able to accelerate the rate of waste acceptance once repository operations began; and, two, to reduce overall program costs. During the course of this effort, which lasted through approximately September 2002, the Department developed numerous recommendations and options for OCRWM's program, based upon various scenarios regarding the anticipated operation of the Yucca Mountain repository. Unfortunately, all of this analysis did not produce any viable courses of action to meet the Under Secretary's objectives and no changes in program direction were implemented as a result.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

Numerous detailed documents were developed by DOE staff and contractor personnel in the effort to respond to Under Secretary Card's requests. Many of these documents focused on issues such as "accelerated" or "high receipt rates" for DOE's acceptance of SNF from nuclear utilities, early acceptance of SNF from shutdown nuclear reactors, and various national transportation strategies, such as acceptance of SNF based upon particular regions of the country. Others focused upon determining which of OCRWM's currently planned activities could be changed to reduce program costs. All of the scenarios and options studied and reviewed also focused upon the effect that the implementation of any items, if accepted as recommendations by the Department, would have upon OCRWM's budget and future program-related expenditures. The recommendations developed addressed both the annual budget process, as well as the long-term, multi-year expenditures that the civilian radioactive waste management program requires, given its massive complexity and scope.

In developing these various recommendations, options, and scenarios for Under Secretary Card and the Department as a whole, DOE personnel and contractors also developed extensive and detailed supporting information to justify, challenge, question and/or disprove the proposed recommendations. This type of supporting information, generally documented in spreadsheets, tables, charts and graphs, and set forth in both separate documents and included as part of more comprehensive documents such as memoranda and white papers, represent an integral part of the recommendations and advice provided to the Department's officials as part of the decision making process.

Another vital and integral part of this process were the numerous meetings conducted within OCRWM and with the Under Secretary to discuss these issues, outline options and



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

provide advice. In some cases, the opinions and advice offered in these meetings were set forth in such documents as "action items" and "meeting notes" and in many cases the opinions and advice offered by DOE personnel at meetings and presentations were incorporated into other documents, examples of which are identified throughout my declaration.

I know that the OCRWM personnel involved in these meetings and presentations within the program, and those OCRWM personnel involved in the drafting of the documents identified in this declaration, participated with an understanding that they could offer straight forward, frank and candid recommendations, opinions, and advice to Under Secretary Card and other DOE decision makers in response to Under Secretary Card's requests, and that these recommendations, opinions, and advice (many of which were, ultimately, never pursued or implemented) would remain part of the predecisional, deliberative process that would be protected from further disclosure. This understanding was particularly important because everyone who participated knew that the subject matter of this analysis and recommendation would be of great interest to Congress and all of the Standard Contract holders who were in litigation with the Department. Given that everyone within the program is well aware that numerous program personnel have been deposed numerous times and questioned about activities, strategies and scenarios that, while possibly discussed or reviewed by the Department, were never adopted, implemented or pursued as Department activities and official policies, the release of these documents will seriously damage the ability of the next decision maker to try to obtain the type of candid analysis and advice that is reflected in the following documents and provided to Under Secretary Card.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

49. The documents Bates-Stamped HQR2500031 - HQR2500043 (E294) and HQR2500063 - HQR2500076 (E296) are presentations prepared by OCRWM for OMB involving a review of the National Transportation Program, in preparation for the submission of the budget to Congress. These documents were part of OCRWM's effort to validate and support the program's budget request, including decisions regarding the selection of program priorities and goals and the budget implications of selecting the program's priorities. Such briefings to OMB are necessary because the OMB formulates the final budget policy for the Executive Branch and the budget is not final until it is submitted by OMB on behalf of the President to Congress. Accordingly, these briefings should be considered to be the advice and recommendations to the OMB in the formulation of the final budget. The individuals who were expected to provide the information necessary for the briefing to OMB would be inhibited from providing necessary advice and opinions to DOE officials if the individuals identified could be expected to be asked to testify about what information they provided to the OMB regarding these matters.

50. The documents Bates-Stamped HQR2501051 - HQR2501053 (E333) are e-mails with attached notes from a meeting with Under Secretary Card on April 19, 2002 discussing strategy and policy regarding DOE budget requests. The options discussed included accelerated waste acceptance options, identifying program priorities, and decisions on the allocation of funds within and among various OCRWM program activities. The release of these documents, prepared by



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims