# Appendix

COMPARISON OF DAIRYLAND'S REQUESTS FOR PRODUCTION TO REQUESTS PROPOUNDED IN COORDINATED DISCOVERY, YANKEE ATOMIC AND PG&E

| DAIRYLAND | COORDINATED DISCOVERY | YANKEE ATOMIC | PG&E |
|---|---|---|---|
| | | | |
| 1 | 38 | 2 | 2 |
| 2 | | 3 | 3 |
| 3 | 2, 4 | 5 | 5 |
| 5 | 5 | 4 | 6 |
| 6 | 3 | 7 | 7 |
| 7 | | 9 | 9 |
| 8 | 33 | 10 | 10 |
| 9 | 34 | 11 | 11 |
| 11 | 17, 19 | 12, 14 | 12, 14 |
| 12 | 6 | 13 | 13 |
| 13 | 7 | | 15 |
| 24 | 20 | 17 | 18 |
| 25 | 26, 28, 43 | 20 | 21 |
| 26 | 35 | 21 | 22 |
| 28 | | 22 | 23 |
| 29 | | 23 | 24, 27 |
| 30 | | 15 (2nd request) | 28 |
| 31 | | 14 (2nd request) | 27 |
| 33 | | 14 (2nd request) | |
| 34 | | | 30 |
| 35 | 14 | | 31 |
| 36 | 42 | | 35 |
| 37 | 18 | 8 | 8 |

| | | | |
|---|---|---|---|
| 38* | | | 38 |
| 39 | | | 39 |
| 40** | | | |
| 41** | | | |

* Note: The Government produced documents responsive to this request in South Carolina Electric & Gas Co. v. United States, No. 04-0101C (Fed. Cl.) (Request Nos. 31 and 32).

** Note: The Government produced documents responsive to these requests in Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) (Request No. 9).

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY, MAINE YANKEE ATOMIC POWER COMPANY, FLORIDA POWER & LIGHT COMPANY, NORTHERN STATES POWER COMPANY, DUKE POWER, a Division of DUKE ENERGY CORP, INDIANA MICHIGAN POWER COMPANY, SACRAMENTO MUNICIPAL UTILITY DISTRICT, SOUTHERN NUCLEAR OPERATING COMPANY, et al., COMMONWEALTH EDISON COMPANY, BOSTON EDISON COMPANY, GPU NUCLEAR, INCORPORATED, WISCONSIN ELECTRIC POWER COMPANY, POWER AUTHORITY OF THE STATE OF NEW YORK, OMAHA PUBLIC POWER DISTRICT, NEBRASKA PUBLIC POWER DISTRICT, TENNESSEE VALLEY AUTHORITY, | ) | Nos.: 98-126C, 98-154C, 98-474C, 98-483C, 98-484C, 98-485C, 98-486C, 98-488C, 98-614C, 98-621C, 99-447C, 00-440C, 00-697C, 00-703C, 01-115C, 01-116C, 01-249C |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UTILITY PLAINTIFFS' JOINT FIRST SET OF**
**<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), and the Joint Motion for an Order for Coordinated Discovery filed in the above-captioned cases, the Plaintiffs identified above ("Utility Plaintiffs"), by and through their undersigned counsel, hereby serve upon the Defendant, the United States of America, the following Joint First Set of Requests for Production of Documents. Utility Plaintiffs hereby request that Defendant answer the requests for production within the timeframe established by

the Joint Motion for an Order for Coordinated Discovery, and produce the documents identified below for inspection and copying at a mutually convenient time and place within that timeframe.

**Definitions and Instructions**

**A. Definitions**

1. "Acceptance Rate" means the pace or rate at which DOE takes delivery of spent nuclear fuel and/or High Level Radioactive Waste from Purchasers pursuant to the Standard Contract.

2. "Delivery Commitment Schedules" refers to the forms described in Article V, paragraph B. of the Standard Contract and includes schedules that have been proposed by the utility, schedules proposed by DOE if the utility's schedule is rejected, and any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

3. "Document" shall be construed in the broadest sense possible under RCFC 34 and shall include all writings as that term is defined in Federal Rules of Evidence No. 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored, on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in DOE's possession, custody or control, or whose existence is or was ever known to DOE, including but not limited to: correspondence, letters, notes, memoranda, appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, plans, charts, diagrams, drawings,

graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, included but not limited to "e-mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" shall also include any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any request for production was, but no longer is, in DOE's possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

**However, for purposes of this request for production, the term "document" shall <u>NOT</u> include documents already previously produced to Yankee Atomic Electric Company in *Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl.), or otherwise previously produced to the Utility Plaintiffs in the above-referenced litigation.**

4. "DOE" shall mean the United States Department of Energy as well as its predecessors, including but not limited to the United States Atomic Energy Commission, the Office of Civilian Radioactive Waste Management, the Office of Nuclear Waste Storage Investigations, and the Office of Nuclear Energy, as well as all offices, divisions or departments, officials, directors, officers, employees, agents, contractors, subcontractors and other representatives, past or present, thereof.

5. "Identify" shall have the following meaning:

a. When used with reference to an entity or organization, the response shall state the type of entity or organization and give the full name and present or last known address of the entity or organization.

b. When used with reference to a person, the response shall state the person's full name, current or last known home and work address and telephone numbers, current or last known business affiliation and job description, and any past or present affiliation with Plaintiffs or Defendant. If such information is not current, the date of this information shall be specified.

c. When used with reference to a document, the response shall state the type of document, its date, author(s), addressee(s), synopsis of content, and present location. In lieu of providing this information, DOE may attach a copy of the document to its response to the pertinent discovery request.

d. When used in reference to a source of information, the response shall identify each individual providing information. The response should also state whether the information has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

e. When used in reference to an item of property, the response shall identify the precise location of that property and the property interest involved. The response shall also state whether the ownership interest has been reduced to writing or other tangible form. If so, this writing or other

a. When used with reference to an entity or organization, the response shall state the type of entity or organization and give the full name and present or last known address of the entity or organization.

b. When used with reference to a person, the response shall state the person's full name, current or last known home and work address and telephone numbers, current or last known business affiliation and job description, and any past or present affiliation with Plaintiffs or Defendant. If such information is not current, the date of this information shall be specified.

c. When used with reference to a document, the response shall state the type of document, its date, author(s), addressee(s), synopsis of content, and present location. In lieu of providing this information, DOE may attach a copy of the document to its response to the pertinent discovery request.

d. When used in reference to a source of information, the response shall identify each individual providing information. The response should also state whether the information has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

e. When used in reference to an item of property, the response shall identify the precise location of that property and the property interest involved. The response shall also state whether the ownership interest has been reduced to writing or other tangible form. If so, this writing or other

record shall be identified in the manner described in subparagraph c. above.

6. "Individual" or "person" means any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

7. "NWPA" means the Nuclear Waste Policy Act of 1982, codified at 42 U.S.C. § 10101 et seq., as well as any amendment(s) thereto.

8. "Purchaser" means an owner or generator of SNF that has executed a Standard Contract with DOE.

9. "Relating to" or "relates to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting and/or in any way pertaining to the subject specified.

10. "Schedule Issues" shall mean issues associated with the schedule of acceptance of spent nuclear fuel pursuant to the Standard Contract, 10 C.F.R. Part 961, and include the order, pace, and rate of acceptance of spent nuclear fuel pursuant to the Standard Contract, any priority for shutdown reactors, exchanges of acceptance slots, and the Defendant's obligation to accept and timing of acceptance of Greater-Than-Class C Waste, whether discussed individually or collectively.

11. "SNF" shall mean spent nuclear fuel as that term is defined in the Standard Contract and for purpose of these requests to produce also includes the term High Level Radioactive Waste (HLW) as it is defined in the Standard Contract.

12. "Standard Contract" means the Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in 10 C.F.R. Part 961, pursuant to which DOE is to take title to, transport, and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who executed the contract.

13. "Utility Plaintiffs" shall mean Yankee Atomic Electric Company, Connecticut Yankee Atomic Power Company, Maine Yankee Atomic Power Company, Florida Power & Light Company, Northern States Power Company, Duke Power, a Division of Duke Energy Corp, Indiana Michigan Power Company, Sacramento Municipal Utility District, Southern Nuclear Operating Company, Commonwealth Edison Company, Boston Edison Company, GPU Nuclear, Incorporated, Wisconsin Electric Power Company, Power Authority of the State of New York, Omaha Public Power District, Nebraska Public Power District, Tennessee Valley Authority, or each of them, as well as their predecessor(s) and successor(s), and all their respective officials, directors, officers, employees, representatives, or agents, whether or not still alive or in existence, either individually or in any combination.

14. "Utility Plaintiffs' Contracts" shall mean the Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste entered into by the Utility Plaintiffs, or each of them, and the attachments, appendices and exhibits thereto.

## B. Instructions

1. These requests for production are continuing and require supplemental responses if Defendant obtains additional information after service of its original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

2. When a request for production calls for an answer in more than one part, separate the parts in the response accordingly so that the response to each separate part of the request for production is apparent; do not join together and provide a common response or answer to two or more requests for production or to subparts of a request for production.

3. Should DOE claim privilege for any documents requested in any of the following requests for production, identify those documents and/or portions thereof and identify the grounds upon which your claim of privilege rests in sufficient detail to permit the Court to adjudicate the merits of the claim, including a statement as to whether or not the document was authored by or sent to a United States attorney. If a document contains both privileged and non-privileged information, DOE should still provide information from those portions of the documents DOE does not contend are subject to privilege.

4. To the extent DOE considers any of the following requests for production, or their subparts, to be objectionable, answer the portion of the request for production, or subpart, to which you have no objection and separately state the portion of the request for production, or subpart, to which you object and state with specificity all grounds for your objection. If you object to a request for production on the basis that it is too broad, provide the response that DOE believes is within a reasonable scope of the request for production. If DOE objects to a request for production on the basis that to provide a response would constitute an undue burden, provide

all the requested documents that can be supplied without undertaking an undue burden. For those requests for production, or portions thereof, that you decline to answer, state the reason for subject objection or declination in sufficient detail to permit the Court to adjudicate the merits of the claim.

5. In answering these requests for production, furnish all documents, that are within the possession, custody or control of DOE, its officials, directors, officers, employees, agents, investigators, contractors, subcontractors, consultants and attorneys.

**Requests for Production**

In accordance with the above definitions and instructions, please produce the following:

1. All documents identified in response to Utility Plaintiffs' First Set of Interrogatories to DOE.

2. All documents relating to the drafting, development, negotiation, proposal, or promulgation of the terms of the Standard Contract, including but not limited to, the contents of the notice of proposed rulemaking in 10 C.F.R. Part 961 set forth at 48 Fed. Reg. 5458, and the final rulemaking set forth at 48 Fed. Reg. 16599, and responses thereto, insofar as such documents, or any portion thereof, relate to Schedule Issues.

3. All documents relating to the interpretation of the Standard Contract, insofar as such documents, or any portion thereof, relate to Schedule Issues.

4. All documents relating to the drafting, development, negotiation, proposal, or promulgation of the terms of Utility Plaintiffs' Contracts, insofar as such documents, or any portion thereof, relate to Schedule Issues.

5. All documents relating to the interpretation of Utility Plaintiffs' Contracts, insofar as such documents, or any portion thereof, relate to Schedule Issues.

6. All documents relating to the Acceptance Rate, including but not limited to:

a. the pace or rate at which DOE would have accepted SNF if it had started accepting such SNF on or before January, 1998;

b. the pace or rate at which DOE will accept SNF when DOE begins accepting SNF;

c. any and all plans, projections, or estimates by DOE for the pace or rate at which DOE would have accepted or will accept SNF; and

d. DOE's anticipated capacity for accepting SNF and any plans, projections or estimates of same.

7. All documents relating to the order among utilities in which DOE will accept SNF from utilities, including but not limited to:

a. the order in which DOE would have accepted SNF if it had started accepting such SNF on or before January, 1998;

b. the order in which DOE will accept SNF when DOE begins accepting SNF;

c. any and all plans, projections, or estimates by DOE for the order in which DOE would have accepted or will accept SNF; and

8. All documents relating to the Waste Acceptance Schedule identified in Table 2-2 of the Mission Plan for the Civilian Radioactive Waste Management Program issued

by the DOE, dated June, 1985, including but not limited to, documents used or relied upon to produce such Waste Acceptance Schedule, and drafts of such schedule.

9. All documents relating to the Waste Acceptance Schedule identified in the OCRWM Mission Plan Amendment, issued by the DOE, dated June 1987 (DOE/RW-0128), including but not limited to, documents used or relied upon to produce such Waste Acceptance Schedule, and drafts of such schedule.

10. All documents relating to the "CRWMS Receipt Rates" listed in Table 1 of the Civilian Radioactive Waste Management System Requirements Document (Revision 5), issued by the DOE in January, 1999, including but not limited to, documents used or relied upon to produce such receipt rates, and drafts of such document.

11. All documents relating to the Acceptance Rate set forth in the Analysis of Total System Life Cycle Cost for Civilian Radioactive Waste Management Program, dated December, 1998 (DOE/RW-0510), including but not limited to, documents used or relied upon to produce such receipt rates, and drafts of such document.

12. All documents relating to the Acceptance Rate referred to in the Independent Cost Estimate Review of the Civilian Radioactive Waste Management Program 2001 Modular Design/Construction and Operation Options Report, dated April, 2001, including but not limited to, any documents used or relied upon to produce such Acceptance Rate, and any drafts of such report.

13. All documents relating to the acceptance scenarios referred to in the Civilian Radioactive Waste Management Modular Design/Construction and Operation Options Report, Bechtel SAIC Company, TDR-CRW-MD-000002, Rev. 3, dated May, 2001, including

but not limited to, any documents used or relied upon to produce such acceptance scenarios, and any drafts of such report.

14. All documents relating to the date DOE will begin accepting SNF from utilities, including but not limited to, any milestone schedules, critical path activities or sensitivity analyses conducted by or on behalf of DOE.

15. All documents relating to any estimate or projection that DOE will begin accepting SNF from utilities later than 2010.

16. All documents relating to the discussion of when DOE will begin accepting SNF from utilities or any other Schedule Issues in the Independent Cost Estimate Review of the Civilian Radioactive Waste Management Program 2001 Total System Life Cycle Costs, dated January, 2001, including but not limited to, any documents used or relied upon in such discussion and any drafts of such document.

17. All documents relating to any Annual Capacity Reports prepared by or on behalf of DOE, including but not limited to, documents used or relied upon to produce such Annual Capacity Reports, and drafts of such reports.

18. All documents relating to Delivery Commitment Schedules submitted to DOE by Utility Plaintiffs.

19. All documents relating to any Acceptance Priority Rankings prepared by or on behalf of DOE pursuant to the NWPA and the preparation of those rankings, including but not limited to, any documents used or relied upon to produce such Acceptance Priority Rankings, and any drafts of such Acceptance Priority Rankings.

20. All documents relating to any mission plan, program plan, or program reassessment (including any amendments thereto) for DOE's activities pursuant to NWPA,

including but not limited to, any documents used or relied upon to produce such mission plan, program plan or program reassessment, and any drafts of such mission plan, program plan or program reassessment.

21. All documents relating to the Acceptance Rate for SNF stated in the following categories of documents, including but not limited to, documents used or relied upon to produce such documents relating to the acceptance rate, and drafts of such documents:

a. Annual Capacity Reports;

b. Acceptance Priority Rankings;

c. Analyses of the Total System Life Cycle Cost for Civilian Radioactive Waste Management Program, and any addendums thereto;

d. Reports on Financing the Disposal of Commercial Spent Nuclear Fuel and Reprocessed High-Level Radioactive Waste;

e. Annual reviews of the Adequacy of the 1 mill/kwh Waste Disposal Fee;

f. Assessments of Nuclear Waste Fund Fee Adequacy; and

g. Requests for Proposals for Acquisition of Waste Acceptance and Transportation Services for the Office of Civilian Radioactive Waste Management.

22. All documents relating to acceptance rate assumptions associated with DOE's development of a Monitored Retrievable Storage ("MRS") facility, Central Interim Storage Facility, or activities to support the Nuclear Waste Negotiator, including but not limited to the Nuclear Waste Negotiator Support Information Book, conceptual design studies,

correspondence with voluntary hosts regarding MRS facility capacity and acceptance rates, and white papers, including but not limited to, any documents used or relied upon to produce such documents, and any drafts of such documents.

23. All documents relating to the needs or requirements (whether current, estimated, or projected) for storage or disposal of all SNF from commercial nuclear reactors.

24. All documents relating to projections of the amount of SNF to be discharged from commercial nuclear reactors.

25. All documents relating to the SNF Storage Requirement reports issued by the DOE from 1978 through 1995, including but not limited to, documents used or relied upon to produce the reports, and drafts of such reports.

26. All documents relating to the development, design, review, procurement, or approval or disapproval of any casks or similar devices in which SNF from nuclear reactors has been or could be stored, transported, or disposed of.

27. All documents relating to the study of the cost of the impacts of dry cask storage of SNF at civilian nuclear reactors referred to at page 7 of the June 1988 Annual Capacity Report (DOE/RW-0191), including but not limited to, any documents used or relied upon to produce study, and any drafts of such study.

28. All documents relating to the anticipated or projected capacity for transporting SNF from civilian nuclear reactors for storage or disposal by DOE.

29. All documents relating to any cooperative efforts between the Utility Nuclear Waste Management Group of the Edison Electric Institute, the United States Council for Energy Awareness, and DOE referred to at page 3 of the December 1990 Annual Capacity Report (DOE/RW-0294P).

30. All documents relating to the information provided with the December 17, 1992 letter from the Secretary of Energy to The Honorable J. Bennett Johnston, including but not limited to documents relating to the "summary of my new strategy to provide SNF interim storage in 1998" referred to in that letter.

31. All documents relating to any consideration, investigation, study or analysis of how DOE would or could dispose of Greater-Than-Class-C Waste from commercial nuclear utilities.

32. All documents relating to whether DOE has an obligation to or whether DOE should dispose of Greater-Than-Class-C Waste from commercial nuclear utilities.

33. All documents relating to the according of priority to SNF removed from a commercial nuclear power reactor that has reached the end of its useful life or has been shut down permanently.

34. All documents relating to the exchange of approved Delivery Commitment Schedules among parties with contracts with DOE for the disposal of SNF.

35. All documents relating to communications between the Utility Plaintiffs and either DOE or the United States Nuclear Regulatory Commission relating to the Schedule Issues.

36. All documents relating to communications between DOE and any other part of the Executive Branch, and/or between DOE and any part of the Legislative Branch, or between the Legislative and Executive Branches relating to the Schedule Issues.

37. All documents relating to legislative proposals that culminated in the enactment of NWPA in 1982, including but not limited to proposed legislative language or

testimony provided to any committee or sub-committee of Congress, insofar as such documents, or any portion thereof, relate to Schedule Issues.

38. All documents relating to any federal legislative proposal initiated since passage of the NWPA for federal storage or disposal of SNF from civilian nuclear reactors, insofar as such documents, or any portion thereof, relate to Schedule Issues.

39. All documents relating to the findings and recommendations of the Interagency Review Group referred to on page xvii of the Yucca Mountain Preliminary Site Suitability Evaluation (IDOE-RW-0540) issued by the DOE in July, 2001.

40. All documents relating to any Environmental Assessment or Environmental Impact Statement prepared by DOE in connection with NWPA, including but not limited to all documents used to prepare the assessment or statement, insofar as such documents, or any portion thereof, relate to Schedule Issues.

41. All documents relating to the costs or expenses of DOE's activities pursuant to NWPA, including but not limited to any budgets (whether final, interim, or proposed) and any documents used to prepare any such budgets, insofar as such documents, or any portion thereof, relate to Schedule Issues.

42. Organizational charts and/or personnel rosters for OCRWM from 1982 the present.

43. All documents relating to the ability of DOE to perform its obligations under the Utility Plaintiffs' Contracts to pick-up, transport, and store the Utility Plaintiffs' SNF, including but not limited to the DOE's past, present, and/or future intentions to perform these obligations and estimates of when and how DOE will be able to perform these obligations.

44. All documents relating to DOE's decision to suspend the submittal of Delivery Commitment Schedules by Purchasers.

Dated: September 4, 2001

Respectfully submitted,

RICHARD C. JOHNSON
Jenner & Block
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Tel.: (202) 639-6075
Counsel of Record for Plaintiff:
Commonwealth Edison Company

M. STANFORD BLANTON RCJ
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel.: (205) 251-8100
Counsel of Record for Plaintiff:
Southern Nuclear Operating Company

ALEX D. TOMASZCZUK RCJ
Shaw Pittman
1650 Tysons Boulevard
McLean, VA 22102
Tel.: (703) 770-7940
Counsel of Record for Plaintiffs:
Boston Edison Company
Duke Power Company
Florida Power and Light Company
GPU Nuclear, Inc.
Indiana Michigan Power Company
Northern States Power Company
Power Authority of the State of New York

JERRY STOUCK RCJ
Spriggs & Hollingsworth
1350 I Street, N.W., 9th floor
Washington, D.C. 20005-3305
Tel.: (202) 898-5839
Counsel of Record for Plaintiffs:
Yankee Atomic Electric Company
Connecticut Yankee Atomic Power Company
Maine Yankee Atomic Power Company

RICHARD W. OEHLER RCJ
Perkins Coie LLP
1201 Third Avenue, 40th Floor
Seattle, WA 98101-3099
Tel.: (206) 583-8419
Counsel of Record for Plaintiff:
Wisconsin Electric Power Company

MELVIN C. GARBOW RCJ
Arnold & Porter
555 Twelfth Street, N.W.
Washington, DC 20004-1206
Tel.: (202) 942-5666
Counsel of Record for Plaintiff:
Sacramento Municipal Irrigation District

Peter K. Shea RCJ

PETER K. SHEA
Office of General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902-1401
Tel.: (865) 632-7319

Document Number : 645467v4

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY under penalty of perjury that on this 4th day of September 2001, I caused to be served by hand, a copy of the foregoing 'Utility Plaintiffs' Joint First Set of Requests for Production of Documents' upon:

Harold D. Lester, Jr.
Assistant Director
Franklin E. White, Jr.
Assistant Director
Marian E. Sullivan
William L. Olsen
Russell A. Shultis
Bryant Baynes
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-6289

Geoffrey A. Barrow
JENNER & BLOCK
601 Thirteenth Street, N.W.
Twelfth Floor
Washington, DC 20005
(202) 639-6000 (Telephone)
(202) 639-6066 (Facsimile)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Civil Action No. 98-126 C<br>(Judge James F. Merow) |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

TO THE UNITED STATES AND ITS COUNSEL OF RECORD:

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Yankee Atomic Electric Company ("Yankee Atomic"), by and through its undersigned counsel, hereby serves upon you the following First Request for Production of Documents.

## I. DEFINITIONS[1]

For purposes of this request, the following definitions shall apply:

1. "AEC" shall mean the United States Atomic Energy Commission, as well as its predecessor(s) and successor(s), and all agencies, offices, divisions or departments, OFFICIALS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, attorneys and other REPRESENTATIVES, past or present, thereof.

2. "COMMUNICATION(S)" shall mean and include any transmission or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any discussion or information carried on or transmitted by means of letter, note, memorandum, interoffice correspondence, telephone, telegraph, telex, telecopy, cable, or some other electronic or other medium.

3. "DOCUMENT" shall be construed in the broadest sense permissible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium IN THE POSSESSION, CUSTODY, OR CONTROL OF THE UNITED STATES. It includes, without limitation, letters, memoranda (whether of visits, telephone calls, or otherwise), appointment calendars, schedules, books, indices, printed forms (whether official

[1]In order to make these document requests as clear as possible, terms defined for the purposes of these requests are capitalized.

or unofficial), resolutions, publications, press releases, rulings, notices, brochures, pamphlets, guidelines, manuals, instructions, minutes, summaries or abstracts, reports, files, file jackets, transcripts, data processing cards, computer tapes or disks, printouts, information contained in, on, or retrievable from computer programs, bulletins, written questions and/or answers, charts, exhibits, blueprints, drawings, diagrams, graphs, tables, photographs, recordings, speeches, telegrams, cables, telex messages, microfilms, opinions, studies, papers, analyses, evaluations, proposals, budget materials, invoices, financial statements, contracts, specifications, applications, motions, petitions, complaints, answers, responses, replies, protests, verified statements, hearing transcripts, attachments, filings, submissions, and pleadings. The term "DOCUMENT" or "DOCUMENTS" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any DOCUMENT or any working papers related thereto, and specifically includes internal memoranda.

4. "DOE" shall mean the United States Department of Energy, including but not limited to the Office of Civilian Radioactive Waste Management, the Office of Nuclear Waste Storage Investigations, and the Office of Nuclear Energy, as well as all agencies, offices, divisions or departments, OFFICIALS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, attorneys and other REPRESENTATIVES, past or present, thereof.

5. "FERC" shall mean the Federal Energy Regulatory Commission.

6. "IN THE POSSESSION, CUSTODY, OR CONTROL OF THE UNITED STATES" includes materials in the possession, custody, or control of any current or former department, office, bureau, board, agency, federally-owned or governmental corporation, or other

entity owned, operated or under the control of the United States, including but not limited to the AEC, DOE, and including but not limited to their AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS, EMPLOYEES, OFFICIALS, and attorneys.

7. "NWPA" shall mean the Nuclear Waste Policy Act of 1982 (codified at 42 U.S.C. 10008 et seq.), as well as any and all Amendment(s) thereto.

8. "OFFICIAL," "DIRECTOR," "OFFICER," "EMPLOYEE," "REPRESENTATIVE," or "AGENT" shall include any PERSON, natural, corporate, or otherwise, including any attorney, serving, acting, or being in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves, acts, or is in such capacity.

9. "PERSON" shall include any natural person, corporation (private or governmental), syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including the United States, and all their respective OFFICIALS, DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, or AGENTS, whether or not still alive or in existence.

10. The term "SPENT FUEL" shall mean spent nuclear fuel and/or high-level radioactive waste generated by civilian nuclear reactors.

11. The term "STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL" shall mean the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in Part 961 of the Code of Federal Regulations, pursuant to which

DOE is to take title to, transport, and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who execute the contract.

12. The term "YANKEE'S SPENT FUEL DISPOSAL CONTRACT" shall mean the Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, entered into by Yankee Atomic and DOE on June 22, 1983.

## II. INSTRUCTIONS

For purposes of this request, the following instructions shall apply:

1. Each request herein constitutes a request that each DOCUMENT referred to, or a true, complete, and legible copy thereof, be presented, during business hours and upon appropriate notice, to any attorney representing Yankee Atomic in the above captioned action, at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Ninth Floor, Washington, D.C. 20005, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by Yankee Atomic and the United States, for the purpose of inspection and copying in accordance with Rule 34 of the RCFC. Each request to produce a DOCUMENT includes DOCUMENTS which are in any way IN THE POSSESSION, CUSTODY OR CONTROL OF THE UNITED STATES, or to which it has access. If a requested DOCUMENT was, but no longer is, IN THE POSSESSION, CUSTODY OR CONTROL OF THE UNITED STATES, identify the DOCUMENT and identify the present location and custodian of the DOCUMENT, or if such information is unavailable, identify the last known locations and custodians of the

DOCUMENT, and explain the circumstances under which the DOCUMENT left the possession, custody or control of the United States.

2. These Requests are continuing in nature so as to require you to submit supplementary responses if further DOCUMENTS are found.

3. If you decline to produce DOCUMENTS responsive to the following requests for the production of DOCUMENTS due to a claim of privilege, produce so much of the DOCUMENT(S) as is not objected to, and set forth the following, with respect to each such DOCUMENT:

a. the date thereof;

b. the type, title, and subject matter of the DOCUMENT, sufficient to assess whether the assertion of privilege is valid;

c. the name of the person or persons who prepared or signed the DOCUMENT;

d. the name and position of any intended and actual recipients of the DOCUMENT;

e. the nature of the privilege being claimed;

f. the number of the request(s) to which the DOCUMENT is responsive.

4. If, for reasons other than a claim of privilege, you refuse to produce any DOCUMENTS described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any request on the basis that it is overbroad for any reason, please respond to that request as narrowed in such a way as to render it not overbroad in your opinion, and state the extent to which you have narrowed that request for purposes of your response.

5. If there are no DOCUMENTS responsive to a request, so state.

## III. DOCUMENT REQUESTS

In accordance with the above instructions, please produce the following:

1. All DOCUMENTS that in any way constitute, describe, comment upon, discuss, reflect, or refer to legislative proposals that culminated in the enactment of NWPA in 1982, including but not limited to proposed legislative language or testimony provided to any committee or sub-committee of Congress.

2. All DOCUMENTS that in any way constitute, describe, comment upon, discuss, reflect, or refer to any federal legislative proposal initiated since January 1, 1977 for federal storage or disposal of SPENT FUEL from civilian nuclear reactors.

3. All DOCUMENTS that in any way constitute, describe, comment upon, discuss, reflect, or refer to any efforts or proposals to amend NWPA.

4. All DOCUMENTS that in any way describe, comment upon, approve, discuss, reflect, or refer to the development, proposal, or promulgation of the terms of YANKEE'S SPENT FUEL DISPOSAL CONTRACT.

5. All DOCUMENTS that in any way describe, comment upon, approve, discuss, reflect, or refer to the development, proposal, or promulgation of the terms of the STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL.

6. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, or refer to any interpretation of YANKEE'S SPENT FUEL DISPOSAL CONTRACT.