7. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, or refer to any interpretation of the STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL.

8. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to any delivery commitment schedules submitted to DOE by Yankee Atomic.

9. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to any request(s) by Yankee Atomic that priority be accorded to SPENT FUEL removed from Yankee Atomic's nuclear power reactor after the reactor was shut down permanently.

10. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the according of priority to SPENT FUEL removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently.

11. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the exchange of approved delivery commitment schedules among parties with contracts with DOE for the disposal of SPENT FUEL.

12. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to any Annual Capacity Reports prepared by

DOE in connection with the SPENT FUEL disposal program, including but not limited to all DOCUMENTS used in the preparation of such reports.

13. All DOCUMENTS that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the rate or pace at which DOE may accept SPENT FUEL pursuant to either the STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL or YANKEE'S SPENT FUEL DISPOSAL CONTRACT.

14. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to any Acceptance Priority Rankings prepared by DOE in connection with the NWPA, including all DOCUMENTS used in the preparation of the ranking.

15. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to any Environmental Assessment or Environmental Impact Statement prepared by DOE in connection with NWPA, including but not limited to all DOCUMENTS used to prepare the assessment or statement.

16. All DOCUMENTS that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the costs or expenses of DOE's activities pursuant to NWPA, including but not limited to any budgets (whether final, interim, or proposed) and any DOCUMENTS used to prepare any such budgets.

17. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to any Mission Plan, program plan, or program

reassessment (including any amendments thereto) for DOE's activities pursuant to the NWPA, including but not limited to all DOCUMENTS used to prepare such plans or reassessments.

18. All COMMUNICATIONS between DOE and any other part of the Executive Branch, and between DOE and any part of the Legislative Branch, or between the Legislative and Executive Branches that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to NWPA.

19. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer any contractual relationship between DOE and any party who has played any role in the exploration, design, or study of facilities and/or processes for picking up or transporting SPENT FUEL from civilian nuclear reactors for storage or disposal by DOE, including but not limited to the results or work-product produced through such contractual relationships.

20. All DOCUMENTS that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to facilities and/or processes for picking up or transporting SPENT FUEL from civilian nuclear reactors for storage or disposal by DOE.

21. All COMMUNICATIONS between Yankee Atomic and either DOE or the United States Nuclear Regulatory Commission that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to SPENT FUEL.

22. All DOCUMENTS that in any way constitute, describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the storage or disposal of SPENT FUEL at sites other than civilian nuclear reactors.

23. All DOCUMENTS that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the casks or similar devices in which SPENT FUEL from civilian nuclear reactors has been or could be stored or transported.

24. All DOCUMENTS that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the costs or expenses that have been or may be incurred by any PERSON to store SPENT FUEL at civilian nuclear reactors.

25. All DOCUMENTS that in any way describe, comment upon, approve or disapprove, discuss, reflect, mention, or refer to the decommissioning of Yankee Atomic's nuclear power plant in Rowe, Massachusetts.

Respectfully submitted,

Jerry Stouck
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800

Counsel for Plaintiff
Yankee Atomic Electric Company

Of Counsel:

Paul V. Waters
Robert L. Shapiro
Glenn S. Greene
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800

Dated: March 30, 1998

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Plaintiff's First Request for Production of Documents was served this 30th day of March, 1998, upon the following:

***Via Hand Delivery***
Joseph A. Kijewski
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Eighth Floor
1100 L. Street, N.W.
Washington, D.C. 20530

Glenn S. Greene

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | Civil Action No. 98-126 C<br>(Judge James F. Merow) |

PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

TO THE UNITED STATES AND ITS COUNSEL OF RECORD:

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Yankee Atomic Electric Company ("Yankee Atomic")[1], by and through its undersigned counsel, hereby serves upon you the following Second Request for Production of Documents.

I. DEFINITIONS

For purposes of this request, the following definitions shall apply:

1. "DCS" shall mean delivery commitment schedule.

2. "Delivery commitment schedule" refers to the forms described in Article V, Paragraph B of the Standard Contract and includes schedules that have been proposed by the utility, schedules proposed by DOE if the utility's schedule is rejected, and any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

---

[1] This Second Request for Production of Documents should also be deemed applicable in *Connecticut Yankee v. United States*, No. 98-154C, and *Maine Yankee v. United States*, No. 98474C.

3. "Document" shall be construed in the broadest sense permissible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in the possession, custody, or control of the United States. The term "Document" or "Documents" also shall include each copy that is not identical to the original or to any other produced copy, preliminary drafts of any Document or any working papers related thereto, and different versions of a Document.

4. "DOE" shall mean the United States Department of Energy, including all agencies, offices, divisions or departments, officials, directors, officers, employees, agents, attorneys and other representatives, past or present, thereof.

5. "GTCC" shall mean Greater Than Class C waste.

6. "HLW" shall mean high-level radioactive waste as that term is defined in the Standard Contract.

7. "In the possession, custody, or control of the United States" includes materials in the possession, custody, or control of any current or former department, office, bureau, board, agency, federally-owned or governmental corporation, or other entity owned, operated or under the control of the United States, including but not limited to the DOE, and including but not limited to their agents, representatives, officers, directors, employees, officials, contractors and attorneys.

8. "LLRWPA" shall mean the Low-Level Radioactive Waste Policy Amendments Act of 1985 (codified at 42 U.S.C. §§ 2021b-2021i), as well as any and all Amendment(s) thereto.

9. "NWPA" shall mean the Nuclear Waste Policy Act of 1982 (codified at 42 U.S.C. 10101 et seq.), as well as any and all Amendment(s) thereto.

10. "Official," "Director," "Officer," "Employee," "Representative," or "Agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving, acting, or being in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves, acts, or is in such capacity.

11. "Person" shall include any natural person, corporation (private or governmental), syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including the United States, and all their respective officials, directors, officers, employees, representatives, or agents, whether or not still alive or in existence.

12. "Related to," "relating to," or "relates to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting and/or in any way pertaining to the subject specified.

13. "SNF" shall mean spent nuclear fuel as that term is defined in the Standard Contract.

14. "Spent Fuel" shall mean spent nuclear fuel and/or high-level radioactive waste as those terms are defined in the Standard Contract.

15. The term "Standard Contract" shall mean the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in Part 961 of the Code of

Federal Regulations, pursuant to which DOE is to take title to, transport, and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who execute the contract.

16. The term "Yankees' Spent Fuel Disposal Contracts" shall mean the Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, entered into by Yankee Atomic and DOE on June 22, 1983, Maine Yankee and DOE on June 6, 1983, and Connecticut Yankee and DOE on June 30, 1983.

## II. INSTRUCTIONS

For purposes of this request, the following instructions shall apply:

1. Each request herein constitutes a request that each document or communication referred to, or a true, complete, and legible copy thereof, be presented, during business hours and upon appropriate notice, to any attorney representing Yankee Atomic in the above captioned action, at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Ninth Floor, Washington, D.C. 20005, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by Yankee Atomic and the United States, for the purpose of inspection and copying in accordance with Rule 34 of the RCFC. Each request to produce a document includes documents which are in any way in the possession, custody or control of the United States, or to which it has access.

2. Please produce all documents that have not been produced previously. To the extent a request to produce a document refers to a pretrial submission, the reference is only for the purposes of clarifying the nature of the documents sought to be produced. It is not intended to limit the scope of responsive documents to documents and materials cited in the pretrial submission or produced as part of any pretrial submission.

3. Documents should be produced and organized in conformance with RCFC 34, either as they are kept in the usual course of business identifying the source of each produced document or labeled to correspond to each request in the order the requests are presented.

4. These requests are continuing in nature so as to require you to submit supplementary responses if further documents are found.

5. If you decline to produce documents responsive to the following requests for the production of documents due to a claim of privilege, produce so much of the document(s) as is not objected to, and set forth the following, with respect to each such document:

a. the date thereof;

b. the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

c. the name of the person or persons who prepared or signed the document;

d. the name and position of any intended and actual recipients of the document;

e. the nature of the privilege being claimed;

f. the number of the request(s) to which the document is responsive.

6. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any request on the basis that it is overbroad for any reason, you should respond to that request as narrowed in such a way as to render it not overbroad in your opinion, and state the extent to which you have narrowed that request for purposes of your response.

7. If there are no documents responsive to a request, so state.

## III. DOCUMENT REQUESTS

In accordance with the above definitions and instructions, please produce the following:

1. Documents related to the government's assertion that "the bases for Congress' passage of the NWPA included statutory findings that the public health and safety necessitated that the United States provide a solution for the permanent storage and disposal of [spent fuel], but that the costs of the interim and permanent storage and disposal of [spent fuel] were the responsibility of those entities that created the [spent fuel]" (see ¶ 1, Defendant's Proposed Stipulation of Facts).

2. Documents related to "establishing Federal responsibility and policy for the disposal of SNF and HLW" (see ¶ 2, Defendant's Proposed Stipulation of Facts).

3. Documents related to the government's assertion that "no utility ever entered . . . a contract" for the interim storage of SNF and HLW "in other than a permanent repository" (see ¶ 10 n.3, Defendant's Proposed Stipulation of Facts).

4. Documents related to the government's assertion that Robert Morgan's December 1983 statement "was not a statement of DOE's contractual intent pursuant to the Standard Contracts" (see ¶ 55, Defendant's Proposed Stipulation of Facts).

5. Documents related to the government's assertion that "the Standard Contract, at the time of formation, did not require DOE to accept, or to begin acceptance of, more than one spent fuel assembly from a single contract holder" (see ¶ 126, Defendant's Proposed Stipulation of Facts).

6. Documents related to the government's assertion that "[t]he failure to accept [one spent fuel] assembly was the only obligation that DOE breached as of January 31, 1998" (see ¶ 126, Defendant's Proposed Stipulation of Facts).

7. Documents relating to the "long process of negotiation pertaining to the terms of the Standard Contract, which began on or about January 1983" (see ¶ 55, Defendant's Proposed Stipulation of Facts).

8. Documents related to the "drafting [of the] many key terms of the Standard Contract" (see ¶ 55, Defendant's Proposed Stipulation of Facts).

9. Documents related to the government's assertion that "the schedules included in the NWPA have proven to be overly ambitious" (see ¶ 66, Defendant's Proposed Stipulation of Facts).

10. Documents related to the government's assertion that "[t]he allocations specified in the 1991 ACR were created with the knowledge that no permanent repository would be available by January 31, 1998" (see ¶ 78, Defendant's Proposed Stipulation of Facts).

11. Documents related to the government's assertion that the LLRWPA "does not identify any specific deadlines by which DOE must act to accept or dispose of GTCC waste. Nor does the LLRWPA identify any specific deadlines by which DOE must enter into agreements with commercial nuclear utilities regarding their payment of costs associated with acceptance or disposal of GTCC" (see ¶ 106, Defendant's Proposed Stipulation of Facts).

12. Documents related to the government's assertion that "[t]he Standard Contract does not require DOE to accept or dispose of YA's GTCC" (see ¶ 138, Defendant's Proposed Stipulation of Facts).

13. Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of GTCC waste.

14. Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of canistered fuel (see ¶¶ 112-115, Defendant's Proposed Stipulation of Facts).

15. Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of failed fuel (see ¶¶ 116-120, Defendant's Proposed Stipulation of Facts).

16. Documents related to the storage, disposal, transportation, preparation, packaging, inspection, and pickup of nonstandard fuel (see ¶ 117, Defendant's Proposed Stipulation of Facts).

17. Documents related to the assertion that "GTCC can not be included in DCSs" (see ¶ 17, Expert Report of Daniel R. Fischel).

18. Documents related to the assertion that "failed fuel might not be accepted in the year stated on a DCS" (see ¶ 17, Expert Report of Daniel R. Fischel).

19. Documents related to the assertion that Article V.E. of the Standard Contract provides for "bilateral exchanges" as opposed to any other kind of exchanges of approved DCSs (see ¶ 18, Expert Report of Daniel R. Fischel).

20. Documents related to the assertion that "the cost to maintain a facility (either dry or wet) to store fuel assemblies is largely independent of the facility size" (see ¶ 3, p. 78, Expert Report of Edward C. Abbott).

21. Documents related to the assertion that "there is no incremental cost to store intact or failed fuel at a facility which is also storing GTCC waste" (see ¶ 4, p. 79, Expert Report of Edward C. Abbott).

22. Documents related to the assertion that "there is no incremental cost to store intact fuel assemblies at a facility which is also storing failed fuel" (see ¶ 5, p. 79, Expert Report of Edward C. Abbott).

23. Documents related to technical issues "concerning exchanging approved delivery commitment schedules acceptance allocations," including those concerned with increasing DOE's costs or with making such exchanges "complicated or impractical" (see ¶ 17, p. 80, Expert Report of Edward C. Abbott).

Dated: April 19, 2002

Respectfully submitted,

Jerry Stouck
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800

Counsel for Plaintiff
Yankee Atomic Electric Company

Of Counsel:

Robert L. Shapiro
Vivek K. Hatti

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Plaintiff's Second Request for Production of Documents was served by hand this 19th day of April, 2002, upon the following:

Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Eighth Floor
1100 L. Street, N.W.
Washington, D.C. 20530

Robert L. Shapiro

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-74C<br>(Judge Hewitt)<br>into which has been consolidated<br>No. 04-075C |

PG&E'S FIRST REQUEST FOR THE PRODCUTION OF DOCUMENTS

Pursuant to RCFC 34, PG&E serves the following request for the production of documents:

I. DEFINITIONS

For purposes of this request, the following definitions shall apply:

1. "COMMUNICATIONS" shall mean and include any DOCUMENT containing transmission or exchange of information between two or more PERSONs, whether orally or in writing, including, without limitation, any discussion or information carried on or transmitted by means of letter, note, memorandum, interoffice correspondence, telephone, telegraph, telex, telecopy, cable, or some other electronic or other medium.

2. "DELIVERY COMMITMENT SCHEDULE" refers to the forms described in Article V, Paragraph B of the Standard Contract and includes schedules that have been proposed by the utility, schedules proposed by DOE if the utility's schedule is rejected, and any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

3. "DOCUMENT" shall be construed in the broadest sense permissible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in

Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in the possession, custody, or control of the United States. The term "Document" or "Documents" also shall include each copy that is not identical to the original or to any other produced copy, preliminary drafts of any Document or any working papers related thereto, and different versions of a Document.

4. "DOE" shall mean the United States Department of Energy, including all agencies, offices, divisions or departments, officials, directors, officers, employees, agents, attorneys and other representatives, past or present, thereof.

5. "GTCC" shall mean Greater Than Class C.

6. "IN THE POSSESSION, CUSTODY, OR CONTROL OF THE UNITED STATES" includes materials in the possession, custody, or control of any current or former department, office, bureau, board, agency, federally-owned or governmental corporation, or other entity owned, operated or under the control of the United States, including but not limited to the DOE, and including but not limited to their agents, representatives, officers, directors, employees, officials, contractors and attorneys.

7. "NWPA" shall mean the Nuclear Waste Policy Act of 1982 (codified at 42 U.S.C. 10101 et seq.), as well as any and all Amendment(s) thereto.

8. PG&E shall mean the plaintiff, the Pacific Gas & Electric Company.

9. PG&E's SPENT FUEL CONTRACT shall mean the contract involved in this action, U.S. Department of Energy Contract No. DE CR01 83NE44402.

10. "PERSON" shall include any natural person, corporation (private or governmental), syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including the United States, and all their respective officials, directors, officers, employees, representatives, or agents, whether or not still alive or in existence.

11. "RELATED TO" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting and/or in any way pertaining to the subject specified.

12. "SPENT FUEL" shall mean spent nuclear fuel and/or high-level radioactive waste as those terms are defined in the Standard Contract.

13. The term "STANDARD CONTRACT" shall mean the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in Part 961 of the Code of Federal Regulations, pursuant to which DOE is to take title to, transport, and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who execute the contract.

## II. INSTRUCTIONS

For purposes of this request, the following instructions shall apply:

1. Each request herein constitutes a request that each document or communication referred to, or a true, complete, and legible copy thereof, be presented, during business hours and upon appropriate notice, to any attorney representing PG&E in the above captioned action, at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Ninth Floor, Washington, D.C. 20005, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by PG&E and the United States, for the purpose of inspection and copying in accordance with Rule

34 of the RCFC. Each request to produce a document includes documents which are in any way IN THE POSSESSION, CUSTODY OR CONTROL OF THE UNITED STATES, or to which it has access.

2. Please produce all documents that have not been produced previously. We note that requests for production 1-14 and 16-20 below are similar to requests 1-24 in Plaintiff's First Request for Production of Documents in *Yankee Atomic v. U.S.* dated March 30, 1998. Requests 26-29 below are similar to requests 13-16 in Plaintiff's Second Request for Production of Documents in *Yankee Atomic* dated April 19, 2002. Requests 15 and 31-37 below are similar to requests 7, 14, 15, 23, 24, 42, 43 and 44 of Utility Plaintiffs' Joint First Set of Requests for Production of Documents dated September 4, 2001.

3. Documents should be produced and organized in conformance with RCFC 34, either as they are kept in the usual course of business identifying the source of each produced document or labeled to correspond to each request in the order the requests are presented.

4. These requests are continuing in nature so as to require you to submit supplementary responses if further documents are found to the fullest extent contemplated by RCFC 26(e).

5. If you decline to produce documents responsive to these requests for the production of documents due to a claim of privilege, produce so much of the document(s) as is not objected to, and set forth the following, with respect to each such document:

a. the date thereof;

b. the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

c. the name of the person or persons who prepared or signed the document;

d. the name and position of any intended and actual recipients of the document;

e. the nature of the privilege being claimed;

f. the number of the request(s) to which the document is responsive.

6. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any request on the basis that it is overbroad for any reason, you should respond to that request as narrowed in such a way as to render it not overbroad in your opinion, and state the extent to which you have narrowed that request for purposes of your response.

7. If there are no documents responsive to a request, so state.

III. <u>DOCUMENT REQUESTS</u>

In accordance with the above definitions and instructions, produce the following:

1. DOCUMENTS RELATED TO legislative proposals that culminated in the enactment of NWPA in 1982, including but not limited to proposed legislative language or testimony provided to any committee or sub-committee of Congress.

2. DOCUMENTS RELATED TO any federal legislative proposal initiated since January 1, 1977 for federal storage or disposal of SPENT FUEL from civilian nuclear reactors.

3. DOCUMENTS RELATED TO any efforts or proposals to amend NWPA.

4. DOCUMENTS RELATED TO the development, proposal, or promulgation of the terms of PG&E'S SPENT FUEL DISPOSAL CONTRACT.

5. DOCUMENTS RELATED TO the development, proposal, or promulgation of the terms of the STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL.

6. DOCUMENTS RELATED TO any interpretation of PG&E'S SPENT FUEL DISPOSAL CONTRACT.

7. DOCUMENTS RELATED TO any interpretation of the STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL.

8. DOCUMENTS RELATED TO any delivery commitment schedules submitted to DOE by PG&E.

9. DOCUMENTS RELATED TO any request(s) by PG&E that priority be accorded to SPENT FUEL removed from PG&E's Humboldt Bay Power Plant Unit 3 because the reactor was shut down permanently.

10. DOCUMENTS RELATED TO the according of priority to SPENT FUEL removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently.

11. DOCUMENTS RELATED TO the exchange of approved any delivery commitment schedule among parties with contracts with DOE for the disposal of SPENT FUEL.

12. DOCUMENTS RELATED TO any Annual Capacity Reports prepared by DOE in connection with the SPENT FUEL disposal program, including but not limited to all DOCUMENTS used in the preparation of such reports.

13. DOCUMENTS RELATED TO the rate or pace at which DOE may accept SPENT FUEL pursuant to either the STANDARD CONTRACT FOR THE DISPOSAL OF SPENT FUEL or PG&E'S SPENT FUEL DISPOSAL CONTRACT.

14. DOCUMENTS RELATED TO any Acceptance Priority Rankings prepared by DOE in connection with the NWPA, including all DOCUMENTS used in the preparation of the ranking.

15. DOCUMENTS RELATED TO the order or sequence among utilities in which DOE will accept spent fuel from utilities, including but not limited to the order in which DOE would

have accepted spent fuel if it had started accepting such spent fuel on or before January 31, 1998, the order in which DOE will accept spent fuel from utilities when DOE begins accepting spent fuel from utilities, and any plans, projections or estimates by DOE of the order or sequence in which DOE would have accepted or will accept spent fuel from utilities.

16. DOCUMENTS RELATED TO any Environmental Assessment or Environmental Impact Statement prepared by DOE in connection with the NWPA, including but not limited to all DOCUMENTS used to prepare the assessment or statement.

17. DOCUMENTS RELATED TO the costs or expenses of DOE's activities pursuant to NWPA, including but not limited to any budgets (whether final, interim, or proposed) and any DOCUMENTS used to prepare any such budgets.

18. DOCUMENTS RELATED TO any Mission Plan, program plan, or program reassessment (including any amendments thereto) for DOE's activities pursuant to the NWPA, including but not limited to all DOCUMENTS used to prepare such plans or reassessments.

19. COMMUNICATIONS between DOE and any other part of the Executive Branch, and between DOE and any part of the Legislative Branch, or between the Legislative and Executive Branches that are RELATED TO the NWPA.

20. DOCUMENTS RELATED TO any contractual or other relationship between DOE and any party who has played any role in the exploration, design, or study of facilities and/or processes for picking up or transporting SPENT FUEL from civilian nuclear reactors for storage or disposal by DOE, including but not limited to the results or work-product produced through such contractual relationships.

21. DOCUMENTS RELATED TO facilities and/or processes for picking up or transporting SPENT FUEL from civilian nuclear reactors for storage or disposal by DOE.

22. COMMUNICATIONS between PG&E and either DOE or the United States Nuclear Regulatory Commission RELATED TO SPENT FUEL.

23. DOCUMENTS RELATED TO the storage or disposal of SPENT FUEL at sites other than civilian nuclear reactors.

24. DOCUMENTS RELATED TO the casks, canisters, systems or similar devices in which SPENT FUEL from civilian nuclear reactors has been or could be stored and/or transported.

25. DOCUMENTS RELATED TO the costs or expenses that have been or may be incurred by any PERSON to store SPENT FUEL at commercial nuclear reactors.

26. DOCUMENTS RELATED TO the storage, disposal, transportation, preparation, packaging, inspection, and pickup of GTCC waste.

27. DOCUMENTS RELATED TO the storage, disposal, transportation, preparation, packaging, inspection, and pickup of SPENT FUEL placed in canisters, multi-element-sealed canisters or other containers however described.

28. DOCUMENTS RELATED TO the storage, disposal, transportation, preparation, packaging, inspection, and pickup of failed fuel.

29. DOCUMENTS RELATED TO the storage, disposal, transportation, preparation, packaging, inspection, and pickup of nonstandard fuel, failed fuel or other than standard spent fuel.

30. DOCUMENTS RELATED TO the decommissioning of PG&E's Humboldt Bay Power Plant Unit 3.

31. DOCUMENTS RELATED TO the date by which DOE will begin accepting spent fuel from utilities, including but not limited to any milestone schedules, critical path activities or sensitivity analyses conducted by or on behalf of DOE.

32. DOCUMENTS RELATED TO any estimate or projection that DOE will begin accepting spent fuel from utilities later than 2010.

33. DOCUMENTS RELATED TO the needs or requirements (whether current, estimated, or projected) for storage or disposal of spent fuel from domestic commercial nuclear reactors.

34. DOCUMENT RELATED TO projections of the amount of spent fuel to be discharged from domestic commercial nuclear reactors.

35. Organizational charts and/or personnel rosters for the Office of Civilian Radioactive Waste Management from 1982 to the present.

36. DOCUMENTS RELATED TO the ability of DOE to perform its obligations under the STANDARD CONTRACT and PG&E'S CONTRACT, including but not limited to DOE's past and present intentions to perform these obligations and estimates of when and how DOE will be able to perform these obligations.

37. DOCUMENTS RELATED TO DOE's decision to suspend the submittal of proposed delivery commitment schedules by utilities in the 1990s.

38. DOCUMENTS RELATED TO DOE's decision to request new proposed delivery commitment schedules from utilities in 2004.

39. DOCUMENTS RELATED TO DOE's decision to suspend the approval and submittal of proposed delivery commitment schedules in 2004.

Dated: June 3, 2005

Respectfully submitted,

Jerry Stouck
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (fax)
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Spriggs & Hollingsworth

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing PG&E's First Request for Production of Documents was served by hand this 3rd day of June, 2005, upon the following:

John C. Ekman
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Eighth Floor
1100 L. Street, N.W.
Washington, D.C. 20530

Robert L. Shapiro

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTH CAROLINA ELECTRIC & GAS COMPANY and SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-0101C |
| THE UNITED STATES OF AMERICA, | ) | Judge Charles F. Lettow |
| Defendant. | ) | |

**PLAINTIFFS' FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS**

Plaintiffs South Carolina Electric & Gas Company and South Carolina Public Service Authority (collectively "SCE&G" or "Plaintiffs"), by their attorneys, pursuant to RCFC 34, hereby request that you serve them with a written response within 30 days after the service hereof, and produce the documents identified below for inspection and copying at a mutually convenient time and place.

**DEFINITIONS AND INSTRUCTIONS**

**A. Definitions**

1. "Acceptance Rate" means the pace or rate at which DOE takes delivery of spent nuclear fuel and/or High Level Radioactive Waste from Purchasers pursuant to the Standard Contract.

2. "Document" or "Documents" shall be construed in the broadest sense possible under RCFC 34 and shall include all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored, on

paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in DOE's possession, custody or control, or whose existence is or was ever known to DOE, including but not limited to: correspondence, letters, notes, memoranda, appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, included but not limited to "e-mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" shall also include any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any request for production was, but no longer is, in DOE's possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

3. "DOE" or "Government" shall mean the United States Department of Energy as well as its predecessors, including but not limited to the United States Atomic Energy Commission, the Office of Civilian Radioactive Waste Management, the Office of Nuclear

Waste Storage Investigations, and the Office of Nuclear Energy, as well as all offices, divisions or departments, officials, directors, officers, employees, agents, contractors, subcontractors and other representatives, past or present, thereof.

4. "NRC" means the Nuclear Regulatory Commission.

5. "Identify" shall have the following meaning:

a. When used with reference to an entity or organization, the response shall state the type of entity or organization and give the full name and present or last known address of the entity or organization.

b. When used with reference to a person, the response shall state the person's full name, current or last known home and work address and telephone numbers, current or last known business affiliation and job description, and any past or present affiliation with Plaintiffs or Defendant. If such information is not current, the date of this information shall be specified.

c. When used with reference to a document, the response shall state the type of document, its date, author(s), addressee(s), synopsis of content, and present location. In lieu of providing this information, DOE may attach a copy of the document to its response to the pertinent discovery request.

d. When used in reference to a source of information, the response shall identify each individual providing information. The response should also state whether the information has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

e. When used in reference to an item of property, the response shall identify the precise location of that property and the property interest involved. The response