shall also state whether the ownership interest has been reduced to writing or other tangible form. If so, this writing or other record shall be identified in the manner described in subparagraph c. above.

6. "Individual" or "person" means any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

7. "NWPA" means the Nuclear Waste Policy Act of 1982, codified at 42 U.S.C. § 10101 et seq., as well as any amendment(s) thereto.

8. "Purchaser" means an owner or generator of SNF that has executed a Standard Contract with DOE.

9. "Relating to" or "relates to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting and/or in any way pertaining to the subject specified.

10. "SNF" means spent nuclear fuel as that term is defined in the Standard Contract and for purpose of these requests also includes the term High Level Radioactive Waste ("HLW") as it is defined in the Standard Contract.

11. "HLW" means High Level Radioactive Waste as it is defined in the Standard Contract.

12. "Standard Contract" means the Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in 10 C.F.R. Part 961, pursuant to

which DOE is to accept and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who executed the contract.

13. "SCE&G" or "Plaintiffs" means South Carolina Electric & Gas Company and/or South Carolina Public Service Authority.

14. "SCE&G's Standard Contract" means Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste No. DE-CR01-83NE44417 between South Caroline Electric & Gas Company, South Carolina Public Service Authority, and DOE dated June 29, 1983.

15. "Utility Plaintiffs" means any party or former party to a Standard Contract that has brought suit in the United States Court of Federal Claims for breach of the Standard Contract, including without limitation: Arizona Public Service Company, Atlantic City Electric Co., Boston Edison Co., BWX Tech, Inc., Canal Electric Co., Carolina Power & Light Company, Florida Power Corporation, Cleveland Electric Illuminating Co., Commonwealth Edison Co., Connecticut Yankee Atomic Power Co., Consolidated Edison Co. of New York, Inc., Constellation Generation Group, LLC, Calvert Cliffs Nuclear Power Plant, Inc., Nine Mile Point Nuclear Station, LLC, Consumers Energy Co., Dairyland Power Cooperative, Delmarva Power and Light Co., Detroit Edison Co., Dominion Resources, Inc., Dominion Nuclear Connecticut, Inc., Dominion Resources, Inc., Virginia Electric and Power Company, Duke Power, Energy Northwest, Entergy Gulf States, Inc., Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Operations, Inc., Entergy Nuclear Generation Company, Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Vermont Yankee, LLC, Entergy Nuclear Operations, Inc., Exelon Generation Company, LLC, Exelon Generation Company, LLC, Exelon Generation Company, LLC, AmerGen Energy Company, LLC, Florida Power & Light Co., FPL

Energy Seabrook, LLC, GPU Nuclear, Inc., General Atomics, General Electric Company, General Electric Company, Illinois Power Company, Indiana Michigan Power Co., Interstate Power and Light Company, Kansas Gas & Electric Company, Maine Yankee Atomic Power Co., Nebraska Public Power District, Niagara Mohawk Power Corporation, Niagara Mohawk, Rochester Gas & Electric Company, New York State Electric & Gas Company, Central Hudson Gas & Electric Corporation, Northern States Power Co., Omaha Public Power District, Pacific Gas & Electric Company, Pacific Gas & Electric Company, Portland General Electric Co., PPL Susquehanna, LLC, PSEG Nuclear LLC, Power Authority of New York, Rochester Gas & Electric Corporation, Sacramento Municipal Utility District, South Carolina Electric & Gas Company, Southern California Edison Company, Southern Nuclear Operating Co. et al., System Fuels Inc., on its own behalf and as agent for Entergy Arkansas, Inc., System Fuels Inc., on its own behalf and as agent for Entergy Louisiana, Inc., System Fuels Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association, Tennessee Valley Authority, Texas Genco, LP, TXU Generation Company, Union Electric Company, United Illuminating Co., Vermont Yankee Nuclear Power Corp., Wisconsin Electric Power Co., Wisconsin Public Service Corporation, and Yankee Atomic Electric Co.

16. "Spent Fuel Litigation" refers to lawsuits brought by the Utility Plaintiffs in the United States Court of Federal Claims for breach of a Standard Contract.

**B. Instructions**

1. These requests for production are continuing and require supplemental responses if Defendant obtains additional information after service of its original response. Such supplemental responses shall be served from time to time.

2. When a request for production calls for an answer in more than one part, separate the parts in the response accordingly so that the response to each separate part of the request for production is apparent; do not join together and provide a common response or answer to two or more requests for production or to subparts of a request for production.

3. If you believe that any of the following requests for production calls for the production of documents that you claim contained privileged material, produce so much of the document(s) as is not objected to, and set forth, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (e.g. attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege state:

a. the date thereof;

b. the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

c. the name of the person or persons who prepared or signed the document;

d. the name and positions of all intended and actual recipients of the document; and

e. if not previously identified, the nature of the privilege being claimed and all facts relevant to the claim.

4. Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised.

5. To the extent DOE considers any of the following requests for production, or their subparts, to be objectionable, answer the portion of the request for production, or subpart, to which you have no objection and separately state the portion of the request for production, or subpart, to which you object and state with specificity all grounds for your objection. If you object to a request for production on the basis that it is too broad, provide the response that DOE believes is within a reasonable scope of the request for production. If DOE objects to a request for production on the basis that to provide a response would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden. For those requests for production, or portions thereof, that you decline to answer, state the reason for subject objection or declination in sufficient detail to permit the Court to adjudicate the merits of the claim.

6. In answering these requests for production, furnish all documents, that are within the possession, custody or control of DOE, NRC, other relevant Government agencies, and their officials, directors, officers, employees, agents, investigators, contractors, subcontractors, consultants and/or attorneys.

## REQUESTS FOR PRODUCTION

1. Any and all documents produced to any Utility Plaintiff in any Spent Fuel Litigation.

2. Any and all documents responsive to (a) Utility Plaintiffs' Joint First Set of Requests for Production of Documents served on or about September 26, 2001; and/or (b) Plaintiffs' Second Set of Requests for Production of Documents served on or about November 18, 2003 by Commonwealth Edison Company; and/or (c) Plaintiffs' First Request for Production

of Documents served on or about March 30, 1998 by Yankee Atomic Electric Company; and/or (d) Plaintiffs' Second Request for Production of Documents served on or about April 19, 2002 by Yankee Atomic Electric Company, including, without limitation, any document responsive to such requests not previously produced to any Utility Plaintiff and any document responsive to such requests created or located subsequent to the Defendant's latest production to any Utility Plaintiff.

3. Any and all documents relating to any allegation in the Complaint in this action.

4. Any and all documents relating to the drafting, development, negotiation, proposal, or promulgation of the terms of the Standard Contract, including but not limited to, the contents of the notice of proposed rulemaking in 10 C.F.R. Part 961 set forth at 48 Fed. Reg. 5458, and the final rulemaking set forth at 48 Fed. Reg. 16599, and responses thereto.

5. Any and all documents relating to the interpretation of the Standard Contract.

6. Any and all documents relating to the drafting, development, negotiation, proposal, or promulgation of the terms of SCE&G's Standard Contract.

7. Any and all documents related to the execution and subsequent performance of SCE&G's Standard Contract including, but not limited to, (a) any communication by or between DOE and SCE&G regarding execution of SCE&G's Standard Contract, and/or (b) any communication by or between DOE and SCE&G regarding SCE&G's Standard Contract or DOE's performance under SCE&G's Standard Contract, and/or (c) any internal DOE documents, notes, and/or memoranda regarding SCE&G's Standard Contract.

8. Any and all documents relating to communications between SCE&G or DOE regarding SNF or HLW.

9. Any and all documents relating to the time when DOE would have removed SCE&G's SNF, HLW, and/or greater-than-Class-C waste from SCE&G had DOE performed its obligations under SCE&G's Standard Contract beginning on January 31, 1998.

10. Any and all documents relating to storage of SNF at SCE&G.

11. Any and all documents relating to the rerack of the SCE&G spent fuel pool completed in 2003.

12. Any and all documents relating to the Acceptance Rate, including but not limited to:

a. the pace or rate at which DOE would have accepted SNF if it had started accepting such SNF on or before January 31, 1998;

b. Purchaser expectations as to the pace or rate at which DOE would accept SNF;

c. the pace or rate at which DOE will accept SNF when DOE begins accepting SNF;

d. any and all plans, projections, or estimates by DOE relating to the pace or rate at which DOE would have accepted or will accept SNF; and

e. DOE's anticipated capacity for accepting SNF and any plans, projections or estimates of same.

13. Any and all documents relating to the order among Purchasers in which DOE will accept SNF from Purchasers, including but not limited to:

a. the order in which DOE would have accepted SNF if it had started accepting such SNF on or before January 31,1998;

b. the order in which DOE will accept SNF when DOE begins accepting SNF; and

c. any and all plans, projections, or estimates by DOE for the order in which DOE would have accepted or will accept SNF.

14. Any and all documents relating to the damages SCE&G has suffered or will suffer as the result of the DOE's breach of its obligations under the Standard Contract.

15. Any and all documents relating to any advice, instructions, guidance, or other information provided by DOE to SCE&G or any other Purchaser relating to (a) the manner in which a Purchaser should provide storage for SNF in the event that the Purchaser no longer had the requisite space for storage in its spent fuel pool, and/or (b) the manner in which a Purchaser should provide storage for SNF in light of DOE's breach of the Standard Contract, and/or (c) the storage of SNF for the time after January 1998.

16. Any and all documents relating to the date DOE will begin accepting SNF from Purchasers, including but not limited to, any milestone schedules, critical path activities or sensitivity analyses conducted by or on behalf of DOE.

17. Any and all documents relating to any estimate or projection that DOE will begin accepting SNF from Purchasers later than 2010.

18. Any and all documents relating to the role of delivery commitment schedules submitted by Purchasers in the performance of the Standard Contract.

19. Any and all documents relating to the following documents, including but not limited to, documents used or relied upon to generate, create or produce such documents, and drafts of such documents:

a. Annual Capacity Reports;

b. Acceptance Priority Rankings;

c. Analyses of the Total System Life Cycle Cost for Civilian Radioactive Waste Management Program, and any addendums thereto;

d. Reports on Financing the Disposal of Commercial Spent Nuclear Fuel and Reprocessed High-Level Radioactive Waste;

e. Annual reviews of the Adequacy of the 1 mill/kwh Waste Disposal Fee;

f. Assessments of Nuclear Waste Fund Fee Adequacy;

g. Requests for Proposals for Acquisition of Waste Acceptance and Transportation Services for the Office of Civilian Radioactive Waste Management; and

h. Delivery Commitment Schedule ("DCS") Instructions.

20. Any and all documents relating to any estimates or announcements by the DOE or the NRC relating to the date by which the DOE will have an operational permanent SNF repository, including without limitation, any and all documents relating to the remarks given by any NRC Commissioner regarding the anticipated operation and/or opening date of the Yucca Mountain repository.

21. Any and all documents relating to any estimates, announcements or pronouncements by the DOE or the NRC relating to the date by which the DOE will begin accepting SNF and/or HLW under the Standard Contract.

22. Any and all documents relating to the timeline and/or projected opening date of any repository for the permanent storage of SNF, HLW, and/or greater-than-Class-C waste, including without limitation, the repository located at Yucca Mountain in Nevada.

23. Any and all documents relating to DOE's Decision Disposal Plan, including without limitation, (a) the current version of the Decision Disposal Plan; and/or (b) all drafts of the Decision Disposal Plan; and/or (c) all documents associated with the Decision Disposal Plan such as the Milestone's dictionary; and/or (d) all memorandum, e-mails, notes, letters or other documents regarding the creation, adoption of and modification, alteration, or amendment of the Decision Disposal Plan.

24. Any and all documents to or related to Bechtel SAIC LLC's October 2003 conclusion that it could not construct a Dry Transfer Facility at Yucca Mountain in time to allow initiation of waste acceptance by 2010 including without limitation any communication, whether between Bechtel SAIC LLC and DOE or internal to DOE, regarding such conclusion and any documents prepared in connection with any meeting regarding such conclusion including all notes from such meetings.

25. Any and all documents relating to direction provided to Bechtel SAIC, LLC by DOE regarding the timeline and/or projected opening date of any repository for permanent storage of SNF, high-level radioactive waste, and/or greater-than-Class-C waste, including, without limitation, any documents relating to types of and description of the facilities for initial waste acceptance.

26. Any and all documents relating to the facilities at Yucca Mountain that will be constructed for initial waste acceptance, the time required to construct facilities, and the capacity of such facilities, including without limitation any documents related to consideration of (a) any dry transfer facility; and/or (b) any demonstration bare fuel handling facility; and/or (c) any canister handling facility; and/or (d) any buildings related to administration, remediation, or security; and/or (e) initial waste emplacement drifts.

27. Any and all documents relating to any changes or alterations to the timeline and/or projected opening date of any repository for the permanent storage of SNF, high-level radioactive waste, and/or greater-than-Class-C waste as a result of the D.C. Circuit's July 9, 2004 Decision in *Nuclear Energy Institute, Inc. v. Environmental Protection Agency,* 373 F.3d 1251 (D.C. Cir. 2004).

28. Any contract between DOE and Bechtel SAIC LLC for work related to the Civilian Radioactive Waste Management Program, including Bechtel SAIC LLC's work as DOE's Management & Operating Contractor.

29. Any and all documents relating to any analysis by DOE regarding the sufficiency of Congressional appropriations to the SNF repository program

30. Any and all documents, including any drafts, e-mail, or analysis, related to the DOE's July 2004 Acceptance Priority Ranking / Annual Capacity Report ("APR/ACR") and the DOE's 2004 Instructions for Completing the Appendix C Delivery Commitment Schedules.

31. Any and all documents related to DOE's decision to resume the Delivery Commitment Schedule ("DCS") process or the APR/ACR process in 2004 or any other time.

32. Any and all documents related to the DOE's request for submittals of new DCSs from Purchasers based on the 2004 APR/ACR.

33. Any and all documents relating to the acceptance of, or procedures for handling, "Standard Fuel," "Nonstandard Fuel," "Failed Fuel," and "Nonfuel Components," as those terms are used and/or defined by Appendix E of the Standard Contract, including but not limited to, all subcategories of such fuel classifications.

34. Any and all documents relating to DOE's obligations, duties, or plans with respect to "Nonstandard Fuel," "Failed Fuel," and "Nonfuel Components," as those terms are used

and/or defined by Appendix E of the Standard Contract, and greater-than-class-C waste, including but not limited to, all subcategories of such fuel classifications.

35. Any and all documents relating to the contention by DOE, if any, that DOE is not obligated to accept "Nonfuel Components," "Failed Fuel," "HLW" and/or "Nonstandard Fuel" on the same schedule as DOE is obligated to accept Standard Fuel.

36. Any and all documents relating to the contention by DOE, if any, that the purported presence of "Nonstandard Fuel," "Failed Fuel," and/or "Nonfuel Components," reduces the damages which SCE&G have suffered as a result of DOE's breach of the Standard Contract.

37. Any and all documents relating to the DOE's definition or definitions of the following terms as used and/or defined in Appendix E of the Standard Contract: (a) "Standard Fuel," (b) "Nonstandard Fuel," (c) "Failed Fuel," (d) "Visual Failure or Damage," (e) "Radioactive 'Leakage,'" (f) "Encapsulated," (g) "Previously Encapsulated Assemblies," and/or (h) "Nonfuel Components."

38. Any and all documents relating to the DOE's definition or definitions of "spent nuclear fuel."

39. Any and all documents relating to the minimum cooling time required for acceptance, transport, and disposal of SNF.

40. Any and all documents related to the DOE's past and current planning for the storage and/or disposition of GTCC Waste.

41. Any and all documents relating to the timeline and/or projected opening date of any disposal facility for greater-than-class-C waste under the Low Level Radioactive Waste Policy Act of 1980 and Low Level Radioactive Waste Policy Amendments Act of 1985.

42. Any and all documents, including any drafts, correspondence, e-mail, or analysis, related to the DOE's consideration and preparation of an Environmental Impact Statement ("EIS") or draft EIS regarding the storage and/or disposition of GTCC Waste.

43. Any and all documents related to draft or final Notices of Intent or Advance Notices of Intent related to an EIS for the storage and/or disposition of GTCC Waste and any documents, including any drafts, related to the consideration and preparation of any draft or final Notices of Intent.

44. Any and all documents relating to the understanding or intention of DOE, at the time it executed the Standard Contract with SCE&G or any other signatory to a Standard Contract, of the length of time that each nuclear reactor covered by the Standard Contract would continue to operate, including without limitation, any documents relating to the understanding or intention, if any, whether the Standard Contract would remain in effect during the period of any nuclear Purchaser operating license extension.

45. Any and all documents relating to the impact or effect, if any, on DOE's rights, obligations, duties, plans or intentions under the Standard Contract in the event a Purchaser obtains an extension the operating license period for that Purchaser's nuclear reactor(s).

46. Any and all documents relating to the impact or effect, if any, on the damages (if any) owed by DOE for its breach of the Standard Contract of the of obtaining an extension of a nuclear utility operating license period of SCE&G or any other signatory to the Standard Contract.

47. Any and all compilations of data collected from parties to the Standard Contract from RW-859 submittals to the DOE or the DOE's Energy Information Administration including the electronic form of any spreadsheet or database summarizing such submittals including

without limitation data submitted by parties to the Standard Contract in 2003 and 2004. To the extent that such compilations are not available, all RW-859 submittals by all parties to the Standard Contract.

48. Any and all documents relating to the expected costs that will be incurred by parties to the Standard Contract to store SNF and/or HLW waste due to DOE's delay, including without limitation any source documents, analyses, spreadsheets, assumptions and data used to prepare any estimates of the costs provided by DOE to the United States Congress or representatives thereof.

49. Any and all documents, data, assumptions, bases and any other information communicated to, provided to, given to, or otherwise relied on by any person or entity who may or will offer expert testimony on behalf of the Government in this action.

Dated: October 15, 2004

Respectfully submitted,

NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
330 N. Wabash
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile
COUNSEL FOR PLAINTIFFS

Of Counsel:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Lisa M. Eddington
Christopher Tompkins
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

Thomas G. Eppink
SCANA Services, Inc.
Legal Dept. MC-130
Columbia, SC 29218
(803) 217-9448

Stephen R. Pelcher
Santee Cooper
Post Office Box 2946101
Moncks Corner, SC 29461-2901
(843) 761-4016

**CERTIFICATE OF SERVICE**

I certify under penalty that, on this 15th day of October, 2004, I caused to be served by facsimile and U.S. Mail a copy of "Plaintiffs' First Set of Requests for Production of Documents" addressed as follows:

Stephen Finn, Trial Attorney
U.S. Department of Justice
Commercial Litigation Section
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Room 12068
Washington, D.C. 20005

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **NORTHERN STATES POWER COMPANY,** Plaintiff, | ) | |
| v. | ) | No. 98-484C (Senior Judge Wiese) |
| **THE UNITED STATES,** Defendant. | ) | |

**PLAINTIFF'S FIRST INDIVIDUAL SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES RELATING TO DAMAGES**

Pursuant to RCFC 34 & 33, Plaintiff Northern States Power Company ("NSP"), through its undersigned counsel, hereby requests that Defendant (the "Government") produce the documents in response to the following requests for production of documents and respond to the interrogatories within thirty (30) days after service. Because these production requests and interrogatories are continuing, they require supplemental response(s) if the Government obtains additional information or discovers additional documents or information after service of its original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

**DEFINITIONS AND INSTRUCTIONS**

A. The following definitions apply in responding to the following document production requests and interrogatories:

1. "Defendant," "the Government," "you," "your," and "yourself" shall refer to the defendant in this action, as well as its present or former officials, employees, agents,

attorneys, or representatives and every person acting upon their behalf and/or connected with defendant(s) in the context of the matters at issue in this action.

2. "Person" and "individual" shall include any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. Subject to the agreement of the parties concerning electronic discovery and this Court's Order dated November 8, 2001, the term "document" shall be construed in the broadest sense possible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures,

pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, proposed changes, schedules, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but not limited to, digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda.

5. "Refer to or relate to" means contain, constitute, discuss, describe, identify, support, explain, contradict, and/or in any way pertain to the subject specified.

6. "DOE" refers to the United States Department of Energy.

7. "ISFSI" refers to independent spent fuel storage installation, such as that used in the dry storage of spent nuclear fuel.

8. "NSP" refers to Northern States Power Company and its successors.

B. To bring within the scope of these requests and interrogatories all information and documents that might otherwise be construed to be outside the scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (i.e., participles and infinitives, etc.) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. The masculine shall be construed to include the feminine, and vice versa;

7. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

8. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

9. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

C. If the Government cannot answer the following document requests or interrogatories in full after exercising due diligence to secure the information, so state, and answer to the extent possible. Explain in detail the reason for the Government's inability to

answer the remainder, and identify whatever information or knowledge defendant has concerning the unanswered portion.

D. Where exact statistical or numerical information, including dates or times, cannot be furnished, estimated or approximate information shall be supplied. Where an estimate or approximation is supplied, it should be so indicated, and an explanation provided as to the basis upon which the estimate or approximation was made. State the reason(s) why exact statistical or numerical information cannot be furnished.

E. Each document request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, during business hours and upon appropriate notice, to plaintiff's undersigned counsel, at the offices of Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, VA 22102, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by the Government and NSP, for the purpose of inspection and copying in accordance with RCFC 34. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

F. If you believe that any of the following requests for production or interrogatories calls for the production of documents or information that you claim contain privileged material, produce so much of the document(s) or information as is not objected to, and set forth, with respect to each such document or response to an interrogatory as to which a claim of privilege is

asserted, the nature of the privilege claimed (e.g., attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege, state:

1. The date thereof;

2. The type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

3. The name of the person or persons who prepared or signed the document;

4. The name and positions of all intended and actual recipients of the document;

5. Each person now in possession of the original or a copy of the document;

6. If not previously identified, the nature of the privilege being claimed and all facts relevant to the claim; and

7. The number of the document request to which the document is responsive.

G. Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any document production request upon the ground that it is too broad (i.e., that it calls both for information which is relevant to the subject matter of the action and information which is not relevant), provide the information that is relevant. If you object to a document production request upon the ground that to provide the document(s) would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden.

H. Unless indicated otherwise in the specific document request or interrogatory, these requests and interrogatories call for information and documents beginning in 1983 up to the present.

I. To the extent you believe information or documents responsive to these document requests and interrogatories has already been produced to NSP by the Government, identify with specificity where in the prior production or interrogatories the information or documents may be found.

## REQUESTS FOR DOCUMENTS

REQUEST NO. 1

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon the State of Minnesota's environmental protection and radioactive waste management and transportation laws or policies as these laws or policies concern the disposal or storage of radioactive waste related to NSP facilities at Prairie Island or Monticello.

REQUEST NO. 2

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon In re Application for a Certificate of Need for Construction of an Independent Spent Fuel Storage Installation, 501 N.W.2d 638 (Minn. App. 1993), or the application process for or the administrative proceeding before the Minnesota Public Utilities Commission concerning the Certificate of Need for the Prairie Island ISFSI at issue in that case.

REQUEST NO. 3

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon the status or effect of opposition by any government agencies, or any political and environmental groups in Minnesota to NSP's application for a Certificate of Need for an ISFSI at Prairie Island.

REQUEST NO. 4

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon possible actions by the State of Minnesota's executive, legislative, or

judicial branches of government concerning nuclear plant operations, radioactive waste storage, and/or radioactive waste management and transportation related to NSP's facilities at Prairie Island or Monticello.

REQUEST NO. 5

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon the effects on the Mdewakanton Dakota Prairie Island Tribe of NSP's operations at Prairie Island, including any assessment or analyses of possible actions by the Minnesota executive, legislative, or judicial branches of government to ameliorate such effects.

REQUEST NO. 6

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon NSP's search for an alternative storage facility for spent nuclear fuel in Goodhue County, Minnesota.

REQUEST NO. 7

All documents submitted to or produced for or by the Government that analyze, review, assess, or comment upon the status or effect of efforts by political or environmental groups in Minnesota to promote, popularize, or effect through legislation the increased use of alternative forms of energy generation, including but not limited to biomass energy generation, by public utilities in Minnesota.

REQUEST NO. 8

All documents not produced by NSP that the Government has collected for this case including those placed in the Government's concordance database.

REQUEST NO. 9

All documents submitted to or produced for or by the Government that analyze, review, assess, comment upon, or relate to Private Fuel Storage, LLC (or any predecessor).

REQUEST NO. 10

All documents that relate to the January 2001 Department of Energy Report to the Committees on Appropriations entitled "Spent Fuel Management Alternatives Available to Northern States Power Company, Inc. and the Federal Government for the Prairie Island Nuclear Plant, Units 1 and 2."

REQUEST NO. 11

All documents from the time period 1973-1983, which documents refer or relate to the Government's awareness that the use of nuclear power in general and the storage of radioactive waste in particular was a sensitive political issue in various states, including but not limited to Minnesota.

## INTERROGATORIES

INTERROGATORY NO. 1

Identify by name, title, and business address all of the individuals that worked on the January 2001 Department of Energy Report to the Committees on Appropriations entitled "Spent Fuel Management Alternatives Available to Northern States Power Company, Inc. and the Federal Government for the Prairie Island Nuclear Plant, Units 1 and 2," which document can be found at NSP-0001827 through NSP-0001834.

RESPONSE

INTERROGATORY NO. 2

Identify by name, title, and business address all individuals, including any employees of the Department of Energy or its contractors, that met with the Government's testifying experts or otherwise assisted the Government's testifying experts in preparing their expert witness reports.

RESPONSE

Dated: July 17, 2006

Respectfully submitted,

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Northern States Power Company

OF COUNSEL
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
Orest J. Jowyk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of PLAINTIFF'S FIRST INDIVIDUAL SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES RELATING TO DAMAGES was served by e-mail and U.S. Mail (first-class, postage pre-paid) this 17th day of July, 2006, upon:

Heide L. Herrmann
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Attn: Classification Unit
8th Floor, 1100 L Street, N.W.