8/28/06
DPC
5.2.21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, | No. 04-0106C |
| v. | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, Defendant. | |

DAIRYLAND'S OBJECTIONS AND RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 34, Dairyland responds to the government's First Set of Requests for Production of Documents ("Requests") served on Dairyland on April 26, 2006.

GENERAL RESPONSES AND OBJECTIONS

1. Dairyland objects to the government's instruction at page 1, which purports to require Dairyland to supplement its responses to the Requests "from time to time, but not later than 10 days after such additional information has been obtained." This instruction seeks to impose obligations which go beyond those that are required under RCFC 26(e).

2. Dairyland objects to the Requests to the extent they seek documents in the possession of persons or entities other than Dairyland or otherwise outside the possession, custody and control of Dairyland. Dairyland further objects to the government's definition of "Plaintiff," "Dairyland," "you," "your," and "yourself" to include parties that are not a plaintiff in this action. Dairyland will respond to these Requests for itself, but does not (and cannot) respond to them for any "present or former officers, employees, agents, attorneys, or

representatives and every person acting upon [Dairyland's] behalf and/or connected with plaintiff in the context of the matters at issue in this action."

3. Dairyland objects to, and will disregard, the government's definition of "person" and "individual" to the extent that definition purports to include "all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence."

4. Dairyland objects to the definition of "document" to include "any preliminary drafts of any documents or any working papers related thereto" to the extent that it implicates drafts and/or working papers of Dairyland's experts and departs from the limited expert discovery as provided by RCFC 26(b)(3). Dairyland also objects to the definition of "document" as unduly burdensome to the extent it includes e-mail and other electronic media and is contrary to the Court's Order entered March 14, 2005 governing the preservation of e-mail and other electronic evidence in this case. This definition also makes the Requests inappropriate pursuant to RCFC 26(b)(2).

5. Dairyland objects to the definition of "relating to" to the extent it means "supporting," "contradicting" or "in any way pertaining to the subject specified" as these terms and phrase are vague.

6. Dairyland objects to the instructions under paragraphs C, D, E, F, G, H and J as inapplicable to responses to requests for production and exceeding what is required by RCFC 26 and 34. In addition, although instruction I refers only to interrogatories, Dairyland is construing this instruction to limit each Request as seeking documents dated from 1982 up to the present, unless otherwise indicated in the specific Request.

7. Dairyland objects to all other instructions, definitions and the requests to the extent that they exceed the discovery permitted by RCFC 26 and 34.

8. Dairyland objects to the Requests as unduly burdensome to the extent that they seek publicly available documents or documents already provided to or otherwise available to the government. Such documents include, but are not limited to, formal pleadings and/or other documents filed by or on behalf of Dairyland with the NRC and DOE, official DOE documents, industry newsletters and standard reference material.

9. Dairyland objects to producing copies of documents that do not differ materially from the copy produced because production of such documents would be unduly burdensome.

10. Dairyland's production of documents is not intended to waive, and should not be construed as waiving the right to object to the relevance or admissibility as evidence of any documents provided, or the subject matter thereof.

11. Dairyland also objects to the Requests as unduly burdensome to the extent they call for the production of documents already provided to the government in connection with Dairyland's RCFC 26(a)(1) disclosures, and further as being beyond the scope of RCFC 26 and unduly burdensome to the extent they request Dairyland to "identify with specificity where in the prior production" such previously-produced documents may be found.

12. Notwithstanding the definitions suggested by the government, except where a different meaning is indicated by context, Dairyland's responses use the terms "SNF," "spent fuel," "spent nuclear fuel," "spent fuel and high-level waste," "SNF and HLW," interchangeably to cover all material DOE is obligated to accept under the parties' contract.

SPECIFIC OBJECTIONS AND RESPONSES

REQUEST NO. 1

All documents relating to your responses to Defendant's First Set of Interrogatories.

OBJECTIONS

Dairyland objects to this Request as overbroad and unduly burdensome and adds nothing of substance to the other more specific Requests propounded by the Government.

REQUEST NO. 2

All documents relating to permanently shutting down LACBWR, including all documents relating to the projected timing for the permanent shutdown, and all documents relating to the reasons for any shutdown.

OBJECTIONS

Dairyland objects to this Request as neither relevant nor reasonably calculated to lead to the discovery of admissible evidence because Dairyland's damages do not include costs that depend upon the timing of or reasons for shutting down or decommissioning LACBWR.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 3

All documents relating to the operations and maintenance associated with wet storage, including all documents relating to personnel and staffing for wet pool operations and the costs associated with wet pool operations.

OBJECTIONS

Dairyland objects to this Request as overbroad and unduly burdensome, particularly with regard to its request for "all" documents relating to operations and maintenance and personnel and staffing.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 4

All documents relating to projected SNF discharge rates at LACBWR.

OBJECTIONS

Dairyland objects to this Request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence because LACBWR, which has been shut down since 1987, has no projected SNF discharge rates.

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents.

REQUEST NO. 5

All documents relating to the presence of high burn-up fuel, failed fuel, non-standard fuel, other than standard fuel, and/or GTCC radioactive waste in plaintiff's wet pools or upon plaintiffs reactor sites.

OBJECTIONS

Dairyland objects to this Request insofar as the terms "high burn-up fuel," "failed fuel," "non-standard fuel," and "other than standard fuel" are undefined and therefore vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 6

All documents relating to decommissioning, including, but not limited to, all decommissioning studies, either developed by Dairyland or outside contractors.

OBJECTIONS

Dairyland objects to this Request insofar as the term "decommissioning studies" is vague. Dairyland also objects that this Request is overbroad and unduly burdensome, and is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence because Dairyland's damages to not include costs that depend upon the timing of or reasons for decommissioning LACBWR. Dairyland further objects that this Request to the extent it seeks documents that are publicly available or already in the government's possession.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 7

Any investigations, analyses, and/or studies of additional or alternative storage options for Dairyland's SNF and/or HLW.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 8

All documents relating to PFS, including all documents relating to Dairyland's participation in PFS and documents relating to Dairyland's damages attributable to PFS.

OBJECTIONS

Dairyland objects to this Request insofar that the term "participation" is vague. Dairyland further objects to this Request as overbroad and unduly burdensome to the extent it requests "all" documents relating to Dairyland's participation in PFS.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 9

All documents concerning or reflecting the substantive, technical, and/or economic bases for Dairyland's construction of an ISFSI.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "substantive, technical, and/or economic bases" is vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and

to the extent they can be located after a reasonable search. Dairyland will interpret this Request as seeking documents concerning consideration of construction of an ISFSI at LACBWR, as Dairyland has not yet begun construction of an ISFSI.

REQUEST NO. 10

All spent fuel management studies produced by, or upon behalf of, Dairyland.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "spent fuel management studies" is vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 11

All documents relating to any modifications to site facilities necessary to support the transfer of fuel from Dairyland's spent fuel pools.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "any modifications to site facilities necessary for the transfer of fuel" is vague given that the Request does not state where and for what purpose the fuel will be transferred.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 12

All documents relating to any modifications to site facilities necessary to support transfer of SNF to DOE from Dairyland's spent fuel pools.

OBJECTIONS

Dairyland objects to this Request as vague insofar that the "modifications . . . necessary" for the stated purpose are presently unknown.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 13

All documents relating to Dairyland's spent fuel pools, including, but not limited to: capacity, including but not limited to license capacity; historical changes in capacity; current inventory (including data relating to the type and composition of the material in Dairyland's spent fuel pools, as well as details about burn-up and enrichment of the material in the pools); and specific identification (both in type and amount) of materials other than SNF that are stored in Dairyland's spent fuel pools.

OBJECTIONS

Dairyland objects that this Request is overbroad, unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar that it requests "all" documents relating to Dairyland's spent fuel pools.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 14

All documents relating to any re-racking at LACBWR including, but not limited to, memoranda, notes, letters, or printed e-mails relating to any decisions concerning re-racking and the extent of any actual or potential re-racking.

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents because it has not done any re-racking at LACBWR since 1982.

REQUEST NO. 15

All documents concerning Boraflex racks, including all documents concerning problems experienced at LACBWR as a result of any use of Boraflex racks.

OBJECTIONS

Dairyland objects to this Request as neither relevant nor reasonably calculated to the lead to the discovery of admissible evidence.

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents.

REQUEST NO. 16

Copies of current certificates of compliance, including any amendments and/or pending modifications, for the casks that Dairyland is using or intends to use for its SNF.

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents.

REQUEST NO. 17

All documents relating to the design basis for Dairyland's ISFSI, including the number of casks to be used in the ISFSI and any analysis of the amounts and types of inventory to be stored in the ISFSI over time.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "design basis" is vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 18

All documents supporting or otherwise concerning the costs claimed as damages associated with SAFSTOR at LACBWR.

OBJECTIONS

Dairyland objects to this Request insofar that the term "supporting" and the phrase "otherwise concerning" are vague. Dairyland also objects that production of all documents "supporting" or "otherwise concerning" these costs would be unduly burdensome.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 19

All documents supporting or otherwise concerning the costs claimed as damages associated with an ISFSI.

OBJECTIONS

Dairyland objects to this Request insofar that term "supporting" and the phrases "otherwise concerning" and "associated with" are vague. Dairyland also objects that production of all documents "supporting" or "otherwise concerning" these costs would be unduly burdensome.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 20

All documents supporting, refuting, or otherwise relating to Dairyland's damages.

OBJECTIONS

Dairyland objects to this Request insofar that the term "supporting" and the phrase "otherwise relating" are vague. Dairyland also objects that production of all documents "supporting" or "otherwise relating" to its damages would be unduly burdensome.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 21

Any documents relating to the assignment of Dairyland's Standard Contract, of Dairyland's SNF and/or HLW, and/or of any claims arising out of the Standard Contract to any third parties.

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents.

REQUEST NO. 22

All documents, including all documents submitted to the Federal Energy Regulatory Commission, the Nuclear Regulatory Commission, state regulatory commissions, other utilities, and any other third parties, that relate to Dairyland's proposed, submitted, approved, or disapproved delivery commitment schedules.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 23

All documents relating to priority for the acceptance of SNF and/or HLW from shutdown reactors.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "priority for the acceptance" is vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 24

All documents relating to the exchange of delivery commitment schedules among utilities.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 25

All documents relating to DOE's obligation to accept GTCC waste.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 26

All documents relating to DOE's responsibilities with respect to the timing, rate, and scheduling of acceptance of SNF and/or HLW from utilities under the Standard Contract and the Nuclear Waste Policy Act.

OBJECTIONS

Dairyland objects to this Request insofar that it is compound and, therefore, vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 27

All documents created at any time after 1976 relating to, referring to, or associated with the promulgation and/or formation of the Standard Contract and/or the NWPA, including all documents prepared by or upon behalf of Dairyland concerning the promulgation and/or formation of the Standard Contract and/or the NWPA.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "or associated with" is vague. Dairyland also objects that production of all documents "referring to" or "associated with" the promulgation and/or formation of the Standard Contract and/or the NWPA would be unduly burdensome insofar that these documents are publicly available and/or already in the government's possession.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 28

All drafts of the Standard Contract.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 29

All comments regarding the Standard Contract or proposed changes to the Standard Contract to or from nuclear industry groups or other third parties.

OBJECTIONS

Dairyland objects to this Request insofar that the term "comments" is vague.

RESPONSE

Notwithstanding its stated objections, Dairyland will produce all responsive, non-privileged documents it can identify as coming within the reasonable scope of this Request and to the extent they can be located after a reasonable search.

REQUEST NO. 30

All documents considered and/or reviewed by each of plaintiff's expert witnesses in forming his opinions, including any and all electronic files, analyses, spreadsheets, and models.

OBJECTIONS

Dairyland objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 31

All electronic files, documents, and analyses relating to any and all scenarios, actual or hypothetical, considered by each of plaintiff's expert witnesses.

OBJECTIONS

Dairyland objects to this Request insofar that the terms "analyses" and "scenarios" are vague. Dairyland further objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 32

All communications between each of plaintiff's expert witnesses and counsel.

OBJECTIONS

Dairyland objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 33

All communications between each of plaintiff's expert witnesses and any Dairyland employee regarding or relating to the contents of the expert witness reports and/or work performed upon behalf of plaintiff.

OBJECTIONS

Dairyland objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 34

All of plaintiff's expert witnesses' work papers and notes, in electronic and hard copy, and all drafts of the expert reports.

OBJECTIONS

Dairyland objects to this Request insofar that it exceeds Dairyland's obligations under RCFC 26 and 34 in terms of producing documents in both electronic and hard copy format. Dairyland further objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 35

All communications with plaintiff's expert witnesses involving the request for expert services.

OBJECTIONS

Dairyland objects to this Request insofar that the phrase "request for expert services" is vague. Dairyland further objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 36

All electronic files relating to the costs or categories of costs claimed in any of Dairyland's expert reports that contain analysis or output from Dairyland's accounting systems, human resources systems, procurement systems, or their equivalents. Such electronic files shall be in a form, to the extent that it exists, that permits data manipulation (i.e., spreadsheet, database, or accounting system files, but not image files).

OBJECTIONS

Dairyland objects to this Request insofar that it is unduly burdensome to produce "all electronic files" relating to the costs or categories claimed in any of Dairyland's expert reports. Dairyland further objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 37

All electronic files of spreadsheets relating to Dairyland's expert reports or that are referenced in Dairyland's expert reports. Such electronic files shall be in a form, to the extent that it exists, that permits data manipulation (i.e. spreadsheet, database, or accounting system files, but not image files).

OBJECTIONS

Dairyland objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 38

All contracts and invoices for plaintiff's expert witnesses' services.

OBJECTIONS

Dairyland objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3). Dairyland further objects to this Request insofar that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

REQUEST NO. 39

All spreadsheets attached to Dairyland's expert reports in manipulative electronic format, with formulas.

OBJECTIONS

Dairyland objects to this Request insofar that it seeks drafts and/or working papers of Dairyland's expert witnesses and departs from the limited expert discovery as provided by RCFC 26(b)(3).

RESPONSE

Notwithstanding its stated objections, Dairyland states that it has no responsive documents as it has not identified any expert witnesses in this case.

Respectfully submitted,

August 28, 2006

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Dairyland's Objections and Responses to Defendant's First Set of Requests for Production of Documents be served by hand this 28th day of August 2006 on:

Russell Shultis
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530

Todd W. Monroe

8/28/06
DPC
5.2.2.1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,
Plaintiff,
v.
UNITED STATES OF AMERICA,
Defendant.

No. 04-0106C

(Chief Judge Damich)

DAIRYLAND'S OBJECTIONS AND RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to RCFC 33, Dairyland responds to the government's First Set of Interrogatories served on Dairyland on April 26, 2006.

GENERAL RESPONSES AND OBJECTIONS

The following general responses and objections to the interrogatories are incorporated by reference in each of Dairyland's responses below. Dairyland's answers to interrogatories are subject to these general objections regardless of whether Dairyland agrees in individual responses below to answer interrogatories notwithstanding additional objections noted in such individual responses.

1. Dairyland objects to the government's instruction at page 1, which purports to require Dairyland to supplement its responses to the interrogatories "from time to time, but not later than 10 days after such additional information has been obtained." This instruction seeks to impose obligations that go beyond those that are required under RCFC 26(e).

2. Dairyland objects to any interrogatories that seek information or documents in possession of entities other than Dairyland or otherwise outside the possession, custody or

control of Dairyland. Dairyland further objects to the government's definition of "Plaintiff," "you," "your," and "yourself" to include parties other than Dairyland. Dairyland will answer these interrogatories but does not (and cannot) answer them for any "present or former officers, employees, agents, attorneys, or representatives and every person acting upon [Dairyland] behalf and/or connected with plaintiff in the context of the matters at issue in this action."

3. Dairyland objects to the definition of "document" to include "any preliminary drafts of any documents or any working papers related thereto" as it implicates drafts and/or working papers of Dairyland experts and departs from the limited expert discovery as provided by RCFC 26(b)(3).

4. Dairyland objects to the definition of "identify" and "identity" and the corresponding instructions to these definitions under paragraphs A.6(a)-(e) as they purport to require Dairyland to seek, gather, and/or provide information and documents already in the possession of, or equally available to the government, or impose obligations beyond those that are provided by RCFC 26 and 33. Dairyland also objects to definition A.6(b) of "identify" as oppressive, unduly burdensome and seeking information that is neither relevant nor reasonably calculated to lead to the discovery admissible evidence. For example, the government has no need for the addresses and telephone numbers (particularly home addresses and phone numbers) of Dairyland personnel, as all contact with these individuals concerning this litigation should be through counsel. Further, the requiring of Dairyland to respond to all of the elements of "identify" or "identity" in the instructions would cause the government's interrogatories, including discrete subparts, to exceed the twenty-five interrogatories permitted by RCFC 33. This instruction also makes the interrogatories improper pursuant to RCFC 26(b)(2).

5. Dairyland objects to the instructions under paragraphs A.7 on the ground that

these instructions make the government's interrogatories oppressive, overbroad and unduly burdensome. Dairyland will provide in its responses the information specifically sought for each individual interrogatory (to the extent Dairyland possesses such information and it is properly discoverable), and not the information included as part of paragraphs A.7(b). Further, the requiring of Dairyland to respond to all of the elements of "describe in detail," "state in detail," "state each fact," "state all facts," or "explain in detail" in these instructions would cause the government's interrogatories, including discrete subparts, to exceed the twenty-five interrogatories permitted by RCFC 33. This instruction also makes the interrogatories improper pursuant to RCFC 26(b)(2).

6. Dairyland objects that the number of interrogatories served by the government, including discrete subparts, exceed the twenty-five in number permitted by RCFC 33.

7. Dairyland objects to providing documents already in the possession of, or equally available to the government, such as the documents produced by Dairyland in connection with its RCFC 26(a)(1) Disclosures.

8. Dairyland objects to all other instructions and definitions to the extent that they exceed the discovery permitted by RCFC 26, 33.

9. Dairyland objects to the interrogatories that seek publicly available documents or information already available to the government. Such information includes, but is not limited to, formal pleadings and/or other documents filed by or on behalf of Dairyland, official DOE documents, industry newsletters and standard reference materials. This availability makes these interrogatories unduly burdensome and not properly discoverable pursuant to RCFC 26(b)(2).

10. Dairyland objects to the instructions and interrogatories that call for the disclosure of information that is protected by the attorney-client privilege, or any other applicable privilege,

immunity or protection. All interrogatories will be read to exclude discovery of information protected by the attorney-client privilege or work product doctrine. Provision of any such information by Dairyland during the litigation is inadvertent and should not be construed as a waiver of any such privilege or of any other ground for objection to discovery with respect to such information.

11. Dairyland objects to instruction E seeking separate responses to each subpart as unduly burdensome. For example, many of the subparts requests that particular information be included in the description. It would be unduly burdensome to repeat such information both in the description and in a separate subpart. On an interrogatory-by-interrogatory basis, Dairyland will, subject to its objections, respond to the interrogatories in a manner that coherently and efficiently supplies the information requested.

12. Dairyland's answers to interrogatories are not intended to waive, and should not be construed as waiving the right to object to the relevance or admissibility as evidence of any information or documents provided, or the subject matter thereof.

13. Dairyland objects to instructions D, F, G, H and J as exceeding what is required under RCFC 33.

14. Except where a different meaning is indicated by context, the responses use the terms "SNF," "spent fuel," "spent nuclear fuel," "spent fuel and high-level waste," "SNF and HLW," interchangeably to cover all material DOE is obligated to accept under the parties' contract.

## SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. 1

For every current or former Dairyland employee identified in Dairyland's RCFC 26(a)(1) Disclosures, please provide the following information: (i) dates of employment; (ii) most recent job title at Dairyland; (iii) department in which the employee works; (iv) responsibilities in employee's most recent job at Dairyland; (v) whether the employee has supervisory authority at Dairyland; (vi) categories of damages of which each employee may possess knowledge; (vii) all prior job titles and job descriptions relevant to employee's knowledge concerning categories of damages sought by Dairyland; and (viii) description of employee's knowledge concerning the damages sought by Dairyland.

OBJECTIONS

Dairyland objects to the phrases "categories" and "supervisory authority" as vague. Dairyland also objects that this interrogatory is overbroad and unduly burdensome, particularly where the interrogatory seeks information about "categories of damages of which each employee may possess knowledge" and "description of employee's knowledge concerning the damages sought by Dairyland."

RESPONSE

Notwithstanding the objections noted above, Dairyland responds as follows:

Michael A. Brasel

(i) February 2002 - present

(ii) Project Engineer

(iii) Generation Division

(iv) Project Manager for the Reactor Pressure Vessel Removal Project and the Dry

Cask Storage Project.

(v) No.

(vi) Reactor Pressure Removal Project; LACBWR SAFSTOR costs

(vii) None.

(viii) Knowledge of RPV removal and disposal costs, dry cask storage technologies and costs.

<u>Roger E. Christians</u>

(i) October 1973 - present

(ii) Plant Manager, LACBWR

(iii) Generation Division

(iv) Overall management of LACBWR facility.

(v) Yes.

(vi) LACBWR SAFSTOR costs

(vii) Technical Support Engineer - LACBWR; Shift Supervisor - LACBWR; Control Room Operator - LACBWR

(viii) Knowledge of spent fuel management issues at LACBWR.

<u>John D. Parkyn</u>

(i) June 1966 - August 1966; October 1974 - present

(ii) Manager Nuclear and Special Projects

(iii) Generation Division

(iv) Removal of LACBWR spent fuel from DPC property so LACBWR can be decommissioned and dismantled.

(v) No.

(vi) Off-site storage/PFS

(vii) Operations Engineer - LACBWR; Assistant Superintendent - LACBWR; Superintendent - LACBWR. In these prior positions (1974-94) Mr. Parkyn helped develop and/or approved all budgets which related to plant operation and shutdown.

(viii) Knowledge of Dairyland's PFS capital contributions and related costs based upon his role in leading Dairyland's PFS efforts and as Chairman of the PFS Board of Managers.

Seymour J. Raffety

(i) November 1968 - present

(ii) Reactor Engineer/Radiation Protection Engineer, LACBWR

(iii) Generation Division

(iv) Spent fuel storage, DOE contract administration, Special Nuclear Material accountability, radiation protection technical issues.

(v) No.

(vi) LACBWR SAFSTOR costs

(vii) None

(viii) Knowledge of spent fuel management issues at LACBWR.

Charles V. Sans Crainte

(i) July 1971 - present

(ii) Vice President, Generation

(iii) Generation Division

(iv) Direct and oversee all functions of Generation Division, including management responsibility for the budget, operations, maintenance and staffing for all of Dairyland's electric generating plants, including LACBWR. Specific to LACBWR, responsibilities include planning

and management for SAFSTOR and later decommissioning, including, plans for the removal of the spent nuclear fuel.

(v) Yes.

(vi) LACBWR SAFSTOR costs; off-site storage/PFS.

(vii) None.

(viii) Knowledge of the overall budget for LACBWR O&M expenses, contracts and consultants for outside services related to LACBWR projects, and PFS participation costs.

Keith A. Stubbendick

(i) March 1986 - present

(ii) Director of Accounting

(iii) Accounting Division

(iv) Direct and oversee all functions of the accounting department.

(v) Yes.

(vi) LACBWR SAFSTOR costs; off-site storage/PFS; insurance expense.

(vii) None.

(viii) Knowledge of the accounting systems which were used to generate the reports to determine Dairyland's damages computation.

INTERROGATORY NO. 2

Identify the persons most knowledgeable about each technology or facility that Dairyland has ever used to store SNF or HLW, or both, making sure to identify persons with knowledge of the cost and technical aspects of each technology or facility, knowledge of the history of each technology or facility, and identify all documents relating to your response.

OBJECTIONS

Dairyland objects to the phrases "each technology or facility," "the cost and technical aspects of each technology or facility" and "all documents relating to your response" as vague. Dairyland further objects that this interrogatory is overbroad and unduly burdensome, particularly where it requires Dairyland to identify "all documents related to [its] response."

RESPONSE

Notwithstanding the objections noted above, Dairyland responds as follows: Dairyland has always stored its SNF and HLW in its spent fuel pool at LACBWR. Seymour Raffety is the person most knowledgeable of this facility, and Keith Stubbendick is the person most knowledgeable about the costs associated with this facility.

INTERROGATORY NO. 3

Describe in detail any plans to change the technology or facility that Dairyland currently uses to store SNF or HLW, or both, including plans that were never implemented, making sure to identify those persons who are most knowledgeable about each plan, explain why each plan was considered, and identify all documents relating to your response.

OBJECTIONS

Dairyland objects to the phrases "describe in detail," "change the technology" and "all documents relating to your response" and the term "plans" as vague. Dairyland further objects that this interrogatory is overbroad and unduly burdensome, particularly where it requires Dairyland to identify "all documents related to [its] response."

RESPONSE

Notwithstanding the objections noted above, Dairyland responds as follows: Since 1994, Dairyland has developed and participated in plans to remove its spent fuel from wet pool storage

and store it at a private offsite dry storage facility owned and operated by PFS. The person who is most knowledgeable about these plans is John Parkyn. Dairyland has pursued offsite dry storage through PFS because of the government's notice in 1994 that it would fail to timely accept spent fuel and its later breach of Dairyland's spent fuel contract. In addition, Dairyland believed that offsite dry storage would allow it to remove its spent fuel promptly and less expensively so it could then proceed with decommissioning and dismantlement of LACBWR, and because the LACBWR site could not accommodate an Independent Spent Fuel Storage Installation ("ISFSI") under existing NRC regulations. Offsite dry storage would also allow termination of the NRC license for the LACBWR facility. Dairyland has already produced numerous documents pertaining to PFS and its offsite dry storage plans.

Dairyland is presently developing plans for an ISFSI at LACBWR and has contracted with Sargent & Lundy to put together a Project Work Plan and provide budgetary engineering costs. The person at Dairyland who is most knowledgeable about these plans is Michael A. Brasel. Dairyland is now pursuing an onsite ISFSI because of (i) the government's breach of its spent fuel contract, (ii) it is more economical in the long term than wet storage, (iii) the PFS project has been slowed by political roadblocks, and (iv) because Dairyland reasonably expects the NRC to grant waivers or exemptions to its ISFSI siting regulations that would permit construction of an ISFSI at the LACBWR site. Dairyland has already produced its documents pertaining to these plans.

INTERROGATORY NO. 4

Identify all categories of damages sought by Dairyland arising from DOE's breach of the Standard Contract including any costs associated with your wet pool storage facilities for which you claim DOE should be liable and identify all documents relating to your response.

OBJECTIONS

Dairyland objects to the term "categories" and the phrase "all documents relating to your response" as vague. Dairyland objects further that this interrogatory is overbroad and unduly burdensome, particularly where the interrogatory seeks information about "all categories of damages" and "all documents relating to [its] response."

RESPONSE

Notwithstanding the objections noted above, Dairyland responds as follows: Dairyland refers the government to its RCFC 26(a)(1) Disclosures, Part C.

INTERROGATORY NO. 5

Identify those persons, both within plaintiff's organization and outside of plaintiff's organization, who are most knowledgeable about the parties' understanding, prior to, at the time of, as well as subsequent to the execution of plaintiff's contract, as to the rate and sequence of SNF and HLW acceptance that DOE would be obligated to maintain under the Standard Contract, making sure to identify: (i) each person's area of expertise; (ii) the nature of each person's knowledge; (iii) how each person obtained that knowledge; (iv) when each person gained that knowledge; (v) each person's position within and relationship to plaintiff, if any; and (vi) all documents that relate to each person's understanding of the rate of SNF and/or HLW acceptance that DOE would be obligated to maintain under the Standard Contract.

OBJECTIONS

Dairyland objects that the phrases "most knowledgeable," "parties' understanding," "rate of sequence of acceptance," "would be obligated to maintain," "area of expertise" and "all documents that relate to each person's understanding" are vague. Dairyland also objects that the terms "nature," "knowledge," "obtained," and "gained" are vague. Dairyland further objects that

the interrogatory requests information about persons outside of the plaintiff's organization. Dairyland objects that subpart (i) is vague, as the questions asks about factual matters, and it is not clear how "expertise" relates to these matters. Dairyland also objects that subpart (vi) is vague, as it is unclear what relationship between the documents and the person's knowledge is being sought. Dairyland further objects that subparts (iii), (iv), and (vi) are overbroad and unduly burdensome.

RESPONSE

Notwithstanding the objections noted above, Dairyland responds as follows:

Seymour Raffety, Loring Mills, John Bartlett and Lake Barrett.

(i)-(v). See the response to Interrogatory No. 1 and Dairyland's RCFC 26(a)(1) Disclosures regarding Messrs. Raffety, Mills and Bartlett. Mr. Barrett worked in the Office of Civilian Radioactive Waste Management for many years. Since his retirement, he has been a consultant for utilities, including Dairyland.

(vi). Dairyland has produced numerous documents pertaining to the parties' understanding as to the rate and/or sequence of SNF and/or HLW acceptance in connection with its RCFC 26(a)(1) Disclosures, Part B. Documents, and subsequent document productions.

INTERROGATORY NO. 6

Describe in detail all spent fuel acceptance schedules or acceptance scenarios used by Dairyland, including all decommissioning studies submitted to FERC, the NRC, or the PSC, making sure to: (i) identify the assumed start date for SNF acceptance; (ii) identify the annual rate at which SNF would be removed from the site (in MTUs) according to each schedule; (iii) identify when all the SNF was to be removed from the site under each schedule; and (iv) identify each person who has knowledge regarding each schedule.