No. 04-106C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
JOHN C. EKMAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 23, 2007

Attorneys for Defendant

## TABLE OF CONTENTS

Page

BACKGROUND . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . 2

I. FACTS RELATING TO THE DEPOSITION OF MICHAEL BRASEL . . . . . . . 2

A. Mr. Brasel Is A Material Witness Whose Testimony Raises Significant Factual Issues Relevant To Dairyland's Claim And To Mr. Brasel's Viability As A Witness In This Case . . . . . . . . . . 2

B. Counsel For Dairyland Instructed Mr. Brasel Not To Respond To Additional Questions Concerning The Damages Claim And His Involvement In Preparing Or Assembling That Claim . . . . . . . . . . 7

II. DAIRYLAND HAS WITHHELD DOCUMENTS RELATED TO THE EFFORTS OF DAIRYLAND EMPLOYEES UPON THE DAMAGES CLAIM . . . . . . . . . . 9

DISCUSSION . . . . . . . . . . 10

I. THE GOVERNMENT HAS SATISFIED ITS MEET AND CONFER REQUIREMENT . . . . . . . . . . 10

II. DAIRYLAND COUNSEL IMPROPERLY HAS INSTRUCTED WITNESSES NOT RESPOND TO QUESTIONS DURING THEIR DEPOSITIONS . . . . . . . 11

A. The Questions That The Government Posed Do Not Seek Information Covered By The Work Product Doctrine . . . . . . . . . . 11

B. The Questions That The Government Posed Do Not Seek Information Covered By The Attorney-Client Privilege . . . . . . . . . . 15

## TABLE OF CONTENTS (cont'd)

**Page**

III. THE COURT SHOULD ORDER THAT EIGHT DOCUMENTS WITHHELD AND TWO DOCUMENTS "CLAWED-BACK" UPON WORK PRODUCT GROUNDS SHOULD BE PRODUCED TO THE GOVERNMENT . . . . . . . . 17

A. The Documents Do Not Appear To Constitute Work Product . . . . . . . . 17

B. Even If The Documents Constitute Work Product, The Court Should Order That They Be Produced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

### CASES

**Page**

Afro-Lecon, Inc. v. United States,
820 F.2d 1198 (Fed. Cir. 1987) . . . . . . . . . . 21

Audiotext Comm. Network, Inc. v. U.S. Telecom, Inc.,
1995 WL 625962 (D. Kan. Oct. 5, 1995) . . . . . . . . . . 13

Baker v. General Motors Corp.,
197 F.R.D. 376 (W.D. Mo. 1999) . . . . . . . . . . 19

Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,
709 F.2d 1109 (7th Cir. 1983) . . . . . . . . . . 13

Carter v. Gibbs,
909 F.2d 1450 (Fed. Cir. 1990) . . . . . . . . . . 12

Diversified Industries, Inc. v. Meredith,
572 F.2d 596 (8th Cir. 1978) (en banc) . . . . . . . . . . 16

First Fed. Sav. Bank of Hegewisch v. United States,
55 Fed. Cl. 263 (2003) . . . . . . . . . . 15, 16

Genentech, Inc. v. U.S. Int'l Trade Comm'n,
122 F.3d 1409 (Fed. Cir. 1997) . . . . . . . . . . 12

Hearn v. Rhay,
68 F.R.D. 574 (E.D. Wash, 1975) . . . . . . . . . . 21

Hickman v. Taylor,
329 U.S. 495 (1947) . . . . . . . . . . 12

Hoffman v. United Telecomm., Inc.,
117 F.R.D. 436 (D. Kan. 1987) . . . . . . . . . . 14

Johnson v. Bryco Arms,
2005 WL 469612 (E.D.N.Y. March 1, 2005) . . . . . . . . . . 19

**TABLE OF AUTHORITIES (cont'd)**

**Page**

Madanes v. Madanes,
199 F.R.D. 135 (S.D.N.Y. 2001) . . . . . 19

Onwuka v. Federal Express Corp.,
178 F.R.D. 508 (D. Minn. 1997) . . . . . 12

Pacific Gas & Electric Co. v. United States,
69 Fed. Cl. 784 (2006) . . . . . passim

Papadakis v. CSX Transp., Inc.,
233 F.R.D. 227 (D. Mass. 2006) . . . . . 12

RTC v. Dabney,
73 F.3d 262 (10th Cir. 1995) . . . . . 12

United States v. Great Northern Railway Co.,
18 F.R.D. 357 (N.D. Cal. 1955) . . . . . 19

United States v. Nobles,
422 U.S. 225 (1975) . . . . . 12, 18, 21

Upjohn Co. v. United States,
449 U.S. 383 (1981) . . . . . 16

Varuzza v. Bulk Materials, Inc.,
169 F.R.D. 254 (N.D.N.Y. 1996) . . . . . 18

Zenith Radio Corp. v. United States,
764 F.2d 1577 (Fed. Cir. 1985) . . . . . 21

# INDEX TO APPENDIX

**Page**

Excerpts of Deposition of John Parkyn, taken December 12, 2006 . . . . . . . . . . . . . . . . . . . . . . . . 1

Excerpts of Deposition of Michael Brasel, taken December 13, 2006 . . . . . . . . . . . . . . . . . . . . . . 5

Dairyland's RCFC 26(a)(1) Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Letter from Todd Monroe to Russell Shultis, dated December 13, 2006 . . . . . . . . . . . . . . . . . . . 23

Excerpts from Dairyland's Privilege Log, dated October 10, 2006 . . . . . . . . . . . . . . . . . . . . . . . 25

Letter from John C. Ekman to Kevin E. Stern, dated January 11, 2007 . . . . . . . . . . . . . . . . . . . . 30

Email from Kevin E. Stern to John C. Ekman, dated January 16, 2007 . . . . . . . . . . . . . . . . . . . . 32

Email from Kevin E. Stern to John C. Ekman, dated January 22, 2007 . . . . . . . . . . . . . . . . . . . . 33

Excerpt from Duratek Meeting Minutes, dated September 2, 2004 (PLAC0052691) . . . . . . . . 34

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | No. 04-106C<br>(Chief Judge Damich) |

DEFENDANT'S MOTION TO COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully moves to compel deposition testimony and the production of documents improperly withheld by plaintiff, Dairyland Power Cooperative ("Dairlyand"), upon the basis of the attorney-client privilege and/or the work product doctrine.

BACKGROUND

This motion to compel is precipitated by the actions of counsel for Dairyland – which are inconsistent with a recent published decision from this Court contrary to Dairyland's position, Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 784 (2006) – to assert objections to questions posed during depositions based upon the work product doctrine and/or attorney-client privilege.[1] Upon their face, the questions that Government counsel posed do not seek privileged information or information protected by the work product doctrine. Indeed, this Court found, with respect to identical objections to the identical questions, that the plaintiff's assertion of

[1] The attorneys representing Dairyland here are the same attorneys that represented Pacific Gas & Electric ("PG&E") in the above-referenced spent fuel litigation. Id. at 786.

privilege and instructions to witnesses not to respond to certain questions "attempts to stretch the [work product] doctrine beyond its recognized boundaries." Pacific Gas, 69 Fed. Cl. at 816. As a result of its decision, the Pacific Gas Court re-opened three fact depositions so that the witnesses could respond to the Government's questions. Id. at 817. As they were in Pacific Gas, we respectfully request that the Court reject the objections of Dairyland's counsel here and order that the deposition of Michael Brasel be reopened so that Mr. Brasel may answer the legitimate questions that the Government posed concerning Dairyland's damages.[2]

By this motion, the Government also moves for the production of several documents withheld or clawed back by Dairyland based upon the work product doctrine, upon the grounds that the plaintiff's application of that doctrine, as evidenced in Pacific Gas, goes well beyond the limits of that doctrine.

## STATEMENT OF FACTS

### I. FACTS RELATING TO THE DEPOSITION OF MICHAEL BRASEL

#### A. Mr. Brasel Is A Material Witness Whose Testimony Raises Significant Factual Issues Relevant To Dairyland's Claim And To Mr. Brasel's Viability As A Witness In This Case

On December 13, 2006, the Government deposed Michael Brasel, a Dairyland employee who was identified by Dairyland as knowledgeable about, among other things, spent nuclear fuel management issues at Dairyland. Deposition of Michael Brasel, taken December 13, 2006

---

[2] Dairyland's counsel made similar objections to questions regarding Dairyland's damages in the deposition of John Parkyn. Deposition of John Parkyn, taken December 12, 2006, 11:4-13:23 (A.1-3). However, Mr. Parkyn was allowed to answer subsequent questions that allowed us to conclude that he lacked any involvement in the preparation or determination of Dairyland's damages. Id., Tr. 217:4-219:7 (A.4). As a result, and although we believe that counsel's objections during that deposition were improper, we are not seeking to reopen Mr. Parkyn's deposition.

("Brasel Dep.") (A.5)[3]; Dairyland's RCFC 26(a)(1) Disclosures, 1 (A.17). Mr. Brasel has been employed by Dairyland since February 2002 (Brasel Dep., 9:5-9 (A.7)), and he is the project manager both for Dairyland's reactor pressure vessel removal project and for Dairyland's dry fuel storage project.[4] Id., 11:2-7 (A.7), 63:23-25 (A.15). Both projects are implicated by Dairyland's damages claim and to the Government's defense of that claim. See Dairyland's RCFC 26(a)(1) Disclosures, 3-5 (A.19-21). Mr. Brasel's testimony, therefore, is relevant to meeting Dairyland's burden of proof at trial and the Government's defense of Dairyland's claims.

At the beginning of the deposition, and in response to questions that counsel for the Government, John C. Ekman, posed, Mr. Brasel provided the following testimony concerning his work upon Dairyland's damages claim:

> Q. Did you speak with Dairyland personnel outside of counsel being present concerning Dairyland's damages claim?
>
> A. No.
>
> * * *
>
> Q. You haven't – have you had correspondence with Dairyland personnel concerning the damages claim outside of counsel?
>
> A. No.
>
> Q. Did you assemble documents in support of the damages claim?

---

3 "A.___" refers to the appendix attached to this motion.

4 Mr. Brasel's December 13, 2006 deposition was the first time he ever had been deposed (Brasel Dep., 6:1-3), and Mr. Brasel described no other experience in litigation outside of this case.

A. Outside of counsel, no.

Brasel Dep., 17:2-14 (A.9). In addition to denying communications with Dairyland personnel outside of the presence of counsel, Mr. Brasel denied having any contact with attorneys for Dairyland in connection with Dairyland's claim:

Q. In connection with this damages claim, did you personally speak with any attorneys for LACBWR?

* * *

A. No.

Id., 24:14-25:11 (A.10-11).[5]

Following this preliminary line of questions, the Government produced a June 1, 2004 email chain that included an email from Mr. Brasel soliciting information from Dairyland employees in connection with its damages claim. Brasel Dep., 18:4-16 (A.9).[6] The email was not copied to any Dairyland attorney. Id., 18:17-20 (A.9). After being confronted with the email, Mr. Brasel admitted that it "appears [he] did" speak with Dairyland personnel concerning the damages claim. Brasel Dep., 20:22-21:8, 29:13-17 (A.9-10, A.12). However, Mr. Brasel had no recollection of speaking with certain individuals listed upon the email.[7] Id., 25:21-26:1,

---

[5] "LACBWR" is an acronym for La Crosse Boiling Water Reactor and was used during depositions interchangably with Dairyland and plaintiff.

[6] This email has been clawed-back and is discussed below in connection with the Government's motion to compel the production of documents withheld or clawed-back based upon the work product doctrine. A.23. Dairyland has not revised its privilege log to reflect the recipients of the email, the subjects implicated by the email, or the basis for the claw-back. However, given the contention of work product, it is fair to assume that, like other documents upon its privilege log, the email is being clawed-back because it references work upon the damages claim.

[7] Although we do not believe that the testimony is protected – and we note that Dairyland has not moved for a protective order concerning Mr. Brasel's testimony – certain additional testimony from Mr. Brasel that flowed from this email has not been included in this

26:21-27:24 (A.11). For example, with respect to one of the employees listed upon the email, Mr. Brasel testified, "I just don't recall Mike Johnsen having a big role in this effort." Id., 27:25-28:5 (A.11). Mr. Brasel likewise could not recall any other employees who had a "more limited role" in the effort. Id., 28:11-13 (A.11).[8] However, of the ten documents listed upon the privilege log or clawed-back that are sought in this motion that concern Dairyland's damages, two were co-authored by Mr. Brasel and Mr. Johnsen (Privilege Log, dated October 10, 2006, Ref. Nos. 251, 256 (A.28-29)), two were sent by Mr. Brasel to Mr. Johnsen (id., Ref. Nos. 241, 252 and Brasel Dep. Exh. 1 (A.27-28)), two listed both Mr. Brasel and Mr. Johnsen as recipients (id., Ref. No. 250 and Brasel Dep. Exh. 2[9] (A.28, A.24)), and two were prepared by Mr. Johnsen (id., Ref. Nos. 246, 249 (A.27-28)). Other Dairyland employees also appear upon these communications. See id., Ref. Nos. 241, 250, and 252 (A.27-28).

Mr. Brasel's inconsistent testimony and difficulty in recollecting events that took place in 2004 was not limited to communications that he had with Dairyland employees. Mr. Brasel testified as follows regarding his attendance at meetings concerning damages:

---

motion in an abundance of caution, given that the email has been clawed-back. However, there are significant questions raised by certain answers provided by Mr. Brasel that we intend to revisit in the event that the Court agrees that the email in question is not subject to the attorney-client privilege or to the work product doctrine.

[8] In response to questions seeking to elicit whether he had conversations with other Dairyland employees concerning damages, Mr. Brasel testified, "I seriously don't recall. It was a long time ago." Id., 29:20-25 (A.12).

[9] Exhibit 2 to Mr. Brasel's deposition was re-produced to the Government following the redaction of allegedly work product material. A.24. However, Exhibit 1 from that deposition, referenced above, was clawed-back in its entirety. A.23.

Q. Did you attend any meetings to discuss damages in this case?

A. No.

Brasel Dep., 30:1-3 (A.12). At the deposition, Mr. Brasel was shown a September 2004 email meeting agenda entitled "Talking points for Duratek discussion," from LACBWR's Plant Manger, Roger Christians, to, among other recipients, Mr. Brasel. Id., 30:7-32:3 (A.12).[10] Upon being confronted with that email, Mr. Brasel continued to deny attending the meeting:

Q. * * * Did you attend this meeting, Mr. Brasel?

A. No, I did not.

Id., 31:7-9 (A.12). Indeed, with respect to the contents of the email, Mr. Brasel testified: "I was full-time on the coal plant here, so I don't know what . . . what this is all about." Id. 31:20-22 (A.12). Mr. Brasel further had no recollection of talking to Mr. Christians – a man whose communications he took seriously (id., 32:4-7(A.12)) – concerning the email. Id., 31:23-32:13 (A.12).[11] However, a document discovered after Mr. Brasel's deposition appears to demonstrate that, at minimum, his testimony that he did not attend the meeting was incorrect. Instead,

---

[10] This email was clawed-back and a redacted version of the email was re-produced to the Government. A.23-24. Because of the claw-ack, and in an abundance of caution, the Government does not reference that clawed-back portion of the email and testimony related to that email that would divulge the contents that have been redacted. However, if the Court agrees that the email meeting agenda is not privileged or work product, we intend to further inquire into that document with Mr. Brasel and use his testimony concerning that document and its contents in subsequent proceedings, as the testimony goes directly to Mr. Brasel's credibility.

[11] We have limited our citations to testimony so as not to divulge the allegedly protected material, although we believe that the testimony is not protected. However, because of this decision, some of the issues reflected by Mr. Brasel's testimony and counsel's objections are is not as clear as we would like.

handwritten notes from a September 2, 2004 meeting regarding Duratek list Mr. Brasel and Mr. Christians, among others, as attendees of that meeting.[12] A.34.

### B. Counsel For Dairyland Instructed Mr. Brasel Not To Respond To Additional Questions Concerning The Damages Claim And His Involvement In Preparing Or Assembling That Claim

During Mr. Brasel's deposition, counsel for the Government made other attempts to inquire into Mr. Brasel's involvement in Dairyland's damages claim and in the collection of support for its damages. Repeatedly, counsel for Dairyland instructed Mr. Brasel not to answer the Government's questions upon a varying combination of work product protections and the attorney-client privilege:

> Q. * * * Did you have any involvement in the preparation of Dairyland's damages claim?
>
> MR. STERN: I'm going to instruct the witness not to answer. It calls for work product and privileged information.
>
> * * *
>
> MR. EKMAN: * * * What's the basis of that instruction?
>
> MR. STERN: It's privileged information, work product.
>
> MR. EKMAN: Whether he participated, whether he had involvement is work product?

---

[12] The entire document, Bates Nos. PLAC0052691-PLAC0052694, has not been attached to this motion because, although Dairyland has not clawed-back this document, we anticipate that it will assert a work product privilege over that portion of the document dealing with the substance of Mr. Brasel's involvement, based upon its contentions relating to Exhibit 2 to Mr. Brasel's deposition. <u>See</u> A.24. As a result, we do not reference language within that document that calls into question other material testimony provided by Mr. Brasel concerning his participation in that meeting. To the extent that Dairyland claws-back this document, in response to our identification of it in this motion, we ask that it be subject to *in camera* review and that the Court order the document, in its entirety, be produced to the Government.

MR. STERN: Whether he did or did not, yes.

Brasel Dep., at 16:6-17:1 (A.8-9).

Q. Mr. Brasel, did you prepare any analyses in connection with the damages claim?

MR. STERN: Counsel will instruct the witness not to answer the question. * * * That calls for attorney client-work product.

Brasel Dep., 23:12-22 (A.10). Similarly, in an attempt to "flesh out" communications that, despite his initial denials, Mr. Brasel clearly had with other Dairyland employees, Mr. Brasel was instructed not to respond to the Government's questions. Id., 24:14-25:20 (A.10-11). Mr. Brasel was allowed to provide a cursory response to one question concerning the assembly of documents to support the claim, but further inquiry was barred by Dairyland's counsel:

Q. * * * Did you assemble information in support of the claim?

MR. STERN: Object to the form.

A. Yes, I put together documents that were marked attorney-client privileged from the beginning. I'll leave it at that.

* * *

Q. Can you, without describing the . . . content of the documents, again, I don't want to know the content, what type of documents were these?

MR. STERN: Again, I'm going to instruct the witness not to answer. It calls for attorney-client work product.

Id., 21:11-22:10 (A.10). In discussing a report prepared by a contractor that referenced the DOE litigation, Mr. Brasel was asked:

Q. Do you know how the $4 million figure was calculated?

A. No, I do not.

Q. Do you know if that's an accurate figure for the difference between the cost with fuel versus the cost without fuel?

A. No, I do not.

Q. Have you been asked – have you been asked to look at that?

MR. STERN: Objection to the extent that it calls for attorney-client communications. Instruct the witness not to reveal any attorney-client communications. If you can answer the question –

A. I'll say to that, no.

Q. Is that – is that, no, you haven't been asked to look at it, or, no, you can't answer because it reveals attorney-client privilege?

A. No I can't answer because it reveals attorney-client privilege.

Id., 161:11-162:6 (A.16).

## II. DAIRYLAND HAS WITHHELD DOCUMENTS RELATED TO THE EFFORTS OF DAIRYLAND EMPLOYEES UPON THE DAMAGES CLAIM

Eight documents appear upon Dairyland's privilege log that, based upon the description upon the privilege log and the testimony of Mr. Brasel, appear to relate to work by Mr. Brasel, Mr. Johnsen, and other Dairyland employees in preparing or assembling the damages claim. See Excerpts from October 10 Privilege Log, Ref. Nos. 241, 246, 249-253, and 256 (A.25-29). These documents all have been withheld upon work product grounds. Two other documents, used during the deposition of Mr. Brasel, were clawed-back following that deposition upon work product grounds. All ten documents are dated in 2004, including a 673-page document allegedly authored by, among others, Mr. Brasel and Mr. Johnsen in August 2004. Id., Ref. No. 256 (A.29). Although Mr. Brasel twice testified that he was working at the coal plant during this

time period (Brasel Dep., 31:16-22 (A.12)), Dairyland describes Ref. No. 256 as follows: "[d]ocuments . . . regarding potential Dairyland damages and claims against the Government for breach of the contract for disposal of SNF." October 10 Privilege Log, Ref. No. 256 (A.29).[13] Five other 2004 documents – three authored by Mr. Brasel, one upon which Mr. Brasel was copied, and the other authored by Mr. Johnsen – likewise reference Dairyland's damages claims. Id., Ref. Nos. 241, 246, 250-252 (A.27-28). For example, an April 2004 document was written by Mr. Brasel to Messrs. Christians, Johnsen, and Sans Crainte[14] and purports to discuss "potential damages in NWPA litigation." Id., Ref. No. 241 (A.27). As set forth above, because we have received no revised privilege log, we do not have a complete accounting as to the basis for the assertions of privilege over the two documents clawed-back after the deposition.

## DISCUSSION

### I. THE GOVERNMENT HAS SATISFIED ITS MEET AND CONFER REQUIREMENT

RCFC 37(a)(2)(A) provides that the party moving to compel the production of documents must certify that it "has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." RCFC 37(a)(2)(A). The Government has satisfied this requirement. With respect to the documents listed in this motion, the Government has attempted in good faith to secure the production of these

[13] This document likely is a collection of documents assembled by Messrs. Brasel and Johnsen, as opposed to a single document authored by these employees. The assembly, by Mr. Brasel and Mr. Johnsen, of 673 pages of information appears to contradict Mr. Brasel's testimony concerning communications with Dairyland employees, including Mr. Johnsen.

[14] Charles Sans Crainte is the Vice President of Generation for Dairyland. Brasel Dep., 20:14-15 (A.9). His deposition currently is scheduled for January 30, 2007.

documents. First, we sent a letter to counsel requesting that the documents be produced to the Government and followed up with a voicemail upon the same subject. A.30-31. Dairyland responded to that letter with an email stating that a formal response would be provided on January 18, 2007. A.32. On January 22, 2007, following a telephone call from the Government on Friday, January 19, 2007, concerning Dairyland's assertion of privilege, counsel for Dairyland responded that none of the requested documents at issue in this motion would be produced. A.33. Further, with respect to the deposition instructions not to answer, we attempted during the deposition, while the parties were still at the deposition site in Wisconsin, to convince counsel to modify his position. Specifically, the Government cited the Pacific Gas decision during the deposition in an attempt to convince counsel for Dairyland to withdraw the improper objections. Brasel Dep. 35:14-37:13 (A.13-14). Counsel for Dairyland refused to withdraw the instruction to the witness not to respond to the Government's questions.

## II. DAIRYLAND COUNSEL IMPROPERLY HAS INSTRUCTED WITNESSES NOT TO RESPOND TO QUESTIONS DURING THEIR DEPOSITIONS

### A. The Questions That The Government Posed Do Not Seek Information Covered By The Work Product Doctrine

In connection with the deposition of Mr. Brasel, Dairyland's counsel repeatedly prevented the Government from fully deposing him by tactics that previously have been rejected by this Court. Counsel instructed Mr. Brasel not to answer questions regarding his involvement in the preparation of the damages claim provided to the Government, including predicate questions that simply sought "yes" or "no" responses. Counsel instructed Mr. Brasel not to respond to questions attempting to clarify statements that Mr. Brasel made and questions aimed at Mr. Brasel's memory and credibility. Counsel's instructions in this litigation are identical to

the assertions of privilege that counsel made in the Pacific Gas litigation that this Court rejected in a published opinion. Upon analysis, the questions that the Government posed do not seek "documents and tangible things" potentially subject to the work product doctrine.

The work product doctrine, first recognized by the Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947), provides "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation." United States v. Nobles, 422 U.S. 225, 237-38 (1975) (internal quotations and citations omitted). The work product doctrine "provides protection only for *documents and tangible things* and . . . not for facts a party may have learned, even if they were learned from work product documents that are not themselves discoverable." Pacific Gas, 69 Fed. Cl. at 816 (citing RCFC 26(b)(3)) (emphasis in original) (additional citations omitted). Although the work product doctrine also "furnishes protection for some forms of work product not in tangible form, . . . these are limited to the mental impressions, conclusions, opinions, legal theories, thought processes and recollections *of an attorney or other representative of a party* concerning the litigation." Id. (emphasis in original) (citations omitted). The purpose of the work product doctrine is to prevent the disclosure of an attorney's mental impressions and thought processes to an opposing party. Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990). To this end, the doctrine protects the attorney's "thought processes and legal recommendations." Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997); see Onwuka v. Federal Express Corp., 178 F.R.D. 508, 512 (D. Minn. 1997). The work product doctrine does not protect facts concerning the creation of work product or facts contained within the work product. Pacific Gas, 69 Fed. Cl. at 816; RTC v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995); Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 229 (D. Mass.

2006) (work product doctrine "does not prohibit the discovery of underlying facts"). Further, "[l]ike all privileges, the work product doctrine must be strictly construed," and the burden is upon the party asserting the protection to show that the materials or information sought were prepared in anticipation of litigation. Pacific Gas, 69 Fed. Cl. at 790 (citations omitted); see Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1120 (7th Cir. 1983).

As they did in the Pacific Gas litigation,[15] Dairyland's counsel objected upon work product grounds and instructed Mr. Brasel not to respond to questions regarding plaintiff's damages claim. However, as the Court held in Pacific Gas, "[w]itness responses to questions regarding the preparation of plaintiff's damages claim are not 'documents [or] tangible things' under RCFC 26(b)(3)." 69 Fed. Cl. at 817. Nor do such questions, directed at Dairyland employees, "call for intangible work product 'of an attorney or other representative of a party concerning the litigation.'" Id. (quoting RCFC 26(b)(3)) (citations omitted). In addition to objecting to questions that sought substantive responses, Dairyland objected to predicate questions that sought simply "yes" or "no" responses. Questions seeking factual predicates – for example, "were you involved in the preparation of Dairyland's damages claim?" – do not implicate protected material even under the most expansive interpretation of work product. See Pacific Gas, 69 Fed. Cl. at 815-16.[16] The work product doctrine also does not "protect from

---

[15] The questions and objections at issue in Pacific Gas were identical to the questions at issue here. For example, Pacific Gas's counsel instructed witnesses not to answer questions as to the witness' involvement in preparing the damages claim, the identities of other individuals involved in the preparation of the damages claim, and how costs were determined to be caused by the breach. Pacific Gas, 69 Fed. Cl. at 815.

[16] In Audiotext Comm. Network, Inc. v. U.S. Telecom, Inc., 1995 WL 625962 (D. Kan. Oct. 5, 1995), the district court was faced with similar objections. In that case, the defendant sought "[a]ll documents used to calculate the damages alleged to have been suffered"

disclosure facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." Hoffman v. United Telecomm., Inc., 117 F.R.D. 436, 439 (D. Kan. 1987).

The identities of individuals with whom Mr. Brasel spoke concerning damages are not protected. Mr. Brasel's communications with Dairyland employees seeking information to support the damages claim is not protected. The information that he collected in connection with the damages claim is not protected. The methodology that Mr. Brasel applied, if any, in determining whether an activity was incremental to DOE's breach is a relevant and significant line of inquiry to the Government's defense of those claims and is not protected.

More significantly, given that Mr. Brasel disavowed any communications with counsel (Brasel Dep., 24:14-25:11 (A.10-11)), it is unclear how any of his work could be privileged or covered by the work product doctrine. Because the purpose of the work product doctrine is to protect the "mental impressions" of Dairyland's attorneys, common sense dictates that the individual must have had some sort of communications with attorneys to understand and convey their "mental impressions" in the allegedly protected document.

---

by the plaintiff. Id., at *10. Plaintiff objected to the request upon attorney-client privilege and work product grounds. With respect to the plaintiff's assertion of attorney-client privilege, the court held that "[m]erely documenting facts and figures and delivering such documentation to counsel does not make the documentation privileged as an attorney-client communication." Id. Moreover, even if the documentation was privileged, the attorney-client privilege "would not preclude . . . the disclosure of the facts underlying the communications." Id. With respect to the plaintiff's assertions of work product protections, the court held that the plaintiff's statements that "they prepared certain damage calculation material at the request of counsel . . . alone does not establish the material as work product." Id. The court further held that the plaintiff failed to substantiate its claim that the damage calculation documents contained the mental impressions and trial strategies of its attorneys. Id.

Dairyland appears to believe that the simple fact that counsel may have instructed employees of Dairyland – although not this employee – to prepare or assemble a damages claim renders the product generated from that effort privileged, including testimony concerning the underlying effort to prepare the damages claim. This cannot be so, as such an interpretation would allow attorneys to block material discovery simply by issuing cursory "To Do Lists" to their clients. As in Pacific Gas, the Court here should find that the identical objections that counsel for Dairyland asserted here "attempt[] to stretch the doctrine beyond its recognized boundaries" and enter an order allowing the Government to reopen the deposition of Mr. Brasel so that we can inquire into Mr. Brasel's involvement in the damages claim.

### B. The Questions That The Government Posed Do Not Seek Information Covered By The Attorney-Client Privilege

During the deposition, counsel for Dairyland appeared, at times, to interpose attorney-client privilege objections to the Government's questions.[17] The attorney-client privilege, which protects communications "where legal advice is sought," Pacific Gas & Elec., 69 Fed. Cl. at 810 (quoting First Fed. Sav. Bank of Hegewisch v. United States, 55 Fed. Cl. 263, 266 (2003)) (additional citations omitted), fundamentally is different from the work product doctrine. The privilege "does not apply to the fact of communication between a client and attorney. It is the substance of the communication which is protected not the fact that there has been communication." Id. at 811 (citations omitted). The Supreme Court has held that the privilege protects only communications, not facts:

[17] Counsel's distinction between the two objections was less than clear as counsel repeatedly objected to questions upon "attorney-client work product" grounds. See Brasel Dep. at 22:8-10, 23:21-22 (A.10).

> The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981) (citing Philadelphia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (D. Pa. 1962); see Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1978) (en banc)) (additional citation omitted). As with assertions of work product, the attorney-client privilege "impedes the search for truth and is therefore to be strictly construed." First Fed. Sav. Bank, 55 Fed. Cl. at 266.

To the extent that Dairyland asserts attorney-client privilege with respect to the questions that the Government posed, the questions themselves – and Mr. Brasel's answers (when he was allowed to answer) – belie that assertion. At no point did the Government request the contents of substantive communications between Mr. Brasel and counsel for Dairyland. Indeed, it is unclear how such information could be obtained from Mr. Brasel, as Mr. Brasel disavowed any communications with counsel. Brasel Dep, 24:14-25:11 (A.10-11). Moreover, we are not seeking the content of communications between other Dairyland employees and counsel from Mr. Brasel, although, once again, it is unclear how Mr. Brasel would have such privileged information given that he initially disavowed any communications concerning damages with any Dairyland employees.[18] In Pacific Gas, the Court noted that, had attorney-client privilege been

---

[18] Mr. Brasel's testimony presents a significant problem for Dairyland. To the extent that Mr. Brasel possesses privileged information, that information must have been obtained from conversations with Dairyland personnel or its attorneys. However, Mr. Brasel denied conversations with Dairyland personnel and with counsel for Dairyland. Based upon this testimony, the objections either are ill-founded or the veracity of Mr. Brasel's testimony must be

asserted to the identical questions posed in that case, "the transcripts above do not appear to call for such information." Pacific Gas, 69 Fed. Cl. at 816-17. The questions that the Government posed – set forth above – do not seek privileged information, and Mr. Brasel should be required to respond to these discovery questions.

## III. THE COURT SHOULD ORDER THAT EIGHT DOCUMENTS WITHHELD AND TWO DOCUMENTS "CLAWED-BACK" UPON WORK PRODUCT GROUNDS SHOULD BE PRODUCED TO THE GOVERNMENT

### A. The Documents Do Not Appear To Constitute Work Product

Eight documents appear upon Dairyland's privilege log that, based upon the description and testimony from Mr. Brasel, do not appear to implicate work product. Specifically, the Government seeks to compel the production of documents 241, 246, 249-253, and 256 from Dairyland's October 10, 2006 privilege log. Each document appears to involve the damages that Dairyland seeks in this case, and all are responsive to the Government's document requests. Given counsel's overly broad and previously-rejected view of the work product doctrine, these documents likely are not protected by that doctrine and request *in camera* review of those documents to determine whether the request properly has been asserted. To the extent that the plaintiff's assertion of work product is overly broad, we ask that the Court order that the documents withheld upon that doctrine be produced.

Likewise, neither of the two documents, used during the deposition of Mr. Brasel and clawed back by Dairyland, reflects privileged or work product material. Pacific Gas, 69 Fed.

---

called into serious question. Either way, as will be discussed below, the information and any relevant documents should be produced to the Government.

Cl. at 816. As a result, we ask that the Court subject these two documents to *in camera* review and that the Court order that these documents be re-produced to the Government.

B. Even If The Documents Constitute Work Product, The Court Should Order That They Be Produced

The work product privilege "is not absolute." Nobles, 422 U.S. at 239-40; Pacific Gas, 69 Fed. Cl. at 789. Work product material is discoverable "upon a showing that the party seeking discovery has substantial need of the materials . . . [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." RCFC 26(b)(3). To the extent that the Court determines that the documents sought by this motion are covered by the work product doctrine – and we believe that they are not – we ask that the Court order that the documents be produced because the information is unavailable from any other source and because the plaintiff has placed its damages claim at issue in this case.

Courts have held that the impeachment of, or poor memory by, a witness can constitute grounds to release otherwise protected information to the other party during discovery. Impeachment material and memory lapses can, in some circumstances, support a claim of substantial need sufficient to pierce a claim of work product protection. See Varuzza v. Bulk Materials, Inc., 169 F.R.D. 254 (N.D.N.Y. 1996). In Varuzza, a plaintiff provided a written statement to an investigator the day after an automobile accident. Id. at 256. However, in his deposition, the plaintiff was unable to remember significant details of and surrounding the accident. Id. The witness also denied making the statement to the investigator. Id. In ordering that the otherwise protected material be produced to the defendant, the district court agreed with the defendant's contentions that, given the plaintiff's inability to recall numerous details during his deposition, the defendant required the statement to assist in filling the gaps in the witness's

testimony and for impeachment." Id. at 257.[19] Similarly, in Madanes v. Madanes, 199 F.R.D. 135 (S.D.N.Y. 2001), the district court noted, in assessing a claim of work product, that lack of memory and inconsistencies justify requiring the disclosure of work product relevant to impeachment. Id. at 151 (citing A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc., 131 F.R.D. 46, 49 (S.D.N.Y. 1990) (additional citation omitted). Further, in Baker v. General Motors Corp., 197 F.R.D. 376 (W.D. Mo. 1999), the court noted that "courts have frequently ordered disclosure of work product materials containing facts that might be relevant for impeachment at trial." Id. at 383 (citations omitted); see United States v. Great Northern Railway Co., 18 F.R.D. 357, 358 (N.D. Cal. 1955) (grounds for requiring the production of work product include "an indication of dishonest or false answers in . . . depositions").

Mr. Brasel's testimony concerning his involvement in the preparation of Dairyland's damages is rife with factual inconsistencies and memory lapses, which favors production of the allegedly-protected documents to the Government. At his deposition, Mr. Brasel denied communicating with any Dairyland employees concerning damages. However, five of the ten documents sought in this motion, including the two emails used at his deposition (as evidenced by the assertion of work product over these two documents), reflect communications that Mr. Brasel had with Dairyland employees concerning damages. Further, Mr. Brasel changed his testimony concerning communications only upon being confronted with evidence of those communications. Mr. Brasel likewise denied attending the September 2, 2004 meeting

[19] In Johnson v. Bryco Arms, 2005 WL 469612 (E.D.N.Y. March 1, 2005), the district court held that, assuming the work product assertions in that case were valid, a "prior statement by a witness – in this case, a central witness to the case – will provide plaintiffs with a critical piece of impeachment material, particularly if, as they have indicated, the witness's subsequent depositions have suggested inconsistencies or gaps in memory." Id. at *5.

concerning Duratek (instead, testifying that he was working in the coal division at the time), yet handwritten minutes from that meeting show that Mr. Brasel attended the meeting.[20] Mr. Brasel likewise denied speaking with Mr. Johnsen concerning damages, yet according to the privilege log, he co-authored two documents and is listed as a recipient or author of five other documents with Mr. Johnsen (including the two documents clawed-back after his deposition) concerning damages. Only through the review of the documents will we be able to determine the veracity of these statements, among others, which appear to be questionable, at best.

Mr. Brasel also testified to a lack of memory concerning events relating to damages that occurred in 2004. In response to questions concerning his involvement in preparing and assembling the damages claim, Mr. Brasel testified that 2004 "was a long time ago." Brasel Dep., at 27:25-29:25 (A.11-12). Mr. Brasel's poor recollection of his involvement in the claim and of actions that he undertook require the production of the alleged work product in order to refresh his recollection. Dairyland should not be allowed to hide behind assertions of privilege and the hazy memory of an employee whose only experience in litigation – experience that he poorly recollects – involves this case and work performed in this case less than three years ago.

Mr. Brasel's unambiguous denials concerning his involvement in the assembly and presentation of damages and his communications with Dairyland employees concerning

---

[20] As set forth above, because we anticipate that Dairyland will claw back a portion of these meeting minutes upon work product grounds, we do not reference the specific issues addressed by Mr. Brasel at that meeting, as reflected in the meeting minutes. To the extent that Dairyland claws-back the portion of the document that reflects what Mr. Brasel did at that meeting, we ask that the Court review this document *in camera* and order that it be produced to the Government. To the extent that the Court concludes that the statement in the document concerning Mr. Brasel is work product, we ask that it be produced over Dairyland's objection given that the document has significant impeachment value.

Dairyland's damages, at best, were reckless and, at worst, were knowingly false. Where Mr. Brasel was not denying his involvement in the claim, he invoked a poor memory of the events of 2004 which, in Mr. Brasel's words, "was a long time ago." Mr. Brasel appears unable or unwilling to provide an accurate accounting of the work that he performed concerning damages in this case. As a result, the only way to account for Mr. Brasel's activities is to require the production of documents that Mr. Brasel prepared or received upon this subject.

In addition to ordering the production of work product for impeachment purposes, courts have held that, by presenting information as part of its case, a party waives the privilege with respect to matters covered in that presentation. Nobles, 422 U.S. at 239. The United States Court of Appeals for the Federal Circuit has adopted the test set forth in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash, 1975), to determine if a party has waived the attorney-client privilege or the work product doctrine in putting the matter subject to the privilege at issue. Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1204-05 (Fed. Cir. 1987). The party has waived the attorney-client privilege when:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Zenith Radio Corp. v. United States, 764 F.2d 1577, 1579 (Fed. Cir. 1985) (quoting Hearn, 68 F.R.D. at 581). Analyzing Dairyland's assertions of privilege using the analysis set forth in Hearn, it is clear that they fall within the first two factors articulated in that case. The key inquiry is whether application of the work product doctrine would place a hardship upon the development of our case – that is, whether it denies the Government discovery into information

vital to the defense of the case. Counsel's instructions not to answer questions regarding the damages claim and withholding of documents relevant to that claim denies us information key to the defense of that claim. It appears that counsel is attempting to cloak information about the damages calculations that may lead to relevant information about the basis for the costs, including how the costs were calculated, who had input into the process of determining what categories of costs were recoverable, and why the damages were caused by DOE's partial breach of contract. These inquiries are necessary to a full understanding of Dairyland's damages claim. Without the information, the Government is not able adequately to defend against costs that may be arguably specious or at least questionable. The Court should order plaintiff to produce the documents concerning the damages claim and relevant witnesses so that they can be questioned thoroughly about the damages claim.

## CONCLUSION

For the reasons stated herein, the Government respectfully requests that the Court order that (1) the deposition of Michael Brasel be reopened so that the Government can inquire into Mr. Brasel's work upon the damages claim, (2) the ten documents withheld or clawed-back upon work product grounds be produced to the Government following *in camera* review, and (3) to the extent that Dairyland claws-back the portion of PLAC0052691 relating to Mr. Brasel's contributions at the September 2, 2004 meeting concerning Duratek, that the document be produced to the Government in its entirety for further use in this case, following *in camera* review.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
JOHN C. EKMAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 23, 2007