No. 04-106C
Chief Judge Damich
Filed Electronically on January 24, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DAIRYLAND'S REPLY ON ITS MOTION TO COMPEL DISCOVERY RESPONSES

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 (Telephone)
(202) 261-4751 (Facsimile)
Counsel for Plaintiff
Dairyland Power Cooperative

Of Counsel:

ROBERT L. SHAPIRO
KEVIN E. STERN
Greenberg Traurig, LLP

# TABLE OF CONTENTS

**Page**

1. Interrogatory Nos. 5, 6, 7, 8 and 12 ........................................................................1

2. The Government Should be Compelled to Answer Dairyland's Contention Interrogatories..................................................4

3. Interrogatory Nos. 1, 2, 4, 10, 11 and 18 ..................................................................6

4. The Government Should be Compelled to Produce the Requested Documents or Identify With Reasonable Particularity, the Location of Responsive Documents in Prior Document Productions..........................................................................9

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) ........................................... 3

*Hickman v. Wal-Mart*, 152 F.R.D. 216 (M.D. FL 1993) ............................................................. 8

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ........................... 2

**Other Authorities**

RCFC 33(c)......................................................................................................................... 4

RCFC 33(d)...................................................................................................................... 7, 8

RCFC 34 ........................................................................................................................... 11

RCFC 34(b)....................................................................................................................... 11

Restatement (Second) of Contracts §204.......................................................................... 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S REPLY ON ITS MOTION TO COMPEL DISCOVERY RESPONSES

The government's lengthy opposition to Dairyland's motion to compel discovery responses suggests that had the government devoted as much time and effort in providing meaningful responses to Dairyland's discovery requests in the first place as it has in trying to avoid answering them, there most likely would be very little in dispute between the parties. Unfortunately, however, the government has chosen to resist responding to Dairyland's discovery requests at every turn, mostly based upon fallacious assertions of "lack of relevance" and "undue burden." The government's stonewalling on Dairyland's discovery requests should not be countenanced, and it should be compelled to comply immediately with its discovery obligations so Dairyland will be given a full and fair opportunity to learn and understand the government's contentions in this case and what evidence the government has in its possession concerning the key issues in this case.

1. Interrogatory Nos. 5, 6, 7, 8 and 12

Interrogatory No. 5 The government insists that its response to interrogatory no. 3 also answers interrogatory no. 5, *see* Govt. Resp. at 9-11, but that is not true. Interrogatory no. 5

asks: on what schedule does DOE contend that it is obligated to remove Dairyland's spent fuel pursuant it Dairyland's contract? The government's discussion in its response seems to suggest, but only in an oblique and roundabout way, that the answer to this question is the schedule set forth in DOE's 1991 ACR/APR. But the government never actually says that in its interrogatory responses.

If the answer to interrogatory no. 5 is indeed the schedule set forth in DOE's 1991 ACR/APR, the government should be required to say so in a verified interrogatory response. And regardless of what the answer is, the Court should compel the government to provide a verified response because the government has not yet provided an appropriate direct response to this interrogatory either in its initial response or in its opposition to Dairyland's motion.

<u>Interrogatory Nos. 6, 7, 8 and 12</u> The government argues at length that because the Federal Circuit's decision *Indiana Michigan Power Co. v. United States,* 422 F.3d 1369 (Fed. Cir. 2005) precludes recovery of future damages, discovery of DOE's current plans for contract performance in the future is also precluded. *See* Govt. Resp. at 11-17. That is not true, as Dairyland explained in its motion, *see* Motion at 6-9, and as Judge Hewitt correctly held in the PG&E case in her December 21, 2005 Order quoted in Dairyland's motion. *See id*. at 4-5; Motion attachment 4.

The government, lacking any proper objection to these interrogatories, instead attempts to mislead the Court about Judge Hewitt's ruling. The government quotes from Judge Hewitt's October 18, 2005 Order, *see* Govt. Resp. at 15, in which the Court denied discovery of certain documents concerning DOE's plans for contract performance and Court imposed a blanket "cut-off" of discovery of documents dated after January 2004. PG&E moved for reconsideration of that blanket cutoff and, in the reconsideration opinion quoted in Dairyland's motion, *see* Motion

at 4-5, Judge Hewitt acknowledged that it was wrong to impose a blanket cutoff of discovery after a certain date. She therefore reversed her prior ruling to that effect, agreeing with PG&E that DOE's current and future plans for contract performance are well within the broad scope of discovery contemplated by the Court's Rules.

Dairyland acknowledges, as the government also notes in its response, *see* Govt. Resp. at 15, that despite the Court's ultimate refusal in *PG&E* to impose a blanket prohibition on discovery of DOE's current and future plans, the Court there had previously denied PG&E discovery of certain documents dated after January 2004. The Court in *PG&E* did not revisit those rulings after lifting the blanket discovery cutoff of January 2004, but then, PG&E did not ask it to. Dairyland submits that those earlier rulings are wrong – they are contrary to the reconsideration ruling in *PG&E*, which recognized and explained the appropriate rationale for allowing discovery after January 2004 of such matters as DOE's current and future plans for contract performance. In any event, the *PG&E* Court's denial of discovery of certain documents dated after January 2004 is no reason to deny Dairyland the interrogatory responses it seeks here.

Judge Hewitt's ruling on reconsideration is correct, and the Court should reaffirm and follow it here. Because Dairyland's spent fuel contract contains an "open term" with respect to the rate of spent fuel acceptance, the Court must enforce a "reasonable' term. *See* Restatement (Second) of Contracts § 204; *Commonwealth Edison Co. v. United States,* 56 Fed. Cl. 652, 663-65 (2003). Evidence of DOE's current and future plans for the spent fuel program – including the planned rate of acceptance as well as plans to utilize the contract provision granting priority to spent fuel from shutdown plants like Dairyland's plant – is plainly probative of what a "reasonable" schedule for DOE performance would be. And as Dairyland explained in its

motion, *see* Motion at 5-6, evidence of DOE's plans for future performance is also relevant in assessing the reasonableness of Dairyland's response to DOE's breach.

Accordingly, the Court should compel the government to respond to Dairyland's interrogatory nos. 6, 7, 8 and 12, which ask about DOE's plans for performance of spent fuel contracts generally and Dairyland s contract in particular. If the government does not know the answer to some or all of these interrogatories – for example, the actual schedule on which it will pick up Dairyland's fuel, or when it will start doing so – then the government should be required to so state in the verified manner that Rule 33 requires. The Court should not allow the government to refuse to respond to these interrogatories at all.

2. <u>The government should be compelled to answer Dairyland's contention interrogatories</u>

The government asserts that it cannot and should not be required to answer any of Dairyland's contention interrogatories (interrogatory nos. 9, 13, 14, 15, 16 and 17) until after all discovery is complete.[1] However, it is not credible for the government to maintain that it cannot know its position on the reasonableness of Dairyland's mitigation activities and expenditures or how it would have handled Dairyland's failed fuel in the "non-breach" world until after the completion of discovery when the government has consistently maintained in every spent fuel case that has been litigated to date that the plaintiff's mitigation activities have *not been reasonable* and that, had it performed, it would not have picked up any utility's failed fuel at the same schedule as other spent fuel.

[1] The government apparently is no longer maintaining its objection that Dairyland's contention interrogatories are objectionable because they "seek[] to have defendant make certain legal conclusions." As the government concedes in its opposition (at 17), an interrogatory is not objectionable "merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact." RCFC 33(c).

The government's claimed reasons why it cannot answer interrogatory no. 13 at this time warrant particular mention. Interrogatory no. 13 asks the government whether it contends that it would have picked up Dairyland's failed fuel later than the rest of its spent fuel had the government actually performed under Dairyland's spent fuel contract. In other words, this interrogatory simply asks for the government to state how it would have handled Dairyland's failed fuel in the non-breach world. In its response (at 21-22), the government asserts that the amount and condition of Dairyland's failed fuel "may affect" its response to this interrogatory, but the government fails to provide an actual answer. Instead, the government argues that it needs to know (1) when Dairyland asserts that the government would have removed its spent fuel absent the breach, and (2) whether or not Dairyland "will be arguing the exchanges theory" before it can provide an answer to this interrogatory. The government's position is meritless. First, the government already knows that Dairyland's position that the government would have completed removal of its spent fuel in 1998, since Dairyland's initial disclosures show that Dairyland is claiming damages for wet storage in this case starting in 1999. Dairyland has also informed the government it appropriately will include the exchanges provision of the parties' contract in its determination of damages. More importantly, interrogatory no. 13 is not seeking the government's position on Dairyland's failed fuel in light of what is Dairyland's view of how the government would have performed in the "non-breach" world, but rather, asks *what is the government's view* of how the government would have performed. Accordingly, there is no legitimate basis for the government's assertion that it needs to obtain further discovery, much less any expert discovery, before it can answer interrogatory no. 13.

Moreover, contrary to the government's assertion, Govt. Resp. at 25, substantial discovery has already taken place regarding each of the topics raised in Dairyland's contention

interrogatories. The government received Dairyland's extensive initial disclosures on July 28, 2006, which included, Dairyland's claimed wet storage and Private Fuel Storage costs. The government has been in possession of almost all of Dairyland's responsive documents – consisting of more than 184,000 pages – since late August 2006. The government has already deposed three of the seven Dairyland fact witnesses it has said it needs to depose, including the persons at Dairyland that have extensive knowledge regarding the condition of Dairyland's spent fuel and amount of failed fuel (Seymour Raffety), Dairyland's participation in Private Fuel Storage (John Parkyn), and current plans for at-reactor dry storage (Michael Brasel). The remaining four fact witnesses are scheduled to be deposed the week of January 29, 2007.

Thus, even accepting the government's questionable position that it cannot adequately respond to Dairyland's contention interrogatories until after it has completed its depositions of Dairyland's witnesses, the government should be in a position to answer these interrogatories by the end of next week. Accordingly, the Court should compel the government to answer Dairyland's contention interrogatories fully no later than February 9, 2007.

3. <u>Interrogatory Nos. 1, 2, 4, 10, 11 and 18</u>

The government contends that it should not be compelled to provide straight answers to interrogatory nos. 1, 2, 4, 10 and 18, which ask that the government identify individuals involved in matters particular to Dairyland, because each of these interrogatories are allegedly overbroad. *See* Govt. Resp. at 29-31. The government's assertions of overbreadth are neither supported nor credible. Dairyland's interrogatories only ask for identification of government personnel who have had connections with Dairyland's spent fuel and decommissioning. There are unlikely to be many individuals in these categories, and the issues are all relevant to Dairyland's damages. By providing evasive answers that only identify persons who "may" possibly have had some

involvement relating to the specified activities – as opposed to identifying persons who *were* involved or were at least most likely involved – the government has not undertaken a reasonable effort to comply with its obligations under Rule 33.

The government contends that, in response to interrogatory no. 18, it is unwilling to provide the names of the persons who are "most knowledgeable" of DOE's efforts to examine the manner or process by which DOE would remove spent fuel from LACBWR because it is fearful that Dairyland will bring a motion for sanctions based upon such response and such information implicates the work product doctrine. *See* Govt. Resp. at 27-29. But the government's response to interrogatory no. 18 did not provide the names of *any* persons with knowledge, much less the most knowledgeable persons. Rather, the government only stated in its response the names of individuals who *may* have knowledge. *See* Mot. Att. 1, Response No. 18. Moreover, the government's argument reveals the whipsaw nature of its position: where Dairyland asks for the identity of *all* individuals with knowledge, the government asserts that such a request is overbroad; but when Dairyland asks for the identity of only the *most knowledgeable* individuals, the government asserts that it can't respond because Dairyland is seeking work product.

Remarkably, the government does not even respond to Dairyland's argument that the responses to interrogatory nos. 1, 2, 4, 10, 11 and 18 misuse RCFC 33(d), in that the responses do not state that answers to the interrogatories can, *in fact,* be derived from business records (instead of "may" be derived) and that generic references to large quantities of documents that "may" be available in one or more repositories, without identifying or specifying particular documents or categories of documents, is an abuse of this option. *See* Motion at 12-14. The government also does not dispute Dairyland's argument that, given the government's superior

knowledge of the organization and contents of its own document databases, the burden to search these massive databases for responsive information is far less for the government than it is for Dairyland. Instead, the government weakly contends that it should not have to undertake any reasonable effort to identify the government officials who were involved in the activities in question, or specifically identify the documents that may contain such information, because Dairyland's counsel should already know this information. Govt. Resp. at 33. Of course, the notion that Dairyland's counsel has superior knowledge of the identity of the relevant government officials than *the government itself* is ludicrous on its face. Moreover, the Rules do not excuse the government from its discovery obligations based upon assertions that plaintiff's counsel may already know the requested information. Thus, to the extent that the government continues to resort to referrals to its business records to answer Dairyland's interrogatories, it should be compelled to comply with the requirements of Rule 33(d) by identifying with reasonable particularity what documents contain the information that is sought and where such documents can be located on the specified document database(s).

The government appears to take the position that its effort to provide reasonably complete and accurate responses to Dairyland's interrogatories may be appropriately limited to a review of business records. *See* Govt. Resp. at 31-32 (noting limited information from a review of the relevant records). The government offers no support for this position and there can be none. The government must make reasonable inquiries of its personnel in order to respond fully and accurately to the interrogatories. *See Hickman v. Wal-Mart*, 152 F.R.D. 216, 223 (M.D. FL 1993). ("Wal-Mart has a duty to make a reasonable search of its business records and make a reasonable inquiry of its employee and agents in order to obtain the information asked in Plaintiff's interrogatories.")

Finally, it is critically important that government be required to fully respond to Dairyland's interrogatories within a reasonable time *before* Dairyland deposes the government's witnesses. To allow otherwise would be to reward the government for its intransigence and unfairly deprive Dairyland of the opportunity to obtain and test the factual bases of the government's contentions and question the relevant government witnesses about the information disclosed in the government's responses prior to trial. Thus, to the extent the Court decides that the government need not be required to answer one or more of Dairyland's interrogatories until after its discovery is complete, Dairyland should be allowed to depose the relevant government witnesses, whether they be fact or expert, within a reasonable time *after* such answers are fully disclosed, even if it requires an extension of the current discovery deadlines.

4. <u>The government should be compelled to produce the requested documents or identify with reasonable particularity, the location of responsive documents in prior document productions</u>

The government insists that it "has already produced most, if not all, of the relevant documents responsive to Dairyland's requests." because "Dairyland's requests largely duplicate requests that have been propounded in other SNF cases" and that "the bulk of these documents [were produced] prior to 2002. . . ." Govt. Resp. at 33-34. The government's assertion is demonstrably false. First, the government concedes that only 25 of the Dairyland's 42 document requests seek documents that were sought by plaintiffs in the coordinated discovery proceedings. *Id.* Second, the government has refused to produce or even search for potentially responsive documents since it produced the bulk of its documents in the coordinated proceedings over four years ago, asserting in its response that the government is only now "endeavoring to ensure that there is no additional material that is responsive to [Dairyland's] requests that still needs to be produced." Govt. Resp. at 38, n.9. Third, the government has yet to explain why, in its response

to Dairyland's document requests, it agreed to produce responsive documents to 17 of Dairyland's requests, *see* Motion at 17, yet, in the six weeks since the government responded, the government has yet to produce or identify any single document that is responsive to any of these requests.

The method by which the government has chosen to produce documents to the spent fuel plaintiffs is fundamentally flawed. When the government unilaterally decided to impose its production website upon all of the spent fuel plaintiffs, all of the prior document productions were, as the government admits, posted to that website. The consistency and/or reliability of those productions is questionable. The government chooses to ignore in its response that issues such as duplicate Bates numbers have been found in these "reproduced" documents and despite assurances that it would fix this problem and repost the productions, it has failed to do so. *See* Monroe Declaration ¶ 7. In his August 30, 2005 letter responding to these production issues, Mr. Harold Lester admits that documents that were originally hand-embossed with a Bates number and subsequently reposted to the production website may have different Bates numbers. *See* Motion attachment 5. Apparently, despite the government's inability to accurately maintain its own document productions, it expects Dairyland and its counsel to readily identify all documents within the million-plus pages which *may* be responsive to Dairyland's requests.

By way of illustration, the government's response discusses a document production posted to its website in December 2006. *See* Govt. Resp. at 37. The government argues this production is responsive to Dairyland request nos. 40 and 41 and appears to be offered as proof that the government has provided "most, if not all, of the relevant documents." *Id.* The government's description included on its production CD list for this allegedly responsive production is "Contractor and/or DOE PFS documents gathered in response to a production

request from Northern States Power." This is one of the only entries on the entire production list which specifies that it was prepared in response to a particular request from a particular plaintiff. The government contends that if Dairyland had reviewed this production, it would "show that these documents are responsive to Dairyland's requests. . . ." *Id.* at 36. It is unreasonable to expect Dairyland to search a production posted in response to another spent fuel plaintiff's document requests to see if perhaps it is responsive to one of its own requests. Under the Rules, that responsibility falls squarely and solely upon the government.

The government's assertion that the "gravamen" of Dairyland's complaint is the volume of the government's document production to date is presumptuous and misguided. Govt. Resp. at 37. Dairyland's complaint arises from the government's failure and refusal to provide a reasonable response or identify even a single document responsive to Dairyland's discovery requests. The government asserts that it has complied with RCFC 34's requirement that documents be produced "as they are kept in the usual course of business or shall organize and label them to correspond to the categories of the request." RCFC 34(b). *Id.* at 36. But this is not so. The government has organized its website to significant degree by the requests for documents propounded *in other cases.* Remarkably, the government maintains that "Dairyland's manner of production is precisely the same as the Government's." *Id.* at 38. To the contrary, Dairyland provided to the government over 184,000 pages of responsive documents as they are kept in the usual course of business and that were collected specifically in response to the government's document requests and to comply with Dairyland's initial disclosure requirements. In addition, while not required under the Rules, Dairyland has provided to the government – at a cost of over $40,000 – bibliographic coding for nearly every document produced to assist the government in efficiently identifying and reviewing the

documents. Thus, Dairyland has gone above and beyond its obligations to provide the government with tools and information to assist in the review and management of Dairyland's comparatively small document production.

Document Request Nos. 19-23, 32, 35 and 42 In addition to alleging that Dairyland's requests are overly broad and burdensome, the government alleges these "requests seek irrelevant and speculative information about predictions of future events that have not happened." Govt. Resp. at 39. The government's reliance upon *Indiana Michigan* to foreclose the production of documents which may relate to events or discussions subsequent to the filing of Dairyland's claim is misguided and hypocritical. Request no. 32 seeks documents related to the transportation, aging and disposal ("TAD") canister system. The government complains this is seeking speculative information regarding the acceptance and transportation of spent fuel. The utilization of similar multi-purpose canisters has been a central issue in many spent fuel cases and is directly related to the reasonableness of the mitigation in light of DOE's breach. If all documents which seek "information about predictions of future events" were *per se* off-limits in this case, then many of the Dairyland planning documents requested by the government and which Dairyland has produced would be foreclosed or considered irrelevant.

Request Nos. 10, 14, 15, 17, and 18 Finally, the government objects in particular to request no. 10 "because of Dairyland's very broad definition of 'related to' and request for 'any meeting' which could include all meeting conducted at either agency regarding any aspect of the acceptance or disposal of spent fuel from the nuclear industry since the Standard Contract was promulgated." Govt. Resp. at 39. Dairyland does not dispute that this would indeed be a broad and burdensome request, but that is not Dairyland's request. Dairyland's narrowly tailored request seeks documents related to "any DOE or NRC meetings concerning the acceptance

and/or disposal of DAIRYLAND'S SPENT FUEL or amending DAIRYLAND'S spent fuel disposal contract." Similarly, request nos. 14, 15, 17 and 18 ask for documents related to such topics as the development and siting of an ISFSI and the removal of a reactor pressure vessel at Dairyland's La Crosse Boiling Water Reactor.

For these reasons and the reasons set forth in Dairyland's motion, the Court should compel the government to provide proper responses to Dairyland's discovery requests, and requests that the Court sanction the government for its dilatory conduct and improper responses.

Respectfully submitted,

January 24, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP