No. 04-106C
Chief Judge Damich

Electronically filed on February 9, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DAIRYLAND'S RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER
COOPERATIVE

Of Counsel:

ROBERT L. SHAPIRO
KEVIN E. STERN
Greenberg Traurig, LLP

# TABLE OF CONTENTS


Background ..........1

I. The Testimony and Documents Sought Are Not Discoverable ..........3

II. The Testimony and Documents Sought Are Protected Work Product ..........6

  A. The Work Product Doctrine Applies to the Testimony and Documents ..........6

  B. The Government Has Not Established a Need for the Protected Material ..........8

  C. Dairyland Has Not Waived The Work Product Protection ..........10

III. The Government's Insinuations Regarding Mr. Brasel Are Wrong and Inappropriate ..........12

Conclusion ..........12

# TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE**

Baker v. General Motors Corp., 197 F.R.D. 376 (W.D. Mo. 1999) ............................................ 9

Glanton v. Tudor Ins. Co., 2000 WL 3778 (E.D. Pa. Mar. 28, 2000) ........................................ 11

Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975) ............................................................ 10, 11

Hickman v. Taylor, 329 U.S. 495 (1947) ........................................................................... 6

Hofer v. Mack Trucks, Inc. 981 F.2d 377 (9th Cir. 1992)........................................................... 3

Kamens v. Horizon Corp., 81 F.R.D. 444 (S.D.N.Y. 1979) ........................................................ 5

Madanes v. Madanes, 199 F.R.D. 135 (S.D.N.Y. 2001) ............................................................ 9

Pacific Gas & Elec. Co. v. United States, 69 Fed. Cl. 784 (2006) ................................................ 6

United States v. Great Northern Railway Co., 18 F.R.D. 357 (N.D. Cal. 1955)........................... 9

United States v. Nobles, 422 U.S. 225 (1975)........................................................................ 7

Varuzza v. Bulk Materials, Inc., 169 F.R.D. 254 (N.D.N.Y. 1996) ............................................ 4

Williams v. Chrysler Fin. Corp., 1999 WL 280437.................................................................. 6

Zenith Radio Corp. v. United States, 764 F. 2d 1577 (Fed. Cir. 1980) .......................................10

**FEDERAL RULES**

RCFC 26(a)(1)(B) ........................................................................................................ 6, 8
RCFC 26 ............................................................................................................................ 3, 7
RCFC 26(a)(1)(C) ............................................................................................................ 2, 11
RCFC 26(b)(1) .................................................................................................................. 3,5
RCFC 26(b)(2) .................................................................................................................. 5
RCFC 26(b)(3) .................................................................................................................. 8 10
RCFC 30(d)(1) .................................................................................................................. 3
RCFC 32(d)(3)(A) ............................................................................................................. 3

**OTHER MATERIALS**

Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine,* (ABA, Section of Litigation 4th ed. 2001) .......... 7

8 Charles Alan Wright *et al.*, Federal Practice and Procedure § 2053 (2d ed. 1994) .......... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S RESPONSE TO THE GOVERNMENT'S MOTION TO
COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS

Both in form and substance, the government's motion to compel represents an effort to expand the length and expense of discovery and to distract attention from the real issues to be resolved in this case.

## Background

The real issues address the costs that Dairyland has incurred due to the government's breach. As discussed at the January 25 hearing, sub issues include the government's potential arguments that some of these costs might have been incurred absent the breach because the government might not have picked up Dairyland's spent fuel even after 1998 or that some of the costs do not represent reasonable efforts to mitigate Dairyland's damages.

Dairyland has not hindered the government's discovery of any information relevant or reasonably calculated to lead to the discovery of admissible evidence regarding those issues. In fact, the government has received tens of thousands of pages of documents from Dairyland, including thousands of pages detailing the costs it has incurred due to the government's breach. Dairyland has also made available seven witnesses for day-long depositions, and answered

extensive interrogatories. In short, Dairyland has provided all of the discovery the government could reasonably need or request.

The extent of the deposition testimony the government seeks to compel is entirely unclear. The government states that it seeks to "inquire into Mr. Brasel's work upon the damages claim," Govt. Mot. at 22, but the government fails to identify either the particular questions it wants to be able to ask or even what it means by "the damages claim." Not surprisingly, Dairyland has undertaken a number of efforts in support of its litigation of this case to tally the damages it has incurred due to the government's breach. Those efforts include both an effort in 2004 shortly after Dairyland filed its complaint in this case, as reflected in some of the privilege log entries attached to the government's motion. *See* Govt. Mot., A. 28, reference nos. 249-53. Those efforts also included the preparation of Dairyland's formal disclosure of its computation of damages as required by RCFC 26(a)(1)(C). Only the latter effort could accurately be said to relate to "the damages claim." Yet elsewhere in the government's motion, particularly the part seeking the disclosure of documents, the government indicates significant interest in the 2004 effort. *See* Govt. Mot. at 17. The government is also cagey regarding just which depositions it might seek to reopen. The government's motion expressly only addresses Mr. Brasel's deposition. Although the government states that it does not seek to reopen Mr. Parkyn's deposition, Govt. Mot. at 2, n.2, the government does not address any of its other depositions of Dairyland personnel where there were instructions not to answer questions that sought the disclosure of information protected by the work product doctrine.

Notwithstanding the vagueness of the government's motion, the government seeks to fish around in Dairyland's internal efforts in support of the litigation to tally up the extent of its damages due to the government's breach. Dairyland's counsel appropriately cut off such

questioning during Mr. Brasel's deposition, as well as during the depositions of other Dairyland personnel.

I. The Testimony and Documents Sought Are Not Discoverable

The government's motion ignores a fundamental requirement of any motion to compel discovery – that the information sought is, in fact, within the scope of discovery permitted by RCFC 26(b)(1). That rule provides the familiar limitation to matters which are either relevant or reasonably calculated to lead to the discovery of admissible evidence. Without any analysis, the government's motion appears to assume that it is seeking discoverable information, perhaps because it touches on "damages." Govt. Mot. at 2. Consistent with guidance of RCFC 30(d)(1), which limits instructions to a deponent not to answer "only when necessary to preserve a privilege . . ." Dairyland's counsel did not expressly raise discoverability as a ground for instructions not to answer during the course of the depositions. And objections to the relevance of testimony is, of course, not waived by not making such an objection during the taking of the deposition. RCFC 32(d)(3)(A). In its responses to the government's requests for the production of documents, Dairyland expressly objected to all requests to the extent that they exceed the discovery permitted by RCFC 26. *See* Defendant's Response to Plaintiff's Motion to Compel Discovery and Motion for a Protective Order filed January 18, 2007, App. 92.

The discoverability limitations of RCFC 26(b)(1) are important, and they do not permit fishing expeditions. *See, e.g., Hofer v. Mack Trucks, Inc.* 981 F.2d 377, 380-81 (9th Cir. 1992). Moreover, not all matters about which the government's counsel may be curious are relevant. Relevant evidence is limited to "evidence having any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." Fed. R. Ev. 401 (emphasis added). As explained above, the facts that are of consequence to the determination of this action are Dairyland's costs incurred

due to the government's breach, Dairyland's efforts to mitigate its damages, the reasonableness and foreseeability of Dairyland's mitigation efforts and similar matters. Such matters are distinct from Dairyland's efforts to tally up its costs due to the government's breach. Those efforts are not of consequence to the determination of this action. For example, the government expresses remarkably extensive interest in the extent of Mr. Brasel's involvement in Dairyland's efforts to tally its damages, including the identity of those he may have spoken with on this issue and Mr. Brasel's attendance at meetings at which this issue may have been discussed. Govt. Mot. at 3-6. But whether Mr. Brasel was or was not at a meeting where Dairyland's damages may have been discussed or whether Mr. Brasel spoke with anyone about efforts to compile Dairyland's damages due to the breach is not of consequence (*i.e.* able to affect the extent of the damages the Court should actually award Dairyland due to the government's breach) to the determination of this action.

The discovery the government seeks is also not reasonably calculated to lead to the discovery of admissible evidence. Indeed, the government's motion's sole effort to explain a need for the discovery it seeks actually displays well that the government seeks to explore extraneous matters. The government argues that it has a particular need to discover the documents it seeks about preparation of Dairyland's damages claim because Mr. Brasel did not have a recollection of that effort. The government compares this situation to those exemplified by *Varuzza v. Bulk Materials, Inc.,* 169 F.R.D. 254, 257 (N.D.N.Y. 1996), where the plaintiff provided a written statement to an investigator with his recollections about an automobile accident but at the plaintiff's deposition, he was unable to remember significant details regarding the accident. *See* Govt. Mot. at 18. But in that case, the defendant had an obvious need for the written statement since it reflected the only available record of the plaintiff's memory of the

accident, and the facts of the accident were important to the determination of that action. Here, Mr. Brasel provided substantial deposition testimony on the issues comparable to the accident in *Varuzza* – the facts of his involvement in the Reactor Pressure Vessel removal and on-site dry storage projects.

Furthermore, even if the Court were to conclude that the discovery sought by the government in its motion met the minimum requirement of RCFC 26(b)(1), the government cannot hope to establish, as required by RCFC 26(b)(2), that its request to reopen Mr. Brasel's deposition is sufficiently likely to lead to the discovery of worthwhile admissible evidence to justify the time and expense entailed with reopening that deposition. *See Kamens v. Horizon Corp.*, 81 F.R.D. 444, 445 (S.D.N.Y. 1979) (although finding unnecessary obfuscation, delay and argument by deponent's counsel, the court denied a motion to reopen the deposition because the party taking the depositions had been able to examine the deponent in those areas necessary for the matter at issue in that litigation).

The discovery limitations of RCFC 26(b)(1) and 26(b)(2) also make clear that the government's argument that it should be permitted to ask Mr. Brasel "predicate questions that [seek] simply 'yes' or 'no' responses," Govt. Mot. at 13, is without merit. If the government is not to be permitted to travel fully down the path of asking about the substance of Dairyland's efforts to tally its damages due to the government's breach on work product grounds, there is no point in wasting time and effort permitting the government to travel a little bit of the way down that path. As will be explained below, the one example of such a question offered by the government (asking Mr. Brasel whether he was involved in the preparation of Dairyland's damages claim) does seek protected work product. But even if it did not, the government does

not attempt to explain how such a question is relevant, reasonably calculated to lead to the discovery of admissible evidence or worth the trouble of having it asked and answered.

## II. The Testimony and Documents Sought Are Protected Work Product

### A. The Work Product Doctrine Applies to the Testimony and Documents

The government does not appear to dispute that the deposition questions Mr. Brasel was instructed not to answer address efforts to prepare documents for use in the litigation (Dairyland's RCFC 26(a)(1)(B) disclosure). Nor could the government dispute that fact. The government asserts that there is no work product protection over such information because it is being sought through oral deposition answers (rather than a document) and that intangible work product only includes work product of attorneys and their consultants, not the work product of a party, Govt. Mot. at 13. The government offers no analysis for the proposition that there is or should be a gap in work product protection for intangible work product prepared by a party itself, rather than by the party's counsel and counsel's consultants. The government is correct that a single case supports its position. *Pacific Gas & Elec. Co. v. United* States, 69 Fed. Cl. 784, 816-17 (2006). But there is no analysis in that opinion supporting its conclusion, and that result should not be followed here.[1]

In fact, logic and the policy rationale in support of the work product doctrine are contrary to the government's argument. In *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947), the Supreme Court recognized that preparation of a client's case must be entitled to "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and that in the absence such privacy, "[i]nefficiency, unfairness and sharp practices would inevitably develop in

[1] For its view of the scope of the work product doctrine, *PG&E* appeared to rely primarily on *dicta* in an unreported Magistrate Judge's opinion. 69 Fed. Cl. at 816, *citing Williams v. Chrysler Fin. Corp.*, 1999 WL 280437 at *2 (E.D. La.).

. . . the preparation of cases for trial." The focus on *Hickman* was the specific work product of attorneys. But the Supreme Court has subsequently counseled that the work product

> doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of these realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

In the conduct of litigation for sophisticated organizations, such as Dairyland, it is difficult to imagine individuals more essential to the preparation of the case for trial than key personnel of the plaintiff itself who are likely to be the most able to assist in the development of matters such as the claim for damages. In essence, once litigation is underway the organization's personnel should be deemed agents of counsel as that concept is understood by *Nobles* for purposes of determining the appropriate scope of work product protection. As explained by the ABA treatise on the work product doctrine, the 1970 amendment to RCFC 26 avoided controversy over whether nonlawyers are acting as the lawyer's representative by avoiding the question and stating that all materials prepared in anticipation of litigation by any "representative" of the client are protected regardless of whether the representative is acting for the attorney. Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine,* 545 (ABA, Section of Litigation 4th ed. 2001) ("Epstein"). Neither the government nor *PG&E* offer any reason for taking a different approach regarding work product in an intangible form. Yet under the view of the work product doctrine espoused by the government, counsel would be discouraged from involving the client and its personnel because those individual's work would be subject to discovery through depositions and would be instead be encouraged to rely more on

outside consultants who are likely to be less able to assist in the preparation of the case. These are exactly the sort of inefficiencies and sharp practices against which *Hickman* warns.

In addition, the government's assertion that some of its questions are innocuous because they touch only lightly on litigation preparation efforts, Govt. Mot. at 13, is wrong. If questions such as "were you involved in the preparation of Dairyland's damages claim" have any purpose at all, it is to help the government to "free-ride" on Dairyland's trial preparation efforts in some manner, the prevention of which is one of the central themes of *Hickman*. *See* Epstein at 545.

The government's assertion that documents withheld do not appear to be work product, Govt. Mot. at 17-18, is flat wrong. As is made clear in the descriptions of the materials in Dairyland's privilege log, each of the documents at issue concern the development of Dairyland's damage claim, a formal document required by RCFC 26(a)(1)(B). The government offers no explanation as to why work developing such litigation documents does not constitute work product.

B. The Government Has Not Established a Need for the Protected Material

Much of the material the government appears to seek, such as information regarding the development of Dairyland's 2006 damages claim, undoubtedly includes the mental impressions of counsel. Regardless if one looks to RCFC 26(b)(3) or *Hickman* and its progeny, such "core work product" is entitled to almost absolute protection from disclosure and virtually showing of need can justify requiring its disclosure. The government does not purport to make such a showing in its motion.

In addition, as explained above, the discovery sought by the government is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Accordingly, there is no merit to the government's contention, Govt. Mot. at 18-20, that it has a substantial need for any of this information that would overcome Dairyland's work product interest in its

withholding. Since the substance of an effort to tally Dairyland's damages is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, a witness' lack of recollection regarding the effort is immaterial.

Similarly, the government's argument that it has a need for Dairyland's work product for purposes of impeachment, Govt. Mot. at 19-20, is meritless because the matter on which the government seeks to impeach Mr. Brasel (*i.e.,* whether or not he was involved in 2004 effort) is not material, much less relevant, to the outcome of this case. The authorities cited by the government are not to the contrary. The primary such authority, *Madanes v. Madanes*, 199 F.R.D. 135, 150-51 (S.D.N.Y. 2001), makes clear that a witness' lack of memory is a secondary concern that only goes to the issue of whether the party seeking protected material can obtain the information sought through other means. *Madanes* also makes clear that this secondary concern is only reached if the party seeking discovery can first show that it has a need for the protected material because "the work product material at issue is central to the substantive claims in litigation." *Id.* at 151. In *Baker v. General Motors Corp.,* 197 F.R.D. 376, 383 (W.D. Mo. 1999), similarly, the Court held that the documents at issue in that case "would be useful at trial." In other words, not merely discoverable, but actually relevant within the meaning of Fed. R. Ev. 401. Likewise, in *United States v. Great Northern Railway Co.*, 18 F.R.D. 357, 359 (N.D. Cal. 1955), the Court permitted discovery of one document (and denied discovery of most of the documents sought) because it potentially addressed a central issue in the case – the cause of a forest fire for which the government was seeking damages. The government has pointed to no issue, much less a central issue, to which the documents it seeks are relevant. This case is not about Dairyland effort to compile and tabulate its damages. This case is about those damages,

and the government has had unfettered opportunities to inquire about facts (and documents) relevant to those damages.

Moreover, the logical extension of the government's argument, Govt. Mot. at 20-21, that Mr. Brasel's lack of knowledge creates a substantial need for the government to obtain protected documents would eviscerate the doctrine. Although the government does not dispute that the work product doctrine clearly protects documents, RCFC 26(b)(3), the government argues that it may ask deposition questions regarding the same matters as those contained in the documents, and if the deponents cannot recall the substance of those matters, then the government has a substantial need for the documents themselves. The government offers no support for the gutting of the work product protection in this manner.

C. Dairyland Has Not Waived The Work Product Protection

The government claims that Dairyland waived work product production by putting the matter of damages at issue. In particular, the government states that by filing suit against the government, Dairyland put information about damages at issue by making it relevant to the case. *See* Government Motion at 21-22. The government relies on a three part test set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), to support its assertion that PG&E waived any attorney-client privilege concerning its damages claim. The government summarily and incorrectly concludes, without any argument, that the first two parts of the test have been met, *i.e.*, that (1) the assertion of the privilege was the result of an affirmative act, such as filing suit and (2) through the act, the asserting party put the protected information at issue by making it relevant to the case. *See* Government Motion at 21. However, "[a] party does not automatically waive . . . privileges, which protect the formulation of legal opinions or litigation strategy, simply by bringing suit." *Zenith Radio Corp. v. United States*, 764-F.2d 1577, 1580 (Fed Cir. 1980) The government contends that the "key inquiry" is whether the third-part of the *Hearn*

test is met, *i.e.*, application of the privilege would deny the opposing party access to information vital to its defense. *See* Government Motion, at 21 and *Hearn*, 68 F.R.D. at 581. As is explained above, the government has not demonstrated that it needs the withheld documents for the defense of this case.

Dairyland has disclosed its damages claim to the government in accordance with Rule 26(a)(1)(C) of the Rules of the Court of Federal Claims. In fact, RCFC 26(a)(1)(C) contemplates explicitly that documents concerning damages calculations may be subject to privilege assertions.[2] Thus, "[a]party may withhold documents which support a claim of damages if those documents are subject to the attorney-client privilege." *Glanton v. Tudor Ins. Co.*, 2000 WL 3778, at *2 (E.D. Pa. Mar. 28, 2000) (unreported) citing 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2053 at 641 (2d ed. 1994)). While damages are certainly relevant to the case, Dairyland's filing of a complaint does not waive any privileges, nor does Dairyland's service of a damages computation in accordance with the Court's Rules. *See Glanton*, 2000 WL 377818, at *2 ("A party does not waive the attorney-client privilege regarding all documents supporting a claimed element of damages.").

Moreover, the government's assertion that the information it seeks is "vital to the defense of the case," Government Motion at 22 is unsupported and untrue. The government appears to deliberately seek to conflate the subject of Dairyland's damages with Dairyland's internal efforts to develop its damages claim. As explained above, these subjects are distinct, and the government has no need for discovery of the latter subject.

---

[2] *See* RCFC 26(a)(1)(C) (a party must provide "a computation of any category of damages claimed by the disclosing party, making available . . . the documents or other evidentiary material, *not privileged or protected from disclosure* . . . .") (emphasis added).

III. The Government's Insinuations Regarding Mr. Brasel Are Wrong and Inappropriate

The government's hyperbole regarding Mr. Brasel, *e.g.,* Govt. Mot. at 19-20, is both misplaced and entirely inappropriate. Although Mr. Brasel's recollection may have been faulty about the extent of his involvement in an effort to tabulate Dairyland's damages in 2004, it may also be that the government is over-interpreting the indicia in documents suggesting that he was involved more than he recalls. Trial will not determine an answer to this question, as the entire issue is not relevant to a determination of this case. But in the likely event that Mr. Brasel is called to testify at trial on matters that are relevant, the Court will have a full opportunity to make its own determination regarding the extent of Mr. Brasel's credibility. And we are confident that the Court will conclude that Mr. Brasel is a credible and reliable witness.

Conclusion

For the foregoing reasons, the government's motion to compel should be denied.

Respectfully submitted,

February 9, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP