No. 04-106C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
JOHN C. EKMAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys for Defendant

February 23, 2007

# TABLE OF CONTENTS

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. THE QUESTIONS THAT THE GOVERNMENT POSED DO NOT SEEK INFORMATION PROTECTED BY THE WORK PRODUCT DOCTRINE . . . 2

II. THE INFORMATION SOUGHT BY THE GOVERNMENT IS RELEVANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. DAIRYLAND HAS WAIVED ANY CLAIMS OF WORK PRODUCT . . . . . . . 6

IV. DAIRYLAND'S CHARACTERIZATION OF MR. BRASEL'S TESTIMONY AS DEMONSTRATIVE OF A POOR MEMORY IS BELIED BY THE TESTIMONY CITED IN THE GOVERNMENT'S MOTION AND BY THE TESTIMONY OF SUBSEQUENT WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . 8

V. THE GOVERNMENT HAS IDENTIFIED THE QUESTIONS UPON WHICH IT SEEKS TO COMPEL RESPONSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI. THE GOVERNMENT'S MOTION REFLECTED ALL OF THE DEPOSITIONS THAT HAD, TO THAT POINT, BEEN TAKEN . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES

**Page**

Carter v. Gibbs,
909 F.2d 1450 (Fed. Cir. 1990) . . . . . . . . . . 2

Genentech, Inc. v. U.S. Int'l Trade Comm'n,
122 F.3d 1409 (Fed. Cir. 1997) . . . . . . . . . . 2

Glanton v. Tudor Ins. Co.,
2000 WL 377818 (E.D. Pa. Mar. 28, 2000) . . . . . . . . . . 7

Osage Nation And/Or Tribe of Okla. v. United States,
66 Fed. Cl. 244, 251 n.3 (2005) . . . . . . . . . . 7-8

Pacific Gas & Electric Co. v. United States,
69 Fed. Cl. 784 (2006) . . . . . . . . . . passim

United States v. Nobles,
422 U.S. 225 (1975) . . . . . . . . . . 3, 7

Veruzza v. Bulk Materials, Inc.,
169 F.R.D. 254 (N.D.N.Y. 1996) . . . . . . . . . . 2

Wall Indus., Inc.. v. United States,
4 Cl. Ct. 659, 661 n.7 (1984) . . . . . . . . . . 5

**INDEX TO APPENDIX**

**Page**

Excerpts from Transcript of January 25, 2007 Hearing Before the Court . . . . . . . . . . . . . . . . . . . . 1

Excerpts from Transcript of February 8, 2006 Hearing Before the Court . . . . . . . . . . . . . . . . . . . . 3

Excerpts from Transcript of February 1, 2007 Deposition of Keith Stubbendick . . . . . . . . . . . . . . 7

Excerpts from Transcript of January 30, 2007 Deposition of Charles V. Sans Crainte . . . . . . . 14

Excerpts from Transcript of December 13, 2006 Deposition of Michael A. Brasel . . . . . . . . . . . 26

Errata Sheets Submitted by Michael A. Brasel on January 14, 2007 . . . . . . . . . . . . . . . . . . . . . . 31

Letter from Todd W. Monroe to Russell A. Shultis, Dated February 14, 2007 . . . . . . . . . . . . . . 35

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, | ) | |
| v. | ) | No. 04-106C (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS

Defendant, the United States, respectfully submits this reply to the "Response to the Government's Motion to Compel Deposition Testimony and the Production of Documents" (the "response"), which the plaintiff, Dairyland Power Cooperative ("Dairlyand"), filed on February 9, 2007.

## INTRODUCTION

Dairyland's response to the Government's motion to compel contains misstatements of fact and fails to address in any material way the case law that we cited addressing this Court's decision in Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 784 (2006), with the dismissive and incorrect assertion that the Court "failed to conduct any analysis" in reaching its decision. The case law demonstrates that the questions posed by the Government, as well as questions that naturally would follow, do not seek protected work product. Additionally, new evidence from more recent depositions demonstrates that Mr. Brasel failed to respond accurately and truthfully during his deposition, a fact that counsels for the production of the allegedly protected documents, as well as the reopening of Mr. Brasel's deposition. Finally, with respect

to the documents sought by the Government, while Dairyland continues to maintain that the documents are work product, its response fails to challenge our request that the Court conduct an in camera review of the documents to determine whether the work product doctrine properly attaches to those documents. Moreover, other than broad generalizations, and despite Dairyland's burden of proof, Dairyland has failed to put forward any additional evidence supporting the claims of work product with respect to those documents.

## DISCUSSION

### I. THE QUESTIONS THAT THE GOVERNMENT POSED DO NOT SEEK INFORMATION PROTECTED BY THE WORK PRODUCT DOCTRINE

As we demonstrated in our motion, the work product doctrine "provides protection only for *documents and tangible things* and . . . not for facts a party may have learned, even if they were learned from work product documents that are not themselves discoverable." Pacific Gas, 69 Fed. Cl. at 816 (citing RCFC 26(b)(3)) (emphasis in original) (additional citations omitted). Moreover, the purpose of the work product doctrine is to prevent the disclosure of an attorney's mental impressions and thought processes to an opposing party. Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990); Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997). The work product doctrine does not protect facts concerning the creation of work product or facts contained within the work product. Pacific Gas, 69 Fed. Cl. at 816.

Dairyland's response addresses only one of the cases that we cite (Veruzza v. Bulk Materials, Inc., 169 F.R.D. 254 (N.D.N.Y. 1996)), and Dairyland cursorily responds to the Pacific Gas decision – a decision that is, in all respects, contrary to its position here – with the dismissive statement that "there is no analysis supporting [the] conclusion." Response, at 6. Dairyland's failure to address the reasoned analysis in Pacific Gas – that is, upon any reading,

supported by the Court's application of the facts in that case to the law applicable to the work product doctrine – is telling. Dairyland likewise failed to explain how the questions posed during the deposition of Mr. Brasel – an individual who testified that he had no conversations with Dairyland's counsel or with Dairyland's employees concerning its damages – threatened to disclose the "mental impressions and thought processes" of Dairyland's counsel.

Instead of addressing the questions that the Government posed or the case law that we cited in our motion which analyzes the work product doctrine, Dairyland relies upon generalized legal standards and conclusory argument. For example, Dairyland cites United States v. Nobles, 422 U.S. 225 (1975), for the proposition that the work product doctrine extends to investigators and agents of the attorney. However, beyond stating that basic proposition, Nobles did not analyze the scope of the work product doctrine as it applies to employees, such as Mr. Brasel, and the work that Mr. Brasel performed upon the damages claim. In contrast, in our motion, we analyzed the doctrine articulated in Nobles as that generalized statement of the law has been applied by the courts. Based upon that analysis, and the analysis in Pacific Gas, the questions posed to Mr. Brasel do not implicate the work product doctrine. Moreover, as will be discussed below, Nobles ultimately required that the allegedly protected report of the investigator be turned over to the defendant upon the grounds that the protections of the work product doctrine had been waived by the decision to use the investigator as a witness to testify upon issues contained within the allegedly protected report. Id. at 239-240.

Under Dairyland's broad theory of work product, any work performed by an employee of a party in connection with litigation would be protected, even if the employee had no information concerning the attorney's "mental impressions and thoughts" and even if the final

work product was produced consistent with a party's discovery obligations. Under the applicable case law, however, this contention cannot be so. Moreover, many of the questions that we posed simply were predicate questions that sought "yes" or "no" responses or that sought the identification of individuals who participated in assembling the damages claim. Upon its face, none of this information is protected.[1] Similarly, we believe that the documents withheld and clawed-back upon work product grounds fail to reflect any work product (a fact that is not discussed in any detail in Dairyland's response) and believe that in camera review will resolve our concerns and result in the production of the challenged documents.

---

[1] Dairyland argues that, to the extent that the Court believes that the objections to the predicate questions were improper, re-opening the depositions so that Mr. Brasel can respond to those questions would be "wasting time." Response, at 5. Dairyland's argument should be rejected for at least three reasons. First, the predicate questions would allow the Government – and the Court – to determine whether any of counsel's "mental impressions or thoughts" truly are implicated by Mr. Brasel's testimony. We believe, based upon Mr. Brasel's testimony, that he lacks any knowledge of counsel's "mental impressions and thoughts" and that additional questioning will belie the assertion of work product here. Second, the identities of Dairyland employees who assisted in compiling information for the damages claim clearly is relevant to the Government's defense of that claim. If Mr. Brasel was required to seek assistance from individuals not listed upon Dairyland's initial disclosures for information reflected in the damages claim, as is clear from the documents and from Dairyland's privilege log, the Government should be allowed to obtain information concerning those individuals and the scope of their knowledge to determine whether additional depositions are necessary. Such information also goes to Mr. Brasel's capacity as a witness at trial to testify concerning the information contained in the damages claim. Finally, Dairyland should not be rewarded for its obstruction of predicate questions. If Dairyland wished to avoid "wasting time," counsel should have allowed the predicate questions to be answered in the first instance, particularly when counsel was aware of the Government's position, was aware of the likelihood that would file the instant motion, and was aware of the Court's decision in Pacific Gas that belies Dairyland's position here.

## II. THE INFORMATION SOUGHT BY THE GOVERNMENT IS RELEVANT

Dairyland's response argues at length that the information which we seek is not relevant to the defense of Dairyland's claim. As an initial matter, Dairyland previously has argued that its own extremely broad discovery requests "are well within the broad scope of discovery contemplated by the Court's rules." Dairyland's Reply On Its Motion To Compel Discovery Responses, dated January 24, 2007, at 3. Similarly, in a hearing in this case on January 25, 2007, this Court noted, in response to the Government's relevance objections, that the "difficulty that a judge has at this particular point is that the rule, which he correctly stated, doesn't really give the Court the task of deciding, sort of fine tuning, the relevance issue, but really discovery is different from saying, this is admissible in court because it's relevant or not admissible because it's irrelevant. So I have that problem." Transcript of Proceedings, January 25, 2007, 74:2-9 (A.2).[2] Under the broad discovery rules, the information that the Government's questions implicate clearly is relevant. See Wall Indus., Inc. v. United States, 4 Cl. Ct. 659, 661 n.7 (1984) ("the Notes of Advisory Committee on Rules have provided that the purpose of discovery is to allow a broad search for facts which may aid a party in the preparation or presentation of its case at *all* stages") (emphasis in original).

However, even under a narrow interpretion of the discovery rules, questions seeking information concerning Dairyland's damages claim and individuals knowledgeable concerning that claim clearly are relevant to this litigation. Dairyland previously has argued that this case does not concern liability, but, rather, the damages that it has incurred as a result of the partial

---

[2] "A.___" refers to the appendix attached to this reply. For the Court's convenience, we have attached the pages from Michael Brasel's transcript referenced in this reply even though the pages may have been previously attached to our motion to compel.

breach of contract by the Department of Energy ("DOE"). Transcript of Proceedings, February 8, 2006, 38:20-39:15 (A.5-6). Indeed, we anticipate that fact witnesses at trial will testify concerning the damages allegedly incurred as a result of the partial breach and the bases for the assertion that various costs are – or are not – damages.

Likewise, as this Court recognized in a February 8, 2006 hearing that discussed the issues relevant to discovery and the trial of this matter, the Government needs to understand the facts supporting Dairyland's damages claims:

> What the Defendant has to know is your particular theory, the specific theory of damages. We're asking for recovery on this for this reason, and then of course the facts back that up. Knowing that, they test the facts through the discovery process.

Id., 37:14-19 (A.4). To the extent that Dairyland employees made determinations that costs resulted or did not result from DOE's partial breach, we should be allowed to inquire into those determinations. Likewise, we should be allowed to discover the identities of employees with information relevant to Dairyland's damages claim. Dairyland should not be allowed to shield individuals from discovery by asserting that their identities – and the fact that information concerning damages was solicited from them – are protected.

## III. DAIRYLAND HAS WAIVED ANY CLAIMS OF WORK PRODUCT

As set forth in the Government's motion, to the extent that the work product protections attach at all, and we believe that they do not, Dairyland has waived those protections. At trial, we anticipate that Dairyland will present the damages set forth in the initial disclosures.[3] As a

[3] By agreement of the parties, the expert report deadline has been modified, and the Government has not yet been provided with Dairyland's expert reports. As a result, we do not know if the initial disclosures, or an expert damages analysis, will be the basis for Dairyland's claim. Regardless, to the extent that Dairyland has retained a damages expert, we expect that the

result, we should be allowed to inquire into those initial disclosures. Moreover, to the extent that prior work has contributed to those disclosures, that work also should be subject to discovery.[4]

In its response to our argument that Dairyland has waived any protections that may have existed, Dairyland relies upon case law concerning the attorney-client privilege and identifies no cases that support the withholding of information relating to damages upon work product grounds. Instead, Dairyland cites to Glanton v. Tudor Ins. Co., 2000 WL 377818 (E.D. Pa. Mar. 28, 2000), for the proposition that "Dairyland's filing of a complaint does not waive any privileges, nor does Dairyland's service of a damages computation in accordance with the Court's rules." Response, at 11. However, the district court in Glanton ordered that the plaintiff produce the billing records sought by the defendant's document request, which related to costs included in damages. Glanton, 2000 WL 377818, *3. In so holding, the district court noted that the plaintiff had failed to show that the records were within the "narrow confines" of the attorney-client privilege. Id. Here, the information sought is implicated by Dairyland's damages claim and should be produced. See Nobles, 422 U.S. at 239-240. Moreover, other than conclusory and unsupported statements, Dairyland's response fails to demonstrate that the information at issue in the Government's motion constitutes work product. See Osage Nation

expert would rely, at least in part, upon the work performed to produce the initial disclosures. Either way, discovery into the initial disclosures is relevant to our defense of Dairyland's claims.

[4] In subsequent depositions, counsel instructed witnesses not to respond to questions concerning the initial disclosures. Indeed, counsel for Dairyland instructed Keith Stubbendick, Dairyland's Director of Accounting, not to respond to a question that asked whether Mr. Stubbendick was involved in the preparation of the initial disclosures. Deposition of Keith Stubbendick, taken February 1, 2007 ("Stubbendick Dep."), 26:19-28:24 (A.9-11). These instructions, and others, may be the subject of a supplemental motion.

And/Or Tribe of Indians of Okla. v. United States, 66 Fed. Cl. 244, 251 n.3 (2005) ("burden of establishing privilege or work product falls on the party opposing discovery").

## IV. DAIRYLAND'S CHARACTERIZATION OF MR. BRASEL'S TESTIMONY AS DEMONSTRATIVE OF A POOR MEMORY IS BELIED BY THE TESTIMONY CITED IN THE GOVERNMENT'S MOTION AND BY THE TESTIMONY OF SUBSEQUENT WITNESSES

In its response, Dairyland argues that, assuming the documents are protected, the Government has not established a need for the material. Dairyland presents two arguments upon this issue. First, Dairyland asserts that the documents are not needed for impeachment because the subject matter upon which impeachment is sought is not relevant to this litigation. Response, at 9. Second, Dairyland challenges the contention that Mr. Brasel's lack of knowledge concerning his work upon the damages claim constitutes a substantial need for the documents. Upon both counts, Dairyland is mistaken.

First, Mr. Brasel's credibility is significant to any trial of this matter. As discussed in detail in our motion, Mr. Brasel is the project manager for Dairyland's reactor pressure vessel ("RPV") removal project and for its dry storage project, both of which are implicated by Dairyland's damages claim. As a result, we anticipate that Mr. Brasel will be called to support several components of that claim. Mr. Brasel also performed the cost analyses that allegedly support Dairyland's decision to construct dry storage. Once again, we expect Mr. Brasel to offer affirmative testimony concerning the decision to move to dry storage. We believe that Mr. Brasel's willingness to make factual misstatements under oath is relevant to his credibility in any trial of this matter. If Mr. Brasel is unable or unwilling to testify truthfully concerning his role in assembling Dairyland's damages claim – an issue that Dairyland argues is tangential to this case – his credibility upon issues that Dairyland concedes are material to this case would be called

into question. Dairyland should not be allowed to shield Mr. Brasel from further examination or prevent the disclosure of documents that the Government could use to obtain truthful and accurate testimony from Mr. Brasel upon the grounds that any misstatements or misrepresentations that he made under oath concern minor issues.

Second, based upon the testimony provided by Charles Sans Crainte and Keith Stubbendick, it is clear that Mr. Brasel was neither honest nor forthright concerning his involvement in the damages claim. Mr. Sans Crainte, Dairyland's Vice President of Generation, was present during portions of the deposition of Mr. Brasel. Deposition of Charles Sans Crainte, taken January 30, 2007 ("Sans Crainte Dep."), 14:5-11, 8:20-9:13 (A.17, A.15-16). At the beginning of his own subsequent deposition, Mr. Sans Crainte was asked if there was anything from any deposition that he attended that he wished to correct. Id., 8:20-9:7 (A.15-16). In response, Mr. Sans Crainte testified that "I know that Mike Brasel in his deposition was agitated, and – and in the course of responding he made some factual misstatements." Id., 9:8-11 (A.16). Specifically, Mr. Sans Crainte identified Mr. Brasel's statement that he did not participate in a meeting as one of those misstatements. Id., 9:14-20 (A.16).

Additional testimony demonstrates a pattern upon Mr. Brasel's part to misstate his work upon this litigation. As an example, Mr. Brasel testified:

> Q. Did you assist in determining what activities undertaken by Dairyland were caused by the breach?
>
> A. No.
>
> Q. Did you assist in determining what costs should be claimed as damages?
>
> A. No.

Q. Did you have any meetings with experts[] you understand to be testifying experts in this case?

A. No.

Deposition of Michael Brasel, taken December 13, 2007 ("Brasel Dep."), 17:15-24 (A.27). Mr. Brasel also denied having been asked to look at the additional costs associated with the RPV removal – now being sought from the Government – because of the presence of spent fuel in the wet pool. Id., 161:14-25 (A.30). However, we now know that these unambiguous denials during his deposition were not true. For example, Mr. Sans Crainte expressly contradicted Mr. Brasel's testimony:

Q. Do you know if Mr. Brasel is involved in determining . . . the incremental costs associated with the RPV removal that has resulted from the presence of spent fuel?

MR. STOUCK: Objection, form. It's vague.

A. [W]e have a consultant hired to assist us in determining what the difference is and I'm sure Mr. Brasel is – is working with him.

Sans Crainte Dep., 242:20-243:3 (A.18-19). Mr. Sans Crainte's contradictory testimony went further:

Q. [D]id Mr. Brasel have any meetings with – with experts that you understand are going to be testifying experts? It's just a yes or no question.

* * *

MR. STOUCK: The question is so innocuous, I'm tempted to let him go ahead and answer it. It's an objectionable question. Do you know whether he's met with anybody that's going to be testifying?

THE WITNESS: Yes, yes.

Sans Crainte Dep., 249:2–23 (A.25).

In contravention to Mr. Brasel's unequivocal testimony, Mr. Sans Crainte also testified that Mr. Brasel was, in fact, involved in determining the costs that resulted from DOE's partial breach:

> Q. I'm trying to get at whether Mr. Brasel's answer was in fact accurate. And I'm asking if Mr. Brasel assisted in determining what costs should be claimed as damages in this case?
>
> MR. STOUCK: And you're telling us when [Mr. Brasel] was asked that question, he said no?
>
> MR. EKMAN: He said no.
>
> MR. STOUCK: Okay. Do you know if –
>
> A. I think the answer is yes. I also recall Mr. Brasel was agitated when he responded to a rapid series of questions.

Sans Crainte Dep., 247:21-248:8 (A.23-24).

Expanding Mr. Brasel's role in the preparation of damages beyond the 2004 work that he performed of which the Government had evidence, Mr. Sans Crainte testified that he "strongly suspected" that Mr. Brasel was involved in the preparation of the initial disclosures. Id., 248:9-249:1 (A.24-25). Mr. Sans Crainte's "strong suspicion" was supported by the testimony of Mr. Stubbendick, Director of Accounting for Dairyland. Stubbendick Dep., 8:2-5 (A.8). While discussing Dairyland's initial disclosures that related to SAFSTOR costs that are being claimed as damages (id., 26:10-28:24 (A.9-11)), Mr. Stubbendick testified that he worked with Mr. Brasel to identify which activity codes applied to SAFSTOR projects and which were not applicable to SAFSTOR for the purposes of the initial disclosures. Id., 58:3-59:9 (A.12-13). The testimony of Messrs. Sans Crainte and Stubbendick demonstrate that Mr. Brasel performed

work upon this case within the last year, making his unambiguous denials and memory lapses concerning his involvement in damages even more suspect.

Additional testimony by Mr. Sans Crainte and Mr. Stubbendick further contradict Mr. Brasel's clear and repeated denials concerning communications with Dairyland employees upon damages. Mr. Sans Crainte testified that he consulted with all of his employees, including Mr. Brasel, concerning the damages claim. Sans Crainte Dep., 245:9-246:12 (A.21-22). Further, Mr. Sans Crainte's "strong suspicion" – borne out by Mr. Stubbendick – that Mr. Brasel was involved in the preparation of the initial disclosures would have required Mr. Brasel to speak with Roger Christians, the plant manager, or Dave Rybarik, another Dairyland employee. Id., 248:9-249:1 (A.24-25). Mr. Stubbendick testified that he had spoken with Mr. Brasel concerning this litigation (Stubbendick Dep., 58:1-2 (A.12)) and, as discussed above, that he communicated with Mr. Brasel in the process of preparing Dairyland's initial disclosures.

Finally, an errata sheet executed by Mr. Brasel further calls into question Mr. Brasel's veracity during his deposition. As discussed in our motion to compel, Mr. Brasel was asked, "[i]n connection with this damages claim, did you personally speak with any attorneys for LACBWR." Brasel Dep., 24:14-15 (A.28). Mr. Brasel responded, "no." Id., 25:11 (A.29). In his errata, Mr. Brasel changed his response to "yes," identifying that the reason for the change was that he "[m]isspoke." Errata, dated January 14, 2007 (A.32). The assertion that Mr. Brasel "misspoke" is astonishing given the circumstances surrounding his response. After asking the question, counsel for Dairyland objected upon attorney-client grounds and instructed the witness that he only could answer if his answer was no. Brasel Dep., 24:14-24 (A.28). However, following additional discussion on the record – and with the question still pending – a five-

minute recess was taken during which time the witness left the room to speak with counsel. Id., 24:25-25:7 (A.28-29). Upon re-entering the room, counsel objected to the question upon vagueness grounds following which the witness denied any having any conversations with counsel for Dairyland concerning damages. Id., 25:8-11 (A.29). The record demonstrates that Mr. Brasel's false testimony was provided after consultation with counsel and upon reflection. Moreover, at no time during the deposition did counsel for Dairyland, Mr. Brasel, or Mr. Sans Crainte (who was in attendance at Mr. Brasel's deposition) attempt to correct the record. It was only after the Government's motion to compel – which accurately set forth Mr. Brasel's denials – that the testimony was modified.[5] The errata is yet another example of Mr. Brasel's obfuscation and refusal to provide truthful and accurate testimony in this case. We are entitled to the information sought in discovery, and we ask that the Court provide us with the documentation that accurately reflects the work that Mr. Brasel performed on this case. Moreover, given the testimony of Messrs. Sans Crainte and Stubbendick concerning Mr. Brasel's involvement in the initial disclosures, we ask that the Court also allow us to further develop testimony upon those disclosures with Mr. Brasel, given that his denial of any involvement in the damages claim effectively precluded us from obtaining accurate testimony from this witness concerning those disclosures.[6]

---

[5] Interestingly, none of Mr. Brasel's other incorrect testimony – such as his inaccurate denials concerning his involvement in the damages claim – was changed.

[6] Mr. Brasel's testimony, and that of other Dairyland personnel, demonstrate that the only way for the Government to obtain an accurate accounting of Mr. Brasel's conduct is through documents that he prepared and through the testimony of individuals with whom he communicated. As discussed below and in our motion to compel, Mr. Brasel's unwillingness to provide truthful and accurate testimony counsels that the documents that he was involved in preparing be produced to the Government for use with Mr. Brasel in a subsequent deposition.

## V. THE GOVERNMENT HAS IDENTIFIED THE QUESTIONS UPON WHICH IT SEEKS TO COMPEL RESPONSES

Dairyland's response asserts that the Government "fails to identify either the particular questions it wants to be able to ask." Response, at 2. In so arguing, Dairyland appears to ignore the entire factual statement contained in the Government's motion which sets forth in detail the questions to which we seek to compel responses. Indeed, we structured our motion in a manner consistent with the Court's analysis of similar questions and objections in Pacific Gas. By our motion, we seek an order compelling Mr. Brasel to respond to those questions and, as the Court held in Pacific Gas, any follow-up questions that logically follow from those predicate questions.[7]

Clearly, we will not get responsive answers without those documents.

[7] Dairyland alleges that the term "damages claim" is vague and further asserts that "damages claim" only can relate to Dairyland's initial disclosures. Response, at 2. However, when that phrase was used by the Government in the question at issue in the response, Dairyland's counsel did not object upon vagueness grounds, and the witness did not seek an explanation as to what was meant by the phrase. Moreover, Dairyland's argument that the questions are vague as to time improperly attempt to use the work product protections as a sword instead of as a shield. In response to our motion, Dairyland alleges that the phrase "damages claim" could not relate to the 2004 efforts to compile damages and must only relate to Dairyland's initial disclosures. Response, at 2. However, we believe that the Court's in camera review of documents from 2004 that Dairyland originally produced but later "clawed back" pursuant to the provisions of the protective order – that the Government cannot reference with specificity – will demonstrate that the Government's use of the phrase "damages claim" is consistent with language in Dairyland's own documents from the 2004 time period. To the extent that the Government merely was parroting language contained in clawed-back documents prepared by Mr. Brasel, Dairyland's decision to argue vagueness raises significant questions as to whether any work product protections – to the extent that they exist at all – now are waived.

## VI. THE GOVERNMENT'S MOTION REFLECTED ALL OF THE DEPOSITIONS THAT HAD, TO THAT POINT, BEEN TAKEN

The Government's motion was filed following the depositions of Mr. Brasel, John Parkyn, and Seymour Raffety in December 2006. As described in our motion, Dairyland's improper work product objections were asserted in the depositions of Messrs. Parkyn and Brasel and subsequent questions that Mr. Parkyn was allowed to answer demonstrated that he had no involvement in determining Dairyland's damages in this case. As a result, we only sought to re-open Mr. Brasel's deposition.

Despite the clarity of our motion, Dairyland's response alleges that our motion is "cagey regarding just which deposition it might seek to reopen." Response, at 2 (emphasis added). Specifically, Dairyland asserts that "the government does not address any of its other depositions of Dairyland personnel where there were instructions not to answer questions that sought the disclosure of information protected by the work product doctrine." Id. By this argument, Dairyland apparently seeks to call into question the motives of the Government and, perhaps, the consistency of our position upon this issue. However, in alleging "caginess" upon our part, Dairyland failed to inform the Court that, at the time of the Government's motion, only the three depositions referenced above had taken place. After the Government filed its motion – but before Dairyland filed its response – the Government took four more depositions. In those depositions, Dairyland asserted – and, even, broadened – its improper work product objections.

By our motion, we did not seek to re-open those four depositions because they had not yet occurred. To eliminate uncertainty concerning our intentions, to the extent that any truly exists, we expect to file a supplemental motion to address the objections that Dairyland asserted in those depositions and may seek to re-open all of them. However, Dairyland deprived the

Court of a material fact in its response, and we believe that, in assessing Dairyland's allegations of "cagey" behavior, the Court should be aware that the "other depositions" referenced in Dairyland's response had not taken place at the time of our motion.

CONCLUSION

For the reasons stated herein and in the Government's motion to compel, the Government respectfully requests that the Court order that (1) the deposition of Michael Brasel be reopened so that the Government can inquire into Mr. Brasel's work upon the damages claim, including his work upon the initial disclosures; (2) the ten documents withheld or clawed-back upon work product grounds be produced to the Government following in camera review; and (3) the portions of PLAC0052691 relating to Mr. Brasel's contributions at the September 2, 2004 meeting concerning Duratek, clawed back by Dairyland on February 14, 2007 ( see A.35), be produced to the Government in its entirety for further use in this case, following in camera review.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
JOHN C. EKMAN
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

February 23, 2007

s/Russell A. Shultis by Patrick B. Bryan
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel.: (202) 305-7571
Fax: (202) 305-2503

Attorneys for Defendant