that until whatever the due date is and
that's when we'll tell you. So I'm
instructing him not to answer.
Q (By Mr. Ekman, continuing) Let me ask this.
MR. STOUCK: Think about it, John. You
can answer that question yourself.
Q (By Mr. Ekman, continuing) When was this -- do
you know when this consultant was hired, the
date?
A No.
Q Was it prior to Mr. Brasel's deposition in early
December?
MR. STOUCK: Again, if he doesn't
know --
A I don't know.
Q (By Mr. Ekman, continuing) Can you ball --
ballpark it? Was it before Christmas?
A I can't tell you. I guess I don't -- I'm
searching my memory, John, and I -- I wasn't
responsible directly for that, so I don't know.
Q Who would know?
MR. STOUCK: Me.
A Jerry would know.
MR. EKMAN: It's not your deposition.
You're not the one being deposed, though,

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

Mr. Stouck.
MR. STOUCK: Sorry.
Q (By Mr. Ekman, continuing) Along the lines again of Mr. Brasel, do you know if Mr. Brasel assisted in determining what activities were undertaken by Dairyland as a result of the Department of Energy's breach?
MR. STOUCK: Hold on. That's -- can I just have that question back?
Q (By Mr. Ekman, continuing) Do you know if Mr. Brasel assisted in determining the activities that were undertaken by Dairyland that were caused by the DOE's partial breach contract?
MR. STOUCK: Isn't that another way of asking whether he participated in --
MR. EKMAN: No.
MR. STOUCK: My position would be that calls for work product. But let's be generous and see if Mr. Sans Crainte can answer it.
A I would never have construed that.
MR. STOUCK: Okay. Maybe I'm wrong. Answer the question the way you understand it.
A I think I'm responsible ultimately for the

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

decisions related to the activities that Dairyland has undertaken, you know, in response to the Government's breach, not Mr. Brasel.

Q (By Mr. Ekman, continuing) But did Mr. Brasel assist in that --

MR. STOUCK: Objection.

Q (By Mr. Ekman, continuing) -- process?

MR. STOUCK: Objection, form. It's vague.

A All of my staff have been consulted.

Q (By Mr. Ekman, continuing) Including Mr. Brasel?

A Yeah.

Q Did Mr. Brasel assist in determining what costs would be claimed as damages in this case on the initial disclosures?

MR. STOUCK: I think that's within our work product objection.

MR. EKMAN: Well, Mr. Stouck, during Mr. Brasel's deposition, Counsel allowed him to answer that question.

MR. STOUCK: Allowed Brasel to answer that question?

MR. EKMAN: Yes, he did. So I would argue that to the extent that Mr. Brasel's answered that question on his own behalf,

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

any work product objections that have been raised have been waived.

MR. STOUCK: What was his answer?

MR. EKMAN: His answer was no. Question: Did you assist in determining what costs should be claimed as damages? Answer was, No.

MR. STOUCK: Okay. Robert let him answer that?

MR. EKMAN: I believe Kevin let him answer that.

MR. STOUCK: Kevin let him answer that? I don't see how the answer gives a waiver.

MR. EKMAN: It's simply a yes or no question. I'm asking for --

MR. STOUCK: If the answer is no, he didn't tell you anything that would waive -- let's just -- do you know an answer to that question? What's the question again?

Q (By Mr. Ekman, continuing) The question is -- I'm attempting to get at whether Mr. Brasel was in fact -- I'm trying to get at whether Mr. Brasel's answer was in fact accurate. And I'm asking if Mr. Brasel assisted in determining what costs should be claimed as damages in this

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

case?

MR. STOUCK: And you're telling us when he was asked that question, he said no?

MR. EKMAN: He said no.

MR. STOUCK: Okay. Do you know if --

A I think the answer is yes. I also recall Mr. Brasel was agitated when he responded to a rapid series of questions.

Q (By Mr. Ekman, continuing) Well, let me ask, how do you know that Mr. Brasel assisted in that -- assisted in that process?

A This is relative to the initial disclosures, the claimed --

MR. STOUCK: I don't know.

MR. EKMAN: Sure. We can start there.

A In response to earlier questions, I suggested that I have on numerous occasions directed my staff to prepare estimates of -- of what may be the scope of our damages relative to this litigation. And that's -- on the basis of that, I'm stating that I -- I suspect, strongly suspect Mr. Brasel was involved in that. I don't -- I didn't directly charge him, that I recall. I didn't directly charge him with doing that, but I know that I've made the requests of Roger

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

Christians and Dave Rybarik.
Q (By Mr. Ekman, continuing) And then lastly on this particular subject, did Mr. Brasel have any meetings with -- with experts that you understand are going to be testifying experts? It's just a yes or no question.
MR. STOUCK: That's also objectionable, and I'm not going to let him answer it. It's just not -- it's not a fair question. It does call for work product, at least that's our position. Ask the experts that.
MR. EKMAN: Well, his understanding -- his understanding of whether the guy is a testifying expert. I don't understand --
MR. STOUCK: The question is so innocuous, I'm tempted to let him go ahead and answer it. It's an objectionable question. Do you know whether he's met with anybody that's going to be testifying?
THE WITNESS: Yes, yes.
Q (By Mr. Ekman, continuing) He has, is that the answer?
MR. STOUCK: His answer was yes.
MR. EKMAN: All right. Let's mark this.

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

COPY

vs. Case No. 04-0106 C

THE UNITED STATES,

Defendant.

---

* * * * * *

DEPOSITION OF MICHAEL A. BRASEL

TAKEN ON THE 13TH DAY OF DECEMBER, 2006

AT THE RADISSON HOTEL LA CROSSE

LA CROSSE, WISCONSIN

9:15 A.M.

* * * * * *

Taken before Lynn M. Ettl, RPR, CRR

www.nwcourtreporters.com

nwcr@nwcourtreporters.com

1-800-628-7551

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

yes.

Q (By Mr. Ekman, continuing) Did you speak with Dairyland personnel outside of counsel being present concerning Dairyland's damages claim?

A No.

Q Did you -- you didn't --

A I'm sorry.

Q You haven't -- have you had correspondence with Dairyland personnel concerning the damages claim outside of counsel?

A No.

Q Did you assemble documents in support of the damages claim?

A Outside of counsel, no.

Q Did you assist in determining what activities undertaken by Dairyland were caused by the breach?

A No.

Q Did you assist in determining what costs should be claimed as damages?

A No.

Q Did you have any meetings with experts, you understand to be testifying experts in this case?

A No.

Q Okay.

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

Q (By Mr. Ekman, continuing) If you had conversations with -- you personally had conversations outside of your preparation for this deposition with counsel in connection with this claim?

A Restate the question.

Q Outside of any conversations you may have had in connection with this deposition, in connection with the -- your work that you did --

A Preparation?

Q -- outside of the preparation that you may have done for this deposition?

A (Nods head.)

Q In connection with this damages claim, did you personally speak with any attorneys for LACBWR?

MR. STERN: Again, I counsel the witness not to reveal any communications with counsel regarding this client in this case.

MR. EKMAN: Is that instruction not to answer that question?

MR. STERN: Well, if the answer is no, then he can answer it. But if the answer is yes, yes.

MR. EKMAN: Well, he can answer it if

the answer is no, but if the answer is yes, he can't answer it?

MR. STERN: He can answer the question, but I'm counseling the witness not to reveal any attorney-client communications.

(A short recess was taken beginning at 9:45 a.m. and ending at 9:50 a.m.)

MR. STERN: Let me object to that question. Vague in terms of damages claim.

Q (By Mr. Ekman, continuing) You can answer.

A No.

Q Did you send out -- did you solicit other information from other individuals other than Mr. Fruehling relative to this claim?

MR. STERN: I'm going to instruct the witness not to answer. Calls for work product.

MR. EKMAN: Whether the yes or no calls for work product?

MR. STERN: Yes.

Q (By Mr. Ekman, continuing) Did you speak -- did you have meetings with Mike Johnsen concerning the damages claim, just the two of you, to discuss how you were going to go about this process?

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

Q And you don't know why the DOE litigation is referenced in this document?
A I do not.
Q Do you know who wrote this report for Duratek?
A I do not -- I don't know the exact author.
Q You were not involved at this time in --
A Partially. Not to the extent I am now.
Q Mr. Johnsen would have been more involved than you?
A Yes.
Q Do you know how the $4 million figure was calculated?
A No, I do not.
Q Do you know if that's an accurate figure for the difference between the cost with fuel versus the cost without fuel?
A No, I do not.
Q Have you been asked -- have you been asked to look at that?
MR. STERN: Objection to the extent it calls for attorney-client communications. Instruct the witness not to reveal any attorney-client communications. If you can answer the question --
A I'll say to that, no.

"Confidential-To be used only in litigating Case No. 04-106C, Dairyland Power Cooperative vs. The United States, and in accordance with U.S. Court of Federal Claims Protective Order entered 8-17-06"

Greenberg Traurig

**Dairyland Power Cooperative v. United States**
Unites States Court of Federal Claims
Case No. 04-0106C

## Signature Page indicating Review of Michael A. Brasel Transcript of December 13, 2006 by Michael A. Brasel

Please check the appropriate box and sign below:

| | |
|---|---|
| | I do not have any changes to the transcript |
| ✓ | I have attached changes to be made to the transcript |
| DATE: | 1/14/07 |
| SIGNATURE: | [signature] |
| | Michael A. Brasel |

WDC 371372885v1 1/3/2007

**Dairyland Power Cooperative v. United States**
United States Court of Federal Claims
Case No. 04-0106C

**CHANGES TO MICHAEL A. BRASEL TRANSCRIPT OF DECEMBER 13, 2006**

| | |
|---|---|
| **DATE:** | 1/14/07 |
| **REVIEWED BY:** | Michael A. Brasel |

| Transcript Page | Line | Change | Reason for Change |
|---|---|---|---|
| 12 | 6 | delete "an" | Clarification |
| 12 | 7 | delete "analysis of, a structural analysis" | Clarification |
| 12 | 9 | delete "if they need to reboot the moisture" and change to "the moisture separator below the reheater could be removed" | Clarification |
| 12 | 10 | delete "separator underneath it" | Clarification |
| 25 | 11 | change answer to "yes, but the information is Attorney Client Communication | Misspoke |
| 40 | 16 | change "is" to "and" otherwise the question reads differently and I would of answered differently. | Clarification/transcription error |
| 44 | 10 | second "NUREG" should say "Nuclear Regulation" | Transcription error |
| 46 | 3 | question was not finished in the transcript | Transcription error |
| 49 | 21 | delete "in" insert "operate" | Clarification |
| 49 | 22 | insert "wet" before "storage" | Clarification |
| 49 | 23 | full question did not get in the transcript makes my answer not make sense. I want to make I am answering the question completely | Clarification/transcription error |
| 65 | 19 | It appears some of my answer was left out. | Transcription error |

*WDC 371372886v1 1/3/2007*

Date: January 19, 2007
Re: CHANGES TO MICHAEL A. BRASEL TRANSCRIPT OF DECEMBER 13, 2006
Page 2

| Transcript Page | Line | Change | Reason for Change |
|---|---|---|---|
| 66 | 7 | missing dialogue insert after "I" was asked to assemble the spreadsheet after "R&D" insert "for" and delete "put that together" | Transcription error/clarification |
| 67 | 20 | change "fool" to "fuel" | Transcription error |
| 76 | 11 | insert "a cost benefit Analysis" after "of" ... missing dialogue | Transcription error/clarification |
| 76 | 13 | missing dialogue ... delete "my" insert "this document. It's not delete "is" | Transcription error/clarification |
| 76 | 24 | missing end of sentence insert "count them all" at the end | Transcription error/missing |
| 83 | 5 | Change "appears" to "compares" | Transcription error |
| 90 | 9 | more "capital" between the "c" and "R" (McRill) | Transcription error/clarification |
| 92 | 8 | delete "were" | Transcription error/clarification |
| 93 | 16 | insert "as" before "of" | Clarification |
| 95 | 5 | change "mediate" to "immediate" | Transcription error |
| 95 | 17 | missing dialogue... insert "It's been done before by" | Transcription error |
| 92 | 22 | missing dialogue... insert "recall" after "can't" | Transcription error/clarification |
| 95 | 25 | make "presentation" plural and insert "at the" before "NEI" | Transcription error/missing dialogue |
| 100 | 17 | | It's not clear what the question was. Needs to be clarified |
| 101 | 10 | delete "of" | Clarification |
| 101 | 13 | delete "federal" | Clarification |
| 110 | 19 | insert "delay" after "to" | Transcription error/missing word |
| 114 | 10 | | It's not clear what the question was - missing dialogue |
| 115 | 4 | insert "mean" before "what's" | Clarification |
| 115 | 7 | Change "TN" to Holtec" insert "TN" before "61" | Clarification |
| 116 | 18 | change "inaccurate" to "accurate" | Transcription error |
| 116 | 22 | | Exact question asked is unclear |
| 118 | 23 | change "Sans Crainte" to "Rybrarik" | Clarification/misspoke |
| 126 | 22 | insert "associated with the fuel" after "are" | Missing dialogue/clarification |

| Transcript Page | Line | Change | Reason for Change |
|---|---|---|---|
| 130 | 9 | change "PFS's" to "PFS Second" | Transcription error |
| 131 | 4 | Insert "was some work, but" after "there" | Missing dialogue/transcription error |
| 131 | 21 | add "Hi storm" after "Hi-star" | Clarification |
| 134 | 13 | add "involved in the decision making" after "wasn't" | Clarification/missing dialogue |
| 134 | 14 | add "to terminate WPI" after "was" | Clarification/missing dialogue |
| 136 | 1 | add "my undergraduate" before "minor" | Clarification |
| 136 | 5 | add "supplier" after "diesel" | Clarification/transcription error |
| 139 | 10 | add "will" after "and" | Clarification/transcription error |
| 141 | 2 | delete "biowall" add "bioshield wall" | Transcription error |
| 141 | 7 | change "Messaine" to Mezzanine | Transcription error |
| 141 | 8 | change "677" to "667" | Transcription error |
| 145 | 3 | add "it would not have to be done" | Clarification |
| 145 | 7 | add "and a quarter" after "one" | Clarification/misspoke |
| 149 | 6 | change "Acceptable" to "Achievable" | Misspoke |
| 153 | 11 | *change "tenancy" to "majority"* | *Transcription error* |
| 163 | 14 | add "we have not" | Clarification |
| 173 | 5 | change "Rome" to "Ravm" | Transcription error |
| 173 | 25 | change "Hikel" to "Heichel" | Transcription error |
| 174 | 2 | change "Hikel" to "Heichel" | Transcription error |
| 174 | 3 | change "GSM" to "JAM" | Transcription error |
| 178 | 10 | change "NEC" to "NAC" and "N-E-C" to "N-A-C" | Transcription error |
| 178 | 12 | change "NEC" to "NAC" | Transcription error |
| 182 | 17 | change "casks" to "tasks" | Transcription error |
| 185 | 7 | delete "C" after "p" | Transcription error |
| 185 | 23 | change "on cask" to "and" | Clarification/transcription error |
| 189 | 2 | add "and" after "Crane" | Transcription error |
| 192 | 7 | add "Not" before "that" | Transcription error |
| 193 | 21 | change "Lachinski" to "Wilchinski" | Transcription error |
| 199 | 25 | change "scrabble" to "scabble" | Transcription error |
| 200 | 20 | change "scrabble to "scabble" | Transcription error |

Lostantt
Shultis, R
7020

Greenberg Traurig

Todd W. Monroe
Tel. 202.530.8561
Fax 202.261.0174
monroet@gtlaw.com

February 14, 2007

*VIA FACSIMILE AND FIRST CLASS MAIL*

RECEIVED
2007 FEB 22 A 9:35
CASE PROCESSING UNIT
CIVIL DIVISION/DOJ

Russell Shultis
Department of Justice
Commercial Litigation Branch
Civil Division – Classification Unit
8th Floor Mailroom
1100 L Street, NW
Washington, D.C. 20530

Re: *Dairyland Power Cooperative v. United States*

Dear Mr. Shultis:

I am writing regarding certain documents produced to the government, where certain portions inadvertently reveal privileged or protected work-product material. The documents in question include three sets of meeting notes with Bates ranges of PLAC0052670-72, PLAC0052686689, and PLAC0052691-94.

Pursuant to paragraph 10 of the Protective Order dated August 17, 2006 in the above-referenced case, we ask that the government promptly 1) return (or destroy) all copies of the aforementioned unredacted documents and likewise delete them from the government's document database 2) not make any further use of these documents in this or other spent fuel cases, and 3) notify us that you have destroyed or returned all copies of these documents and deleted them from the government's database. Dairyland is replacing those unredacted documents with the enclosed revised versions, reflecting the redaction of privileged or protected information. A supplemental privilege log reflecting these redactions, and other recently clawed-back documents will be provided in due course.

Please let me know if you have any questions regarding these matters.

Very truly yours,

Todd W. Monroe

Enclosures

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

CERTIFICATE OF FILING

I hereby certify that on February 23, 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL DEPOSITION TESTIMONY AND THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Patrick B. Bryan