No. 04-106C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 205230
Tele: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

ALAN LO RE
Senior Trial Counsel

PATRICK B. BRYAN
SONIA ORFIELD
MARIAN E. SULLIVAN
Trial Attorneys

February 28, 2007

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DEFENDANT'S RESPONSE TO DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Documents At Issue In Dairyland's Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Prior Challenges To The Government's Assertion of Deliberative Process . . . . . 4

III. Motion To Compel Filed By PG&E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Initial Ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. The Government's Motion For Reconsideration . . . . . . . . . . . . . . . . . . . . 6

C. The Court's Order On Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . . 7

D. PG&E's Renewed Motion To Compel . . . . . . . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I. DOE HAS PROPERLY ASSERTED DELIBERATIVE PROCESS PRIVILEGE OVER THE DOCUMENTS THAT ARE THE SUBJECT OF DAIRYLAND'S MOTION TO COMPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A. The Affidavits Executed By Messrs. Friedman and Milner Properly Describe The Information Subject To The Assertion Of Privilege And Provide Precise And Certain Reasons For Maintaining The Privilege . . 12

B. Mr. Milner's Affidavit Was Executed Pursuant To A Proper Delegation 15

C. The Affidavits Executed By Messrs. Friedman And Milner Were Timely16

II. DAIRYLAND HAS NOT SHOWN A COMPELLING NEED FOR THE DOCUMENTS AT ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A. Dairyland Has Not Made Its Own Showing For The Documents The Court Ordered The Government To Produce In *Pacific Gas* . . . . . . . . . . . . . . . 23

B. Dairyland Has Not Made A Showing Of Compelling Need For The Documents That The Court Did Not Order The Government To Produce In *Pacific Gas* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

C. If The Court Determines That Dairyland Has Shown A Compelling Need For Any Of The Documents At Issue In Its Motion, The Court Should Order Those Documents Produced For Use In This Case Only . . . . . . . 31

III. DAIRYLAND'S CHALLENGE TO THE GOVERNMENT'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE IS WITHOUT MERIT . . . . . . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

APPENDIX

TABLE OF AUTHORITIES

**CASES**

Abramson v. United States,
39 Fed. Cl. 290 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Alaska v. United States,
16 Cl. Ct. 5 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cabot v. United States,
35 Fed. Cl. 442 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Carl Zeiss v. Carl Zeiss,
40 F.R.D. 318 (D.D.C. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Committee for Nuclear Responsibility, Inc. v. Seaborg,
463 F.2d 788 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

First Height Bank, FSB v. United States,
46 Fed. Cl. 312 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

In re Franklin National Bank Securities Litigation,
478 F. Supp. 577 (E.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 24

National Inst. of Military Justice v. United States Dep't of Defense,
404 F. Supp. 2d 325 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 128 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Pacific Gas & Electric Co. v. United States,
71 Fed. Cl. 205 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Pacific Gas & Electric Co. v. United States,
No. 04-74C & -75 C, slip op. (Fed. Cl. May 14, 2006) . . . . . . . . . . . . . . . . . . . . . . passim

Redland Soccer Club, Inc. v. Department of the Army,
55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996) . . . . . . . . . . . . . . . . . . . 23

In re Sante Fe International Corp.,
272 F.3d 705 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Scott Paper Co. v. United States,
943 F. Supp. 489 (E.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Scott v. PPG Industries, Inc.,
142 F.R.D. 291 (N.D.W. Va. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Securities & Exch. Comm'n v. Downe,
No. 92-Civ-4092, 1994 WL 23141 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Spalding Sports Worldwise, Inc.,
203 F.3d 800 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Tri-State Hosp. Supply Corp. v. United States,
226 F.R.D. 118 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States Dep't of Energy v. Brett,
659 F.2d 154 (Temp. Emer. Ct. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. AT&T,
524 F. Supp. 1381 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Board of Education of City of Chicago,
610 F. Supp. 695 (N.D. Ill. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Electro-Voice, Inc.,
879 F. Supp. 919 (N.D. Ind. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Farley,
11 F.3d 1385 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. IBM,
20 F.R. Serv. 2d 1082 (S.D.N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Reynolds,
345 U.S. 1 (1953) . . . . . . . . . . 19, 20

Walsky Construction, Co. v. United States,
20 Cl. Ct. 317 (1990) . . . . . . . . . . 12

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . 4, 16, 31

Yankee Atomic Electric Co. v. United States,
No. 98-126C, slip op. (Fed. Cl. Aug. 25, 2003) . . . . . . . . . . 3, 4, 5

**STATUTES**

5 U.S.C. App. 3 . . . . . . . . . . 14

42 U.S.C. § 7252 . . . . . . . . . . 15

42 U.S.C § 10224(a)-(b) . . . . . . . . . . 15

**MISCELLANEOUS**

Manual for Complex Litigation (Third) § 21.431 (1995) . . . . . . . . . . 33

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-0106C<br>(Chief Judge Damich) |

DEFENDANT'S RESPONSE TO
DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD
UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES

Defendant, the United States, respectfully responds to "Dairyland's Motion To Compel Documents Withheld Under The Deliberative Process and Attorney-Client Privileges," filed by plaintiff, Dairyland Power Cooperative ("Dairyland"). With its motion to compel, Dairyland seeks the production of 269 documents that the Government has withheld upon the basis of the deliberative process privilege, ten of which also include information protected by the attorney-client privilege or the work product doctrine. Dairyland's motion is without merit and should be denied in its entirety. To the extent that the Court determines that Dairyland has established a "compelling need" for any of the documents at issue and that any of the documents are to be produced, the Government requests that the Court limit the production of any documents to counsel for Dairyland for use in this case only.

## BACKGROUND

### I. Documents At Issue In Dairyland's Motion

Pursuant to the Government's discussions with counsel for Dairyland conducted on February 14, 2007, the Government understands that Dairyland seeks to compel the production of 269 documents withheld on the basis of deliberative process privilege by the Department of

Energy ("DOE"). A. 1-17.[1] Dairyland's counsel represented that Dairyland sought to compel production of all of the documents that were the subject of counsel's motion to compel the production of documents withheld on the basis of deliberative process in Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl.), with the exception of any documents related to the issue of Greater-Than-Class-C radioactive ("GTCC") waste. With the removal of the GTCC documents, Dairyland seeks to compel production of all but three documents that are covered by the declaration of Mr. Ronald Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management ("OCRWM"), A. 18, and the three documents that are the subject of the declaration of Mr. Gregory Friedman, Inspector General ("IG"), Department of Energy ("DOE").[2] A. 95.[3]

---

[1] "A. __" refers to the appendix to this response. The Government initially found it difficult to discern which documents were at issue in Dairyland's motion. The "table of challenges" that Dairyland attached to its motion to compel does not actually identify the documents that Dairyland is seeking to require the Government to produce. In an effort to identify the documents, the Government asked counsel for Dairyland to provide the "table of challenges" that had been produced with the motion to compel that Pacific Gas & Electric Company ("PG&E") had filed when PG&E challenged the Government's privilege assertions in Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl.). Based upon counsel's conversation with counsel for Dairyland, Government counsel has modified that table to eliminate all of the documents that relate to GTCC, which we understand Dairyland is not seeking to compel here. The resulting chart should identify all of the documents that are at issue in Dairyland's motion. A. 1-17.

[2] Dairyland does not discuss Mr. Friedman's affidavit in its motion or include his affidavit in the appendix to its motion. However, based upon counsel's representation that Dairyland was seeking to compel all of the documents on which PG&E moved to compel with the exception of any documents related to GTCC, the Government understands that Mr. Friedman's assertion of deliberative process over three documents is at issue in Dairyland's motion.

[3] In response to the Court's order in Pacific Gas, we provided these affidavits for in camera review. The Court later order the Government to produce these affidavits to counsel for PG&E in redacted form. We can provide the unredacted versions of the affidavits to the Court for in camera review, if the Court believes that it is necessary or appropriate.

The Government further understands that, in the alternative, Dairyland seeks to compel the production of the 128 documents that Judge Hewitt ordered produced in Pacific Gas, based upon PG&E's showing of a "compelling need" for those documents. In addition, the Government understands that Dairyland seeks to compel the production of an additional 55 documents for which Judge Hewitt determined PG&E did not have a "compelling need" sufficient to overcome the Government's assertion of deliberative process privilege. These documents are two documents regarding possible modifications to the Standard Contract (Ref. Nos. 367 and 369), five documents regarding the issuance of the 2004 Annual Capacity Report/Acceptance Priority Ranking ("ACR/APR") and the resumption of the delivery commitment schedule process (Ref. Nos. 387-90 and 368), and 48 documents related to the possible rates of spent fuel acceptance that DOE may use when performance of the Standard Contract begins. Dairyland's motion does not contain a list of these 48 documents. Instead, Dairyland's counsel referred counsel for the Government to footnote 4 of PG&E's motion to compel, filed in May 2006, to identify these documents. A. 104.

II. Prior Challenges To The Government's Assertion of Deliberative Process [4]

In a motion to compel the production of documents withheld on the basis of deliberative process in Pacific Gas, PG&E, represented by counsel for Dairyland, sought to compel the production of all of the documents withheld by the Government on the basis of deliberative process privilege since the beginning of the spent fuel litigation pending before the Court. PG&E's motion to compel followed previous challenges to the assertion of deliberative process privilege in the coordinated discovery proceedings, over which Judge Sypolt presided, and in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.). During the coordinated discovery proceedings in 2002, plaintiffs challenged DOE's assertion of deliberative process over 24 documents. Based upon a declaration executed by Mr. Milner, the Court upheld this assertion of deliberative process privilege for these documents, finding that Mr. Milner had "'precise and certain reasons' for invoking the privilege . . . by providing descriptions of the documents and averring that continued confidentiality is necessary to assure the free flow of ideas and candid discussions within the agency." Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 312 (2002).

[4] The Government sets forth here the course of prior proceedings regarding challenges to the Government's assertion of deliberative process privilege in the SNF cases as background, in part because Dairyland, in its motion, devotes pages to recounting the course of proceedings on the motion to compel filed by PG&E and asks the Court to "enforce" the initial ruling by Judge Hewitt, rather than her order on reconsideration of that initial ruling, on PG&E's motion to compel. Pl. Mtn. at 8. As set forth in the argument section of our brief, we expect that the Court will consider Dairyland's challenge independently from previous challenges and determine that DOE's assertions of deliberative process privilege are proper. To the extent that the Court relies upon the course of proceedings in Pacific Gas, we urge the Court to consider the entirety of those proceedings as well as the Court's two previous decisions on the Government's assertions of deliberative process privilege in the coordinated discovery proceedings and Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.).

By motion dated March 6, 2003, filed in Yankee Atomic, counsel for Dairyland again sought to challenge every assertion of deliberative process privilege by the Government, including the assertions of deliberative process privilege that had been upheld by Judge Sypolt in the coordinated discovery proceedings. In response to this motion, Mr. Milner, as well as Ms. Patrice Bubar, Office of Environmental Management ("EM"), DOE, and Mr. Martin Virgilio, Director, Office of Nuclear Materials Safety and Safeguards, Nuclear Regulatory Commission ("NRC"), executed declarations formalizing the Government's assertion of deliberative process privilege over approximately 200 documents. The Court ordered the Government to produce documents related to GTCC issues, based upon a determination of Yankee Atomic's "compelling necessity" for these documents, Yankee Atomic Electric Co. v. United States, No. 98-126C, slip. op. at 3(Fed. Cl. Aug. 25, 2003), but sustained the remainder of the Government's assertions of deliberative process privilege. Id. at 4.

III. Motion To Compel Filed By PG&E

A. Initial Ruling

In 2005, PG&E, in a new motion to compel, sought again to challenge the Government's assertion of deliberative process over the documents that had been the subject of the two previous motions to compel, as well as all of the Government's subsequent assertions of deliberative process. In total, PG&E sought to compel the production of 465 documents, arguing that the Government had failed to "comply with the procedural requirements for the invocation of deliberative process." Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 128, 136 (2006). In an initial ruling on this motion, the Court found that the Government had failed to meet the procedural requirements for invoking the privilege. Id. at 137. Specifically, the Court

found that the Government had failed to demonstrate that the "privilege was invoked by an appropriate official," that the declarations executed by the Government officials failed to provide "'precise and certain reasons' for maintaining the confidentiality of the requested documents," and that the declarations supporting the assertion of deliberative process were "belatedly executed." Id. The Court did not decide "whether the documents [subject to challenge] meet the legal standards of the privilege by being 'pre-decisional' and 'deliberative.'" Id. at 136. Based upon these determinations, the Court ordered the Government to produce the documents that were the subject of PG&E's motion to compel. Id.

B. The Government's Motion For Reconsideration

The Government filed a motion for reconsideration of the Court's order, asking that the Court re-examine its determination regarding the untimeliness of the Government's assertions of deliberative process, which had a potentially devastating effect upon the Government's ability to assert the deliberative process privilege in any case. With regard to the Court's finding that the Government essentially waived the deliberative process privilege by not providing affidavits when it originally produced its privilege logs, the Government, in its motion for reconsideration, established that the Court's decision was in direct conflict with the overwhelming weight of authority on that issue. With regard to the Court's findings that the Government's delegations were not sufficiently careful and that the supporting affidavits did not provide sufficiently "precise and certain reasons" for non-disclosure, the Government asserted that the Court's analysis established no guidelines by which the Government, in future cases, could identify the Court's standards for the invocation of this privilege. Finally, the Government established that, particularly in light of the fact that this Court, in two prior SNF cases, upheld the Government's

assertion of the deliberative process privilege over some of the same documents at issue in Pacific Gas on the basis of the same affidavits, with the same delegations and same explanations of harm, the Court's order for immediate production of all documents, without any opportunity to correct the technical defects that the Court found and without any opportunity for in camera review, was unwarranted.

C. The Court's Order On Reconsideration

In response to the Government's motion for reconsideration, the Court ordered that the Government provide for in camera review each document withheld on the basis of deliberative process privilege and that the same Government officials who had previously invoked deliberative process privilege prepare new affidavits for those documents. Pacific Gas & Electric Co. v. United States, 71 Fed. Cl. 205, 206-07 (2006). The Court directed that these new affidavits were to "'describe with specificity the 'precise and certain reasons' for maintaining the confidentiality of each document that continues to be withheld.'" Id. Mr. Milner executed his new affidavit on March 31, 2006, A. 94, and Mr. Friedman executed his new affidavit on April 10, 2006. A. 102.

Regarding the Government's request for reconsideration of the Court's previous ruling regarding the timing of the execution of affidavits in support of assertions of deliberative process, the Court stated that it "did not, as defendant suggests, find that the Government waived the right to assert the deliberative process privilege by waiting until it responded to plaintiff's motion to compel to execute affidavits in support of its assertion of the privilege." Pacific Gas, 71 Fed. Cl. at 208. "Rather, the Court merely found such practice to be 'procedurally deficient,' thereby eroding the credibility of defendant's claim of the privilege." Id. The Court suggested

that the time for the execution of such an affidavit would be after plaintiff's counsel put the Government on notice that it intended to challenge the Government's assertion of deliberative process, presumably as the result of the obligation to meet and confer, but before plaintiff's counsel actually involved the Court in the dispute. Id. at 209 ("The parties' counsel can still, as defendant states, 'resolve their disputes consensually without need for the Court's involvement,' and without need to resort to obtaining a formal affidavit to support all preliminary assertions of the deliberative process privilege. As to those documents about which the parties are unable to agree, however, if the Government wishes to continue (successfully) to assert that the deliberative process privilege protects them from discovery, the government should carefully support that assertion with an affidavit from an agency official at that time.")[5]

With regard to the Government's request that the Court reconsider its prior ruling regarding the sufficiency of the affidavits submitted in support of the assertion of deliberative process privilege, the Court stated that the affidavits " need not reveal the contents of the deliberations; rather [they] must only identify, with respect to a specific document or type of documents, why that document should be protected from discovery and what specific harm will result from its disclosure." Id. The Court stated that the Government had failed to meet this requirement with the affidavits that it had originally submitted, but found that it had been met with the new affidavits that the Government was ordered to produce. Id. at 210. Based upon its review of these new affidavits and the documents withheld, the Court exercised "its discretion in

[5] With regard to the Government's request that the Court reconsider its decision regarding the delegation of authority to the officials who executed the declarations, the Court stated that it "did not rely on its determination that defendant's delegations were not carefully undertaken in ruling on plaintiff's motion to compel." Id. at 209. On this basis, the Court found no need to reconsider that portion of its ruling.

the circumstances of [the] case to afford defendant the opportunity properly to assert the deliberative process privilege over the documents it continues to withhold." Id.

Having determined that the Government properly asserted deliberative process privilege over the documents, the Court ordered PG&E to review the new affidavits and "move the Court to compel production of any of the documents described in the affidavits, based on 'a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to the defendant.'" Id. In its opinion on the Government's motion for reconsideration, the Court provided examples of documents for which it thought that "defendant's interest in maintaining the confidentiality of the documents -- while described with sufficient particularity -- is outweighed by the plaintiff's evidentiary need for the documents." Id. at 214. The Court also provided examples of documents for which it thought that PG&E could not make a showing of compelling need. Id. at 211.

D. PG&E's Renewed Motion To Compel

In response to the Court's decision on reconsideration, PG&E moved to compel the production of 209 documents. After examining these documents again in camera, the Court ordered the Government to produce 21 documents. Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl. May 14, 2006). However, the Court declined to compel the production of an additional 54 documents regarding the rate of spent fuel acceptance,[6] finding that "plaintiff's evidentiary need for these documents [did not outweigh] defendant's interest in maintaining their confidentiality." Id. at 4. Similarly, the Court rejected PG&E's motion to

[6] As explained below, the Court's characterization of these documents are "related to the rate of acceptance" is not wholly accurate.

compel the production of documents related to the issuance of the 2004 Annual Capacity Report/ Acceptance Priority Ranking and related documents regarding delivery commitment schedules, documents related to "DOE's Adoption of a Market Driven Approach for OCRWM," and documents related to DOE's proposals to modify or amend the Standard Contract. Id. at 4-5.

Based upon the Court's order on reconsideration, the Government identified approximately 85 documents that were on the same subject matter as those for which the Court had previously determined PG&E's evidentiary need probably outweighed the Government's interest in maintaining the assertion of deliberative process over these documents. Id. at 2. The Government asked that the Court order the production of these documents for use in PG&E's case only to preclude any argument that the Government had waived the assertion of deliberative process privilege in other cases by agreeing to voluntarily produce these documents based upon the Court's order. Id. The Court ordered the production of these documents and amended the protective order in the case to preclude the use of these documents outside of the Pacific Gas case. Id. In total, the Court in PG&E ordered the production of 128 documents that are now the subject of Dairyland's motion to compel in this case. A. 1-17.

Of the 128 documents produced to PG&E as the result of the Court's rulings that are the subject of challenge in this case, PG&E added 30 documents to its exhibit list. A. 1-17. In addition, counsel for PG&E conducted a two-hour deposition of Mr. David Zabransky, Contracting Officer, regarding these documents, just before trial began. PG&E sought the admission of none of these documents at trial and did not elicit any testimony from Mr. Zabransky or other witnesses regarding these documents at trial.

SUMMARY OF THE ARGUMENT

Dairyland, with its motion to compel, seeks to challenge the Government's assertion of deliberative process privilege over documents responsive to requests for production of documents served by the plaintiffs in the SNF cases. Although the Government's assertion of deliberative process over many of these same documents has been upheld previously by the Court, Dairyland asks the Court to undertake its own review of the documents at issue in the motion to compel. Dairyland's challenge has two aspects. First, Dairyland asserts that the Government has not met the procedural requirements for the assertion of the deliberative process privilege. However, there can be no viable dispute that the Government had met those requirements before Dairyland filed its challenge. Second, Dairyland claims that it has a "compelling need" for the documents at issue in its motion to compel. However, Dairyland has not established that it has a "compelling need" sufficient to overcome the Government's proper assertion of deliberative process privilege.

Perhaps realizing that it has no basis to challenge the Government's assertion of deliberative process in its own case, Dairyland, in a departure from previous motions to compel discovery matters, seeks to champion the cause of all SNF plaintiffs with cases before the Court and asks the Court to re-litigate PG&E's challenge to the assertion of deliberative process privilege. Clearly, Dairyland's "appeal" of Judge Hewitt's rulings in Pacific Gas are not properly before this Court. Moreover, in light of the Court's rulings on the Government's motions to consolidate the various SNF cases, to preclude additional depositions, and to preclude further burdensome discovery requests, the Court should consider Dairyland's motion in the context of Dairyland's case itself, rather than as a surrogate for all SNF plaintiffs in other SNF

cases. If the Court determines that Dairyland has shown a compelling need for any of the documents at issue, the Government requests that the Court order the production of those documents for use in this case only.

## ARGUMENT

### I. DOE HAS PROPERLY ASSERTED DELIBERATIVE PROCESS PRIVILEGE OVER THE DOCUMENTS THAT ARE THE SUBJECT OF DAIRYLAND'S MOTION TO COMPEL

#### A. The Affidavits Executed By Messrs. Friedman and Milner Properly Describe The Information Subject To The Assertion Of Privilege And Provide Precise And Certain Reasons For Maintaining The Privilege

Dairyland seeks to compel the production of these 269 documents based upon its claims that the Government has not met the procedural requirements for the assertion of deliberative process privilege. With regard to the sufficiency of the affidavits, Dairyland's challenge appears to focus upon Judge Hewitt's determination in Pacific Gas that these affidavits were sufficient and the sufficiency of Mr. Milner's description of the harm that would result from the release of the documents in four paragraphs of his affidavit. Pl. Mtn. at 12-15. After review of the accompanying declarations, the Court should agree with Judge Hewitt that the affidavits at issue in this case sufficiently describe the "harm particular to the substance and contents of each document [that] may be caused to defendant by disclosure of the document to plaintiff." Pacific Gas, 71 Fed. Cl. at 210.

In an affidavit asserting the deliberative process privilege, the affiant "must state with particularity what information is subject to the privilege" and "must supply the Court with 'precise and certain reasons' for maintaining the confidentiality of the requested documents." Walsky Construction, Co. v. United States, 20 Cl. Ct. 317, 319 (1990); see Alaska v. United

States, 16 Cl. Ct. 5, 11 (1988) ("to achieve a valid claim of executive privilege, there must be 'a specific designation and description of the documents with its scope as well as precise and certain reasons for preserving their confidentiality.") (citations omitted). "Such an explanation need not reveal the contents of the deliberations: rather, it must only identify, with respect to a specific document or type of documents, why that document should be protected from discovery and what specific harm will result from its disclosure." Pacific Gas, 71 Fed. Cl. at 209.

In its motion, Dairyland highlights paragraph 45 of Mr. Milner's affidavit and asserts that Mr. Milner has not articulated "a particularized harm" that could arise from the release of the documents covered by that paragraph. Pl. Mtn. at 13. Dairyland also asks the Court to compare the text of Mr. Milner's March 31, 2006 affidavit with the text of Mr. Milner's November 10, 2005 affidavit regarding the same documents. Pl. Mtn. at 13-14. However, Dairyland has not provided the Court with Mr. Milner's November 10, 2005 affidavit, and the basis for the Government's assertion of deliberative process privilege in this case is Mr. Milner's March 31, 2006 affidavit. As the Court will see in reviewing paragraph 45 of Mr. Milner's affidavit, Mr. Milner attests that releasing this document, which was prepared in the process of formulating DOE's budget, will impede DOE's ability to obtain creative ideas from DOE personnel regarding potential budget reductions in the future. A. 63 (Milner Aff. ¶ 45). Moreover, this paragraph in Mr. Milner's affidavit is contained in a larger discussion of a group of documents that were generated in the process of formulating budgets. As Mr. Milner explains in the preamble to this section, budgets are scrutinized very carefully and "Department employees know that any suggestions that they make, whether adopted or not, could subject the Executive Branch to potentially intense scrutiny regarding the choices that are ultimately made regarding

those suggestions . . . ." A. 56 (Milner Aff. at 39). Mr. Milner further attests that employees make suggestions and provide advice as part of formulating the budget with "an understanding that their opinions and advice regarding these pre-decisional matters, deliberative types of matters would be reviewed and discussed only within the Department." A. 57 (Milner Aff. at 40). Based upon this determination, Mr. Milner asserted the deliberative process privilege over the documents covered by paragraph 45, as well as others.

Dairyland also asks the Court to review paragraphs 26, 31 and 62 of Mr. Milner's declaration and, again, asserts that Mr. Milner has failed to describe sufficient harm that would result from the disclosure of these documents. Pl. Mtn. at 14-15. In each of these paragraphs, Mr. Milner articulated, "with respect to a specific document or type of documents, why that document should be protected from discovery and what specific harm will result from its disclosure." Pacific Gas, 71 Fed. Cl. at 209. For example, in paragraph 31, Mr. Milner describes a set of draft presentations regarding possible repository design options that were considered, but not adopted. A. 51-52. As Mr. Milner explains in the preceding paragraph, "it is critical that individuals within the program be able to provide advice and recommendations" regarding potential repository design and that, if documents such as the ones covered by paragraph 31 are released, it will "chill employees' willingness to provide such advice and will hamper the ability of the program to chose the best final design for the repository." A. 51. Mr. Milner has identified the specific harm -- the inability to achieve the best final design -- that will result from the release of these documents. Dairyland's challenge is without merit.

B. Mr. Milner's Affidavit Was Executed Pursuant To A Proper Delegation

Dairyland also appears to challenge the "deficient delegations of authority," Pl. Mtn. at 10, but provides no explanation of its basis for this challenge, other than to cite to the first opinion in Pacific Gas, in which the Court stated that the Government had "failed to demonstrate that the privilege was properly invoked by an appropriate official." Pl. Mtn. at 3-4 (citing Pacific Gas, 70 Fed. Cl. at 137).[7] However, as the Court noted upon reconsideration, this finding was not the basis for the initial decision on PG&E's motion to compel. Pacific Gas, 71 Fed. Cl. at 209.

The United States Court of Appeals for the Federal Circuit has held that the authority to assert the deliberative process privilege may be delegated. Marriott International Resorts, L.P. v. United States, 437 F.3d 1302, 1303 (Fed. Cir. 2006). The Secretary of Energy possesses the authority, pursuant to statute, to delegate "any of his functions to such officers and employees of the Department as he may designate, and may authorize such successive re-delegations of such functions with the Department as he may deem to be necessary or appropriate. 42 U.S.C. § 7252. Pursuant to this authority, the Secretary, by order dated November 23, 2005, delegated to the Under Secretary for Energy, Science and Environment the authority to, "on matters pertaining to the Office of Civilian Radioactive Waste Management [("OCRWM")] . . . assert, on a non-exclusive basis, the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance." A. 107 (§ 1.12C). This order further provided that, "[e]xcept as expressly prohibited by law, regulation, or this Order, the Under Secretary for

[7] This argument cannot apply to Mr. Friedman's invocation of the privilege as Mr. Friedman invoked that privilege as the head of the Office of the Inspector General, DOE, pursuant to his authority under the Inspector General Act of 1978, 5 U.S.C. App. 3.

Energy, Science, and Environment may delegate this authority further, in whole or in part. A. 116 (§ 4.1). By Redelegation Order No. 00-002.06, dated May 13, 2002, the Under Secretary delegated the authority to "[a]ssert on a non-exclusive basis, the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance." A. 119.

OCRWM is the office within DOE that is responsible "for carrying out the responsibilities of the Secretary" pursuant to the Nuclear Waste Policy Act. 42 U.S.C. § 10224(a)-(b) (1982). By memorandum dated May 13, 2002, the Director of OCRWM delegated to Mr. Milner "the authority to assert the deliberative process privilege over documents within the cognizance of [OCRWM]." A. 121. As this Court found in the challenge to the assertion of deliberative process during the coordinated discovery proceedings, Mr. Milner is an appropriate individual to invoke the deliberative process privilege upon behalf of DOE. Yankee Atomic, 54 Fed. Cl. at 311; see also Yankee Atomic, No. 98-126C (Fed. Cl. Aug. 25, 2003) at 2(declining to revisit ruling from coordinated discovery proceedings that authority to assert deliberative process privilege had been properly delegated). Given the Secretary's broad authority to delegate this authority, and this Court's past endorsement of Mr. Milner's ability to assert deliberative process privilege upon behalf of OCRWM, the Court should not disturb that delegation based upon Dairyland's simple assertion that the delegation of authority was "deficient."

C. The Affidavits Executed By Messrs. Friedman And Milner Were Timely

Dairyland also seeks to challenge the timing of the execution of the declarations by Messrs. Friedman and Milner, claiming that the Government failed to "obtain proper affidavits

from agency officials at the time the privilege was first invoked." Pl. Mtn. at 10. Dairyland also relies upon the Court's finding in Pacific Gas that the affidavits were "belatedly executed." Pl. Mtn. at 4. However, with this challenge, Dairyland is attempting to impose upon the Government a requirement that does not exist – to obtain the formal affidavits at the time of the preparation of the privilege log. Moreover, and in any event, these affidavits were executed prior to the service of Dairyland's production requests, eliminating any argument by Dairyland that the affidavits are untimely with respect to Dairyland.

Numerous other courts, including this one, have also found that the formal invocation of deliberative process privilege, either through affidavits or other information supportive of the privilege claim, need not be generated until after a motion to compel has been filed challenging the Government's identification of that privilege. See, e.g., Abramson v. United States, 39 Fed. Cl. 290, 294 (1997) ("procedural requirements" for invoking deliberative process privilege "generally are satisfied through the production of a declaration or affidavit by the agency head, and produced in response to a motion to compel" (emphasis added)); United States Dep't of Energy v. Brett, 659 F.2d 154, 155 (Temp. Emer. Ct. App. 1981) (finding that agency's submission of "a detailed and specific justifications of its claims of [deliberative process] privilege in its counsels' lengthy submissions" prior to third discovery hearing before court was "timely"); Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005) (finding that "the government had no obligation to formally invoke the [deliberative process] privilege in advance of the motion to compel" and recognizing appropriateness of submitting affidavits explaining basis for privilege as attachment to opposition to motion to compel); United States v. Board of Education of City of Chicago, 610 F. Supp. 695, 698 (N.D.

Ill. 1985) ("Although not doing so when he first claimed the [deliberative process] privilege, the Secretary himself has now formally invoked the privilege by an affidavit which states that he has personally considered the problem. Thus, the first part of the threshold step is met."); see also Securities & Exch. Comm'n v. Downe, No. 92-Civ-4092, 1994 WL 23141, at *5 (S.D.N.Y. 1994) (in invoking investigative files privilege, "Commission has met its obligations for the purposes of responding to the instant motion to compel by submitting an affidavit with its motion papers" and was not required to provide affidavit "prior to formal motion practice"); National Inst. of Military Justice v. United States Dep't of Defense, 404 F. Supp. 2d 325, 348 (D.D.C. 2005) (in the context of FOIA deliberative process privilege assertion, declaration filed after the submission of a Vaughn index was sufficient to invoke the privilege).

In In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), the United States Court of Appeals for the District of Columbia Circuit rejected the requirement that Dairyland asks the Court to adopt in this case. In Sealed Case, a grand jury sought documents from the White House concerning the White House counsel's investigation of the official who was the subject of the grand jury investigation. The White House relied upon two executive privileges, the privilege for presidential communications and the deliberative process privilege, in declining to produce documents, originally providing in response to the subpoena a privilege log identifying "the date, author, and recipient of each document withheld as well as a general statement of the nature of each document and the basis for the privilege on which the document was withheld." Id. at 735. That privilege log identified 84 documents as being withheld "on grounds of the deliberative process privilege," with a later draft of the log identifying all 84 documents as subject to the "executive/deliberative privilege." Id. Several months later, the Office of Independent Counsel

("OIC") filed a motion to compel production of the withheld documents. Id. The White House subsequently submitted the documents for in camera review, along with an "ex parte cover sheet that explained the purpose of [each] document." Id. at 735-36.

In response to the OIC's argument that the White House had waived its claim of privilege by not formally invoking them in advance of the motion to compel, the D.C. Circuit held that Federal Rule of Civil Procedure 45 did not mandate formal invocation of the privilege, through supporting materials, until a response to a motion to compel:

> Nor did the White House have an obligation to formally invoke its privileges in advance of the motion to compel. In its response to the subpoena, the White House informed the OIC that it believed the withheld documents were privileged, thus satisfying Rule 45(c)(2)(B) and Rule 45(d)(2) of the Federal Rules of Civil Procedure, which together require that "a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of privilege within [the stipulated period]." The motion to compel was the first event which could have forced disclosure of the documents. Since the OIC was clearly aware in advance of the motion to compel that the White House likely would be asserting privilege, it was not prejudiced by any alleged delay in the White House's formally invoking its privileges.

Id. at 741 (citations omitted). Because the language of RCFC 26(b)(5), which relates to a party's assertion of privilege, is substantially similar to the language of RCFC 45(d)(2), which relates to a third party's assertion of privilege, the same rationale should apply here.[8]

---

[8] Although the privilege claims in our case are governed by RCFC 26 (relating to privilege claims by a party), rather than RCFC 45 (relating to privilege claims by a third party), that distinction does not alter the analysis regarding the timing of formal invocation of the privilege. Under RCFC 45(d)(2), when information subject to a subpoena "is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Under RCFC 26(b)(5), when a party "withholds information otherwise discoverable under these rules by claiming that it is

The United States Supreme Court has also suggested that a formal declaration of executive privilege need not be made at the exact moment that a privilege log is first provided to a requesting party. In United States v. Reynolds, 345 U.S. 1 (1953), the district court had initially granted a motion to compel the production of certain documents relating to the plaintiffs' claims, but had then received a letter from the Secretary of the Air Force stating that "it has been determined that it would not be in the public interest to furnish" a particular report. See id. at 4 (discussing factual background). The district court allowed rehearing on the earlier order, and, during the rehearing, the Secretary filed a formal "Claim of Privilege," invoking executive privilege over the document. Although the district court found that there was no valid claim of privilege, the Supreme Court reversed and, with regard to the timing of the Secretary's invocation of the privilege through a formal "Claim of Privilege," indicated that the Secretary's delay in formally invoking the privilege until the rehearing proceedings did not somehow waive the executive privilege:

> Of course, even with this information before him, the trial judge was in no position to decide that the report was privileged until there had been a formal claim of privilege. Thus it was entirely proper to rule initially that petitioner had shown probable cause for discovery of the documents. Thereafter, when the formal claim of privilege was filed by the Secretary of the Air Force, under circumstances indicating a reasonable possibility that military secrets were involved, there was certainly a sufficient showing of privilege to cut off further demand for the document on the showing of necessity for its compulsion that had then been made.

Id. at 10-11 (emphasis added).

---

privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

In Pacific Gas, Judge Hewitt, in her order on reconsideration, indicated that the formal affidavit did not have to be executed until such time as it becomes clear that counsel for the parties are unable to agree upon the assertion of privilege. Pacific Gas, 71 Fed. Cl. at 209. The Court stated that it "did not, as defendant suggests, find that the Government waived the right to assert the deliberative process privilege by waiting until it responded to plaintiff's motion to compel to execute affidavits in support of its assertion of the privilege." Pacific Gas, 71 Fed. Cl. at 208. Instead, the Court suggested that the time for the execution of such an affidavit would be after plaintiff's counsel put the Government on notice that it intended to challenge the Government's assertion of deliberative process, presumably as the result of the obligation to meet and confer, but before plaintiff's counsel actually involved the Court in the dispute. Id. at 209 ("The parties' counsel can still, as defendant states, 'resolve their disputes consensually without need for the Court's involvement,' and without need to resort to obtaining a formal affidavit to support all preliminary assertions of the deliberative process privilege. As to those documents about which the parties are unable to agree, however, if the Government wishes to continue (successfully) to assert that the deliberative process privilege protects them from discovery, the government should carefully support that assertion with an affidavit from an agency official at that time.").

Nevertheless, in this particular case, the Court need not reach the issue of when the Government is required to execute formal affidavits asserting deliberative process privilege in this case because the affidavits governing the Government's assertion of deliberative process privilege in this case are clearly timely. Mr. Friedman executed his affidavit on April 10, 2006, and Mr. Milner executed his affidavit on March 31, 2006. Dairyland did not serve its production

requests in this case until October 10, 2006. A. 134. The Government could not have made an assertion of privilege in this case prior to the service of those document production requests.[9] See RCFC 26(b)(5) and 34 (claims of privilege to be made in response to requests for "discoverable information.").

Dairyland also asserts that the Court should reject the assertion of deliberative process based upon Dairyland's wholly unsupported contention that Government counsel asserted deliberative process. Pl. Mtn. at 10. The affidavits directly belie this contention. As Mr. Milner states, he spent ten hours over the course of three days reviewing the documents covered by his affidavit. Mr. Friedman similarly attests that he once again reviewed the documents at issue and determined to reassert deliberative process over them. There is no evidence to support Dairyland's accusations that Government counsel, not the affiants themselves, determined that the assertion of deliberative process privilege was necessary and appropriate. Government employees are presumed to act in good faith in performing their duties, see Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002), and there is no evidence in the record here of any bad faith by the Government in invoking these privileges.

[9] Dairyland contends, as it has with previous filings, that the Government has "never produced any privilege log to Dairyland and . . . has not produced a single document in response to Dairyland's document requests." Pl. Mtn. at 1. While the Government disagrees with Dairyland's contention because Dairyland's counsel has been provided access to the Government's production website, this contention belies Dairyland's position that the Government's affidavits asserting deliberative process privilege could be untimely.

## II. DAIRYLAND HAS NOT SHOWN A COMPELLING NEED FOR THE DOCUMENTS AT ISSUE

### A. Dairyland Has Not Made Its Own Showing For The Documents The Court Ordered The Government To Produce In *Pacific Gas*

As an alternative to its attempt to show that DOE has not met the procedural requirements for asserting the deliberative process privilege, Dairyland also moves to compel the production of several documents based upon a purported showing of "compelling need." Specifically, Dairyland moves to compel the production of the 128 documents that Judge Hewitt ordered produced in Pacific Gas. Pacific Gas, 71 Fed. Cl. at 216; Pacific Gas, No. 04-74C & -75C, slip op. at 6-7 (Fed. Cl. May 14, 2006). In addition, Dairyland moves to compel the production of an additional 55 documents for which Judge Hewitt found that PG&E did not have a "compelling need." Id. Dairyland has not established that it has a compelling need for any of these documents, and the Government's assertion of deliberative process should preclude the production of these documents to Dairyland.[10]

The Government recognizes the deliberative process privilege is not absolute. Marriott Int'l, 437 F.3d at 1307 (citing In re Sealed Case, 121 F.3d at 737) ("[A] showing of compelling need can overcome the qualified deliberative process privilege.") (emphasis added); Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 853 n.18 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996); United States v. Electro-Voice, Inc., 879 F. Supp. 919, 923 (N.D. Ind. 1995). After concluding that the privilege is properly invoked, the Court must balance the public

[10] This aspect of Dairyland's motion to compel does not appear to concern the three documents covered by Mr. Friedman's affidavit (Ref. Nos. 306, 308 and 309). The Court did not order the production of these documents in Pacific Gas, and they are not among the additional 55 documents that Dairyland has identified in its motion to compel.

interest in non-disclosure with the plaintiff's individual need for the information as evidence. Redland Soccer Club, Inc., 55 F.3d at 854; Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 791 (D.C. Cir. 1971); Carl Zeiss v. Carl Zeiss, 40 F.R.D. 318, 327 (D.D.C. 1966); Scott v. PPG Industries, Inc., 142 F.R.D. 291, 294 (N.D.W. Va. 1992). The factors to be weighed include 1) the degree to which the proffered evidence is relevant,[11] 2) the extent to which it may be cumulative, and 3) the opportunity of the party seeking disclosure to prove the particular facts by other means. United States v. AT&T, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981) (citing United States v. IBM, 20 F.R. Serv. 2d 1082, 1089-91 (S.D.N.Y. 1975)); see Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996); In re Franklin National Bank Securities Litigation, 478 F. Supp. 577, 583 (E.D.N.Y. 1979). To compel disclosure, the claimant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." Carl Zeiss, 40 F.R.D. at 328-29. The Court, in balancing these interests, may also need to conduct an ex parte review of the documents at issue. Marriot Int'l, 437 F.3d at 1307 ("a trial court may conduct *in camera* review of documents under this qualified branch of the executive privilege doctrine").[12] Dairyland cannot make a showing

---

[11] A requesting party cannot, as a matter of law, demonstrate "need" in the absence of relevance. United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (internal memoranda containing unpublished views of agency staff regarding legal issues are not relevant to court's interpretation of the law).

[12] Dairyland has failed to make the necessary showing of "compelling need" sufficient to overcome the Government's proper assertion of deliberative process privilege. However, prior to the Court ordering the production of any of these documents to Dairyland, the Government asks that the Court undertake the same in camera review that the Court performed in Pacific Gas so that it may accurately assess and weigh the harm to the Government from the disclosure of any of these documents against Dairyland's need for these documents. See Marriot Int'l, 437 F.3d at 1307; Pacific Gas, No. 04-74C & -75C, slip op. at 4-5 (May 14, 2006).

of "compelling need" to overcome DOE's right to keep these documents confidential. The documents that Dairyland seeks have little or no relevance to the issues to be decided by the Court. Moreover, the Government has already produced hundreds of other documents that do not contain privileged information on these topics which should provide Dairyland all the information that it could need.

Dairyland seeks the production of 128 documents that Judge Hewitt ordered produced to PG&E, based solely upon Judge Hewitt's determination regarding PG&E's need for those documents.[13] As is clear from Mr. Milner's declaration, these documents concern a variety of subjects, many of which are wholly irrelevant to the Court's determination of DOE's obligations to Dairyland beginning January 31, 1998. Contrary to Dairyland's assertion, Pl. Mtn. at 17-18, these documents do not all concern "spent fuel acceptance rates." For example, Dairyland seeks production of the documents covered by paragraphs 13 and 14 of Mr. Milner's declaration, which concern DOE's evaluation of interim storage. DOE did not pursue interim storage and the consideration of this possibility cannot inform the Court regarding what DOE's obligations were to Dairyland. Similarly, Dairyland seeks documents regarding portions of DOE's license application to the NRC for the repository. A. 52, 54 (Milner Aff. ¶¶ 32 and 35). Dairyland has failed to explain how repository design documents could be relevant to its case. In addition, Dairyland seeks documents generated in the process of preparing a budget submission and responding to a congressional inquiry, A. 61, 89 (Milner Aff. ¶¶ 43 and 77), which, again, are not relevant to Dairyland's claims.

---

[13] As shown on the attached "Table of Challenges," the Court in Pacific Gas ordered the production of 128 documents described in the following paragraphs of Mr. Milner's affidavit: 13, 14, 32, 35, 43, 46, 50-71, and 77. A. 1-17.

The documents that reference possible acceptance rates, which Judge Hewitt ordered the Government to produce in Pacific Gas, are those documents referenced in paragraphs 50-71 of Mr. Milner's declaration. The documents described in these paragraphs all relate to an effort undertaken by OCRWM at the request and direction of then-Under Secretary Card to develop a "business case" for the Yucca Mountain repository to support future budget requests by DOE for the efforts of OCRWM. A. 66 (Milner Aff. at 49). As Mr. Milner further explains in his declaration, this effort "focused upon two goals: one, to be able to accelerate the rate of waste acceptance once repository operations began; and, two, to reduce overall program costs." Id. Finally, as Mr. Milner attests, "all of this analysis did not produce any viable courses of action to meet the Under Secretary's objectives and no changes in program direction were implemented as a result." Id.

Contrary to Dairyland's contention (and the Court's findings in Pacific Gas), these documents do not relate to the rates of acceptance that DOE would have used if it had been able to begin acceptance in 1998. By definition, these documents cannot inform such an inquiry because they were all produced more than three years after DOE was obligated to begin acceptance. Accordingly, these documents cannot be relevant and cannot inform the Court as to DOE's obligation to Dairyland and the other utilities beginning January 31, 1998.

The Court in Pacific Gas also ordered the Government to produce one document regarding the spent fuel storage costs (Ref. No. 123). As described in Mr. Milner's affidavit, the document contains information regarding "utilities' estimates of at-reactor storage costs," presumably reported to DOE or gathered from third-party sources. A. 63-64 (Milner Aff. ¶ 46) (emphasis added). This document does not contain DOE's estimates regarding at-reactor storage

costs. Moreover, it is Dairyland's burden to establish its costs with regard to spent fuel storage. Dairyland cannot have an "evidentiary need" for this document because it cannot use this document, regarding utility-reported costs, to carry this burden.

Rather than making its own showing of "compelling need" for these documents, Dairyland simply asserts, without support, that "Dairyland's 'evidentiary need' for the rate of acceptance documents the Court ordered produced in PG&E is identical to PG&E's need for them." Pl. Mtn. at 18. To the extent that the Court allows Dairyland to rely upon PG&E's purported showing of "compelling need," the Court should also consider the fact that PG&E listed only 30 of these 128 documents on its exhibit list, but then did not seek the admission of any of them into evidence at trial. Further, although PG&E was allowed to conduct an additional two-hour deposition of Mr. David Zabransky, contracting officer, regarding these documents, PG&E elicited no testimony from Mr. Zabransky or any other witness regarding these documents at trial. PG&E's purported "evidentiary need" for these documents is belied by PG&E's conduct at trial and cannot be the sole basis for Dairyland's showing of compelling need.

### B. Dairyland Has Not Made A Showing Of Compelling Need For The Documents That The Court Did Not Order The Government To Produce In *Pacific Gas*

Dairyland also seeks to compel the production of 55 documents that the Court did not order the Government to produce in Pacific Gas. In seeking these documents, Dairyland asks that the Court "revisit Judge Hewitt's ultimate rulings as to a few categories of documents where her assessment of plaintiff's evidentiary need version the [G]overnment's confidentiality interests is simply wrong." Pl. Mtn. at 19.

Two of the documents that Dairyland seeks are analyses performed by Mr. Zabransky, in response to a request by then-Undersecretary Card, regarding possible contract modifications that could be undertaken if DOE decided to modify the Standard Contract. Pl. Mtn. at 19; A. 54-55 (Milner Aff. ¶ 36 (Ref. Nos. 367 and 369)). As Mr. Milner states in his declaration, these documents concern possible modifications that DOE has not decided to undertake. As Judge Hewitt noted, these documents are "the type of documents that the deliberative process privilege is designed to protect." Pacific Gas, 71 Fed. Cl. at 212. Dairyland states that it needs these documents to identify the contracting officer's "interpretation and understanding of the current contract terms and perceived deficiencies in those terms." Pl. Mtn. at 20. However, Mr. Zabransky has been deposed on numerous occasions and questioned about his understanding of the current contract terms. Dairyland obviously has its own Standard Contract and can question Mr. Zabransky about his understanding of its terms in his future deposition. Accordingly, these documents are not the only source of this information, and Dairyland cannot demonstrate a "compelling need" for them on this basis. Dairyland also casts aspersions upon the Government's assertion of deliberative process, claiming that it is somehow part of the Government's effort to "conceal DOE's own understanding." DOE's understanding of relevant terms of the Standard Contract has been extensively litigated already in the SNF cases pending before the Court, and thousands of pages relevant to DOE's understanding of the terms of the Standard Contract have been produced. There is no attempt by the Government to "conceal" any understandings.

Dairyland also seeks production of five documents related to the issuance of the 2004 Annual Capacity Report/Acceptance Priority Ranking and the re-institution of the delivery

commitment schedule process. Pl. Mtn. at 20-22; A. 49 (Milner Aff. ¶ 29 (Ref. Nos. 368, 387-390)). As described in Mr. Milner's affidavit, these documents are drafts of memoranda to the Secretary and a letter to Standard Contract holders regarding the issuance of the 2004 ACR/APR and the resumption of the delivery commitment schedule process. Id. As Dairyland acknowledges, the Government has produced documents related to the issuance of the 2004 ACR/APR and the resumption and subsequent suspension of the delivery commitment schedule process. Pl. Mtn. at 21. Further, as Dairyland acknowledges, Messrs. Pollog and Zabransky have been questioned about their efforts related to these activities in depositions and, no doubt, will be asked again by counsel for Dairyland when again deposed. Pl. Mtn. at 22. Dairyland does not explain why, in light of the existing record of testimony regarding these issues and the extensive document production, it also needs these five additional documents. Instead, Dairyland criticizes Mr. Milner's description of the potential harm that may result from the release of these documents. However, that criticism does not establish a "compelling need" for these documents. Accordingly, the Court should find that Dairyland has not established its need for these documents sufficient to overcome the Government's assertion of deliberative process. See Pacific Gas, No. 04-74C & -75C, slip op. at 4-5 (Fed. Cl. May 14, 2006) ("the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining the confidentiality. The court agrees with defendant that 'these documents are not relevant to this litigation.'")

Finally, Dairyland seeks to compel the production of an additional 48 documents that Dairyland asserts concern the "rate of acceptance." Dairyland does not provide a list of these documents in its motion, but counsel for Dairyland directed counsel for the Government to

footnote four of PG&E's May 2006 motion to compel for the list of these documents. A. 104 (excerpt of PG&E's May 2006 motion to compel).[14] As shown by a review of the paragraphs of Mr. Milner's affidavit that cover these documents, the documents cover a wide variety of issues, many of which are not relevant to the issues before the Court, and do not, contrary to Dairyland's contention, all relate to the possible rate of spent fuel acceptance in the future. For example, Ref. Nos. 136, 137, 141 and 263 are all covered by paragraph 31 of Mr. Milner's declaration. A. 51-52. As Mr. Milner explains in this paragraph, these documents are draft presentations regarding repository design options that were considered but are not being pursued. As Mr. Milner further explains, "every design decision is potentially subject to extensive questioning by Congress and others regarding its basis and merits." A. 51 (Milner Aff. at 34). Because of this scrutiny and the need to obtain the best advice regarding possible repository designs from individuals, Mr. Milner asserted deliberative process over these documents. Dairyland has provided no showing of a "compelling need" for the production of these documents over this proper assertion of deliberative process.

Contrary to Dairyland's contention that the Court had no basis for distinguishing these documents from the other "acceptance rate" documents that the Court ordered produced, Pl. Mtn. at 25, the basis for the Court's distinction is set forth in the Court's opinion. The Court examined these documents that PG&E had identified as "potentially" helpful and determined that PG&E's evidentiary need did not outweigh the Government's interest in maintaining their confidentiality. Pacific Gas, No. 04-74C & -75C, slip op. at 4 (Fed. Cl. May 14, 2006). Without

[14] These documents, by reference number, are: 115, 125, 129, 136, 137, 141, 197-201, 204, 206, 209-11, 217-19, 222, 225, 227-32, 235, 237, 257-61, 263, 271, 273, 291, 295, 303, 315, 317-18, 320-21, 323-24, 331, 338, 340, 382, and 383. A. 104.

an explanation from Dairyland as to why it needs each of these documents, the Court should find that Dairyland has not established a basis for overcoming the Government's proper assertion of deliberative process privilege over these documents.

### C. If The Court Determines That Dairyland Has Shown A Compelling Need For Any Of The Documents At Issue In Its Motion, The Court Should Order Those Documents Produced For Use In This Case Only

If the Court determines that Dairyland has shown a compelling need for any of these documents sufficient to overcome the Government's assertion of deliberative process, the Government requests that the Court order the production of these documents for use in Dairyland's case only. In an astonishing reversal of its previous positions regarding the independence of its case from the other spent nuclear fuel cases pending before the Court, Dairyland asks that the Court order the production of all of the documents for use in all of the spent fuel cases. However, to the extent that the Court orders the production of any of these documents, it will be as a result of a determination that Dairyland has shown a compelling need for them, not any other plaintiff. Therefore, the Court should properly limit the production of these documents to use in Dairyland's case only.

Dairyland has sought to challenge the Government's assertion of deliberative process privilege, although the Government's assertions of deliberative process over these same documents have been upheld on three separate occasions. Yankee Atomic, 54 Fed. Cl. at 311-12; Yankee Atomic, No. 98-126C, slip op. (Fed. Cl. Aug. 25, 2003); Pacific Gas, 71 Fed. Cl. at 210. In Pacific Gas, Judge Hewitt considered PG&E's challenges to the Government's assertion of deliberative process, although the Government's assertions of deliberative process had been previously upheld on two previous occasions, because PG&E had not been a party to the

coordinated discovery proceedings. Pacific Gas, 70 Fed. Cl. at 131 n.3. However, Judge Hewitt ordered that the documents produced as a result of that challenge would only be available for use by counsel for PG&E in PG&E's case. Morever, as discussed above, Dairyland may overcome the Government's proper assertion of deliberative process privilege with a showing of "compelling need" for the documents. However, that showing would be tied to Dairyland's need to have the documents for its case, not the need of another plaintiff in the spent nuclear fuel cases. Also, in making a determination that Dairyland has a "compelling need" for these documents, the Court will have to find that Dairyland's need for the documents outweighs the potential harm from disclosure. The "harm from disclosure" can be limited by restricting the production of the documents to Dairyland's case only. There is no basis for the Court to order the production of the documents to all of the spent nuclear fuel plaintiffs.

Dairyland's attempt to champion the cause of other spent nuclear fuel plaintiffs is plainly inconsistent with its prior positions regarding its ability to conduct additional discovery, regardless of the existing record of discovery. The Court granted Dairyland's request that it be allowed to conduct additional depositions of Messrs. Kouts, Pollog, and Zabransky as well as a RCFC 30(b)(6) deposition, although these individuals have been deposed repeatedly in other SNF cases pending before the Court. Dairyland, over the Government's objection, obtained a protective order in this case that allows Dairyland to restrict use of "confidential material" to this case only. Protective Order, entered August 17, 2006, ¶ 6 ("Confidential Material shall be used by the receiving party solely for the purpose of conducting this litigation . . . .").

Finally, to order the release of these documents to all spent nuclear fuel plaintiffs, despite the Government's proper invocation of the privilege, would reward counsel's efforts to "judge

shop." Dairyland's motion to compel represents the fourth time that counsel for Dairyland has sought to challenge the Government's assertion of deliberative process privilege over the same documents in the SNF cases pending before the Court. If the Court orders the production of these documents as a result of Dairyland's motion, counsel for Dairyland will be rewarded for his efforts to present this challenge to four different judges on this Court – making the same arguments, each time trying to achieve a different result. In sum, Dairyland either should be bound by the previous determinations of this Court with regard to the assertion of deliberative process privilege or should be required to make a showing of its own "compelling need" and, if successful, be allowed to use the documents produced in its case only.

## III. DAIRYLAND'S CHALLENGE TO THE GOVERNMENT'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE IS WITHOUT MERIT

In addition to moving to compel the production of 269 documents over which the Government has asserted deliberative process privilege, Dairyland also seeks to challenge the Government's assertion of attorney-client privilege over ten of those documents. Pl. Mtn. at 26-27.[15] Dairyland's challenge focuses upon the description in the Government's privilege log in which the basis for the assertion of privilege is that these documents were "under legal review."

As an initial matter, Dairyland's challenge to this privilege claim should be deemed moot. With regard to each of the 10 documents at issue here, the Government invoked not only the attorney-client privilege, but also the attorney work product doctrine. Even if the Court were

[15] After conferring with counsel for Dairyland, the Government understands that the list of documents found on page 26 of Dairyland's motion is the complete list of documents that are subject to this challenge by Dairyland. Dairyland's limitation regarding GTCC documents removes ref. nos. 402 and 403 from this list. Accordingly, Dairyland seeks to compel the production of 10 documents on this basis.

to overrule the Government's claim of attorney-client privilege, the Government would still be entitled to rely upon its prior invocation of the work product doctrine and the absence of any challenge to that claim. Given that any consideration of Dairyland's challenge to the attorney-client privilege claims will be purely academic, since the Government will still be entitled to rely upon the work product doctrine regardless of the Court's views on the attorney-client privilege claim, the Court need not expand time and resources evaluating Dairyland's attorney-client privilege challenges.

To the extent that the Court evaluates Dairyland's attorney-client privilege claim, it should be denied. The attorney-client privilege attaches to communications made by a client, or a person seeking to be a client, to an attorney outside the presence of third parties for the purpose of securing legal advice or services. Cabot v. United States, 35 Fed. Cl. 442, 444 (1996). "While the Government may bear the burden of persuading the court that the communication at issue arose out of an actual attorney-client relationship," this "burden is satisfied if 'the overall tenor of the document indicates that it is a request for legal advice or services.'" First Height Bank, FSB v. United States, 46 Fed. Cl. 312, 315 (2000) (quoting In re Spalding Sports Worldwise, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000)). Further, a privilege log identifying the author, addressee, and date for a document and identifying the general character of the document is sufficient to satisfy this obligation. First Height, 46 Fed. Cl. at 315 ("[plaintiff's] assertion that the Government has not provided sufficient detail in its privilege logs to justify its attorney-client privilege claims is without merit"); see In re Sante Fe International Corp., 272 F.3d 705, 710 (5th Cir. 2001) ("[i]n complex litigation, compliance with Rule 26(b)(5) is 'usually accomplished by submission of a log identifying documents or other communications by date

and by the names of the author(s) and recipient(s), and describing their general subject matter . . . .'") (quoting Manual for Complex Litigation (Third) § 21.431 (1995) ).

We agree that the Government's existing privilege log, which Dairyland incorrectly claims has not been produced to it (Pl. Mtn. at 1) but a copy of which it obtained,[16] does not adequately describe the nature of the attorney-client communication contained in these documents. Had Dairyland (or any other SNF plaintiff) previously identified this deficiency to us before the filing of Dairyland's motion to compel, we could have corrected that error without any Court involvement. Now that we have been made aware of the error, we are amending our privilege log for these documents to indicate that a portion of each of these documents -- the redacted portion that has never previously been produced -- contains a description of the status of the spent nuclear fuel cases pending before the Court and reflects the analysis of that litigation by counsel for the Department of Energy. Further, we are revising the privilege log for these documents to indicate that the source of that privileged communication was the Office of the General Counsel, DOE.

We agree with Dairyland's contention that "passing a document before a lawyer's eyes does not make it privileged. Pl. Mtn. at 26. For that reason, the Government has produced

[16] In its motion, Dairyland claims that the Government has not provided it with a privilege log. See Pl. Mtn. at 1. This assertion is bizarre. As an attachment to its motion to compel, Dairyland attached a "table of challenges" that details the contents of a Government privilege log. Although Dairyland apparently believes that the privilege log at issue applies only to the Pacific Gas case, from which counsel for Dairyland apparently obtained the log, that log applies to all of the SNF cases. That log is available on the Government's production website. Further, in response to Dairyland's claim that the Government "has not produced a single document in response to Dairyland's document requests either," Pl. Mtn. at 1, Dairyland is well aware that the Government has made available to counsel for Dairyland over a million pages of documents on the Government's document production website. Dairyland's assertions to the contrary are wholly unfounded.

numerous documents that have been "reviewed" by counsel without any claim of privilege or redaction. For example, the Government routinely produces "concurrence sheets" that appear to accompany many documents that DOE generates On these concurrence sheets, counsel for DOE routinely "initials" the sheet indicating review. When that concurrence sheet is not accompanied by any legal advice or other communication, the Government has produced the document. However, as the Government's revised privilege log will explain, the nature of the attorney-client communication present in these documents is more than simply a "legal review" by counsel, and the Government has properly asserted an attorney-client privilege over it.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Dairyland's motion to compel the production of documents withheld under the deliberative process and attorney-client privileges. If the Court determines that Dairyland has demonstrated a "compelling need" for any of the documents at issue, the Government requests that the Court order the production of those documents for use in this case only.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 205230
Tele: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN LO RE
Senior Trial Counsel

PATRICK B. BRYAN
SONIA ORFIELD
MARIAN E. SULLIVAN
Trial Attorneys
Department of Justice

February 28, 2007

Attorneys for Defendant

# APPENDIX

INDEX TO THE APPENDIX

Document — Page

Table of Challenges, prepared by counsel for PG&E, modified by counsel for the Government to identify documents at issue in Dairyland's motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Declaration of Ronald L. Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management, executed March 31, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Declaration of Gregory H. Friedman, Inspector General, Department of Energy, executed April 10, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

Excerpt of Pacific Gas & Electric's Second Motion To Compel The Production Of Documents Withheld Under The Deliberative Process Privilege, filed May 11, 2006 . . . . . . . . . . . . . . . . 103

Department of Energy Delegation Order No. 00-002.00E To Under Secretary for Energy, Science, And Environment, dated November 23, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105

Memorandum and Amendment to Delegation Order No. 00-002.00 from Secretary of Energy to Under Secretary for Energy, Science, and Environment Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

Amendment to Redelegation Order No. 00-002.06 from Under Secretary of Energy, Science, and Environment to Director of OCRWM Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

Delegation of Authority from Director of OCRWM to Ronald Milner Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 121

Dairyland's First Request For the Production of Documents, served Oct. 10, 2006 . . . . . . . . . 122