No. 04-0074C
into which has been consolidated No 04-0075C
Judge Hewitt

Electronically filed on May 11, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PACIFIC GAS & ELECTRIC'S SECOND MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD UNDER THE "DELIBERATIVE PROCESS" PRIVILEGE

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 fax
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

ROBERT L. SHAPIRO
Greenberg Traurig, LLP

issue.[4] Subjects addressed by these still-withheld documents include, for example, "the pros and cons of various concepts relating to the operation and construction of a repository and their budgetary effect" (no. 229; *see* 225, 227), "group discussions regarding budgetary costs associated with an option for SNF acceptance at the repository" (no. 129), "drafts of a graphic presentation regarding repository design options" (no. 263), "the operation of the waste management system" (no. 331) and the like. These same words or concepts are used in the government's privilege log entries for a number of the documents that the Court ordered released. *See, e.g.,* Table of Challenges doc. nos. 114 ("[g]raphic presentation and slides from the presentation for a group discussion of options regarding the design and operation of a repository of [sic] Yucca Mountain and the effect of those options on SNF inventories"), 116 (similar), 126 (similar), 120 "[s]lides used in a presentation . . . regarding the costs of options for the design and operation of a repository at Yucca Mountain"), 121 (" e-mails and notes discussing the pros and cons of storage options for receipt of SNF at Yucca Mountain"). As such, each of the fifty-four additional still-withheld documents listed in footnote 4 also "could be helpful in determining the rate of acceptance the government would have used had it began to perform ..." 4/27/06 Order at 14 and 15.

---

[4] These documents, with some "example" descriptions from the government's privilege log and other commentary, are doc. nos. 115 (email re: "graphic presentation for group discussion of options regarding the design and operation of a repository at Yucca Mountain"), 125, 129, 136 ("graphic presentation regarding repository design options"), 137 ("[w]hite paper" re: "repository design options"), 141 (same subject as 136-37), 197-201, 204, 206, , 209-11, 217-19, 221-22, 225, 227-32, 235, 237, 257-61, 263, 271, 273, 291 & 295 (documents regarding "legislative proposals for OCRWM transportation and waste acceptance system), 303, 315, 317-18 (same subject as 319, which government released), 320-21 & 323-24 (also same subject as 319, which the government released), 331, 332 (same subject as 319), 338 & 340 (documents re: presentation on "OCRWM transportation and waste acceptance system"), 382 (documents "regarding the design of a repository"), 383 (same subject as 382).

DEPARTMENT OF ENERGY
DELEGATION ORDER NO. 00-002.00E
TO THE UNDER SECRETARY FOR ENERGY, SCIENCE, AND ENVIRONMENT

1. DELEGATION. Under the authority vested in me as Secretary of Energy and pursuant to section 642 of the Department of Energy Organization Act (Public Law 95-91, 42 U.S.C. 7252), I delegate to the Under Secretary for Energy, Science, and Environment authority to take the following actions:

1.1 Implement section 13 of the Federal Energy Administration Act of 1974 (15 U.S.C. 772), to collect, assemble, evaluate and analyze energy information and to exercise all information gathering authorities provided in section 13.

1.2 Implement section 11 of the Energy Supply and Environmental Coordination Act of 1974 (ESECA) (Pub. L. 93-319, 15 U.S.C. 796), to request, acquire and collect such energy information as the Under Secretary determines to be necessary to assist in the formulation of energy policy or to carry out the purposes of ESECA, and to exercise all energy information reporting authorities provided in section 11.

1.3 Initiate condemnation proceedings and execute declarations of taking, sign all correspondence and other documents in connection with such proceedings, and take all other necessary and appropriate actions to acquire, in connection with the Government's power of eminent domain, real or personal property or interests therein for the Department of Energy (Department or DOE). The authority to initiate condemnation proceedings and execute declarations of taking shall not be further delegated.

1.4 Under section 8 of the Federal Nonnuclear Energy Research and Development Act of 1974 (Public Law 93-577, 42 U.S.C. 5907) carry out functions relating to identification of opportunities to accelerate the commercial applications of new energy technologies.

1.5 Direct a head of field organization to curtail or suspend the operation of nuclear reactors, nuclear facilities or related activities when, in the opinion of the Under Secretary, continuing operations might result in an undue risk to the environment and/or to the safety and health of Departmental or contractor employees or to the public. This authority may not be redelegated.

1.6 Under 5 U.S.C. 4502, approve, on a nonexclusive basis, major Departmental honorary awards, except the Secretary's Award; approve cash awards in excess of those amounts authorized to be approved by Heads of Departmental Elements, except those of other Principals; and recommend to the Office of Personnel Management cash awards in excess of $10,000. This authority may not be redelegated.

1.7 Under 5 U.S.C. 3341, approve the detail of employees to assignments outside the Department.

1.8 Approve determinations preceding Program Opportunity Notices (PONs).

1.9 Under section 643 of the Department of Energy Organization Act (42 U.S.C. 7253), establish, alter, consolidate or discontinue such second tier or below organizational units or components within the Under Secretary's assigned programs and organizational elements as the Under Secretary may deem to be necessary or appropriate.

A. In exercising this authority, or as redelegated pursuant thereto, the Under Secretary will be limited by approved budgets, staffing level allocations, and Senior Executive Service and other executive resource position allocations. Organizational changes shall not be announced or implemented until appropriate union coordination and other pre-release clearances have been obtained.

B. This authority does not include approval of additional, deletion, or transfer of mission and functions of or between Departmental Headquarters or Field Elements, which authority is reserved to the Secretary.

C. The authority to alter or consolidate second tier or below organizational elements may be redelegated, in whole or in part consistent with the terms of the Department of Energy Organization Act, to assigned Heads of Departmental Headquarters and Field Elements and to an official or officials one level below the Head of the Departmental Headquarters or Field Element.

D. The authority to establish or discontinue organizational elements at the second tier or below may only be redelegated to the Head of the Departmental Headquarters or Field Element.

1.10 On a nonexclusive basis, assert the Federal Government's deliberative process privilege with respect to any Environmental Management matters arising under the Under Secretary's cognizance. This delegation is made to protect internal predecisional Department of Energy documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an agency official.

1.11 Under section 624 of the Department of Energy Organization Act (42 U.S.C. 7234) and in accordance with the Federal Advisory Committee Act (5 U.S.C. App. 2), nominate, appoint, renew the term of, and terminate the service of members of the Environmental Management Site Specific Advisory Board. Pursuant to 18 U.S.C. 208(b)(3), after consultation with the Department's

Designated Agency Ethics Official, issue conflict-of-interest waivers for special Government employees serving on a Federal Advisory Committee that is administratively supported by an organization that reports to the Under Secretary for Energy, Science, and Environment.

1.12 On matters pertaining to the Office of Civilian Radioactive Waste Management:

A. Sign all documents and take such other actions as may be necessary and appropriate for the submission for publication to the Federal Register of notices concerning actions undertaken to implement the authorities and functions provided in the Nuclear Waste Policy Act of 1982 (Public Law 97-425). The authority delegated does not include rulemaking authority.

B. Report and transmit, on a semi-annual basis, site characterization progress reports for the Yucca Mountain site in the State of Nevada to the Nuclear Regulatory Commission, the Governor and the legislature of the State of Nevada, and other interested parties including the United States Congress. The reports are required under section 113(b)(3) of the Nuclear Waste Policy Act of 1982, as amended (Public Law 97-425, as amended by Title V, Subtitle A, of Public Law 100-203). Any such report, which is issued by the Under Secretary pursuant to this Order, must be submitted for concurrence by the General Counsel and the Assistant Secretary for Congressional and Intergovernmental Affairs prior to its transmittal to the Nuclear Regulatory Commission, the Governor and the legislature of the State of Nevada, Congress, and other interested parties.

Each such report will be submitted to the Office of the Secretary at least one week prior to transmittal to the Nuclear Regulatory Commission, the Governor and the legislature of the State of Nevada.

C. Assert, on a non-exclusive basis, the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance.

1.13 Under section 91.b. of the Atomic Energy Act of 1954, as amended (42 U.S.C 2121), and National Security Decision Directive Number 282 (September 30, 1987) on matters related to the Office of Nuclear Energy, Science and Technology:

A. Authorize the transfer of special nuclear material to the Departments of the Army, Air Force, and Navy (Navy Facilities Engineering Command only) in such quantities and at such times as necessary for cores for new military reactors and for replacement cores for existing military reactors, and for miscellaneous purposes (other than use in atomic weapons) for which material, fabrication and new reactors the Congress shall have authorized funds.

B. Authorize the Departments of the Army, Air Force, and Navy to manufacture, produce or acquire utilization facilities, other than nuclear powered ships, for which Congress shall have authorized funds.

1.14 Under Title IV of Public Law 106-554 in reference to the American Museum of Science and Energy (Museum):

A. Accept and dispose of any gift, devise, or bequest of services or property, real or personal, valued at, or under $25,000, that is designated in a written document by the person making the gift, devise, or bequest as intended for the Museum and determine that such gift, devise, or bequest is suitable and beneficial for use by the Museum. The acceptance of any such gift, devise, or bequest must be concurred in by the Office of Chief Counsel, Oak Ridge Operations Office or the Office of the Assistant General Counsel for General Law. All donations of any gift, devise, or bequest of services or property, real or personal, valued above $25,000, will be approved by the Secretary of Energy.

B. Operate a retail outlet on the premises of the Museum for the purpose of selling or distributing items that are relevant to the contents of the Museum and are informative, educational and tasteful.

C. Collect reasonable fees where feasible and appropriate, for admission to the Museum and use of Museum facilities for special meetings and events.

D. Exhibit, perform, display and publish materials and information of, or relating to, the Museum in any media or place.

E. Approve guidelines for leasing space on the premises of the Museum and lease space on the premises of the Museum at reasonable rates and for uses consistent with such guidelines.

F. Recruit, train and accept the services of individuals or entities as volunteers for services or activities related to the Museum.

G. Use the proceeds from the aforementioned activities to pay the costs of the Museum.

1.15 In reference to Energy Efficiency and Renewable Energy, on a nonexclusive basis:

A. Under the National Energy Conservation Policy Act (NECPA) Public Law 95-619, as amended:

1. Make determinations pursuant to sections 216(d)(1) and (2).

2. Grant waivers pursuant to section 216(e).

3. Exercise authorities vested in me pursuant to Title III, Parts 1 and 2, except the authority to suspend grants pursuant to sections 395(e) and 400(d) of the Energy Policy and Conservation Act, as amended.

4. Exercise authorities vested in me pursuant to Title V, Part 3 of NECPA, amended by the Federal Energy Management Improvement Act of 1988 (42 U.S.C. sections 8251-8261) except the authority to report annually to the Congress as required by section 548(b) of NECPA.

B. Under section 656 of the Department of Energy Organization Act, periodically publish a list of certain Executive Agency Conservation Officers (Public Law 95-91, 42 U.S.C. 7266). This authority may only be redelegated to the Assistant Secretary for Energy Efficiency and Renewable Energy.

C. Under 10 C.F.R. 451.2, serve as the Deciding Official for the Renewable Energy Production Incentive Program, as described in 10 C.F.R. Part 451. This authority may not be delegated beyond the Manager of the Golden Field Office. In exercising the authority in this paragraph, the delegate(s) shall be governed by the rules and procedures established in 10 C.F.R. Part 451.

D. With the concurrence of the General Counsel, request from the General Services Administration (GSA) that the Secretary of Energy be authorized to intervene in proceedings relating to utility matters before any Federal or State regulatory agency or commission in order to represent the consumer interests of executive agencies of the Federal Government in such proceedings and to intervene in such proceedings pursuant to an authorization received from GSA, subject to the concurrence and with the assistance of the General Counsel.

1.16 In reference to the Great Plains project under section 19(g)(2) of the Federal Nonnuclear Energy Research and Development Act of 1974 (Public Law 93-577, as amended by Public Law 95-238)(the Federal Nonnuclear Act) and as provided by section 646(a) of the Department of Energy Organization Act (Public Law 95-91):

A. Carry out all functions of the Contracting Officer as that term is defined in the Asset Purchase Agreement dated as of October 7, 1988, and amended as of October 31, 1988, February 16, 1994, and December 21, 1998, between the United States of America, Dakota Gasification Company,

Dakota Coal Company and Basin Electric Power Cooperative, which was executed as part of the conveyance of the Department of Energy's interests in the Great Plains Coal Gasification Project in Beulah, North Dakota, to Dakota Gasification Company and Dakota Coal Company.

B. Undertake all actions that are necessary and proper, on behalf of the United States of America, acting by and through the Secretary of Energy, to administer all agreements and contracts entered into by the Department of Energy in connection with the conveyance of the Department's interests in the Great Plains project.

In exercising the authority delegated by this order, the delegate may act without regard to the provisions of the Federal Property and Administrative Services Act of 1949, as amended, except section 207 of that Act (40 U. S. C. 5488), or any other law, as specifically provided for by section 19(g)(2) of the Federal Nonnuclear Act, supra.

1.17 In reference to the Naval Petroleum Reserves:

A. Perform all functions vested in me by Subtitle B of the National Defense Authorization Act for Fiscal Year 1996 (Public Law 104-106) relating to the sale of Naval Petroleum Reserve Numbered 1, including the finalization of equity.

B. Perform the functions specified in 10 U.S.C. 7427 and 7428, and vested in me by the President of the United States in Executive Order No. 12929, in order to meet the goals and objectives of the Naval Petroleum Reserves.

C. Perform all functions vested in me by law (10 U.S.C. 7420-7439, including 10 U.S.C. 7420 note) relating to the administration of and jurisdiction over the Naval Petroleum Reserves, except for condemnation proceedings affecting such Reserves.

D. Perform all duties and responsibilities required by the Unit Plan Contract between the United States of America and Chevron U.S.A., Inc., numbered Nod-4219, dated June 19, 1944, as amended; the Amendatory and Supplemental Agreement, between the same parties, numbered Nod-8477, dated December 22, 1948, as amended; and the Agreement to Terminate the Unit Plan Contract, between the same parties, dated February 5, 1998.

E. Perform all duties and responsibilities relative to the disposition of the United States share of petroleum produced from the Naval Petroleum Reserves to or for the Department of Defense and the Strategic Petroleum Reserve pursuant to 10 U.S.C. 7430(k) and (l).

1.18 In reference to the regulation of imports and exports of natural gas:

A. Perform the functions vested in me by sections 301(b) and 402(f) of the Department of Energy Organization Act to regulate natural gas under section 3 of the Natural Gas Act, as amended by section 201 of the Energy Policy Act of 1992 (15 U.S.C. 717b):

1. Consistent with the authority delegated by this Order, the Under Secretary or a delegate may attach such terms and conditions to import and export authorizations as the Under Secretary or a delegate shall determine to be appropriate.

2. The authority delegated by this Order does not include the authority to approve the construction and operation of particular facilities, the site at which such facilities shall be located, and, with respect to natural gas that involves the construction of new domestic facilities, the place of entry for imports or exit for exports, except the Under Secretary or a delegate is authorized to disapprove the construction and operation of particular facilities, the site at which such facilities shall be located, and, with respect to natural gas that involves the construction of new domestic facilities, the place of entry for imports or exit for exports.

B. Establish and review priorities for the curtailment of natural gas pursuant to the Natural Gas Act (15 U.S.C. 717), sections 401, 402, and 403 of the Natural Gas Policy Act of 1978 (Public Law 95-621, 15 U.S.C. 3391-3393); and consult with the Deputy Secretary concerning energy emergency-related curtailment policy guidance, as necessary or appropriate.

1.19 In reference to fuel use under the Powerplant and Industrial Fuel Use Act (FUA), (Public Law 95-620, 42 U.S.C. 8301 et seq.) as amended:

A. Monitor compliance with the prohibition against the construction of new powerplants without the capability to use coal or another alternate fuel as a primary energy source, pursuant to section 201 of FUA; grant or deny exemptions from such prohibition, pursuant to sections 211 through 214 of FUA; issue prohibitions against the use of oil or natural gas to certifying existing electric powerplants under section 301 of FUA; grant or deny exemptions to certifying existing electric powerplants under sections 311 through 314 of FUA; and take such other actions as may be necessary or appropriate to perform any of the above functions pursuant to section 701 of FUA.

B. Issue notices of effectiveness, modification or rescission to coal conversion orders issued pursuant to section 2 of the Energy Supply and

Environmental Coordination Act of 1974 (Public Law 93-319, 15 U.S.C. 791 et seq.) as amended.

1.20 In reference to electric power regulations under the Federal Power Act ((FPA), 16 U.S.C. 791(a)-825(r)).

A. Implement section 206(d) of the FPA to investigate and determine, upon the Under Secretary's or a delegate's own motion or the request of any State commission, the cost of production or transmission of electric energy by means of facilities that are subject to the jurisdiction defined by section 201 of the FPA, as the Under Secretary or a delegate determines is necessary or appropriate to perform his functions.

B. Implement section 311 of the FPA to conduct investigations regarding the generation, transmission, distribution, and sale of electric energy, however produced, throughout the United States and its possessions, including the generation, transmission, distribution, and sale of electric energy by any agency, authority or instrumentality of the United States, or by any State or municipality or other political subdivision of a State, as the Under Secretary or a delegate determines is necessary or appropriate to perform his functions.

C. Implement section 307 of the FPA, to investigate any facts, conditions, or practices which the Under Secretary or a delegate may find necessary or proper in order to determine whether any person has violated or is about to violate any provision of the FPA or any rule, regulation, or order thereunder, or to aid in the enforcement of the provisions of the FPA or in prescribing rules or regulations thereunder, or in obtaining information to serve as a basis for recommending further legislation concerning the matters to which the FPA relates.

D. Regulate the export of electric energy to a foreign country, pursuant to the provisions of sections 202(e) and 202(f) of the FPA; and authorize the construction, operation, maintenance, or connection of facilities, at the borders of the United States, for the transmission of electric energy between the United States and a foreign country, pursuant to the provisions of Executive Order No. 10485, as amended by Executive Order No. 12038.

1.21 In reference to an Alaska natural gas pipeline:

A. Perform the functions and carry out the authority of the former Federal Inspector for the Alaska Natural Gas Transportation System transferred to me by section 3012(b) of the Energy Policy Act of 1992 (Public Law 102-486). In exercising the authority delegated by this subparagraph of this Order, the Under Secretary or a delegate shall be governed by the policies

set forth in the Alaska Natural Gas Transportation Act of 1976, other authority transferred to the Secretary of Energy from the Federal Inspector, the policies set forth in the Alaska Natural Gas Pipeline Act (Public Law 108-324), as amended by the Consolidated Appropriations Act, 2005 (Public Law 108-447), and, to the extent not inconsistent with such authorities and policies, by the rules and regulations of the Department of Energy and the policies and procedures prescribed by the Secretary or the Secretary's delegate(s).

B. Perform the functions and carry out the authority vested in me by the Alaska Natural Gas Pipeline Act (Public Law 108-324), as amended by the Consolidated Appropriations Act, 2005 (Public Law 108-447), including without limitation the functions and authority of the Federal Coordinator for Alaska Natural Gas Transportation Projects until the later of the appointment of the Federal Coordinator by the President or April 13, 2006 (Public Law 108-324, section 106(g)), and the authority to enter into agreements and issue Federal guarantee instruments with respect to loans and other debt obligations for an Alaska natural gas transportation project or system.

1.22 In reference to energy emergency preparedness:

A. Exercise the authority under section 101(c) of the Defense Production Act of 1950 (50 U.S.C. App. 2071(c)), delegated to the Secretary in Department of Commerce Defense Priorities and Allocations System (DPAS) Delegation 2, as amended, contained in the Department of Commerce DPAS regulation at 15 C.F.R. Part 700. The exercise of this authority is subject to the concurrence of the General Counsel.

B. Exercise the authority under section 209(b) of the Public Utility Regulatory Policies Act (16 U.S.C. 824a-2(b)) with respect to the reliability of the interstate electricity transmission system.

C. Carry out the responsibilities assigned to the Secretary in section 701(1) and (2) of Executive Order 12656 (Assignment of Emergency Preparedness Responsibilities) with respect to energy supply and distribution and related activities, except insofar as those responsibilities have been assigned to the Under Secretary for Nuclear Security.

D. Carry out the responsibilities assigned to the Secretary in Homeland Security Presidential Directive (HSPD)-5 (Management of Domestic Incidents) and the National Response Plan adopted pursuant to HSPD-5 with respect to energy supply and distribution and related activities, except insofar as those responsibilities have been assigned to the Under Secretary for Nuclear Security.

E. Carry out the responsibilities assigned to the Secretary in HSPD–7 (Critical Infrastructure Identification, Prioritization, and Protection) with respect to energy supply and distribution and related activities, except insofar as those responsibilities have been assigned to the Under Secretary for Nuclear Security.

F. Carry out the responsibilities assigned to the Secretary in HSPD-8 (National Preparedness) with respect to energy supply and distribution and related activities, except insofar as those responsibilities have been assigned to the Under Secretary for Nuclear Security.

1.23 Participate in any proceeding before the Federal Energy Regulatory Commission, pursuant to the provisions of section 405 of the Department of Energy Organization Act (42 U.S.C. 7175), or in any proceeding before any Federal or State agency or commission whenever such participation is related to the exercise of authority delegated to the Under Secretary or a delegate.

1.24 Formulate and establish enforcement policy, initiate and conduct investigations, conduct conferences, administrative hearings and public hearings, prepare required reports, issue orders, and take such other action as may be necessary or appropriate to perform any of the above functions.

1.25 For all programs assigned the Under Secretary for Energy, Science and Environment:

A. On a nonexclusive basis, authority to act as Senior Procurement Executive (as defined by 41 U.S.C. 414 and Executive Order No. 12931 "Federal Procurement Reform," October 13, 1994), with responsibility and authority to provide management direction of the procurement system; oversee development of procurement goals, guidelines, and innovation; measure and evaluate procurement office performance against stated goals; and enhance career development of the procurement workforce. This authority may only be redelegated to the Director, Office of Procurement and Assistance Management.

B. Enter into, approve, administer, modify, close-out, terminate, and take such other actions as may be necessary and appropriate with respect to any procurement transaction binding the Department of Energy to the obligation and expenditure of public funds (42 U.S.C. 7254, 7256).

C. Designate a task and delivery order ombudsman to perform the duties required by the Federal Acquisition Streamlining Act of 1994 (Title I, section 1054(a) of Public Law 103-355, 41 U.S.C. 253j(e)).

D. Designate a Senior Competition Advocate to perform the duties required by the Competition in Contracting Act of 1984, Public Law 98-369. This

authority may only be redelegated to the Director, Office of Procurement and Assistance Management (41 U.S.C. 418, 48 C.F.R. 6.501, 48 C.F.R. 906.501).

E. Designate Contracting Activity Competition Advocates to perform the duties required by the Competition in Contracting Act of 1984, Public Law 98-369. This authority may be redelegated no lower than the Heads of Contracting Activities. A Contracting Activity Competition Advocate shall be appointed for each installation that has been delegated contracting authority (41 U.S.C. 418, 48 C.F.R. 6.501, 48 C.F.R. 906.501).

F. Assign contracting functions and responsibilities to another agency, and create joint or combined offices with another agency to exercise acquisition functions, without further delegation (41 U.S.C. 261, 48 C.F.R. 1.601, 48 C.F.R. 901.601).

G. Approve extraordinary contractual actions, not to exceed $50,000 to facilitate the national defense, pursuant to Public Law 85-804 and Executive Order No. 10789, as amended (48 C.F.R. 50.201).

H. Sign applications for permits to procure tax-free spirits from a distilled spirits plant for nonbeverage purposes for use by the Department, as authorized by 26 U.S.C. 5271.

I. Exercise the authority under section 101(a) of the Defense Production Act of 1950 (50 U.S.C. App. 2071(a)) delegated to the Secretary in Department of Commerce (DOC) Defense Priorities and Allocations System (DPAS) Delegation 2, as amended, contained in the DOC DPAS regulation at 15 C.F.R. Part 700. The exercise of this authority is subject to the concurrence of the General Counsel.

J. Designate Heads of Contracting Activities, subject to consultation with the Director, Office of Procurement and Assistance Management and such thresholds and other limitations as may be appropriate (48 C.F.R. 1.601, 48 C.F.R. 901.601). This authority may only be redelegated to the Director, Office of Procurement and Assistance Management.

2. RESCISSION. Delegation Order 00-002.00D is hereby rescinded.

3. LIMITATION.

3.1 In exercising the authority delegated in this Order, a delegate shall be governed by the rules and regulations of the Department of Energy and the policies and procedures prescribed by the Secretary or delegate(s).

3.2 Nothing in this Order precludes the Secretary from exercising any of the authority delegated by this Order.

3.3 Nothing in this Order shall be construed to supersede or otherwise interfere with the authorities provided to the Administrator for Nuclear Security by law or by delegation. Furthermore, nothing herein constitutes authority to exercise authority, direction, or control of an employee of the National Nuclear Security Administration or its contractors.

3.4 Any amendments to this Order shall be in consultation with the Department of Energy General Counsel.

4. AUTHORITY TO REDELEGATE.

4.1 Except as expressly prohibited by law, regulation, or this Order, the Under Secretary for Energy, Science, and Environment may delegate this authority further, in whole or in part.

4.2 Copies of redelegations and any subsequent redelegations shall be provided to the Office of Management Communications, which manages the Secretarial Delegations of Authority system.

5. DURATION AND EFFECTIVE DATE.

5.1 All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are ratified and remain in force as if taken under this Order, unless or until rescinded, amended or superseded.

5.2 This Order is effective November 23, 2005.

Samuel W. Bodman
Samuel W. Bodman
Secretary of Energy

**Department of Energy**
Washington, DC 20585

ES#2002-009634

MAY 13 2002

MEMORANDUM FOR THE SECRETARY

THROUGH: UNDER SECRETARY

FROM: DR. MARGARET S. Y. CHU, DIRECTOR, OFFICE OF CIVILIAN RADIOACTIVE WASTE MANAGEMENT

SUBJECT: ACTION: Delegation of Authority to Assert the Federal Government's Deliberative Process Privilege To The Director, Office of Civilian Radioactive Waste Management

ISSUE: In 18 cases arising from the Department's delay in beginning to accept spent nuclear fuel by January 31, 1998, *Yankee Atomic Electric Company v. United States*, Civil Action No. 98-126C (Fed. Cl., Judge Sypolt, Coordinated Discovery Judge) and related cases, the Department has been required to produce numerous documents in discovery. Among those documents are numerous predecisional drafts and other candid internal recommendations previously prepared for the Secretary and other high ranking DOE officials. While those documents have been temporarily withheld from the plaintiffs by the litigating attorneys on the ground of privilege, in order to prevent their ultimate disclosure to the plaintiffs, the Department is required to formally assert the privilege in an affidavit executed by the "head of the agency" or his lawful delegate. The Department's response with respect to the privileged documents is due May 13, 2002 and, accordingly, the delegation is needed immediately.

DISCUSSION: The head of a large department cannot reasonably be expected devote his or her valuable time to examining internal documents for the assertion of privileges in litigation. Accordingly, the Secretary of Energy has, from time to time, delegated that responsibility to those officials in various departmental elements who are involved in the subject litigation such as the Assistant Secretary for Defense Programs (Delegation Order 0204-97 ) and the Administrator of the Economic Regulatory Administration (Delegation Order 0204-126). The spent

nuclear fuel litigation involves issues arising under the purview of the Director, Office of Civilian Radioactive Waste Management and, accordingly, authority for asserting the Department's deliberative privilege should be delegated to her or her delegate(s).

SENSITIVITIES: None.

POLICY IMPACT: None.

RECOMMENDATION: The Secretary should execute the attached Delegation of Authority to the Under Secretary for Energy, Science and Environment. The Under Secretary will then redelegate this delegation to the Director, Office of Civilian Radioactive Waste Management.

~~ATTACHMENTS~~

Approve: ____________ Disapproved: ____________ Date: May 13, 2002

Concurrence: General Counsel/Otis ____________ 5/13/02



06/14/2002 11:48 2025863274 GC-31, 32 PAGE 03/05

# AMENDMENT TO THE DEPARTMENT OF ENERGY DELEGATION ORDER NO. 00-002.00 TO THE UNDER SECRETARY FOR ENERGY, SCIENCE AND ENVIRONMENT

1. DELEGATION: Pursuant to authority vested in me as Secretary of Energy ("Secretary") and by Section 642 of the Department of Energy Organization Act, 42 U.S.C. § 7252, I delegate to the Under Secretary for Energy, Science and Environment on matters pertaining to the Office of Civilian Radioactive Waste Management to delegate to the Director, Office of Civilian Radioactive Waste the authority to assert the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance. This delegation is made to protect internal predecisional DOE documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an ageney official. The authority delegated to the Director by this Order may be further delegated, in whole or in part, as may be appropriate. In exercising the delegated authority, the delegate(s) shall be governed by the rules and regulations of DOE and the policies and procedures prescribed by the Secretary or his delegate(s).

   All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are hereby confirmed and ratified, and shall remain in full force and effect as is taken under this Order, unless or until rescinded, amended or superseded.

   Nothing in this Order shall preclude the Secretary from exercising any of the authority hereby delegated whenever, in his judgment, the exercise of such authority is necessary or appropriate to administer the functions vested in him.

   Therefore, Delegation Order No. 00-002.00 is hereby amended by adding a new paragraph 1.10.C. to read as follows:

   > "1.10.C. Assert on a nonexclusive basis, the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance."

2. EFFECTIVE DATE: This Order is effective May 13, 2002.

Spencer Abraham
Secretary of Energy



06/14/2002 11:48 2025863274 GC-31, 32 PAGE 04/06