AMENDMENT TO THE DEPARTMENT OF ENERGY
REDELEGATION ORDER NO. 00-002.06
TO THE DIRECTOR,
OFFICE OF CIVILIAN RADIOACTIVE WASTE MANAGEMENT

1. <u>DELEGATION</u>: Pursuant to section 202(b) of the Department of Energy Organization Act (Public Law 95-91, 42 U.S.C. 17132(b)) and Secretary of Energy Delegation Order 00-002.00 provided to the Under Secretary of Energy, Science and Environment to perform the function and duties related to Civilian Radioactive Waste Management, I delegate to the Director, Office of Civilian Radioactive Waste Management authority to assert the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance. This delegation is made to protect internal predecisional DOE documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an agency official. The authority delegated to the Director by this Order may be further delegated, in whole or in part, as may be appropriate. In exercising the delegated authority, the delegate(s) shall be governed by the rules and regulations of DOE and the policies and procedures prescribed by the Secretary or his delegate(s).

All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are hereby confirmed and ratified, and shall remain in full force and effect as is taken under this Order, unless or until rescinded, amended or superseded.

Nothing in this Order shall preclude the Secretary from exercising any of the authority hereby delegated whenever, in his judgment, the exercise of such authority is necessary or appropriate to administer the functions vested in him.

Therefore, Redelegation Order No. 00-002.06 is hereby amended by adding a new paragraph 1.4 to read as follows:

> "1.4 Assert on a nonexclusive basis, the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance."

2. <u>EFFECTIVE DATE</u>: This Order is effective May 13, , 2002.

Robert G. Card
Under Secretary for Energy,
Science and Environment



05/14/2002 11:48 2025863274 PAGE 05/06

**Department of Energy**
Washington, DC 20585

May 13, 2002

MEMORANDUM FOR RONALD A. MILNER, CHIEF OPERATING OFFICE

FROM: DR. MARGARET S. Y. CHU, DIRECTOR
OFFICE OF CIVILIAN RADIOACTIVE WASTE MANAGEMENT

SUBJECT: Delegation of Authority

Pursuant to Amendment to Redelegation Order No. 00-002.06, May 13, 2002, I hereby delegate to you the authority to assert the deliberative process privilege over documents within the cognizance of the Office of Civilian Radioactive Waste Management.



Printed with soy ink on recycled paper

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-0106C<br><br>(Chief Judge Damich) |

DAIRYLAND'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to RCFC 34, Dairyland Power Cooperative serves the following request for the production of documents:

I. DEFINITIONS

For the purposes of this request, the following definitions shall apply:

1. "CIVILIAN NUCLEAR POWER REACTOR" means a civilian nuclear power plant required to be licensed under section 103 or 104(b) of the Atomic Energy Act of 1954 [42 U.S.C. §§ 2133, 2134(b)].

2. "COMMUNICATIONS" shall mean and include any document containing transmission or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any discussion or information carried on or transmitted by means of letter, note, memorandum, interoffice correspondence, telephone, telex, telecopy, cable, electronic mail, or some other electronic or other medium.

3. "DELIVERY COMMITMENT SCHEDULE" refers to the forms described in Article V, Paragraph B of the Standard Contract and includes schedules that have been proposed

by the utility, schedules proposed by DOE if the utility's schedule is rejected, and any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

4. "DOCUMENT" shall be construed in the broadest sense permissible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001 as well as all electronically-stored information as that term is defined in Federal Rule of Civil Procedure 34 as amended on December 1, 2006, whether written, typed, printed, recorded, graphic, electronic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer or electronic storage devices, or any other medium in the possession, custody, or control of the United States. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, preliminary drafts of any document or any working papers related thereto, and different versions of a document.

5. "DAIRYLAND" shall mean the plaintiff, Dairyland Power Cooperative.

6. "DOE" shall mean the United States Department of Energy, including all agencies, offices, divisions or departments, officials, directors, officers, employees, agents, attorneys and other representatives, past or present, thereof.

7. "FAILED FUEL" shall mean failed or damaged spent nuclear fuel whether or not within the definition of "Failed Fuel" as set forth in Appendix E of the STANDARD CONTRACTS.

8. "FINAL DELIVERY SCHEDULE" refers to the forms described in Article V, Paragraph C of the Standard Contract and includes schedules that have been proposed by the

utility, schedules proposed by DOE if the utility's schedule is rejected, and any schedules developed pursuant to subsequent attempts to negotiate mutually acceptable schedules.

9. "HIGH LEVEL WASTE" shall mean irradiated reactor fuel, highly radioactive material resulting from the reprocessing of irradiated reactor fuel, and any other highly radioactive materials, liquids, gasses or hardware for which the Nuclear Regulatory Commission determines, consistent with existing law, requires permanent isolation, geologic or otherwise.

10. "IN THE POSSESSION, CUSTODY OR CONTROL OF THE UNITED STATES" includes materials in the possession, custody, or control of any current or former department, office, bureau, board, agency, federally-owned or governmental corporation, or other entity owned, operated or under the control of the United States, including but not limited to the DOE, and including but not limited to their agents, representatives, officers, directors, employees, officials, contractors and attorneys.

11. "ISFSI" shall mean an independent spent fuel storage installation, such as that used in the dry storage of spent nuclear fuel.

12. "LACBWR" shall mean the La Crosse Boiling Water Reactor.

13. "NRC" shall mean the Nuclear Regulatory Commission.

14. "NWPA" shall mean Nuclear Waste Policy Act as codified at 42 U.S.C. § 10101.

15. "PERSON" shall include any natural person, corporation (private or governmental), syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including the United States, and all their respective officials, directors, officers, employees, representatives, or agents, whether or not still alive or in existence.

16. "PFS" shall mean Private Fuel Storage, LLC and Mescalero Fuel Storage, LLC.

17. "RELATING TO" or "RELATED TO" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting and/or in any way pertaining to the subject specified.

18. "SPENT FUEL" shall mean spent nuclear fuel and/or high-level radioactive waste as those terms are defined in the Standard Contract.

19. "STANDARD CONTRACTS" shall mean the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in Part 961 of the Code of Federal Regulations, pursuant to which DOE is to take title to, transport, and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who execute the contract.

## II. INSTRUCTIONS

For the purposes of this request, the following instructions shall apply:

1. Each request herein constitutes a request that each document or communication referred to, or a true, complete, and legible copy thereof, be presented, during business hours and upon appropriate notice, to any attorney representing DAIRYLAND in the above captioned action, at the offices of Greenberg Traurig, LLP, 800 Connecticut Ave., N.W., Suite 500, Washington, D.C. 20006, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by Dairyland and the United States, for the purpose of inspection and copying in accordance with RCFC 34. Each request to produce a document includes documents which are in any way in the possession, custody, or control of the United States, or to which it has access.

2. Please produce all documents that have not been produced previously.

3. Documents should be produced and organized in conformance with RCFC 34, either as they are kept in the usual course of business identifying the source of each produced document or labeled to correspond to each request in the order the requests are presented.

4. These requests are continuing in nature so as to require you to submit supplementary responses if further documents are found to the fullest extent contemplated by RCFC 26(e).

5. If you decline to produce documents responsive to these requests for the production of documents due to a claim of privilege, produce so much of the document(s) as is not objected to, and set forth the following, with respect to each such document:

a. the date thereof;

b. the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

c. the name of the person or persons who prepared or signed the document;

d. the name and position of any intended and actual recipients of the document;

e. the nature of the privilege being claimed;

f. the number of the request(s) to which the document is responsive.

6. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any request on the basis that it is overbroad for any reason, you should respond to that request as narrowed in such a way as to render it not overbroad in your opinion, and state the extent to which you have narrowed that request for purposes of your response.

7. If there are no documents responsive to a request, so state.

8. To the extent you have previously produced documents responsive to any of these requests in another utility's spent fuel case or in the coordinated discovery proceedings for the spent fuel cases and these documents are available on the government's Spent Fuel Production website, please so state. You shall, however, search for and produce all responsive documents that have not been previously produced and/or made available, especially those documents created since January 1, 2004.

## III. DOCUMENT REQUESTS

In accordance with the above definitions and instructions, produce the following:

1. DOCUMENTS RELATED TO any federal legislative proposal for federal storage or disposal of SPENT FUEL from CIVILIAN NUCLEAR POWER REACTORS.

2. DOCUMENTS RELATED TO any efforts or proposals to amend the NWPA.

3. DOCUMENTS RELATED TO the development, proposal, or promulgation of amendments to any utility's contract for the disposal of SPENT FUEL.

4. DOCUMENTS RELATED TO the development of potential contracts between utilities and the government concerning the storage and/or disposal of spent nuclear fuel and high-level radioactive waste from nuclear reactors that are currently contemplated but not yet built.

5. DOCUMENTS RELATED TO any interpretation of DAIRYLAND'S SPENT FUEL disposal contract.

6. DOCUMENTS RELATED TO any interpretation of the STANDARD CONTRACT for the disposal of SPENT FUEL.

7. DOCUMENTS RELATED TO any request(s) by DAIRYLAND that priority be accorded to SPENT FUEL removed from LACBWR because the reactor was shut down permanently.

8. DOCUMENTS RELATED TO the according of priority to SPENT FUEL removed from a CIVILIAN NUCLEAR POWER REACTOR that has reached the end of its useful life or has been shut down permanently.

9. DOCUMENTS RELATED TO the exchange of approved DELIVERY COMMITMENT SCHEDULES among parties with contracts with DOE for the disposal of

SPENT FUEL.

10. DOCUMENTS RELATED TO any DOE or NRC meetings concerning the acceptance and/or disposal of DAIRYLAND'S SPENT FUEL or amending DAIRYLAND'S spent fuel disposal contract.

11. DOCUMENTS RELATED TO any Annual Capacity Reports or Acceptance Priority Reports prepared by DOE in connection with the SPENT FUEL disposal program, including but not limited to all DOCUMENTS used in the preparation of such reports.

12. DOCUMENTS RELATED TO research, plans or projections concerning the rate of DOE's acceptance of commercial SPENT FUEL in the civilian radioactive waste management system.

13. DOCUMENTS RELATED TO research, plans or projections concerning the order or sequence among utilities in which DOE will accept SPENT FUEL from utilities in the civilian radioactive waste management system, including but not limited to the order in which DOE will accept SPENT FUEL from utilities when DOE begins accepting SPENT FUEL from utilities, and any plans, projections or estimates by DOE of the order or sequence in which DOE would have accepted or will accept SPENT FUEL from utilities.

14. DOCUMENTS RELATED TO the development of an ISFSI at LACBWR.

15. DOCUMENTS RELATED TO the possible location of an ISFSI at LACBWR.

16. DOCUMENTS RELATED TO plans for the future removal of SPENT FUEL from LACBWR.

17. DOCUMENTS RELATED TO actual or potential past removals of SPENT FUEL from LACBWR.

18. DOCUMENTS RELATED TO the removal and disposal of LACBWR'S

Reactor Pressure Vessel.

19. DOCUMENTS RELATED TO DOE's projection that it will begin accepting SPENT FUEL from utilities starting in 2017.

20. DOCUMENTS RELATING TO the planned rate of acceptance based upon a 2017 start date for DOE's acceptance of SPENT FUEL from utilities.

21. DOCUMENTS RELATED TO analysis supporting or contradicting a 2017 start date for DOE's acceptance of SPENT FUEL from utilities.

22. COMMUNICATIONS between DOE and NRC concerning a 2017 start date for DOE's acceptance of SPENT FUEL from utilities.

23. COMMUNICATIONS between DOE and Congress concerning a 2017 start date for DOE's acceptance of SPENT FUEL from utilities.

24. DOCUMENTS RELATING TO any Mission Plan, program plan, or program reassessment (including any amendments thereto) for DOE's activities pursuant to the NWPA, including but not limited to all DOCUMENTS used to prepare such plans or reassessments.

25. DOCUMENTS RELATED TO facilities and/or processes for picking up or transporting SPENT FUEL from CIVILIAN NUCLEAR POWER REACTORS for storage or disposal by DOE.

26. COMMUNICATIONS between DAIRYLAND and DOE or NRC RELATED TO SPENT FUEL.

27. DOCUMENTS RELATED TO DOE's acceptance, ownership, storage or plans for disposal of HIGH LEVEL WASTE from CIVILIAN NUCLEAR POWER REACTORS other than those obligations arising under the STANDARD CONTRACTS.

28. DOCUMENTS RELATED TO the storage or disposal of commercial utility

SPENT FUEL at sites other than CIVILIAN NUCLEAR POWER REACTORS.

29. DOCUMENTS RELATED TO consideration, development, or plans for DOE acceptance of casks, canisters or similar devices and systems from CIVILIAN NUCLEAR POWER REACTORS as part of the civilian radioactive waste management system.

30. DOCUMENTS RELATED TO the storage, disposal, transportation, packaging, inspection, or pickup from utilities by DOE of FAILED FUEL.

31. DOCUMENTS RELATED TO DOE's consideration of whether to accept canisterized SPENT FUEL at Yucca Mountain.

32. DOCUMENTS RELATED TO DOE's proposal, development or implementation of transportation, aging and disposal ("TAD") canister system for the civilian radioactive waste management system.

33. DOCUMENTS RELATED TO DOE's consideration of whether or not to accept SPENT FUEL stored in dual-purpose casks or canisters or in any other non-TAD canister as part of the civilian radioactive waste management system.

34. DOCUMENTS RELATED TO the decommissioning of LACBWR, excluding any DOCUMENTS created by or submitted to the NRC by DAIRYLAND.

35. DOCUMENTS RELATED TO the date by which DOE will begin accepting SPENT FUEL from utilities, including but not limited to any milestone schedules, critical path activities or sensitivity analyses conducted by or on behalf of DOE.

36. Organizational charts and/or personnel rosters for the Office of Civilian Radioactive Waste Management from 2002 to the present.

37. DOCUMENTS RELATED TO any proposed DELIVERY COMMITMENT SCHEDULES or FINAL DELIVERY SCHEDULES submitted to DOE by DAIRYLAND.

38. DOCUMENTS RELATED TO DOE's decision to request new proposed DELIVERY COMMITMENT SCHEDULES from utilities in 2004.

39. DOCUMENTS RELATED TO DOE's decision to suspend the approval and submittal of proposed DELIVERY COMMITMENT SCHEDULES in 2004.

40. DOCUMENTS RELATED TO PFS, except any already publicly available DOCUMENTS RELATED TO PFS's license application with the NRC.

41. DOCUMENTS RELATED TO PFS's offer or proposal to allow government use of its temporary spent fuel storage site located in Skull Valley, Utah.

42. DOCUMENTS RELATED TO DOE's consideration of or planning for the relationship between the Global Nuclear Energy Partnership ("GNEP") and the civilian radioactive waste management system.

Respectfully submitted,

October 10, 2006

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 (Telephone
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Dairyland's First Request for the Production of Documents to be served by hand this 10th day of October 2006 on:

Russell Shultis
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530

Kevin E. Stern

Certificate of Filing

I hereby certify that on the 28th day of February 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan