IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME

Defendant, the United States, respectfully submits this reply to plaintiff's response to the Government's motion for an enlargement of time relating to defendant's obligation to comply with the Court's order relating to plaintiff's motion to compel and to the conclusion of fact discovery.

First, Dairyland's requests for the production of documents that we have never previously been ordered to produce are incredibly broad and expansive.[1] In response to the expanded requests that the Court has compelled us to produce, both the Department of Energy ("DOE") and the Nuclear Regulatory Commission ("NRC") have conducted wide-ranging searches involving literally hundreds and hundreds of individuals. To date, we have been provided with over 50,000 documents that those individuals have identified as responsive to these expansive production requests. Dairyland's insinuation that the scope of its requests and the volume of the material that, at least initially, has been identified as

[1] In other spent nuclear fuel cases in which counsel for Dairyland propounded similar requests, counsel either did not pursue the production of documents in response to our objections regarding the breadth of the production requests or was unsuccessful in obtaining a Court order requiring production in response to the breadth of his requests. We have never previously had to conduct searches responsive to the breadth of many of Dairyland's document production requests to which the Court has now ordered to respond.

responsive to it are matters that are easily handled and involve minimal time and processing obligations is simply unfounded. The number of documents that have been identified to us thus far in response to these expanded requests far exceed the total number of documents that Dairyland has produced in this litigation since it filed its complaint in 2004, and the resource allocation issues associated with the need to review for responsiveness and privilege and to process over 50,000 documents in an incredibly compacted period of time is daunting, to say the least.

Second, Dairyland has misrepresented our requests and the bases for those requests in our motion. Dairyland claims that the only work that we still need to do is to process the more than 50,000 documents that we have received as potentially responsive to those portions of Dairyland's document production requests to which the Court has compelled us to respond. Yet, in our motion, we discussed the fact that, as part of our written document production request responses, we are required pursuant to the Court's order to review the entirety of the Government's past document productions – over one million pages of documents – to categorize them as they relate to each of Dairyland's specific document production requests. As we explained in our motion, we simply cannot complete that incredibly time-consuming task by tomorrow, despite the fact that we have assigned numerous individuals to that effort who have been working upon it diligently. In addition, the scope of attorney and consultant time that we have been devoting to the completion of our extensive document review and processing effort has made it even more difficult to allocate resources both to the tasks of responding to Dairyland's written requests themselves and of conducting the extensive and incredibly time-consuming document reviews that we are having to undertake and to other tasks that we need to be performing both in this case and other spent nuclear fuel cases. Even if we were able to provide some kind of written response to

Dairyland's written discovery requests by March 9, 2007, we would have no time to verify the accuracy of those responses.

Third, Dairyland complains that the fact that the Government has "other spent fuel cases to defend" provides no excuse for the Government's inability to meet the Court's deadline for the Government's response to the Court's order upon Dairyland's motion to compel. Yet, we do not understand how the amount of work that has been imposed upon us in the spent nuclear fuel litigation, as a whole, is not a consideration in the appropriateness of our response to Dairyland's requests. Counsel for Dairyland has successfully ensured that he need work on only one spent nuclear fuel case, or related set of spent fuel cases, at one time, obtaining stays of proceedings in the other spent nuclear fuel cases in which he represents a plaintiff while he litigates the spent nuclear fuel case that he has chosen to pursue. As the Court may recall, one of the reasons that counsel for Dairyland identified the initiation date for initial disclosures and discovery in this case was to permit counsel to complete his briefing in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C (Fed. Cl.), before turning full attention to this case. The Government does not have this luxury. Although the extensive work to which we have had to devote our resources in other spent fuel cases did not delay the commencement of our search for documents in response to the Court's order upon Dairyland's motion to compel, it has certainly affected the scope of our ability to devote particular resources to this effort at various times, including during a trial in System Fuels, Inc. v. United States, No. 03-2623C (Fed. Cl.), in February 2007 that unexpectedly ran several days beyond its scheduled two-week trial period and will now resume in April 2007.

Fourth, Dairyland's assertion that we appear to have been "sitting on [our] hands" with regard to this search effort, see Dairyland Response at 3, is wholly unfounded. After receiving the Court's order, we immediately consulted with the affected agencies and undertook the wide-ranging and intensive search efforts that have been continuing since that time. The problem that we are facing is that the volume of documentation responsive to Dairyland's incredibly broad requests is overwhelming, particularly in the short period of time that we have to locate, review, and process the mass of material. We need additional time to attempt to complete these efforts.

Fifth, Dairyland asserts that we are "willfully misinterpreting Dairyland's discovery requests too broadly," which apparently, according to Dairyland, is the cause of the difficulties that we are experiencing. Dairyland Response at 3-4. Contrary to Dairyland's suggestion, we are interpreting Dairyland's requests as they are written, which we understand ourselves to be obligated to do unless the Court has restricted the literal terms of the requests. The Court generally overruled our objections based upon overbreadth. Accordingly, we are now having to comply with the literal terms of the bulk of Dairyland's requests. These requests are incredibly broad. Nevertheless, we are attempting to satisfy our obligations of full compliance. Dairyland's complaint about DOE's estimate regarding the number of documents responsive to the literal terms of Dairyland's request regarding documents "related to" the consideration of or planning for the relationship between the Global Nuclear Energy Partnership ("GNEP") and the civilian radioactive waste management "system" is unfounded, given the nature of Dairyland's request – as we explained to counsel for Dairyland, and as we have now been informed through our search efforts, an entire office at DOE is responsible for the GNEP, and huge volumes of documents contain fairly standardized representations regarding the relationship between the

GNEP and the civilian radioactive waste management "system" and the potential effect of the GNEP upon that "system." The volume of potentially responsive information is a result of the breadth of Dairyland's written request.

Sixth, Dairyland suggests that the fact that we may need additional time to process the more than 50,000 documents that we have recently been provided provides no basis for delaying the production of documents that we previously had agreed to produce. Dairyland Response, at 2. Yet, we believe that we have already fulfilled that obligation, having previously produced more than one million pages of documents to Dairyland and more recently producing other documents. Nevertheless, as part of our massive effort to conduct additional searches for documents in response to the Court's order compelling production, we have obtained an enormous amount of additional documentation, and, although we believe that the new documents should respond to the expanded requests to which we are now attempting to respond, we cannot yet say that not a single document in these new collections is somehow responsive to one of these other requests, given that we have not yet been able to review all of the new documents provided to us. We are undertaking that effort as part of our review of these new collections, but the effort to review over 50,000 documents is unbelievably time-consuming.

Seventh, Dairyland's suggestion that our prior representations regarding our past production of the documents most relevant to this litigation was inaccurate, given that we now are going to have to produce such a large volume of documents, is simply wrong. <u>See</u> Dairyland Response at 4. We firmly believe that the bulk of those documents most relevant to this litigation have previously been produced. Dairyland's current requests are unbelievably broad in scope, and we are now producing documents that, as far as we can tell, have no realistic effect upon this litigation or the issues in this case. In

response to motions to compel that counsel for Dairyland filed in other spent nuclear fuel cases seeking virtually the same information that Dairyland sought to compel here, the Court denied counsel for Dairyland's broad requests. Nevertheless, we are attempting to comply with this Court's order here, which widely expands the scope of documents that we have previously been required to gather and produce. The effort that is being required to comply with that order is substantial, and our enlargement request was intended to allow us to continue to attempt to comply with it fully.

Eighth, Dairyland suggests that any enlargement of time on discovery should be "one-sided," Dairyland Response at 4, given that Dairyland has not delayed discovery in any manner. Yet, as we noted in our motion for an enlargement, we are still awaiting the production of any documents responsive to our second requests for production of documents, which Dairyland promised in its February 12, 2007 written responses would be forthcoming. Dairyland's assertions of its own timeliness are far from accurate, and the volume of material that Dairyland has produced is far below the volume that the Government has previously produced and below the amount of documentation that it appears we will be producing in the near future. Further, given the expansive and broad scope of Dairyland's current discovery requests, we have to devote the bulk of our attention to attempting to review and process the huge volume of materials that have been and continue to be forwarded to us for production, limiting the amount of time that we have to prepare for depositions. In addition, we are awaiting this Court's decision upon the Government's own pending motion to compel, and, given that Dairyland agreed that we should defer our remaining depositions until after the Court decides that issue even if it pushes our depositions beyond the current deadline for the close of discovery, we see no basis upon which to require the Government to take its depositions without the Court's permission at some

point after the close of discovery. As for the particular depositions that we expect to take, although Dairyland has listed some definite depositions that we expect to take in its response, see Dairyland Response at 5, Dairyland's still-pending production in response to our second requests for production of documents, as well as documents that may be produced in response to our pending motion to compel, may cause us to identify additional depositions and the need to reopen others. Any extension of fact discovery should apply to both parties, not only to Dairyland.[2]

Even with the enlargement that we have requested, our ability to complete the review of and produce, following appropriate processing, more than 50,000 documents in the short time period at issue will be incredibly difficult. The volume of documentation that is at issue is overwhelming. Nevertheless, we are making every effort to process and produce these documents, and we are devoting substantial resources to the effort. For the reasons explained above and in our original motion for an enlargement of time, we respectfully request that the Court grant our motion for an enlargement of time.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

---

[2] Dairyland also asserts that the Court's decision to reschedule the trial in this case was based upon the Government's "failure to comply with its discovery obligations." Dairyland Response at 4. That assertion conflicts with the explanation that we were provided as to the reason for the rescheduling of the trial in this matter. Dairyland's assertion to the contrary is unfounded.

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by Harold D. Lester, Jr.
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SONIA M. ORFIELD
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

March 9, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 9th day of March 2007, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.