# In the United States Court of Federal Claims

NOT FOR PUBLICATION
No. 04-106 C
(Filed: March 27, 2007)

*************************************

**DAIRYLAND POWER COOPERATIVE,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

*************************************

## OPINION AND ORDER

On January 23, 2007, Defendant filed a "Motion to Compel Deposition Testimony and the Production of Documents Improperly Withheld Upon the Basis of Privilege or Upon Doctrinal Grounds." Briefing on the motion was completed on February 23, 2007, and on March 8, 2007, the Court ordered Plaintiff to provide 11 documents in question to the Court for in camera inspection. Plaintiff submitted the documents on March 9, 2007.

In its motion, Defendant complains that deponent Michael Brasel, upon advice of counsel, refused to state whether he had "any involvement in the preparation of Dairyland's damages claims," whether he "prepare[d] any analyses in connection with the damages claim," nor "what type of documents" he put together. Plaintiff's counsel had objected to these questions on the basis variously of "work product and privileged information" and "attorney client-work product."[1] During the deposition, Mr. Brasel stated that he did not personally speak with any attorneys for Plaintiff's nuclear utility at issue, the La Crosse Boiling Water Reactor (LACBWR).

Defendant argues that

> The identities of individuals with whom Mr. Brasel spoke concerning damages are not protected. Mr. Brasel's communications with Dairyland employees seeking information to support the damages claim is not protected. The information that he collected in connection with the damages claims is not

[1] It does not appear that Defendant's motion to compel is directed to matters as to which Plaintiff has actually claimed attorney-client privilege and Plaintiff's response does not argue the attorney-client privilege in opposition to the motion. The Court therefore does not consider that privilege to be at issue here.

protected.

Def.'s Mot. at 14.

The work product doctrine is codified in Rule 26(b)(3) of the Rules of the United States Court of Federal Claims (RCFC).[2] As thoroughly reviewed in *Pacific Gas & Electric Co. v. United States*, 69 Fed. Cl. 784 (2006), the work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal strategy 'with an eye toward litigation,' free from unnecessary intrusion by adversaries." *Id.* at 789 (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The doctrine generally shields a party's "strategies, legal theories, and mental impressions" from the otherwise liberal reach of federal discovery afforded under the FRCP, "thereby insuring that the litigator's opponent is unable to ride on the litigator's wits." *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 500 (N.D.Ill. 2001). The work product doctrine, however, is strictly construed and doubts and ambiguities are resolved in favor of liberal discovery. *Pacific Gas*, 69 Fed. Cl. at 790.

The doctrine protects not only documents and tangible things, but also intangible work product that reflects "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." *Id.* at 816. Underlying facts, however, do not necessarily constitute work product. *Id.* To qualify as work product in the first instance, such materials must have been prepared "in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, or agent) . . ." RCFC 26(b)(3).[3] Even if material is work product, it may be subject to discovery if the requesting party can demonstrate a "substantial need" for such materials in preparation of its case and the inability of obtaining the substantial equivalent of such material by other means "without undue hardship." A court ordering such production must nevertheless guard against the disclosure of mental impressions, conclusions, etc. *Id.*

The court substantially agrees with Defendant that Plaintiff's refusal to allow Mr. Brasel to testify at deposition about certain damages matters is unsustainable under the work product doctrine. The key difficulty is determining just how far Defendant should be allowed to go in its questioning. In *Pacific Gas*, the court held that invoking the work product doctrine to bar deposition questions regarding the preparation of plaintiff's damages would "stretch the doctrine beyond its recognized boundaries." 69 Fed. Cl. at 816. Nevertheless, allowing such questions without *any* limitations could enable one party to "reverse engineer" the other party's strategies,

---

[2] Because this Court's Rule and the comparable rule (also 26(b)(3)) of the Federal Rules of Civil Procedure are identical, interpretation of the work product doctrine by other federal courts may be looked to as persuasive authority.

[3] By the plain language of RCFC 26(b)(3), the protection of the work product doctrine extends to material prepared in anticipation of litigation by the party itself (or its representatives), not just to such material prepared by the party's attorney. Defendant, however, challenges the contention that "any work product performed by an employee of a party in connection with litigation would be protected, even if the employee had no information concerning the attorney's 'mental impressions and thoughts . . ..'" Def.'s Reply at 3. The Court finds no support for Defendant's narrow reading of the work product doctrine.

legal theories, and mental impressions.

Accordingly, the court ORDERS that Defendant may reopen the deposition to inquire about underlying factual matters (i.e., the basic journalist's questions of who, what, where, when, and how), including the facts of his involvement, if any, in the preparation of Plaintiff's damages claim, with whom he communicated, whether he prepared any analyses of such claim, and the nature of any documents he may have prepared. For example, Defendant *may* ask Mr. Brasel directly about the costs Dairyland incurred that Plaintiff attributes to the Government's breach,[4] but may not inquire further than stated above, however, into the details of Mr. Brasel's personal "efforts to tally up its costs due to the government's breach," as Plaintiff characterizes the matter in its response brief. Pl.'s Response at 4. Plaintiff makes a fair point that "[t]his case is not about Dairyland's efforts to compile and tabulate its damages. This case is about those damages." *Id.* at 9. The details of Mr. Brasel's particular work with respect to "tally[ing]" costs qualifies as work product because it tends to reflect the mental impressions and conclusions of a party or its representative concerning the litigation. Such "how" and "why" questions *in this context* are unnecessarily intrusive. Furthermore, Defendant does not have a substantial need for this level of detail about Mr. Brasel's activities because it will likely be able to question Plaintiff's expert(s) on the calculation, reasonableness, and foreseeability of damages in deposition after the receipt of Plaintiff's expert(s)' report(s).

While Plaintiff argues that a reopening of Mr. Brasel's deposition would be a "wast[e] of time and effort," Pl.'s Response at 5, the Court does not concur. The underlying facts about which Defendant sought to question Mr. Brasel fall within the liberal boundaries authorized under federal discovery rules and precedent.

In addition to its request to reopen the deposition, Defendant seeks to compel Plaintiff to produce eight documents identified in Plaintiff's privilege log as work product and three documents identified per Bates numbers PLAC00689367, PDPC0021072, and PLAC0052691-PLAC0052694.

Privilege Log documents 241 and 252 shall be produced by Plaintiff. Although these documents appear to qualify as work product, in view of Mr. Brasel's averment at deposition that he had not spoken with or had any correspondence with Dairyland personnel concerning Dairyland's damages claim outside the presence of counsel, Defendant has demonstrated a sufficient need for production for purposes of impeachment or to rebut Mr. Brasel's deposition response. Plaintiff shall produce document 241 with two exceptions: the referenced attachment need not be produced and the final two lines on the first page of the document may be redacted. Plaintiff shall produce document 252, but may redact the text following the first sentence in the text field of the 06/01/2004 communication therein.

---

[4] Defendant argues that "[t]o the extent that Dairyland employees made determinations that costs resulted or did not result from DOE's partial breach, we should be allowed to inquire into those determinations." Def.'s Reply at 6. Defendant is partially on track: it should focus on the costs that Plaintiff claims and may question how Defendant's partial breach allegedly caused those costs or constituent elements of such costs (but shall not question costs *not* claimed or how Mr. Brasel may have compiled the costs claimed).

Privilege Log documents 246, 249, 250, 251, 253, and 256 are work product and Defendant has not demonstrated a substantial need for these documents.

The document identified per Bates number PLAC0068937 is redundant and need not be produced except per the Court's instruction regarding Privilege Log document 252.

The document identified per Bates number PDPC0021072 contains one line of work product information. That one-sentence line, in the text of the document which follows the subheading, "C. Damages claim against DOE," shall therefore be redacted and the document as redacted shall then be produced by Plaintiff.

The document identified per Bates numbers PLAC0052691-PLAC0052694 contains work product information. That information shall be redacted consistent with the redacted form of the document submitted for in camera review, with the exception that the text on page PLAC0052694 that reads "Damage estimate reviewed - Mike Brasel" shall not be redacted. The document shall then be produced by Plaintiff.

The documents ordered to be produced shall be produced by Plaintiff to Defendant on or before April 3, 2007.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge