IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: April 2, 2007

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-106C<br><br>(Chief Judge Damich) |

DAIRYLAND'S MOTION TO ENFORCE
FEBRUARY 5, 2007 ORDER AND FOR SANCTIONS

Pursuant to RCFC 37(b), Dairyland respectfully moves to compel the government's compliance with the Court's February 5, 2007 Order ("February 5 Order") by providing proper responses to Dairyland's document requests and complete answers to Dairyland's contention interrogatories (nos. 5, 9, 13, 14, 15, 16 and 17) by a date certain. Dairyland also requests that the Court sanction the government for its willful lack of compliance with the February 5 Order.

## INTRODUCTION

It has now been almost six months since Dairyland served its First Request for Production of Documents and First Set of Interrogatories on the government, and it has been almost two months since the Court granted Dairyland's motion to compel discovery responses, yet the government – after obtaining multiple extensions of time – still is not in compliance with its discovery obligations and, more importantly, not in compliance with the Court's February 5 Order. With regard to Dairyland's document requests, the

Court ordered the government to "at least identify with *reasonable particularity* those documents it deems responsive to Plaintiff's specific requests" to the extent that the government has previously produced such documents. February 5 Order at 2 (emphasis added). But, with a few exceptions, the government's Responses to Plaintiff's First Request for Production of Documents as Amended in Response to the Court's February 5, 2007 Order ("Amended Document Response"), served on March 23, 2007, does nothing of the kind. Instead of identifying previously produced documents that it deems responsive to Dairyland's requests, the government has, for 33 of Dairyland's 42 document requests, identified previously produced documents that are "*potentially* responsive" to these requests. Even more egregious, the government has not actually identified these "potentially responsive" documents with "reasonable particularity," but has instead only identified multiple "containers" of documents previously posted on its document production website that *may* contain documents responsive to each request. *See* Amended Document Response (Exhibit 1), Attachment ("Att.") 1. Thus, the government's Amended Document Response is not in compliance with the Court's February 5 Order; the vast majority of its amended responses provide only a smaller haystack through which Dairyland must still sift so it can identify previously produced documents that are *actually* responsive to its requests.

By this motion Dairyland also requests that the Court order the government to fully respond to Dairyland's contention interrogatories (nos. 5, 9, 13, 14, 15, 16 and 17) by June 8, 2007. In its Response to Plaintiff's First Set of Interrogatories as Amended in Response to the Court's February 5, 2007 Order ("Supplemental Interrogatory Response") (Exhibit 2), the government has asserted, contrary to the February 5 Order's

unambiguous language, that this Order does not address Dairyland's contention interrogatories and does not require supplementation of the government's original responses to these interrogatories. *See* Exhibit 2, Supp. Resp. to Interrog. Nos. 5, 9, 13, 14, 15, 16, 17. Nevertheless, the government has represented to Dairyland that it will be in a position to answer all of these contention interrogatories by the time its expert reports are due on June 8, 2007. To ensure that the government keeps its word, the Court should order its answers by this date certain.

Finally, the Court must put an end to the government's discovery games once and for all by imposing appropriate sanctions, including, at a minimum, Dairyland's costs and attorneys' fees incurred in making the present motion and in responding to the government's multiple motions for enlargement of time. The government's willful violation of the Court's February 5 Order and its continual pattern of discovery abuse in this case should no longer be countenanced.

## DISCUSSION

### I. The Government's Amended Responses to Dairyland's Document Requests Violate the Court's February 5, 2007 Order

In granting Dairyland's motion to compel discovery responses, the Court directed that, for "already produced documents," *i.e.*, documents posted on the government's spent fuel litigation document production website, the "Defendant shall at least identify with reasonable particularity those documents it deems responsive to Plaintiff's specific requests." February 5 Order at 2. The government's Amended Document Response does not comply with the Court's directive. Regarding most of Dairyland's document requests, the government merely refers Dairyland to an attached list of multiple electronic "containers" posted on its document production website that contain "*potentially*

responsive" documents. *See* Exhibit 1, Resp. to Request Nos. 1-3, 5-15, 17, 22, 24-26, 28-34, 36-42. The government's use of the word "potentially" in its responses suffers from the same sort of evasiveness that the Court criticized in its February 5 Order regarding the government's identification of persons who "may" have had involvement in certain activities. Moreover, the government has not even identified these "potentially responsive" documents with "reasonable particularity." Instead, for 33 of Dairyland's 42 document requests, the government has identified multiple "containers" of documents previously posted on its website – each of which contain many documents (some containers hold more than 200 documents) – that *may* contain documents responsive to each request.[1] *See, e.g.*, Exhibit 1, Att. 1, RFP 3 (61 containers); RFP 12 (68 containers); RFP 24 (361 containers); RFP 25 (119 containers); RFP 28 (100 containers); RFP 29 (119 containers). Thus, based upon the government's responses, it is literally impossible for Dairyland to tell if each identified container consists entirely of "potentially" responsive documents, contains one "potentially" responsive document, or consists of something somewhere in between.[2]

---

[1] To make matters even more confusing, for 9 of the 33 requests where the government has responded by identifying containers with potentially responsive documents (request nos. 7, 8, 11, 14, 15, 24, 32, 34 and 36) the government has specifically identified previously produced documents that "appear to be responsive" to the request. The government has not offered a clear answer as to why it was able to list specific documents in a few of its amended responses, but not most of them.

[2] On March 28, 2007, Dairyland's counsel had a telephone conference with the government's counsel to discuss the deficiency of the government's amended document responses under the terms of the February 5 Order. During this conference, government counsel did not dispute Dairyland counsel's observation that it appeared possible that there might be just one responsive document in a listed container (and that containers can contain 200-plus documents). *See* Exhibit 3 (March 29, 2007 letter).

Accordingly, the government should be directed to comply with the February 5 Order immediately by identifying previously produced responsive documents with "reasonable particularity." In order to limit the burden on the government and speed completion of this task, Dairyland is limiting this demand to its following requests for documents: request nos. 3, 5, 6, 9, 10, 12, 13, 17, 24, 25, 28, 29, 30, 31, 33, 37, 38, 39, 40 and 41. To the extent the government can honestly state that essentially all of the documents in the identified containers are responsive to the referenced requests, then a mere revision of the wording of its document response should be sufficient. However, if such a representation cannot honestly be made for a particular container, then further specification is warranted.

## II. The Government Should be Ordered to Answer Dairyland's Contention Interrogatories by no Later Than the Government's Expert Disclosure Deadline

In its motion to compel, Dairyland also sought, *inter alia*, to compel the government to respond to its contention interrogatories (nos. 5, 9, 13, 14, 15, 16 and 17) on grounds that the government had taken the unreasonable position that such interrogatories were "premature." In response to Dairyland's motion to compel, the government represented that it would be in a position to answer Dairyland's contention interrogatories once it concluded the depositions of certain Dairyland fact witnesses and/or obtained Dairyland's expert witness reports. *See* Exhibit 4 at 20-26. For example, with regard to interrogatory no. 9, the government stated that it would be in a position to answer this interrogatory after it took the depositions of Dairyland's nuclear plant manager (Roger Christians) and vice president of generation (Charles Sans Crainte). *Id.* at 20. Those depositions were taken the week of January 29, 2007. With regard to interrogatory no. 13, the government stated that it could answer this interrogatory once it

learned Dairyland's position on the date by which its spent fuel would have been removed in the "but for" world. *Id.* at 22. With the furnishing of Dairyland's expert reports on March 23, 2007, the government now has this information.

On March 23, 2007, after obtaining a two-week extension of time, the government served its Response to Plaintiff's First Set of Interrogatories as Amended in Response to the Court's February 5, 2007 Order ("Supplemental Interrogatory Response") (Exhibit 2). In the government's Supplemental Interrogatory Response, the government asserts that the February 5 Order does not address Dairyland's contention interrogatories and does not require supplementation of the government's original responses to these interrogatories. *See* Exhibit 2, Supp. Resp. to Interrog. Nos. 5, 9, 13, 14, 15, 16, 17. The government also continues to insist that Dairyland's contention interrogatories are "premature" and that the government is "still developing [its] positions regarding Dairyland's activities." *Id.*, Supp. Resp. to Interrog. Nos. 9, 15, 16, 17.

The government's position that the Court's February 5 Order does not address or require it to supplement its responses to Dairyland's contention interrogatories is wrong. In the February 5 Order, the Court ordered that "Plaintiff's motion to compel discovery responses is GRANTED consonant with the Court's prescriptions noted above." (emphasis in original) With the exception of the "prescriptions noted above" – which do not concern any of Dairyland's contention interrogatories – nowhere in the February 5 Order did the Court deny or limit any substantive aspect of Dairyland's motion to compel.[3] In other words, the February 5 Order rejected the government's objections that

[3] The Court did deny Dairyland's request for sanctions in its February 5 Order.

Dairyland's contention interrogatories were "premature" and ordered the government to respond.

On March 27, 2007, Dairyland's counsel informed the government's counsel that its supplemental responses to Dairyland's contention interrogatories did not comply with the Court's February 5 Order. Dairyland's counsel also reminded the government's counsel that the government had previously represented that it would be in a position to respond to these interrogatories once it had obtained certain depositions that had now been taken and/or after it had received Dairyland's expert reports. On March 28, 2007, government counsel informed Dairyland counsel in a telephone conference that it disagreed with Dairyland's interpretation of the February 5 Order and that it was now taking the position that it could not respond to Dairyland's contention interrogatories until around the time that it submitted its *expert reports*, which are currently due on June 8, 2007.[4]

Putting aside whether the February 5 Order required the government to respond to Dairyland's contention interrogatories by March 23 (it did) and that the government had previously represented that it would be in a position to respond to these interrogatories by now, it is beyond dispute that the government must fully answer these interrogatories *at some point*. However, the government's recalcitrant discovery conduct to date in this case has demonstrated that, absent a definitive Court order mandating specific discovery responses by a date certain, it will likely continue to delay answering these key interrogatories as long as possible, and thereby continue to "hide the ball" on

[4] Government counsel also sent a letter to Dairyland counsel on March 28, 2007 (Exhibit 5), wherein it stated that "it would appear that our response to your contention interrogatories is not required until sometime after the close of *fact* discovery." (emphasis added).

what its contentions are in this case. Accordingly, taking the government at its current word, Dairyland respectfully requests that the Court order the government to fully answer Dairyland's contention interrogatories – interrogatory nos. 5, 9, 13, 14, 15, 16 and 17 – by no later than the government's expert disclosure deadline of June 8, 2007. In addition, because these interrogatories would not be answered until after the April 30, 2007 deadline for completion of fact discovery, Dairyland should be allowed to take limited depositions of government witnesses after such answers are served to the extent such answers raise factual matters that had not been previously raised or examined in prior depositions.

## III. Sanctions Against the Government are Warranted

The government's pattern of discovery abuse in this case has and continues to prejudice Dairyland. Already, the government has succeeded in forcing the Court to delay the trial date to Dairyland's detriment. The government's egregious conduct has also increased Dairyland's litigation costs, as it has been deprived the opportunity to proceed efficiently with discovery from the government and forced to address multiple government delays.

The government's failure to comply with the February 5 Order is nothing short of contemptuous. The provision requiring identification of responsive documents with reasonable particularity is entirely clear; equally clear is the government's failure to comply. Dairyland has been pursuing production of the government's documents in a reasonable manner since October. The government initially delayed responding at all and ultimately responded improperly resulting in the February 5 Order. The government then delayed further under the guise that it needed more time to comply with the Court's

Order. The government never sought relief from the February 5 Order. Through its continual pattern of discovery abuse in this case, the government has shown that mere deadlines, whether imposed by the Rules or an order of the Court, will not cause it to comply with its obligations. Thus, sanctions are necessary to break this pattern.

Pursuant to RCFC 37(b), the Court should sanction the government, including awarding Dairyland its costs and attorneys' fees in prosecuting this motion and also for responding to the government's previous motions for enlargement of time to comply with the February 5 Order.

Respectfully submitted,

Dated: April 2, 2007

/s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
Counsel for Plaintiff
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin Stern
GREENBERG TRAURIG, LLP