# EXHIBIT 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AS AMENDED IN RESPONSE TO THE COURT'S FEBRUARY 5, 2007 ORDER

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following responses to "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006, amended in response to the Court's order dated February 5, 2007, requiring supplementation of our original responses.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to any document so produced, or as to any other document.

2. Exceeding obligations imposed by the Court's rules and orders: Defendant objects to the instructions and definitions accompanying plaintiff's interrogatories to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by RCFC 26 and 34 and the Court's prior orders, including but not limited to, information regarding electronic mail will be produced only in accordance with the requirements provided by the Court's prior order, dated March 14, 2005, limiting the parties' obligations to preserve or search e-mail tapes.

3. Conclusions regarding legal significance of documents: Defendant objects to the plaintiff's interrogatories upon the grounds and to the extent that, by them, plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

4. Work product information: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks information prepared and/or developed in anticipation of litigation and/or for trial when plaintiff has not shown that it has substantial need of such materials in the preparation of its case in that plaintiff is unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

5. Irrelevant material: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks the discovery of information which is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6. Vague, overly broad, and unduly burdensome: Defendant objects to plaintiff's interrogatories on the grounds that the manner in which they are worded, when read with their definitions and general instructions, are so vague, broad, general, and all inclusive that they do

not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive. Defendant further objects to these interrogatories to the extent that, to respond to them, defendant would be required to make an extensive investigation, research, compilation, and evaluation of data and records in its possession, which would constitute annoyance, harassment, oppression, undue burden, and undue expense to defendant.

7. Inferences from interrogatories: Defendant objects to any inference that can be drawn from any portion of plaintiff's interrogatories or the responses to them that the documents requested or events referenced in the requests actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by defendant that such information exists or that such events actually occurred.

8. Scope Of The Government As Responding Party: Defendant objects to plaintiff's interrogatories to the extent that they define the term "DOE," or the Department of Energy, to include any Government agencies, offices, bodies, affiliates, contractors, consultants, or individuals other than the Department of Energy itself. To define the term "DOE" as including entities other than DOE itself would render all of plaintiff's discovery requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, because doing so would require defendant to seek information from, and about, more than one million Federal employees in numerous offices, agencies, and departments, the missions of which have no relation whatsoever to plaintiff's contract and the locations of which are scattered across the nation and around the world. Further, defendant objects to these interrogatories to the extent that they purport to seek information from the files of the entire

Federal Government. In responding to these interrogatories, defendant has focused upon the knowledge of the Department of Energy.

9. The objections set forth above apply to each of the numbered paragraphs of plaintiff's interrogatories.

DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES

INTERROGATORY NO. 1:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of any COMMUNICATIONS between DOE and/or NRC on the one hand and DAIRYLAND on the other hand RELATING TO SPENT FUEL. For each PERSON identified, DESCRIBE in detail all aspects of that PERSON's involvement.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section and because plaintiff has an equal ability to identify the requested information as defendant, given that plaintiff and defendant were both equally involved in communications between plaintiff and defendant. See Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005). Defendant further objects to this interrogatory as irrelevant, given that not every possible communication somehow relating to spent nuclear fuel is related to the damages that plaintiff seeks in this case. We are also unable to identify all such individuals for the reasons set forth in General Objections Nos. 1, 2, 4, 5, 6, and 8, which are incorporated into this response by reference. Defendant also objects to this interrogatory to the extent that it seeks information that is already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff. See Pacific Gas, 69 Fed. Cl. at 325-26.

Without waiving these objections, defendant states that, with regard to the Department of Energy ("DOE"), defendant has previously produced DOE's contract files relating to Dairyland's Standard Contract, which contain communications between Dairyland and DOE, and other files

containing communications between Dairyland and DOE from which, pursuant to RCFC 33(d), plaintiff may ascertain an answer to this interrogatory as easily as defendant. Defendant further states that individuals employed by DOE who may have had some involvement relating to communications with Dairyland may include David Zabransky, Thomas Pollog, Nancy Slater, Alan Brownstein, Susan Klein, and James Carlson. Defendant further states that, with regard to the Nuclear Regulatory Commission ("NRC"), plaintiff, pursuant to RCFC 33(d), should be able to identify a list of individuals who would have had such involvement from the database of documents previously made available, or to be made available, to plaintiff or from the ADAMS database that is available for searching at the NRC, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant.

<u>SUPPLEMENTAL RESPONSE</u>:

In its February 5, 2007 order, the Court ordered that, where Dairyland "has requested the identity of persons involved in the review of preparation, etc., of certain documents or communications, Defendant shall identify those individuals whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial), but not those who merely *may* have had such involvement." Order, at 1 (Feb. 5, 2007) (italics in original). However, it ordered that, "to the extent that Plaintiff has requested that Defendant identify 'all aspects' of any person's involvement in review or preparation, etc., of certain documents or communications, Plaintiff's request is literally overbroad," ordering instead that "Defendant shall identify the nature of such involvement, etc., with reasonabl[e] particularty." <u>Id.</u> at 2. In addition, the Court ordered that, "to whatever extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such

documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proffered database(s)." Id. at 1.

With regard to the review, approval, disapproval, drafting and/or preparation of any communications between DOE and Dairyland "relating to spent fuel," DOE's records indicate that individuals "whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial)" are (1) William Young, DOE Office of Nuclear Energy, who, with the assistance of Charles Thompson and Michael McGown, drafted and/or signed a letter responding to an April 23, 1990 letter from Dairyland; (2) Lake Barrett and Ronald Milner, both now retired from DOE, who responded to letters from Dairyland dated June 12 and August 3, 1998, with Mr. Milner signing the letters on Mr. Barrett's behalf, which most likely were drafted by David Zabransky, possibly with the assistance of Thomas Pollog;[1] (3) David Zabransky, Christopher Kouts, and Paul Dickman, who had verbal communications with representatives of Dairyland in 2002 and/or 2003; and (4) Beth Tomasoni, the contracting officer for the Standard Contract, signed various contract correspondence, although the agency's records do not appear to indicate the drafter of that correspondence, some of which likely involved the Office of General Counsel. Additional responsive information will be found in defendant's response to Interrogatory No. 3 of these interrogatories.

With regard to the review, approval, disapproval, drafting and/or preparation of any communications between the NRC and Dairyland "relating to spent fuel," the NRC's records indicate that individuals "whose involvement was reasonably material, substantive, or the like

---

[1] The agency's records do not provide information identifying the actual drafter of the letters, and neither Mr. Zabransky nor Mr. Pollog presently has a specific recollection of the specific letters at this time.

(rather than those whose involvement was solely ministerial or secretarial)" are (1) Stephen O'Connor, who was Senior Project Manager for general licenses associated with Independent Spent Fuel Installations ("ISFSIs") when a docket for the LACBWR ISFSI was started; (2) James Randall Hall, who is the Senior Project Manager for general licenses associated with ISFSIs currently responsible for coordinating any activities associated with Part 72 provisions; and (3) Robert Nelson, who is the Chief of the licensing branch for Spent Fuel Storage and Transportation responsible for any communications regarding this docket.

INTERROGATORY NO. 2:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or of any DOCUMENTS or COMMUNICATIONS RELATED TO the decommissioning of LACBWR. For each PERSON identified, describe in detail all aspects of that PERSON's involvement.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section and because plaintiff should have an equal ability to identify the requested information as defendant, given that plaintiff and defendant were both equally involved in communications between plaintiff and defendant. See Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005). Defendant further objects to this interrogatory as irrelevant, given that not every possible communication somehow relating to the decommissioning of the LaCrosse reactor is related to the damages that plaintiff seeks in this case. We are also unable to identify all such individuals for the reasons set forth in General Objections Nos. 1, 2, 4, 5, 6, and 8, which are

incorporated into this response by reference. Defendant also objects to this interrogatory to the extent that it seeks information that is already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff. See Pacific Gas, 69 Fed. Cl. at 325-26.

Without waiving these objections, defendant states that, with regard to the Department of Energy ("DOE"), defendant has previously produced DOE's contract files relating to Dairyland's Standard Contract, which contain communications between Dairyland and DOE, and other files containing communications between Dairyland and DOE from which, pursuant to RCFC 33(d), plaintiff may ascertain an answer to this interrogatory as easily as defendant. Defendant avers, however, that it is currently unaware of any DOE documents or communications relating to the decommissioning of the LaCrosse reactor. Defendant further states that, with regard to the NRC and pursuant to RCFC 33(d), plaintiff should be able to identify a list of individuals who would have had such involvement from the database of documents previously made available, or to be made available, to plaintiff or from the ADAMS database that is available for searching at the NRC, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court ordered that, where Dairyland "has requested the identity of persons involved in the review of preparation, etc., of certain documents or communications, Defendant shall identify those individuals whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial), but not those who merely *may* have had such involvement." Order, at 1 (Feb. 5, 2007) (italics in original). However, it ordered that, "to the extent that Plaintiff has requested

that Defendant identify 'all aspects' of any person's involvement in review or preparation, etc., of certain documents or communications, Plaintiff's request is literally overbroad," ordering instead that "Defendant shall identify the nature of such involvement, etc., with reasonabl[e] particularty." Id. at 2. In addition, the Court ordered that, "to whatever extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proffered database(s)." Id.

With regard to the review, approval, disapproval, drafting and/or preparation of any documents or communications relating to the decommissioning of the La Crosse nuclear power reactor, DOE has been unable to identify any individuals involved in such documents or communications "whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial)."

The NRC's records indicate that individuals from the NRC "whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial)" are (1) Peter B. Erickson, former Project Manager responsible for review of the LACBWR decommissioning plan; (2) Kenneth Ridgway, Robert Wood, John Minns, and Frank Witt, who provided technical input on the LACBWR decommissioning plan; (3) Richard F. Dudley, Jr., former Acting Director, Non-Power Reactors, Decommissioning and Environmental Project Directorate, Division of Advanced Reactors and Special Projects, Office of Nuclear Reactor Regulation, who had an oversight role; (4) Seymour H. Weiss, former Director, Non-Power Reactors, Decommissioning and Environmental Project Directorate, Division of Advanced Reactors and Special Projects, Office of Nuclear Reactor Regulation, who

had an oversight role; (5) Dennis M. Crutchfield, former Director, Division of Advanced Reactors and Special Projects, Office of Nuclear Reactor Regulation, who had an oversight role; and (6) Herbert N. Berkow, former Project Director, Standardization and Non-Power Reactor Project Directorate, Office of Nuclear Reactor Regulation, who had an oversight role.

INTERROGATORY NO. 3:

Do you contend that the annual receiving capacity listed in any of the Annual Capacity Reports issued by DOE since January 1, 1998 pursuant to the NWPA is binding on DOE and/or DAIRYLAND? If so, explain all bases for such a contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

Without waiving this objection, defendant states that the table titled "Summary of Purchasers' Annual Allocations (MTU)" in the Annual Capacity Reports identifies an acceptance allocation to Purchasers. As set forth in the Standard Contract, the 1991 Annual Capacity Report ("ACR"), in conjunction with the 1991 Annual Priority Ranking ("APR"), was the document by which DOE began making firm acceptance commitments to individual utilities based upon the delivery commitment schedules submitted by Purchasers that DOE approved. After issuance of the 1991 ACR/APR, and in accordance with Article V.B.1 of the Standard Contract, the plaintiff in this action submitted several Delivery Commitment Schedules ("DCSs") to the Department of Energy. DOE also issued annual capacity reports and acceptance priority rankings dated 1992, 1994, and 1995, and many nuclear utility plaintiffs with cases pending before the Court of

Federal Claims submitted DCSs in response to these ACR/APRs. In submitting their DCSs, the plaintiffs ultimately relied upon the allocations identified in the referenced ACR/APRs. DOE approved several DCSs for the plaintiff in this action. Those DCSs identify both the amount of spent nuclear fuel and high-level radioactive waste (collectively, "SNF") and the location of SNF for which an allocation exists under the relevant ACR/APR for a given year. No other binding "schedules" applicable to the Standard Contract were issued by the Department of Energy or accepted by the Department of Energy through the approval of DCSs. The basis for the rate and order of SNF acceptance identified in this interrogatory response are the ACR/APRs issued beginning in 1991, the DCSs that the plaintiff and other contract holders submitted to DOE, and DOE's approval of those DCSs.

With regard to plaintiff's request regarding ACRs issued "since January 1, 1998," the only ACR that DOE issued since that time was the 2004 ACR. That ACR did not result in any approved DCSs and, as the 2004 ACR itself stated, the information contained in the 2004 ACR was for informational purposes only and was not binding on DOE.

<u>SUPPLEMENTAL RESPONSE</u>:

The Court's February 5, 2007 order does not require any further supplemental of this response.

<u>INTERROGATORY NO. 4</u>:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of responses to the delivery commitment schedules DAIRYLAND submitted to DOE. For each PERSON identified, DESCRIBE in detail the activities in which they engaged RELATED TO these activities.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant also objects to this interrogatory to the extent that it seeks information already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff.

Without waiving these objections, defendant states that, pursuant to RCFC 33(d), the answer(s) to this interrogatory may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. Defendant has previously produced DOE's files relating to Dairyland's Standard Contract, which contain DOE's records regarding delivery commitment schedules that Dairyland submitted. Defendant further states that individuals employed by DOE who may have had some involvement relating to DCSs that Dairyland submitted in response to the 1991 ACR/APR may include Nancy Slater, Alan Brownstein, Linda Strand, and Michael Detmer and those who may have had some involvement relating to DCSs that Dairyland submitted in response to the 2004 ACR/APR may include David Zabransky, Thomas Pollog, and Christopher Kouts.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court ordered that, where Dairyland "has requested the identity of persons involved in the review of preparation, etc., of certain documents or communications, Defendant shall identify those individuals whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or

secretarial), but not those who merely *may* have had such involvement." Order, at 1 (Feb. 5, 2007) (italics in original). In addition, the Court ordered that, "to whatever extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proffered database(s)." Id.

With regard to the review, approval, disapproval, drafting and/or preparation of responses to the delivery commitment schedules that Dairyland submitted to DOE, DOE's records indicate that individuals from DOE "whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial)" are (1) Alan Brownstein, who, as the Contracting Officer's Technical Representative, recommended approval of delivery commitment schedules ("DCSs"); (2) Linda Strand, who, as Contracting Officer, approved some DCSs; (3) Nancy Slater, who drafted a letter responding to Dairyland DCS submittals; (4) Jim Carlson, who approved the letter; (5) David Zabransky, who worked upon issues associated with DCSs in 2004; (6) Christopher Kouts, who worked upon issues associated with DCSs in 2004; and (7) Thomas Pollog, who worked upon issues associated with DCSs in 2004.

We are unaware of any individuals at the NRC who had any involvement in such a review.

INTERROGATORY NO. 5:

On what schedule (measured in Metric Tons Uranium) does DOE contend it is obligated to remove DAIRYLAND's SPENT FUEL pursuant to DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? State all factual and legal grounds for this contention.