| | | |
|---|---|---|
| CTR013 | CTR0131548 | CTR0131551 |
| CTR013 | CTR0131576 | CTR0131587 |
| CTR013 | CTR0131675 | CTR0131679 |
| CTR013 | CTR0131708 | CTR0131710 |
| CTR013 | CTR0131829 | CTR0131832 |
| CTR013 | CTR0133181 | CTR0133209 |
| PNL048 | PNL0480004 | PNL0480055 |
| PNL048 | PNL0480142 | PNL0480193 |
| PNL048 | PNL0480198 | PNL0480246 |
| PNL048 | PNL0480247 | PNL0480297 |
| PNL048 | PNL0480298 | PNL0480348 |
| PNL048 | PNL0480349 | PNL0480398 |
| PNL048 | PNL0480399 | PNL0480448 |
| PNL048 | PNL0480449 | PNL0480499 |
| PNL048 | PNL0480500 | PNL0480551 |
| PNL048 | PNL0480560 | PNL0480608 |
| PNL048 | PNL0480613 | PNL0480718 |
| PNL048 | PNL0480754 | PNL0480770 |
| PNL048 | PNL0480791 | PNL0480898 |
| PNL048 | PNL0480933 | PNL0481038 |
| PNL048 | PNL0481042 | PNL0481148 |
| PNL048 | PNL0481149 | PNL0481253 |
| PNL048 | PNL0481266 | PNL0481348 |
| PNL048 | PNL0481349 | PNL0481429 |
| PNL048 | PNL0481430 | PNL0481477 |
| PNL048 | PNL0481597 | PNL0481678 |
| PNL048 | PNL0481679 | PNL0481730 |
| PNL048 | PNL0481731 | PNL0481813 |
| PNL048 | PNL0481814 | PNL0481897 |
| PNL048 | PNL0481908 | PNL0481989 |
| PNL048 | PNL0481990 | PNL0482038 |
| PNL048 | PNL0482039 | PNL0482088 |
| PNL034 | PNL0340201 | PNL0340212 |
| PNL034 | PNL0340213 | PNL0340224 |
| PNL034 | PNL0340226 | PNL0340238 |
| PNL034 | PNL0340239 | PNL0340253 |
| PNL034 | PNL0340305 | PNL0340312 |
| PNL034 | PNL0340314 | PNL0340322 |
| PNL034 | PNL0340323 | PNL0340330 |
| PNL034 | PNL0340332 | PNL0340339 |
| PNL034 | PNL0340342 | PNL0340349 |
| PNL034 | PNL0340350 | PNL0340358 |

| | | |
|---|---|---|
| PNL034 | PNL0340359 | PNL0340366 |
| PNL034 | PNL0340368 | PNL0340379 |
| PNL034 | PNL0340380 | PNL0340391 |
| PNL034 | PNL0340392 | PNL0340403 |
| PNL034 | PNL0340404 | PNL0340415 |
| PNL034 | PNL0340416 | PNL0340427 |
| PNL034 | PNL0340428 | PNL0340434 |
| PNL034 | PNL0340443 | PNL0340453 |
| PNL034 | PNL0340454 | PNL0340463 |
| IDF007 | IDF0073621 | IDF0073787 |
| IDF007 | IDF0073864 | IDF0074013 |
| HQR008 | HQR0080215 | HQR0080216 |
| HQR008 | HQR0080217 | HQR0080220 |
| HQR008 | HQR0080536 | HQR0080556 |
| HQR008 | HQR0080598 | HQR0080598 |
| HQR008 | HQR0080619 | HQR0080620 |
| HQR008 | HQR0080816 | HQR0080842 |
| HQR008 | HQR0080845 | HQR0080856 |
| HQR008 | HQR0080896 | HQR0080902 |
| HQR008 | HQR0080944 | HQR0080944 |
| HQR008 | HQR0080953 | HQR0080953 |
| HQR008 | HQR0081028 | HQR0081032 |

INTERROGATORY NO. 12:

Does DOE plan to accept delivery of FAILED FUEL from DAIRYLAND on a different schedule than the rest of DAIRYLAND's SPENT FUEL before it completes taking delivery of other SPENT FUEL from DAIRYLAND? If so, DESCRIBE the schedule DOE is planning to use for picking up DAIRYLAND's FAILED FUEL.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear

fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court stated that it "does not accept, at least for purposes of discovery, that, as Defendant avers, 'discovery into DOE [Department of Energy]'s current projections about the future [is] irrelevant to any analysis of causation or damages.'" Order, at 1 (Feb. 5, 2007) (brackets in original). In response to the Court's order, defendant states that, at the present time, DOE does not have a current plan regarding the acceptance of SNF from Dairyland, beyond the contract mechanisms in Articles IV and V of the Standard Contract that detail the manner in which SNF acceptance allocations are assigned and approved. As a result, DOE has not yet identified the schedule upon which it will actually accept, or by which it "plans" to accept, Dairyland's failed fuel. As part of any future plan that is developed for the acceptance of SNF from Dairyland, DOE will have to consider the fact that the SNF from that reactor is failed fuel, at least some of which apparently has suffered extreme degradation. During his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for an explanation of those issues. Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to

accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

INTERROGATORY NO. 13:

Do you contend that DOE would have picked up DAIRYLAND's FAILED FUEL later than the rest of its SPENT FUEL had the government begun SPENT FUEL acceptance from utilities starting not later than January 31, 1998? If so, state all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature prior to the completion of fact discovery, given that defendant does not have adequate information regarding plaintiff's failed fuel to respond appropriately to this interrogatory. Defendant objects to this interrogatory as vague, overly broad, and unduly burdensome. Given that the design parameters for any storage facility that DOE might operate have not yet been defined, it is impossible to identify every technical impediment that could occur in the acceptance of failed fuel from Dairyland's nuclear reactor.

Without waiving these objections, defendant responds that, during his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for a response to this interrogatory. Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same

schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not require any further supplemental of this response.

INTERROGATORY NO. 14:

Do you contend that DAIRYLAND's expenditures supporting PFS were unreasonable expenditures toward mitigation of DAIRYLAND's damages due to DOE's partial breach of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, state all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as any determination of whether, from a business or profit-making standpoint upon Dairyland's part, it was "unreasonable" for Dairyland to invest in Private Fuel Storage ("PFS") cannot be made prior to the completion of discovery.

Without waiving these objections, defendant states that, as we have explained in prior briefing in several of the SNF cases pending before this Court, any investment in PFS was not foreseeable at the time of contract formation and, further, was wholly speculative. Any such investment could not be considered proper "mitigation" of DOE's delay in beginning SNF acceptance.

SUPPLEMENTAL RESPONSE:

Although the Court's February 5, 2007 order does not require supplementation of our original response to this interrogatory, defendant further refers plaintiff to the post-trial briefing that the Government filed in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C (Fed. Cl.), dated June 30, 2006, and July 7, 2006, copies of which are available on PACER accessible through the Court of Federal Claims' website.

INTERROGATORY NO. 15:

Do you contend that it was unreasonable for DAIRYLAND to store its SPENT FUEL in the LACBWR wet fuel storage pool at any time after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, DESCRIBE when you contend it became unreasonable for DAIRYLAND to continue to store its SPENT FUEL in the LACBWR wet fuel storage pool and DESCRIBE the specific alternative storage options you believe would have been reasonable for DAIRYLAND to employ to store its SPENT FUEL from that point onward.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

INTERROGATORY NO. 16:

DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its SPENT FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its SPENT FUEL that are different from those options explored and/or implemented to store DAIRYLAND'S FAILED FUEL, DESCRIBE how and why they should have been different.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

INTERROGATORY NO. 17:

DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its FAILED FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its FAILED FUEL that are different from those

options explored or implemented to store DAIRYLAND'S SPENT FUEL, DESCRIBE how and why they should have been different.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

INTERROGATORY NO. 18:

DESCRIBE all efforts undertaken by or on behalf of DOE to examine the manner or process by which DOE would remove SPENT FUEL from LACBWR. IDENTIFY the five people with the most knowledge of these efforts and the nature of such knowledge.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as vague, overly broad, irrelevant, and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this request to the extent that it relates to the manner in which DOE may, in the future, remove fuel from the LaCrosse reactor because, in accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not

recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation. Defendant also objects to plaintiff's demand that defendant identify the "five people with the most knowledge" of the efforts identified, as plaintiff is requesting that counsel for defendant interview all individuals within DOE who may have had some involvement in matters and made judgment calls regarding the level of their current knowledge and memory, and plaintiff would then require defendant to disclose the results of the attorney work product; nevertheless, defendant will undertake to identify individuals whom, from a review of documents, may have some knowledge of the efforts identified based upon their apparent involvement in such efforts.

Without waiving these objections, defendant states that, pursuant to RCFC 33(d), the answer(s) to this interrogatory may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. To the degree that it has not already done so, defendant will make the database of documents available to plaintiff at mutually acceptable times to allow plaintiff to inspect such records and make such copies as plaintiff deems appropriate. Documents that may contain information responsive to this request include the Facility Interface Data Study (MOL.20060121.0173), the Facility Interface Capability Assessment, the Near-Site Transportation Infrastructure study, and Service Planning Documents.

With regard to plaintiff's request for identification of individuals who may have been involved in the efforts identified in this interrogatory, defendant is unaware of any individuals who would have worked upon or studied the removal of spent nuclear fuel specifically from the LaCrosse reactor or the LaCrosse site itself. However, individuals may have contemplated the

removal of spent nuclear fuel from nuclear utilities in general. Pursuant to RCFC 33(d), the names of those individuals – either DOE employees or contractor employees – may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. However, those individuals may include David Zabransky, Ned Larson, and Robert Burgoyne.

<u>SUPPLEMENTAL RESPONSE</u>:

In its February 5, 2007 order, the Court ordered that, where Dairyland "has requested the identity of persons involved in the review of preparation, etc., of certain documents or communications, Defendant shall identify those individuals whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial), but not those who merely *may* have had such involvement." Order, at 1 (Feb. 5, 2007) (italics in original). However, it ordered that, "to the extent that Plaintiff has requested that Defendant identify 'all aspects' of any person's involvement in review or preparation, etc., of certain documents or communications, Plaintiff's request is literally overbroad," ordering instead that "Defendant shall identify the nature of such involvement, etc., with reasonabl[e] particularty." <u>Id.</u> at 2. In addition, the Court ordered that, "to whatever extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proffered database(s)." <u>Id.</u> at 1. Finally, with regard to this particular interrogatory, the Court ordered that, rather than identify "the 'five people with the most knowledge' in response to [this interrogatory], [defendant] shall instead identify all those

individuals whose knowledge is reasonably material, substantive, or the like, relating to the removal of spent fuel from the La Crosse Boiling Water Reactor (LACBWR)."

In accordance with those guidelines, defendant provides the following supplemental response: In the early 1990's, DOE commissioned several studies of the facilities and infrastructure at and near utility sites throughout the country, including the LaCrosse plant, to determine the capabilities for loading of casks and the shipment of SNF from those utility sites. The reports that resulted from these studies are found in the database of documents that has been made available to Dairyland, in Dairyland's own database of documents, and on the RIS-web with the following bates numbers or accession numbers: Site and Facility Waste Transportation Services Planning Document (Draft), March 1991 (PLAC0149483-531); Site and Facility Waste Transportation Services Planning Document, May 1993 (HQV.19931101.0007); Facility Interface Capability Assessment (FICA) Project Cask Handling Assessment La Crosse BWR, October 1990 (HQR0441640-1654); Near-Site Transportation Infrastructure Project Draft Report and Assessment, June 1990 (PLAC0079126-9216); Near-Site Transportation Infrastructure Project Final Report, February 1992 (YMP0032291-2348). The individuals who had substantial involvement in these studies or the preparation of these reports include Tom Pollog and Mike Conroy, DOE; Bill Lee and Nigel Mote, NAC; Bill Teer, TRW; and Ron Pope, Steve Schmid, and Bill McLain, Oak Ridge National Laboratory.

In 2004, DOE undertook an effort to update these assessments and obtained from utilities information on "Facility Interface Data Sheets" or "FIDS." The FIDS for the LaCrosse plant are found within Dairyland's own database of documents at PLAC0077157-58 and PLAC049331-32. This data was compiled in a report, Final Report on Facility Interfaces for Office of Civilian

Radioactive Waste Management, January 2005 (MOL.20060121.0173). David Zabransky and Ned Larson, DOE, and Robert Burgoyne, Booz-Allen, had substantial involvement in this recent effort.

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
FAX: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 23, 2007

CERTIFICATION

I, Thomas Pollog, state that I have reviewed Defendant's Response to Plaintiff's First Set of Interrogatories As Amended In Response To The Court's Feburary 5, 2007 Order in connection with Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.), and I provided factual information with regard to the response provided to interrogatories 1, 2, 4, and 18. Based upon my review, I hereby certify under penalty of perjury in accordance with 28 U.S.C. § 1746, that the answers are true and accurate to the best of my knowledge, information, and belief.

Dated: March 23, 2007

THOMAS POLLOG

CERTIFICATION

I, Bernard White, Technical Assistant, Spent Fuel Storage and Transportation Division, Nuclear Regulatory Commission, state that I have reviewed Defendant's Response to Plaintiff's First Set of Interrogatories which were propounded in connection with Dairyland Power Cooperative v. United States, No. 04-0106C and I have verified the factual information provided in response to interrogatories 1, 2, and 10. Based upon my review, I hereby certify under penalty of perjury in accordance with 28 U.S.C. § 1746, that the answers are true and accurate to the best of my knowledge, information, and belief.

Dated: 3/22/07 [signature]

CERTIFICATION

I, David Zabransky, state that I have reviewed Defendant's Response to Plaintiff's First Set of Interrogatories As Amended In Response To The Court's Feburary 5, 2007 Order in connection with Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.), and I provided factual information with regard to the responses provided to interrogatories 3, 5, 6, 7, 8, 10, 11, 12, 13, and 14. Based upon my review, I hereby certify under penalty of perjury in accordance with 28 U.S.C. § 1746, that the answers are true and accurate to the best of my knowledge, information, and belief.

Dated: March 23, 2007

DAVID K. ZABRANSKY

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 23rd day of March 2007, I caused to served by overnight courier (Federal Express, for next business-day delivery) a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, AS AMENDED IN RESPONSE TO THE COURT'S FEBRUARY 5, 2007 ORDER," addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

[signature]