# EXHIBIT 3

Greenberg Traurig

Robert L. Shapiro
Tel. 202-331-3174
Fax 202-261-4752
shapiror@gtlaw.com

March 29, 2007

Russell A. Shultis
U.S. Department of Justice
Commercial Litigation Branch
Federal Claims Section
1100 L Street, NW
Washington, D.C. 20530

Re: Dairyland Power Cooperative v. United States

Dear Russ:

I am following up on our conversation of March 28 with Harv, Marian and Alan regarding the government's compliance with the Court's February 5, 2007 directive for "already produced documents" that "Defendant shall at least identify with reasonable particularity those documents it deems responsive to Plaintiff's specific requests." As we discussed, the government's amended responses served on March 23, 2007 do not comply with that part of the Order. Instead, regarding most of Dairyland's document requests, the government refers Dairyland to a list of containers of documents "that are *potentially responsive.*" Indeed, this language suffers from the same sort of evasiveness the Court criticized in its February 5, 2007 Order regarding the identification of persons who "may" have had involvement in certain activities. At one point, Harv stated that notwithstanding the evasive "potentially" language, the government's position was that the documents in the listed containers are responsive to the referenced Dairyland requests. Yet later in the conversation when I observed that it appeared possible that there might be just one responsive document in a listed container (and that containers can contain 200+ documents), none of the government participants on the call disagreed. In addition, we did not receive a clear answer as to why some of the government's amended responses include lists of specific documents, while most do not. Thus, the government's amended responses leave Dairyland without specification of the previously produced documents responsive to its requests to which Dairyland is entitled pursuant to the February 5, 2007 Order.

Accordingly, Dairyland demands that the government immediately provide it with the information called for in the February 5, 2007 Order. In order to limit the burden on the government and speed completion of this task, Dairyland is limiting this demand to its following requests for documents: numbers 3, 5, 6, 9, 10, 12, 13, 17, 24, 25, 28, 29, 30, 31, 33, 37, 38, 39, 40 and 41. To the extent the government can honestly state that essentially all of the documents in the identified containers are responsive to the referenced requests, then a mere

revision of the wording of the document response might be needed. But if such a representation cannot honestly be made, then further review and specification of documents is required. The government's knowledge of its document production, including the contours of the many containers, is far superior to Dairyland's.

Harv's threat that the government will seek to require Dairyland to reorganize the documents it produced to correspond to the government's requests if Dairyland seeks to enforce the February 5, 2007 Order's command in this regard is not well taken. The Court's Order did not impose such a requirement on Dairyland because Dairyland's production of documents conformed to the option of RCFC 34(b) of producing documents "as they are kept in the usual course of business." All of the documents produced by Dairyland are responsive, and they are all in usual course of business order. In contrast, the document production web site to which the government referred Dairyland contains a huge quantity of unresponsive documents. Moreover, the document organization of the web site appears to primarily reflect the date of the documents' production rather than how they are kept in the usual course of business.

We will be filing a motion on this issue in the next few days. In the meantime, we are willing to discuss means of expediting the government's compliance with this part of the February 5, 2007 Order. But we are not willing to discuss whether compliance is required.

Very truly yours,

Robert L. Shapiro