IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: April 2, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S RESPONSE TO
GOVERNMENT'S SUPPLEMENTAL MOTION TO COMPEL
DEPOSITION TESTIMONY AND DAIRYLAND'S MOTION FOR CLARIFICATION
OF ORDER OF MARCH 27, 2007 AND REQUEST FOR EXPEDITED CONSIDERATION

By its explicit terms, the government's supplemental motion to compel regarding the depositions of Charles Sans Crainte and Keith Stubbendick raises similar issues to those raised in the government's motion to compel regarding the deposition of Michael Brasel. The Court resolved the Brasel motion in its March 27, 2007 Order. Thus, the terms of that Order should guide resolution of the supplemental motion. Consistent with the Court's Order, Dairyland's objections to the general line of questioning addressed in the supplemental motion should be sustained, and the government should not be permitted to make such inquiries. In addition, in order to minimize potential disputes regarding the contours of the remaining permitted questioning of Messrs. Brasel, Sans Crainte and Stubbendick, Dairyland asks the Court to clarify its March 27, 2007 Order. Because the Court's guidance on these issues will be important for the completion of the government's remaining depositions by April 30, we ask that the Court resolve these issues on an expedited basis.

As set out in the government's supplemental motion, the government seeks to subject Dairyland's witnesses to detailed questioning regarding how and why Dairyland assembled its Rule 26(a)(1) damages disclosure in the manner that it did, and how and why it determined not to include certain costs in damages. *See* Govt. Supp. Mot. at xx.[1] The government also sought to ask certain preliminary, or what the government's counsel referred to as "predicate" questions. Under the March 27, 2007 Order, the government is permitted to ask factual questions limited to outlining the nature of who generally did what regarding the compilation of Dairyland's damages claim. But under the March 27, 2007 Order, the government may not ask further how and why questions regarding the details of the individuals' work regarding the tallying of Dairyland's damages claim. Order at 3. In other words, the "predicate" questions are the extent of the permissible inquiry.

In particular, regarding Mr. Sans Crainte, the government asked (and Dairyland did not object to) questions regarding the contours of his involvement regarding preparation of the damages claim. Govt. Mot. at xii. Dairyland's counsel went on to specifically encourage the government to ask about the numbers in Dairyland's damages claim, including where they came from, what they reflect and who knows about the numbers. Govt. Mot. at xiii. Similarly, during Mr. Stubbendick's deposition, Dairyland's counsel likewise encouraged the government to ask questions regarding (1) the substance of the damages disclosure, *id.* at xv, (2) the "the underlying data" for the disclosures), *id.* at xvi, and (3) the "factual basis underlying the inclusion of these numbers in" the damages disclosures." *Id.* at xx.. In some instances, the government did just that. *See, e.g.,* Govt. Mot. at xviii.

[1] Through an apparent word processing error, the government's supplemental motion is numbered from the table of contents using Roman Numerals. That numbering is used to refer to the pagination of the government's filing.

The government, however, also seeks to ask detailed questions regarding why the damages disclosure was put together the way they were. Govt. Mot. at xi ("... in other words, it was your idea to do this as a business person as opposed to having been instructed by a lawyer that you needed to start assembling the damages estimate?"). Under the March 27, 2007 Order, such questioning is not permitted. Nor may the government ask about the details of Messrs. Sans Crainte's or Stubbendick's roles in tallying Dairyland's damages. March 27, 2007 Order at 3. Further guidance from the Court on this issue is important. Notwithstanding the March 27, 2007, the government has made clear that it contemplates extensive additional questioning of Messrs. Sans Crainte and Stubbendick, such that the completion of their depositions could not be completed together in a single day. *See* Letter from Shapiro to Shultis dated April 2, 2007, exhibit 1. The government has not articulated any interpretation of the Court's ruling that could warrant such extensive additional depositions.

The government also seeks to inquire into the details regarding the involvement of counsel in the preparation of the damages disclosure. *Id.* at x ("Have you had conversations with your attorneys concerning the damage – the description of the damages claim?"). The government likewise seeks to ask about counsel's guidance provided to Mr. Stubbendick regarding his work on the damages disclosure. *Id.* at xvii; *see also id.* at xxii ("Were you given any direction [by counsel at Greenberg Traurig] in terms of what activities to include in this particular document?"). Under the March 27, 2007 Order at 3, the government may be permitted to ask a yes or no question as to the existence of the conversation. But the government's counsel makes clear that it views the answers to such questions as merely "a predicate answer" to more detailed questioning. Govt. Mot. at x. The Court's Order clearly prohibits such detailed questioning. The Order also recognizes that the involvement, legal theories and strategies of

counsel in the litigation are entitled to heightened protection from disclosure. March 27, 2007 Order at 2.

In addition, the government sought to ask Messrs. Sans Crainte and Stubbendick about their conversations with "experts" working on the damages claim. Govt. Mot. at vii ("Have you spoken with this expert?") and xxiii (addressing work with Todd Smith), and xxiv (regarding cost accounting issues involved in Dairyland's damages). Dairyland's counsel has retained both consulting and testifying experts in the case. The government has not offered any theory as to why it should be permitted to ask questions about the involvement of the consulting experts. And at the time of the depositions in question, all of the experts working on the litigation for Dairyland's counsel were consulting experts, since counsel's decisions regarding the roles of expert witnesses had not been finalized and none of the experts had been formally identified as testifying experts. Moreover, as the Court's March 27, 2007 Order at 3 recognized, now that Dairyland has identified experts (Dairyland has submitted to the government RCFC 26(a)(2) reports from four expert witnesses), the preferred means of further inquiry beyond the expert reports regarding the testifying experts' roles and sources of knowledge will be government's depositions of the experts.

Enforcement of this limitation is particularly important now that Dairyland has served its expert witness reports. The Court's initial pretrial scheduling Order contemplated that Dairyland would not serve its expert witness reports until after the close of fact discovery. At the outset of this case, the parties differed on the issue of whether fact discovery should close before the submission of expert witness reports, and the Court resolved that issue in favor of Dairyland's view that fact discovery should close first. *Compare* Corrected Joint Preliminary Status Report filed January 20, 2006 at 17-21 (excerpt attached as exhibit 2) and Scheduling Order filed May 1,

2006, exhibit 3; *see also* Hearing of February 8, 2006 at 32-38 (excerpt attached as exhibit 4). Dairyland pressed for that schedule, in part, to prevent fact discovery from getting bogged down with improper questioning of fact witnesses into the experts' work. Because of the government's continued failure to promptly meet its discovery obligations, the Court has extended the deadline for the completion of fact discovery. In order to help keep the litigation on track toward its January 28, 2007 trial date, Dairyland submitted its expert witness reports before the new, extended deadline for completion of fact discovery. Dairyland should not now be penalized for this effort by having its witnesses subjected to intrusive questioning regarding the work of litigation experts, where such questioning could not have been taken place had the government met its discovery obligations and the Court's initial scheduling order was followed.

Guidance on this issue important, because the government is now seeking to defer its completion of fact depositions until it deposes Dairyland's experts so that the government can then ask Dairyland's witnesses more detailed questions about their involvement with the experts. *See* Exhibit 1. Remarkably, the government does not even offer a plan as to how such discovery could be completed before the April 30 deadline for the completion of fact discovery. *Id.* Thus, guidance is needed not only regarding the extent of permissible questioning at the governments' remaining fact depositions but also to help the parties schedule those depositions.

Further, the government seeks to ask questions regarding decisions not to include certain costs as damages. *See* Govt. Mot. at xx ("And my question where there was objection to is were there discussions about eliminating particular account numbers that may flow through to activity numbers but in fact may be related to something other than SAFSTOR . . ." *see also id.* at xxi ("How about including or not including any specific account numbers.?"), and *id.* at xxii ("Were you given any instructions by anyone as to what activities not to include [in the damages

calculation]?"). Under the March 27, 2007 Order, such questioning into costs not claimed is not allowed. Order at 3, n.4.

Because the government's proposed questions presented in its supplemental motion are more extensive than those presented in its initial motion regarding Mr. Brasel's deposition, the Court's resolution of the supplemental motion should also help guide the completion of Mr. Brasel's deposition contemplated by the Court's March 27, 2007 Order. In order to minimize uncertainty on these issues, the Court should clarify its March 27, 2007 Order to make clear that to the extent it is determined that the government may not ask certain questions of Messrs. Sans Crainte and Stubbendick, that those same limitations are applicable to the completion of Mr. Brasel's deposition (and the depositions of the remaining fact witnesses taken by the government).

For the foregoing reasons, the government should be not be permitted to question Messrs. Sans Crainte or Stubbendick regarding the details of their particular work regarding the tallying of Dairyland's damages claim. Furthermore, the government should not be permitted to question them regarding their work with Dairyland's litigation experts, guidance they have received from counsel regarding preparation of the damages claim, or consideration regarding the exclusion of certain costs from the claim for damages. In addition, the Court should clarify its March 27, 2007 Order regarding Mr. Brasel's deposition to make clear that questioning regarding the substance of Mr. Basel's role in developing Dairyland's damages claim, his work with Dairyland's experts, guidance he may have received from counsel regarding preparation of Dairyland's damages claim, and determinations not to include certain costs in Dairyland's claim for damages are prohibited. The Court should also make clear that these limitations on deposition questioning are also applicable to the remaining fact depositions the government plans to take.

Respectfully submitted,

April 2, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

# EXHIBIT 1

Greenberg
Traurig

Robert L. Shapiro
Tel. 202-331-3174
Fax 202-261-4752
shapiror@gtlaw.com

April 2, 2007

**VIA FACSIMILE**

Russell A. Shultis
U.S. Department of Justice
Commercial Litigation Branch
Federal Claims Section
1100 L Street, N.W.
Washington, D.C. 20530

Re: Dairyland Power Cooperative v. United States No. 04-106C

Dear Russ:

I am writing to document our telephone conversation of earlier today. The government has indicated an interest in conducting depositions of Messrs. Berg, Nelson and Johnsen. And in light of the Court's March 27, 2007 Order, the government also contemplates continuing the depositions of Messrs. Brasel, Sans Crainte and Stubbendick. I telephoned today to offer dates when these depositions could reasonably be completed in LaCrosse (where the witnesses are located) before the fact discovery deadline of April 30. Specifically, I suggested completing the depositions on April 17 (Messrs. Berg, Sans Crainte and Stubbendick) and April 18 (Messrs. Brasel, Nelson and Johnsen). I explained that this schedule contemplated two tracks of depositions each day and that the depositions of the witnesses other than Berg and Nelson could each be completed in a half day or less.

You stated that the government would not agree to this schedule for several reasons. First, you stated that the government lacks sufficient attorneys to take more than one deposition at a time. Given past practice in this case of double-tracking depositions, the government's recent representations that it had 10-15 attorneys working on this matter to comply with the Court's February 5, 2007 Order and the impending April 30 deadline for the completion of fact depositions, this objection is not well taken. Second, you stated that the government prefers to take expert depositions before the remaining fact depositions. This objection is also not well taken. As I explained, the issue of whether fact depositions should be completed before expert discovery arose pretrial, and the Court resolved that issue in favor of Dairyland's position that fact depositions should conclude first. This view is also consistent with the March 27, 2007 Order. Third, you stated that the government may need more than a half day each to complete

the depositions of Messrs. Sans Crainte and Stubbendick. You did not articulate a view of the March 27, 2007 Order that could justify such extensive additional deposition questioning, but I noted Dairyland's understanding that the additional questioning contemplated by the March 27, 2007 Order could easily be completed in less than a half day per witness.

Remarkably, you did not suggest any schedule in which the government's desired fact depositions could be completed by the April 30 deadline. Instead, you indicated a preference to complete fact depositions later. We do not share the government's loose view of the Court's deadlines. The only deposition for which you suggested any dates was for Mr. Wilkins on April 17-18. We will check into his availability on the dates you asked about, but we are not willing to schedule his deposition in a way that would delay the timely completion of the fact depositions.

Finally, we discussed the timing of Mr. Kout's deposition. I explained that we need a date for that deposition other than April 26. We would be willing to schedule it any day that week or on April 30. We expect the government's cooperation in the scheduling of this deposition.

Very truly yours,

Robert L. Shapiro

# EXHIBIT 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |
| | ) | Filed electronically: January 20, 2006 |

CORRECTED JOINT PRELIMINARY STATUS REPORT

Pursuant to the RCFC, Appendix A, and this Court's Special Procedures Order and Order of October 13, 2005, Plaintiff, Dairyland Power Cooperative ("Dairyland"), and defendant, the United States ("Defendant" or "the Government"), respectfully submit their Joint Preliminary Status Report.

This action involves a contract for acceptance, removal and disposal of spent nuclear fuel and/or high level waste (collectively, "spent fuel" or "SNF") (sometimes called a "Standard Contract") executed on June 15, 1983, between Dairyland and the United States, acting through the Department of Energy ("DOE"). A copy of the Dairyland contract is attached to Dairyland's Complaint. Approximately 59 cases involving the Government's actions in connection with similar contracts are currently pending in this Court.

**(a) Does the Court have jurisdiction over the action?**

Dairyland's claim is based upon a partial breach of the contract between Dairyland and the Government. The parties agree that this Court possesses jurisdiction to entertain this claim

**(j) Proposed Scheduling Plans**

**Dairyland's Position**

As discussed above, Dairyland believes that decisions in the spent fuel cases that have already been tried will likely narrow, if not resolve, some of the key factual and legal issues in this case. Dairyland proposes that a trial date be set for the Fall of 2007 (September-November 2007) and, in accordance with a Fall 2007 trial, that discovery in this case commence on July 28, 2006. Further proceedings in this case would be stayed until then. In accordance with a Fall 2007 trial date, Dairyland proposes the following scheduling plan:

1. Dates for joinder of additional parties: The parties do not believe that additional parties will be joined.

2. Discovery Plan:

| Event | Date |
|---|---|
| Commencement of Discovery; RCFC 26(a)(1) Initial Disclosures (including exchange of documents) | July 28, 2006[5] |
| Complete Fact Discovery | January 12, 2007 |
| Three Alternative Dates for Status Conference | January 22, 2007 at 10:00 a.m.<br>January 23, 2007 at 10:00 a.m.<br>January 24, 2007 at 10:00 a.m. |
| Plaintiff's Expert Report(s) | January 19, 2007 |
| Defendant's Expert Report(s) | March 23, 2007 |
| Rebuttal Expert Report(s) | April 27, 2007 |
| Deadline to File Dispositive Motions | May 4, 2007 |

[5] Assuming the Government submits its request to Dairyland by June 28, 2006, Dairyland has agreed to respond to the Government's request for production of documents on July 28, 2006 as well.

Complete Expert Discovery May 11, 2007

Dairyland strongly opposes commencing discovery until a reasonable time before the Court sets a firm trial date. As mentioned above, Dairyland is a small company with limited resources, and commencing discovery far in advance of trial or before an end-date for discovery is established can promote unfocused and inefficient discovery, efforts that increase the cost and burden of discovery for both parties and the Court. Therefore, should the Court for any reason schedule trial of this case after the Fall of 2007, Dairyland would respectfully request that it be allowed to make appropriate adjustments to the proposed schedule to push back the commencement of discovery and key discovery deadlines by a corresponding period.

Dairyland disagrees with the Government's proposal that fact discovery remain open until May 11, 2007. It is not appropriate for expert reports to be due until after fact discovery has closed. That is the practice that (to Dairyland's knowledge) has been followed in all spent fuel cases to date, and the practice routinely followed in this Court and others under the Federal Rules of Civil Procedure. Furthermore, there is no requirement under the RCFC that a party submit a damages "claim" to the Government beyond what is required by RCFC 26(a). Dairyland anticipates providing, pursuant to its obligations under RCFC 26(a), a similar level of detail about its damages to what was provided by the plaintiff in the PG&E case, which has been satisfactory to the Government and which the Government has used to conduct discovery in that case without difficulty.

**Defendant's Position**

Although the Government believes that the GTCC issues should be decided before the parties begin discovery in this matter, to the extent that the Court does not stay proceedings in

this case, the Government, to the extent that this case is not stayed, generally will not disagree with Dairyland's proposed schedule. However, the Government does not agree that there be a separate closing date for fact discovery versus another for expert discovery. Although Dairyland asserts that bifurcated deadlines for the conclusion of fact discovery and expert discovery are supported by the practice of both this Court and other courts that follow the Federal Rules of Civil Procedure, we are aware of no provision in this Court's rules that encourages or requires such bifurcation. Further, Dairyland's apparent desire that the Government complete the entirety of its fact discovery before Dairyland discloses to the Government the entirety of its damages claims and their bases, which we presume from our experience in other spent nuclear fuel cases will not be provided to us until we receive Dairyland's expert reports, would be inherently unfair and prejudicial to the Government.[6] If defendant is required to complete its fact discovery before it is made fully aware of Dairyland's damages claims and the support for those claims, defendant will be required to engage in broad and potentially unfocused discovery about Dairyland's possible damages that will not only be wasteful, but will not allow us to focus upon and develop detailed analyses of those costs that Dairyland will later tell us it is claiming in this litigation. Contrary to Dairyland's representation, several judges, including Senior Judge Merow in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), and two other spent nuclear fuel cases and Judge Wiese in the two spent nuclear fuel cases assigned to him, have required the plaintiff, before requiring the Government to take any discovery, to provide the Government with a detailed claim supported by actual cost data. To the extent that the Court does not require such

[6] Although Dairyland asserts that it will identify its damages in its initial disclosures, the Government's past experience in the spent nuclear fuel cases is that the level of detail contained in the initial disclosures is insufficient to preclude the need for extensive discovery to attempt to define the scope of and support for the plaintiff's claimed

a detailed claim at the outset of the Government's discovery in this case, the Government requests that discovery – both fact and expert – remain open until May 11, 2007, to eliminate any concern that the Government might fail to identify some aspects of Dairyland's eventual damages claim during the fact discovery portion of proceedings. Similarly, the deadline for filing dispositive motions should be extended until May 25, 2007.

Dairyland's request that fact discovery conclude at an earlier date than expert discovery further prejudices the Government in this case in light of the significant differences in discovery already available to each party. As the Court is aware, the Government has previously made extensive discovery from its files available to all spent nuclear fuel plaintiffs, and counsel for Dairyland has had, and continues to have, access to that extensive discovery that the Government began producing in 1999, including access to the dozens of depositions of Government witnesses previously taken in these cases. Conversely, the Government has not obtained any discovery from Dairyland regarding the damages that it will be claiming in this litigation. Given that Dairyland should need little, if any, additional discovery from the Government about what Dairyland's damages are, a shortened time period for the Government's fact discovery – completed before Dairyland provides the Government with any detailed definitization of the damages that it will claim in this litigation – would be unfair. Further, a bifurcated deadline is simply unnecessary.

Finally, regardless of the Court's decision upon a bifurcated discovery deadline, Dairyland's proposed schedule does not appear to require Dairyland to provide the Government with a detailed damages claim prior to the delivery of expert reports. However, a detailed claim

damages. Further, the Government has found that claimed damages about which the Government was previously unaware are often contained in the expert reports.

is a useful prerequisite to efficient discovery because it permits the Government to know the quantity and basis for Dairyland's damages and allows the Government effectively to explore the factual predicate of those damages during fact discovery. Dairyland's proposed schedule contemplates providing the Government with that information on January 19, 2007, a week after the close of fact discovery. As previously discussed, the Government would not be able to explore the basis of Dairyland's claim, but would be forced to anticipate every possible factual predicate which might support a claim before receiving the claim itself. To make discovery significantly more efficient and less costly, Dairyland, like the plaintiffs in the cases before Senior Judge Merow and Judge Wiese, should be required to submit its detailed damages claim to the Government on or before May 26, 2006, at the outset of discovery.

3. Additional information

(i) Dairyland does not at present intend to file any dispositive motions after conducting limited discovery on particular issues. The Government wishes to file a motion for summary judgment regarding the GTCC issue and may file a motion for summary judgment regarding the rate of acceptance during or following the close of fact discovery.

(ii) Dairyland does not believe that discovery should be conducted in phases, except that fact discovery should be completed prior to commencement of expert discovery.

(iii) Dairyland believes that the presumptive limit of 25 interrogatories per individual party is adequate. The parties believe that the parties should be permitted to negotiate a variance from the presumptive limit of ten depositions per party if they deem

# EXHIBIT 3

# In the United States Court of Federal Claims

No. 04-106 C
(Filed: May 1, 2006)

*************************************
**DAIRYLAND POWER COOPERATIVE,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.
*************************************

## SCHEDULING ORDER

The Court hereby ORDERS the following schedule for discovery and trial in this case:

| | |
|---|---|
| RCFC 26(a)(1) Initial Disclosures (including exchange of documents) | July 28, 2006 |
| Commencement of Discovery | August 28, 2006 |
| Completion of Fact Discovery | February 16, 2007 |
| Plaintiff's Expert Report(s) | February 23, 2007 |
| In-court Post-Discovery Status Conference (10:00 a.m.) | March 8, 2007 |
| Defendant's Expert Report(s) | April 27, 2007 |
| Rebuttal Expert Report(s) | June 1, 2007 |
| Deadline to file Dispositive Motions | June 8, 2007 |

| | |
|---|---|
| Completion of Expert Discovery | June 15, 2007 |
| Trial (two weeks, Washington, D.C.) | October 29, 2007 |

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

# EXHIBIT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE, )
)
Plaintiff, )
)
v. ) Docket No.: 04-106C
)
UNITED STATES, )
)
Defendant. )

Courtroom 4
National Courts Building
717 Madison Place N.W.
Washington, D.C.

Wednesday,
February 8, 2006

The parties met, pursuant to notice of the Court, at 2:05 p.m.

BEFORE: HONORABLE EDWARD J. DAMICH
Chief Judge

APPEARANCES:

<u>For the Plaintiff</u>:

JERRY STOUCK, Esquire
KEVIN E. STERN, Esquire
ROBERT L. SHAPIRO, Esquire
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006
(202) 331-3100

APPEARANCES: (cont'd.)

For the Defendant:

RUSSELL A. SHULTIS, Esquire
JOSHUA E. GARDNER, Esquire
ALAN J. LO RE, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7571

motion, ultimately there may not be a whole lot we can do about it, but to get this done at the outset I think is a misallocation of resources because it's just not going to affect anything that happens during discovery. It just doesn't have any effect.

THE COURT: That's I guess the dispute that you have, the disagreement that you have.

MR. STOUCK: But they haven't explained how does it affect discovery. I just explained that we're going to produce the documents. I think it's a small quantity of GTCC waste documents. We've got most of what we need from them.

It really comes up at the back end of discovery in the expert reports. We're arguing about what if the GTCC waste is stranded? What effect does that have? That's expert testimony.

I don't think there's such a rush to do it, and I haven't heard an explanation of why it has to be done at the outset other than an assertion that it does.

THE COURT: Okay. We've been at it for 45 minutes, so let me move on to the other question of the discovery itself.

Is there a disagreement as to whether or not fact discovery should proceed, expert discovery, or

whether it should be mixed together?

MR. STOUCK: Yes, there is.

THE COURT: Do you want the separation?

MR. STOUCK: There is, Your Honor.

THE COURT: The traditional separation, I might point out.

MR. STOUCK: Pardon me?

THE COURT: The traditional separation between fact and --

MR. STOUCK: The traditional separation. Thank you.

Although I acknowledge they pointed out that I think our part of the document says that we thought that had been done in all the spent nuclear fuel cases, they point out that there are at least a couple where both fact and expert discovery have been done at the same time I think, so I acknowledge that.

I don't know why Judge Wiese did that, but I do know that in Judge Merow's case where we had something of that nature it led to a lot of inefficiencies frankly. We did eventually get to trial. Judge Hewitt certainly specifically rejected that.

You know, fact discovery ought to be closed before expert discovery for a number of reasons, Your

Honor, the main one being closure. You can't leave everything open until one common deadline. You can have motions on privilege issues and document discovery and depositions.

Now, I think their narrow point is that sometimes, again in the interest of just sort of acknowledging what we've learned from experience. Sometimes in these cases here's what happens. I'll try to be very brief about it.

A lot of the costs come from the company. The companies know what their costs are, and a lot of the costs come from the company. Then you have an expert witness who sort of puts all the costs together and maybe does some discounting or does some economic overlay on the company's costs.

What has happened sometimes is that when the government gets the expert report there's certain questions that it raises about the underlying costs that the expert may not be really an expert on because the company's people are the experts on that. They have a need to sort of go back to the company guy or person, woman, whoever it is, who put the costs together.

That has certainly happened on occasion, and it's been addressed. The way it's addressed is you do

another deposition of that person or you sit down around a table and ask about those questions that the expert couldn't answer. It doesn't warrant pushing the entire fact discovery deadline back to a common deadline with the expert discovery.

We can accommodate that on a case-by-case basis, but we would urge that the traditional sequence take place so that we have closure on fact discovery as a general matter before expert discovery starts.

THE COURT: Okay. Let me ask Mr. Shultis.

MR. SHULTIS: Your Honor, that is exactly why. I mean, the fact is that when we get the expert reports we need to know the factual basis of those so why set into the schedule what is certain to be another discovery dispute?

You know, the expert reports essentially lay out a good deal of the theory of the case, and it is our right to check to see what the factual basis of that theory is. Until we get the report, we don't know what to check for.

THE COURT: What is the reason then for the traditional basis of closing fact discovery and then having expert discovery and then doing what Mr. Stouck has suggested? What happens then if a factual issue arises? Then you address the Court and you say we

need further fact discovery because of this situation.

I mean, I think it's somewhat dependent upon the Plaintiff of course in its Rule 26 disclosures to be able to say, because you consult with your expert I presume before the expert actually writes the report, this is the way we compute the damages. The expert report comes in and supports with his or her expertise that calculation.

I think it's one of those things that if both of you want to push this to trial quickly, all three of us, then I think it's extremely important that in the Rule 26 disclosures that you give enough and detailed information to the Defendant so that we can close fact discovery, be honest about closing fact discovery, and then say anything that is reopened afterwards really are things that could not have been known or were not addressed in the Rule 26 disclosures.

That I think is the traditional scenario. That is a traditional scenario. My inclination is to go in that direction making it very clear, as I have, and would reemphasize that --

MR. STOUCK: Your Honor, I'd like to just say yes to that. That's our intention.

THE COURT: It's got to be fair to the

Defendant.

MR. STOUCK: That's our intention. We did that in PG&E. We gave them detailed cost schedules in the initial disclosures.

I'll do one better. We gave them accounting data out the wazoo during the course of discovery to back up the numbers that were in the initial disclosures, and detailed, detailed, detailed cost data and backup was provided during fact discovery and inquired about at fact deposition, and that would be I would assume and I believe we intend to proceed in a similar manner in this case.

THE COURT: What the Defendant has to know is your particular theory, the specific theory of damages. We're asking for recovery on this for this reason, and then of course the facts back that up. Knowing that, they test the facts through the discovery process

If there's suddenly something pops up in the expert report like an additional theory based on certain facts that they didn't depose anybody on because of the fact that it wasn't there in the Rule 26 disclosures then I would of course be very open to saying yes, we'll allow extra fact discovery and then you'll end up with a discovery dispute possibly, which

will delay things even more.

If everything worked well in the best of all possible worlds, I'm very much attracted to the traditional view. However, it depends upon cooperation, your cooperation on the Plaintiff's side of course and on the Defendant's side.

I'm inclined to go in that direction with the exhortation that I have made, but insofar as the actual dates I'm still a little conflicted with regard to the GTCC stuff so I want to take that issue under advisement before I actually come up with a date and also I guess the contractual liability.

If you wanted to file a motion for contractual liability and rate of acceptance when do you think you would want to file that?

MR. SHULTIS: We didn't propose filing a motion on contractual liability, Your Honor. It was just rate of acceptance.

THE COURT: So the Court is supposed to award damages without finding that there's liability?

MR. SHULTIS: We don't assume that there are damages at all, Your Honor.

MR. STOUCK: I guess our position is the Court has already found damages.

THE COURT: I know that, but are you willing