IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-106C<br>(Chief Judge Damich) |

DEFENDANT'S REPLY TO DAIRYLAND'S RESPONSE TO MOTION TO COMPEL DEPOSITION TESTIMONY IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS

Defendant, the United States, respectfully submits this reply to "Dairyland's Response to Government's Supplemental Motion to Compel Deposition Testimony and Dairyland's Motion to Compel Deposition Testimony and Dairyland's Motion for Clarification of Order of March 27, 2007 and Request for Expedited Consideration" (the "response"), which the plaintiff, Dairyland Power Cooperative ("Dairlyand"), filed on April 2, 2007.

## INTRODUCTION

On March 19, 2007, the Government filed a supplemental motion to reopen the depositions of Mr. Charles Sans Crainte and Mr. Keith Stubbendick because of Dairyland's objections to questions posed during those depositions based upon the work product doctrine and/or attorney-client privilege. As in the deposition of Mr. Michael Brasel, which we described in our first motion to compel, counsel for Dairyland repeatedly, and improperly, instructed witnesses not to answer questions concerning the damages claim or even questions dealing with the preparation of Dairyland's initial disclosures.

On March 27, 2007, this Court granted our motion to reopen Mr. Brasel's deposition and ordered Dairyland to allow Mr. Brasel to answer questions regarding Dairyland's damages claim. Rather than acceding that the Court's March 27, 2007 order ought to apply with equal force to Messrs. Sans Crainte and Stubbendick, Dairyland now asks the Court to "clarify" its order. In the guise of this request, Dairyland seeks to preclude the Government from learning about the factual basis for Dairyland's damages claim by limiting the Government to asking "predicate" questions. As explained below, the Court should refuse to accept Dairyland's narrow interpretation of the Court's order because it would prevent the Government from obtaining important and discoverable information.

## DISCUSSION

### I. THE GOVERNMENT SHOULD BE PERMITTED TO OBTAIN DISCOVERABLE INFORMATION REGARDING THE BASIS OF DAIRYLAND'S DAMAGES

Dairyland asks the Court to "clarify" its March 27, 2007 order, arguing that the Government is seeking privileged information from Messrs. Sans Crainte and Stubbendick. According to Dairyland, the Government must be limited to asking "predicate" questions and precluded from those that relate to "why the damages disclosure was put together the way they were." Resp. Br. pp. 2-3. While suggesting that the Government sought to obtain information regarding communications with "consulting experts," Dairyland now claims that any testimony from fact witnesses is unnecessary because Dairyland recently submitted its expert reports. Id. at pp. 4-5. Consequently, Dairyland asks this Court to issue another order precluding the Government from asking Messrs. Sans Crainte, Stubbendick, and Brasel about their work with Dairyland's experts or about any guidance that they received with regard to the costs that were

included in Dairyland's claim. Id. at p. 6. As discussed further below, the Court should allow the Government to reopen the depositions of Messrs. Sans Crainte and Stubbendick and allow those depositions to proceed in accordance with the Court's March 27, 2007 order.

The work product doctrine "provides protection only for *documents and tangible things* and . . . not for facts a party may have learned, even if they were learned from work product documents that are not themselves discoverable." Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 784, 816 (2006) (citing RCFC 26(b)(3)) (emphasis in original) (additional citations omitted). The doctrine protects the attorney's "thought processes and legal recommendations." Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997); see Onwuka v. Federal Express Corp., 178 F.R.D. 508, 512 (D. Minn. 1997). However, the work product doctrine does not protect facts concerning the creation of work product or facts contained within the work product. Pacific Gas, 69 Fed. Cl. at 816; RTC v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995); see Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 229 (D. Mass. 2006) (work product doctrine "does not prohibit the discovery of underlying facts").

After we filed our first motion seeking to compel deposition testimony by Michael Brasel, another Dairyland fact witness who was prevented from testifying about his role in the preparation of Dairyland's damages claim, this Court concluded that the Government may

> inquire about underlying factual matters (*i.e.*, the basic journalist's questions of who, what, where, when, and how), including the facts of [Mr. Brasel's] involvement, if any, in the preparation of Plaintiff's damages claim, with whom he communicated, whether he prepared any analyses of such claim, and the nature of any documents he may have prepared. . . .

Order, at 3 (March 27, 2007). According to that order, the Government was precluded from inquiring about Mr. Brasel's work "tallying costs" because those questions might tend to reveal Dairyland's attorneys' mental impressions and conclusions. Id.

It is well-settled that the attorney work product privilege does not apply to the fact of communication between a client and attorney and that it is the substance of the communication that is protected. Pacific Gas, 69 Fed. Cl. at 816. Dairyland has chosen to construe the rule that a party may pose predicate questions regarding the fact of a particular communication to mean that this Court, in its March 27, 2007 order, limited the Government to asking predicate questions. Resp. Br. pp. 3-4. However, the Court's May 27, 2007 order properly allows a more extensive inquiry. When the Court stated that the Government is entitled to learn the "who, what, where, when, and how" regarding the witness's involvement in preparation of Dairyland's damages claim, the Court expressly permitted the Government to engage in an inquiry that goes beyond predicate questions as to "whether" an attorney was involved in that process. Indeed, Dairyland's decision to preclude even a predicate inquiry had the intended effect of cutting off the "who, what, where, when and how" questions. In light of the Court's March 27, 2007 order, the Government seeks to engage in the same inquiry with Messrs. Sans Crainte and Stubbendick that it expects to undertake with Mr. Brasel.

Further, any fair reading of the offending questions cited by Dairyland shows that Government counsel posed questions regarding the involvement of Dairyland's lawyers as a predicate to making a record regarding Dairyland's legal position, not as a precursor to a general

line of questioning regarding attorney communication.[1] Because Dairyland's attorneys prevented the fact witnesses from answering the "who, what, where, when, and how" of Dairyland's damages claim, Government counsel was forced to seek information regarding the involvement of counsel to lay the foundation for a motion to compel as witnesses were prevented from even answering predicate questions. The Government does not seek in this motion, or through our the previous motion, to learn the substance of Dairyland's communications with its attorneys. Rather, the Government had to ask predicate questions because Dairyland prevented the Government from asking about Dairyland's claim.

The fact that the Government was unable to obtain answers to predicate questions does not mean, as Dairyland suggests, that the Government should be precluded from learning anything more. The Government's inquiry of any witness regarding damages is to learn what costs are being claimed and to understand the basis for including those costs in damages. Thus, the Government's goal has always been to learn the "who, what, where, when, and how" of

[1] In the deposition of Mr. Sans Crainte, Government counsel stated, "It's a predicate answer. How am I going to know – if he hasn't talked to [Dairyland's attorneys], how does he have work product?" Sans. Crainte Dep., 38:7-10 (A. 11). Similarly, Government counsel asked Mr. Sans Crainte whether counsel directed the assembly of damages information after Dairyland's counsel prevented Mr. Sans Crainte from describing when he first directed employees to work on Dairyland's damages claim. Sans. Crainte Dep., 42:2-43:9 (A. 12-13). Government counsel asked Mr. Stubbendick about the direction of counsel only after Dairyland's counsel prevented Mr. Stubbendick from stating whether Mr. Stubbendick had any involvement in assembling the initial disclosures; what other Dairyland personnel were involved in that effort; what conversations Mr. Stubbendick had with those personnel; and how the initial disclosures were prepared. Stubbendick Dep. 26:10-30:21 (A. 22-26).

Dairyland's damages. Despite the Court's order, Dairyland appears unwilling to provide that information.[2]

Contrary to Dairyland's claims, the Government has never sought information provided to Dairyland's "consulting" experts. Resp. Br. p. 4. Indeed, Dairyland's entire contention regarding consulting experts is a matter of semantics. Dairyland states that, "at the time of the depositions in question," all of its experts were consulting experts "since counsel's decisions regarding the roles of expert witnesses had not been finalized and none of the experts had been formally identified as testifying experts." Resp. Br. p. 4. The Government does not seek information that Dairyland's attorneys have shared with their consultants. Government counsel asked questions regarding information shared with Dairyland's experts for the purpose of obtaining information provided to Dairyland's testifying experts. Dairyland is seeking to use its construction of the term "consulting experts" as a means of preventing the Government from learning discoverable information provided to Dairyland's testifying experts during the fact discovery period.

Dairyland also suggests that, because it has now produced its expert reports, the Government no longer has any need for the information that would be provided by Messrs. Sans Crainte, Stubbendick, and Brasel.[3] Resp. Br. pp. 4-5. However, each of the reports submitted by

---

[2] Dairyland assumes that our depositions of Messrs. Sans Crainte, Stubbendick, and Brasel will take no more than half a day for each. Given the roles that those individuals have played in constructing the initial disclosures as well as the fact that they provided information upon which Dairyland's experts relied, we do not assume that these deposition will be as short as Dairyland assumes.

[3] The Government received Dairyland's expert reports on March 23, 2007. However, Dairyland has not yet produced the documents and other materials that Dairyland's experts relied upon.

Dairyland rely upon information from Dairyland deponents. The expert report of Charles L. Wilkins lists both Messrs. Sans Crainte and Stubbendick, as well as others, as Dairyland representatives with whom he had discussions upon which he has"relied." Page 3 of Wilkins Report. Similarly, Mr. Todd Smith, an accountant who has testified in other spent nuclear fuel cases, lists "[v]arious communications with DPC's staff regarding details of the work scope under the non-breach approach" as a source of information which informed his opinions. Page 2 of Appendix 1 to Todd Smith Report. Both of Dairyland's other expert reports, one by Mr. Ivan Stuart and another by Mr. Frank Graves, cite deposition transcripts or other documents produced by Dairyland fact witnesses as among those which they have considered. Therefore, Dairyland's expert reports demonstrate why the Government requires the desired information from Dairyland's fact witnesses, not why it is unimportant.

Finally, Dairyland argues that the Court must clarify its order to prevent "fact discovery from getting bogged down with improper expert discovery" during the fact discovery period. Resp. Br. p. 5. Given the information that we now have from Dairyland's expert reports, it is clear that Dairyland witnesses have provided important information to Dairyland's testifying experts. Dairyland's attorneys have, thus far, successfully prevented the Government from learning about that information even though Dairyland once agreed that it would be appropriate for the Government to obtain fact discovery regarding this information. Exhibit 4, Response Brief, February 8, 2006 Hearing, Tr. 34:5-35:5. Now, as the fact discovery period is drawing to a close, Dairyland seeks to limit the Government to cursory information from those fact witnesses without allowing the Government an opportunity to learn how that information applies to

Dairyland's claim through its expert reports.[4] This is precisely the concern that the Government voiced to the Court on February 8, 2006. Exhibit 4, Response Brief, February 8, 2006 Hearing, Tr. 35:11-20. In short, Dairyland is attempting to manipulate the fact versus expert discovery distinction to prevent the Government from learning about Dairyland's claim. The Court should not allow Dairyland to succeed in that endeavor.

CONCLUSION

For the reasons stated herein, the Government respectfully requests that the Court order that the deposition of Charles Sans Crainte and Keith Stubbendick be reopened so that the Government can inquire into their work upon the damages claim, including Dairyland's initial disclosures.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

[4] Dairyland agreed to defer the Government's taking additional fact witness depositions until sometime after the Court ruled upon the Government's motions to compel.

s/Russell A. Shultis
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

April 9, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 9th day of April 2007, a copy of foregoing "DEFENDANT'S REPLY TO DAIRYLAND'S RESPONSE TO MOTION TO COMPEL DEPOSITION TESTIMONY IMPROPERLY WITHHELD UPON THE BASIS OF PRIVILEGE OR UPON DOCTRINAL GROUNDS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Russell A. Shultis