IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically: May 9 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DAIRYLAND'S RESPONSE TO
THE GOVERNMENT'S MOTION TO STRIKE

It is not clear what the government seeks to accomplish by its motion to strike filed May 3, but it is clear the motion has no merit. Ultimately, the government's motion represents yet another time-consuming (and costly, at least to Dairyland) distraction from efforts aimed at making meaningful and timely progress in this case.

1. The government's motion has no merit for the simple reason that, contrary to the premise of the government's motion, Dairyland has not violated the provisions of Judge Hewitt's Order. Those provisions "limit the *disclosure and/or use* of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only. . . . *Pacific Gas and Electric Co. v. United States*, Nos. 04-75C & 76C ("*PG&E*"), Order of May 14, 2006, copy attached as Exh. 1, at 2-3 n.3 (emphasis added). Leaving aside the ambiguity in this language arising from the fact that the attorneys for the plaintiff in *that* litigation – *i.e.*, *PG&E* – are the same as the attorneys for the plaintiff in *this* litigation – *i.e.*, Dairyland's case, there is no violation of the Order because Dairyland has not "disclose[d] and/or use[d]" the documents covered by Judge Hewitt's Order.

Dairyland has not disclosed the documents because they were submitted to this Court under seal. That is the opposite of disclosure. Indeed, the dictionary definitions of "disclose" that the government cites in its motion confirm there has been no disclosure here. Those definitions include "to expose; to make known; to lay bare." *See* Motion at 8. Dairyland has not done that. To the contrary, Dairyland took care to prevent any disclosure by submitting the documents in question under seal.

By submitting the documents for *in camera* review, Dairyland is not "using" the documents either. Fairly interpreted, the "use" Judge Hewitt had in mind is some substantive evidentiary or discovery use. Here, Dairyland *seeks* to use the documents in its case, which is precisely why it filed a motion to compel production of the documents. On this point the case law cited in the government's motion to strike actually supports Dairyland's position. In each of the cases the government cites, the "guilty" party had made *substantive* use of the material covered by the protective order. *See Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.*, 305 F.3d 1301, 1314-15 (Fed. Cir. 2002); *Lion Raisons, Inc. v. United States*, 64 Fed. Cl. 536, 542 (2005); *Yates v. Applied Performance Technologies, Inc*. 205 F.R.D. 497, 500-01 (S.D. Ohio 2002). Dairyland has not "used" the documents in that manner here, and would not – indeed could not – do so until this Court grants its motion to compel.

In short, Dairyland has taken care to comply with Judge Hewitt's Order, not violate it as the government asserts.

2. Moreover, the government's motion is completely disingenuous because throughout the course of proceedings on the government's deliberative process privilege claims, the government has been requesting *in camera* review the documents in question. For example, it was the government that suggested *in camera* review of these documents in *PG&E*, *see* Gov't

motion for reconsideration filed electronically March 21, 2006 in *PG&E* at 22. Judge Hewitt accepted that suggestion and agreed that *in camera* review of the documents was appropriate. *See* Order of March 23, 2006 in *PG&E* at 2, copy attached as Exh. 2 ("The court accepts the government's offer . . . and will conduct an *in camera* review of those documents over which defendant continues to assert the privilege.").

The government's reversal of position here on the appropriateness of *in camera* review is not merely self-serving. Having prevailed on its argument for *in camera* review in *PG&E*, principles of judicial estoppel *preclude* the government from advancing the opposite position here. *See* James Wm. Moore et al. § 134.30 at 134.64 (3d ed. 2006) (explaining that in *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court "generally described the [judicial estoppel] doctrine as follows: when a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter, simply because his or her interests have changed, assume a contrary position, especially if it is to the prejudice of another party.").

More fundamentally, the government in its opposition to Dairyland's motion to compel these same documents in this case explicitly repeated its request that the Court review the documents *in camera*. *See* Gov't response to Dairyland's motion to compel filed electronically 2/28/07 at 24 n.12 ("[P]rior to the Court ordering the production of any of these documents to Dairyland, the Government asks that the Court undertake the same *in camera* review that the Court performed in Pacific Gas."). In essence, Dairyland's submittal of the documents to the

Court under seal has merely facilitated that review The government cannot be heard – and should not be permitted to be heard – to complain about that in these circumstances.[1]

The government appears to desire an elongated and more costly process: an order striking the documents from Dairyland's reply, followed by an order calling for submittal of the documents by the government and then submittal of those documents by the government. The government offers no justification for such a wasteful procedure. In most instances where *in camera* review is sought, including in *PG&E,* an order providing for such review is necessary in order to permit the party claiming the privilege to submit the documents for review without serving them on counsel for the other party (as the Rules would otherwise require). Here, however, such an order has not been necessary because Dairyland's counsel already appropriately has the documents.

3. The disingenuous nature of the government's motion to strike is further demonstrated by correspondence preceding the motion in which the government first complained about the Dairyland's submission of these documents to the Court under seal. Dairyland's response dated April 4, 2007, copy attached as Exh. 3, denied any violation of Judge Hewitt's protective order and explained why no such violation has occurred. But in an abundance of caution, Dairyland's letter also encouraged the government, to the extent it believed a violation had occurred, to file a motion with this Court to explicitly provide for *in camera* review, which Dairyland stated it would join. Specifically, Dairyland explained in that letter:

> Simply stated, Dairyland has done nothing more (or less) than request Judge Damich to review the documents *in camera* in the course of deciding the

[1] Dairyland's position is that comprehensive *in camera* review of all the documents is not only unnecessary to decide the deliberative process privilege issues, but is an inappropriate burden on the Court and Dairyland. *See* Reply on motion to compel filed electronically 3/19/07 at 7-8. But that position does not prevent Dairyland from agreeing with the government in part, *arguendo*, and submitting certain documents for *in camera* review.

> deliberative process privilege issues in this case – which is exactly what the government requested, and the Court did, in *PG&E*, and exactly what the government has also requested in Dairyland's own case. For reasons stated above this does not violate the *PG&E* protective order, and the government cannot properly claim that it does. For the same reasons, Dairyland does not believe it was (or is) necessary to ask Judge Damich to order *in camera* review in Dairyland's case. However, to the extent the government believes that such an order is appropriate before the Court in Dairyland accepts the government's (and Dairyland's) request for *in camera* review of the documents Dairyland submitted under seal, we encourage you to file a motion requesting such an order. Dairyland will join that motion (though as stated we do not believe it is necessary).

April 4, 2007 letter Stouck to Sullivan, copy attached hereto, at 1-2.

The government's failure to accept Dairyland's "encouragement" to file a motion is telling. It underscores the government's inability to defend its claims of deliberative process privilege on the merits. Recognizing its inability to do so, the government instead seeks to distract and delay the Court from addressing the merits of the privilege dispute.

The government's motion is a waste of everyone's time. It should be summarily denied.

Respectfully submitted,

Dated: May 9, 2007

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173 phone
(202) 261-4751 facsimile
Counsel for Plaintiff
Dairyland Power Cooperative

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP

**EXHIBIT 1**

# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: May 14, 2006)

PACIFIC GAS AND ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

Before the court is Pacific Gas & Electric's Second Motion to Compel the Production of Documents Withheld Under the "Deliberative Process" Privilege (Pl.'s Mot. or Motion). Pursuant to Rule 37(a)(2) of the Rules of the Court of Federal Claims (RCFC), plaintiff moves the court "to compel the government to produce 209 responsive documents that the government continues to withhold from disclosure due to its 'deliberative process' privilege claims." Pl.'s Mot. at 2. For the foregoing reasons, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART.

In the court's Order of April 27, 2006, the court provided brief analyses of various descriptions of documents provided in the ex parte affidavits submitted to the court on April 11, 2006 for the purpose of permitting the parties to analogize the examples to disputed documents not mentioned in the court's April 27, 2006 Order and thereby to resolve any further discovery disputes involving the deliberative process privilege that may have arisen. 4/27/06 Order at 8. The parties were also ordered to confer in an effort to resolve any such disputes using the guidance provided by the court's April 27, 2006 Order. Id. Nevertheless, despite the court's guidance, the parties were unable to come to an agreement with respect to 209 documents that plaintiff now seeks to be produced. The court now proceeds to address each of these documents as categorized in plaintiff's

Motion to determine whether plaintiff has made "'a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to the defendant.'"[1] Pac. Gas & Elec. Co. v. United States (PG&E), No. 04-74C, 2006 U.S. Claims LEXIS 63, at *17 (Fed. Cl. Mar. 14, 2006) (quoting Alaska v. United States, 16 Cl. Ct. 5, 11 (1988)); see also Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1304, 1307 (Fed. Cir. 2006) ("[A] showing of compelling need can overcome the qualified deliberative process privilege.").

I. Documents Which the Government has Agreed to Produce Based on the Court's April 27, 2006 Order

In a letter written to plaintiff on May 10, 2006, defendant states that it "will not contest" the production of a number of documents that it believes to "have a similar subject matter to those that the [c]ourt ordered [defendant] to produce in its April 27, 2006 [O]rder." Pl.'s Mot. Ex. D at 2. Defendant states that, "[b]ecause [it] do[es] not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with [the Department of Energy (DOE)], to have any grounds for arguing that the [g]overnment somehow waived any privilege claims relating to the rate of acceptance, we request that [plaintiff] ask the [c]ourt for an order compelling the production of these documents." Id. at 2-3. Accordingly, plaintiff has requested the court to enter an order compelling the production of these documents. Pl.'s Mot. at 3. The court agrees to this request. Defendant is hereby ORDERED to PRODUCE to plaintiff Document Nos.[2] 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188-89, 190-96, 202-03, 205, 207-08, 212-16, 220, 224, 226, 233, 236, 238, 240-46, 248-49, 54, 256, 262, 264, 266-70, 272, 274-84, 287, 290, 311, 313, 319, 322, 333-36, 341, 346, 348, 350, 361, 363–66 and 378.[3]

---

[1]The court has reviewed in camera the following documents and also has the government's responses to plaintiff's requests to produce the following documents in the form of letters written to plaintiff that post-date the court's April 27, 2006 Order. See Pl.'s Mot. Exhibit (Ex.) B, C, and D. Accordingly, the court does not require a response to plaintiff's Motion in order to make its final determinations with respect to the deliberative process privilege.

[2]All document numbers refer to those from the Table of Challenges in the Appendix to PG&E's Motion.

[3]Every document ordered to be produced by this Order shall be subject to the Protective Order issued by the court on April 21, 2005. However, for the purposes of this Order, the court AMENDS the Protective Order to limit the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the

(continued...)

II. Documents Related to GTCC Waste

In the court's April 27, 2006 Order, the court stated that it agreed that:

> if defendant takes a "litigation position" in this case that the continued storage of GTCC waste at PG&E's storage facilities after January 31, 1998 "would obviate or reduce damages" claimed by plaintiff, then plaintiff's evidentiary need for production of documents related to GTCC waste and described in the Virgilio Declaration, the Marcinowski Declaration, or any other declaration before the court, see, e.g., Milner Decl. at 29, would potentially outweigh defendant's interest in maintaining the confidentiality of these documents. However, as of the date of this Order, the court is not aware that defendant has indicated such a "litigation position" in this case.

4/27/06 Order at 13. Defendant has since taken such a "litigation position." See Defendant's Memorandum of Contentions of Fact and Law at 66-67. Accordingly, and for the reasons stated in plaintiff's Motion, see Pl.'s Mot. at 7-14, the court agrees that plaintiff's evidentiary need for the production of documents related to GTCC waste outweighs defendant's interest in maintaining their confidentiality.[4] The court's examination in camera of these documents supports this finding. Defendant is hereby ORDERED to PRODUCE to plaintiff Document Nos. 2, 12-13, 16-18, 51-53, 55-59, 62-68, 71-77, 80-103, 186-187, 289, 300-301, 384-386, 391-392, 396, 400-434, 436-459, 462 and 464. Accord Order of August 25, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C ("Thus, the Government's plans with respect to its obligation . . . to dispose of GTCC, must be fully disclosed to enable the court to make a finding(s) on the

[3](...continued)
Protective Order, the "attorneys for plaintiffs in the spent nuclear fuel cases," 4/21/05 Order ¶ 5.

[4]The court has noted defendant's letter to plaintiff that refers to these documents, see Pl.'s Mot. Ex. B at 2-4, and the court disagrees with the defendant's assessment of the potential relevance of the documents listed to this litigation. Although many of the documents are "deliberative" and "predecisional," almost all of them address various aspects of the government's plans for the handling of GTCC waste, information that is vital to making "an evidentiary finding as to whether GTCC material will be left on a reactor site after [SNF] and/or [HLW] is removed," Order of August 25, 2003 in Yankee Atomic Electric Co. v. United States, No. 98-126C, as well as making an evidentiary finding as to whether the Standard Contract covers GTCC waste, see Pl.'s Mot. at 7.

validity of this defense defendant asserts. It appears there may only be inchoate plans, or recommended plans, but it is concluded that unless defendant abandons its GTCC defense against monetary claims in this matter, there exists a compelling necessity for the production of all documentation which can contribute to an evidentiary finding as to whether GTCC material will be left on a reactor site after [SNF] and/or [HLW] is removed.") (emphasis added).

III. Documents Related to the Government's Rate of Acceptance

In the court's April 27, 2006 Order, the court stated that

> documents regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 2006 – are highly relevant to this litigation and . . . there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents.

4/27/06 Order at 15. Accordingly, and for the reasons stated in plaintiff's Motion, see Pl.'s Mot. at 14-17, the court finds that all documents which relate to the potential rate of acceptance by the government of SNF from nuclear utilities should be produced. After examining in camera the 20 documents that plaintiff identifies as "clearly involv[ing] what the [c]ourt has termed the 'highly relevant' rate of acceptance issue," Pl.'s Mot. at 17, the court agrees that the plaintiff's evidentiary need for these documents, listed in footnote three of plaintiff's Motion, outweighs defendant's interest in maintaining their confidentiality. However, after examining in camera the 54 documents that plaintiff identifies as being potentially "'helpful in determining the rate of acceptance the government would have used had it began to perform,'" Pl.'s Mot. at 20 (quoting 4/27/06 Order at 14-15), the court does not find that plaintiff's evidentiary need for these documents, listed in footnote 4 of plaintiff's Motion, outweighs defendant's interest in maintaining their confidentiality. For the foregoing reasons, defendant is hereby ORDERED to PRODUCE to plaintiff Document Nos. 132, 167, 170, 223, 255, 285, 286, 320, 323-327, 330, 340, 347, 349, 362, 381 and 260.

IV. Documents Related to the DOE's Annual Capacity Report/Annual Priority Report and the Delivery Commitment Schedules Related Thereto

After examining in camera Document Nos. 387-390 and 368, which plaintiff describes as "highly relevant," Pl.'s Mot. at 22, the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining the

confidentiality. The court agrees with defendant that "[t]hese documents are not relevant to this litigation." Pl.'s Mot. Ex. D at 9.

V. Documents Related to the DOE's Adoption of a "Market-Driven Acquisition Approach" for the Office of Civilian Radioactive Waste Management

After examining in camera Document Nos. 108 and 109, which plaintiff describes as "highly relevant to the rate and schedule issue," Pl.'s Mot. at 23, the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining their confidentiality. The court agrees with defendant that these documents are not relevant to this litigation. See Pl.'s Mot. Ex. D at 6.

VI. Document Related to Spent Fuel Storage Costs

After examining in camera Document No. 123, which plaintiff describes as "address[ing] a key disputed issue in this case," Pl.'s Mot. at 24, the court agrees and finds that plaintiff's evidentiary need for this document outweighs defendant's interest in maintaining its confidentiality. Accordingly, defendant is hereby ORDERED to produce to plaintiff Document No. 123.

VII. Documents Related to DOE Proposals to Modify or Amend the Spent Fuel Contracts

After examining in camera Document Nos. 367 and 369, which plaintiff describes as highly relevant, see Pl.'s Mot. at 24, the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining their confidentiality. The court agrees with defendant that these documents are "irrelevant to this litigation." Pl.'s Mot. Ex. D at 5.

VIII. Documents Over Which Defendant Asserts Attorney-Client Privilege Because They are "Under Legal Review"

Plaintiff requests the court to reject defendant's assertion of attorney-client privilege over documents not authored by a lawyer that defendant claims merely to be "under legal review." Pl.'s Mot. at 25. Plaintiff has previously chosen not to contest defendant's assertion of attorney-client privilege or work product protection over the 92 documents over which defendant has also claimed the deliberative process privilege. See PG&E's Opposition to Motion for Reconsideration at 13. Accordingly, the court has ruled that:

> defendant shall not be required to produce any portion of the 92 documents as to which a privilege in addition to the deliberative process privilege, i.e., attorney-client privilege or work product protection, was asserted and not challenged. However, to the extent that this Order – either directly or through its guidance – resolves in plaintiff's favor the question of whether defendant may continue to protect any of these 92 documents under the deliberative process privilege, defendant shall PRODUCE to plaintiff the documents with the attorney-client or work product material redacted.

4/27/06 Order (citations omitted). That Order remains in full force and effect. To the extent that the court has ordered any of these 92 documents to be produced in this Order, see supra Parts I-VI, defendant is entitled to produce these documents with the attorney-client or work product material redacted. The court declines to review in camera each and every document that defendant describes as "under legal review" to determine if it should be protected by the attorney-client privilege. Indeed, defendant has redacted small portions of some of the documents which plaintiff now challenges in its submission to the court for in camera review, see, e.g., Document No. 202, and therefore the court cannot ascertain whether the small amount of material redacted should in fact be privileged. When making these submissions, defendant stated that:

> because PG&E has represented that it does not intend to challenge the Government's assertions of [attorney-client] privilege, we have begun, but not completed, the process of attempting to redact privileged information from those 92 documents. To the extent that we have been able to redact particular documents from the list of 92 identified in our motion for reconsideration, we have done so before submitting the documents to the [c]ourt, both to minimize the time that the [c]ourt needs to expend reviewing particular documents and to reduce the amount of privileged material that we are presenting to the [c]ourt.

Attachment to Court Document No. 190, at 2. The court declines to revisit defendant's unchallenged assertions of the attorney-client privilege at this late date.

## IX. Conclusion

For the foregoing reasons, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART. Defendant is hereby ORDERED to produce to plaintiff, on or before Wednesday, May 17, Document Nos. 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188-89, 190-96, 202-03, 205, 207-08, 212-16, 220, 224, 226, 233, 236, 238, 240-46, 248-49, 54, 256, 262, 264, 266-70, 272, 274-84, 287, 290, 311, 313, 319, 322,

333-36, 341, 346, 348, 350, 361, 363–66, 378, 2, 12-13, 16-18, 51-53, 55-59, 62-68, 71-77, 80-103, 186-187, 289, 300-301, 384-386, 391-392, 396, 400-434, 436-459, 462, 464, 132, 167, 170, 223, 255, 285, 286, 320, 323-327, 330, 340, 347, 349, 362, 381, 260 and 123.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

**EXHIBIT 2**

# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: March 23, 2006)

PACIFIC GAS AND ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

Before the court is Defendant's Motion for Reconsideration of the Court's Order Dated March 14, 2006 (Motion or Def.'s Mot.) filed electronically on March 21, 2006. Defendant points out that "even though PG&E did not challenge the Government's additional privilege assertions under the attorney-client privilege and work product doctrine on 92 of the 458 documents at issue, this [c]ourt has ordered us to produce all of the identified 458 documents." Def.'s Mot. at 2. Accordingly, defendant requests that the court modify its March 14, 2006 Opinion "to allow the Government to continue to withhold those 92 documents over which the Government, in addition to invoking the deliberative process privilege, asserted attorney-client and/or work product protections that PG&E has not challenged." Id. at 3. The court agrees to this request. Defendant may continue to withhold these 92 documents. If plaintiff disputes defendant's assertion of attorney-client or work product protection over these 92 documents, it may so indicate, to the extent it has not done so already, in a motion to compel filed on or before Friday, April 7, 2006.

Defendant also requests the court, "to the extent that [it] continues to believe that the Government's affidavits are deficient, [to] allow [defendant] an opportunity to provide ex parte affidavits to the [c]ourt for use in place of or in conjunction with an in

camera review of these documents." Def.'s Mot. at 22. The court accepts the government's offer to provide ex parte affidavits from the government officials on whose affidavits defendant relied to invoke the deliberative process privilege, and will conduct an in camera review of those documents over which defendant continues to assert the privilege.

Accordingly, defendant is hereby ORDERED, on or before April 11, 2006, to provide to the court for review in camera two copies of ex parte affidavits addressing each document ordered by the court to be produced to plaintiff in the court's March 14, 2006 Opinion as to which defendant wishes to continue to assert protection under the deliberative process privilege. These ex parte affidavits shall come from the same government officials on whose affidavits defendant relied to invoke the deliberative process privilege, and shall describe with specificity the "precise and certain reasons" for maintaining the confidentiality of each document that continues to be withheld. In particular, each affidavit shall describe in detail why and how disclosure of a document, or any portion thereof, will harm the deliberative process of the government, and shall identify the particular portions of a document, if such portions are reasonably segregable, that will result in such harm. Accompanying the ex parte affidavits for review in camera shall be two copies of each document in question clearly marked to identify the ex parte affidavit associated with it.

The foregoing is in addition to and does not supercede the court's March 22, 2006 Order requesting plaintiff to respond to defendant's Motion on or before Monday, April 3, 2006. The parties are invited to contact the court at any time when it appears that the involvement of the court may assist in securing "the just, speedy, and inexpensive determination of [this] action." RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

**EXHIBIT 3**

Greenberg Traurig

Jerry Stouck
Tel. 202.331.3100
Fax 202.331.3101
stouckj@gtlaw.com

April 4, 2007

**VIA FACSIMILE, E-MAIL & U.S. MAIL**

Marian E. Sullivan
U.S. Department of Justice
Civil Division
Commercial Litigation Branch 1100 L Street, N.W.
Washington, D.C. 20530

**Re: Dairyland Power Cooperative v. US, No. 04-106C**

Dear Marian:

This is in response to your letter of April 2 concerning plaintiff's motion in the Dairyland case, filed under seal, addressing the government's deliberative process privilege claims.

We are perplexed by your letter for several reasons, and object to this additional effort to multiply the complexity and burden of dealing with these privilege issues.

Apart from the ambiguity in the *PG&E* protective order noted in our motion in the Dairyland case, *see* Motion to compel filed electronically 1/18/07 at 7,[1] Dairyland's motion filed under seal in its case and attaching certain of the documents in question is in full compliance with Judge Hewitt's Order even under the government's alternative reading of that Order. As emphasized in your letter, "the terms of the [*PG&E*] protective order, as amended by the May 14, 2006 order, . . . 'limit[s] disclosure and/or **use** of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only. . . .'" 4/2/07 letter Sullivan to Stouck/Shapiro at 2 (bold added in Sullivan letter). In the Dairyland case, the plaintiff by submitting the documents for *in camera* review is simply not "using" the documents in question. Fairly interpreted, the "use" Judge Hewitt had in mind is some substantive evidentiary or discovery use. Here, Dairyland *seeks* to use the documents in its

[1] As noted in that motion, given the ambiguity in the *PG&E* Order, Dairyland does not view any type of use here "in this litigation" by the undersigned attorneys (who also were "attorneys for plaintiffs") as being inconsistent with the Order. *See* Motion at 7. Of course, we also acknowledged in the motion the government's apparently differing view. *See id.*



ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance
www.gtlaw.com

case, which is precisely why it filed the motion now pending before Judge Damich. Nor have the documents been "disclosed," given that Dairyland's motion was filed *under seal.* In short, Dairyland took care to comply with Judge Hewitt's Order, not to violate it as the government asserts.

More fundamentally, it was the government that suggested *in camera* review of these documents in *PG&E, see* Gov't motion for reconsideration filed electronically March 21, 2006 in *PG&E* at 22, and Judge Hewitt accepted that suggestion and agreed that *in camera* review of the documents was appropriate. *See* Order of March 23, 2006 in *PG&E* at 2, copy attached ("The court accepts the government's offer . . . and will conduct an *in camera* review of those documents over which defendant continues to assert the privilege."). The government's reversal of position on the appropriateness of *in camera* review is not merely self-serving. Having prevailed on its argument for *in camera* review in *PG&E,* principles of judicial estoppel *preclude* the government from advancing the opposite position here. *See* James Wm. Moore et al. § 134.30 at 134.64 (3d ed. 2006) (explaining that in *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court "generally described the [judicial estoppel] doctrine as follows: when a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter, simply because his or her interests have changed, assume a contrary position, especially if it is to the prejudice of another party.").

More fundamentally still, the government in its opposition to Dairyland's motion explicitly repeated its request that the Court (i.e., Chief Judge Damich) review the documents *in camera*. *See* Gov't response to Dairyland's motion to compel filed electronically 2/28/07 at 24 n.12 ("[P]rior to the Court ordering the production of any of these documents to Dairyland, the Government asks that the Court undertake the same *in camera* review that the Court performed in Pacific Gas.").[2]

Simply stated, Dairyland has done nothing more (or less) than request Judge Damich to review the documents *in camera* in the course deciding the deliberative process privilege issues in this case – which is exactly what the government requested, and the Court did, in *PG&E,* and exactly what the government has also requested in Dairyland's own case. For reasons stated above this does not violate the *PG&E* protective order, and the government cannot properly claim that it does. For the same reasons, Dairyland does not believe it was (or is) necessary to ask Judge Damich to order *in camera* review in Dairyland's case. However, to the extent the government believes that such an order is appropriate before the Court in Dairyland accepts the

---

[2] Dairyland's position is that comprehensive *in camera* review of all the documents is not only unnecessary to decide the deliberative process privilege issues, but is an inappropriate burden on the Court and Dairyland. *See* Reply on motion to compel filed electronically 3/19/07 at 7-8. But that position does not prevent Dairyland from agreeing with the government in part, *arguendo*, and submitting for *in camera* review certain documents which demonstrate on their face they are not subject to the privilege.

government's (and Dairyland's) request for *in camera* review of the documents Dairyland submitted under seal, we encourage you to file a motion requesting such an order. Dairyland will join that motion (though as stated we do not believe it is necessary).

If the government does file such a motion, or if the government carries out its threat to file a motion to strike or take other "appropriate" action that may involve one or more filings in court, please attach this letter to the government's filing(s) so that the Court will know Dairyland's response.

Very truly yours,

Jerry Stouck

JS/jd