No. 04-106C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S MARCH 19, 2007 REPLY BRIEF AND ACCOMPANYING APPENDIX ON "DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES"

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, .D.C. 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
MARIAN E. SULLIVAN
Department of Justice
Washington, D.C. 20530

May 25, 2007

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

DISCUSSION ..... 1

I. GIVEN THE HISTORY OF THE DEVELOPMENT OF THE COURT'S MAY 14, 2006 ORDER IN *PACIFIC GAS & ELECTRIC*, DAIRYLAND'S SUGGESTION THAT IT IS AMBIGUOUS IS WHOLLY UNFOUNDED ..... 1

II. DAIRYLAND'S ASSERTION THAT IT IS ENTITLED TO SUBMIT THE PRIVILEGED DOCUMENTS FROM *PACIFIC GAS* HERE CONFLICTS WITH ITS REPRESENTATIONS REGARDING THE PROTECTIVE ORDER IN *THIS* CASE ..... 6

III. DAIRYLAND'S SUGGESTION THAT IT ONLY SUBMITTED THE PRIVILEGED DOCUMENTS FOR *IN CAMERA* REVIEW CONFLICTS WITH DAIRYLAND'S ACTUAL ACTIONS ..... 8

IV. CONTRARY TO DAIRYLAND'S ASSERTIONS, DAIRYLAND IS CLEARLY USING THE PRIVILEGED DOCUMENTS THAT IT ATTACHED TO ITS BRIEF, AND IT DISCLOSED THEM TO THIS COURT ..... 8

V. TO THE EXTENT THAT THE COURT DESIRES TO UNDERTAKE AN *IN CAMERA* REVIEW OF PRIVILEGED DOCUMENTS THAT DAIRYLAND HAS CHALLENGED, DAIRYLAND HAS IDENTIFIED NO BASIS FOR AN *IN CAMERA* REVIEW OF PRIVILEGED DOCUMENTS THE PRODUCTION OF WHICH DAIRYLAND IS NOT SEEKING TO COMPEL ..... 9

VI. DAIRYLAND'S ASSERTION THAT OUR MOTION TO STRIKE IS A "WASTE OF EVERYONE'S TIME" IGNORES THE IMPORTANCE OF THIS COURT'S ORDERS ..... 11

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

CASES PAGE(S)

Ray v. Turner,
587 F.2d 1187 (D.C. Cir. 1978) ..................... 9

Torres v. Kuzniasz,
936 F. Supp. 1201 (D.N.J. 1996) ..................... 9

MISCELLANEOUS

Black's Law Dictionary (6th ed. 1990) ..................... 8

INDEX TO SUPPLEMENTAL APPENDIX

DOCUMENT PAGE

Letter from Harold D. Lester, Jr., Department of Justice, to Jerry Stouck, counsel for Pacific Gas & Electric Company, dated May 10, 2006 ................................ 14

Pages from "Pacific Gas & Electric's Second Motion To Compel The Production Of Documents Withheld Under The 'Deliberative Process' Privilege, dated May 11, 2006 ........................................................... 23

Telecopy of draft protective order for Pacific Gas & Electric case from Robert L. Shapiro, counsel for Pacific Gas & Electric Company, dated March 22, 2005 ................................................................................... 25

Letter from Monica Freas, counsel for Pacific Gas & Electric Company, to John C. Ekman, Department of Justice, dated April 4, 2005 .......................................... 30

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S MARCH 19, 2007 REPLY BRIEF AND ACCOMPANYING
APPENDIX ON "DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD
UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES"

Defendant, the United States, respectfully submits this reply to the response that plaintiff, Dairyland Power Cooperative ("Dairyland"), filed to defendant's motion to strike pages 4, 5, 6, 15, and 16 of Dairyland's March 19, 2007 "Reply In Support of Dairyland's Motion To Compel Documents Withheld Under The 'Deliberative Process' And Attorney-Client Privileges," and pages 9 through 433 of the accompanying appendix.[1]

DISCUSSION

I. GIVEN THE HISTORY OF THE DEVELOPMENT OF THE COURT'S MAY 14, 2006 ORDER IN *PACIFIC GAS & ELECTRIC*, DAIRYLAND'S SUGGESTION THAT IT IS AMBIGUOUS IS WHOLLY UNFOUNDED

As we established in our motion to strike, Dairyland has violated the Court's order in Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl.), by attaching privileged documents from the Government to its reply on its motion to compel, in direct contravention of this Court's order in PG&E that disclosure and/or use of those documents,

[1] For the Court's information, we have also filed a motion in Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl.), seeking to enforce the Court's May 14, 2006 order in that case.

which the Court ordered produced in that case, be limited "to the attorneys for the plaintiffs in this [*PG&E*] litigation only, rather than, as stated in the Protective Order, the 'attorneys for plaintiffs in the spent nuclear fuel cases.'" App. 8-9 (Order, at 2-3 n.3 (May 14, 2006)).[2]

In response to our motion to strike, consistent with its position before we filed the motion, Dairyland continues to refuse to withdraw these privileged documents from the record of this case, instead expressing confusion regarding the limitations that the Court imposed in PG&E on the disclosure and/or use of the privileged documents that were produced in PG&E, asserting that the attorneys in PG&E are the same attorneys for Dairyland and, therefore, apparently are not restricted in their ability to rely upon the documents in other SNF cases. Response, at 1. Accordingly, they express surprise that we would assert that counsel for Dairyland are unable to submit the privileged documents that they obtained in the PG&E case into the record of other SNF cases involving their other SNF clients. Id. The history preceding the Court's issuance of its May 14, 2006 order in PG&E belies Dairyland's assertion.

Before the Court issued a protective order governing the use of confidential and protected material in the PG&E case on April 21, 2005, counsel for PG&E sent the Government a draft protective order that limited the use of confidential documents "by the receiving party solely for the purpose of conducting the above-entitled litigation [i.e., the PG&E case] and not for any business or other purpose whatsoever, except as provided in this agreement and order." Supp. App. 29 (emphasis added). In response to our concern that Dairyland might produce confidential documents relevant to all of the SNF cases and that the Government would be precluded under

---

[2] "App. ___" refers to the appendix to our motion to strike, filed May 3, 2007. "Supp. App. ___" refers to the supplemental appendix to this reply. "Response, at __" refers to the response brief that Dairyland filed on May 9, 2007.

PG&E's draft protective order from using those universally-relevant documents in other SNF cases, PG&E modified this language to limit use of such documents "for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever." Supp. App. 33 (emphasis added); see Supp. App. 30 ("we have addressed the government's concern that language pertaining to the use of confidential material in other SNF cases or by attorneys in other SNF cases was lacking and we have added such language at the outset and in paragraphs 4 and 5 to the proposed order"). Accordingly, counsel for PG&E clearly understood that the purpose of the protective order language was to allow the sharing and use of protected documents in all SNF cases in which protective orders had been issued.

During discovery in the PG&E case, PG&E filed a motion to compel the production of documents that the Government had withheld based upon assertions of deliberative process privilege by the Department of Energy ("DOE") and the Nuclear Regulatory Commission ("NRC"). After extensive briefing on the original motion and the Government's motion for reconsideration, the Court issued an order on April 27, 2006, discussing some of the documents over which the Government had claimed privilege, using them as examples to identify the types of documents that the Government should produce because PG&E's need for the documents outweighed the Government's concerns about disclosure and, alternatively, the types of documents over which the Government's interest in protection outweighed PG&E's need for the information. Pacific Gas & Elec. Co. v. United States, 71 Fed. Cl. 205 (2006). Specifically, the Court provided this guidance "for the purpose of permitting the parties to analogize these examples to disputed documents not mentioned in this Order and thereby to resolve any further

discovery disputes involving the deliberative process privilege that may arise." Id. at 210. The Court ordered the Government to produce those documents discussed in its April 27, 2006 order about which the Court had found that PG&E's evidentiary need outweighed the Government's concerns regarding disclosure, and it denied PG&E's motion to compel with regard to those documents about which the Court found no such need. The Court then ordered that, "[t]o the extent that the parties are unable to come to an agreement with regard to any of the remaining documents withheld under the deliberative process privilege . . ., plaintiff may . . . move the court to compel production . . . based on a showing of evidentiary need that outweighs the harm that disclosure of the documents may cause to defendant." Id. at 216.

Subsequently, in light of the Court's April 27, 2006 order, the parties engaged in discussions to attempt to resolve disputes about the remaining documents over which the Government had invoked the deliberative process privilege. With regard to some of those documents, the Government agreed that the documents were of the same kind as those that, in its April 27, 2006 order, the Court had indicated PG&E's evidentiary need would outweigh the Government's concerns about disclosure. However, we informed counsel for PG&E that, "[b]ecause we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with DOE, to have any grounds for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents." Supp. App. 15-16. In response, PG&E filed a motion to compel on May 11, 2006, asking the Court to compel the Government to produce the documents that the Government agreed fell within the document production guidance in the Court's April 27, 2006 order, acknowledging the

Government's concern about waiver of the privilege in other SNF cases as the basis for its request. App. 23. PG&E also requested that the Court order the Government to produce additional documents over which the Government had invoked the deliberative process privilege and that, in light of the Court's April 27, 2006 order, the Government believed should retain the privileged status given that PG&E had no overriding evidentiary need for them.

By order dated May 14, 2006, the Court granted PG&E's motion, in part, and issued an order compelling the Government to produce the documents that it agreed fell within the categories of documents to be produced pursuant to the Court's April 27, 2006 order. App. 7-13. With regard to many of the other documents at issue over which the Government had invoked the deliberative process privilege, the Court found that the Government had established that they were protected by the deliberative process privilege and that PG&E's evidentiary need did not outweigh the Government's interest in maintaining their confidentiality. App. 10-11 (Order, at 4-5 (May 14, 2006)). With regard to other documents, although finding that the documents met the requirements of the deliberative process privilege, the Court found that PG&E had established that its evidentiary need for the documents outweighed the Government's interest in maintaining their confidentiality, and the Court ordered production of those documents. App. 9-11 (Order, at 3-5 (May 14, 2006)).

However, in the May 14, 2006 order that required the production of these documents, and in response to the Government's concern that other spent nuclear fuel plaintiffs might not have the same evidentiary need for the otherwise privileged documents in other cases, the Court amended the pre-existing protective order entered in the case to limit distribution and use of the documents, as follows:

> Every document ordered to be produced by this Order shall be subject to the protective order issued by the Court on April 21, 2005. However, for the purposes of this Order, the Court AMENDS the Protective Order to limit the disclosure and/or use of all documents mentioned in this Order to the attorneys for the plaintiffs in this litigation only, rather than, as stated in the Protective Order, the "attorneys for plaintiffs in the spent nuclear fuel cases."

App. 8-9 (Order, at 2-3 n.3 (May 14, 2006)) (citing Protective Order, entered April 21, 2005) (emphasis in original). That is, although the prior protective order allowed SNF plaintiffs to share protected documents with other counsel and in other SNF cases in which protective orders had been issued, the Court imposed a more stringent limitation upon the disclosure and use of the documents that the Court, through its May 14, 2006 order, required the Government to produce to counsel for PG&E. Pursuant to the Court's May 14, 2006 order, the Government produced 211 documents, all marked with a protective order legend that read as follows: "Restricted Distribution, Protected Material, With Non-Government Distribution Limited To Attorneys For PG&E, As Defined By Note 3 In the Court's Order Dated May 14, 2006 (PG&E v. US, 04-74) For Use Only In PG&E Case."

Dairyland's suggestion that it does not understand the PG&E order dated May 14, 2006, to preclude counsel's ability to use privileged documents from the PG&E case in other SNF cases in which counsel for PG&E serves as counsel is wholly unfounded.

## II. DAIRYLAND'S ASSERTION THAT IT IS ENTITLED TO SUBMIT THE PRIVILEGED DOCUMENTS FROM *PACIFIC GAS* HERE CONFLICTS WITH ITS REPRESENTATIONS REGARDING THE PROTECTIVE ORDER IN *THIS* CASE

Dairyland's representations that the May 14, 2006 order in PG&E does not preclude it from attaching the privileged documents at issue here to its reply brief and from discussing them in its brief directly conflicts with its representations in its July 27, 2006 "emergency motion" for

a special protective order in this case. In that motion, Dairyland requested that the Court impose a special protective order in this case, limiting use of protected documents outside of this case. In response to our complaints regarding that restriction, Dairyland identified the importance of confidentiality and that "[u]se of such documents in another [SNF] case would result in automatic breach of . . . confidentiality agreements because the plaintiff in the other [SNF] case would get access." Dairyland's Reply In Support Of Its Emergency Motion For Entry Of Protective Order, at 1-2 (Aug. 8, 2006). As a result, the Court entered the following language to preclude the use of protected documents in this case in any other SNF case: "Confidential Material shall be used by the receiving party solely for the purpose of conducting this litigation and not for any business or other purpose whatsoever . . . ." Order ¶ 6 (Aug. 17, 2006).

The relevant language of this Court's August 17, 2006 protective order is virtually identical to that which the Court used in its May 14, 2006 order in PG&E. Apparently, though, using Dairyland's interpretation of the PG&E order, the Government in this case should be able to file protected documents that Dairyland produces to the Government here and attach them to pleadings in other SNF cases, so long as the Government submits them under seal. Clearly, though, that was neither Dairyland's nor the Court's intent in requesting or issuing the August 17, 2006 protective order in this case. Dairyland's current musings about ambiguity in the PG&E order, and its efforts to misinterpret it, directly conflict with its own past representations about the use of the language "in this litigation only."

## III. DAIRYLAND'S SUGGESTION THAT IT ONLY SUBMITTED THE PRIVILEGED DOCUMENTS FOR *IN CAMERA* REVIEW CONFLICTS WITH DAIRYLAND'S ACTUAL ACTIONS

Dairyland also claims that its lawyers "submit[ted] the documents for *in camera* review" and that, as a result, it is "not 'using' the documents." Response, at 2. Dairyland's assertion conflicts with its actions. The term "in camera" means "[i]n chambers; in private." Black's Law Dictionary 760 (6th ed. 1990). Dairyland did not submit the documents for *in camera* review. Although Dairyland filed its reply brief under seal, it did not submit the privileged documents included in its appendix or discussed in its reply brief to the chambers of the judge assigned to this case for *in camera* review. Instead, it filed them with the Court in the record of this case. We cannot understand Dairyland's representation that its filing of privileged documents with the Clerk's office, and its discussion of them in a brief filed in the record of the case, somehow constitutes a submission of the privileged documents for *in camera* inspection.

## IV. CONTRARY TO DAIRYLAND'S ASSERTIONS, DAIRYLAND IS CLEARLY USING THE PRIVILEGED DOCUMENTS THAT IT ATTACHED TO ITS BRIEF, AND IT DISCLOSED THEM TO THE COURT

Dairyland claims that its attorneys have not "disclosed the documents" outside the PG&E litigation because "they were submitted to this Court under seal" and that "[t]his is the opposite of disclosure." Response, at 2. As we discussed at page 8 of our motion to strike, Dairyland plainly has disclosed these documents to the Court in this case to support its motion to compel.

Similarly, Dairyland claims that it has not "used" the documents. Response, at 2. Dairyland claims that it "*seeks* to use the documents in its case, which is precisely why it filed a motion to compel production of the documents." Response, at 2 (italics in original). Although Dairyland claims that it is seeking the Court's permission to "use" the documents that it attached

to its reply brief, many of the documents that Dairyland included in that appendix are not even documents that it is currently seeking to compel the Government to produce. Specifically, as we discussed at page 9 of our motion to strike, many of the documents that Dairyland attached to its reply brief relate to Greater-Than-Class-C radioactive waste ("GTCC waste"), but, in its motion to compel, Dairyland disclaimed that it was currently seeking to compel the production of such documents. Dairyland is plainly not "seek[ing permission] to use the [GTCC-related] documents in its case," given that it is not seeking their production here, but, instead, is already "using" them in this case to attempt to convince this Court to find that the Government's deliberative process privilege claims over other documents are invalid. Further, for the reasons discussed at pages 7 and 8 of our motion to strike, Dairyland is clearly "using" the documents.

V. TO THE EXTENT THAT THE COURT DESIRES TO UNDERTAKE AN *IN CAMERA* REVIEW OF PRIVILEGED DOCUMENTS THAT DAIRYLAND HAS CHALLENGED, DAIRYLAND HAS IDENTIFIED NO BASIS FOR AN *IN CAMERA* REVIEW OF PRIVILEGED DOCUMENTS THE PRODUCTION OF WHICH DAIRYLAND IS NOT SEEKING TO COMPEL

Dairyland asserts that our motion is "completely disingenuous" because, "throughout the course of proceedings on the government's deliberative process privilege claims, the government has been requesting *in camera* review [of] the documents in question." Response, at 2. First, we have never suggested that *in camera* review is necessary or appropriate every time that a privilege claim is challenged. As we have explained in prior briefing in other SNF cases, the "purpose of the rules governing the assertion of privileges is, in part, to avoid having the court expend its resources in reviewing every document that every defendant claims is privileged." Torres v. Kuzniasz, 936 F. Supp. 1201, 1213 (D.N.J. 1996); see Ray v. Turner, 587 F.2d 1187, 1995 (D.C. Cir. 1978) (in camera inspection should not be routinely granted on theory that "it

can't hurt"). However, if the Court believes that such a review is warranted, we are always prepared to provide the Court with the necessary documentation, and, before it orders production of privileged documents based upon Dairyland's claims of evidentiary need, in camera review would be warranted.

However, we cannot identify any basis for an in camera review of privileged documents that Dairyland admits are irrelevant to this case and that the production of which it is not seeking to compel. Dairyland's use of such privileged documents in this case is wholly inappropriate. To the extent that the Court wishes to review documents over which the Government has invoked the deliberative process privilege, along with the appropriate declarations from agency officials identifying and explaining the harm that disclosure would create, we do not object to that type of review. In that situation, the Court should strike the privileged documents that Dairyland filed in the record of this case, but order us to provide copies of the documents over which we have invoked the deliberative process privilege and that are the subject of Dairyland's motion to the Court for in camera review.[3] However, Dairyland's effort to create prejudice through the Court's review of other privileged documents that are not relevant to this case is simply unfounded, and we cannot acquiesce in Dairyland's improper use of such documents.

---

[3] Dairyland also asserts that it is "disingenuous" of the Government not to make a formal motion that the Court review all of the Government's privileged documents in camera, which it believes would somehow mitigate Dairyland's violation of the PG&E protective order. Response, at 4-5. However, Dairyland, not the Government, filed the motion to compel at issue here. To the extent that Dairyland wanted an in camera review of documents as part of that motion, it should have requested it in its motion. It did not. We cannot understand Dairyland's position that it is the Government's responsibility to assist Dairyland in supporting its motion to compel or that our filing of such a motion would somehow rectify Dairyland's violation of the PG&E protective order.

## VI. DAIRYLAND'S ASSERTION THAT OUR MOTION TO STRIKE IS "A WASTE OF EVERYONE'S TIME" IGNORES THE IMPORTANCE OF COMPLIANCE WITH THIS COURT'S ORDERS

Dairyland asserts that our motion is "a waste of everyone's time" and "should be summarily denied." Response, at 5. Our motion is intended to ensure compliance, both now and in the future, with this Court's orders governing protected material. Dairyland's seemingly brazen disregard of the Court's May 14, 2006 order in PG&E and its arrogant refusal to comply with it evidences that this motion is necessary to indicate to Dairyland the importance of compliance with the Court's orders. In fact, given Dairyland's concerns over the need for special protections in the protective order entered in this case, see Dairyland's Emergency Motion For Entry Of Protective Order And Stay Of The Parties' Exchange Of Confidential Material (filed July 27, 2006), counsel's disregard of obligations imposed by protective orders entered in other SNF cases is especially surprising.

## CONCLUSION

For the foregoing reasons, and those set forth in our motion to strike, the Government respectfully requests that the Court strike pages 4, 5, 6, 15, and 16 of Dairyland's reply brief and pages 9 through 433 of the appendix to Dairyland's reply brief.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SONIA M. ORFIELD
MARIAN E. SULLIVAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/Russell A. Shultis by Harold D. Lester, Jr.
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0897
Fax: (202) 307-2503

May 25, 2007

Attorneys for Defendant

# SUPPLEMENTAL APPENDIX

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone: (202) 305-7562
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

May 10, 2006

VIA TELECOPY AND FIRST CLASS MAIL

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Re: *Pacific Gas & Electric Co. v. United States*, Nos. 04-0074C, 04-0075C (Fed. Cl.)

Dear Mr. Stouck:

This letter is our last of three letters responding to your letter dated May 5, 2006, which we apparently received at 6:26 p.m. on that date. As we explained in our letter dated May 9, 2006, because of the volume of documents that you have identified in your letter and our need to confirm with the various interested agencies and offices regarding production of these documents, we have addressed the documents identified in your May 5, 2006 letter separately, addressing documents over which the deliberative process privilege was invoked by Messrs. Friedman and Marcinowski in one letter dated May 9, 2006, and those over which the privilege was invoked by Mr. Virgilio in a second letter sent to you earlier today. In this letter, we address the documents identified in your May 5, 2006 letter that Mr. Milner originally identified as subject to the deliberative process privilege. Those documents are Document Nos. 108, 112, 115, 118, 119, 122 through 125, 127, 129 through 132, 135 through 138, 140, 141, 143, 145, 146, 150, 153, 154, 162, 167, 170, 171, 178, 185, 188 through 193, 195 through 233, 235 through 238, 240 through 246, 248, 249, 251 through 292, 299 through 301, 303, 308, 310 through 314, 319, 322, 331 through 336, 338, 340 through 342, 346 through 356, 361 through 367, 369 through 379, 381 through 383, and 387 through 390.[1]

---

[1] As we stated in our letter dated May 9, 2006, our review indicates that, of the documents that Mr. Milner originally identified as subject to the deliberative process privilege and that PG&E asked us to produce in its May 5, 2006 letter, Mr. Milner elected to withdraw his invocation of that privilege over the following documents, which were produced to you on April 18, 2006: Document Nos. 132, 221, 223, 286, and 332. After you review your records, please let us know



PAGE 2/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

PG&E has requested production of the majority of documents over which the Government invoked the deliberative process privilege, and we have attempted to respond to PG&E's demands as quickly as possible. To the extent that we inadvertently fail to address below one or more of the requested documents over which Mr. Milner invoked the deliberative process privilege, please let us know, and we will attempt to address any omitted documents as quickly as we can.

Documents Similar To Those That The Court Has Ordered The Government To Produce

In the Court's order dated April 27, 2006, the Court ordered the Government to produce several documents for which Mr. Milner had invoked the deliberative process privilege, finding that "defendant's interest in maintaining the confidentiality of the documents – while described with sufficient particularity – is outweighed by plaintiff's evidentiary need for the documents." Order, at 14 (Apr. 27, 2006). With regard to each set of documents that the Court ordered the Government to produce, the Court found that "[i]t appears to the court that these documents regarding the potential rate of acceptance by the nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it began to perform the Standard Contract on January 31, 1998 – are highly relevant to the litigation and that there may be no other way for plaintiff to obtain evidence that serves the same purpose as these documents." Id. We disagree that the documents that the Court ordered us to produce are relevant to this litigation, in part because (1) they have no effect upon defining the scope of DOE's contractual obligation to accept SNF under the Standard Contract and the extent to which DOE breached that specific contractual obligation and (2) they are unrelated to DOE's performance plan had it begun SNF acceptance in 1998.

Nevertheless, based upon the rationale that the Court identified for determining whether PG&E's need for particular documents outweighs the Government's harm, it appears that the following documents which PG&E asked us to produce in its May 5, 2006 letter have a similar subject matter to those that the Court ordered us to produce in its April 27, 2006 order, in that they either mention or discuss rate of SNF acceptance issues: Document Nos. 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188, 189, 190, 191, 192, 193, 195, 196, 202, 203, 205, 208, 207, 212, 213, 214, 215, 216, 220, 224, 226, 233, 236, 238, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 254, 256, 262, 264, 266, 267, 268, 269, 270, 272, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 287, 290, 311, 313, 319, 322, 333, 334, 335, 336, 341, 346, 348, 350, 361, 363, 364, 365, 366, and 378. Although, as previously stated, we disagree that all documents relating to the rate of SNF acceptance are relevant to or admissible in this litigation, we will not contest that these documents fall within that category for purposes of the Court's April 27, 2006 decision. Because we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current or future litigation with DOE, to have any grounds

---

if you are missing any of these documents. Otherwise, we will assume that we need take no further action with regard to those documents.

for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents.[2]

Documents That The Government Should Not Have To Produce

Document No. 112, And Similar Documents

In your May 5, 2006 letter, you assert that, "[b]ased on the Court's 'guidance'" in its April 27, 2006 order on reconsideration, the Government must produce Document No. 112. Yet, in its April 27, 2006 order, the Court specifically addressed Document No. 112. See Order, at 9 (Apr. 27, 2006). The document, which is discussed in paragraph 10 of Mr. Milner's in camera declaration, relates to an options paper upon the question of interim storage of radioactive waste. See Milner Declaration ¶ 10. As Mr. Milner stated, "[t]he specific decision at issue was whether DOE would elect to store spent nuclear fuel in an interim storage facility, and this document reflects DOE's considerations and deliberations that relate to that decision." Id. After reviewing this description and, presumably, the document that had been submitted for in camera review, the Court found that the document was of the type "that the deliberative process privilege is designed to protect" and that "it is not readily apparent to the court why plaintiff has a 'compelling need' for the document[] . . that outweighs the harm that disclosure of the document[] may cause to defendant." Order, at 9 (Apr. 27, 2006). We agree with the Court, as we are unable to identify any reason that PG&E would need access to such policy deliberations – regardless of the ultimate decision that was made – to support or defend its damages claims in this case. Further, PG&E has offered us no explanation as to why it has a "compelling need" for the document, despite the analysis by the Court. Without any explanation of need, we have no basis to agree to produce this document over Mr. Milner's invocation of the deliberative process privilege.

Document Nos. 153, 154, 162, 167, 170, 171, and 178 are very similar to Document No. 112 and are described in paragraphs 11 through 14 of Mr. Milner's in camera declaration. For the same reasons that Document No. 112 is properly protected by the deliberative process privilege, these documents are properly protected. In addition, some of these documents discuss potential settlement options relating to the nuclear utilities involved in lawsuits against DOE, many of which are currently plaintiffs in the Court of Federal Claims. We see no reason that the utility plaintiffs should review DOE's past evaluation of possible settlement options when the utility plaintiffs have not produced similar information to the United States.

Finally, with regard to all of these documents, the Government invoked not only the deliberative process privilege, but also the presidential communications privilege. PG&E did not challenge that privilege claim, and PG&E previously informed the Court that it did not intend to challenge privilege claims other than the deliberative process privilege. We would object to any

[2] Any order requiring us to produce these documents should be subject to redactions relating to any other privilege claims that we have invoked with regard to any of these documents.



PAGE 4/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

attempt by PG&E to raise a new challenge to the presidential communications privilege claim at this point in the litigation.

Document No. 377, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document No. 377, which is discussed in paragraph 34 of Mr. Milner's declaration. That document "reveals the deliberations within DOE regarding the identification of the rail corridor and contains a detailed explanation as to why one corridor was recommended over the others." Milner Declaration ¶ 34. Contrary to your representation that the Court's order indicates that the Government must produce this document, the Court actually indicated in its order that, like Document No. 112, "it is not readily apparent to the court why plaintiff has a 'compelling need' for the document . . . that outweighs the harm that disclosure of the document may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about DOE's internal deliberations regarding rail corridors. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document No. 377, Document Nos. 294 and 296 (discussed in paragraph 49 of the Milner declaration) relate to DOE deliberations regarding possible transportation alternatives for transporting SNF to the repository site, developed for use in preparing a budget submission to the Office of Management and Budget. Similarly, Document Nos. 131 and 379 are draft presentations "regarding transportation options for Yucca Mountain." Milner Declaration ¶ 67. For the same reasons identified in relation to Document No. 377, we do not understand the relevance of or "compelling need" for these documents to support PG&E's damages claims or to rebut the Government's defenses. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 367 and 369, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document Nos. 367 and 369, which are discussed in paragraph 36 of Mr. Milner's declaration. Those draft presentations, titled "Proposed Approach for Initiating Modifications to Utility Disposal Contracts," represent one individual's preliminary views on the contract terms to be modified, with the agreement of the contract holders, if modifications are undertaken. Milner Declaration ¶ 36. Contrary to your representation that the Court's order indicates that the Government must produce these documents, the Court actually indicated that, like Document Nos. 112 and 377, "it is not readily apparent to the court why plaintiff has a 'compelling need' for the documents . . . that outweighs the harm that disclosure of the documents may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about DOE's internal deliberations regarding possible future modifications of the Standard Contract. To the contrary, unless and until parties propose and agree to contract modifications in the future, the existing lawsuits, including PG&E's, must proceed upon the basis of the contract as it

currently exists, as it is that document that defines the parties' rights and obligations. Accordingly, particularly since PG&E has not provided us with any information as to its "compelling need" for these documents, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document Nos. 367 and 369, Document No. 353 identifies a suggestion, here by a contractor, regarding a possible contract change. Again, this suggestion, which has not been adopted by DOE, is irrelevant to this litigation, and we have identified no "compelling need" by PG&E for this document.

Document Nos. 228, 231, and 257, And Similar Documents

You also assert in your May 5, 2006 letter that, based upon the Court's April 27, 2006 order, the Government must produce Document Nos. 228, 231, and 257, which are discussed in paragraph 45 of Mr. Milner's declaration. These documents created by DOE personnel present "possible activities that could be undertaken to reduce the cost and schedule for the construction of the repository and opinions as to the likelihood of successfully implementing each of the ideas." Milner Declaration ¶ 45. Again, contrary to PG&E's representations that the Court's order indicates that the Government must produce this document, the Court actually indicated in its order that "it is not readily apparent . . . why plaintiff has a 'compelling need' for the document . . . that outweighs the harm that disclosure of the document may cause to defendant." Order, at 10 (Apr. 27, 2006). PG&E has provided no explanation to us regarding the reason that it has a "compelling need" for information about the costs of the development and construction of the repository at Yucca Mountain to present its damages claims here. To the extent that documents relating to DOE's schedule for constructing a repository in the future were ever relevant in this litigation, it is no longer even arguably relevant following the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), and this Court's order eliminating future damages from the trial of this matter. Accordingly, particularly without any explanation from PG&E regarding the relevance of these documents to this litigation or to its "compelling need" for the documents, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Like Document Nos. 228, 231, and 257, numerous other documents identified in Mr. Milner's declaration relate to proposed schedules for the repository development in the future, as well as the effect of budgetary issues upon the cost and schedule for the development of the repository and/or the submission of the License Application for the repository, unrelated to the rate at which DOE will accept, or "would have" accepted, nuclear utilities' SNF once SNF acceptance begins. Those documents are Document Nos. 113, 129, 130, 198, 199, 200, 201, 206, 210, 211, 217, 218, 219, 232, 259, 265, 292, 342, 356, 362, 370, 373, 374, 375, and 376 (discussed in paragraphs 35, 38, 39, 40, 41, 42, 43, 44, and 47 of the Milner declaration). Another document, Document No. 331 (paragraph 37 of the Milner declaration), relates to DOE's evaluation of the best manner in which to respond to criticisms from the Nuclear Waste Technical Review Board regarding the planned design and operation of the geologic repository at

Yucca Mountain. Document No. 115 (discussed in paragraph 28 of the Milner declaration) relates to the deferral of final waste package closure and emplacement. Other documents, including Document Nos. 293, 312, 314, 355, and 371 (discussed in paragraphs 33, 48, 75, and 81 of the Milner declaration), simply relate to budget issues, unrelated to the rate at which DOE will accept or would have accepted SNF once acceptance begins. Finally, Document Nos. 197, 204, 209, 222, 225, 227, 229, 230, 235, 237, 255, 258, 260, 270, 273, 291, and 354 (discussed in paragraphs 62 and 72 of the Milner declaration) deal with possible efforts to expedite the commencement of SNF acceptance in the future while attempting to reduce program costs, without any discussion of rates of SNF acceptance after that acceptance commences. We can identify no "compelling need" by PG&E for any of these documents in this litigation, and PG&E has not identified any need to us.

Remaining Documents

With regard to the remaining documents that PG&E has asked us to produce despite Mr. Milner's invocation of the deliberative process privilege, PG&E has not identified any compelling need for any of those documents, as discussed below:

> Document No. 108: Document No. 108, which is discussed in paragraph 27 of Mr. Milner's declaration, relates to a suggestion that DOE adopt a "market-driven acquisition approach" for contracting of support services when DOE began the acceptance and transport of SNF from nuclear utilities. We do not understand how the manner in which DOE will contract with third parties to assist it in its SNF acceptance and transportation obligations under the Standard Contract has any relevance to PG&E's damages claims. Further, PG&E has not identified any "compelling need" for this document. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.
>
> Document Nos. 136, 137, 141, 261, and 263: These documents, which are discussed in paragraph 31 of Mr. Milner's declaration, are drafts of a graphic presentation regarding repository design options (titled "Repository Design Evolution for License Application – Legal Weight Truck Options" and "Modular Construction System Evaluation"), along with a meeting agenda for Dr. Chu regarding potential repository design changes. These issues seem far removed from the damages claims that PG&E is making in this litigation, rendering these documents irrelevant to PG&E's case. PG&E has not identified any "compelling need" for these documents. Accordingly, we have no basis for withdrawing the privilege claim over these documents that Mr. Milner invoked.

Document No. 185: Document No. 185, which is discussed in paragraph 23 of Mr. Milner's declaration, relates to DOE's consideration of a request from General Atomics, a research reactor, to remove DOE-owned SNF and TRIGA fuel from General Atomics' site. PG&E is not a research reactor. We cannot understand the relevance of this document to PG&E's damages claims, and PG&E has not identified any "compelling need" for this document to assist it in its case. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document No. 289: Document No. 289, which is discussed in paragraph 25 of Mr. Milner's declaration, relates to an internal policy evaluation regarding which office within DOE should be transferred responsibility for various responsibilities of DOE's Office of Environmental Management, including responsibility for Greater-Than-Class-C radioactive waste ("GTCC waste"). For the same reasons that we discussed in our letter dated May 9, 2006, we cannot understand either the relevance of or the "compelling need" for documents relating to consideration of which office within DOE will have responsibility for developing disposal options of GTCC waste. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document No. 292: Document No. 292, which is discussed in paragraph 46 of Mr. Milner's declaration, is an e-mail and attached graph prepared by a contractor in response to a request for a summary of the utilities' estimates of at-reactor storage costs for SNF, prepared for use in developing a budget request. Milner Declaration ¶ 46. The document is not segregated by individual utility and provides no information other than a very general identification of at-reactor storage costs, as identified and claimed by the nuclear utilities. We can see no relevance to or "compelling need" for this information in this litigation. Accordingly, we have no basis for withdrawing the privilege that Mr. Milner invoked.

Document No. 299: We cannot identify any relevance of or "compelling need" for this document, which is discussed in paragraph 78 of the Milner declaration, in this litigation.

Document Nos. 300 and 301: Document Nos. 300 and 301, which are discussed at paragraph 73 of Mr. Milner's declaration, relate to DOE's deliberations regarding comments upon the NRC's proposed revisions to a rule in response to a petition for

rulemaking from Portland General Electric Company ("Portland"). We discussed that rulemaking in the letter that we sent you earlier today relating to Mr. Virgilio's declaration. For the same reasons discussed there, these two documents are irrelevant to this case and, further, PG&E has identified no "compelling need" for their production.

Document No. 303: This document, which is discussed in paragraph 74 of the Milner declaration, relate to the Fiscal Year 2001 budget. We can identify no relevance of this document to this litigation, particularly following the Indiana Michigan decision.

Document Nos. 307 and 310: In its April 27, 2006 order, the Court stated that it was unable to identify any "compelling need" by PG&E for Document Nos. 306, 308, and 309, which are documents relating to the Office of Inspector General. See Order, at 11-12. Document Nos. 307 and 310 are similar to Document Nos. 306, 308, and 309. For the reasons discussed by the Court, we have not identified any "compelling need" by PG&E for these documents.

Document No. 351: This document, which is discussed at paragraph 79 of the Milner declaration, relates to an exchange with the Governor of Nevada regarding the safe storage of SNF in dry storage facilities. This document is irrelevant to this litigation, as neither party has disputed safety issues, but it is a sensitive subject between DOE and Nevada. Accordingly, particularly in light of the lack of relevance of this document to this litigation, PG&E cannot have a compelling need for its production here.

Document No. 372: Document No. 372, which is discussed in paragraph 30 of Mr. Milner's declaration, forwards a working draft of an audit report on the "Licensing Support Network" ("LSN") for the Yucca Mountain repository. As you know, the LSN is a computerized database of documents relating to the license proceedings for Yucca Mountain, which DOE is required by statute to develop. We cannot identify any relevance of the LSN for Yucca Mountain to PG&E's damages claims or any "compelling need" that PG&E has for documents about the LSN for use in this litigation. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.



PAGE 9/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

Document Nos. 381, 382, and 383: These documents, which Mr. Milner discusses in paragraph 32 of his declaration, relate to a briefing for Under Secretary Card regarding the potential design of the repository at Yucca Mountain. Under Secretary Card was provided with recommendations on matters such as how DOE should proceed with the license application for the repository. These documents do not discuss the rate at which DOE would accept nuclear utility SNF. Accordingly, based upon the Court's April 27, 2006 order, we cannot see either the relevance of or PG&E's "compelling need" for these documents. Accordingly, we have no basis for withdrawing the privilege claim that Mr. Milner invoked.

Document Nos. 387, 388, and 390: These documents, which are discussed in paragraph 29 of the Milner declaration, relate to the Office of Civilian Radioactive Waste Management's initiation of the delivery commitment schedule submission process in 2004. These documents are not relevant to this litigation, given that they relate to DOE's effort to begin SNF acceptance in 2010 at a Federal repository and that they do not affect any activities in the "but for" world. Nevertheless, to the extent that we are required or agree to produce these documents, we have identified an error in our privilege log, which should have identified an attorney-client designation for a small portion of each of the three documents. We would seek to redact that information protected by the attorney-client privilege prior to any production of the documents.

We have been working diligently to respond to your letter dated May 5, 2006. To the extent that we identify any omissions in our discussion above or our other letters sent yesterday and earlier today, we will attempt to identify those omissions and respond accordingly. As we have previously stated, we are more than willing to discuss any remaining disagreements with you, at your convenience.

Very Truly Yours,

Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch



PAGE 10/10 * RCVD AT 5/10/2006 10:19:22 PM [Eastern Daylight Time] * SVR:WDC-PS1/3 * DNIS:5 * CSID: * DURATION (mm-ss):04-04

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically May 11, 2006

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-0074C, into which has been consolidated No. 04-0075C (Judge Hewitt) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PACIFIC GAS & ELECTRIC'S SECOND MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD UNDER THE "DELIBERATIVE PROCESS" PRIVILEGE**

Plaintiff Pacific Gas & Electric Company ("PG&E") moves this Court pursuant to RCFC 37(a)(2) to compel the government to produce 209 responsive documents that the government continues to withhold from disclosure due to its "deliberative process" privilege claims. The government's stance is inconsistent with the express directions and other "guidance" in the Court's April 27, 2006 Order as to how the parties should resolve this discovery dispute by determining where PG&E's "evidentiary need outweighs . . . the harm of disclosure . . . to the defendant." 4/27/06 Order at 7.

Pursuant to the Court's April 27 Order, the government has produced the 29 "example" documents "regarding the potential rate of acceptance by the government of SNF from nuclear utilities – which could be helpful in determining the rate of acceptance the government would have used had it begun to perform the parties' contract on January 31, 2006." *Id.* at 14, 15 (two places). The Court ordered these documents, which it characterized as "examples," produced because they are "highly relevant to this litigation and

at A50-A58). As noted above, in the first two letters the government refused to voluntarily release any documents described in any of its employee declarations other than Mr. Milner's, and specifically refused to release any GTCC waste-related documents. In its second May 10 letter, the government, while reiterating its disagreement with the Court's April 27 Order, did agree that based on the guidance in that Order, documents covered by Mr. Milner's declaration with the following "reference numbers" on PG&E's "Table of Challenges" accompanying its original motion to compel (a copy of the Table is attached as Exhibit A at A1-A39 for ease of reference) should be produced:

> 118, 119, 122, 124, 125, 127, 135, 138, 140, 143, 145, 146, 188-89, 190-96, 202-03, 205, 207-08, 212-16, 220, 224, 226, 233, 236, 238, 240-46, 248-49, 54, 256, 262, 264, 266-70, 272, 274-84, 287, 290, 311, 313, 319, 322, 333-36, 341, 346, 348, 350, 361, 363–66, 378.

Exh. D at A51.

That letter also states on pp. 2-3 (A51-A52): "[b]ecause we do not want to create any opportunity for any SNF plaintiff, or any plaintiff in other current of future litigation with DOE, to have any grounds for arguing that the Government somehow waived any privilege claims relating to the rate of SNF acceptance, we request that you ask the Court for an order compelling the production of these documents," subject to any appropriate other claims of privilege. Accordingly, PG&E hereby requests that the Court enter an order directing the release of the documents listed above, which are also listed on p. 2 of the government's attached second May 10 letter, subject to redactions for any proper claims of another privilege.

In its responsive letters, the government pointed out that certain of the documents requested in PG&E's May 5, 2006, letter had been previously produced by the government. In an effort to get the May 5 letter to the government before the weekend, it was drafted in

SPRIGGS & HOLLINGSWORTH
ATTORNEYS AND COUNSELORS
1350 I STREET, N.W., 9TH FLOOR, WASHINGTON, D.C. 20005-3305
OFFICE (202) 898-5800 TELECOPIER (202) 682-1639

## TELECOPY TRANSMISSION COVER SHEET

FROM: Robert L. Shapiro, Esq.

DATE: March 22, 2005

NUMBER OF PAGES: 11 (including Cover Sheet)

ACCOUNT NUMBER: 0419.0001 (six digit code)

TO THE FOLLOWING:

| NAME | FIRM/COMPANY | TELECOPIER NO. |
|---|---|---|
| Harold D. Lester, Jr., Assistant Director<br>John C. Ekman, Trial Attorney | Department of Justice<br>Commercial Litigation Branch<br>Civil Division – Classification Unit | 202/307-2503 |

For any problems or questions, please call (202) 898-5837 and ask for Tajwana Farley.

COMMENT/MESSAGE:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THE COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | Nos. 04-74C and 04-75C (unconsolidated)<br>(Judge Hewitt) |

**JOINT MOTION FOR ENTRY OF AN ORDER GOVERNING CONFIDENTIAL AND PRIVILEGE OR PROTECTED MATERIALS**[1]

Pursuant to RCFC 7(b), Pacific Gas and Electric Company and the government submit this Joint Motion for Entry of an Order Governing Confidential and Privileged or Protected Materials. The parties agree that because discovery and other proceedings in this case may require the par ties to disclose confidential information and to withhold from discovery documents and information that are protected by various privileges or protections an order governing such material is required. The parties' have negotiated and agreed upon the terms in the proposed order attached as Exhibit 1, which the parties submit will clarify the respective obligations of each of the parties as to the treatment of confidential material and privileged or protected information in this case. The parties respectfully request that the Court enter the attached proposed order prior to April 22, 2005, the date the parties are

[1] This Joint Motion for Entry of an Order Governing Confidential and Privileged or Protected Materials is filed under Case No. 04-74C, but should also be deemed applicable to *Pacific Gas and Electric Co. v United States*, No. 04-75C.

scheduled to begin document production in this case in connection with the parties Initial Disclosures under RCFC 21(a)(1).

March ____, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

______________________
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

______________________
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:
Robert L. Shapiro
Monica Freas
SPRIGGS & HOLLINGSWORTH

______________________
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (Fax)

Attorneys for Plaintiff
Pacific Gas and Electric Company

Draft as of 3/22/2005 5:47 PM 320090 v. 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Nos. 04-74C and 04-75C (unconsolidated)<br>(Judge Hewitt)<br><br>Filed March ___, 2005 |

**ORDER GOVERNING CONFIDENTIAL AND PRIVILEGE OR PROTECTED MATERIALS**

Discovery and other proceedings in this case may require the parties to disclose confidential information and to withhold from discovery other documents and information that are protected from disclosure by various privileges or protections. Accordingly, the parties agree to the following and it is hereby ORDERED:

Confidential Material

1. The term Confidential Material" shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or other proceedings in this case. Subject to the provisions of Paragraph 10 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any Confidential Material, all copies made of that material, and all notes made therefrom and all references made thereto, of any kind whatsoever, shall also constitute Confidential Material.

2. The designation of Confidential Material may be made by the disclosing party by placing or affixing on documents disclosed the word "confidential," or by stating in a letter to counsel for the receiving party or parties that all or any portion of the documents accompanying that letter are Confidential Material within the meaning of this agreement and order.

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4. Confidential Material shall be used by the receiving party solely for the purpose of conducting the above-entitled litigation and not for any business or other purpose whatsoever, except as provided in this agreement and order. Confidential Material shall be disclosed only to attorneys for plaintiff, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons as reasonably necessary for the litigation of this action. Nothing contained in this agreement and order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this agreement and order, prevent or limit in any way the use of such documents and information by an agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of attorneys for plaintiff, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party shall first be advised by an attorney for the

Spriggs & Hollingsworth

1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Monica A. Freas
202.898.5817
mfreas@spriggs.com

April 4, 2005

VIA FACSIMILE, ORIGINAL TO FOLLOW BY U.S. MAIL

John C. Ekman
Department of Justice
Commercial Litigation Branch
Civil Division -- Classification Unit
1100 L Street, NW, 8th Floor Mailroom
Washington, D.C. 20530

Re: *Pacific Gas & Electric Company v. U.S.*, Nos. 04-074C and 04-075C

Dear John:

I am writing as a follow-up to your letter dated March 30, 2005 and our discussion on Friday, April 1, regarding PG&E's proposed motion for an order governing confidential and privileged or protected materials. As Mr. Stouck and I indicated during our telephone conversation, the government's demand that PG&E agree to a protective order that is identical to orders recently entered by the Court in other SNF cases is not reasonable given that 1) your letter explicitly acknowledges that orders in existing cases are not uniform and 2) the government has failed to identify any reason why our proposed order should not be entered in the *PG&E* cases.

FILE COPY

Your letter mentions no specific provisions to which the government objects. However, the few issues you mentioned on the phone were, to our understanding, resolved by clarifying discussion (and/or reflected no disagreement, such that we would be amenable to clarifying language). For example, we have addressed the government's concern that language pertaining to the use of confidential material in other SNF cases or by attorneys in other SNF cases was lacking and we have added such language at the outset and in paragraphs 4 and 5 to the proposed order. Additionally, the government's concern that we had not allowed for the immediate return of inadvertently produced privileged material or for an unlimited clawback period was apparently the result of confusion on the government's part, as the order, as proposed, does provide for both.

Hollingsworth

John C. Ekman
April 4, 2005
Page 2

Should the government have any other specific concerns regarding the proposed order, which is modeled after the protective order recently entered and agreed to by the government in *Systems Fuels, et al. v. U.S.* (as to confidentiality issues) and, in substance, with the May 1999 order in the *Yankee Atomic v. U.S.* (as to privilege issues), we ask that you notify us promptly so that we can work to resolve any such concerns. In addition to the provisions drawn from those two orders, our proposed order sets-forth a time frame for delivery of privilege logs. You indicated no objection to this provision in view of the existing pre-trial schedule.

Absent identification of any further issues for discussion, we intend to proceed with filing our own motion by Tuesday evening, April 5, 2005, requesting that the attached proposed order governing confidential, privileged and other protected material be entered, so that this issue can be resolved sufficiently in advance of the April 22 due date for initial disclosures. It remains our preference to resolve any further issues by agreement, without the need for the Court's involvement, so I urge you to let us know if the government has specific concerns about any provisions of the enclosed proposed order.

Please call me should you have any questions.

Sincerely,

Monica A. Freas

Monica A. Freas

Enclosure

324474v1

04/04/2005 06:21 2027897552 SPRIGGS FAX-B PAGE 03/12

Draft as of 4/4/2005 5:42 PM 320090 v. 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | Nos. 04-74C and 04-75C (unconsolidated)<br>(Judge Hewitt)<br><br>Filed April ___, 2005 |

ORDER GOVERNING CONFIDENTIAL AND PRIVILEGE OR PROTECTED MATERIALS

Discovery and other proceedings in this case and the other cases pending before the Court concerning the Standard Contract, 10 C.F.R. Part 961 (hereinafter referred to as the "Spent Nuclear Fuel cases" or "SNF cases") may require the parties to disclose confidential information and to withhold from discovery other documents and information that are protected from disclosure by various privileges or protections. Accordingly, the parties agree to the following and it is hereby ORDERED:

Confidential Material

1. The term Confidential Material" shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or other proceedings in this case. Subject to the provisions of Paragraph 10 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any Confidential Material, all copies made of that material, and all notes made

therefrom and all references made thereto, of any kind whatsoever, shall also constitute Confidential Material.

2. The designation of Confidential Material may be made by the disclosing party by placing or affixing on documents disclosed the word "confidential," or by stating in a letter to counsel for the receiving party or parties that all or any portion of the documents accompanying that letter are Confidential Material within the meaning of this agreement and order.

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4. Confidential Material shall be used by the receiving party solely for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever, except as provided in this agreement and order. Confidential Material shall be disclosed only to attorneys for plaintiff, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons as reasonably necessary for the litigation of this action. Nothing contained in this agreement and order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this agreement and order, prevent or limit in any way the use of such documents and information by an agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of attorneys for plaintiffs in the spent nuclear fuel cases, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party shall first be advised by an attorney for the receiving party or parties that pursuant to this agreement and protective order such person may not divulge any such Confidential Material to any other person not authorized under Paragraph 4 above to have access to such Confidential Material. The attorney shall secure from each person a declaration in the form attached hereto, stating that such person has read this agreement and order and agrees to be bound by it. Such declaration shall be maintained in the possession of the attorney securing the declaration until further order of the Court.

6. Subject to order of the Court, that portion of any pleading, motion, deposition transcript or other document submitted or presented to or filed with the Court containing Confidential Material shall be placed under seal and shall not be available to persons other than the Court and authorized employees of the Court, the attorneys of record for the parties to this action, and persons authorized by this agreement and order.

7. In the event that any Confidential Material is used in any deposition or Court proceeding herein, the parties shall attempt to further stipulate as to the procedures for use of Confidential Material in such proceedings.

8. If necessary, any dispute regarding the procedures for use of Confidential Material in deposition or Court proceedings shall be submitted to the Court for resolution. Any Confidential Material in question shall be treated as Confidential Material until resolution of the dispute by the Court and shall be treated thereafter in accordance with any Court order or direction resolving the matter.

CERTIFICATE OF FILING

I hereby certify that on this 25th day of May 2007, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S MARCH 19, 2007 REPLY BRIEF AND ACCOMPANYING APPENDIX ON 'DAIRYLAND'S MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS AND ATTORNEY-CLIENT PRIVILEGES'" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.