IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: July 20, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

NOTICE OF FILING

Pursuant to the Court's Order of July 19, 2007, Dairyland is filing the attached Corrected Dairyland's Motion for Relief for Government Discovery Violations Regarding Rule 30(b)(6) Deposition Testimony. The Court's Order specifically directed filing of just the index for the appendix to the motion; however, the appendix material included with the Dairyland's initially-filed motion was not paginated. Thus, to facilitate preparation of the index to the appendix called for in RCFC 5.2(a)(1)(A) and the Court's July 19, 2007 Order, Dairyland has numbered the pages of its appendix. In addition, Dairyland has inserted appendix page number references in the body of its motion where appendix material is referenced. Dairyland has made no other changes to its motion.

Respectfully submitted,

July 20, 2007

s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

No. 04-106C
(Chief Judge Damich)

Electronically Filed: July 20, 2007

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

CORRECTED DAIRYLAND'S MOTION FOR RELIEF FOR GOVERNMENT DISCOVERY VIOLATIONS REGARDING RULE 30(b)(6) DEPOSITION TESTIMONY

---

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
Greenberg Traurig, LLP

Table of Contents

I. Background ....................................................................................................2

A. The Government's Designees Failed to Provide Testimony on a Number of Designated Topics ....................................................................................................2

B. The Government Improperly Instructed Its Witness Not to Answer Deposition Questions....................................................................................................11

II. Argument ....................................................................................................12

A. The Court Should Sanction the Government For Its Discovery Abuse By Prohibiting It From Offering Evidence at Trial on the Topics for Which The Government's Rule 30(b)(6) Designees Failed to Provide Testimony. .......................12

B. The Court Should Compel Deposition Testimony From David Zabransky Regarding the Issues on Which He was Instructed Not to Answer at His Deposition. ....................................................................................................16

Conclusion ....................................................................................................19

Index To Appendix

Exhibit 1: December 13, 2006 Correspondence from Greenberg Traurig LLP to Department of Justice ..........................................................................A1

Exhibit 2: March 9, 2007 Correspondence from Department of Justice to Greenberg Traurig LLP..........................................................................A5

Exhibit 3: March 20, 2007 Correspondence from Department of Justice to Greenberg Traurig LLP..........................................................................A7

Exhibit 4: Excerpts from Deposition Testimony of Christopher Kouts taken on May 1, 2007 ..........................................................................A10

Exhibit 5: Excerpts from Deposition Testimony of David Zabransky taken on May 3, 2007..........................................................................A28

Exhibit 6: Excerpts from Defendant's Second Amended Response to Plaintiff's Second Request for Production of Documents ..........................................A59

Exhibit 7: Excerpts from Dairyland's Objections and Response to Defendant's Second Set of Interrogatories ..........................................................A62

## Table of Authorities

Federal Cases ........ Page

*Allen v. Chicago Transit Auth*, 198 F.R.D. 495 (N.D. Ill 2001) ........ 18

*Black Horse Lane Assoc. v. Dow Chemical Corp.*, 228 F.3d 275 (3rd Cir. 2000) ........ 16, 17

*Buffington v. Wood*, 351 F.2d 292 (3rd Cir. 1965) ........ 13

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) ........ 18

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ........ 13

*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984) ........ 18

*Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196 (5th Cir. 1993) ........ 12

*RTC v. Dabney*, 73 F.3d 262 (10th Cir. 1995) ........ 19

*Triax v. United States*, 11 Cl. Ct. 130 (1986) ........ 19

Federal Rules

RCFC 30(b)(6) ........ passim

RCFC 30(d)(1) ........ 19

RCFC 37 ........ 15

RCFC 37(b)(2) ........ 13, 15, 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

CORRECTED DAIRYLAND'S MOTION FOR RELIEF FOR GOVERNMENT DISCOVERY VIOLATIONS REGARDING RULE 30(b)(6) DEPOSITION TESTIMONY

Dairyland has sought to learn the government's positions on the issues to be litigated in this case, and to have the opportunity to depose knowledgeable government witnesses regarding those positions, to apprise Dairyland of the factual and legal points it may face at trial. Such discovery is appropriate, and indeed necessary, so that Dairyland can fashion an appropriate litigation strategy. A central part of Dairyland's discovery strategy has been to obtain the government's positions on key issues through contention interrogatories followed Rule 30(b)(6) depositions of the government on those issues. By Order dated January 29, 2007, the Court granted Dairyland's motion to compel depositions, including its Rule 30(b)(6) request on the topics requested by Dairyland. Although the government has never provided proper answers to all of Dairyland's contention interrogatories (a failure that is the subject of another motion), Dairyland proceeded with the Rule 30(b)(6) depositions in order to learn as much as it could about the government's positions. The government designated Christopher Kouts and David Zabransky, two DOE officials who Dairyland was also deposing on an individual basis, to address many of the topics.

Dairyland took the depositions in May. During the depositions, however, the government's designees failed to testify regarding a number of the topics for which the government designated them. These topics go to DOE's positions on key issues such as the parties' purpose and intent in entering into Dairyland's spent fuel contract as well as the reasonableness of Dairyland's mitigation expenses incurred in light of DOE's failure to perform. Because of this failure, the government has effectively completed frustrated Dairyland's effort to discover the government's positions and claimed supporting evidence so that Dairyland can be prepared to appropriately rebut any such arguments at trial. The government has not otherwise disclosed its positions or supporting evidence on these issues either through expert witness reports or other means. Accordingly, to prevent the government from both preventing Dairyland from discovering the government's litigation positions and then surprising Dairyland at trial, the Court should prohibit the government from offering evidence at trial on these issues.

In addition, in the course of Mr. Zabransky's deposition, the government's counsel instructed him not to answer certain questions asserting that the responses would divulge privileged material. The government's privilege claims are meritless; accordingly, the Court should issue an order compelling answers to those questions.[1]

## I. Background

### A. The Government's Designees Failed to Provide Testimony on a Number of Designated Topics

From early in the fact discovery period, Dairyland has been attempting to take limited discovery from the government. That discovery has included the depositions of three individuals

---

[1] Dairyland's counsel, Robert Shapiro, certifies that he and Mr. Stouck conferred with the government's counsel, in good faith at the depositions in an effort to secure the information Dairyland sought without court action. In addition, Mr. Shapiro subsequently held significant telephone conversations with government counsel regarding the substance of this motion. Those discussions did not eliminate the need to bring this motion for the Court's resolution.

and testimony (from the same three government officials) pursuant to RCFC 30(b)(6). As noted in its Motion to Compel filed on December 18, 2006, Dairyland attempted to schedule these depositions in November 2006. The government opposed making any government witness available for a deposition, and this issue was presented to the Court in Dairyland's December 18, 2006 motion. The Court granted Dairyland's motion in its January 29, 2007 Order, holding that Dairyland could take the depositions of DOE officials Kouts, Zabransky and Pollog, as well as a RCFC 30(b)(6) deposition limited to the list of topics submitted by Dairyland's counsel to the government by letter dated December 13, 2006. For reference, that letter and list of topics is attached as exhibit 1, A1.

As expected, the government designated the three individuals whose depositions the Court compelled also to handle the RCFC 30(b)(6) topics. *See* Letters from Marian Sullivan dated March 9, 2007 and March 20, 2007, attached as exhibits 2 (A5) and 3 (A7) respectively. Mr. Kouts was deposed on May 1-2, 2007,[2] and Mr. Zabransky was deposed on May 3, 2007.

At their depositions, Messrs. Kouts and Zabransky failed to answer regarding a number of the RCFC 30(b)(6) topics for which they were designated. In particular, the government failed to provide appropriate testimony from Mr. Kouts regarding topics 18 and 19. Topic 18 addresses "[t]he reasonableness or unreasonableness of Dairyland's storage of its spent fuel in its spent fuel pool during the period subsequent to January 31, 1998." When Dairyland's counsel asked Mr. Kouts about this issue, Mr. Kouts did not dispute the reasonableness of Dairyland's costs:

> Q Okay. I think I better start with this.
> Do you know whether or not Dairyland has stored its

[2] Dairyland's portion of the deposition was taken on May 1, 2007, and the second day was devoted to questioning by counsel in *Energy Northwest v. United States*, No. 04-10C.

> spent fuel in its spent fuel pool during the period subsequent to January 31, 1998?
> A No.
> Q Notwithstanding that answer and that fact, you are -- is this correct, you are able to
>
> 00248
>
> testify about the reasonableness or unreasonableness of Dairyland's storage of its spent fuel in its spent fuel pool during the period subsequent to January 31, 1998?
> A Yes.
> Q Okay. Then let me ask you, has Dairyland's storage of its spent fuel in its spent fuel pool during the period subsequent to January 31, 1998 been reasonable or unreasonable?
> A Since that's a business decision on the part of Dairyland, the government believes that's a decision best made by, in terms of reasonableness or unreasonableness, is based on Dairyland's own individual situation. *The government has no position one way or the other.*

Kouts Dep. Tr. May 1, 2007 (excerpts attached at exhibit 4) (emphasis added) at 247-48, A12-13; *see also id.* at 255-56, A20-21:

> Q Okay. You -- do you -- does -- can you tell me whether Dairyland's storage of its spent fuel in its spent fuel pool subsequent to January 31, 1998 has been reasonable or unreasonable in any part of that period, you know, as opposed to the whole period which I think the prior answer implied?
> A Again, ultimately I'll go back to my previous answer, that's a business decision on the part of Dairyland, that the Department has no
>
> 00256
>
> information one way or the other if one time period would be more acceptable or more reasonable than any other time period.
> Q Okay. And you've prepared no analysis regarding the reasonableness or unreasonableness of Dairyland's storage of its spent fuel in its spent fuel pool during the period subsequent to

> January 1998; is that right?
> A That's correct.
> Q And I take it you also have no position on whether or not the storage of spent fuel by any purchaser in its spent fuel pool during periods -- the period subsequent to January 1998 is reasonable or unreasonable; is that right? You haven't singled Dairyland out for this no position?
> A That's correct.

*See also id* at 258-59, A23-24:

> Q Okay. So you cannot testify whether or not there is some storage method for Dairyland's spent fuel other than continued storage in the spent fuel that would have -- in the spent fuel pool that would have been more reasonable than -- than storage in the spent fuel pool during the period subsequent to January 1998; is that right? Or can you testify about that? There are two choices. You can testify about it or you can't testify about whether there would be a more reasonable storage option?
> A Not knowing the specifics of -- facing
>
> 00259
>
> Dairyland, there's no way for DOE to know that.
> Q Okay. No way for you to know that?
> A Or the Department has no information associated with that.
> Q Or you, in your capacity as a 30(b)(6) witness?
> A That's correct.

The government's counsel interjected, however, that Mr. Kouts was merely speaking for DOE and that the government, as supported by experts, might take a different position at trial:

> MR. LO RE: To be clear, Jerry, this does not -- this is separate from a position that the government may take during the trial about a particular cost as to whether that cost was incurred, whether our expert witnesses say that those costs are or are not reasonable.
> This is Mr. Kouts talking programmatically, not vis-a-vis the Standard Contract and whether those costs were incurred and

should be recovered as part of this litigation.

*Id.* at 251, A16; *see also id.* at 252-53, A17-18:

MR. LO RE: Just so the record -- it's
fine to have that argument. I want to be clear that
our position is that Mr. Kouts is speaking on behalf
of DOE. DOE programmatically. Whether or not your
costs -- whether or not we challenge your costs in
trial is separate from whether or not Mr. Kouts
monitors, as someone who's intimately involved with

00253
the -- you know, the development of the waste
acceptance program.

Topic 19, similarly, addresses "[t]he reasonableness or unreasonableness of Dairyland's study, analysis, investigation and implementation of dry storage for its spent fuel during the period subsequent to January 31, 1998." Once again, Mr. Kouts' testimony did not dispute the reasonableness of Dairyland's mitigation on this issue, but the government's counsel attempted to limit the effect of that testimony:

Q Okay. Well, are you nevertheless, in
light of your recent answers to my recent questions,
able to testify about the reasonableness or
unreasonableness of Dairyland's study, analysis,
investigation, and implementation of dry storage for
its spent fuel during the period subsequent to
January 31, 1998?
A To the extent that the Department has no
information associated with the analysis or study,
the only comment -- and has no position on it, the

00262
only comment that the Department would make is that
implementation of such a dry storage initiative
would have to take into consideration a mutually
agreeable amendment to the Standard Contract to
address whether or not the fuel is going to be in
a -- in a form which the Department can accept.
Q So other than that, the mutual amendment,
and the form of the -- of the fuel being suitable

for acceptance, you have no position on the reasonableness or unreasonableness of Dairyland's study, analysis, investigation, on the one hand, or implementation, on the other hand, of dry storage for its spent fuel after January, '98; is that correct?
A That's correct.
MR. LO RE: Just so the record is clear, we take the same position with respect to this question, number 8, that we took with respect to number 7.

*Id.* at 261-262, A26-27.[3]

At Mr. Zabransky's deposition, the government likewise failed to provide testimony regarding topics 6, 7, 9 and 14. Topic 6 addresses "DOE's purpose and intent in entering the Standard Contracts." But Mr. Zabransky was not prepared to address this issue:

Q If you would answer the last question that I asked. You're saying you're not prepared to discuss any issues concerning the Department's intent in entering into the terms of the Standard Contract?
MS. SULLIVAN: Same objections.
THE WITNESS: No. I'm really not.

Zabransky Dep. Tr. May 3, 2007 (excerpts attached at exhibit 5) at 132, A48; *see also id* at 135, A49:

BY MR. SHAPIRO:
Q Can you testify as to the Department of Energy's purpose and intent for the Standard Contract for it not to have an acceptance rate term setting out a minimum amount of DOE acceptance of spent nuclear fuel?
MS. SULLIVAN: Objection, vague, legal conclusion.
THE WITNESS: No. I'm not prepared to testify about those provisions of the contract as a 30(b)(6) witness.

[3] The deposition transcript refers to topics 7 and 8 rather than topics 18 and 19 mentioned in the attachment to the December 13, 2006 letter, as counsel during the deposition were referring to topic numbers in Dairyland's notice of deposition directed solely at Mr. Kouts.

This second excerpt, above, also demonstrates a failure to provide testimony regarding Topic 9: "A reasonable annual rate of acceptance for spent fuel under the Standard Contracts, and the factors to consider in determining a reasonable rate." Mr. Zabransky made clear that he was "not prepared to testify regarding those provisions of the contract as a 30(b)(6) witness." *Id.*

Topic 7 addresses "DOE's understanding of the utilities' purpose and intent in entering the Standard Contracts." Mr. Zabransky also was not prepared to address this issue either:

> BY MR. SHAPIRO:
> Q You're not in any position as a 30(b)(6) designee to have reviewed that material and provide for us the Department's view as to the essence of what it's view is as to what the utilities intended by entering into the Standard Contract?
> MS. SULLIVAN: Objection. Legal conclusion, compound, vague, mischaracterizes the witness' prior testimony.
> THE WITNESS: And, no, I'm not prepared to provide the essence of what's in there.
> BY MR. SHAPIRO:
> Q So the Department has no view of utilities' intent for entering into the Standard Contract other than the submittals that utilities
>
> 00139
> made to the Department as part of the administrative rule-making process through which DOE drafted the Standard Contract?
> MS. SULLIVAN: Objection. Legal conclusion.
> THE WITNESS: And based upon my preparation for this deposition, no.

*Id.* at 138-39, A50-51.

Topic 14 addresses "[t]he purpose and role of provisions of the Standard Contracts governing, and DOE's plans for, scheduling acceptance and acceptance of failed fuel, including failed fuel at Dairyland's site." Mr. Zabransky also was not prepared to testify on this topic:

BY MR. SHAPIRO:
Q Does the Department -- what impact is there on the fact that fuel is failed as opposed to not failed on the licensing of the facilities for Yucca Mountain?
A I can't speak to the details on that.
Q Do you have any knowledge of that situation?
A I'm not prepared to speak on behalf of the Department on that issue.
Q You're not prepared to speak for the Department of Energy on its plans for the -- for having a licensed facility to be able to accept failed fuel?
MS. SULLIVAN: Objection to the extent it mischaracterizes the witness' prior testimony.
THE WITNESS: I'm not prepared to speak on the effect of failed fuel in the license application.

00172
BY MR. SHAPIRO:
Q Are you able to at least say that the Department is working to take into account that it's going to have to deal with failed fuel in its license application?
MS. SULLIVAN: Objection. Vague.
THE WITNESS: And, again, failed fuel is not a generic term. It's a specific term. The Department may have made some assumptions about what it may have to deal with it. It doesn't mean it addresses all the failed fuel that's out there.

*Id.* at 171-72, A52-53; *see also id.* at 173-75, A54-56:

Q And I understand that the license application will be final when it's final. But what is the current state of the planning of that application with respect to failed fuel?
MS. SULLIVAN: Objection. Vague.
THE WITNESS: And, again, it's being

00174
considered. I don't know the details of what's being considered in any specific area.
BY MR. SHAPIRO:

Q Is any part of that consideration contemplating accepting failed fuel at a time frame separate from acceptance of fuel that's not failed?
MS. SULLIVAN: Objection. Vague, compound.
THE WITNESS: And, again, I'm not sure I can speak with a definitive nature as to that from our end. But on the other end I can say that, as I've said, failed fuel is not all -- failed fuel is different things. So some failed fuel may not be on -- scheduled different. Other failed fuel might be. I can't speak to those details.
BY MR. SHAPIRO:
Q What are DOE's plans for the acceptance of Dairyland's failed fuel?
MS. SULLIVAN: Objection. Vague. Objection. Assumes facts not in evidence.
THE WITNESS: And at this point, I don't know that DOE is well versed on the details of

00175
Dairyland's failed fuel, so I don't have specific plans for Dairyland's failed fuel.
BY MR. SHAPIRO:
Q So DOE is not currently planning to accept Dairyland's failed fuel on a schedule different from the rest of Dairyland's spent fuel, true?
MS. SULLIVAN: Objection. Legal conclusions. Mischaracterizes the witness' prior testimony.
THE WITNESS: I don't think Dairyland's fully informed DOE of the detail of its failed fuel, so DOE hasn't made that determination yet.

Mr. Zabransky's assertion that Dairyland has not fully informed DOE of the details regarding its failed fuel is not true. In the course of discovery, Dairyland provided the government with the results of a detailed study characterizing all of its spent fuel. Indeed, the government recently provided an updated discovery response noting that at least one of the individuals from whom it has submitted an expert witness report relied on this study in forming his opinions. *See* Defendant's Second Amended Response to Plaintiff's Second Request for Production of

Documents (excerpt attached at exhibit 6) at 12, A61 (noting reliance by Warren Brewer on WPI Phase 1, Task 9 - LACBWR Spent Fuel Characterization Report, December 5, 2002 , PDPC0007773-PDPC0007807).

B. The Government Improperly Instructed Its Witness Not to Answer Deposition Questions

The government's counsel instructed Mr. Zabransky not to answer questions regarding four subjects restricting his testimony both as an individual and as a Rule 30(b)(6) designee. First, counsel instructed Mr. Zabransky, testifying as an individual, not to answer questions concerning DOE's development of new contracts for the disposal of spent fuel for newly contemplated nuclear reactors on the ground that such answers would reveal information protected by the deliberative process privilege. *See* Zabransky Dep. Tr. May 3, 2007 at 61-72, A36-47. Mr. Zabranksy was instructed not to answer regarding whether he is aware that the Department is developing such contracts, *id.* at 61-62, A36-37, his understanding as to why DOE is developing new contract language, *id.* at 64-65, A39-40, any questions regarding email produced in discovery by the government that clearly address the development of such contracts, *id.* at 65, A40, Mr. Zabransky's knowledge of DOE negotiations with any particular utilities about the wording for a new contract for the removal of spent nuclear fuel, *id.* at 67, A42, Mr. Zabransky's expectation regarding the time frame when DOE might be issuing new language for contracts for the removal of spent nuclear fuel, *id.* at 69, A44, the changes that DOE is considering making in the wording of new contracts, *id* at 69-70, A44-45, provisions that DOE is considering putting into the new contracts that would address the rate of acceptance of spent nuclear fuel from utilities, *id.* at 70, A45, provisions that DOE is considering putting into the new contracts that would address the sequence of removal of utilities' spent nuclear fuel. *Id.* at 70-71, A45-46.

Second, Mr. Zabransky was instructed to not answer questions, as an individual, regarding his knowledge of what reasonable costs would be for storing spent nuclear fuel at a utility site on the ground of work product doctrine, the attorney-client privilege, Fed. R. Ev. 408 and relevance. *Id.* at 41-44, A32-35.

Third, counsel instructed Mr. Zabransky not to answer questions, as an individual, regarding certain DOE initiatives on which Mr. Zabransky is working with Booz-Allen on the ground of the deliberative process privilege. Zabransky Dep. Tr. at 26-27, A30-31. Mr. Zabransky was instructed even not to identify the general topic of that work. *Id.*

Fourth, counsel instructed Mr. Zabransky not to answer questions regarding how DOE is planning to encourage utilities to implement the use of DOE's Transportation, Aging and Disposal Canister Systems ("TADs") in light of DOE's view that TADs are not acceptable waste forms under the Standard Contract on the ground of the deliberative process privilege. *Id.* at 189-90, A57-58. This questioning is part of Topic 21 in the list of RCFC 30(b)(6) topics.

## II. <u>Argument</u>

### A. The Court Should Sanction the Government For Its Discovery Abuse By Prohibiting It From Offering Evidence at Trial on the Topics for Which The Government's Rule 30(b)(6) Designees Failed to Provide Testimony.

With appropriate cooperation, the provision in RCFC 30(b)(6) for deposing organizations "streamlines the discovery process." *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993). Rather than cooperation, however, the government has engaged in repeated delaying tactics and gamesmanship. Ultimately, the government has refused to do what the Rules and this Court's January 29, 2007 Order require – provide a designee who can testify for the government on the specified topics. *E.g.*, *id.* Its initial refusal to cooperate with the scheduling of the RCFC 30(b)(6) depositions (or any depositions) led to this Court's Order of January 29, 2007 compelling the depositions. But even in light of this Court's Order, the

government presented witnesses that failed to provide testimony on a number of the topics as outlined above. In the same vein, the government has failed to respond to Dairyland's contention interrogatories (this failure is the subject of another motion). In short, the government has refused to disclose its positions on potentially significant issues until discovery is closed and perhaps even until trial itself. This government attempt at litigation by surprise is exactly what the discovery rules are supposed to prevent. *See, e.g., Buffington v. Wood*, 351 F.2d 292, 297 (3rd Cir. 1965) (noting "directive of the Federal Rules to eliminate surprise from litigation").

In these circumstances, the Court should enforce its January 29, 2007 Order and sanction the government pursuant to RCFC 37(b)(2) and 37(d) by precluding the government from offering evidence at trial on the topics for which Messrs. Kouts and Zabransky (where designated as a RCFC 30(b)(6) witnesses) failed to provide testimony. Unlike the government, Dairyland and its witnesses have responded fully to both the government's written discovery requests and its deposition questions, and Dairyland's positions on these issues are well-known to the government. Regarding the reasonableness of or unreasonableness of Dairyland's storage of its spent fuel in its spent fuel pool since January 31, 1998, the government knows that Dairyland claims that this storage has been reasonable as it is seeking the costs of such storage as damages in this action. This issue of the reasonableness of Dairyland's costs is important under the law of mitigation of damages. *See, e.g., Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1376 (Fed. Cir. 2005). Since the government's Rule 30(b)(6) designee, Mr. Kouts, was unable to dispute Dairyland's position on this issue, the government should be prohibited from disputing this issue further.

The government's argument that Mr. Kouts was only responsible to speak "programmatically" is without merit. Dairyland has sought a government spokesperson on this

significant issue in this case, the Court ordered that such discovery be had, and the government designated Mr. Kouts as its spokesperson. There is no provision in either Rule 30(b)(6) or this Court's Order of January 29, 2007 for the government's designees to limit their testimony to "the program," as opposed to speaking for the government. Likewise, the claim of government counsel at Mr. Kouts' deposition that the government's expert witnesses might say that Dairyland's costs of spent fuel storage are not reasonable is a red herring for two reasons. First, the fact that the government's experts might have opinions did not relieve the government of its obligation to provide appropriate Rule 30(b)(6) testimony as directed by the Court so that Dairyland could obtain appropriate discovery of any claimed support for such a position. Second, the government has now served its expert reports, and none of the government's experts purport to dispute the reasonableness of Dairyland's storage of spent fuel in its pool since January 31, 1998 or the costs that Dairyland has incurred for that storage.

During the parties' meet and confer regarding this motion, the government offered to supply a letter from counsel stating that the government does not plan to dispute the reasonableness of Dairyland's costs. But such a letter is of inferior evidentiary value to a sworn admission of a RCFC 30(b)(6) designee or a Court Order.

The same is true regarding the reasonableness of Dairyland's study, analysis investigation and implementation of dry storage for its spent fuel since January 31, 1998. The government has known Dairyland's position that Dairyland's efforts in this regard have been reasonable as Dairyland is seeking recovery of its costs for that effort. The government's designee did not dispute Dairyland's position, and the government's experts also have not disputed the reasonableness of Dairyland's efforts or the costs Dairyland has incurred for those efforts.

Similarly, the government has been well aware of Dairyland's position regarding the parties' intent in entering into the Standard Contract – to enable utilities to avoid incurring additional at-reactor storage costs from January 31, 1998 forward. *See, e.g.*, Dairyland's Objections and Responses to the Government's Second Set of Interrogatories, Response to Interrogatory 20, attached as exhibit 7, A64. The government's designee, Mr. Zabransky, was unable to testify regarding this issue, and the government should not be permitted to dispute Dairyland's position on this issue at trial.

The government has also been well aware of Dairyland's position regarding the annual rate of acceptance for spent fuel under the Standard Contracts and the factors to be considered in determining a reasonable rate – 3000 MTU per year because that rate "would have prevented Dairyland and other utilities from incurring additional at-reactor storage costs, assuming that a modest number of acceptance allocations were exchanged amongst utilities." *Id.* As the government's designee was entirely unprepared to address this issue, the government should not be permitted to further dispute Dairyland's position.

In addition, Dairyland's position regarding failed fuel has been clear – DOE was obligated to accept and could have accepted Dairyland's failed fuel on the same schedule as Dairyland's other spent fuel. *Id.* Interrogatory No. 23, A66-67. As the government's designee did not provide appropriate testimony on this issue, the government should not be permitted to dispute Dairyland's position on this issue at trial.

Furthermore, Dairyland should receive its cost and attorney's fees in bringing this motion and of taking the depositions of Messrs. Kouts and Zabransky. The government's discovery violations have needlessly and significantly increased Dairyland's costs in this litigation. RCFC 37 requires this relief unless the government's failure was substantially justified or other

circumstances make an award of expenses unjust. There is no justification for the government's discovery failure here, and it would not be unjust to require the government to pay Dairyland's costs of bringing this motion.

There is ample authority supporting the remedy sought by Dairyland. Rule 37(b)(2)(A) and (B) explicitly provide for the preclusion sanctions Dairyland seeks, and the award of costs and attorneys fees is mandated by both RCFC 37(b)(2) and 37(d). Case law is in accord. In *Black Horse Lane Assoc. v. Dow Chemical Corp.*, 228 F.3d 275 (3rd Cir. 2000), the plaintiff-appellant did not cooperate in the scheduling of a Rule 30(b)(6) deposition, requiring the trial court to issue an order directing that the deposition be held on a specific date. *Id.* at 281. Even after the party's Rule 30(b)(6) designee appeared, he was unprepared to provide useful testimony. *Id.* at 300, 304. The trial court sanctioned the plaintiff in two ways. First, it precluded the plaintiff from introducing evidence contrary to the positions of its unprepared Rule 30(b)(6) designee; second, the court imposed monetary sanctions in the form of the costs and attorney's fees associated with the taking the deposition and bringing the sanctions motion before the Court. *Id.* at 281. On appeal, the Third Circuit affirmed the monetary sanctions. *Id.* at 305. The appellate court held that the challenge to the preclusion sanction moot, because it affirmed the trial court's grant of summary judgment dismissing the plaintiff's amended complaint. *Id.* at 301, n.16. The present case is not materially different from *Black Horse Lane.*

B. The Court Should Compel Deposition Testimony From David Zabransky Regarding the Issues on Which He was Instructed Not to Answer at His Deposition.

The Court should compel the government to provide testimony from Mr. Zabransky regarding the topics on which he was instructed not to testify on grounds of privilege. For three of the four subjects on which Mr. Zabransky was directed not to answer (new spent fuel contracts, encouragement of use of TADs and work with Booz-Allen), the government's

instruction was based on the deliberative process privilege. As this Court recently held in its June 29, 2007 Order, the deliberative process privilege is intended to protect against "potential harm to governmental decisionmaking." *See* June 29, 2007 Slip Op. at 2. As this Court explained, for the privilege to apply, the information protected must be both pre-decisional and "deliberative." *Id.* at 4. As the Court explained further, the "deliberative" part of the test requires that the information contains "opinions, recommendations or advice pertaining to agency decisions" and that ultimately, "the material is 'so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.'" *Id.* (internal citation omitted).

The government's claims of deliberative process privilege in the course of Mr. Zabransky's deposition do not meet these tests. The government here is not attempting to protect decisionmaking on public policy issues such as the development of the Yucca Mountain waste disposal program. Rather, it is trying to shield the government's commercial interests in the development of new spent fuel contracts and its related desire to encourage use of TADs. As a privilege available only to the government, invocation of the deliberative process privilege should be limited to instances where uniquely governmental interests are at stake. That is simply not the case here. Furthermore, far from limiting its claims of privilege to material that is particularly candid or personal, the government foreclosed questioning on the entirety of the subject matters. In the context of the work with Booz-Allen, the government would not permit sufficient questioning to permit a conclusion that any sort of decisionmaking is at issue.

In addition, even if the government has an interest in shielding disclosure of this information, that interest is likely outweighed by Dairyland's need for the information in this litigation. *Id.* At this point, however, the government has not established any interest in

withholding the information at issue. Dairyland is limited in its ability to show a need for this information due to the government's failure to respond to the Rule 30(b)(6) inquiries noted above. For example, if the government were to take the position that Dairyland's efforts at developing dry storage have not been reasonable because such dry storage canisters are not an acceptable waste form under the Standard Contracts, then Dairyland would have a strong interest in discovering more information about the TADs. Conversely, if the Court grants Dairyland's request for a preclusion remedy, Dairyland may not have a need for this information. The same is true regarding DOE's consideration of new spent fuel contracts. If the government is not going to dispute (or if the Court grants Dairyland's request for sanctions to prevent the government from disputing) Dairyland's position that a 3000 MTU acceptance rate would have been reasonable, then Dairyland would have less of an interest in learning about new spent fuel contracts which might reveal the government's current commercial view of what a reasonable contractual relationship would be on this issue.

The government's claim of privilege regarding Mr. Zabransky's knowledge of the costs to maintain spent fuel is entirely without merit. The attorney-client privilege only protects communications, and even then, the privilege does not protect information simply because it came from counsel. *See, e.g., Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000). Communications to a client (like Mr. Zabransky) are only privileged if they reflect legal advice or reveal the substance of client confidences. *See, e.g., In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). And the work product doctrine only protects a party's strategies, legal theories and mental impressions regarding litigation efforts. *See* Order of March 27, 2007 at 2, citing *Allen v. Chicago Transit Auth*, 198 F.R.D. 495, 500 (N.D. Ill 2001). Dairyland, however, is seeking to learn neither about Mr. Zabransky's communications with counsel nor about his

work on the spent fuel litigation. The fact that Mr. Zabransky may have gained his knowledge through counsel or his work on the litigation is beside the point since Dairyland is not seeking to discover the government's confidential client confidences or litigation strategies or legal theories. The government is improperly attempting to shield Mr. Zabransky's knowledge of a potentially significant issue in this case based on how he might have obtained that knowledge.[4]

The government's invocation of Fed. R. Ev. 408 and relevance as grounds for its instruction to Mr. Zabransky not to answer questions regarding his knowledge of the costs of spent fuel storage is entirely inappropriate. RCFC 30(d)(1) makes clear that an instruction not to answer is only permitted to preserve a privilege or to enforce a limitation directed by the court or the present a motion for a protective order. *See, e.g., RTC v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Accordingly, instructions not to answer based on relevance are inappropriate. *Id.* Likewise, an instruction not to answer based on Fed. R. Ev 408, which is a subset of the relevance rule, is also not permitted. *See Triax v. United States*, 11 Cl. Ct. 130, 134 (1986). The government's invocation of Fed. R. Ev. 408 is particularly misplaced, because Dairyland does not seek discovery of Mr. Zabransky's conduct or statements made in settlement negotiations. It is only seeking Mr. Zabransky's knowledge

<u>Conclusion</u>

For the foregoing reasons, the Court should issue an Order prohibiting the government from offering evidence at trial on the following issues:

(1) The parties' understanding and intention in entering into the Standard Contract;

(2) A reasonable annual acceptance rate for spent fuel under the Standard Contracts;

[4] Once again, although there is no balancing test regarding the attorney-client privilege, if the Court grants Dairyland's request for sanctions to preclude the government from disputing the reasonableness of Dairyland's spent fuel storage costs, Dairyland would have no further need for this testimony from Mr. Zabransky.

(3) Whether absent the breach, DOE would have delayed acceptance of Dairyland's failed fuel beyond the time of DOE's acceptance of the remainder of Dairyland's spent fuel;

(4) The reasonableness of Dairyland's storage of its spent fuel in its spent fuel in its spent fuel pool during the period subsequent to January 31, 1998; and

(5) The reasonableness of Dairyland's study, analysis and investigation of dry storage for its spent fuel during the period subsequent to January 31, 1998.

Further, as a sanction for the government's discovery abuse and its failure to comply with the Court's discovery Order of January 29, 2007, the Court should order the government to pay Dairyland its costs, including attorney fees, for litigating this motion to compel and taking the depositions of Messrs. Kouts and Zabransky.

In addition, the Court should issue an order reopening the deposition of Mr. Zabransky to compel answers to Dairyland's questions regarding new spent fuel disposal contracts being developed by the government, the costs to maintain spent fuel, Mr. Zabransky's work with Booz Allen and DOE's consideration of whether spent fuel in TAD canisters will be deemed by DOE to be an acceptable waste form for purposes of the Standard Contract.

Respectfully submitted,

July 20, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP