ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court stated that it "does not accept, at least for purposes of discovery, that, as Defendant avers, 'discovery into DOE [Department of Energy]'s current projections about the future [is] irrelevant to any analysis of causation or damages.'" Order, at 1 (Feb. 5, 2007) (brackets in original). In response to the Court's order, defendant states that, at the present time, DOE does not have a current plan regarding the acceptance of SNF from LaCrosse, beyond the contract mechanisms in Articles IV and V of the Standard Contract that detail the manner in which SNF acceptance allocations are assigned and approved. As a result, DOE has not yet identified a date by which it will actually accept, or by which it "plans" to accept, the last of the SNF from the LaCrosse reactor. As part of any future plan that is developed for the acceptance of SNF from LaCrosse, DOE will have to consider the fact that the SNF from that reactor is failed fuel, at least some of which apparently has suffered extreme degradation. During his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v.

United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for an explanation of those issues. Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

In its interrogatory, Dairyland requests that we detail "how this plan has changed since the execution of" Dairyland's Standard Contract in 1983. The first formal plan that DOE issued as part of the process of establishing a commitment to accept particular SNF from particular contract holders was the 1991 Annual Capacity Report ("ACR"), in conjunction with the 1991 Acceptance Priority Ranking ("APR"). The table titled "Summary of Purchasers' Annual Allocations (MTU)" in the Annual Capacity Reports identifies an acceptance allocation to Purchasers. As set forth in the Standard Contract, the 1991 ACR, in conjunction with the 1991 APR, was the document by which DOE began making firm acceptance commitments to individual utilities based upon the delivery commitment schedules submitted by Purchasers that DOE approved. After issuance of the 1991 ACR/APR, and in accordance with Article V.B.1 of the Standard Contract, the plaintiff in this action submitted several Delivery Commitment Schedules ("DCSs") to the Department of Energy. DOE also issued annual capacity reports and acceptance priority rankings dated 1992, 1994, and 1995; and many nuclear utility plaintiffs with cases pending before the Court of Federal Claims submitted DCSs in response to these ACR/APRs. In submitting their DCSs, the plaintiffs ultimately relied upon the allocations identified in the referenced ACR/APRs. DOE approved several DCSs for the plaintiff in this

action. Those DCSs identify both the amount of spent nuclear fuel and high-level radioactive waste (collectively, "SNF") and the location of SNF for which an allocation exists under the relevant ACR/APR for a given year. No other binding "schedules" applicable to the Standard Contract were issued by the Department of Energy or accepted by the Department of Energy through the approval of DCSs. The basis for the rate and order of SNF acceptance identified in this interrogatory response are the ACR/APRs issued beginning in 1991, the DCSs that the plaintiff and other contract holders submitted to DOE, and DOE's approval of those DCSs.

Subsequently, DOE announced that it would be unable to begin SNF acceptance by January 31, 1998. DOE later, in 2004, issued a new ACR, which identified potential SNF acceptance allocations, but that ACR did not result in any approved DCSs and, as the 2004 ACR itself stated, the information contained in the 2004 ACR was for informational purposes only and was not binding on DOE. Subsequently, DOE announced that it had begun the delivery commitment process prematurely and that it was suspending the DCS process until a later date.

In this interrogatory, Dairyland also requests that defendant "IDENTIFY all evidence RELATED TO" the current plan for the date upon which DOE will complete picking up SNF from LaCrosse and to identify "the five people with the most knowledge of this plan and the nature of such knowledge." As previously discussed, DOE does not currently have a plan for the date by it will complete SNF acceptance from LaCrosse. Accordingly, defendant does not possess any documentation or evidence relating to the current plan and cannot identify individuals knowledgeable about a current plan that does not exist at this time.

INTERROGATORY NO. 9:

Do you contend that it was or would have been unreasonable for DAIRYLAND to study, analyze, investigate and/or implement dry storage of its SPENT FUEL at any time subsequent to DOE's partial breach of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, explain all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature. Through discovery, defendant anticipates that it may analyze Dairyland's SNF storage decisions and make determinations, for purposes of this litigation, regarding the appropriateness of those decisions. We have not had sufficient discovery in this case to make those determinations at this time. Until we have obtained such discovery and evaluated Dairyland's storage decisions, such determinations are premature.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

However, defendant states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that it was unreasonable for Dairyland to study, investigate, and/or implement dry storage. Further, the

Government does not concede that any such studies were caused by DOE's partial breach of the Standard Contract.

INTERROGATORY NO. 10:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of any DOCUMENT or COMMUNICATIONS RELATED TO the removal, transport, storage and disposal of the reactor pressure vessel from LACBWR. For each PERSON identified, DESCRIBE in detail all aspects of that PERSON's involvement.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section and because plaintiff should have an equal ability to defendant to identify the requested information regarding "communications" between the Government and plaintiff, given that plaintiff and defendant were both equally involved in communications between plaintiff and defendant. See Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005). Defendant further objects to this interrogatory as irrelevant, given that not every possible document or communication somehow relating to the removal, transport, storage, or disposal of the reactor pressure vessel from the LaCrosse reactor is related to the damages that plaintiff seeks in this case. We are also unable to identify all responsive individuals for the reasons set forth in General Objections Nos. 1, 2, 4, 5, 6, and 8, which are incorporated into this response by reference. Defendant also objects to this interrogatory to the extent that it seeks information that is already within plaintiff's custody, possession, and/or control or that is readily available to plaintiff. See Pacific Gas, 69 Fed. Cl. at 325-26.

Without waiving these objections, defendant states that, with regard to the Department of Energy ("DOE"), defendant has previously produced DOE's contract files relating to Dairyland's Standard Contract, which contain communications between Dairyland and DOE, and other files containing communications between Dairyland and DOE from which, pursuant to RCFC 33(d), plaintiff may ascertain an answer to this interrogatory as easily as defendant. Defendant avers, however, that it is currently unaware of any DOE documents or communications that would have involved DOE employees. Defendant further states that, with regard to the NRC and pursuant to RCFC 33(d), plaintiff should be able to identify a list of individuals who would have had such involvement, if any, from the database of documents previously made available, or to be made available, to plaintiff or from the ADAMS database that is available for searching at the NRC, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court ordered that, where Dairyland "has requested the identity of persons involved in the review of preparation, etc., of certain documents or communications, Defendant shall identify those individuals whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial), but not those who merely *may* have had such involvement." Order, at 1 (Feb. 5, 2007) (italics in original). However, it ordered that, "to the extent that Plaintiff has requested that Defendant identify 'all aspects' of any person's involvement in review or preparation, etc., of certain documents or communications, Plaintiff's request is literally overbroad," ordering instead that "Defendant shall identify the nature of such involvement, etc., with reasonabl[e]

particularty." Id. at 2. In addition, the Court ordered that, "to whatever extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proffered database(s)." Id.

We are not aware of any individual at DOE with involvement in the review, approval, disapproval, drafting and/or preparation of any documents or communications relating to the removal, transport, storage, or disposal of the reactor pressure vessel at the La Crosse nuclear power reactor. The NRC's records indicate that individuals from the NRC "whose involvement" in such documents or communications "was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial)" are (1) William H. Ruland, Deputy Director, Licensing and Inspection Directorate, Spent Fuel Transportation and Storage, who was briefed on Dairyland's request and monitored the staff's progress in responding to it; (2) Robert Nelson, Chief, Licensing Branch, Spent Fuel Transportation and Storage, who approved the special package authorization; (3) Jill Caverly, Project Manager, Licensing Branch, Spent Fuel Transportation and Storage, who served as the project manager for this action; (4) Nancy Osgood, Senior Project Manager, Licensing Branch, Spent Fuel Transportation and Storage, who provided technical advice to the project manger; (5) Michelle DeBose, Licensing Assistant, Licensing Branch, Spent Fuel Transportation and Storage, who reviewed all correspondence related to this action for conformance with administrative requirements and maintained licensing information for this project; (6) Robert Lewis, Chief, Rules, Inspection and Operations Branch, who concurred on the summary of the meeting with Dairyland and Duratek on September 20, 2005; (7) Stewart Treby, Attorney, Office of the General Counsel, who

reviewed the special package authorization for compliance with legal requirements; (8) Gordon Bjorkman, Branch Chief, Spent Fuel Storage and Transportation, who reviewed and concurred on the special package authorization and directed the technical reviewers within his branch; (9) Larry Campbell, Branch Chief, Spent Fuel Storage and Transportation, who reviewed and concurred on the special package authorization and directed the technical reviewers within his branch; and (10) Jason Piotter, Charles Interrante, Christopher Bajwa, Shana Helton, and Elizabeth Thompson, who are Technical Reviewers.

INTERROGATORY NO. 11:

Has DOE given any consideration or undertaken any study, analysis, or investigation of the manner in which DOE will or could dispose of FAILED FUEL? If not, explain why DOE has not considered or studied this topic. If so, also IDENTIFY:

a. The nature of such consideration, study, analysis or investigation.

b. The timeframe of such consideration, study, analysis or investigation.

c. All individuals who participated in such consideration, study, analysis or investigation.

d. The results and/or conclusions of such consideration, study, analysis or investigation.

e. Whether such consideration, study, analysis or investigation included the possibility of storing or disposing of FAILED FUEL in a facility or location other than the deep geologic repository.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as vague, overly broad, irrelevant, and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Plaintiff's interrogatory is not limited to failed fuel in the possession of or generated by Dairyland or other Standard Contract holders. Further, not every aspect of failed fuel is in any way related to Dairyland's damages claim in this litigation. Further, because of the manner in which Dairyland's request is broadly phrased, almost any document having anything to do with spent nuclear fuel storage or disposal could be "related" to this interrogatory, further rendering it overly broad and unduly burdensome.

Without waiving these objections, defendant states that there are large quantities of documents available on the Record Information System website ("RIS-Web") that are potentially responsive to this request and which, pursuant to RCFC 33(d), plaintiff can attempt to develop a response to this extremely broad inquiry. Without any further refinement and narrowing of plaintiff's request, defendant cannot provide any further response to this inquiry. To the extent that plaintiff is able to narrow its interrogatory to permit a targeted search and response, defendant is willing to evaluate that narrowed request and respond appropriately.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court indicated that, "to the extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proferred database(s)." The following documents from which

plaintiff can develop a response to this interrogatory may be found in the Government's past productions:

| Container | First Image | Last Image |
|---|---|---|
| CTR013 | CTR0130476 | CTR0130476 |
| CTR013 | CTR0131092 | CTR0131108 |
| CTR013 | CTR0131163 | CTR0131170 |
| CTR013 | CTR0131205 | CTR0131215 |
| CTR013 | CTR0131343 | CTR0131355 |
| CTR013 | CTR0131401 | CTR0131404 |
| CTR013 | CTR0131420 | CTR0131432 |
| CTR013 | CTR0131470 | CTR0131481 |
| CTR013 | CTR0131530 | CTR0131541 |
| CTR013 | CTR0131548 | CTR0131551 |
| CTR013 | CTR0131576 | CTR0131587 |
| CTR013 | CTR0131675 | CTR0131679 |
| CTR013 | CTR0131708 | CTR0131710 |
| CTR013 | CTR0131829 | CTR0131832 |
| CTR013 | CTR0133181 | CTR0133209 |
| PNL048 | PNL0480004 | PNL0480055 |
| PNL048 | PNL0480142 | PNL0480193 |
| PNL048 | PNL0480198 | PNL0480246 |
| PNL048 | PNL0480247 | PNL0480297 |
| PNL048 | PNL0480298 | PNL0480348 |
| PNL048 | PNL0480349 | PNL0480398 |
| PNL048 | PNL0480399 | PNL0480448 |
| PNL048 | PNL0480449 | PNL0480499 |
| PNL048 | PNL0480500 | PNL0480551 |
| PNL048 | PNL0480560 | PNL0480608 |
| PNL048 | PNL0480613 | PNL0480718 |
| PNL048 | PNL0480754 | PNL0480770 |
| PNL048 | PNL0480791 | PNL0480898 |
| PNL048 | PNL0480933 | PNL0481038 |
| PNL048 | PNL0481042 | PNL0481148 |
| PNL048 | PNL0481149 | PNL0481253 |
| PNL048 | PNL0481266 | PNL0481348 |
| PNL048 | PNL0481349 | PNL0481429 |
| PNL048 | PNL0481430 | PNL0481477 |
| PNL048 | PNL0481597 | PNL0481678 |
| PNL048 | PNL0481679 | PNL0481730 |
| PNL048 | PNL0481731 | PNL0481813 |

| | | |
|---|---|---|
| PNL048 | PNL0481814 | PNL0481897 |
| PNL048 | PNL0481908 | PNL0481989 |
| PNL048 | PNL0481990 | PNL0482038 |
| PNL048 | PNL0482039 | PNL0482088 |
| PNL034 | PNL0340201 | PNL0340212 |
| PNL034 | PNL0340213 | PNL0340224 |
| PNL034 | PNL0340226 | PNL0340238 |
| PNL034 | PNL0340239 | PNL0340253 |
| PNL034 | PNL0340305 | PNL0340312 |
| PNL034 | PNL0340314 | PNL0340322 |
| PNL034 | PNL0340323 | PNL0340330 |
| PNL034 | PNL0340332 | PNL0340339 |
| PNL034 | PNL0340342 | PNL0340349 |
| PNL034 | PNL0340350 | PNL0340358 |
| PNL034 | PNL0340359 | PNL0340366 |
| PNL034 | PNL0340368 | PNL0340379 |
| PNL034 | PNL0340380 | PNL0340391 |
| PNL034 | PNL0340392 | PNL0340403 |
| PNL034 | PNL0340404 | PNL0340415 |
| PNL034 | PNL0340416 | PNL0340427 |
| PNL034 | PNL0340428 | PNL0340434 |
| PNL034 | PNL0340443 | PNL0340453 |
| PNL034 | PNL0340454 | PNL0340463 |
| IDF007 | IDF0073621 | IDF0073787 |
| IDF007 | IDF0073864 | IDF0074013 |
| HQR008 | HQR0080215 | HQR0080216 |
| HQR008 | HQR0080217 | HQR0080220 |
| HQR008 | HQR0080536 | HQR0080556 |
| HQR008 | HQR0080598 | HQR0080598 |
| HQR008 | HQR0080619 | HQR0080620 |
| HQR008 | HQR0080816 | HQR0080842 |
| HQR008 | HQR0080845 | HQR0080856 |
| HQR008 | HQR0080896 | HQR0080902 |
| HQR008 | HQR0080944 | HQR0080944 |
| HQR008 | HQR0080953 | HQR0080953 |
| HQR008 | HQR0081028 | HQR0081032 |

INTERROGATORY NO. 12:

Does DOE plan to accept delivery of FAILED FUEL from DAIRYLAND on a different schedule than the rest of DAIRYLAND's SPENT FUEL before it completes taking delivery of

other SPENT FUEL from DAIRYLAND? If so, DESCRIBE the schedule DOE is planning to use for picking up DAIRYLAND's FAILED FUEL.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as overly broad and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this interrogatory because it seeks information that is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court stated that it "does not accept, at least for purposes of discovery, that, as Defendant avers, 'discovery into DOE [Department of Energy]'s current projections about the future [is] irrelevant to any analysis of causation or damages.'" Order, at 1 (Feb. 5, 2007) (brackets in original). In response to the Court's order, defendant states that, at the present time, DOE does not have a current plan regarding the acceptance of SNF from Dairyland, beyond the contract mechanisms in Articles IV and V of the Standard Contract that detail the manner in which SNF acceptance allocations are assigned and approved. As a result, DOE has not yet identified the schedule upon which it will actually accept, or by which it "plans" to accept, Dairyland's failed fuel. As part of any future plan that is developed for the acceptance of SNF from Dairyland, DOE will have to consider the fact that the SNF from

that reactor is failed fuel, at least some of which apparently has suffered extreme degradation. During his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for an explanation of those issues. Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

INTERROGATORY NO. 13:

Do you contend that DOE would have picked up DAIRYLAND's FAILED FUEL later than the rest of its SPENT FUEL had the government begun SPENT FUEL acceptance from utilities starting not later than January 31, 1998? If so, state all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature prior to the completion of fact discovery, given that defendant does not have adequate information regarding plaintiff's failed fuel to respond appropriately to this interrogatory. Defendant objects to this interrogatory as vague, overly broad, and unduly burdensome. Given that the design parameters for any storage facility that DOE might operate have not yet been defined, it is impossible to identify every technical impediment that could occur in the acceptance of failed fuel from Dairyland's nuclear reactor.

Without waiving these objections, defendant responds that, during his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for a response to this interrogatory. Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not require any further supplemental of this response.

INTERROGATORY NO. 14:

Do you contend that DAIRYLAND's expenditures supporting PFS were unreasonable expenditures toward mitigation of DAIRYLAND's damages due to DOE's partial breach of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, state all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as any determination of whether, from a business or profit-making standpoint upon Dairyland's part, it was "unreasonable" for Dairyland to invest in Private Fuel Storage ("PFS") cannot be made prior to the completion of discovery.

Without waiving these objections, defendant states that, as we have explained in prior briefing in several of the SNF cases pending before this Court, any investment in PFS was not foreseeable at the time of contract formation and, further, was wholly speculative. Any such investment could not be considered proper "mitigation" of DOE's delay in beginning SNF acceptance.

SUPPLEMENTAL RESPONSE:

Although the Court's February 5, 2007 order does not require supplementation of our original response to this interrogatory, defendant further refers plaintiff to the post-trial briefing that the Government filed in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C (Fed. Cl.), dated June 30, 2006, and July 7, 2006, copies of which are available on PACER accessible through the Court of Federal Claims' website.

INTERROGATORY NO. 15:

Do you contend that it was unreasonable for DAIRYLAND to store its SPENT FUEL in the LACBWR wet fuel storage pool at any time after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, DESCRIBE when you contend it became unreasonable for DAIRYLAND to continue to store its SPENT FUEL in the LACBWR wet fuel storage pool and DESCRIBE the specific alternative storage options you believe would have been reasonable for DAIRYLAND to employ to store its SPENT FUEL from that point onward.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

However, defendant states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that it was unreasonable for Dairyland to store its spent fuel at LACBWR in wet storage. Further, the Government does not concede that Dairyland has been required to maintain its spent fuel pool for a longer period of time because of DOE's partial breach of the Standard Contract.

INTERROGATORY NO. 16:

DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its SPENT FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its SPENT FUEL that are different from those options explored and/or implemented to store DAIRYLAND'S FAILED FUEL, DESCRIBE how and why they should have been different.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

However, defendant states that it is not its obligation to develop contentions regarding alternative options that Dairyland could have pursued. Defendant further states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that Dairyland should have explored and/or implemented any particular strategy for the storage of its spent fuel. However, defendant does not concede that DOE's partial breach of the Standard Contract was the cause of any particular method chosen by Dairyland.

INTERROGATORY NO. 17:

DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its FAILED FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its FAILED FUEL that are different from those options explored or implemented to store DAIRYLAND'S SPENT FUEL, DESCRIBE how and why they should have been different.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature, as such determinations cannot be made prior to the completion of discovery.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.

However, defendant states that it is not its obligation to develop contentions regarding alternative options that Dairyland could have pursued. Defendant further states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that Dairyland should have explored and/or implemented any particular strategy for the storage of its failed fuel. However, Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

INTERROGATORY NO. 18:

DESCRIBE all efforts undertaken by or on behalf of DOE to examine the manner or process by which DOE would remove SPENT FUEL from LACBWR. IDENTIFY the five people with the most knowledge of these efforts and the nature of such knowledge.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory as vague, overly broad, irrelevant, and unduly burdensome, particularly given its use of terms which plaintiff has defined very broadly in the "Definitions" section. Defendant further objects to this request to the extent that it relates to the manner in which DOE may, in the future, remove fuel from the LaCrosse reactor because, in accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation. Defendant also objects to plaintiff's demand that defendant identify the "five people with the most knowledge" of the efforts identified, as plaintiff is requesting that counsel for defendant interview all individuals within DOE who may have had some involvement in matters and made judgment calls regarding the level of their current knowledge and memory, and plaintiff would then require defendant to disclose the results of the attorney work product; nevertheless, defendant will undertake to identify individuals whom, from a review of documents, may have some knowledge of the efforts identified based upon their apparent involvement in such efforts.

Without waiving these objections, defendant states that, pursuant to RCFC 33(d), the answer(s) to this interrogatory may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. To the degree that it has not already done so, defendant will make the database of documents available to plaintiff at mutually acceptable times to allow plaintiff to inspect such records and make such copies as plaintiff

deems appropriate. Documents that may contain information responsive to this request include the Facility Interface Data Study (MOL.20060121.0173), the Facility Interface Capability Assessment, the Near-Site Transportation Infrastructure study, and Service Planning Documents.

With regard to plaintiff's request for identification of individuals who may have been involved in the efforts identified in this interrogatory, defendant is unaware of any individuals who would have worked upon or studied the removal of spent nuclear fuel specifically from the LaCrosse reactor or the LaCrosse site itself. However, individuals may have contemplated the removal of spent nuclear fuel from nuclear utilities in general. Pursuant to RCFC 33(d), the names of those individuals – either DOE employees or contractor employees – may be obtained from the database of documents previously made available, or to be made available, to plaintiff, and the burden of ascertaining the answer(s) is substantially the same for plaintiff as it is for defendant. However, those individuals may include David Zabransky, Ned Larson, and Robert Burgoyne.

SUPPLEMENTAL RESPONSE:

In its February 5, 2007 order, the Court ordered that, where Dairyland "has requested the identity of persons involved in the review of preparation, etc., of certain documents or communications, Defendant shall identify those individuals whose involvement was reasonably material, substantive, or the like (rather than those whose involvement was solely ministerial or secretarial), but not those who merely *may* have had such involvement." Order, at 1 (Feb. 5, 2007) (italics in original). However, it ordered that, "to the extent that Plaintiff has requested that Defendant identify 'all aspects' of any person's involvement in review or preparation, etc., of certain documents or communications, Plaintiff's request is literally overbroad," ordering instead

that "Defendant shall identify the nature of such involvement, etc., with reasonabl[e] particularity." Id. at 2. In addition, the Court ordered that, "to whatever extent Defendant intends to rely on RCFC 33(d) to respond to Plaintiff's interrogatories, Defendant shall identify such documents with reasonable particularity and indicate where such documents can reasonably be found in the government's proffered database(s)." Id. at 1. Finally, with regard to this particular interrogatory, the Court ordered that, rather than identify "the 'five people with the most knowledge' in response to [this interrogatory], [defendant] shall instead identify all those individuals whose knowledge is reasonably material, substantive, or the like, relating to the removal of spent fuel from the La Crosse Boiling Water Reactor (LACBWR)."

In accordance with those guidelines, defendant provides the following supplemental response: In the early 1990's, DOE commissioned several studies of the facilities and infrastructure at and near utility sites throughout the country, including the LaCrosse plant, to determine the capabilities for loading of casks and the shipment of SNF from those utility sites. The reports that resulted from these studies are found in the database of documents that has been made available to Dairyland, in Dairyland's own database of documents, and on the RIS-web with the following bates numbers or accession numbers: Site and Facility Waste Transportation Services Planning Document (Draft), March 1991 (PLAC0149483-531); Site and Facility Waste Transportation Services Planning Document, May 1993 (HQV.19931101.0007); Facility Interface Capability Assessment (FICA) Project Cask Handling Assessment La Crosse BWR, October 1990 (HQR0441640-1654); Near-Site Transportation Infrastructure Project Draft Report and Assessment, June 1990 (PLAC0079126-9216); Near-Site Transportation Infrastructure Project Final Report, February 1992 (YMP0032291-2348). The individuals who had substantial

involvement in these studies or the preparation of these reports include Tom Pollog and Mike Conroy, DOE; Bill Lee and Nigel Mote, NAC; Bill Teer, TRW; and Ron Pope, Steve Schmid, and Bill McLain, Oak Ridge National Laboratory.

In 2004, DOE undertook an effort to update these assessments and obtained from utilities information on "Facility Interface Data Sheets" or "FIDS." The FIDS for the LaCrosse plant are found within Dairyland's own database of documents at PLAC0077157-58 and PLAC049331-32. This data was compiled in a report, Final Report on Facility Interfaces for Office of Civilian Radioactive Waste Management, January 2005 (MOL.20060121.0173). David Zabransky and Ned Larson, DOE, and Robert Burgoyne, Booz-Allen, had substantial involvement in this recent effort.

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
FAX: (202) 307-2503

OF COUNSEL:

JOSHUA E. GARDNER
PATRICK BRYAN
SCOTT SLATER
Trial Attorneys
Commercial Litigation Branch
Department of Justice

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy

August 7, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 7th day of August 2007, I caused to served by facsimile and first class mail a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AS AMENDED IN RESPONSE TO THE COURT'S FEBRUARY 5, 2007 ORDER AND SUPPLEMENTED FOLLOWING THE CLOSE OF FACT DISCOVERY" addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

Sriwell Miller