No. 04-106C
(Chief Judge Damich)

Electronically Filed: August 22, 2007

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

# DAIRYLAND'S REPLY ON ITS MOTION FOR RELIEF FOR GOVERNMENT DISCOVERY VIOLATIONS REGARDING RULE 30(b)(6) DEPOSITION TESTIMONY

---

Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3173 Phone
(202) 261-4751 Fax
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
Greenberg Traurig, LLP

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. The Court Should Sanction the Government For Failing to Provide Testimony on A Number of Designated Topics ..... 2

II. The Court Should Compel Deposition Testimony Withheld on Improper Claims of Privilege ..... 9

TABLE OF AUTHORITIES

FEDERAL CASES Page

*Banks v. Office of the Sergeant-at-Arms*, 241 F.R.D. 370 (D.D.C. 2007) ... 5, 6

*Black Horse Lane Assoc. v. Dow Chemical Corp.*, 228 F.3d 275 (3rd Cir. 2000) ... 3

*Boland Marine & Mfg. Co. v. M/V Bright Field*, 1999 WL 280451 (E.D. La.) ... 2

*Brazos River Auth. v. GE Ionics*, 469 F.3d 416 (5th Cir. 2006) ... 5

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) ... 9

*Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939 (Ct. Cl. 1958) ... 10

*Kendall v. United Air Lines, Inc.*, 9 F.R.D. 702 (S.D.N.Y. 1949) ... 5

*LaPenna v. Upjohn Co.*, 110 F.R.D. 15 (E.D. Pa. 1986) ... 5

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ... 10

*Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999) ... 3

*Residential Funding Corporation v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002) ... 3

*RTC v. Southern Union Co.*, 985 F.2d 196 (5th Cir. 1993) ... 2

*So. Cal. Edison Co. v. United States*, 226 F.3d 1349, 1357 (Fed. Cir. 2000) ... 10

*United States v. Dianon Systems, Inc.*, 240 F.R.D. 40 (D. Conn. 2006) ... 4, 5

*United States v. Massachusetts Industrial Finance Agency*, 162 F.R.D. 410 (D. Mass. 1995) ... 2

OTHER AUTHORITIES

4 Moore's Federal Practice 26.56[3] ... 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed electronically on August 22, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE | ) | |
| Plaintiff, | ) | No. 04-106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S REPLY ON ITS MOTION
FOR RELIEF FOR GOVERNMENT DISCOVERY
VIOLATIONS REGARDING RULE 30(b)(6) DEPOSITION TESTIMONY

The government's response regarding the failure of its Rule 30(b)(6) designees to respond to a number of the topics for which they were designated fails to come to grips with the fact that this Court previously granted Dairyland's motion compelling such depositions. Instead, the government's arguments are based on claims that the topics on which Dairyland has sought Rule 30(b)(6) are excessively broad. But these arguments were largely litigated and rejected in the Court's January 29, 2007 Order granting Dairyland's motion to compel depositions. The government's remaining arguments on this issue assert that there can or should be no consequence to the government's failure to comply with this Court's Orders, an argument contrary to RCFC 37, the great weight of legal authority and good judicial practice.

The government remarkably offers no authority supporting its arguments on its claims of privilege. The government seeks to extend the deliberative process privilege,

the attorney-client privilege and the work product doctrine beyond their recognized boundaries. Sound legal principles counsel against such extensions.

I. The Court Should Sanction the Government For Failing to Provide Testimony on A Number of Designated Topics

The government first argues that this Court may only sanction the government if the government has acted willfully or in bad faith to obstruct discovery. Govt. Opp. at 26. Such a showing is not required by RCFC 37(b) or 37(d), and the authority the government cites does not support such a requirement. In each of the two cases relied upon by the government, *United States v. Massachusetts Industrial Finance Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995), and *Boland Marine & Mfg. Co. v. M/V Bright Field*, 1999 WL 280451 at *3 (E.D. La.),[1] unlike the present case, there had been no prior orders compelling the deposition. Moreover, the courts did not find that the responding parties' designees had failed to address any topics in their entirety; rather, they found merely that the parties could have done better to prepare their designated witnesses and that the witnesses failed to testify "fully" on some topics. The Magistrate Judges noted the lack of bad faith on the part of the responding party merely as further support for the exercise of their discretion not to sanction the responding party, not as a prerequisite for them to have such discretion. Both of those cases contrasted their facts with those of *RTC v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993), cited in Dairyland's motion. In that case, the Fifth Circuit affirmed a trial court's imposition of sanctions where the responding party's designee, as was the case here, did fail entirely to address at least some designated topics even though there was no allegation or discussion in the

[1] The government's citation to *Boland* contains a typographical error in the Westlaw reference number.

opinion that the failure to provide testimony was willful or in bad faith to obstruct discovery. Likewise, in *Black Horse Lane Assoc. v. Dow Chemical Corp.*, 228 F.3d 275 (3rd Cir. 2000), cited by Dairyland in its motion, the Third Circuit did not reference a bad faith or willful misconduct standard as a prerequisite to the imposition of sanctions. In addition, other authority from the courts of appeals provides for the imposition of sanctions under Rule 37 with no willful misconduct or bad faith prerequisite. *See, e.g., Residential Funding Corporation v. DeGeorge Financial Corp.***,** 306 F.3d 99, 107 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."); *Reilly v. Natwest Markets Group Inc.***,** 181 F.3d 253 (2d Cir. 1999) (rejecting bad faith or willful misconduct conduct as a prerequisite to the imposition of a negative inference sanction for spoliation).

Moreover, it would be wrong for courts to require a showing of willful misconduct or bad faith as a prerequisite to the imposition of sanctions for violations under RCFC 37(d) and especially 37(b). First, it is awkward at best to attempt to delve into the mental state of the responding party, particularly where that party is not an individual. Such inquiries into why the responding party chose to respond the way it did can also needlessly waste time and effort and intrude on information protected by the work product doctrine. Second, the more appropriate inquiries are the extent of the violation, and the prejudice to the party seeking the discovery. Here, where the Court has already issued an order compelling the Rule 30(b)(6) depositions on the designated topics, prejudice to Dairyland from the government's failure to provide testimony is clear.

Furthermore, the government's failure to provide testimony on some of the designated topics does appear to have been willful. For example, as noted in Dairyland's motion at 3-7, the government, through its counsel, deliberately attempted to limit the reach of Mr. Kouts' testimony regarding topics 18 and 19. And Mr. Zabransky was totally unprepared to address the topics of the parties' intent regarding the Standard Contracts and DOE's plans for accepting Dairyland's failed fuel, *see* Dairyland Mot. at 7-9. As Mr. Zabransky admittedly spent several days preparing to testify on certain designated topics, *see* Depo. Tr. at 208, A 72 to Govt. Opp., but apparently did not prepare to testify on other topics, it is difficult to see how the government's failure to provide testimony on the topics on which Mr. Zabransky was not prepared can be characterized as other than willful.

The government argues regarding the topics on which Mr. Kouts failed to provide testimony that Dairyland's questions improperly seek to require the government's fact witness to "bless or condemn the trial opinions rendered by the parties' experts." Govt. Opp. at 28, citing *United States v. Dianon Systems, Inc.*, 240 F.R.D. 40, 42 (D. Conn. 2006). The government's "expert testimony" argument is a complete red herring, and *Dianon* does not support the government in any event. Dairyland has attempted to learn through a deposition on topics 18 and 19 whether the government has a litigation position on these issues, and if it does, what, if any, support the government has for its positions. The fact that a party might support its arguments with the testimony from a specially-retained expert is beside the point. As the government's counsel well knows, Dairyland is not offering the testimony from any specially retained experts on these issues, and now that we have the government's expert witness reports, we know that the government is

not either. In *Dianon*, conversely, the deponent was asked a "series of questions about whether she agreed or disagreed with certain opinions that had been expressed by the experts" in that case. *Id.*

In the same vein, the government argues that it should be permitted to limit its Rule 30(b)(6) testimony to factual matters known to the deponent or reasonably known by DOE and avoid providing the *government's* positions on the litigation issues raised in the designated topics, specifically topics 18 and 19. Govt. Opp. at 29. But the government's position is flatly contrary to this Court's January 29, 2007 Order compelling the depositions and substantial authority. This Court's Order compelling the depositions did not limit the government's responsibility to provide Rule 30(b)(6) testimony to matters known to DOE. And the Court's Order is in accord with authority:

> . . . [A] rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic. [citation omitted]. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions.

*Brazos River Auth. v. GE Ionics*, 469 F.3d 416 (5th Cir. 2006); *see also LaPenna v. Upjohn Co.*, 110 F.R.D. 15, 20 (E.D. Pa. 1986), citing *Kendall v. United Air Lines, Inc.*, 9 F.R.D. 702 (S.D.N.Y. 1949) and 4 *Moore's Federal Practice* ¶ 26.56[3] at 142-43 (2d ed. 1984).

*Banks v. Office of the Sergeant-at-Arms*, 241 F.R.D. 370 (D.D.C. 2007), cited by the government, supports Dairyland's position. In that case, the Court explained that Rule 30(b)(6) was intended to avoid "bandying" whereby officers of a corporation are deposed in turn with each disclaiming knowledge of facts clearly known to the organization. *Id.* at 373. In that case, the Court found no bandying because the Rule

30(b)(6) designee testified as to what he knew as well as what others "did or might know." *Id.* at 375. In the present case, the government is surely "bandying" knowledge of the government's positions on these issues (*e.g.,* from Kouts to "experts" who likewise don't address the issue). Unlike the plaintiff in *Banks,* Dairyland is not seeking to have the government's designee investigate Dairyland's case. Rather, Dairyland seeks sanctions because the government refused to disclose the basic contours of the government's case.

The government also argues that Dairyland is not entitled to relief for Mr. Kouts' failure to respond on topics 18 and 19 because Dairyland subsequently received responsive information in the government's responses to Dairyland's contention interrogatory no. 15. Govt. Opp. at 27, n. 13. This argument is remarkably cynical. First, the government ignores the fact that this interrogatory response was not served until the date of the Court's recent status conference on August 7, months after the due date provided for in the Court's February 5, 2007 Order. Dairyland had sought the contention interrogatory answers before the Rule 30(b)(6) depositions so that the answers could be followed-up at the depositions. Second, the government's interrogatory response doesn't answer the question. The response states that

> we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature. However, defendant states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant *does not currently plan to argue* that it was unreasonable for Dairyland to store its spent fuel at LACBWR in wet storage.

A 155 to Govt. Opp (emphasis added). And even beyond the expressly tentative nature of this response, the reference to "except as otherwise identified in the

expert reports" cries out for clarification through a Rule 30(b)(6) deposition as originally sought by Dairyland because those expert reports do not address the issue at all.

Regarding Mr. Zabransky's failure to answer, the government argues that his answers were "complete." Govt. Opp. at 30. The government definition of "complete" in this context is extraordinary. Regarding topic 6, DOE's intent regarding the Standard Contracts, the government notes Mr. Zabransky's testimony that DOE intended to implement the provisions of the NWPA. *Id.* That is nothing but a truism, yet that was the full extent of Mr. Zabransky's testimony. According to the Merriam-Webster Online dictionary, "intention" means "what one intends *to do or bring about*." That is what topic 6 called for, that is an issue in this case – what DOE intended to do or bring about pursuant to the Standard Contracts – and that is precisely what Mr. Zabransky failed to testify about. The government also fails to acknowledge, as Dairyland set out in its motion, that Mr. Zabransky would not or could not testify regarding DOE's intent as to any particular provision in the Standard Contract testimony – the "how," "why," and "to what end" DOE was trying to implement the NWPA. *See* Dairyland Mot. at 7-8. Likewise, regarding topic 7, DOE's understanding of utilities' intent in entering into the Standard Contracts, Mr. Zabransky merely pointed to the pile of paper constituting the administrative record for the Standard Contract rulemaking and claimed that the understanding was in there. A 54 to Govt. Opp. But Mr. Zabransky failed to provide DOE's position as to what utilities' intended as reflected in that administrative record. A 54-55 to Govt.

Opp. Regarding topic 14 concerning failed fuel, including importantly DOE's plans for scheduling and acceptance of Dairyland's failed fuel, the government merely notes Mr. Zabransky's testimony concerning the general contract provision concerning the scheduling of acceptance of failed fuel. Govt. Opp. at 31. The government does not dispute that Mr. Zabransky failed to provide testimony concerning DOE's plans for acceptance of failed fuel.

The government asserts that Mr. Zabransky justifiably claimed ignorance of Dairyland's failed fuel because Dairyland has produced information concerning the details of its failed fuel in this litigation to attorneys at the Justice Department rather than to DOE in the ordinary course of agency business. Govt. Opp. at 19, n. 9. Of course, the Court's Rules require that papers be served on counsel, not individual agencies. The rules and authority as discussed above also require the government's designee to provide to provide testimony based on information reasonably available to the government. The government cannot avoid having its designee provide testimony by not informing him of information available to it. It would be particularly unfair to allow Mr. Zabransky to avoid responding on this basis at his deposition, and then later come to trial and present the government's position on failed fuel acceptance based on his "recent review" of the same documents already provided by Dairyland. Yet absent this Court's intervention, that is exactly what Mr. Zabransky may well do. He has testified on comparable failed fuel matters at several other spent fuel trials.

The government correctly states that Dairyland's motion complains that Mr. Zabransky failed to answer questions regarding topic 9, for which the

government identified Mr. Kouts as its designee. Accordingly, Dairyland withdraws its request that the Court issue an Order prohibiting the government from offering evidence at trial on that issue – a reasonable annual acceptance rate for spent fuel under the Standard Contracts. Nevertheless, it is noteworthy that in spite of the government's insistence that the parties "meet and confer" thoroughly on Dairyland's motion and the multiple telephone calls in which the parties' counsel did confer, the government did not apprise Dairyland of this issue until the government filed its response to Dairyland's motion.

## II. The Court Should Compel Deposition Testimony Withheld on Improper Claims of Privilege

Regarding its claims of the deliberative process privilege, the government makes two arguments. First, it states that Dairyland does not offer legal authority in support of its argument that the deliberative process privilege does not extend to the government's commercial interests. Govt. Opp. at 36. The government's argument is misplaced, since the government offers no legal authority for its apparent view that the deliberative process privilege may be used to shield the government's commercial interests. And as the party claiming the privilege, it is the government's burden to establish its entitlement to it. *Cf. Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000) (stating that it is burden of party claiming attorney-client privilege to establish entitlement to such protection).

Moreover, the seminal legal authorities discussing the deliberative process privilege make clear that the privilege is intended to protect the government's deliberations regarding *policy* issues, not the government's commercial interests.

*E.g. Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 945-46 (Ct. Cl. 1958) ("the document sought was intra-office advice on *policy* . . .there is a public policy involved in this claim of privilege for this advisory opinion – the policy of open, frank discussion . . . concerning *administrative action*.") (emphases added); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (explaining that deliberative process privilege cases "focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which *governmental decisions and policies* are formulated.") (emphasis added). Similarly, authority outside the privilege context makes clear that the government's regulatory and policy interests stand on an entirely different footing than its commercial interests. *See, e.g.*, *So. Cal. Edison Co. v. United States*, 226 F.3d 1349, 1357 (Fed. Cir. 2000) ("While regulatory interpretations are generally afforded substantial deference by reviewing courts, . . . If courts were generally to adopt a principle of deference to an agency's contract interpretation, such deference could lead the courts to endorse self-serving post-hoc reinterpretations of contracts that an agency might offer in the context of litigation.")

Second, the government asserts that Mr. Brownstein's declaration explains that DOE's actions in establishing a national repository for spent fuel is a matter of the utmost national interest. Govt. Opp. at 36. Dairyland agrees that DOE's development of a national repository is a governmental function of national interest. But Dairyland's deposition questions did not seek disclosure of deliberations on the development of the national repository. Rather, Dairyland

sought information regarding merely the government's commercial interests – consideration of terms for possible amendments to the Standard Contracts concerning TADs and the terms of new contracts covering new nuclear reactors. Mr. Brownstein's declaration does not claim otherwise.

Moreover, the government does not offer any argument as to why its interest in confidentiality regarding consideration of these particular issues outweighs Dairyland's interests in disclosure. The arguments for confidentiality advanced in Mr. Brownstein's declaration, *see* A 117 to Govt. Opp., merely recite the general rationale for the deliberative process privilege without identifying any particular concern with disclosure of information on these issues.

Finally, to apply the deliberative process privilege to deposition testimony, as opposed to carefully-crafted, "deliberative" government documents, would represent an extraordinary expansion of the privilege. The Court should reject the government's attempt to do so.

Regarding the government's instructions to Mr. Zabransky not to answer questions concerning his knowledge of the costs to store spent fuel incurred by utilities, the government asserts that such testimony would "inevitably" force Mr. Zabransky to divulge the substance of communications between himself and counsel as well as the details of analyses that Mr. Zabransky performed at the direction of counsel. Govt. Opp. at 37-38. The government's inevitability argument is meritless. Although there may be questions that could be asked that might seek privileged or protected information, the government makes no argument that the questions Dairyland's counsel actually asked of Mr. Zabransky

did seek privileged or protected information. Furthermore, although Mr. Zabransky might have learned some information about utility costs through communications with counsel, it is more likely that he has gained any such knowledge through review of utility documents and discussions with utilities. The government certainly has not carried its burden of proving an entitlement to privilege over answers to Dairyland's questions.

For the foregoing reasons, as well as those set out in its motion, Dairyland's motion for relief should be granted.

Respectfully submitted,

Dated: August 22, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP