IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically Filed on September 21, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE | ) | |
| Plaintiff, | ) | No. 04-106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S RESPONSE TO THE GOVERNMENT'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT ACCOMPANYING
MOTION FOR SUMMRY JUDGMENT REGARDING PRIVATE FUEL STORAGE

Pursuant to RCFC 56(h)(2), Dairyland responds to the government's requested findings of fact as follows:

1. Plaintiff, Dairyland Power Cooperative ("Dairyland"), is "an electric generation and transmission cooperative" organized as a member cooperative. Compl. ¶ 4.

Response: This proposed finding is not material to the government's motion, but Dairyland does not dispute the accuracy of the statement.

2. Dairyland is exempt from Federal income taxes as long as no more than 15 percent of its income comes from nonmembers of the cooperative. See Deposition of Keith Stubbendick, CPA, February 1, 2007 ("Stubbendick Tr."), at 183:1-186:21 (A3-4).

Response: This is a conclusion of law, not a finding of fact. The proposed finding erroneously refers to "income" rather than "receipts". *See* Stubbendick Decl. ¶ 3. The proposed finding fails to note the relevant time frame. *Id.* In

addition, the proposed finding inaccurately refers to "nonmembers of the cooperative," while the appropriate concept is any source other than members. *Id.* Dairyland understands that it is exempt from federal income taxation as long as 85% of its gross receipts comes from members in any given fiscal year. *Id.*

3. The Department of Energy entered into a contract with Dairyland in 1983, under which the Department of Energy was to begin removal of spent nuclear fuel ("SNF") from commercial nuclear utility contract holders by January 31, 1998. Compl. ¶ 1. The Department of Energy did not commence accepting SNF from contract holders by January 31, 1998.

Response: Characterization of the parties' contract is a conclusion of law, not a proposed finding of fact. The proposed conclusion of law is erroneous and not consistent with Dairyland's Complaint. As reflected in the Complaint ¶ 1, the parties' contract states that DOE was obligated to commence removal of Dairyland's spent fuel by January 31, 1998, not merely that from some "commercial nuclear contract holder". *See* Contract appended to Complaint, Art. II.

4. Dairyland alleges in this case that the Government's delay in SNF acceptance caused Dairyland to incur certain damages, which are the subject of this litigation. Compl. ¶ 1. In particular, Dairyland includes among its claimed damages costs that it incurred "in connection with exploring, supporting and developing private off-site alternatives for storage of its spent fuel." Plaintiffs RCFC 26(a)(1) Disclosures, at 4 (A16). According to Dairyland, these costs total $10,936,901. PDPC0032834 (A19) (Plaintiff's Revised Summary of Damages).

Response: Dairyland alleges that the government has completely failed to perform, not that performance has merely been delayed. *See* Complaint ¶ 1.

5. Dairyland did not incur these off-site storage costs. Rather, the costs were incurred by Genoa Fuel Tech, Inc. ("GFT"), a separate and distinct for-profit corporation that is a subsidiary of Dairyland. See Stubbendick Tr. at 188:12-189:5; 200:22-201:3; 223:19-224:5 (A4-11); see also DPID0000687-DPID0000805 (A20-138).

Response: This proposed finding is not accurate. Dairyland itself incurred all of the costs being claimed in this action. *See* Stubbendick Decl. ¶¶ 4-5. Mr. Stubbendick's deposition testimony and the documents cited by the government are not to the contrary. The proposed finding confuses Dairyland's expenditures on GFT for the purpose of pursuing Private Fuel Storage ("PFS") (which are being claimed as damages) and GFT's expenditures on PFS (which are the same in amount, but which are not being claimed as damages). The reference to GFT being "separate and distinct" appears to be a conclusion of law, is unclear and substantially overstates the practical separation between the entities. GFT is wholly-owned by Dairyland. *See* Parkyn Decl. ¶ 1. Moreover, Dairyland controls all of GFT's actions. *See* Sans Crainte Decl. ¶ 2. In addition, Dairyland determines the makeup of GFT's board of directors and its officers, and all of GFT's board members and officers have been employees of Dairyland. *Id.*

6. Specifically, the claimed expenditures consist of capital investments that GFT, rather than Dairyland, made in Private Fuel Storage, LLC ("PFS") – a separate corporate entity that was formed in the early 1990s by a consortium of companies to explore private (that is, non-governmental) alternative storage options for spent fuel – as

well as travel and administrative costs that GFT's officers incurred in connection with promoting and developing PFS as a business enterprise. PDPC0032834 (A19) (Dairyland's Revised Summary of Damages); DPID0000684-DPID0000686 (Al39-41); DPID00008O6-DPID0000811 (142-48). Deposition of John Parkyn, December 12, 2006 ("Parkyn Tr."), at 96:18-98:14 (A154).

> Response: As noted in response to proposed finding number 5, the expenditures Dairyland is claiming as damages are its expenditures on GFT to pursue PFS, but not GFT's expenditures on PFS directly. *See* Stubbendick Decl. ¶¶ 4-5. Dairyland is not claiming any costs "in connection with promoting and developing PFS as a business enterprise." Dairyland is claiming both the costs of the capital contributions made to PFS (though GFT) and GFT's administrative costs, which consist of the costs of supporting it as a wholly-owned subsidiary of Dairyland and the costs of its active participation as a member in PFS. *See* Stubbendick Decl. ¶¶ 4-6. In addition, Dairyland has viewed PFS as merely a means of organizing the group of utilities interested in pursuing an off-site dry storage alternative for their spent fuel in light of DOE's breach, rather than a business enterprise. *Id.* ¶ 6. Further, Dairyland does not provide direct support for PFS, and it obtains reimbursement from PFS (not reflected in the administrative expenses noted above) for some of the expenses it does incur related to PFS' operations. *Id.*

7. Dairyland is not a member of PFS and has never contributed any money directly to PFS. Stubbendick Tr. at 200:22-20l:3 (A7-8); Parkyn Tr., at 97:13-98:1 (A154) (Chairman of PFS, discussing PFS's membership).

Response: This proposed finding is not material to the government's motion, but Dairyland does not dispute the accuracy of the statement.

8. In its public statements, PFS claims to provide its investors with various benefits, including, among others, a "modest profit from non-member customers." PDPC0004815 (A173). John Parkyn, Chairman of PFS, anticipates that PFS will yield a "return on [members'] investment." PDPC0027484 (A199).

Response: This proposed finding is not material. In addition, the proposed finding is not entirely accurate. The first cited document is a draft business plan, not "public statements." Furthermore, the referenced statement is not a clam of benefits to investors but merely refers to a marketing strategy for potential customers for its services. The second cited document does not reference an expectation of Mr. Parkyn's; rather, it states merely that "we look forward to a return on our investment."

9. PFS has proposed to build an SNF storage site on the lands of the Skull Valley Band of Goshute Indians, southwest of Salt Lake City, Utah. See Parkyn Tr., at 96:18-98:2 (A153-54); PLAC0056816 (A213). The Goshutes have approved the facility, and the Nuclear Regulatory Commission ("NRC") has granted PFS an operating and construction license for the Skull Valley site, but there is opposition from both the State of Utah and Utah's Congressional delegation. See id.; PDPC0027484 (A199); PDPC0027508-PDPC0027510 (A252-54). PFS yet faces many obstacles before the Skull Valley project can become a reality. See Deposition of Charles V. Sans Crainte, January 20, 2007 ("Sans Crainte Tr."), at 233:17-234:6 (A263).

Response: Dairyland agrees with the first two sentences of the proposed finding of fact. The third sentence of the proposed finding of fact is not entirely accurate. The cited testimony of Mr. Sans Crainte does not refer to "many obstacles," but refers merely to "political" objections, and he notes that the engineering basis, economic basis and the site are fine. Dairyland agrees that PFS currently faces obstacles.

10. Dairyland decided not to invest in PFS because it was worried that involvement in the project could subject Dairyland to adverse publicity, tort liability, and Federal taxes. Deposition of Robert M. Brimer, January 31, 2007 ("Brimer Tr."), at 170:4-171:8; 172:2-175:8 (A267-68); Stubbendick Tr., at 183:1-186:21 (A3-4); Sans Crainte Tr., at 15:21-18:19 (A258-59).

Response: Dairyland has participated in PFS through GFT. Dairyland has participated in PFS through its subsidiary, rather than directly, to limit Dairyland's potential liability (not merely "tort liability") from that participation and to minimize the chances of potential adverse tax consequences to Dairyland. *See* Parkyn Decl. ¶ 6. Worries about adverse publicity were not a factor in Dairyland's decision to participate in PFS through a subsidiary. *Id.* (noting reasons for participation in PFS through GFT that do not include publicity concerns). The only testimony cited by the government that mentions publicity in any way is that of Robert Brimer, and his is not contrary to Dairyland's position on this issue. Mr. Brimer's testimony refers merely to a "sort of PR position" in a 1996 document (after Dairyland had already decided to participate in PFS

through a subsidiary) concerning reference to GFT rather than Dairyland when PFS participants are listed.

11. Dairyland, as a cooperative, is exempt from Federal income taxes as long as no more than 15 percent of its income comes from nonmembers of the cooperative. Stubbendick Tr., at 183:1-186:21 (A3-4). Dairyland expected that an investment in PFS would return profits, but Dairyland's board feared that these profits could toward the 15-percent income threshold and thus jeopardize the entire cooperative's tax-exempt status. See id.; Sans Crainte Tr., at 163:8-22 (A261); Deposition of William Berg, April 26, 2007 ("Berg Tr."), at 89:1-21 (A273).

Response: This proposed finding of fact is not material to the government's motion. The first sentence of this proposed finding is a conclusion of law, not a finding of fact. This sentence erroneously refers to "income" rather than receipts. *See* Stubbendick Decl. ¶ 3. The sentence also fails to note the relevant time frame. *Id.* In addition, the sentence inaccurately refers to "nonmembers of the cooperative," while the appropriate concept is any source other than members. *Id.* Dairyland understands that it is exempt from federal income taxation as long as no more than 15 percent of its gross receipts in any given fiscal year come from sources other than its members. *Id.* Dairyland did not expect PFS to return profits to Dairyland, and the cited testimony is not to the contrary. Mr. Sans Crainte's testimony states merely that some (but not all) business cases for PFS demonstrated a potential for profit. And Mr. Berg's testimony was merely that one potential benefit of structuring Dairyland's participation in PFS through GFT was to help maintain Dairyland's tax exempt status. Further, Dairyland has had

no interest in earning profits from PFS or any other venture. *See* Stubbendick Decl. ¶ 7. The cited testimony also does not mention either fear or any other concern on the part of Dairyland's board.

12. Robert M. Brimer, the former President of GFT, testified that "Private Fuel Storage [is] not popular with a lot of people." Brimer Tr., at 173:20-174:22 (A268). Indeed, Mr. Sans Crainte, Dairyland's Vice President of Generation, testified that "the probability of success [for PFS] is not very good" because of the extensive political opposition to the project. See Sans Crainte Tr., at 233:17-234:6 (A263).

Response: This is not a proposed finding of fact. It purports to characterize testimony that speaks for itself. To the extent this is interpreted to be a proposed finding, it is not material to the government's motion.

13. To shield itself from potential legal liability, unfavorable tax treatment, and negative publicity, Dairyland opted to invest in Genoa Fuel Tech, Inc., a separate, for-profit, wholly-owned, subsidiary corporation that would, in turn, contribute to the PFS business enterprise. PDPC0011163 (A274); PDPC0011175-76 (A278-79); see Parkyn Tr., at 44:1-25 (A152); Stubbendick Tr., at 182:21-25 (A3). GFT was incorporated in Wisconsin in 1995. PDPC0011187-PDPC0011188 (A300-01) (GFT's Articles of Incorporation).

Response: Dairyland agrees that GFT is a for-profit wholly-owned subsidiary corporation of Dairyland. Dairyland also agrees that it has participated in PFS through GFT. Dairyland has participated in PFS through its subsidiary, rather than directly, to limit Dairyland's potential liability from that participation and to minimize the chances of potential adverse tax consequences to Dairyland. *See*

Parkyn Decl. ¶ 6. Avoidance of negative publicity was not a factor in Dairyland's decision to participate in PFS through a subsidiary. *Id.* (noting reasons for participation in PFS through GFT that do not include avoidance of negative publicity). The documents and testimony cited by the government are not to the contrary, as they do not mention negative publicity. The second sentence is not material, but Dairyland does not disagree with its accuracy.

14. Since GFT's incorporation in 1995, Dairyland and GFT have maintained strict corporate formalities to ensure that Dairyland would not suffer any adverse tax consequences because of GFT's anticipated PFS-related profits. See Berg Tr., at 89:1-21 (A273); Stubbendick Tr., at 183:1-186:21 (A3-4). GFT maintains its own separate board of directors from Dairyland and operates according to its own distinct corporate charter and bylaws. PDPC0011172-PDPC0011176 (A275-79) (Bylaws and Organizational Resolutions of Genoa Fuel Tech, Inc.); PDPC0011187-PDPC0011188 (A300-01) (GFT's Articles of Incorporation).

Response: This proposed finding of fact is not material to the government's motion. The reference in the first sentence of the proposed finding of fact to "strict corporate formalities" is vague. Dairyland and GFT have each taken the steps appropriate for their organizational structures. Dairyland has not anticipated that GFT would see profits from PFS, and the referenced testimony is not to the contrary. Mr. Berg's testimony was merely that one potential benefit of structuring Dairyland's participation in PFS through GFT was to help maintain Dairyland's tax-exempt status. Mr. Stubbendick likewise explains that Dairyland's tax exemption could be lost in a given fiscal year if it receives more

than 15 percent of its gross receipts (not profits) from sources other than members. *See also* Stubbendick Decl. ¶ 3. Further, Dairyland has had no interest in earning profits from PFS or any other venture. *See* Stubbendick Decl. ¶ 7. The reference to GFT's corporate charter and bylaws being "distinct" is vague. The government cites to nothing indicating that there is anything distinctive about these documents. To the contrary, they are entirely ordinary corporate organizational documents.

15. GFT's corporate board of directors decided to invest in PFS, and, beginning in 1995 and continuing through 2006, GFT's board voted to fund PFS. PDPC0011066 (A280) (GFT Board's Authorization of PFS Investment); Sans Crainte Tr., 163:23-164:17 (A261). Pursuant to the measures adopted by GFT's board of directors, GFT made several capital contributions to PFS in the form of wire transfers from GFT's corporate bank account to PFS. <u>See, e.g.</u>, DPID0000688-DPID0000803 (A20-138).

<u>Response</u>: This proposed finding of fact is not material to the government's motion. The first sentence is not accurate. GFT executed decisions made by Dairyland's senior management concerning the extent of Dairyland's participation in PFS through GFT. *See* Sans Crainte Decl. ¶ 2. For example, the document cited at A280 to the government's motion merely documents a GFT board resolution authorizing its officer and directors to commit to the payment of up to $1.2 million to PFS. The document does not refer to a decision to invest in PFS. The testimony of Mr. Sans Crainte's that is cited merely notes that GFT had not

contributed additional funds to PFS in the past year. Dairyland does not disagree with the statement in the second sentence in the proposed finding.

16. Of the $10,936,901 claimed by Dairyland for "private off-site storage" costs in this case, $8,669,517 represents the capital contributions that GFT made into PFS. PDPC0032834 (A19). GFT made the payments from its own corporate accounts, and Dairyland was not involved in these capital transfers, as indicated in GFT's financial records. See, e.g. DPID0000688-DPID0000803 (A20-138).

Response: This proposed finding is not accurate. Regarding the first sentence, none of the amount claimed by Dairyland related to PFS in this case represents the capital contributions that GFT made to PFS. Rather, all of the $10,936,901 represents funds paid by Dairyland to GFT. *See* Stubbendick Decl. ¶ 5. Regarding the second sentence, Dairyland does not disagree that GFT made payments to PFS from GFT's corporate accounts to contribute capital to PFS. It is not accurate, however, to say that "Dairyland was not involved" in these transfers. To the contrary, Dairyland decided that the payments would be made by GFT and Dairyland provided GFT with the funds with which to make the payments. *See* Sans Crainte Decl. ¶ 2; Stubbendick Decl. ¶ 5.

17. The remaining $2,267,384 of Dairyland's claimed "private off-site storage" costs consist of travel, legal, and administrative expenses that GFT has incurred in connection with promoting and developing the PFS business enterprise. PDPC0032834 (A19); see, e.g. DPID0000828, DPID0000957 (A281-96). In this regard, GFT's board members billed their expenses to Dairyland, which, in turn, has submitted bills to GFT to recoup the costs. Id.

Response: This statement is not accurate. The expenditures Dairyland is claiming as damages are its expenditures on GFT to pursue PFS, but not GFT's expenditures on PFS directly. *See* Stubbendick Decl. ¶¶ 4-5. Dairyland is not claiming any costs "in connection with promoting and developing PFS as a business enterprise." Dairyland is claiming GFT's administrative costs, which consist of the costs of supporting it as a wholly-owned subsidiary of Dairyland and the costs of its active participation as a member in PFS. *See* Stubbendick Decl. ¶¶ 4-6. In addition, Dairyland has viewed PFS as merely a means of organizing the group of utilities interested in pursuing an off-site dry storage alternative for their spent fuel in light of DOE's breach, rather than a business enterprise. *Id.* ¶ 6. Further, Dairyland does not provide direct support for PFS, and it obtains reimbursement from PFS (not reflected in the administrative expenses noted above) for expenses it does incur related to PFS' operations. *Id.*

Respectfully submitted,

Dated: September 21, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP