IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO DAIRYLAND'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR AN ENLARGEMENT OF TIME TO RESPOND TO DAIRYLAND'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, AND DEFENDANT'S MOTION FOR SHOWING OF PARTICULARIZED NEED FOR PRIVILEGED DOCUMENTS

Defendant, the United States, respectfully responds to the objections that plaintiff, Dairyland Power Cooperative ("Dairyland"), identifies in its "Opposition to the Government's Motion for an Enlargement of Time to Respond to Dairyland's Motion to Compel the Production of Documents Withheld Pursuant to the Presidential Communications Privilege," filed October 4, 2007. Further, we respectfully request that the Court, before it requires the White House to engage in the extensive review and drafting effort necessary to support the presidential communications privilege before this Court, order Dairyland to set forth with particularity the justifications underlying its purported need for the five documents at issue.

## BACKGROUND

In or about May 2002, the Government identified the five documents currently at issue, reference numbers E154, 167, 170, 171, and 178, as privileged on several grounds, including that of the presidential communications privilege. Until this case, not a single plaintiff in any of the spent nuclear fuel cases, including those in which counsel for Dairyland represented other

plaintiffs that have proceeded through trial and final judgment, had ever challenged the Government's assertion of the presidential communications privilege.

On January 18, 2007, Dairyland moved to compel the production of 281 documents withheld under the deliberative process and attorney-client privileges. Although Dairyland's motion encompassed the five documents presently at issue, Dairyland failed to challenge the Government's assertion of the presidential communications privilege.[1] The Court subsequently determined that, although the documents were covered by the deliberative process privilege, it would override that privilege in this instance.

Nevertheless, because we had also invoked the unchallenged presidential communications privilege over these documents, we produced the requested documents only in redacted form to eliminate information subject to that privilege. Subsequently, by letter dated August 20, 2007, counsel for Dairyland informed us for the first time of a challenge to our presidential communications privilege claims over these five documents, well after the close of fact discovery in this case. Dairyland then filed its motion to compel these five documents on September 18, 2007.

---

[1] In Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl.), the same counsel that represents Dairyland filed a motion to compel the same five documents as those at issue here, challenging the deliberative process privilege claim over those documents. The plaintiff in PG&E never challenged the presidential communications privilege with regard to those five documents, and their contents were never produced to the plaintiff in PG&E. Without those documents, counsel proceeded to participate in trial and obtain a final judgment.

## DISCUSSION

I. The Government Is Not In Violation Of The Court's June 29, 2007 Order, And Dairyland Has Not Made The Threshold Showing Necessary To Overcome The Presidential Communications Privilege.

The Government is not in violation of the Court's June 29, 2007, and Dairyland has never endeavored to make the showing of particularized need required to overcome the Government's assertion of the presidential communications privilege.

In United States v. Nixon, 418 U.S. 683 (1974), the Supreme Court found that there is "a presumptive privilege for Presidential communications," founded upon "a President's generalized interest in confidentiality." Id. at 708, 711. This privilege is necessary, the Court reasoned, to ensure that the "President and those who assist him [are] free to explore alternatives in the process of shaping policies and making decisions . . . in a way many would be unwilling to express except privately." Id. at 708; accord In re Sealed Case, 121 F.3d 729, 750 (D.C. Cir. 1997) ("If presidential advisers must assume they will be held to account publicly for all approaches that were advanced, considered but ultimately rejected, they will almost inevitably be inclined to avoid serious consideration of novel or controversial approaches to presidential problems."). The Court observed that the presidential communications privilege is "inextricably rooted in the separation of powers under the Constitution," 418 U.S. at 708, and "flow[s] from the nature of [the President's] enumerated powers." Id. at 705.

Designed to protect the sanctity of confidential communications between the President and those who assist him, the presidential communications privilege is distinct from the deliberative process and other privileges. See Nixon, 418 U.S. at 708; In re Sealed Case, 121 F.3d at 741. The Supreme Court has long recognized that special considerations apply when a

party seeks information from the President or his close advisors in the White House. See, e.g., Cheney v. Unites States District Court for the District of Columbia, 542 U.S. 367, 382 (2004).

Consistent with these principles, and in light of the President's unique constitutional role, the presidential communications privilege "affords greater protection against disclosure" and is "more difficult to surmount" than the deliberative process privilege. In re Sealed Case, 121 F.3d at 746. Hence, the privilege applies to documents in their entirety, and it covers final and post-decisional materials as well as pre-deliberative ones. See id. at 745. Moreover, the Supreme Court has recognized that the burden imposed on the White House by discovery orders is an important factor to be considered by courts owing to the special deference and "[t]he high respect that is owed to the office of the Chief Executive." Cheney, 542 U.S. at 385.

Further, the Court has rejected the notion that the Executive Branch at its highest level shall bear the initial burden of invoking executive privilege with specificity or making particular objections to discovery on a line by line basis in order to safeguard executive functions and maintain the separation of powers. Id. at 388. Rather, a party seeking to overcome the Government's assertion of the presidential communications privilege bears the burden of demonstrating two elements: (1) proof that "each discrete group of the subpoenaed materials likely contains important evidence," and (2) proof that the "evidence is not available with due diligence elsewhere." In re Sealed Case, 121 F.3d at 745. The Supreme Court also has recognized that issues surrounding the withholding of information requested in civil cases do not share the urgency or significance of similar issues arising in criminal proceedings. Cheney, 542 U.S. at 384.

As previously discussed, in or about May 2002, the Government identified the five documents currently at issue, reference numbers E154, 167, 170, 171, and 178, as privileged on several grounds, including that of the presidential communications privilege. Until this case, not a single plaintiff in any of the spent nuclear fuel cases, including those in which counsel for Dairyland represented other plaintiffs that have proceeded through trial and final judgment, had ever challenged the Government's assertion of the presidential communications privilege. Despite having known of the Government's assertion of presidential communications privilege over these documents since 2002, counsel for Dairyland first informed us of its challenge by letter on August 20, 2007, well after the close of fact discovery in this case, and filed its motion to compel on September 18, 2007.

In its September 18, 2007 motion to compel, Dairyland failed to satisfy the exacting standard set forth in Cheney "as an important safeguard against unnecessary intrusion into the operation of the Office of the President." Cheney, 542 U.S. at 387. Nor is it evident that Dairyland could make such a particularized showing of need for the disputed documents given their creation between 1995 and 1997, after the Government had announced the breach of the Standard Contract, rendering the documents significantly less informative than the mass of contract formation documents already in Dairyland's possession.

We recognized that, in response to Dairyland's January 18, 2007 motion to compel based upon the deliberative process and attorney-client privileges, the Court found that these five documents were relevant to Dairyland's damages claims. However, as previously discussed, the standard for overcoming a deliberative process privilege claim is lower than that for a presidential communications privilege claim. Here, Dairyland made no effort to overcome the

presidential communications privilege by establishing how or why the documents referenced as E154, 167, 170, 171, and 178 are directly relevant to issues expected to be central to the trial of this case or, importantly, that the evidence therein is not available elsewhere. See In re Sealed Case, 121 F.3d at 754. Although this Court eventually determined that the five subject documents were sufficiently relevant to overcome the Government's assertions of deliberative process, it made no such finding regarding the heightened standard pertinent to the unchallenged presidential communications privilege.

Since Dairyland raised its untimely challenge, the Government has been working diligently to address this matter. However, the President and his advisors can hardly be expected to focus instantly on discrete issues relating to the production of documents in a single piece of civil litigation. As a result, the Government's request for a 28-day enlargement of time to resolve this issue is perfectly reasonable.

II. The Government Has Not Delayed In Seeking Counsel From The White House.

Dairyland cites no authority for the proposition that we should have obtained the appropriate affidavit from the White House regarding the assertion of presidential communications privilege months before any actual challenge to this privilege assertion. Nor are we aware of any such authority. To the contrary, the Supreme Court has expressly recognized that the Chief Executive is entitled to special deference and that his office need not bear the initial burden of invoking the presidential communications privilege with specificity. Cheney, 542 U.S. at 385, 388. The White House is not obliged to "formally invoke its [executive] privileges in advance of the motion to compel," as it is sufficient that it said, in response to a

subpoena or document production request, that it "believed the withheld documents were privileged." In re Sealed Case, 121 F.3d at 741.

The Government identified the five documents at issue as entitled to the privilege more than five years ago, in 2002. Dairyland waited to formally challenge this assertion of privilege until September 18, 2007. It would be illogical to expect the Department of Justice to impose upon the White House regarding a matter not at issue simply on the basis that the subject may generate a future challenge.

III. The Requested Enlargement Is Not Excessive Or Dilatory, And Dairyland Should Be Required Properly To Justify Its Motion To Compel Before Requiring Further Effort From The White House.

Contrary to the representation in Dairyland's opposition to our motion for an enlargement, the Government is not seeking to "disrupt the pretrial schedule" or delay the trial of this matter. In requesting an enlargement to resolve the presidential communications privilege issue, the Government is merely working to secure sufficient time to address Dairyland's belated challenge. As explained in our motion, we do not believe the resolution of this discrete issue, which concerns only five documents, will have an adverse effect on the schedule in this case.

In the meantime, and before the White House is required to engage in the work necessary to support a presidential communications privilege claim in Federal court, Dairyland should be compelled to meet its burden to set forth with particularity the precise justifications for requiring the White House counsel and the President to devote their attention to this matter, especially given Dairyland's failure to provide any justification for production of these presumptively privileged documents, see Nixon, 418 U.S. at 708 & 711 (identifying "presumptive privilege for Presidential communications"), and the fact that these privileges have been identified since 2002.

The Supreme Court in Cheney noted that the criminal subpoenas in the Nixon case "were [first] required to satisfy exacting standards of '(1) relevancy, (2) admissibility; (3) specificity.'" Cheney, 542 U.S. at 386. This process served "as an important safeguard against unnecessary intrusion into the operation of the Office of the President," id. at 387, and was the means by which "the party requesting the information . . . had satisfied his burden of showing the propriety of the [production] requests." Id. at 388. Before the Government is required to respond to Dairyland's motion to compel, Dairyland should be required to satisfy this showing to the Court's satisfaction. As part of this justification, Dairyland should also be required to offer a satisfactory explanation of why the White House should have to expedite its consideration of Dairyland's privilege challenges, in light of Dairyland's unnecessary delay in filing its motion to compel.

## CONCLUSION

For the foregoing reasons, the Court not only should grant the Government's pending enlargement request, but it should order Dairyland immediately to support its motion to compel with the requisite showing required by the Supreme Court's decisions in Cheney and Nixon, as well as the United States Court of Appeals for the District of Columbia Circuit in Sealed Case, before the White House is obligated to engage in the time-consuming efforts required to respond to Dairyland's motion to compel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/Scott Slater
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

October 5, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 5th day of October 2007, a copy of the foregoing "DEFENDANT'S REPLY TO DAIRYLAND'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR AN ENLARGEMENT OF TIME TO RESPOND TO DAIRYLAND'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, AND DEFENDANT'S MOTION FOR SHOWING OF PARTICULARIZED NEED FOR PRIVILEGED DOCUMENTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Scott Slater