IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: October 16, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S OPPOSITION TO THE GOVERNMENT'S MOTION
FOR CLARIFICATION OF THE COURT'S ORDER OF OCTOBER 9, 2007

The government's motion for clarification is yet the latest example of the government's long line of efforts to delay proceedings, particularly discovery, in this case. The Court's October 9 Order is unambiguous, and the government should comply with it by filing whatever opposition it has to Dairyland's motion to compel the five documents presumably withheld pursuant to the presidential communications privilege by October 19. The government's argument that Dairyland be required to further establish its need for these documents is meritless and is not a ground for further delay.

The government's claim, *see* Govt. Mot at 1, that *Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367 (2004), creates a special procedural hurdle for Dairyland to overcome to move to compel the five documents at issue is flat wrong. *Cheney* grew out of a suit by public interest groups seeking to apply the Federal Advisory Committee Act and its disclosure requirements to the National Energy Policy Development Group established by the President and chaired by the Vice President. *Id.* at 373. The plaintiffs there propounded

document requests seeking "everything under the sky." *Id.* at 387. As described by the Court of Appeals and the Supreme Court, "the discovery requests are anything but appropriate. . . . They provide respondents all the disclosure to which they would be entitled in the event they prevail on the merits, and much more besides." *Id.* Notwithstanding these overbroad requests, the district court issued orders permitting the discovery to proceed. *Id.* at 376. The government sought a writ of mandamus directing the district court to permit no discovery and decide the case on the administrative record. *Id.* The Supreme Court held that the mandamus remedy could be used to prevent a lower court from imposing an unwarranted interference on the Executive Branch, even where executive privilege has not been formally invoked. *Id.* at 382 and 390-91. But the Supreme Court did not direct that the writ of mandamus be issued; rather, it merely remanded the matter to the D.C. Circuit for further consideration, noting that the court should be mindful of the burdens imposed on the Executive Branch. *Id.* at 391. The Supreme Court distinguished *United States v. Nixon*, 418 U.S. 683 (1974), noting that the discovery requests in *Nixon* precisely described and specifically enumerated the requested materials, and met the applicable Federal Rules of Criminal Procedure standard for subpoenas (requiring, relevance, admissibility and specificity). *Id.* at 386-87.

*Cheney* does not assist the government at all here since Dairyland's motion to compel and the Court's June 29, 2007 Order could not be more limited or specific – five Bates-numbered documents are at issue. And this Court has already ruled that these documents (which involve the interim storage of spent nuclear fuel) are "highly relevant" such that Dairyland's interest in disclosure outweighs the government's interest in confidentiality. *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 344-45 (2007). Moreover, unlike the situation in *Cheney*, where the discovery was directed at specific actions of the Vice President, nothing regarding the five

documents at issue here indicates that communications of especially high-ranking White House individuals are at stake. The sender and recipient information is not redacted for two of the documents, and the most senior "White House" official listed appears to be an associate director of the Office of Management and Budget. *See* Dairyland Motion to Compel, Appendix, E167, E178.

Dairyland's motion to compel avoids the potentially difficult issues of how far removed from the president the presidential communications extends and exactly who can invoke the privilege by focusing on the fact that Dairyland has sufficient need for the documents to overcome any such claim of privilege. Consequently, Dairyland's motion also avoids any burden on the Executive Branch and, importantly for this case, further delay. The government fails to come to grips with the fact that Dairyland's motion to compel is entirely in accord with *Sun Oil Co. v. United States*, 514 F.2d 1020, 1024-25 (Ct. Cl. 1974). In that case, former President Nixon attempted to formally invoke the presidential privilege. A significant issue was raised as to whether a former president could invoke the privilege. The Court of Claims expedited resolution of the discovery issue by avoiding the potentially difficult constitutional issue and instead determined that the plaintiffs in that breach of contract and taking action had a sufficient need to overcome any such privilege. *Id.* And contrary to the government's assertions that the need requisite to overcome a claim of presidential privilege is especially high, the Court of Claims' analysis of this issue turned on an ordinary assessment of discoverability:

> These papers might well lead to the discovery of admissible evidence and are suggestively relevant to the subject matter of this action. Plaintiffs seem to believe that they will ultimately be able to prove that the President or someone on his White House staff turned their application down and did so for impermissible, extraneous, political, or other reasons which they think, if shown, would make their case. They are entitled to try to show this, and a generalized claim of privilege, assuming a former President can assert it, cannot prevail against the plaintiffs' need to develop the facts by resort to discovery.

> We see no need to go further. The issue is narrower than the parties would have us believe. It is not necessary now to resolve finally the constitutional issue of how much privilege, if any, a former President has. There has been enough delay.

*Id.* The analysis in this Court's June 29, 2007 Order concluding that these five documents are "highly relevant" to Dairyland's case is more than sufficient to meet the standard set out in *Sun Oil* to overcome any claim of presidential communications privilege the government could invoke. Therefore, as in *Sun Oil,* there is no need to go further. And there has certainly been enough delay.[1]

Finally, the government's assertion that Dairyland's request for these documents comes late, Govt. Mot. at 2, is contrary to the facts and has already been rejected by the Court. That the government may have asserted a claim of privilege over these documents in another spent fuel case in 2002 is beside the point (as is the identity of counsel in those other cases). Dairyland did not file its spent fuel case until 2004. Dairyland filed a motion to compel these documents on January 18, 2007. Although that motion noted that the government was withholding most of the documents based on the deliberative process privilege, Dairyland's motion sought an order compelling production of the documents, not merely a ruling on the deliberative process privilege. *See* January 18, 2007 motion at 1 and 28. And the Court's June 29, 2007 Order manifestly did just that, compelling the production of the documents. If the government sought

[1] The government's reliance on *In re Sealed Case,* 121 F.3d 729 (D.C. Cir. 1997), Govt. Mot. at 3, is also misplaced. The showing of need noted in that case ("likely containing important evidence" "not available with due diligence elsewhere") is only required after the presidential communications privilege has been formally invoked. *Id.* at 754. And to the extent that the need standard set out in that case is higher than that set out in *Sun Oil* (and it appears to be), *Sun Oil* is the binding precedent in this jurisdiction. Moreover, as determined in the Court's June 29, 2007 Order, Dairyland has also met the *Sealed Case* showing of need standard. This Court has already concluded that the five documents at issue are highly relevant. And it is also clear that the sort of government statements of position at issue here are not available to Dairyland from other sources.

to oppose such an order on the ground of other claims of privilege, it was the government's burden to assert and establish those claims of privilege in this case. In any event, this Court has already considered this timing issue and concluded that Dairyland's motion does not come too late (and that the government has not waived its claim of privilege). *See* Hearing of September 20, 2007 at 64-67 ("So what my bottom line is that I see a kind of misstep on both sides here. Therefore, the status quo remains the status quo. We'll go forward with the motion."). The government's effort to reargue this issue is nothing but dilatory.

For these reasons, the government's motion for clarification should be denied.

Respectfully submitted,

October 16, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

*WDC 371515678v1 10/15/2007*