IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, | ) | |
| v. | ) | No. 04-106C (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF 40 PAGES

Pursuant to RCFC 5.2(b)(1),[1] defendant, the United States, respectfully requests leave of the Court to file "Defendant's Response to Dairyland's Attorney-Client Privilege and Work Product Challenges as Set Forth in Dairyland's Motion to Compel Production of Documents Withheld on Deliberative Process Privilege, Attorney-Client Privilege and/or Work Product Doctrine Grounds," which exceeds by six pages the 40-page limit specified by RCFC 5.2(b)(1). The Government's response brief, which is attached hereto as Exhibit A, addresses in detail the assertions of attorney-client privilege and/or work product protection over the 179 individual documents identified in the October 5, 2007, "Motion To Compel" filed by the plaintiff, Dairyland Power Cooperative ("Dairyland").

We have made a diligent effort to limit the length of our response brief. However, the individualized challenges to the attorney-client privilege and work product doctrine set forth in Dairyland's motion necessitated on our part corresponding, individualized responses. Moreover,

[1] Rule 5.2(b)(1) provides that, "[e]xcept by leave of the court on motion, a party's initial brief or memorandum shall not exceed 40 pages . . . ."

for the Court's convenience we have in our response identified each of Dairyland's challenges and, immediately underneath, set forth the actual privilege log entries relied upon by the Government in its September 17, 2007 log. We believe the presence of these challenges and descriptions together in the brief will save the Court a great deal of effort by obviating its need to flip back and forth between Dairyland's motion, our response, and our privilege log. However, setting forth the relevant information in this fashion occupied several pages in excess of the page limit.

For these reasons, the Government respectfully requests an order granting its motion for leave to file its "Defendant's Response to Dairyland's Attorney-Client Privilege and Work Product Challenges as Set Forth in Dairyland's Motion to Compel Production of Documents Withheld on Deliberative Process Privilege, Attorney-Client Privilege and/or Work Product Doctrine Grounds," attached at Exhibit A, which exceeds the RCFC's page limit for filings by six pages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

s/Russell A. Shultis by s/Scott Slater
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 23, 2007

Attorneys for Defendant

# EXHIBIT A

No. 04-0106C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.
UNITED STATES OF AMERICA,

Defendant.

# DEFENDANT'S RESPONSE TO DAIRYLAND'S ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT CHALLENGES AS SET FORTH IN DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE, ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/Scott Slater
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 23, 2007

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DEFENDANT'S RESPONSE TO DAIRYLAND'S ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT CHALLENGES AS SET FORTH IN DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE, ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. THE GOVERNMENT HAS NOT WAIVED ITS PRIVILEGE CLAIMS . . . . . . 5

II. DAIRYLAND HAS NOT MET ITS BURDEN TO OVERCOME THE GOVERNMENT'S PROPERLY ASSERTED CLAIMS OF PRIVILEGE, THE GOVERNMENT SHOULD NOT BE COMPELLED TO PRODUCE THE DOCUMENTS IN REDACTED FORM, AND THE COURT NEED NOT REVIEW THE CHALLENGED DOCUMENTS *IN CAMERA* . . . . . . . . . . . . . . 6

A. The Attorney-Client Privilege And Work Product Doctrine . . . . . . . . . . . 6

B. Dairyland Has Not Met Its Burden To Overcome The Government's Properly Asserted Privilege Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. The Government Should Not Be Compelled To Produce In Redacted Form The Documents Challenged By Dairyland . . . . . . . . . . . . . . . . . . 11

D. There Is No Need For The Court To Undertake *In Camera* Review Of The Challenged Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III. THE GOVERNMENT'S SEPTEMBER 17, 2007 PRIVILEGE LOG FULLY SUPPORTS ALL OF THE GOVERNMENT'S PRIVILEGE CLAIMS . . . . . . 13

A. Document Ref. No. S6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B . Document Ref. Nos. S11, S232, S233, And S234 . . . . . . . . . . . . . . . . . . 16

C. Document Ref. Nos. S236, S237, S238, And S239 . . . . . . . . . . . . . . . . . 18

D. Document Ref. Nos. S251 And S252 . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E. Document Ref. No. S570 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F. Document Ref. Nos. S589, S590, S591, And S604 . . . . . . . . . . . . . . . . . . 21

G. Document Ref. No. S592 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

H. Document Ref. Nos. S594, S595, S596, S597, And S598 . . . . . . . . . . . 24

I. Document Ref. No. S614 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

J. Document Ref. No. S635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

K. Document Ref. No. S641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

L. Document Ref. Nos. S682, S683, And S1130 . . . . . . . . . . . . . . . . . . . . 30

M. Document Ref. No. S684 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

N. Document Ref. No. S690 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

O. Document Ref. No. S700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

P. Document Ref. No. S701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Q. Document Ref. No. S955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

R. Document Ref. Nos. S956 And S957 . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

S. Document Ref. No. S1130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

T. Document Ref. No. S1145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

U. Documents Concerning Proposed Spent Fuel Disposal Contracts for New Nuclear Reactors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

1. The Documents Regarding Possible Future Contracts That DOE Might Enter With The Owners Of Future Nuclear Reactors That Have Not Yet Even Been Constructed Are Irrelevant To This Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

2. The Requested Documents Are Privileged . . . . . . . . . . . . . . . . . 42

a. Draft Contract Documents . . . . . . . . . . . . . . . . . . . . . . . . . 42

b. Memoranda, Emails, and Notes Concerning Draft Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

## TABLE OF AUTHORITIES

### CASES

In re Arnold & McDowell,
566 F. Supp. 752 (D.C. Minn. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Carpenter Tech. Corp. v. Armco, Inc.,
Civ. No. 90-0740, 1990 WL 61180 (E.D. Pa. May 8, 1990) . . . . . . . . . . . . . . . . . . . . . 40

Energy Capital Corp. v. United States,
45 Fed. Cl. 481 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Flynn v. Church of Scientology,
116 F.R.D. 1 (D. Mass. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

In re Fontaine,
402 F. Supp. 1219 (S.D.N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Food Lion, Inc. v. United Food & Commercial Workers Int'l Union,
103 F.3d 1007 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Herbert v. Lando,
441 U.S. 153 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Hickman v. Taylor,
329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18, 20

Jones v. Federal Bureau of Investigation,
41 F.3d 238 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McClain v. Mack Trucks, Inc.,
85 F.R.D. 53 (E.D. Pa. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

McNamara v. United States Dep't of Justice,
974 F. Supp. 946 (W.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PHE, Inc. v. United States Dep't of Justice,
983 F.2d 248 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ray v. Turner,
587 F.2d 1187 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Regent Nat'l Bank v. Dealers Choice Automotive Planning, Inc.,
1998 WL 961377 (E.D. Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Rohm and Haas Co. v. Brotech Corp.,
815 F. Supp. 793 (D.Del. 1993), aff'd, 19 F.3d 41 (Fed. Cir. 1994) . . . . . . . . . . . . 43, 46

In re Sante Fe International Corp.,
272 F.3d 705 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

International Graphics, Div. of Moore Bus. Forms, Inc. v. United States, 3 Cl. Ct. 715,
718-19 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Schenet v. Anderson,
678 F. Supp. 1280 (E.D. Mich. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Schiller v. National Labor Relations Bd.,
964 F.2d 1205 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Silets v. United States Dep't of Justice,
945 F.2d 227 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SmithKline Beecham Corp. v. Apotex Corp.,
232 F.R.D. 467 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Spalding Sports,
203 F.3d at 806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15, 20, 37

In re Surety Ass'n of Am.,
388 F.2d 412 (2d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

United States v. Zolin,
491 U.S. 554 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 27, 39

Upjohn Co. v. United States,
449 U.S. 383 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.,
944 F. Supp. 1411 (D. Minn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Vaughn v. United States,
936 F.2d 862 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wilderness Society v. United States Department of the Interior,
344 F. Supp.2d 1 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Yankee Atomic Elec. Co. v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Young v. Central Intelligence Agency,
972 F.2d 536 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES AND REGULATIONS**

Fed. R. Civ. P. 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

RCFC 26(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO DAIRYLAND'S ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT CHALLENGES AS SET FORTH IN DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE, ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS

Defendant, the United States, respectfully responds to Dairyland Power Cooperative's ("Dairyland") attorney-client privilege and work product doctrine challenges, set forth in "Dairyland's Motion to Compel Production of Documents Withheld on Deliberative Process Privilege, Attorney-Client Privilege and/or Work Product Doctrine Grounds," filed on October 5, 2007. With its motion to compel, Dairyland seeks the disclosure of 179 documents that, in the Government's September 17, 2007 privilege log, the Government identified as protected by the attorney-client privilege and/or the work product doctrine. To overcome the Government's assertions of privilege, Dairyland challenges the sufficiency of the documents' descriptions, which appear as individual entries in the Government's privilege log. Dairyland's motion is without foundation, and should be denied in its entirety.[2]

[2] Dairyland further seeks to compel the production of 27 deliberative process documents. Pursuant to the Court's October 18, 2007 order, the Government's response to the deliberative process portion of Dairyland's motion to compel is not due to be filed until October 29, 2007.

## SUMMARY OF THE ARGUMENT

Dairyland's challenges to the sufficiency of the Government's privilege log are so unfounded as to raise the specter of bad faith. The Government's privilege log is significantly more descriptive than required under the Rules of the Court of Federal Claims or by this Court's rulings, and the log provides ample verification for the privileges asserted by the Government. In fact, fuller explanations of the documents summarized in the log would compromise the Government's privilege claims by revealing too much of the documents' underlying substance.

Further, Dairyland's latest round of privilege challenges highlights what has been a persistent problem throughout this litigation: Dairyland's strident efforts to impose upon the Government discovery obligations in excess of those required under the Rules, and in excess of the standards by which Dairyland has responded to the Government's requests for discovery. The Government's September 17, 2007 privilege log is at least as descriptive, and in most instances more descriptive, than the three privilege logs produced by Dairyland to the Government. Yet, Dairyland unflinchingly protests that the Government's descriptions are somehow deficient. In comparing Dairyland's individual challenges against the corresponding document descriptions in the Government's privilege log, it becomes quickly evident that Dairyland's challenges are specious.

The baselessness of Dairyland's privilege challenges is reflected in its individual challenge to Document Ref. No. 700, for which Dairyland complains that our description "does not list an attorney as an author or addressee of the document" and concludes that the Government "has failed to demonstrate that this document contains a communication between an attorney and the client for the purpose of obtaining legal advice . . . ." Yet, in the Government's privilege log, we provide the following detailed description of this document:

EMAIL CHAIN REFLECTING ADVICE PROVIDED BY DOJ REGARDING SNF LITIGATION PENDING BEFORE THE COURT OF FEDERAL CLAIMS; ADVICE RENDERED AS PART OF DOJ'S RESPONSIBILITY TO PROVIDE LEGAL REPRESENTATION TO DOE; DOCUMENT ALSO CONTAINS INFORMATION PREPARED AT DIRECTION OF DOJ IN CONNECTION WITH SNF LITIGATION.
AC/AW ATTORNEY: R. SHULTIS (DOJ)

Thus, on its face, our privilege log explains that the challenged document contains legal advice and information provided by the Department of Justice to its client, the Department of Energy, in conjunction with the spent nuclear fuel litigation pending before this Court. Additionally, the log identifies the specific attorney who communicated the advice contained in the document, Russell Shultis. As the Court is aware, Mr. Shultis is counsel of record for the Government in this case.

In seeking to compel the disclosure of Document Ref. No. 700, Dairyland effectively asks this Court to eviscerate the attorney-client privilege and work product doctrine by ordering the revelation of core privileged material. Were the Government's description of this document found deficient, it would be impossible for any party to litigation to draft a privilege log entry that manages adequately to summarize a document's contents and verify the privilege asserted while not compromising the privileged material within. Nor are we so bold as to believe that we are entitled to communications between Dairyland and its counsel of record, Jerry Stouck.

The Court should reject Dairyland's challenges to the Government's well-founded assertions of the attorney-client privilege and work product doctrine.

## BACKGROUND

On February 5, 2007, the Court ordered the Government to produce documents responsive to Dairyland's exceedingly broad requests for production. In compliance with the Court's order, the Government produced to Dairyland 1,091,626 pages of documents. Given the

recent vintage of most of these documents, they had not been previously produced or posted to the Government's case-wide spent nuclear fuel ("SNF") litigation website.[3] Accomplished in the space of only a few months, the massive effort undertaken by the Government to comply with the Court's order resulted in the production to Dairyland of more images than were produced case-wide in all the SNF cases during the previous nine years of vigorous litigation.

On September 17, 2007, the Government produced to Dairyland a privilege log identifying 1,496 documents over which it had asserted the deliberative process privilege, the attorney-client privilege, and/or the work product doctrine. Although impeded somewhat by the necessity of preparing detailed affidavits supporting its deliberative process assertions, the Government produced its privilege log in a reasonable time given the magnitude of its production. Moreover, in compiling its log, the Government endeavored to assert claims of privilege only where necessary, and only after laboriously reviewing the documents it was producing. Considering the sheer bulk of the Government's production, and the comparatively small quantity of materials withheld as privileged, there can be little doubt that the Government worked diligently to avoid making unsubstantiated privilege claims.

Initially, Dairyland its intention to challenge only a "handful" of the documents identified on the September 17, 2007 log. Further, by way of a separate statement in the parties' Joint Proposal for Trial Preparation Schedule, dated October 3, 2007, Dairyland "implore[d]" the Court not to lift the January 28, 2007 trial date in this case, representing that its forthcoming privilege challenges "will not be large (the number of documents at issue will number in the dozens, not hundreds)[.]"

---

[3] The Government is currently in the process of making these documents available electronically to all of the SNF plaintiffs.

Contrary to Dairyland's representations, its motion to compel places at issue not dozens, but more than 200 individual documents. While Dairyland has grouped some of these documents in categories, determining the sufficiency of the Government's privilege claims necessitates an individualized review of the descriptive privilege log entries to which each of Dairyland's challenges corresponds. Engaging in this review reveals that Dairyland's challenges to the Government's attorney-client privilege and work product doctrine claims are wholly unfounded.

## ARGUMENT

### I. THE GOVERNMENT HAS NOT WAIVED ITS PRIVILEGE CLAIMS

In its motion, Dairyland first argues that the Government has waived all of its privilege claims. PBR3.[4] Because the Court has already expressed its unwillingness to conclude that the Government's reasonable delay in producing its September 17, 2007 privilege log resulted in a waiver of the privileges identified therein, and because the issue of implied waiver has been fully briefed, we will not burden the Court by addressing the subject in detail again here. In response to Dairyland's renewed request that the Court deem a waiver to have occurred, we incorporate herein the arguments set forth in our "Defendant's Response to Plaintiff's 'Notice of Authority Regarding Consequences of Government Failure to Serve Privilege Log,' Dated August 13, 2007, and Plaintiff's 'Notice of New Developments Regarding Government's Failure to Serve Privilege Log,' Dated August 17, 2007."

Additionally, we reiterate the following points: courts have refused to adopt a per se waiver rule associated with the timing of production for privilege logs; neither the Rules of this

[4] "PBR_" refers to Dairyland's motion to compel, dated October 5, 2007. "A_" refers to the appendix to this brief.

Court nor the Federal Rules of Civil Procedure establish a deadline by which parties must produce privilege logs; the Court in this case provided no deadline for the parties' production of privilege logs; and, finally, the Government proceeded diligently in preparing its September 17, 2007, privilege log, and the time required to accomplish the log's production was reasonable in light of the magnitude of the documents produced to Dairyland and the requirement that the Government secure detailed affidavits supporting its assertions of deliberative process privilege. As a result, the Government has not waived its privilege claims.

## II. DAIRYLAND HAS NOT MET ITS BURDEN TO OVERCOME THE GOVERNMENT'S PROPERLY ASSERTED CLAIMS OF PRIVILEGE, THE GOVERNMENT SHOULD NOT BE COMPELLED TO PRODUCE THE DOCUMENTS IN REDACTED FORM, AND THE COURT NEED NOT REVIEW THE CHALLENGED DOCUMENTS *IN CAMERA*

### A. The Attorney-Client Privilege And Work Product Doctrine

The attorney-client privilege protects communications between an attorney and his or her client for the purpose of obtaining legal advice. United States v. Zolin, 491 U.S. 554, 562 (1989). The privilege exists not only to safeguard the rendering of professional advice to those capable of acting upon it, but also the provision of information to lawyers so that they may give sound and informed legal advice. Upjohn Co. v. United States, 449 U.S. 383, 396 (1981). A communication by a client with his or her attorney presumptively qualifies as a request for legal advice and, therefore, is within the privilege unless it appears clearly lacking. Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 315 (2002) (citing 8 Wigmore, Evidence § 2296 (McNaughton rev. ed. 1961)). In determining whether a document contains a confidential communication transmitted for the purpose of obtaining legal services, "[i]t is enough that the overall tenor of the document indicates that is a request for legal advice or services." Id. (quoting In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000)). Moreover,

the document need not contain an express request for legal assistance when such a request is implied. In re Spalding Sports, 203 F.3d at 806. Federal agencies and their lawyers are entitled to the protections afforded by the attorney-client relationship, regardless of whether the lawyer serves as in-house agency counsel or as an attorney with the Department of Justice. Yankee Atomic, 54 Fed. Cl. at 313.

The attorney work product doctrine attaches to documents prepared in anticipation of litigation. Hickman v. Taylor, 329 U.S. 495, 511-12 (1947); Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 485 (2000). Rule 26(b)(3) of the Rules of the Court of Federal Claims defines the scope of work product protection as "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . . ." RCFC 26(b)(3). Although a party can overcome the work product doctrine upon a showing of substantial need or undue hardship, the mental impressions, conclusions, opinions, or legal theories of an attorney or other party representative concerning the litigation remain absolutely privileged. Id.

## B. Dairyland Has Not Met Its Burden To Overcome The Government's Properly Asserted Privilege Claims

Dairyland has not and cannot demonstrate that the Government's assertions of privilege, as described in its September 17, 2007 privilege log, are deficient. A party need not make a rigorous showing to properly withhold documents based upon the attorney-client privilege and work product doctrine. Rather, the party must merely "make the claim expressly" and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to

assess the applicability of the privilege or protection." RCFC 26(b)(5). Moreover, as previously recognized by this Court in the SNF context, "[n]eedless to say, the party invoking the privilege need not reveal so much about the contents of a communication as to compromise the privilege." Yankee Atomic, 54 Fed. Cl. at 309.

Litigants customarily accomplish the rather modest prima facie showing required to withhold privileged documents by submitting to their adversary a "privilege log" setting forth the bases for their assertions. Id.; see In re Sante Fe International Corp., 272 F.3d 705, 710 (5th Cir. 2001) ("[i]n complex litigation, compliance with Rule 26(b)(5) is 'usually accomplished by submission of a log identifying documents or other communications . . . and describing their general subject matter . . . .'") (quoting Manual for Complex Litigation § 21.431 (3d ed. 1995)). To overcome an opponent's assertions of privilege, the burden then shifts to the challenger to demonstrate, based upon the descriptions in the privilege log or otherwise, that particular documents appear not to be privileged. Yankee Atomic, 54 Fed. Cl. at 309.

In challenging the documents identified in the Government's privilege log, Dairyland consistently asserts that, despite the Government's diligence in identifying in its descriptions the particular attorneys who rendered the advice or analysis in question, the Government cannot maintain its attorney-client privilege and work product doctrine claims in those instances where an attorney was not specifically listed as the log's "author" or "addressee." Dairyland's remarkable proposition is flatly contradicted by the Rules of this Court, which require only that a party "describe the nature of the documents" so as to enable verification of the privilege. RCFC 26(b)(5). In any event, Dairyland appears to concede in its brief that the mere absence of an attorney's name in the author or addressee columns of a privilege log does not provide an adequate basis for overcoming a privilege assertion:

> [T]he party must identify the author and recipient(s) of each document for which the privilege is asserted[,] or must provide other equivalent evidence that shows an attorney was providing or being solicited for legal advice.

PBR11 (emphasis added). Dairyland's concession stands to reason. Were the standard that it seeks to impose upon the Government accurate, Dairyland itself would forfeit the protections that it now enjoys over the many documents designated in its own privilege logs as attorney-client or work product privileged, but for which no attorneys are listed as "authors" or "recipients." See A.1-22.

The two cases that Dairyland cites, see PBR11, do not support its proposition that an attorney must appear in the author or addressee column of a privilege log. In Wilderness Society v. United States Department of the Interior, 344 F. Supp.2d 1 (D.D.C. 2004), the United States District Court for the District of Columbia determined that the Government had failed properly to sustain its claims of privilege over two documents identified in a cursory manner in a Vaughn index. The Court's decision, however, was multi-faceted, stemming from its inability to discern from the Government's descriptions whether the communications at issue even involved an attorney, or whether they had been made in confidence. Id. Similarly, the court in SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467 (E.D. Pa. 2005), ordered the production of certain documents for which the plaintiff's privilege log identified no authors or recipients, but only after finding insufficient additional information to substantiate the plaintiff's assertions of attorney-client privilege. Id. Moreover, in rendering its opinion, the court firmly rebuffed the defendant's contention that the plaintiff failed to meet its burden of establishing the privilege simply by not identifying the challenged documents' authors, recipients, or dates. Id. at 475 ("Defendant is simply incorrect in claiming . . . '[plaintiff] was required to identify author(s),

recipient(s) and date of each document in its privilege log' and that 'failure to supply *any* of this information vitiates the claim of privilege.'") (emphasis in original).

A more accurate benchmark for assessing the sufficiency of the Government's attorney-client and work product claims in this case is this Court's decision in Yankee Atomic Electic Company v. United States, 54 Fed. Cl. 306 (2002). The utility plaintiffs in the coordinated discovery proceedings for the SNF cases moved to compel the production of a large number of documents identified in the Government's privilege log as attorney-client or work product privileged. Id. At 312-13. The Government's log matched in form, format, and descriptive content the September 17, 2007 privilege log that Dairyland challenges here. Collectively, the plaintiffs argued that the Government had failed adequately to identify the documents' authors and recipients, as well as the issues underlying the Government's assertions of privilege. Id. at 313. The plaintiffs further charged that the Government had failed to show that, in rendering advice, its attorneys had been acting as litigators, that certain documents had been prepared in anticipation of litigation, or that the Government's privilege log verified the documents' confidentiality. Id.

The Court admonished the plaintiffs for "not, as they must, satisfactorily explain[ing] why documents that on their face appear to be legal communications 'clearly appear to be lacking in aspects requiring legal advice.'" Id. at 316. In addition, the Court concluded that, on its face, the Government's privilege log provided sufficient grounds to sustain the work product claims set forth by the Government. Id. Accordingly, the Court denied outright the plaintiffs' motion to compel the production of documents identified as protected by the attorney-client privilege and work product doctrine. Id. at 316-17. Because the Government's September 17,

2007 privilege log in this case provides ample descriptive information to verify the privileges asserted, a similar ruling is called for here.

C. The Government Should Not Be Compelled To Produce In Redacted Form The Documents Challenged By Dairyland

Throughout its motion to compel, Dairyland also requests, in the alternative, that, should the Court not choose to compel the production of the particular documents at issue, it force the Government to produce these documents in redacted form. Because responding piecemeal to Dairyland's individualized requests for redactions would occupy an unnecessary amount of space in this brief, we note here our objection to this proposed procedure for each of the challenged documents. While the process of redacting information from privileged documents in litigation is well established, there is no universal prescription that it occur in every case. E.g., Fed. R. Civ. P. 26(b)(3), Advisory Committee Notes ("[I]n enforcing [Rule 26(b)(3)'s protection of lawyer's mental impressions and legal theories], the courts will sometimes find it necessary to order disclosure of a document but with portions deleted.") (emphasis added). Where, as here, a party's efforts to comply with its discovery obligations yield a massive quantity of documents, and where the party has, properly and in good faith, withheld a fractional amount of those documents as privileged, it is particularly appropriate not to compel the party to engage in the burdensome exercise of redacting and producing the documents on its privilege log. See Yankee Atomic, 54 Fed. Cl. at 316-17 (declining to order redaction of privileged documents in case involving fewer assertions of privilege than in this litigation). Accordingly, the Government should not be compelled to undertake the burdensome exercise of redacting and producing to Dairyland the documents challenged by way of Dairyland's motion to compel.

D. There Is No Need For The Court To Undertake *In Camera* Review Of The Challenged Documents

Although Dairyland has not suggested that the Court conduct an in camera inspection of the 179 attorney-client and work product documents now at issue, a brief discussion of this subject is in order given that the Court has undertaken such a review of other documents in this case. Federal courts have consistently held that in camera review is an "exceptional" tool because it "circumvents the adversarial process." Jones v. Federal Bureau of Investigation, 41 F.3d 238, 243 (6th Cir. 1994); see PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 252-53 (D.C. Cir. 1993) (observing that in camera review is generally disfavored); Schiller v. National Labor Relations Bd., 964 F.2d 1205, 1209 (D.C. Cir. 1992) (same); McNamara v. United States Dep't of Justice, 974 F. Supp. 946, 955 (W.D. Tex. 1997) (finding Vaughn index preferable to in camera inspection because "it keeps in[tact] our system of adversarial dispute resolution"); Ray v. Turner, 587 F.2d 1187, 1995 (D.C. Cir. 1978) (stating in camera inspection should not be granted on theory that "it can't hurt."). While a court may always request of a party additional information about discovery documents, it should require in camera inspection of those materials only in unusual circumstances, where it cannot obtain sufficient information from the party's explanations and descriptions of the documents. Young v. Central Intelligence Agency, 972 F.2d 536, 538 (4th Cir. 1992); Silets v. United States Dep't of Justice, 945 F.2d 227, 229-32 (7th Cir. 1991); Vaughn v. United States, 936 F.2d 862, 869 (6th Cir. 1991).

While we respect the Court's authority to conduct in camera inspections, there is simply no need for such a review in this instance. As evidenced by the briefing below, the detailed descriptions appearing in the Government's September 17, 2007 privilege log, standing alone, more than adequately support the privileges asserted by the Government, obviating the need for

individualized scrutiny of the privileged documents by the Court. See Young, 972 F.2d at 538. Moreover, absent any exceptional circumstances warranting in camera review, the Court need not place itself in the awkward position of having to review, and then disregard for purposes of trial, privileged information gleaned from the Government's documents.

## III. THE GOVERNMENT'S SEPTEMBER 17, 2007 PRIVILEGE LOG FULLY SUPPORTS ALL OF THE GOVERNMENT'S PRIVILEGE CLAIMS

For the Court's convenience, we have grouped Dairyland's challenges to the Government's assertions of attorney-client and attorney work product privilege to correspond with the manner in which they are set out in Dairyland's motion to compel. This formatting does not indicate agreement by the Government that the documents should be categorized in this fashion for any substantive purpose.[5]

### A. Document Ref. No. S6

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. No. S6 (Bates No. CTR3580612-CTR3580614) on the following grounds: (1) the privilege log entry "does not list an attorney as an author or addressee of the document[]"; (2) the entry does not describe "what type of 'legal analysis' was provided[]"; (3) an attorney's name appears "cryptically" at the end of the document's description, and the Government has not explained the significance of the attorney's name; and (4) the Government "has not demonstrated that an identifiable attorney provided any legal advice contained in the document or, even if an attorney

---

[5] Dairyland modified the Government's September 17, 2007 privilege log, adding an additional column to the document and attaching to each of the Government's Bates-numbered entries a separate "Ref. No." This document is appended to Dairyland's motion to compel. For the sake of clarity in this response, we generally identify the challenged documents by both Dairyland's system (Ref. No.) and the Government's (Bates number).

did so provide, whether that advice was ever conveyed to the client." PBR12-13. Dairyland's challenge is without merit. The Government described this document as follows in its September 17, 2007 privilege log:

> WHITEPAPER REGARDING ACR/DCS PROCESS; CONTAINS LEGAL ANALYSIS OF STANDARD CONTRACT PROVIDED BY COUNSEL.
> AC ATTORNEY: J. TAYLOR (DOE-OCG)

As discussed, the mere fact that an attorney's name does not appear in the "author" or "addressee" columns corresponding to Ref. No. S6 in the Government's September 17, 2007 privilege log is of no legal significance. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 316-17; see also PBR11 (conceding that other equivalent evidence may show an attorney was providing or being solicited for legal advice). Nor do the simple rules relating to the establishment of a basis for withholding privileged communications through the use of a privilege log impose upon the Government any obligation to describe the "type" of legal analyses provided by its attorneys. See, e.g., RCFC 26(b)(5). To share such information with opposing counsel would threaten to compromise the privilege, defeating the purpose of claiming it. See Yankee Atomic, 54 Fed. Cl. at 309 ("Needless to say, the party invoking the privilege need not reveal so much about the contents of a communication as to compromise the privilege."). To be sure, Dairyland has not described for the Government the types of legal analyses rendered by its attorneys. See A.1-22.

Further, we fail to see anything "cryptic" about our identification of the particular attorney who provided the legal analysis contained in Ref. No. S6. As counsel for Dairyland is well aware through its long-standing involvement in the SNF litigation, Jane Taylor serves as an in-house attorney with the Department of Energy. By their very nature whitepapers do not have identified authors. However, we know that Ms. Taylor authored this document based upon our

discovery inquiries. Moreover, the Government adopted the convention of identifying the attorney involved in the preparation of a particular communication, or whose legal advice or mental impressions are contained in the document, at the end of the coordinated SNF discovery proceedings. In any event, this privileged communication between Ms. Taylor and her client, DOE, are firmly protected from disclosure, and our privilege log entry provides ample justification for the privilege asserted. See In re Spalding Sports, 203 F.3d at 806 ("It is enough that the overall tenor of the document indicates that is a request for legal advice or services."); Yankee Atomic, 54 Fed. Cl. at 315 (noting that communications between attorney and client "presumptively qualif[y]" as privileged unless clearly lacking).

B . Document Ref. Nos. S11, S232, S233, And S234

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. Nos. S11 (Bates No. CTR3587243-CTR3587261), S232 (Bates No. CTR6100858-CTR6100899), S233 (CTR6100900-CTR6100964), and S234 (CTR6100965-CTR6101073) on the following grounds: (1) the privilege log entries "do not list an attorney as an author or addressee[]"; (2) the entries do not state that the presentation referenced in the description was made or communicated by an attorney; (3) the entries fail to describe "what kind of 'legal analysis' is contained in the documents[,]" or who provided the analysis; and (4) the Government's description does not state that the documents were prepared in anticipation of litigation. PBR13. Dairyland's challenges are unfounded. The Government described these four documents as follows in its September 17, 2007 privilege log:

S11

PRESENTATION REGARDING THE STANDARD CONTRACT; PRESENTATION INCLUDES INFORMATION RELATED TO SPENT NUCLEAR FUEL LITIGATION AT THE COURT OF FEDERAL CLAIMS,

SETTLEMENTS AND LEGAL ANALYSIS OF COUNSEL REGARDING TERMS OF STANDARD CONTRACT; INFORMATION AND ANALYSIS PROVIDED BY COUNSEL AND REFLECTS LEGAL ADVICE AND MENTAL IMPRESSIONS OF COUNSEL; BEARS LEGEND "ATTORNEY-CLIENT PRIVILEGED."
AC/AW ATTORNEY: J. TAYLOR, C. REYNOLDS (DOE-OCG).

S232, S233, and S234

EMAIL AND ATTACHED PRESENTATION REGARDING THE STANDARD CONTRACT; PRESENTATION INCLUDES INFORMATION RELATED TO SPENT NUCLEAR FUEL LITIGATION AT THE COURT OF FEDERAL CLAIMS, SETTLEMENTS AND LEGAL ANALYSIS OF COUNSEL REGARDING TERMS OF STANDARD CONTRACT; INFORMATION AND ANALYSIS PROVIDED BY COUNSEL AND REFLECTS LEGAL ADVICE AND MENTAL IMPRESSIONS OF COUNSEL.
AC/AW ATTORNEYS: J. TAYLOR, C. REYNOLDS (DOE-OGC

Thus, the Government explained to Dairyland that these documents contain "legal advice and analysis." The Government further identified the specific attorneys who provided this advice and analysis, Jane Taylor and Cathy Reynolds, both of whom serve as lawyers in DOE's Office of General Counsel. See Yankee Atomic, 54 Fed. Cl. at 313 (noting that Government is entitled to invoke privilege over communications with its in-house agency counsel). As a result, Dairyland's contention that the Government failed to identify "who provided such analysis" is demonstrably false.

Moreover, the fact that an attorney's name does not appear in the author or addressee columns of the privilege log corresponding to Ref. Nos. S11, S232, S233, and S234 is irrelevant, and the Government was not obligated to compromise its assertions of privilege by describing the "kind" of legal analysis communicated by DOE's counsel. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17. Similarly, whether the presentation referenced in the documents' descriptions was itself delivered by an attorney is not an element necessary to sustain the privilege. See RCFC 26(b)(5). Although not determinative, the legend affixed to

Ref. No. S11 provides further indicia of the attorney-client privilege. Finally, despite Dairyland's assertion to the contrary, the Government's descriptions of these documents demonstrate that they were prepared in anticipation of the SNF litigation currently pending before this Court and that the documents contain "core" work product entitled to protection. See RCFC 26(b)(3) ("the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . .").

C. Document Ref. Nos. S236, S237, S238, And S239

Dairyland challenges the Government's assertion of attorney work product protection over Ref. Nos. S236 (Bates No. CTR6101155-CTR6101182), S237 (Bates No. CTR6101183-CTR6101210), S238 (CTR6101211-CTR6101211), and S239 (CTR6101212-CTR6101233) on the following grounds: (1) no attorney is "listed in the privilege log as an author of these emails or the '"attached results"'; (2) according to the entries, the analysis contained in the documents was not prepared by an attorney or in anticipation of litigation; and (3) the entries fail to describe "what kind of 'analysis' or 'opinions' and 'mental impressions' of counsel are contained in the documents . . . ." PBR14. Dairyland's challenges are without foundation. The Government described these four documents as follows in its September 17, 2007 privilege log:

S236 and S237

TWO COPIES OF EMAIL FORWARDING ATTACHED RESULTS OF ANALYSIS OF POTENTIAL LIABILITY ARISING FROM CASES PENDING AT THE COURT OF FEDERAL CLAIMS; ANALYSIS PREPARED AT THE DIRECTION OF COUNSEL AND REFLECTS COUNSEL'S OPINIONS AND MENTAL IMPRESSIONS REGARDING THAT LITIGATION.
AW ATTORNEY: J. TAYLOR (DOE-OGC).

S238

EMAIL REGARDING ANALYSIS OF POTENTIAL LIABILITY ARISING FROM CASES PENDING AT THE COURT OF FEDERAL CLAIMS;

ANALYSIS PREPARED AT THE DIRECTION OF COUNSEL AND REFLECTS COUNSEL'S OPINION AND MENTAL IMPRESSIONS REGARDING THAT LITIGATION.
AW ATTORNEY: J. TAYLOR (DOE-OGC).

S239

EMAIL FORWARDING ATTACHED RESULTS OF ANALYSIS OF POTENTIAL LIABILITY ARISING FROM CASES PENDING AT THE COURT OF FEDERAL CLAIMS; ANALYSIS PREPARED AT THE DIRECTION OF COUNSEL AND REFLECTS COUNSEL'S OPINIONS AND MENTAL IMPRESSIONS REGARDING THAT LITIGATION.
AW ATTORNEY: J. TAYLOR (DOE-OGC).

Dairyland's suggestion that a legal analysis "prepared at the direction of counsel"-- in this case, Jane Taylor of DOE's Office of General Counsel -- does not qualify as work product is wrong. See RCFC 26(b)(3); Hickman, 329 U.S. at 511-12. Similarly wrong is Dairyland's suggestion that, to sustain its privilege claims, the Government had do to identify Ms. Taylor by name in the "author" column of its privilege log. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 316-17. Moreover, Dairyland's contention that the Government should have described to Dairyland more of the substance of Ms. Taylor's legal analyses, opinions, and mental impressions is repugnant to the work product doctrine. See RCFC 26(b)(3) ("the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . ."). Counsel's work or work performed at the direction of an attorney to assess potential liability from pending litigation directly reflects counsel's mental impressions, and these are the very essence of the work product protection. Id. Again, Dairyland has not offered the Government detailed descriptions of its attorneys' core work product. See A.1-22.

D. Document Ref. Nos. S251 And S252

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. Nos. S251 (Bates No. CTR6103228-CTR6103253) and S252 (Bates

No. CTR6103254-CTR6103279) on the following grounds: (1) no attorney is "listed in the privilege log as an author or addressee of these documents[]"; and (2) the Government's log entries do not state that the documents contain legal advice or that they were prepared primarily for litigation purposes. PBR15. Dairyland's challenges are baseless. The Government described these two documents identically as follows in its September 17, 2007 privilege log:

> EMAIL AND ATTACHED WHITEPAPER REGARDING SHIPMENTS OF SNF TO YUCCA MOUNTAIN; PREPARED AT THE DIRECTION OF COUNSEL, IN PART, IN CONNECTION WITH LITIGATION PENDING BEFORE THE COURT OF FEDERAL CLAIMS; BEARS LEGEND "LITIGATION SENSITIVE INFORMATION, SETTLEMENT DISCUSSION & PREPARED AT THE DIRECTION OF AN ATTORNEY."
> AC/AW ATTORNEY: A. KORDYAK (DOE-OGC).

Apparently blinded by its preoccupation with the author and addressee columns of the Government's privilege log, Dairyland seems to have missed the fact that the Government specifically identified the attorney who provided counsel to DOE by way of Ref. Nos. S251 and S252, Angela Kordyak of DOE's Office of General Counsel. Although the document's description does not mention "legal advice," the overall tenor of the document demonstrates that it is attorney-client privileged. See In re Spalding Sports, 203 F.3d at 806; see also Yankee Atomic, 54 Fed. Cl. at 315 (recognizing that communication between attorney and client presumptively qualifies as request for legal advice unless clearly lacking). Moreover, contrary to Dairyland's assertion, the Government's description of these documents plainly demonstrates that they were prepared at the direction of Ms. Kordyak for litigation purposes relating to the SNF cases currently pending before this Court. As such, the documents are entitled to the protections afforded by the work product doctrine. See Rule 26(b)(3); Hickman, 329 U.S. at 511-12. Finally, while not determinative, the legend appearing on these documents provides additional indicia that they are privileged communications.

E. Document Ref. No. S570

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. Nos. S570 (Bates No. HQR5010716-HQR5010721) on the following ground: the Government's privilege log "does not show any addressee for this document and, therefore, it has not shown that the document is a communication between an attorney and the client for the purpose of obtaining legal advice." PBR15. Dairyland's challenge is without foundation. The Government described this document as follows in its September 17, 2007 privilege log:

> MEMORANDUM FROM J. TAYLOR (DOE-OGC) CONTAINING LEGAL ADVICE REGARDING DOE ACCEPTANCE OF SPENT NUCLEAR FUEL PROVIDED IN RESPONSE TO REQUEST FOR SAME; ADVICE RENDERED AS PART OF DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
> AC ATTORNEY: J. TAYLOR (DOE-OGC).

Again, the Government specifically identified Jane Taylor, Office of General Counsel, DOE, as the attorney who, in this case, provided legal advice to her client, DOE, by way of a memorandum requested by the client. Dairyland's argument that the absence of a name in the "addressee" column of the Government's log must mean that this document was not communicated by and between Ms. Taylor and DOE is absurd given the document's description. See Yankee Atomic Elec., 54 Fed. Cl. at 315 (recognizing that communication between attorney and client "presumptively qualifies" as request for legal advice unless clearly lacking).

F. Document Ref. Nos. S589, S590, S591, And S604

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. Nos. S589 (Bates No. HQR5011446-HQR5011448), S590 (Bates No. HQR5011449-HQR5011452), S591 (Bates No. HQR5011461-HQR5011463), and S604 (Bates No. HQR5050209-HQR5050215) on the following grounds: (1) the Government's

privilege log "does not list an attorney as an author or addressee" for the four documents and does not identify any other persons in these columns; (2) the entries for these documents do not describe "what kind" of legal analysis or advice is contained in the documents; and (3) Ref. Nos. S591 and S604 are undated, and the entries for these documents do not describe the work product contained therein. PBR15-16. Dairyland's challenge is without merit. The Government described these four documents as follows in its September 17, 2007 privilege log:

> S589
>
> WHITEPAPER CONTAINING LEGAL ANALYSIS AND ADVICE OF DOE COUNSEL REGARDING PROVISIONS FOR INTERIM STORAGE UNDER THE NWPA; ADVICE PROVIDED IN CONJUNCTION WITH DOE-OGC'S RESPONSIBILITY TO SUPPLY LEGAL SERVICES TO DOE.
> AC ATTORNEY: T. GETZ (DOE-OGC)
>
> S590
>
> MEMORANDUM CONTAINING LEGAL ADVICE AND ANALYSIS BY COUNSEL FOR DOE PROVIDED IN RESPONSE TO REQUEST FOR SAME; PERTAINS TO DOE AUTHORITY TO PROVIDE INTERIM STORAGE OF COMMERCIAL SPENT NUCLEAR FUEL; ADVICE RENDERED AS PART OF DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
> AC ATTORNEY: DOE-OGC.
>
> S591
>
> DRAFT WHITEPAPER REFLECTING REVIEW BY AND LEGAL ADVICE OF COUNSEL FOR DOE REGARDING INTERIM STORAGE OF SPENT NUCLEAR FUEL; ADVICE RENDERED IN CONJUNCTION WITH DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE; DOCUMENT PREPARED BY COUNSEL IN ANTICIPATION OF PENDING SPENT NUCLEAR FUEL LITIGATION.
> AC/AW ATTORNEY: DOE-OGC.
>
> S604
>
> DRAFT WHITEPAPER REGARDING INTERIM STORAGE CONTAINING LEGAL ADVICE AND ANALYSIS OF COUNSEL FOR DOE REGARDING SPENT NUCLEAR FUEL LITIGATION; PREPARED BY AN ATTORNEY

> AND CONTAINS MENTAL IMPRESSIONS OF COUNSEL REGARDING THE LITIGATION; BEARS LEGEND "PRIVILEGED - PREDECISIONAL - DELIBERATIVE PROCESS - PREPARED AT THE DIRECTION OF AN ATTORNEY FOR LITIGATION PURPOSES."
> AW ATTORNEY: DOE-OGC.

The descriptions provided by the Government for S589, S590, S591, and S604 demonstrate that each of these documents are protected by the attorney-client privilege as they all contain legal advice and analysis provided to DOE by its Office of General Counsel. The descriptions of S591 and S604 further demonstrate that these two documents are entitled to work protect protection because they were prepared by the Office of General Counsel in anticipation of the SNF litigation pending before this Court. As discussed, that an attorney's name is not listed in the author or addressee columns of the September 17, 2007 privilege log corresponding to these documents is of no consequence, and the Government need not compromise its privilege assertions by explaining its attorneys' legal analyses and work product to Dairyland. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17. Moreover, by their very definition whitepapers do not identify their authors or addressees.

G. Document Ref. No. S592

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. No. S592 (Bates No. HQR5020001-HQR5020012) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee"; (2) the Government's privilege log entries do not describe what "kind of legal advice" the document contains; and (3) the Government has not described with sufficient particularity the licensing litigation referenced in the document. PBR16-17. Dairyland's challenge is unfounded. The Government described this document as follows in its September 17, 2007 privilege log:

DRAFT WHITEPAPER REFLECTING REVIEW BY AND LEGAL ADVICE OF COUNSEL FOR DOE REGARDING MAINTENANCE OF SNF ACCEPTANCE IN 2020 OR SOON THEREAFTER; ADVICE RENDERED IN CONJUNCTION WITH DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE; DOCUMENT PREPARED IN ANTICIPATION OF UPCOMING LICENSING LITIGATION AND CONTAINS MENTAL IMPRESSIONS OF COUNSEL RELATING THERETO; BEARS LEGEND "PREDECISIONAL DRAFT/ATTORNEY CLIENT PRIVILEGED."
AC/AW ATTORNEY: DOE-OGC.

The Government's comprehensive description of Ref. No. S592 demonstrates that this document is protected by the attorney-client privilege on the basis of its inclusion of legal advice provided by DOE's Office of General Counsel. The description also satisfies the elements necessary to sustain a work product claim as it evidences preparation by counsel of the document in anticipation of litigation, and incorporation into the document of counsel's mental impressions. The legend on the document provides further indicia of the privileges claimed.

Regarding the arguments presented by Dairyland, the absence of an attorney's name in the author and addressee columns of the privilege log and the Government's unwillingness to explain its attorneys' legal advice to Dairyland provide no bases for overcoming the Government's claims of privilege. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17. Further, the Government need not describe with "particularity" the litigation to which the Government refers in its log. See Yankee Atomic, 54 Fed. Cl. at 313, 316 (rejecting utility plaintiffs' contention that Government must show its lawyers were not acting in a "regulatory capacity," and finding "the work product of government attorneys created in anticipation of litigation is protected even if the litigation involves obligations under a statute, regulation, or a contract.").

H. Document Ref. Nos. S594, S595, S596, S597, And S598

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. Nos. S594 (Bates No. HQR5020097-HQR5020099), S595 (Bates No. HQR5020100-HQR5020103), S596 (Bates No. HQR5020104), S597 (Bates No. HQR5020105-HQR5020110), and S598 (Bates No. HQR5020111) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" for the five documents, and does not identify any other persons in these columns; (2) the entry for Ref. No. S597 does not describe what "kind of work product" the document contains, and it also does "not appear" that this document was prepared in anticipation of litigation. PBR18. Dairyland cannot sustain its challenge. The Government described these documents as follows in its September 17, 2007 privilege log:

S594

LETTER REQUESTING COUNSEL REVIEW AND LEGAL ADVICE REGARDING ATTACHED DRAFT DCS OPTIONS PAPER; DRAFT PAPER REFLECTS LEGAL ADVICE OF COUNSEL ON DCS OPTIONS, PROVIDED AS PART OF DOE-OGC'S RESPONSIBILITY TO SUPPLY LEGAL SERVICES TO DOE; BEARS LEGEND "PREPARED AT THE DIRECTION OF AN ATTORNEY."
AC ATTORNEY: J. TAYLOR (DOE-OGC).

S595

DRAFT DCS OPTIONS PAPER REFLECTING LEGAL ADVICE OF COUNSEL PURSUANT TO REQUEST FOR SAME; REVIEW SOUGHT IN CONJUNCTION WITH DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE; BEARS LEGEND "PREPARED AT THE DIRECTION OF AN ATTORNEY."
AC ATTORNEY: J. TAYLOR (DOE-OGC).

S596

LETTER REQUESTING LEGAL REVIEW AND ADVICE BY COUNSEL FOR DOE REGARDING DCS OPTIONS; REVIEW REQUESTED AS PART OF DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
AC ATTORNEY: J. TAYLOR (DOE-OGC).

S597

DRAFT PRESENTATION REGARDING DCS SCHEDULING AND STATUS REFLECTING LEGAL REVIEW BY COUNSEL FOR DOE; REVIEW RENDERED AS PART OF DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE; DOCUMENT PREPARED AT THE DIRECTION OF AN ATTORNEY IN ANTICIPATION OF PENDING SPENT NUCLEAR FUEL LITIGATION.
AC/AW ATTORNEY: J. TAYLOR (DOE-OGC).

S598

DRAFT TALKING POINTS REFLECTING LEGAL REVIEW BY COUNSEL FOR DOE AND CONTAINING COUNSEL ANALYSIS PERTAINING TO DCS OPTIONS; REVIEW RENDERED AS PART OF DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
AC ATTORNEY: DOE-OGC.

Once again, the Government provided comprehensive descriptions more than sufficient to sustain its claims of attorney-client privilege and work product protection over these five documents. As for four of the documents, the Government identified Jane Taylor, Office of General Counsel, DOE, as the attorney who provided the advice contained in the documents. As for the remaining document, the Government was able to identify that the advice contained therein was provided to DOE by its Office of General Counsel. Regarding Ref. No. S597, the Government's description of this document facially satisfies the elements of the work product doctrine. Moreover, the absence of an attorney's name in the author and addressee columns of the privilege log, and the Government's unwillingness to explain its attorneys' mental

impressions to Dairyland, provide no bases for overcoming the Government's claims of privilege. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17.

I. Document Ref. No. S614

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. No. S614 (Bates No. HQR5051051-HQR5051055) on the following grounds: (1) the document's description suggests that it was written by a non-lawyer to a non-lawyer, thus failing to constitute a communication between attorney and client; and (2) the entry states that it concerns policy options and incorporates "unspecified" legal advice from an "unnamed" attorney. PBR19. Dairyland's challenge is without merit. The Government described this document as follows in its September 17, 2007 privilege log:

> MEMORANDUM FROM D. DREYFUS, DIRECTOR OCRWM, TO UNDER SECRETARY OF ENERGY, REFLECTING REVIEW FOR LEGAL SUFFICIENCY AND ADVICE OF COUNSEL FOR DOE REGARDING ATTACHED POLICY OPTIONS PAPER CONCERNING PROPOSALS FOR INTERIM STORAGE OF NUCLEAR WASTE; ATTACHMENT INCORPORATES LEGAL ADVICE BY DOE-OGC; ADVICE RENDERED BY DOE–OGC AS PART OF ITS RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
> AC ATTORNEY: R. NORDHAUS (DOE-OGC).

The plain text of the Government's description of Ref. No. S614 reveals that Dairyland's contentions are demonstrably false. First, the attorney whose advice is at issue is not unnamed. Rather, the Government's September 17, 2007 privilege log plainly identifies counsel as Robert Nordhaus, Office of General Counsel, DOE. Second, Mr. Nordhaus's legal advice is not "unspecified." To the contrary, the Government described this advice generally as pertaining to policy options and proposals for interim storage of nuclear waste. To have explained the document in greater detail would have risked compromising the privilege. See Yankee Atomic, 54 Fed. Cl. at 309. Finally, a document need not be drafted by a lawyer to qualify for the

attorney-client privilege so long as the document contains a confidential communication between the attorney and his or her client for the purposes of legal advice. See Zolin, 491 U.S. at 562. Based upon its description, Ref. No. S614 satisfies this standard.

J. Document Ref. No. S635

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. No. S635 (Bates No. HQR5290109-HQR5290114) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" of the document; (2) the document's description suggests it was written by a non-lawyer to the file and not communicated to an attorney; and (3) the privilege log does not identify "what particular work product is contained in the document," and it confusingly states it was prepared by both counsel and the non-lawyer. PBR19-20. Dairyland's challenge is without foundation. The Government described this document as follows in its September 17, 2007 privilege log:

> DRAFT MEMORANDUM FROM OCRWM DIRECTOR, E. SPROAT, TO FILE CONTAINING LEGAL ADVICE AND ANALYSIS PROVIDED BY DOE COUNSEL IN RESPONSE TO REQUEST FOR SAME; MEMO ANALYZES LIABILITY ISSUES RELATING TO BREACH OF STANDARD CONTRACT; MEMO PREPARED BY COUNSEL FOR DOE IN ANTICIPATION OF SNF LITIGATION PENDING IN COURT OF FEDERAL CLAIMS; BEARS LEGEND "ATTORNEY-CLIENT PRIVILEGE."
> AC/AW ATTORNEY: J. TAYLOR (DOE-OGC).

The Government's facially sufficient description of Ref. No. S635 demonstrates that Jane Taylor, Office of General Counsel, DOE, provided the "legal advice and analysis" contained in this document to Edward Sproat, Director of DOE's Office of Civilian Radioactive Waste Management, and that Ms. Taylor's efforts resulted from a request for legal advice. It is, therefore, difficult to understand the grounds for Dairyland's challenge to the sufficiency of our privilege claim. Moreover, the privilege log entry also satisfies the elements necessary to sustain

a work product claim as it evidences preparation by counsel of the document in anticipation of the SNF litigation pending before this Court. While not determinative, the legend on the document provides additional indicia of the privileges claimed.

Contrary to Dairyland's assertions, the description of Ref. No. S635 does not indicate this document was drafted by Mr. Sproat or that it was prepared by both Ms. Taylor and Mr. Sproat. The log entry states clearly that Ms. Taylor prepared the memorandum. Dairyland's remaining contentions concerning the absence of an attorney in the privilege log's author and addressee column, as well as the lack of "particularity" regarding the Government's work product description, are of no legal significance. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17.

K. Document Ref. No. S641

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. No. S641 (Bates No. HQR5320001-HQR5320002) on the following ground: the Government's privilege log "does not list an attorney as an author or addressee," and, for that reason, the Government's description of the document fails to demonstrate that it contains a confidential communication between an attorney and client for the purpose of obtaining legal advice. PBR21. Dairyland's challenge is without merit. The Government described this document as follows in its September 17, 2007 privilege log:

> MEMORANDUM CONTAINING LEGAL ADVICE AND ANALYSIS BY COUNSEL FOR DOE REGARDING ACCEPTANCE OF SNF FROM DAIRYLAND POWER COOPERATIVE; ADVICE RENDERED IN CONJUNCTION WITH DOE-OGC'S RESPONSIBILITY TO SUPPLY LEGAL SERVICES TO DOE. MEMO PREPARED BY DOE COUNSEL IN ANTICIPATION OF SNF LITIGATION PENDING IN COURT OF FEDERAL CLIAMS, AND MEMO REFLECTS COUNSEL'S MENTAL IMPRESSIONS REGARDING LITIGATION.
> AC/AW ATTORNEY: DOE OGC.

As is apparent from the above, the Government summarized Ref. No. S641 in its September 17, 2007 privilege log with greater detail than required. Based on that ample description, the document plainly contains legal advice and analysis provided to DOE by its in-house attorneys. Moreover, agency counsel prepared this memorandum in anticipation of the SNF litigation pending before this Court. Accordingly, the document is protected by the attorney-client privilege and work product doctrine. As has already been demonstrated, Dairyland's sole ground for challenging the document -- the absence of an attorney's name from the author or addressee column of a privilege log -- does not suffice to defeat a properly asserted claim of privilege. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17.

L. Document Ref. Nos. S682, S683, And S1130

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. No. S682 (Bates No. HQR5380006-HQR5380008), S683 (Bates No. HQR5380040-HQR5380042), and S1130 (Bates No. HQR6540013-HQR6540015) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" of the documents; and (2) based upon the description of the documents, it "would seem" to Dairyland that they do not concern SNF litigation. PBR21. Dairyland's challenge is unfounded. The Government described these documents as follows in its September 17, 2007 privilege log:

S682 and S683

> EMAIL FROM S. SMITH TO D. ZABRANSKY PREPARED AT DIRECTION OF COUNSEL IN ANTICIPATION OF SNF LITIGATION PENDING IN COURT OF FEDERAL CLAIMS; DOCUMENT REVEALS MENTAL IMPRESSIONS OF COUNSEL REGARDING WASTE ACCEPTANCE OPTIONS AND EFFECT ON LITIGATION POSITIONS; BEARS LEGEND "ATTORNEY CLIENT PRIVILEGED/PRE-DECISIONAL DRAFT."

AW ATTORNEY: J. TAYLOR (DOE-OGC)

S1130

EMAIL REGARDING DRAFT PAPER ON WASTE ACCEPTANCE OPTIONS; CONTAINS LEGAL ANALYSIS AND DISCUSSION OF CURRENTLY PENDING LITIGATION BEFORE THE COURT OF FEDERAL CLAIMS PROVIDED BY COUNSEL; BEARS LEGEND "ATTORNEY CLIENT PRIVILEGED/PRE-DECISIONAL DRAFT."
AC/AW ATTORNEY: J. TAYLOR (DOE-OGC).

The Government plainly identified for Ref. Nos. S682, S683, and S1130 Jane Taylor as the attorney responsible for preparing and providing the document's privileged content to DOE. See Yankee Atomic, 54 Fed. Cl. at 315 (noting that communications between attorney and client "presumptively qualif[y]" as privileged unless clearly lacking). In addition to satisfying the black letter elements of the work product doctrine, the Government's privilege log entries demonstrate that these documents contain core attorney work product as defined by RCFC 26(b)(3). Moreover, Dairyland's unfounded speculation about the documents' subject matter is of no consequence as we, as officers of the Court, confirmed that they relate to the SNF litigation pending before this Court. Finally, the absence of an attorney's name from the author or addressee column of our privilege log is equally inconsequential. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 316-17.

M. Document Ref. No. S684

Dairyland challenges the Government's assertion of attorney work product protection over Ref. No. S684 (Bates No. HQR5380085-HQR5380086) on the following ground: the individuals mentioned in the textual description of the document "are not attorneys" and the Government's privilege log "does not list an attorney as an author or addressee of the

document." PBR22. Dairyland's challenge is fatally flawed. The Government described this document as follows in its September 17, 2007 privilege log:

> EMAIL CHAIN BETWEEN C. KOUTS AND P. GOLAN CONTAINING COMMENTS PREPARED BY COUNSEL IN ANTICIPATION OF SNF LITIGATION PENDING IN COURT OF FEDERAL CLAIMS; DOCUMENT REVEALS MENTAL IMPRESSIONS OF COUNSEL REGARDING LITIGATION, AND BEARS LEGEND "ATTORNEY CLIENT PRIVILEGED/PRE-DECISIONAL DRAFT."
> AW ATTORNEY: J. TAYLOR (DOE-OGC).

We agree that the individuals referenced in the description's text, Messrs. Kouts and Golan, are not attorneys. We also agree that no attorneys appear in the author or addressee columns associated with Ref. No. S684. These facts, however, are completely inapposite. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 316-17. Also identified in the document is Jane Taylor, Office of General Counsel, DOE, and she is an attorney. As described, the document contains comments prepared by Ms. Taylor as well as her mental impressions. Further, this core work product was prepared by Ms. Taylor in anticipation of the SNF litigation pending before this Court. Further, while not determinative, the document's legend provides additional indicia of privilege. We do not, therefore, understand how Dairyland can assert in good faith that this document is not entitled to work product protection.

N. Document Ref. No. S690

Dairyland challenges the Government's assertion of attorney-client privilege and work product protection over Ref. No. S690 (Bates No. HQR5510014-HQR5510015) on the following grounds: (1) the individuals mentioned in the textual description of the document are not attorneys, and the Government's privilege log "fails to identify an attorney as an author or addressee" of the document; (2) the log entry also fails to identify the attorney whose legal advice and mental impressions are "purportedly contained" in the document; and (3) the

document's description shows that it was prepared for "legislative purposes," not for licensing litigation. PBR22. Dairyland's challenge is without foundation. The Government described this document as follows in its September 17, 2007 privilege log:

> EMAIL FROM H. FITTER TO A. BROWNSTEIN FORWARDING LEGAL ADVICE AND ANALYSIS PROVIDED TO DOE BY DOJ REGARDING PROPOSED LEGISLATIVE TESTIMONY CONCERNING SNF ACCEPTANCE; ADVICE PREPARED BY DOJ IN ANTICIPATION OF LICENSING LITIGATION, AND CONTAINS COUNSEL'S MENTAL IMPRESSIONS.
> AC/AW ATTORNEY: DOJ

Again, we agree that the individuals referenced in the description's text, Messrs. Fitter and Brownstein, are not attorneys. We further agree that no attorneys appear in the author or addressee columns associated with Ref. No. S690. However, also identified in the document's description is the Department of Justice, counsel for DOE in a wide variety of matters. As described, the document contains core privileged material: legal advice and analysis provided to DOE by DOJ. Moreover, the Government's log entry demonstrates that the document also contains the mental impressions of DOJ attorneys relating to pending litigation. The document's legend provides additional indicia of privilege.

Dairyland's unfounded accusation that we have misrepresented the substance of Ref. No. S690 -- that is, that it does not relate to litigation -- is not worthy of response. Based upon the document's description, we question how Dairyland can, in good faith, contend that this material is not privileged. Surely Dairyland would bristle were the Government to move to compel communications between it and its counsel, Greenberg Traurig.

O. Document Ref. No. S700

As discussed in our introduction to this response, Dairyland challenges the Government's

assertion of attorney-client privilege and work product protection over Ref. No. S700 (Bates No. HQR5540549-HQR5540613) on the following grounds: (1) the privilege log entry "does not list an attorney as an author or addressee of the document[]"; and (2) the Government "has failed to demonstrate that this document contains a communication between an attorney and the client for the purpose of obtaining legal advice or that it contains any work product." PBR23. Dairyland's challenge is incredible. The Government described this document as follows in its September 17, 2007 privilege log:

> EMAIL CHAIN REFLECTING ADVICE PROVIDED BY DOJ REGARDING SNF LITIGATION PENDING BEFORE THE COURT OF FEDERAL CLAIMS; ADVICE RENDERED AS PART OF DOJ'S RESPONSIBILITY TO PROVIDE LEGAL REPRESENTATION TO DOE; DOCUMENT ALSO CONTAINS INFORMATION PREPARED AT DIRECTION OF DOJ IN CONNECTION WITH SNF LITIGATION. AC/AW ATTORNEY: R. SHULTIS (DOJ)

Our description plainly indicates that Ref. No. S700 is an email containing advice communicated to DOE by its attorney, Russell Shultis, counsel of record for the United States in this matter. Further, the description provides a sufficient basis for invocation of the work product doctrine by explaining that information contained in the communication was prepared at the direction of the Department of Justice in connection with the SNF litigation pending before this Court. As with so many of Dairyland's other challenges, Dairyland cannot legitimately believe the Government's description of Ref. No. S700 is deficient.

P. Document Ref. No. S701

Dairyland challenges the Government's assertion of attorney work product protection over Ref. No. S701 (Bates No. HQR5550013-HQR5550017) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" of the document; and (2) based on the documents' subject matter, it does not appear to have been

prepared "entirely" in connection with pending litigation. PBR24. Dairyland's challenge is without merit. The Government described this document as follows in its September 17, 2007 privilege log:

> DRAFT REPORT CONTAINING MENTAL IMPRESSIONS OF COUNSEL RELATED TO AUTHORIZATION OF NWF COLLECTIONS, MITIGATION OF DAMAGES, SNF ACCEPTANCE, AND TRANSPORTATION SAFETY CONCERNS; PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION PENDING AT THE COURT OF FEDERAL CLAIMS; BEARS LEGEND "UNOFFICIAL - FOR INTERNAL RW DISCUSSION PURPOSES ONLY/PRELIMINARY DRAFT."
> AW ATTORNEY: J. TAYLOR (DOE-OGC).

The Government's description of Ref. No. S701 specifically identifies Jane Taylor, Office of General Counsel, DOE, as the attorney responsible for the preparation of the privileged document. Additionally, the document is described as containing Ms. Taylor's mental impressions regarding various topics associated with the SNF litigation pending before this Court. As such, it is difficult to discern how Dairyland could suppose the document is not entitled to work product protection, particularly given the lack of any basis for its contention challenging the absence of an attorney's name in the log's author or addressee columns. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 316-17. Nor is Dairyland's unfounded speculation that some portion of the document may refer to a non-litigation matter sufficient to overcome the Government's proper assertion of work product. See RCFC 26(b)(3).

Q. Document Ref. No. S955

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. No. S955 (Bates No. HQR6120553-HQR6120556) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" of the document; (2) the document's description does not demonstrate it was actually provided

by counsel to the client; and (3) the document "appears" to be related to a subject other than litigation. PBR24-25. Dairyland's challenge is unfounded. The Government described this document as follows in its September 17, 2007 privilege log:

> DRAFT MEMORANDUM PROVIDING LEGAL ADVICE AND ANALYSIS REGARDING LEGAL AUTHORITY TO PROVIDE INTERIM STORAGE; PREPARED [BY] COUNSEL IN RESPONSE TO REQUEST FOR ANALYSIS BY OCRWM; ALSO CONTAINS COUNSEL'S OPINIONS AND MENTAL IMPRESSIONS REGARDING LITIGATION PENDING AT THE COURT OF FEDERAL CLAIMS AND THE FEDERAL CIRCUIT.
> AC/AW ATTORNEY: J. TAYLOR (DOE-OGC).

Since the privilege log description provided by the Government for Ref. No. S955 states specifically that Jane Taylor, Office of General Counsel, DOE, provided the legal advice and analysis contained in the document, and since it also says that Ms. Taylor did so in response to a request by DOE's Office of Civilian Waste Management, we are at a loss to imagine how Dairyland could conclude the advice was not rendered by an attorney to her client. Nor is Dairyland's rank speculation about the document's subject matter sufficient to overcome the work product doctrine in the face of the Government's comprehensive description, which expressly references the SNF litigation pending before this Court. See RCFC 26(b)(3). Finally, Dairyland's observation that no attorney is listed in the privilege log's author or addressee columns associated with this document is without legal significance. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 316-17.

R. Document Ref. Nos. S956 And S957

Dairyland challenges the Government's assertions of attorney-client privilege and work product protection over Ref. Nos. S956 (Bates No. HQR6120557-HQR6120564) and Ref. Nos. S957 (Bates No. HQR6120565-HQR6120567) on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" of the document, and there is

no indication the documents contain legal advice; (2) the log entries show the documents were prepared for "legislative purposes," not litigation; and (3) the entries do not describe any work product. PBR25. Dairyland's challenge is without merit. The Government described these documents as follows in its September 17, 2007 privilege log:

> S956
>
> DRAFT PROPOSED LEGISLATION REGARDING INTERIM STORAGE, MEMORANDUM AND TALKING POINTS REGARDING NEED FOR SUCH LEGISLATION; DOCUMENTS PREPARED [BY] COUNSEL IN RESPONSE TO REQUEST FOR ANALYSIS BY OCRWM, IN CONNECTION WITH LITIGATION PENDING IN COURT OF FEDERAL CLAIMS, AND AS PART OF COUNSEL'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
> AC/AW ATTORNEY: J. TAYLOR (DOE-OGC).
>
> S957
>
> DRAFT TALKING POINTS REGARDING NEED FOR INTERIM STORAGE LEGISLATION; PREPARED BY COUNSEL IN RESPONSE TO REQUEST FOR ANALYSIS BY OCRWM, IN CONNECTION WITH LITIGATION PENDING IN THE COURT OF FEDERAL CLAIMS, AND AS PART OF COUNSEL'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
> AC/AW ATTORNEY: J. TAYLOR (DOE-OGC).

The Government's privilege log descriptions for Ref. Nos. S956 and S957 identify a specific attorney, Jane Taylor, Office of General Counsel, DOE, as the lawyer who prepared the analyses referenced in the documents' descriptions. Moreover, these log entries demonstrate Ms. Taylor's work was requested by her client, DOE. Although the entries do not state specifically that the documents include "legal advice," the descriptions' "overall tenor" sufficiently support the attorney-client privilege. In re Spalding Sports, 203 F.3d at 806. Additionally, Ms. Taylor's identification renders the documents presumptively privileged, and the descriptions are not otherwise lacking for purposes of the attorney-client privilege. See

Yankee Atomic, 54 Fed. Cl. at 315. Finally, the existence of attorney work product is sufficiently apparent from the documents' descriptions. See RCFC 26(b)(3).

With respect to Dairyland's remaining arguments, the absence of an attorney's name in the author and addressee columns of the privilege log and the Government's unwillingness to explain its attorneys' work product to Dairyland provide no bases for overcoming the Government's assertions of privilege. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17. Further, the Government's privilege log entries expressly state that the documents were prepared in connection with litigation, and the Government's communications with its attorneys do not lose their privileged status merely because they may have a legislative component. See Yankee Atomic, 54 Fed. Cl. at 313, 316 (rejecting utility plaintiffs' contention that Government must show its lawyers were not acting in a "regulatory capacity," and finding "the work product of government attorneys created in anticipation of litigation is protected even if the litigation involves obligations under a statute, regulation, or a contract.").

S. Document Ref. No. S1130

Dairyland's challenge to Ref. No. S1130 (Bates No. HQR6540013-HQR6540015) is duplicative of its earlier challenge to this same document. For the Government's response, please see our prior discussion of this subject, which appears at subheading L.

T. Document Ref. No. S1145

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. No. S1145 (Bates No. HQR6760001-HQR6760002) on the following ground: the Government's privilege log "does not identify any author and it lists one attorney among ten addressees" for the document, therefore failing to demonstrate a communication between attorney and client.

PBR24. Dairyland's challenge is without merit. The Government described this document as follows in its September 17, 2007 privilege log:

> SUMMARY OF MEETING RESULTS FROM A DISCUSSION CONCERNING ACCEPTANCE SCENARIOS; DOCUMENT REFLECTS LEGAL ADVICE PROVIDED BY COUNSEL AT MEETING.
> AC ATTORNEY: G. HELLSTROM (DOE-OGC).

Dairyland cites no authority for the proposition that a document with ten addressees, one of whom is a lawyer, is not eligible for the attorney-client privilege. Nor are we are of any such authority. Were this the rule, managers in business and the government would refrain from conversing in groups with in-house counsel for fear their discussions would become litigation fodder. Further, as described, Ref. No. S1145 contains legal advice provided to DOE by its in-house counsel, George Hellstrom, bringing the document firmly within the realm of the attorney-client privilege. Zolin, 491 U.S. at 562; Yankee Atomic, 54 Fed. Cl. at 313.

U. Documents Concerning Proposed Spent Fuel Disposal Contracts for New Nuclear Reactors

1. The Documents Regarding Possible Future Contracts That DOE Might Enter With The Owners Of Future Nuclear Reactors That Have Not Yet Even Been Constructed Are Irrelevant To This Litigation

Dairyland requests the production of 142 documents that relate to DOE's recent internal discussions regarding the possible development of new contracts that would relate to future nuclear reactors that have not yet been licensed or constructed. As the Court may be aware, there is currently an interest within the nuclear power community in the development of new nuclear reactors that would be constructed and would generate nuclear power in the future. See, e.g., Steven Mufson, Nuclear Power Primed For Comeback, Wash. Post, Oct. 8, 2007, at A1 (available on www.washingtonpost.com); Nuclear Power Preps for Comeback (Oct. 8, 2007), http://www.upi.com/NewsTrack/Business/2007/10/08/nuclear_power_preps_for_comeback/

4197. In response to this activity, DOE's Office of General Counsel has internally been considering what the terms of a new contract applicable to those future facilities might need to include.

However, those future potential contracts, not a single one of which has been negotiated or executed, have no relevance to the issues pending in this case. The terms that DOE might elect to use if and when it enters into a new (and different) contract than the one that it entered with Dairyland are irrelevant to the Court's interpretation of the terms of Dairyland's existing contract. Further, none of these documents relate in any way to DOE's performance of the 1983 Standard Contract between the parties to this case. Instead, the documents involve potential new draft contracts with nuclear reactors that have not been constructed and are many years away from being operational, if they come into existence at all. As of this date, no new nuclear contracts have been executed. Therefore, these documents cannot inform the Court as to the scope of DOE's obligations to Dairyland beginning in 1998.

The fact that this information is irrelevant to Dairyland's case should bar Dairyland's efforts to obtain information about it in discovery here. RCFC 26 allows for discovery of "any matter, not privileged, which is relevant to the claim or defense of any party . . . ." RCFC 26(b)(1) (emphasis added). "While the scope of discovery is generally broad, it is not without its bounds." Carpenter Tech. Corp. v. Armco, Inc., Civ. No. 90-0740, 1990 WL 61180, at *3 (E.D. Pa. May 8, 1990) (citing McClain v. Mack Trucks, Inc., 85 F.R.D. 53, 57 (E.D. Pa. 1979)). "Perhaps the single most important word in Rule 26(b)(1) is 'relevant' because it is only relevant matter than may be the subject of discovery." 8 C. Wright, A. Miller, & R. Marcus, Federal Practice & Procedure § 2008, at 99 (2d ed. 1994). Although the discovery rules are generally to be accorded a broad and liberal treatment, courts are required to strictly and firmly apply

limitations to require that information sought be "relevant" to the subject matter of the case at hand:

> But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action." To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process.

Herbert v. Lando, 441 U.S. 153, 177 (1979) (emphasis added).

"[P]ractical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might become so." In re Surety Ass'n of Am., 388 F.2d 412, 414 (2d Cir. 1967) (quoting Broadway & 96th St. Realty Co. v. Loew's Inc., 21 F.R.D. 347, 352 (S.D.N.Y. 1958)); see Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (discovery of "information that has no bearing on the case" should be disallowed); Upsher-Smith Labs., Inc. v. Mylan Labs., Inc., 944 F. Supp. 1411, 1444 (D. Minn. 1996) (precluding search into "shadow zones of relevancy" in complex litigation); In re Fontaine, 402 F. Supp. 1219, 1221 (S.D.N.Y. 1975) (same). A party asserting that it is entitled to sweeping discovery, as Dairyland has already done in this case, should be required to show reasonable grounds for belief that all of the records sought are relevant to the subject matter involved in the pending action. See, e.g., International Graphics, Div. of Moore Bus. Forms, Inc. v. United States, 3 Cl. Ct. 715, 718-19 (1983); Regent Nat'l Bank v. Dealers Choice Automotive Planning, Inc., 1998 WL 961377 (E.D. Pa. 1998); McClain v. Mack Trucks, Inc., 85 F.R.D. 53,

57 (E.D. Pa. 1979). "[W]here the relevance of information sought in discovery proceedings is questionable . . . discovery of the requested information will be denied." Flynn v. Church of Scientology, 116 F.R.D. 1, 3 (D. Mass. 1986) (quoting 4 J. Moore, Moore's Federal Practice 26-431). Here, Dairyland has no basis for suggesting that the terms of possible contracts that DOE might enter in the future are somehow relevant to the Court's consideration of the terms of Dairyland's 1983 contract or DOE's performance under that contract. For these reasons alone, Dairyland's request for the production of these 142 documents should be denied.

2. The Requested Documents Are Privileged

a. Draft Contract Documents

Dairyland challenges the Government's assertion of attorney-client privilege over 73 draft contract documents relating to new nuclear reactors on the following grounds: (1) the Government's privilege log "does not list an attorney as an author or addressee" for any of the documents; and (2) the Government's privilege claims are "inconsistent with the privilege assertions it has previously made" with regard to other documents involving spent fuel disposal contracts for new nuclear reactors.[6] PBR27. Dairyland's challenge is without merit. While we cannot practically reproduce here each of the privilege log entries at issue, the following is illustrative of those provided for these documents in our September 17, 2007, privilege log:

S997

DRAFT SPENT FUEL DISPOSAL CONTRACTS FOR NEW NUCLEAR REACTORS, REFLECTING LEGAL ADVICE AND ANALYSIS OF

[6] Given the quantity of documents at issue here, the Government has not undertaken to identify them all in this space. Instead, we refer the Court to Dairyland's motion to compel for a particularized listing of the challenged documents in this category, as well as the one immediately hereafter.

> COUNSEL; LEGAL ADVICE GIVEN BY DOE-OGC AS PART OF ITS RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE; DOCUMENT CONTAINS ANNOTATIONS OF CHANGES MADE BY COUNSEL REFLECTING LEGAL ANALYSIS AND REVIEW; BEARS LEGEND "ATTORNEY-CLIENT PRIVILEGE/PREPARED AT THE DIRECTION OF AN ATTORNEY."
> AC ATTORNEYS: J. TAYLOR, C. REYNOLDS (DOE-OGC).

As demonstrated by this representative description and confirmed by the accompanying declaration of Jane Taylor, DOE's Office of General Counsel and other Government attorneys provided, and continue to provide, legal advice and analysis to DOE on the subject of new reactor contracts. A.7. This privileged information is incorporated in the evolving draft contracts, which evidence throughout the advice and analysis provided by DOE's attorneys at its request. Id. at 8. Indeed, DOE and its attorneys have consistently used these draft documents as vehicles by which to communicate continuing legal advice regarding the development of new reactor contracts. Id. Moreover, as evidenced by the many SNF cases pending before this Court arising from the current contract, the prospect of litigation has loomed large during this initiative, necessitating direct involvement by DOE's litigation counsel in preparing and revising the contracts' text. Id. at A.12. Throughout the development of the draft contracts, DOE's attorneys have not acted as mere scriveners but, rather, have provided critical privileged advice and analysis. Id. at A.9. This privileged information is contained in the documents themselves, which have never been disclosed to the public or in any litigation. Id. These documents, therefore, underscore the very purpose of the Office of General Counsel: to provide legal advice, analysis, and services to DOE. Id. at A.11. Dairyland is not entitled to these privileged materials. See Rohm and Haas Co. v. Brotech Corp., 815 F. Supp. 793, 796-97 (D.Del. 1993), aff'd, 19 F.3d 41 (Fed. Cir. 1994) (finding draft patent application privileged on ground that "[d]rafts often contain . . . proposed material to be included, suggested additions and deletions,

and comments on the contents, all of which are intended to be considered confidential between attorney and client and not intended for public disclosure."); Schenet v. Anderson, 678 F. Supp. 1280, 1283-84 (E.D. Mich. 1988) (holding draft tender offer prepared by counsel privileged, and opining that "[p]reliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege.").

Moreover, as reflected in our privilege log, the Government has identified the specific attorneys involved in preparing these privileged communications. Specifically, Ms. Taylor and Cathy Reynolds of DOE's Office of General Counsel have been integrally involved in this project, as have many other Government lawyers, including the General Counsel of DOE, David Hill; the Deputy General Counsel for Environment and Nuclear Programs, Mary Neumayr; the Assistant General Counsel for Civilian Nuclear Programs, Ben McRae; and DOE attorney Martha Crosland. A.13. Therefore, once again, Dairyland's contention that the Government has failed to list an attorney in the author and addressee columns of the privilege log corresponding to these documents is unavailing. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17.

Nor is it of consequence that Dairyland believes that the Government's privilege claims are "inconsistent" with its production of certain other documents not at issue in this litigation. As Dairyland notes, in May 2007, Government counsel asserted the deliberative process privilege during the deposition of David Zabransky, directing that he not answer any questions regarding the topic of possible new reactor contracts. Because of the invocation of deliberative process, which precluded all testimony on this subject, counsel for Dairyland did not ask further questions regarding advice that Mr. Zabransky may have received from counsel or documents provided by counsel. Had Dairyland proceeded to ask such questions, they would have elicited

an objection by the Government and an instruction to Mr. Zabransky not to answer on the basis of attorney-client privilege. Therefore, contrary to Dairyland's allegation, the Government has not waived its opportunity to assert attorney-client privilege over these documents, or, with regard to Mr. Zabransky's testimony, the specific advice that he may have sought or been provided regarding these documents.

Finally, as with most of Dairyland's other challenges to documents on the Government's September 17, 2007, privilege log, Dairyland asserts in the alternative that the Government should be required to produce in redacted form all of the documents in this category. However, as made clear by the above discussion and Ms. Taylor's accompanying declaration, these documents are comprised wholly of privileged material prepared by counsel concerning the legal substance of new reactor contracts. A.11. Therefore, there would be no utility to the exercise of redacting the documents, as we would be forced delete the entirety of their contents.

b. <u>Memoranda, Emails, and Notes Concerning Draft Contracts</u>

Dairyland challenges the Government's assertion of attorney-client privilege over 69 additional documents relating to new nuclear reactor contracts on the following grounds: (1) the Government "has not identified an attorney as an author or addressee for any of these documents, or, for that matter, any author or addressee." PBR28. Dairyland's challenge is unfounded. Again, because of space limitations, we refrain from reproducing here each of the 69 privilege log entries at issue. However, the following is illustrative of the descriptions provided for these documents in our September 17, 2007, privilege log:

<u>419</u>

MEMORANDUM REFLECTING LEGAL ADVICE OF COUNSEL FOR DOE CONCERNING POTENTIAL OPTIONS FOR THE PROMULGATION OF SPENT FUEL DISPOSAL CONTRACTS FOR NEW NUCLEAR REACTORS,

WITH MARGINALIA; ADVICE GIVEN BY DOE-OGC AS PART OF ITS RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE; BEARS LEGEND "PRIVILEGED/PREDECISIONAL DRAFT/ATTORNEY-CLIENT PRIVILEGE."
AC ATTORNEYS: J. TAYLOR, C. REYNOLDS (DOE-OGC).

As with the above category of materials, the Government's descriptions of the additional documents relating to draft new reactor contracts provide more than an adequate basis for sustaining the Government's assertions. DOE's Office of General Counsel and other Government attorneys rendered legal advice in regard to every aspect of developing the possible new reactor contracts, spawning a host of confidential privileged communications relating to this subject. A.10. As described in the privilege log entries associated with this category of documents, the Government has, in every instance possible, identified the particular attorneys responsible for the legal content contained throughout these challenged documents. It is also clear from the documents' descriptions that they all stemmed from requests by DOE for legal advice and services to its attorneys. Id. at 10. As a result, the documents constitute core privileged communications. See Rohm and Haas, 815 F. Supp. at 796-97; In re Arnold & McDowell, 566 F. Supp. 752, 754 (D.C. Minn. 1983) (finding correspondence seeking legal advice from attorney relating to real estate transaction protected by attorney-client privilege).

Contrary to Dairyland's assertion, the absence of names in the author and addressee columns of the Government's privilege log corresponding to these documents does not overcome the Government's proper assertions of privilege. See RCFC 26(b)(5); Yankee Atomic, 54 Fed. Cl. at 309, 316-17. Moreover, by their very nature, certain of these communications, such as whitepapers, do not evidence any addressees. This does not mean that these documents were without authors or recipients at DOE, or that they do not contain legal advice provided by counsel. To the contrary, the information memorialized in the documents comprising this

category, all of which contain and reflect the legal advice and analysis of counsel relating to the potential development of new reactor contracts, were communicated by and between DOE and its attorneys. A.10. Finally, as above, given the nature of the documents, any effort to redact them would prove futile, resulting merely in the excision of all substantive content.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny Dairyland's motion to compel as it pertains to documents withheld by the Government on the basis of the attorney-client privilege and attorney work product. In the alternative, should the Court determine to order the production of any of the documents at issue, the Government requests that the Court restrict the production of such documents for use in this case only.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

s/Russell A. Shultis by s/Scott Slater
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 23, 2007

Attorneys for Defendant

# APPENDIX

INDEX TO THE APPENDIX

Document Page

Representative Excerpt from Dairyland's October 10, 2006 Privilege Log . . . . . . . . . . . . . . . . . . 1

Representative Excerpt from Dairyland's November 6, 2006 Privilege Log . . . . . . . . . . . . . . . . 11

Dairyland's January 25, 2007 Privilege Log . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Declaration of Jane K. Taylor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23