IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, AND CROSS-MOTION FOR A PROTECTIVE ORDER

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
RUSSELL A. SHULTIS
U.S. Department of Justice
Civil Division
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel
PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 24, 2007

Attorneys for Defendant

Table of Contents

BACKGROUND . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . 8

DISCUSSION . . . . . . . . . . 9

I. BECAUSE THE SUBJECT DOCUMENTS ARE PRESUMPTIVELY PROTECTED PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, DAIRYLAND HAS THE BURDEN TO MAKE A THRESHOLD SHOWING OF HEIGHTENED NEED IN ORDER TO SHIFT THE BURDEN UPON THE WHITE HOUSE TO FORMALLY INVOKE THE PRIVILEGE . . . . . . . . . . 9

II. BECAUSE DAIRYLAND HAS FAILED TO SATISFY ITS THRESHOLD REQUIREMENT OF DEMONSTRATING A PARTICULARIZED NEED FOR THE SUBJECT DOCUMENTS, DAIRYLAND'S MOTION TO COMPEL FAILS, AND THE WHITE HOUSE OTHERWISE SHOULD NOT BE REQUIRED TO UNDERTAKE THE SIGNIFICANT BURDEN OF FORMALLY INVOKING THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE . . . . . . . . . . 14

A. Dairyland's Failure To Meet Its Burden Bars Production . . . . . . . . . . 14

B. Even Had It Tried, Dairyland Could Not Have Satisfied Its Burden . . . . . . . . . . 15

III. TO THE EXTENT THAT THE COURT FINDS THAT DAIRYLAND MET ITS THRESHOLD BURDEN TO PURSUANT TO CHENEY, THE WHITE HOUSE IS ENTITLED TO COME FORWARD AT THAT TIME WITH A FORMAL INVOCATION OF PRESIDENTIAL COMMUNICATIONS PRIVILEGE . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## CASES

Cheney v. United States District Court for the District of Columbia,
542 U.S. 367 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Cobell v. Norton,
213 F.R.D. 1 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Export-Import Bank of the United States v. Asia Pulp & Paper Co.,
232 F.R.D. 103 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Herald Association, Inc. v. Dean,
816 A.2d 469 (Vt. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SCM Corp. v. United States,
473 F. Supp. 791 (Cust. Ct. 1979), quoted in In re Sealed Case, 121 F.3d at 741 . 20, 21

Pacific Gas & Electric Co. v. United States,
Nos. 04-74C (Fed. Cl.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pierson v. United States,
428 F. Supp. 384 (D. Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Resolution Trust Corp. v. Diamond,
137 F.R.D. 634 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Scott Paper Co. v. United States,
943 F. Supp. 489 (E.D. Penn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Sun Oil Co. v. United States,
514 F.2d 1020 (Ct. Cl. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

United States v. Nixon,
418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 12

United States v. Zolin,

491 U.S. 554 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Yankee Atomic Electric Company v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16, 17, 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, AND CROSS-MOTION FOR A PROTECTIVE ORDER

Defendant, the United States, respectfully responds to the "Motion To Compel Production Of 'Presidential Communications' Documents," which the plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on September 18, 2007, and the corresponding "Statement Of Need For Documents Withheld On Claims Of Presidential Communications Privilege," which Dairyland filed on October 18, 2007, in response to the Court's October 17, 2007 order. In addition, the Government respectfully requests that the Court enter a protective order prohibiting Dairyland from seeking to compel the production of five subject documents absent a ruling by the Court that Dairyland has met its initial burdens of heightened need, pursuant to the Supreme Court's ruling in Cheney v. United States District Court for the District of Columbia, 542 U.S. 367 (2004), and related case law. As discussed in greater detail below, because Dairyland has failed to meet the heightened standards of relevance, particularized need, and admissibility concerning the five documents at issue in Dairyland's September 18, 2007 motion to compel, pursuant to Cheney v. United States, 542 U.S. 367, the burden has not shifted to the White House to undertake the time-consuming process of formally invoking the presidential

communications privilege over the subject documents, and Dairyland's motion to compel their production should be denied.

## BACKGROUND

This case involves a damages claim by Dairyland for $54.2 million in costs that it allegedly incurred at its La Crosse Boiling Water Reactor ("LACBWR") nuclear power plant as a result of the Government's delay in accepting spent nuclear fuel ("SNF") from commercial nuclear reactors on January 31, 1998, pursuant to the "Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste" (the "Standard Contract") between the Department of Energy ("DOE") and Dairyland. The majority of the damages for which Dairyland seeks recovery in this action relate to the operations and maintenance costs ("O&M") that Dairyland allegedly has incurred in connection with the maintenance of SNF at LACBWR's onsite wet storage pool. A3-4 .[1] The remaining portion of Dairyland's damages claim consists principally of Dairyland's demand for reimbursement from the Government for approximately $11 million in costs that Dairyland's subsidiary, Genoa Fuel Tech, Inc., has allegedly contributed to date in connection with the development of Private Fuel Storage, LLC ("PFS") – a for-profit business enterprise that certain members of the energy industry formed in the mid-1990s in an effort to develop a private (that is, non-governmental) storage facility for the permanent storage of SNF. A4; <u>see</u> Defendant's Proposed Findings of Uncontroverted Fact ("DPFUF") , dated Aug. 3, 2007, DPFUF ¶¶ 4 -7.

As the Court is well aware, since the commencement of this lawsuit in 2004, the Government has produced an extraordinary number of documents to Dairyland. In fact, even

---

[1] "A__." refers to a page in the appendix that is attached to this brief.

before the commencement of discovery in this matter, the Government already had made available to Dairyland and its counsel approximately one million pages of documents that the Government had previously released to the SNF plaintiffs during and after the course of the Court's coordinated discovery proceedings. Subsequently, in the months following the Court's February 5, 2007 discovery order, the United States produced to Dairyland approximately one million additional pages in response to Dairyland's discovery requests. As a consequence, during the course of this litigation, the United States has produced to Dairyland more than twice the number of documents that the Government had previously produced to all the other spent nuclear fuel plaintiffs combined during the course of the past eight years of lenghty and protracted SNF litigation.

With regard to the five documents at issue in Dairyland's September 18, 2007 motion to compel the production of documents withheld pursuant to the presidential communications privilege, the Government initially identified the subject documents – which Dairyland references with the numbers E154, E167, E170, E171, and E178 – as subject to both the presidential communications and deliberative process privileges in the privilege log that the Government first made available to all SNF plaintiffs in May 2002.[2] A13-16. The subject documents, which range in date from May 1995 to January 1997, reflect communications between the President's staff and either various high-ranking officials at DOE or elsewhere within the Executive Branch in connection with certain legislative proposals that were then pending in Congress concerning the development of an interim storage facility, some of which

[2] E154 is Bates-stamped HQR0290177 – 190. E167 is Bates-stamped HQR0320199 – 206; E170 is Bates-stamped HQR0320221 – 227; E171 is Bates-stamped HQR0320231 – 245; E178 is Bates stamped HQR0421452 – 464.

were sponsored by the nuclear utility industry, for the temporary emplacement of SNF pending the ultimate opening of the Yucca Mountain as a permanent SNF repository. These documents were collected in response to a document production request propounded by the utility plaintiffs in the coordinated discovery proceedings which sought "[a]ll documents relating to any federal legislative proposal initiated since passage of the NWPA for federal storage or disposal of SNF from civilian nuclear reactors, insofar as such documents, or any portion thereof, relate to Schedule Issues." A8.

Because none of these proposed bills were ever enacted into law, and the proposed legislation otherwise did not affect in any way the terms of the NWPA or the contractual obligations set forth in the Standard Contract, the Government objected to this production request upon the grounds of relevance, noting that the Court in these cases will assess damages pursuant to the terms of the Standard Contract – the source of the legal obligations at issue in these cases – rather than "legislative proposals that have not been enacted and, thus, have no effect upon the Standard Contract." Id. (citing the Government's response to Document Request No. 38). None of the plaintiffs in the spent nuclear fuel cases, including those in which counsel for Dairyland represented other plaintiffs that have proceeded through trial and final judgment, had ever challenged the Government's assertion of the presidential communications privilege over the subject documents prior to Dairyland's recent challenge.[3]

---

[3] In Pacific Gas & Electric Co. v. United States, Nos. 04-74C & -75C (Fed. Cl.), the same counsel that represents Dairyland filed a motion to compel the same five documents as those at issue here, challenging the deliberative process privilege claim over those documents. The plaintiff in PG&E never challenged the presidential communications privilege with regard to those five documents, and their contents were never produced to the plaintiff in PG&E because they were redacted in their entirety when they were ordered produced (as they were similarly produced in this case). Counsel ultimately proceeded to participate in trial and obtain a final judgment without the need for those documents.

On January 18, 2007, Dairyland moved to compel the production of 281 documents withheld pursuant to the deliberative process and attorney-client privileges. Although Dairyland's motion encompassed the five documents presently at issue, and notwithstanding the fact that the Government's assertion of presidential communications privilege over the five subject documents was indicated upon the Government's privilege log – which has been available to the SNF plaintiffs, including Dairyland and its counsel, since May 2002 – Dairyland failed to challenge the Government's assertion of the presidential communications privilege. See Plaintiff's Motion To Compel, dated Jan. 18, 2007, at 1. By order dated June 29, 2007, the Court subsequently determined that, although the documents were covered by the deliberative process privilege, Dairyland had demonstrated sufficient need in this instance to overcome the Government's interest in protecting the documents from disclosure pursuant to the deliberative process privilege.

Nevertheless, because the United States had also invoked the unchallenged presidential communications privilege over these documents, we produced the requested documents only in redacted form to eliminate information subject to that privilege. See, e.g., In re Sealed Case, 121 F.3d 729, 745 (D.C. Cir. 1997) (presidential communications privilege applies to documents in their entirety). Subsequently, by letter dated August 20, 2007, counsel for Dairyland informed us for the first time of a challenge to our presidential communications privilege claims over these five documents, well after the close of fact discovery in this case.[4] Dairyland then filed its motion to compel these five documents on September 18, 2007.

---

[4] Subsequently, by order dated October 22, 2007, the Court modified its scheduling order for this case and moved the discovery cut-off date to January 15, 2008.

Dairyland, in its September 18, 2007 motion, failed to articulate how (if at all) its purported need for the subject documents surmounts the heightened burden that it must satisfy to overcome the assertion of presidential communications privilege pursuant to Cheney. The Government filed a motion on October 5, 2007, in which we asked the Court to enter an order requiring Dairyland to first meet the burden, pursuant to Cheney, to demonstrate a particularized need for the subject documents, prior to requiring the White House to undertake the burden "of invoking executive privilege with specificity or making particular objections to discovery on a line by line basis in order to safeguard executive functions and maintain the separation of powers."[5] Cheney, 542 U.S. at 383, 388.

Because the Court's October 9, 2007 order in response to our October 4, 2007 motion did not address the Government's request for a showing of particularized need, the Government filed a motion for clarification on October 12, 2007, in which we reiterated our request that Dairyland first be required to meet the initial burden to satisfy the heightened showing of need required by Cheney prior to shifting the burden upon the White House to formally respond to Dairyland's motion to compel. Thereafter, on October 17, 2007, the Court issued an order directing Dairyland to submit a "statement of need" for the five subject documents on or before October 19, 2007. In its order, the Court adopted the two-part test utilized by the United States Court of Appeals for the District of Columbia Circuit in In re Sealed Case, finding that Dairyland must show that (1) each discrete group of the subject materials involves "important evidence;" and

[5] The Government's motion for a showing of particularized need for the subject documents was included within our reply brief in support of our October 4, 2007 motion for an enlargement of time within which to file our response to plaintiff's September 18, 2007 motion to compel.

(2) the relevant information from the subject documents are not available "with due diligence elsewhere." Order, dated October 17, 2007, at 1 (citing In re Sealed Case, 121 F.3d at 754). However, the Court's October 17, 2007 order further required the Government to submit its response to Dairyland's motion to compel production of the five subject documents on or before October 24, 2007, without any indication that the Court would rule upon Dairyland's purported showing of need before the White House would need to act.[6]

In response to the Court's October 17, 2007 order, Dairyland filed its "Statement Of Need For Documents Withheld On Claims Of Presidential Communications Privilege" on October 18, 2007. In its filing, however, Dairyland fails to meet the heightened relevance, admissibility, and particularity standards articulated by Cheney. Instead, Dairyland simply argues that the subject documents are highly relevant to the Court's determination of the "schedule and rate of SNF acceptance" under the Standard Contract, "priority acceptance for shutdown reactors in general and Dairyland in particular," and the reasonableness of Dairyland's claim for the costs incurred in connection with exploring the PFS business venture, similar to the arguments that Dairyland made to overcome the Government's assertion of deliberative process privilege in its January 18, 2007 motion. See Statement Of Need, October 18, 2007, at 2; Def. Mot. To Compel, Jan. 18, 2007, at 23 (asserting that documents pertaining to "acceptance rights" and "interim storage" issues are sufficiently relevant to overcome the DOE's assertion of deliberative process privilege). Dairyland merely asserts that the evidence purportedly contained

[6] In addition, pursuant to Cheney, Dairyland is required to demonstrate that the documents at issue meet exacting standards of "admissibility" and "specificity." Because Dairyland's October 18, 2007 "Statement of Need" does not address these threshold standards, the Court should deny its motion to compel. Cheney, 542 U.S. at 386.

in these documents is not available elsewhere, but makes no showing that it has attempted to investigate its assertion.

## SUMMARY OF THE ARGUMENT

By seeking to compel production of these documents, Dairyland would have the Court extend the Government's already massive document production efforts – which already has encompassed the participation of scores of Government program offices, laboratories, and research installations from around the country – to intrude upon the confidential deliberations of the President and his senior advisors within the White House. The Supreme Court has recognized that the White House is unlike other litigants and has emphasized the necessity of protecting the Executive Branch at its highest level from vexatious litigation that might district it from the energetic performance of its constitutional duties. See Cheney v. United States, 542 U.S. at 382.

As this Court has recognized in this case, in light of the President's unique constitutional role, the presidential communications privilege affords greater protection against disclosure and is more difficult to surmount than the deliberative process privilege. See Order, dated October 17, 2007, at 1 (noting that presidential communications privilege presents a more "difficult hurdle" for a party to overcome than the deliberative process privilege); In re Sealed Case, 121 F.3d at 746 (presidential communications privilege "affords greater protection against disclosure" and is "more difficult to surmount" than the deliberative process privilege). Owing to these considerations, parties seeking discovery from offices within the White House in close proximity to the President, as here, must demonstrate a heightened and particularized need for the information that they seek. See Cheney, 542 U.S. at 382. Such a demonstration of need by

the plaintiff should include a showing that the subject documents meet "exacting," or heightened, standards of "relevance," "admissibility," and "specificity." See Cheney, 942 U.S. at 386; see also In re Sealed Case, 121 F.3d at 746 ("[A] party seeking to overcome the presidential privilege [ ] must always provide a focused demonstration of need.").

Dairyland has failed to meet its initial burden of demonstrating the "exacting" standards of heightened need for the subject documents, pursuant to the Supreme Court's ruling in Cheney. As a consequence, the Court should not impose upon the White House the burden of formally invoking the privilege. To the extent, however, that the Court finds that Dairyland has met its threshold burden, pursuant to Cheney, the Court should allow the White House to come forward with a formal declaration to perfect the assertion of presidential communications privilege.

## DISCUSSION

### I. BECAUSE THE SUBJECT DOCUMENTS ARE PRESUMPTIVELY PROTECTED PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, DAIRYLAND HAS THE BURDEN TO MAKE A THRESHOLD SHOWING OF HEIGHTENED NEED IN ORDER TO SHIFT THE BURDEN UPON THE WHITE HOUSE TO FORMALLY INVOKE THE PRIVILEGE

In its September 18, 2007 motion to compel, Dairyland erroneously asserts that the subject documents should be released by virtue of the Court's prior ruling that Dairyland had sufficiently overcome the assertion of deliberative process privilege over the subject documents. Dairyland's position, however, is incorrect as a matter of law and fails to address the substantial protections afforded presidential communications, particularly in the context of discovery in civil cases. The applicable standard for the Court to apply is that found in the Supreme Court's decision in Cheney.

In United States v. Nixon, 418 U.S. 683 (1974), the Supreme Court held that there is "a presumptive privilege for Presidential communications," founded upon "a President's generalized interest in confidentiality." Id. at 708, 711. This privilege is necessary, the Court reasoned, to ensure that the "President and those who assist him [are] free to explore alternatives in the process of shaping policies and making decisions . . . in a way many would be unwilling to express except privately." Id. at 708; accord In re Sealed Case, 121 F.3d at 750 (D.C. Cir. 1997) ("If presidential advisers must assume they will be held to account publicly for all approaches that were advanced, considered but ultimately rejected, they will almost inevitably be inclined to avoid serious consideration of novel or controversial approaches to presidential problems."). The Court observed that the presidential communications privilege is "inextricably rooted in the separation of powers under the Constitution," 418 U.S. at 708, and "flow[s] from the nature of [the President's] enumerated powers." Id. at 705.

Designed to protect the confidentiality of communications between and among the President and those who assist him, the presidential communications privilege is distinct from the deliberative process and other privileges. See Nixon, 418 U.S. at 708; In re Sealed Case, 121 F.3d at 741; see also Yankee Atomic Electric Company v. United States, 54 Fed. Cl. 306, 310 n.2 (2002) (noting difference in protection afforded by the presidential communications and deliberative process privileges). The Supreme Court has long recognized that special considerations apply when a party seeks information from the President or his close advisors in the White House. See, e.g., Cheney, 542 U.S. at 382 ("We have, in short, long recognized the 'unique position in the constitutional scheme' that [the Office of the President] occupies.") (citation omitted; internal quotation marks omitted); see id. at 385 ("The [Supreme] Court has

held, on more than one occasion, that '[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery,' . . . and that the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it . . ..") (citations omitted).

These principles do not mean that the President and his advisors are above the law or immune to judicial process. "Rather, they simply acknowledge that the public interest requires that a coequal branch of Government 'afford Presidential confidentiality the greatest protection consistent with the fair administration of justice,' . . . and give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." Id. at 382.

Pursuant to these separation-of-powers considerations, the Supreme Court in Cheney expressly rejected the notion that the Executive Branch at its highest level shall bear the initial burden "of invoking executive privilege with specificity or making particular objections to discovery on a line by line basis in order to safeguard executive functions and maintain the separation of powers. Id. at 383, 388. The Court noted regarding this issue that the criminal subpoenas at issue in Nixon, 418 U.S. 683 (1974), "were [first] required to satisfy exacting standards of '(1) relevancy; (2) admissibility; (3) specificity.'" Cheney, 542 U.S. at 386. This process served "as an important safeguard against unnecessary intrusion into the operation of the Office of the President," id. at 387, and was the means by which "the party requesting the information – the special prosecutor – had satisfied his burden of showing the propriety of the [subpoena] requests." Id. at 388.

These "exacting standards" apply *a fortiori* in this case where plaintiffs are seeking *civil* discovery from the Executive Branch at its highest level. As noted by the Supreme Court in Cheney, "[t]he need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in *Nixon*." Id. at 384. Because it is a "'primary constitutional duty of the Judicial Branch . . . to do justice in criminal prosecutions,'" the withholding of information "from a tribunal in an ongoing criminal case when the information is necessary to the court in carrying out its tasks 'conflict[s] with the function of the courts under Article III.'" Id. (citations omitted). "Such an impairment of the 'essential functions of [another] branch' . . . is impermissible." Id. (citation omitted). In contrast, the withholding of information in a civil case "does not hamper another branch's ability to perform its 'essential functions' in quite the same way." Id.

Moreover, "[a] party's need for information is only one facet of the problem." Id. at 385. The burden imposed on the White House by discovery orders is an "important factor" to be considered by the courts owing to the special deference and "'[t]he high respect that is owed to the office of the Chief Executive." Id. The courts must also be specially cognizant of the fact that, owing to the high visibility of the Office of the President, it is an easily identifiable target for civil suits and corresponding discovery orders. Id. at 386. In contrast to the criminal justice system, where "there are various constraints, albeit imperfect, to filter out insubstantial legal claims, . . . there are no analogous checks in the civil discovery process . . .." Id.[7]

---

[7] Notwithstanding Cheney, Dairyland cites Sun Oil Co. v. United States, 514 F.2d 1020 (Ct. Cl. 1975), in support of the proposition that it need not meet the initial burden of demonstrating a heightened, particularized need for the subject documents before shifting the burden to the White House to support formally the presidential communications privilege. However, unlike this case, Sun Oil – which was decided over 30 years ago, well before the Supreme Court's ruling in Cheney

In sum, in light of the President's unique constitutional role, the presidential communications privilege "affords greater protection against disclosure" and is "more difficult to surmount" than the deliberative process privilege. In re Sealed Case, 121 F.3d at 746. Hence, the presidential communications privilege applies to documents in their entirety, and it covers final and post-decisional materials as well as pre-deliberative ones. See id. at 745.[8] Further, the Supreme Court in Cheney expressly rejected the notion that the Executive Branch at its highest level shall bear the initial burden of invoking the privilege with specificity or making particular objections to discovery on a line by line basis in order to safeguard executive functions and maintain the separation of powers. Id. at 388. Thus, a party seeking to challenge the assertion of presidential communications privilege bears the initial burden to demonstrate "exacting standards of '(1) relevancy; (2) admissibility; [and] (3) specificity'" prior to requiring the White House formally to support the assertion of presidential communications Cheney, 542 U.S. at

---

– did not involve a claim of presidential communications privilege by the White House. Rather, in Sun Oil, the Court of Claims was faced with the issue of whether a former president in his personal capacity as a private citizen could maintain a privilege as to certain papers sought in discovery by the plaintiff. As the Court of Claims noted, no claim of "executive privilege" was being asserted by the Government. Sun Oil, 514 F.2d at 1021 n.1. Without ruling on the issue of whether a heightened degree of privilege applied to a former president in his personal capacity, the Court of Claims nevertheless ordered the trial court to review the subject documents in camera to determine whether the documents were otherwise protected by privilege prior to releasing them in discovery. See id. at 1025. Here, however, because the United States has objected to disclosure on the grounds of the presidential communications privilege (unlike in Sun Oil), the subject documents are presumptively privileged, and, pursuant to Cheney, Dairyland is required to meet the "exacting standards" of need, relevance, and admissibility before requiring the White House to come forward with a formal declaration in support of the privilege. Cheney, 542 U.S. at 386.

[8] To the extent that Dairyland argues that the presidential communications privilege "is not a proper basis" for the Government's decision to produce wholly redacted versions of the subject documents (see Def. Mot. at 2-3), such a position is misplaced as a matter of law. See In re Sealed Case, 121 F.3d at 746 (presidential communications privilege applies to documents in their entirety, not just to the deliberative portions of them).

386; see also In re Sealed Case, 121 F.3d at 745 (a party seeking to overcome the Government's assertion of the presidential communications further bears the burden of demonstrating (1) proof that "each discrete group of the subpoenaed materials likely contains important evidence" and (2) proof that the "evidence is not available with due diligence elsewhere)."[9]

## II. BECAUSE DAIRYLAND HAS FAILED TO SATISFY ITS THRESHOLD REQUIREMENT OF DEMONSTRATING A PARTICULARIZED NEED FOR THE SUBJECT DOCUMENTS, DAIRYLAND'S MOTION TO COMPEL FAILS, AND THE WHITE HOUSE OTHERWISE SHOULD NOT BE REQUIRED TO UNDERTAKE THE SIGNIFICANT BURDEN OF FORMALLY INVOKING THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

### A. Dairyland's Failure To Meet Its Burden Bars Production

As discussed previously, in its order, the Court adopted the two-part test utilized by the United States Court of Appeals for the District of Columbia Circuit in In re Sealed Case, finding that Dairyland must make an initial showing that (1) each discrete group of the subject materials involves "important evidence;" and (2) subject documents are not available "with due diligence elsewhere." Order, dated October 17, 2007, at 1 (citing In re Sealed Case, 121 F.3d at 754). Because, however, Dairyland's October 18, 2007 "Statement Of Need" failed to present sufficient information to comply with the Court's order and otherwise did not satisfy the "exacting standards" of need that are required pursuant to Cheney, Dairyland has not met its burden in support of its challenge to the assertion of presidential communications privilege.

Although the Court's October 17, 2007 order is silent with regard to the procedural requirements outlined by the Supreme Court in Cheney, namely the tripartite showing of heightened "relevance," admissibility," and "specificity," Cheney provides the appropriate

---

[9] Pursuant to Cheney, the White House is not required to come forward to present its formal invocation of the privilege by means of affidavit until the plaintiff satisfies its initial showing of particularized need. Cheney, 542 U.S. at 383, 388.

standard to be applied. Cheney requires that Dairyland satisfy three "exacting standards" prior to requiring the White House to undertake the burden to formally invoke the presidential communications privilege by means of affidavit. Because Dairyland's October 18, 2007 "Statement of Need" does not address the Cheney tripartite test, the Court should deny its motion to compel for failure to meet the requirements of Cheney. Id. at 386.

B. Even Had It Tried, Dairyland Could Not Have Satisfied Its Burden

Notwithstanding Dairyland's failure to address the applicability of Cheney in its "Statement of Need," Dairyland would be unable to meet the standards set forth in either Cheney or In re Sealed Case. Cheney, 542 U.S. at 386; In re Sealed Case, 121 F.3d at 746 (requires a showing the evidence sought must be "directly relevant to issues that are expected to be central at trial." ).

Dairyland asserts that the subject documents are highly relevant to the following specific issues in dispute in this litigation: the "schedule and rate of SNF acceptance" under the Standard Contract, "priority acceptance for shutdown reactors in general and Dairyland in particular," and the reasonableness of Dairyland's claim for the costs incurred in connection with exploring the PFS business venture. Statement Of Need, at 2. As an initial matter, the five documents bear little (if any) relation to these issues. Dairyland has provided no explanation as to how, if at all, the White House's consideration of legislative proposals that were pending in 1995-1997 time frame – which occurred after DOE's announcement in the Federal Register that it did not expect to perform timely under the Standard Contract on January 31, 1998, see Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1372 (Fed. Cir. 2005) – could in any way inform the Court concerning the extent of DOE's contractual obligations under the Standard Contract (which was executed 12 years earlier in 1983) to accept delivery of SNF at a particular "rate of acceptance."

Similarly, Dairyland fails to provide any explanation as to how the President's consideration of interim storage proposals following the Government's announcement that it expected to experience a delay in SNF acceptance could bear any relevance to the reasonableness of Dairyland's alleged damages in connection with the decision to invest in PFS, a private business enterprise that, since the mid-1990s, has been engaged in an effort to open a private SNF storage facility. Whether such PFS-related investments were in any sense attributable to DOE's partial breach of the Standard Contract or otherwise "foreseeable" to the Government at the time of contract formation are distinct issues that do not depend upon the White House's deliberations in the 1995-1997 time frame with regard to then-pending legislative proposals in Congress concerning the possibility of a Federal interim storage program.

Dairyland, in its September 18, 2007 motion to compel, argued that the subject documents should be released by virtue of the Court's prior ruling that Dairyland had sufficiently overcome the assertion of deliberative process privilege over the subject documents. As the relevant case law makes clear, Dairyland cannot merely rest upon the Court's prior ruling in the context of Dairyland's prior challenge concerning the Government's assertion of deliberative process, as the presidential communications privilege "affords greater protection against disclosure" and is "more difficult to surmount" than the deliberative process privilege. In re Sealed Case, 121 F.3d 729, 746 (D.C. Cir. 1997); see Yankee Atomic, 54 Fed. Cl. at 310 n.2 (noting difference in protection afforded by the presidential communications and deliberative process privileges). The Court must determine, in light of this heightened standard, whether the documents that Dairyland seeks are truly necessary to the resolution of the issues to be decided by the Court in this case.

Dairyland has made no showing with regard to the requirements of admissibility and specificity set forth in Cheney. With regard to the second prong of the In re Sealed Case test – whether the evidence is available "with due diligence elsewhere" – Dairyland's "Statement of Need" is also lacking. Pursuant to In re Sealed Case, this component requires a showing that the plaintiff has engaged in "efforts . . . to determine whether sufficient evidence can be obtained elsewhere, and the [party seeking discovery] should be prepared to detail these efforts and explain why evidence covered by the is still needed." Id. at 755 (emphasis added).

Here, Dairyland has made no showing in its "Statement of Need" that it undertook any efforts to determine whether the information could be obtained in a manner other than by interfering with the White House and the performance of its constitutional duties. Rather, Dairyland merely asserts that "it is readily apparent that these five documents and the evidence contained therein are not available elsewhere with any amount of diligence" by virtue of the fact that the documents at issue "have certainly not been produced in any other SNF case." This assertion is nonsensical because, by virtue of the assertion of privilege, these documents would not have been produced previously. Dairyland has not attempted to show that any relevant information that it requires is not available in other documents, such as any public statements that the President or his advisors may have made concerning the consideration of these bills. Pursuant to In re Sealed Case, Dairyland is required to show that it has investigated whether such statements exist, and that such statements do not satisfy its need for information, before the White House is required to act. Because Dairyland has not met its burden to demonstrate a critical need for the subject documents pursuant to Cheney, the Court thus should not impose upon the President the burden of "of invoking executive privilege with specificity or making

particular objections to discovery on a line by line basis in order to safeguard executive functions and maintain the separation of powers." Id. at 383, 388.[10]

In support of its assertion that it has met the second prong of the Sealed Test case, Dairyland argues that the five documents are important to its case because they "may contain potential admissions" by senior Government officials regarding "a host of highly relevant issues." Statement of Need, at 3. Without identifying these "highly relevant issues" with any particularity, Dairyland argues that "it is the documents themselves, authored by government officials," rather than the "factual information in the documents," that necessitates their production.

However, in a related context, the Supreme Court has rejected the propriety of the type of "fishing expedition" in which Dairyland seeks to engage or that it represents an appropriate "need" sufficient not only to overcome privilege, but even to require make in camera review of the privilege claim appropriate. In United States v. Zolin, 491 U.S. 554 (1989), the Supreme Court considered whether courts should conduct in camera review of documents covered by the attorney-client privilege in response to claims that the crime-fraud exception had eradicated that privilege. The Supreme Court recognized that "[t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district court as their unwitting (and perhaps unwilling) agents." Id. at 571. The Court held that, "[b]efore engaging in in camera review to determine the applicability of the crime-fraud exception, 'the judge should

[10] Indeed, contrary to Dairyland's suggestion that the position of the Government concerning proposed interim storage options are "not obtainable elsewhere," all of the SNF plaintiffs, including Dairyland, have access to the various pieces of proposed legislation that the President and his staff considered in the 1995-1997 timeframe, as these bills are public records.

require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. There is no reason that a lesser standard should apply in the context of the presidential communications privilege.

The only support that Dairyland provides for its proposition is In re Sealed Case and that aspect of the court's opinion in which the court ordered the Government to produce documents to the grand jury investigating the alleged criminal behavior of the former Secretary of the Agriculture, Mike Espy. Id. In particular, the grand jury was seeking documents reflecting conversations that Mr. Espy had with certain officials to determine whether Mr. Espy had made false material statements to the White House in connection with its investigation into Mr. Espy's conduct. The court ordered the documents to be produced for in camera review to determine whether privilege precluded any portions of the subject documents from disclosure, based upon the fact that one of the crimes that the grand jury was investigating related to the content of the conversations reflected in the documents. See In re Sealed Case, 121 F.3d at 761. Because of such "precise evidence" concerning Mr. Espy, the subject of the investigation, the court noted that the grand jury's need for the subject documents was readily apparent. Id. (citation omitted). Here, however, as discussed above, Dairyland has not demonstrated that the subject documents constitute such "precise evidence" to demonstrate sufficient need for these documents. Unlike In re Sealed Case, Dairyland's case does not center upon the particular acts of the senior Government officials who had involvement with the subject documents. Rather, Dairyland's case is a contract case for recovery of the damages that it allegedly incurred in connection with storing SNF onsite in its wet pool. In addition, because this case is a civil matter, unlike In re

Sealed Case, the showing of need sufficient to overcome the presumption of privilege is more stringent here. See Cheney, 542 U.S. at 384 (issues surrounding the withholding of information requested in civil cases do not share the urgency or significance of similar issues arising in criminal proceedings).

## III. TO THE EXTENT THAT THE COURT FINDS THAT DAIRYLAND MET ITS THRESHOLD BURDEN TO PURSUANT TO *CHENEY*, THE WHITE HOUSE IS ENTITLED TO COME FORWARD AT THAT TIME WITH A FORMAL INVOCATION OF PRESIDENTIAL COMMUNICATIONS PRIVILEGE

According to Dairyland, the Government was obligated to perfect the White House's assertion of presidential communications years ago before asserting the claim in its privilege log and even before the filing of Dairyland's motion to compel. See Pl. Opp. To Def. Enlargement Request, dated Oct. 4, 2007, at 2. Dairyland, however, cites no authority for the proposition that we should have obtained the appropriate affidavit from the White House regarding the assertion of presidential communications privilege months before any actual challenge to this privilege assertion, and its assertion conflicts with prior precedent. SCM Corp. v. United States, 473 F. Supp. 791, 796 (Cust. Ct. 1979), quoted in In re Sealed Case, 121 F.3d at 741.

In fact, the Supreme Court has recently recognized that the Chief Executive is entitled to special deference and that his office need not bear the initial burden of invoking the presidential communications privilege with specificity. Cheney, 542 U.S. at 385, 388. The White House is not obliged to "formally invoke its [executive] privileges in advance of the motion to compel," as it is sufficient that it said, in response to a subpoena or document production request, that it "believed the withheld documents were privileged." In re Sealed Case, 121 F.3d at 741.

The Government identified the five documents at issue as entitled to the privilege more than five years ago, in 2002. Dairyland waited to formally challenge this assertion of privilege

until September 18, 2007. It would be illogical – and unfair – to expect the Department of Justice to impose upon the White House regarding a matter not at issue simply on the basis that the subject may generate a future challenge. Further, because Dairyland has failed to meet its initial burden to demonstrate heightened need for the subject documents pursuant to Cheney, the White House formally to invoke the privilege at this time.

Nevertheless, to the extent that the Court finds that Dairyland has met its initial burden pursuant to standards articulated in Cheney, the appropriate step would be for the Court to allow the White House, following the Court's finding, to come forward with a formal invocation of the presidential privilege. Moreover, to the extent that the Court finds that the White House has not yet properly asserted the presidential communications privilege in this instance, the White House should nonetheless be afforded the opportunity to provide a suitable affidavit after the Court's finding of heightened necessity, that complies with the prerequisites for a proper invocation of the privilege. See, e.g., Cobell v. Norton, 213 F.R.D. 1, 8 (D.D.C. 2003) (after determining that Government had not properly invoked governmental privilege, stating that "Defendants will be provided with an opportunity to submit an affidavit that conforms with the requirements for proper invocation of the privilege"); Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 646 (S.D.N.Y. 1991) ("in the interest of fairness to the RTC, the RTC will be allowed to make a new presentation reasserting the privilege, no later than July 17, 1991"); see also SCM Corp. v. United States, 473 F. Supp. 791, 796 (Cust. Ct. 1979) ("[s]ince executive privilege exists to aid the governmental decisionmaking process, a waiver should not be lightly inferred").[11]

---

[11] See Export-Import Bank of the United States v. Asia Pulp & Paper Co., 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (in response to motion to compel discovery, ordering agency to "promulgate a revised privilege log that identifies each document with as much specificity as is needed to

## CONCLUSION

For the reasons set forth above, the Court should deny Dairyland's motion to compel the production of the five subject documents over which the White House has asserted the presidential communications privilege.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

---

demonstrate that" the appropriate privilege applies); Scott Paper Co. v. United States, 943 F. Supp. 489, 498 (E.D. Penn. 1996) (after finding invocation of deliberative process privilege deficient, providing Government with "additional time to 'permit a higher-ranking IRS official to review the documents and assert the privilege'"); Pierson v. United States, 428 F. Supp. 384, 395 (D. Del. 1985) (after finding that original invocation of deliberative process privilege by other than the agency head ineffective, providing opportunity for agency head to invoke privilege "by formal affidavit"); Herald Ass'n, Inc. v. Dean, 816 A.2d 469 (Vt. 2002) ("Although we find defendants' assertion of executive privilege over the Governor's schedule in its entirety too broad, we decline to require the Governor to disclose the entirety of his schedule at this time," prior to remand to permit opportunity for submission of appropriate declaration).

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Russell A. Shultis by s/ Patrick B. Bryan
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 24, 2007

# APPENDIX

# INDEX TO THE APPENDIX


| Document | Page |
|---|---|
| Dairyland's July 28, 2006 RCFC 26(a)(1) Disclosures | 1 |
| Portions of Defendant's Responses to Utility Plaintiffs' Joint First Set of Requests For Production of Documents, dated Oct. 9, 2007 | 7 |
| Excerpt from the Government's December 23, 2003 Privilege Log | 13 |

7/28/06
DPC
18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S RCFC 26(a)(1) DISCLOSURES

Pursuant to RCFC 26(a)(1) and the Court's Orders of May 1, 2006 and May 23, 2006, Dairyland Power Cooperative ("Dairyland") provides the following disclosures:

A. Witnesses

The individuals listed below are likely to have discoverable information on the noted subjects that Dairyland may use to support its claims. These individuals are represented by counsel, and the government should only contact the witnesses through counsel.

Michael A. Brasel, LACBWR,[1] (608) 689-4220. Spent nuclear fuel and high-level radioactive waste (together, "spent fuel") management issues at LACBWR. Removal of the reactor pressure vessel ("RPV") from the LACBWR containment building. Dairyland's consideration of alternatives to on-site wet pool storage.

Roger E. Christians, LACBWR, (608) 689-4216. Spent fuel management issues at LACBWR.

[1] This abbreviation is being used to note individuals located at the La Crosse Boiling Water Reactor ("LACBWR") plant. The address for LACBWR is S4601 State Hwy 35, Genoa, WI 54632.

John D. Parkyn, DPC,[2] (608) 787-1236. Dairyland's consideration of alternatives to on-site wet pool storage and participation in Private Fuel Storage, LLC ("PFS").

Seymour J. Raffety, LACBWR, (608) 689-4222. Spent fuel management issues at LACBWR. Administration of Dairyland's DOE contract.

Charles V. Sans Crainte, DPC, (608) 787-1233. Spent fuel management issues and costs at LACBWR, including Dairyland's consideration of alternatives to on-site wet pool storage and participation in PFS.

Keith A. Stubbendick, DPC, (608) 787-1245. Dairyland's accounting for costs of management of spent fuel and participation in PFS.

John W. Bartlett, 1300 Crystal Drive, Arlington, VA 22202, (703) 415-4541. Factual matters addressed in Dr. Bartlett's testimony in the Yankee and PG&E spent fuel trials.

Loring E. Mills, 132 Eareckson Lane, Stevensville, MD (410) 643-1244. Factual matters addressed in Mr. Mills' testimony in the Yankee and PG&E spent fuel trials.

Ivan F. Stuart, East 11-B, 500 Ocean Drive, Juno, FL 33408, (561) 691-4696. Factual matters addressed in Mr. Stuart's testimony in the Yankee and PG&E spent fuel trials.

B. Documents

Once a protective order is entered in this case, Dairyland will provide DVDs containing images of documents that Dairyland may use to support its claims. In order to expedite discovery, Dairyland will be disclosing not only documents that it will likely need to support its claims, but also many other documents the government is otherwise seeking in discovery.

---

[2] This abbreviation is being used to note individuals located at Dairyland Power Cooperative ("DPC") headquarters. The address for DPC is 3200 East Avenue S., P.O. Box 817, La Crosse, WI 54602.

Within the next few weeks, Dairyland will also provide complete bibliographic indexing of these documents. Dairyland may also support its claims with many of the government documents listed as trial exhibits or otherwise offered into evidence at trial by plaintiffs in the Yankee and PG&E spent fuel litigations.

C. Damages

The government's failure to remove spent fuel from Dairyland's La Crosse Boiling Water Reactor (LACBWR) plant in a timely manner consistent with its contractual obligations has caused Dairyland to incur damages as described in the categories set out below. The computations of these categories of damages are based, in part, on Dairyland's accounting records. Copies of such records, as well as spreadsheets setting forth the computations of the categories of damages, are included in the enclosed CD entitled "Dairyland Power Cooperative Initial Disclosures." The computations reflect costs incurred through June 30, 2006. Computation of a damages amount appropriate for final judgment, including issues such as allocation of G&A and other "overhead" costs and the RPV removal project costs (and other issues appropriately the subject of consideration and analysis by experts), will be presented in one or more expert witness reports that will be produced no later than the time set out in the Court's Order of May 1, 2006.

1. LACBWR SAFSTOR

The government's failure to timely remove spent fuel from Dairyland's LACBWR plant has caused Dairyland to incur costs to store its spent nuclear fuel in its spent fuel pool since 1998, and Dairyland will continue to incur such costs until all of the spent nuclear fuel is removed. The computation of this category of damage is set out in the documents entitled

"Summary of Damages" (DPID 0000001). Dairyland data and documentation supporting this computation are documents Bates-labeled DPID 0000002-683.

G&A costs included in this computation were derived from Dairyland's Core Business Models (which will be provided upon entry of a protective order in this case) and are appropriately the subject of expert consideration and analysis which will be presented in one or more expert witness reports that will be produced no later than the time set out in the Court's Order of May 1, 2006.

2. Off-site Storage/PFS

As a result of the government's failure to timely remove spent fuel from Dairyland's LACBWR plant, Dairyland has incurred costs in connection with exploring, supporting and developing private off-site alternatives for storage of its spent fuel. The computation of this category of damage is set out in the document entitled "Summary of Damages" (DPID 0000001). Dairyland data and documentation supporting this computation are documents Bates-labeled DPID 0000684-1764.

3. Insurance Expense

Dairyland has had to pay property and liability insurance premiums that it would not have paid had the government removed the spent nuclear fuel from the spent fuel pool in a timely manner. The computation of this category of damage is set out in the document entitled "Summary of Damages" (DPID 0000001). Dairyland data and documentation supporting this computation are documents Bates-labeled DPID 0001765-1805.

4. Reactor Pressure Vessel Removal Project

Dairyland has incurred significant costs in connection with the removal of its RPV from the LACBWR containment building that it would not have incurred had the government

removed the spent nuclear fuel from the spent fuel pool in a timely manner in accordance with its contractual obligations. Through June 2006, DPC has incurred $4,934,562 in costs on the RPV removal project, which are set forth in the tab titled "Reactor Pressure Vessel Removal." Additional supporting documentation are documents Bates-labeled DPID 0001806-1834. Determination of the portion of those costs on the RPV removal project that would not have been incurred had the government removed the spent fuel in a timely manner is appropriately the subject of expert consideration and analysis, which will be presented in one or more expert witness reports that will be produced no later than the time set out in the Court's Order of May 1, 2006.

July 28, 2006

Respectfully submitted,

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Dairyland's RCFC 26(a)(1) Disclosures to be served by hand this 28th day of July 2006 on:

Russell Shultis
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530

Todd W. Monroe

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY, MAINE YANKEE ATOMIC POWER COMPANY, FLORIDA POWER & LIGHT COMPANY, NORTHERN STATES POWER COMPANY, DUKE POWER, a Division of DUKE ENERGY CORP, INDIANA MICHIGAN POWER COMPANY, SACRAMENTO MUNICIPAL UTILITY DISTRICT, SOUTHERN NUCLEAR OPERATING COMPANY, et al., COMMONWEALTH EDISON COMPANY, BOSTON EDISON COMPANY, GPU NUCLEAR, INCORPORATED, WISCONSIN ELECTRIC POWER COMPANY, POWER AUTHORITY OF THE STATE OF NEW YORK, OMAHA PUBLIC POWER DISTRICT, NEBRASKA PUBLIC POWER DISTRICT, TENNESSEE VALLEY AUTHORITY, | ) | Nos.: 98-126C, 98-154C, 98-474C, 98-483C, 98-484C, 98-485C, 98-486C, 98-488C, 98-614C, 98-621C, 99-447C, 00-440C, 00-697C, 00-703C, 01-115C,01-116C, 01-249C |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO UTILITY PLAINTIFFS'**
**JOINT FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's order for coordinated discovery, filed September 26, 2001, in the above-captioned cases, defendant, the United States, provides the following response to the plaintiffs' joint first set of requests for production of documents.

**REQUEST NO. 38**:

All documents relating to any federal legislative proposal initiated since passage of the NWPA for federal storage or disposal of SNF from civilian nuclear reactors, insofar as such documents, or any portion thereof, relate to Schedule Issues.

**RESPONSE**:

Defendant objects to this production request as overly broad and burdensome. Defendant further objects to this production request as irrelevant because the matters at issue in these cases involve the schedule against which the Court will assess damages pursuant to the terms of the Standard Contract, not legislative proposals that have not been enacted and, thus, have no effect upon the Standard Contract.

Notwithstanding this objection, defendant will produce all existing, non-privileged documents within its control responsive to this request that defendant has been able to locate after a reasonable search, to the extent these documents have not been produced previously or made available to plaintiffs.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

L. DOW DAVIS, IV
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

October 9, 2001

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 9th day of October, 2001, I caused to be served by overnight delivery (delivery next business day) a copy of "DEFENDANT'S RESPONSES TO UTILITY PLAINTIFFS' JOINT FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS," addressed as follows:

Counsel for:

Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.) (Allegra, J.);
Duke Power Co. v. United States, No. 98-485C (Fed. Cl.) (Tidwell, S.J.);
Florida Light & Power Co. v. United States, No. 98-483C (Fed. Cl.) (Wilson, J.);
GPU Nuclear, Inc. v. United States, No. 00-440C (Fed. Cl.) (Bush, J.);
Indiana Michigan Power Co. v. United States, No. 98-429C (Fed. Cl.) (Hodges, J.);
Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) (Wiese, J.);
Power Authority of the State of New York v. United States, No. 00-703C (Fed. Cl.) (Damich, J.);
Omaha Public Power District v. United States, No. 01-115C (Bush, J.); and,
Nebraska Public Power District v. United States, No. 01-116C (Weinstein, J.):

ALEX D. TOMASZCZUK
Shaw Pittman
1650 Tysons Boulevard
McLean, Virginia 22102-4859

Counsel for:

Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.) (Merow, S.J.);
Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.) (Merow, S.J.); and
Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.) (Merow, S.J.):

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005-3305

Counsel for:

Sacramento Municipal Irrigation District v. United States, No. 98-488C (Fed. Cl.) (Yock, S.J.):

MELVIN C. GARBOW
Arnold & Porter
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

Counsel for:

Southern Nuclear Operating Co. v. United States, No. 98-614C) (Fed. Cl.) (Merow, S.J.):

M. STANFORD BLANTON
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Counsel for:

Wisconsin Electric Power Co. v. United States, No. 00-697C (Fed. Cl.) (Merow, S.J.):

RICHARD W. OEHLER
Perkins Coie LLP
1201 Third Avenue
40th Floor
Seattle, Washington 98101-3099

Counsel for

Commonwealth Edison Co. v. United States, No. 98-621C (Judge Hewitt):

RICHARD C. JOHNSON
Jenner & Block
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005

Counsel for:

Tennessee Valley Authority v. United States, No. 01-249C (Bruggink, J.)

PETER K. SHEA
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401

Dana Chase

Government Privilege Log

| DOCNO | ENDNO | DATE | AUTHOR | ADDRESSEE | DOCTYPE | DESCRIPTION | PRIVILEGE | SUPP_DESCRIP |
|---|---|---|---|---|---|---|---|---|
| HQR0290137 | HQR0290138 | XXXX/XX/XX | DREYFUS, D | [NONE] | MEM | REMEDIES REGARDING UTILITY NEGOTIATIONS; INTERNAL AGENCY DISCUSSION OF OPTIONS FOR SETTLEMENT WITH UTILITIES, PREPARED AT DIRECTION OF COUNSEL | AW, SN | DRAFT OF BRIEFING MEMORANDUM PREPARED BY D. DREYFUS, OCRWM, AT THE DIRECTION OF AND WITH THE ASSISTANCE OF M.A. SULLIVAN, DOE-OGC, REGARDING POSSIBLE SETTLEMENT OPTIONS FOR MEDIATION WITH UTILITIES ORDERED IN INDIANA MICHIGAN V. DOE (D.C. CIR.) AW ATTORNEY: M.A. SULLIVAN |
| HQR0290158 | HQR0290159 | 1996/02/XX | DREYFUS, D | SECRETARY, DOE | MEM | BRIEFING MEMO FOR THE SECRETARY (SAME AS HQR029 0137-0138) | SN, AW | DRAFT OF BRIEFING MEMORANDUM PREPARED BY D. DREYFUS, OCRWM, AT THE DIRECTION OF AND WITH THE ASSISTANCE OF M.A. SULLIVAN, DOE-OGC, REGARDING POSSIBLE SETTLEMENT OPTIONS FOR MEDIATION WITH UTILITIES ORDERED IN INDIANA MICHIGAN V. DOE (D.C. CIR.); SAME AS HQR029 0137-0138. AW ATTORNEY: M.A. SULLIVAN |
| HQR0290160 | HQR0290176 | 1996/02/01 | [NONE] | [NONE] | STD | WHITE PAPER - SUMMARY OF REMEDIES REGARDING UTILITY NEGOTIATIONS, FINANCIAL ANALYSIS OF MEDIATION OPTIONS, PREPARED AT DIRECTION OF COUNSEL | AW, SN | WHITEPAPER PRESENTING POSSIBLE REMEDIES TO OFFER IN MEDIATION WITH UTILITIES IN INDIANA-MICHIGAN V. DOE (D.C. CIR), PREPARED BY OCRWM, AT THE DIRECTION OF M.A. SULLIVAN, DOE-OGC; ATTACHMENTS INCLUDE ANALYSIS OF COSTS TO UTILITIES AND SUMMARY OF COST ASSUMPTIONS; BEARS LEGEND, "PRELIMINARY DRAFT ATTORNEY WORK PRODUCT." AW ATTORNEY: M.A. SULLIVAN |
| HQR0290177 | HQR0290190 | 1996/11/07 | [NONE] | [NONE] | MEM | POLICY OPTIONS FOR INTERIM STORAGE OF RADIOACTIVE WASTE | DP, PC | |

Government Privilege Log

| DOCNO | ENDNO | DATE | AUTHOR | ADDRESSEE | DOCTYPE | DESCRIPTION | PRIVILEGE | SUPP_DESCRIP |
|---|---|---|---|---|---|---|---|---|
| | | | | HALE, M<br>SOSNIK, D<br>COHEN, B<br>TAYLOR, J<br>SHARMA, D | | | | |
| HQR0320199 | HQR0320206 | 1995/05/15 | GLAUTHIER, TJ | PEROFF, K<br>BENNETHUM, GL<br>CIVIAK, RL<br>CC:<br>SHUFFIELD, AE | OTH | MEMO RE: EXPEDITED ACCEPTANCE OF SPENT FUEL AT A YUCCA FUEL REPOSITORY | DP, PC | |
| HQR0320207 | HQR0320212 | 1995/06/15 | [NONE] | [NONE] | MEM | DRAFT MEMO RE: PRESIDENTIAL PRINCIPLES AND PROPOSED PRESIDENTIAL POSITION REGARDING INTERIM STORAGE | DP, PC | |
| HQR0320213 | HQR0320220 | XXXX/XX/XX | [NONE] | [NONE] | MEM | DRAFT MEMO RE: PROPOSED PRESIDENTIAL POSITION REGARDING INTERIM STORAGE | DP, PC | |
| HQR0320221 | HQR0320227 | 1995/06/13 | [NONE] | [NONE] | MEM | DRAFT MEMO RE: OPTIONS FOR EXPEDITED ACCEPTANCE, INTERIM STORAGE, AND COMPENSATING UTILITIES, AND PRESIDENTIAL PRINCIPLES | DP, PC | |
| HQR0320228 | HQR0320230 | 1995/06/13 | ZABRANSKY, D | [NONE] | MEM | MEMO RE: DEPARTMENT'S 1998/00/00 WASTE ACCEPTANCE OBLIGATION; PREPARED AT THE DIRECTION OF COUNSEL | AW | THIS MEMO WAS PREPARED BY DAVID ZABRANSKY, OCRWM, AT THE DIRECTION OF SUSAN KLEIN, DOE-OGC, FOR HER REVIEW, AND WAS REVIEWED AND USED BY SUSAN KLEIN IN CONNECTION WITH ANTICIPATED LITIGATION TO BE FILED RELATED TO DOE'S DELAY IN BEGINNING ACCEPTANCE OF UTILITY SPENT NUCLEAR FUEL.<br>AW ATTORNEY: S KLEIN, DOE-OGC |

| DOCNO | ENDNO | DATE | AUTHOR | ADDRESSEE | DOCTYPE | DESCRIPTION | PRIVILEGE | SUPP_DESCRIP |
|---|---|---|---|---|---|---|---|---|
| HQR0320231 | HQR0320245 | 1995/06/13 | [NONE] | [NONE] | MEM | MEMO RE: POLICY OPTIONS FOR INTERIM STORAGE OF RADIOACTIVE WASTE | DP, PC | |
| HQR0320280 | HQR0320288 | 1995/08/31 | RIVLIN, AM O'LEARY, H | CLINTON, W | MEM | MEMORANDUM FOR THE PRESIDENT RE: ADMINISTRATION POSITION ON NUCLEAR WASTE | DP, PC | |
| HQR0320321 | HQR0320327 | 1995/07/28 | RIVLIN, A O'LEARY, H | CLINTON, W | MEM | DOE AND OMB MEMORANDUM FOR THE PRESIDENT RE: ADMINISTRATION POSITION ON INTERIM NUCLEAR WASTE STORAGE | DP, PC | |
| HQR0340035 | HQR0340035 | 1996/01/18 | PALK, S; OFFICE OF THE ASSISTANT GENERAL COUNSEL FOR INTELLECTUAL PROPERTY | POLLOG, T; OCRWM | MEM | MEMO CONTAINING LEGAL ADVICE RE: INQUIRY FROM NUCLEAR ENERGY INSTITUTE ON MPC & PROPRIETARY DATA | AC | THIS MEMO WAS DRAFTED BY S. PALK, DOE-OGC, AND CONTAINS LEGAL ADVICE PROVIDED BY COUNSEL TO TOM POLLOG, OCRWM, REGARDING DOE'S CONTRACTUAL AUTHORITY PURSUANT TO A CONTRACT BETWEEN DOE AND WESTINGHOUSE. AC ATTORNEY: S PALK, DOE-OGC |
| HQR0351318 | HQR0351319 | 1994/03/29 | O'TOOLE, T; EH-1 NORDHAUS, R (OGC); GC-1 DENNISON, WJ; GC-51 | DREYFUS, D; RW-1 | MEM | MEMO RE: NATIONAL ENVIRONMENTAL POLICY ACT COMPLIANCE STRATEGY FOR THE PROPOSED MULTI-PURPOSE CANNISTER SYSTEM INITIATIVES GIVING VIEWS OF GENERAL COUNSEL'S OFFICE AND OFFICE OF NATIONAL ENVIRONMENTAL POLICY ACT OVERSIGHT TO PROPOSALS FOR MPC | AC | THIS MEMO, REGARDING THE LEGAL REQUIREMENTS INVOLVED IN A PROPOSED MULTI-PURPOSE CANISTER SYSTEM, WAS DRAFTED BY, AND WITH THE ASSISTANCE OF, ATTORNEYS IN DOE-OGC. IT CONTAINS LEGAL ADVICE PROVIDED BY COUNSEL. AC ATTORNEYS: RP NORDHAUS, WJ DENNISON, DOE-OGC |
| HQR0351355 | HQR0351357 | 1994/02/23 | DREYFUS, D; RW-1 | NORDHAUS, R (OGC) O'TOOLE, T; EH-1 | MEM | REQUEST FOR APPROVAL OF PROPOSED MPC NPEA STRATEGY FROM GENERAL COUNSEL'S OFFICE AND OFFICE OF NEPA OVERSIGHT | AC | MEMORANDUM REGARDING THE LEGAL REQUIREMENTS FOR A PROPOSED MULTI-PURPOSE CANISTER SYSTEM, REQUESTING REVIEW BY COUNSEL TO ENSURE COMPLIANCE WITH THE REQUIREMENTS OF NEPA, PREPARED BY D. DREYFUS, OCRWM; CONSTITUTES A |

Government Privilege Log

| DOCNO | ENDNO | DATE | AUTHOR | ADDRESSEE | DOCTYPE | DESCRIPTION | PRIVILEGE | SUPP_DESCRIP |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | AW ATTORNEY: SUSAN KLEIN (DOE-OGC) |
| HQR0421309 | HQR0421309 | XXXX/XX/XX | TOMASONI, BA | CONTRACT HOLDER | COR | DRAFT LETTER FROM CONTRACTING OFFICER TO CONTRACT HOLDER | AW | DRAFT SAMPLE LETTER FROM DOE CONTRACTING OFFICER, BETH TOMASONI, TO PURCHASERS, INVITING COMMENTS ON DOE'S ANTICIPATED DELAY IN LIGHT OF THE INDIANA MICHIGAN DECISION (D.C. CIR.) PREPARED BY AGENCY COUNSEL AND EVIDENCING THEIR LEGAL OPINIONS AND CONCLUSIONS.<br>AW ATTORNEYS: DOE-OGC ATTORNEYS |
| HQR0421452 | HQR0421464 | 1997/01/31 | CURTIS, CB<br>GRUMBLY, T | GLAUTHIER, TJ<br>CHOW, B<br>HOLSTEIN, E<br>LANCE, L | MEM | MEMO FROM DOE TO OMB AND WHITE HOUSE RE: NUCLEAR WASTE LAWSUIT | DP, PC | |
| HQR0421465 | HQR0421467 | 1997/02/21 | NORDHAUS, R (OGC) | ACTING SECRETARY, DOE<br>UNDER SECRETARY, DOE | MEM | AGENCY MEMO RE: NUCLEAR WASTE POLICY ACT LITIGATION STRATEGY | AC, AW | AGENCY MEMO PREPARED BY ROBERT NORDHAUS (DOE-OGC) AND ADDRESSED TO ACTING ENERGY SECRETARY AND UNDERSECRETARY OF ENERGY RE: NUCLEAR WASTE POLICY ACT LITIGATION STRATEGY AND EVIDENCING LEGAL OPINIONS AND CONCLUSIONS. BEARS LEGEND "PRIVILEGED AND CONFIDENTIAL - ATTORNEY WORK PRODUCT."<br>AC/AW ATTORNEY: ROBERT NORDHAUS (DOE-OGC) |
| HQR0421468 | HQR0421474 | 1997/03/13 | SULLIVAN, MA (OGC) | SECRETARY, DOE | MEM | AGENCY MEMO RE: NORTHERN STATES POWER LITIGATION | AC, AW | AGENCY MEMO PREPARED BY MARY ANNE SULLIVAN (DOE-OGC) AND ADDRESSED TO ENERGY SECRETARY RE: NORTHERN STATES POWER LITIGATION (D.C. CIR.) AND EVIDENCING LEGAL OPINIONS AND CONCLUSIONS. BEARS LEGEND "PRIVILEGED AND CONFIDENTIAL - ATTORNEY WORK PRODUCT."<br>AW ATTORNEY: MARY ANNE SULLIVAN (DOE-OGC) |