No. 04-106C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE, ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, .D.C. 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 29, 2007

TABLE OF CONTENTS

PAGE

BACKGROUND ........................................................................................................ 1

SUMMARY OF ARGUMENT .................................................................................. 3

ARGUMENT ........................................................................................................... 4

I. THE GOVERNMENT HAS NOT WAIVED ITS PRIVILEGE CLAIMS ........... 4

II. DAIRYLAND HAS NOT SHOWN A NEED FOR THE DOCUMENTS AT ISSUE SUFFICIENT TO OVERCOME THE GOVERNMENT'S INVOCATION OF THE DELIBERATIVE PROCESS ...................................... 5

A. The Deliberative Process Privilege Allows The Government To Prevent The Disclosure Of Discussions And Methods Of Reasoning Of Its Officials, Which, If Subject To Disclosure, Would Temper Candor During The Decision-Making Process ................. 5

B. A Claimant Can Overcome The Agency's Proper Invocation Of The Deliberative Process Privilege Only By Establishing A Demonstrated Need That Outweighs The Harm To The Government's Interests In Free And Open Deliberations ......................... 7

C. The Government Has Properly Invoked The Deliberative Process Privilege Here ..................................................................... 8

D. Dairyland Has Not Made A Showing Of Need Sufficient To Support Its Motion To Compel The Deliberative Process Documents ..... 9

1. Overview ........................................................................... 9

2. Document Ref. No. S183 .......................................................... 11

3. Document Ref. No. S184 .......................................................... 12

4. Document Ref. Nos. S428, S1035, S1139, S1141, S1142 S1143, S1144 ................................................................. 14

5. Document Ref. Nos. S605, S606, S607, S609, S610, S611 S612, S613, S615, S616, S617, S618, S619 ............................... 15

TABLE OF CONTENTS (cont'd)

PAGE

6. Document Ref. Nos. S1073, S1074, S1127, S1128, S1129 ......... 16

III. THE COURT NEED NOT ENGAGE IN AN *IN CAMERA* REVIEW OF THE PRIVILEGED DOCUMENTS, GIVEN THAT THE AGENCY'S HARM IS WELL-DOCUMENTED IN THE PRIVILEGE LOG AND ACCOMPANYING DECLARATION ................................................................ 17

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

CASES PAGE(S)

Abramson v. United States,
39 Fed. Cl. 290 (1997) .......... 6

Brockway v. Department of the Air Force,
518 F.2d 1184 (8th Cir.1975) .......... 6

CACI Field Services, Inc. v. United States,
12 Cl. Ct. 680 (1987) .......... 6

Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena,
40 F.R.D. 318 (D.D.C. 1966), aff'd, 384 F.2d 979,
cert. denied, 389 U.S. 952 (1967) .......... 6, 7, 8

Committee for Nuclear Responsibility, Inc. v. Seaborg,
463 F.2d 788 (D.C. Cir. 1971) .......... 7

Dairyland Power Cooperative v. United States,
77 Fed. Cl. 330 (2007) .......... 5, 7, 8, 9

In re Franklin National Bank Securities Litigation,
478 F. Supp. 577 (E.D.N.Y. 1979) .......... 8

Greenpeace v. National Marine Fisheries Service,
198 F.R.D. 540 (W.D. Wash. 2000) .......... 20

Kaiser Aluminum & Chemical Corp. v. United States,
157 F. Supp. 939 (Ct. Cl. 1958) .......... 5

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) .......... passim

Mead Data Central, Inc. v. Air Force,
566 F.2d 242 (D.C. Cir. 1977) .......... 6

NLRB v. Sears, Robuck & Co.,
421 U.S. 132 (1975) .......... 5

Ray v. Turner,
587 F.2d 1187 (D.C. Cir. 1978) .......... 19

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Redland Soccer Club, Inc. v. Department of the Army,
55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996) .......... 7

Reino de Espana v. American Bureau of Shipping,
No. 03-Civ-3573, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) .......... 20

Scott Paper Co. v. United States,
943 F. Supp. 489 (E.D. Pa. 1996) .......... 8

Scott v. PPG Industries, Inc.,
142 F.R.D. 291 (N.D.W. Va. 1992) .......... 7

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) .......... 8

Soucie v. David,
448 F.2d 1067 (D.C. Cir. 1971) .......... 6

Torres v. Kuzniasz,
936 F. Supp. 1201 (D.N.J. 1996) .......... 19

United States v. AT&T,
524 F. Supp. 1381 (D.D.C. 1981) .......... 8

United States v. Electro-Voice, Inc.,
879 F. Supp. 919 (N.D. Ind. 1995) .......... 7

United States v. Farley,
11 F.3d 1385 (7th Cir. 1993) .......... 8

United States v. IBM,
20 F.R. Serv. 2d 1082 (S.D.N.Y. 1975) .......... 8

United States v. Nixon,
418 U.S. 683 (1974) .......... 5

Vons Cos. v. United States,
51 Fed. Cl. 1 (2001) .......... 18

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Walsky Construction Co. v. United States,
20 Cl. Ct. 317 (1990) ........................................................................................ 6, 7

Young v. CIA,
972 F.2d 536 (4th Cir. 1992) ........................................................................... 19

# INDEX TO THE APPENDIX


| Document | Page |
| --- | --- |
| Declaration of Alan B. Brownstein, dated Sept. 17, 2007 | 1 |
| Department of Energy Delegation Order No. 00-002.00G, Samuel W. Bodman, Secretary of Energy, dated Jan. 29, 2007 | 34 |
| Department of Energy Redelegation Order No. 00-002.06B, David K. Garman, Under Secretary of Energy, to the Director, Office of Civilian Radioactive Waste Management, Jan. 29, 2007 | 44 |
| Department of Energy Delegation of Authority for Assertion of Deliberative Process Privilege, Ward F. Sproat III, Director, Office of Civilian Radioactive Waste Management to Alan B. Brownstein, Chief Operating Office, Office of Civilian Radioactive Waste Management, Apr. 27, 2007 | 47 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO DAIRYLAND'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD
ON DELIBERATIVE PROCESS PRIVILEGE, ATTORNEY-CLIENT
PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS

Defendant, the United States, respectfully responds to that portion of the "Motion to Compel Production of Documents Withheld on Deliberative Process Privilege, Attorney-Client Privilege and/or Work Product Doctrine Grounds" relating to the deliberative process privilege that plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on October 5, 2007. Through its motion, Dairyland seeks to compel the production of 27 documents that we identified as protected by the deliberative process privilege in our September 17, 2007 privilege log. The Court should deny Dairyland's motion in its entirety.[1]

BACKGROUND

On February 5, 2007, the Court ordered us to produce documents responsive to Dairyland's exceedingly broad requests for production. In compliance with the Court's order, we produced to Dairyland 1,091,626 pages of documents. Given the recent vintage of most of

---

[1] Through its October 5, 2007 motion, Dairyland also seeks to compel the production of 179 documents over which we asserted the attorney-client privilege and work product doctrine. Pursuant to the Court's October 18, 2007 order, we filed a separate response to these challenges on October 24, 2007.

these documents, they had not been previously produced or posted to our case-wide spent nuclear fuel ("SNF") litigation website.[2] Accomplished in the space of only a few months, the massive effort that we undertook to comply with the Court's order resulted in the production to Dairyland of more images than were produced case-wide in all the SNF cases during the previous nine years of vigorous litigation.

On September 17, 2007, we produced to Dairyland a privilege log identifying 1,496 documents that we had identified as protected by the deliberative process privilege, the attorney-client privilege, and/or the work product doctrine. Although impeded somewhat by the necessity of preparing detailed affidavits supporting its deliberative process assertions, we produced our privilege log in a reasonable time, particularly given the magnitude of its production. Moreover, in compiling our log, we endeavored to assert claims of privilege only where necessary, and only after laboriously reviewing the documents that it was producing. Considering the sheer bulk of our production, and the comparatively small quantity of materials withheld as privileged, there can be little doubt that we worked diligently to avoid making unsubstantiated privilege claims.

On September 17, 2007, Alan Brownstein, Chief Operating Office for the Office of Civilian Radioactive Waste Management ("OCRWM") within the Department of Energy ("DOE"), executed a 33-page declaration ("Brownstein Decl.") formally invoking the

[2] We are currently in the process of making these documents available electronically to all of the SNF plaintiffs.

deliberative process privilege[3] over certain documents within the cognizance of OCRWM included in the September 17, 2007 privilege log. A1-33.[4]

Initially, Dairyland verbally informed us of its intention to challenge only a "handful" of the documents identified on the September 17, 2007 log. Further, by way of a separate statement in the parties' Joint Proposal for Trial Preparation Schedule, dated October 3, 2007, Dairyland "implore[d]" the Court not to lift the January 28, 2007 trial date in this case, representing that its forthcoming privilege challenges "will not be large (the number of documents at issue will number in the dozens, not hundreds)." Despite this representation, Dairyland has sought to compel the production of more than 200 documents on our privilege log, including the 27 documents that are the subject of this brief.

## SUMMARY OF ARGUMENT

Dairyland, through its motion to compel, seeks to challenge our assertion of the deliberative process privilege over documents responsive to requests for production of documents that Dairyland served. Although Dairyland makes bald assertions that it has a need for the 27 documents at issue, it has not established any such need, and it certainly has not established that its need outweighs our proper invocation of the deliberative process privilege. Accordingly, Dairyland's motion should be denied. If the Court determines that Dairyland has

---

3 An agency head may delegate the authority to invoke the deliberative process privilege on the agency's behalf. Marriott International Resorts, L.P. v. United States, 437 F.3d 1302, 1308 (Fed. Cir. 2006). Here, the Secretary of Energy has properly delegated his authority to invoke the deliberative process privilege to Mr. Brownstein. See A34-47.

4 "A__" refers to the appendix to this brief. "PBr__ " refers to Dairyland's motion to compel, dated October 5, 2007.

shown a compelling need for any of the documents at issue, we respectfully request that the Court order the production of those documents for use in this case only.

## ARGUMENT

## I. THE GOVERNMENT HAS NOT WAIVED ITS PRIVILEGE CLAIMS

In its motion, Dairyland first argues that the Government has waived all of its privilege claims. PBr3. Because the Court has already expressed its unwillingness to conclude that the Government's reasonable delay in producing its September 17, 2007 privilege log resulted in a waiver of the privileges identified therein, and because the issue of implied waiver has been fully briefed, we will not burden the Court by addressing the subject in detail again here. In response to Dairyland's renewed request that the Court deem a waiver to have occurred, we incorporate herein the arguments set forth in "Defendant's Response to Plaintiff's 'Notice of Authority Regarding Consequences of Government Failure to Serve Privilege Log,' dated August 13, 2007, and Plaintiff's 'Notice of New Developments Regarding Government's Failure to Serve Privilege Log,' dated August 17, 2007."

Additionally, we reiterate the following points: Courts have refused to adopt a per se waiver rule associated with the timing of production for privilege logs; neither the Rules of this Court nor the Federal Rules of Civil Procedure establish a deadline by which parties must produce privilege logs; the Court in this case provided no deadline for the parties' production of privilege logs; and, finally, we proceeded diligently in preparing our September 17, 2007, privilege log, and the time required to accomplish the log's production was reasonable in light of the magnitude of the documents produced to Dairyland and the requirement that the Government secure detailed affidavits supporting its assertions of deliberative process privilege. As a result, the Government has not waived its privilege claims.

## II. DAIRYLAND HAS NOT SHOWN A NEED FOR THE DOCUMENTS AT ISSUE SUFFICIENT TO OVERCOME THE GOVERNMENT'S INVOCATION OF THE DELIBERATIVE PROCESS PRIVILEGE

### A. The Deliberative Process Privilege Allows The Government To Prevent The Disclosure Of Discussions And Methods Of Reasoning Of Its Officials, Which, If Subject To Disclosure, Would Temper Candor During The Decision-Making Process

In United States v. Nixon, 418 U.S. 683, 705 (1974), the United States Supreme Court explained that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process." Accord NLRB v. Sears, Robuck & Co., 421 U.S. 132, 151 (1975). Because of this fact and the strong public interest in having Government officials candidly discuss prospective operations and policies, it is well-established that the Government may invoke certain executive privileges, including the deliberative process privilege, which are not available to other parties. The deliberative process privilege allows the Government to prevent the disclosure of the discussions and methods of reasoning of its officials, which, if subject to disclosure, would temper candor during the decision-making process. E.g., Sears, Roebuck & Co., 421 U.S. at 151; Kaiser Aluminum & Chemical Corp. v. United States, 141 Ct. Cl. 38, 47-50, 157 F. Supp. 939, 944-47 (1958).[5]

This Court has held that the deliberative process privilege applies to "inter- and intra-agency deliberative communications or official information, [and] protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which

---

[5] In an earlier decision that the Court issued regarding the deliberative process privilege in this case on June 29, 2007, the Court identified additional harm that can result from the premature or public disclosure of internal agency deliberations, Dairyland Power Cooperative v. United States, 77 Fed. Cl. 330, 336 (2007), a discussion that we incorporate here.

Governmental decisions and policies are formulated.'" CACI Field Services, Inc. v. United States, 12 Cl. Ct. 680, 686 (1987) (quoting Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd, 384 F.2d 979, cert. denied, 389 U.S. 952 (1967)). Documents properly withheld pursuant to the deliberative process privilege must satisfy two legal requirements. First, the documents must be pre-decisional – that is, they must precede the subject decision in temporal sequence. Walsky Construction Co. v. United States, 20 Cl. Ct. 317, 320 (1990). Second, the documents must be deliberative – that is, the documents must reflect the "interchange of recommendations and deliberations that contribute to the decision-making or policymaking process." CACI, 12 Cl. Ct. at 687.

Although the deliberative process privilege does not shield documents that simply state or explain a decision that the Government has already made or protect material that is purely factual, where the factual material is so intertwined with the deliberative material that it is not reasonably severable, courts have upheld the assertion of the deliberative process privilege as to entire documents. See, e.g., Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977) (citing Brockway v. Department of the Air Force, 518 F.2d 1184, 1194 (8th Cir.1975)); Soucie v. David, 448 F.2d 1067 (D.C. Cir. 1971). Nonetheless, any assertion of the deliberative process privilege must be made in the context of an Executive privilege and must meet the formalities required for the proper assertion of a common-law Executive privilege. Abramson v. United States, 39 Fed. Cl. 290, 294 (1997). To assert the privilege, the Government must follow a three-step process:

> First, the head of the agency that has control over the requested document [or his delegatee] must assert the privilege after personal consideration. Second, the head of the agency must state with particularity what information is subject to the privilege. Third,

> the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document.

Walsky Construction, 20 Cl. Ct. at 320 (citations omitted); see Marriott Int'l Resorts, 437 F.3d at 1308 (permitting agency head to delegate authority to invoke deliberative process privilege on agency's behalf).

B. A Claimant Can Overcome The Agency's Proper Invocation Of The Deliberative Process Privilege Only By Establishing A Demonstrated Need That Outweighs The Harm To The Government's Interests In Free And Open Deliberations

The deliberative process privilege is not absolute. Dairyland, 77 Fed. Cl. at 337; see Marriott Int'l, 437 F.3d at 1307 (Fed. Cir. 2006); Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 853 n.18 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996); United States v. Electro-Voice, Inc., 879 F. Supp. 919, 923 (N.D. Ind. 1995). After concluding that the privilege is properly invoked, the Court must balance the public interest in non-disclosure with the plaintiff's individual evidentiary need for the information as evidence. Redland Soccer, 55 F.3d at 854; Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 791 (D.C. Cir. 1971); Carl Zeiss v. Carl Zeiss, 40 F.R.D. 318, 327 (D.D.C. 1966); Scott v. PPG Industries, Inc., 142 F.R.D. 291, 294 (N.D.W. Va. 1992).

The factors to be weighed include (1) the degree to which the proffered evidence is relevant,[6] (2) the extent to which it may be cumulative, and (3) the opportunity of the party seeking disclosure to prove the particular facts by other means. United States v. AT&T, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981) (citing United States v. IBM, 20 F.R. Serv. 2d 1082, 1089-

[6] A requesting party cannot, as a matter of law, demonstrate "need" in the absence of relevance. United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (internal memoranda containing unpublished views of agency staff regarding legal issues are not relevant to court's interpretation of the law).

91 (S.D.N.Y. 1975)); see Dairyland, 77 Fed. Cl. at 338; Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996); In re Franklin National Bank Securities Litigation, 478 F. Supp. 577, 583 (E.D.N.Y. 1979). To compel disclosure, the claimant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." Carl Zeiss, 40 F.R.D. at 328-29.[7]

C. The Government Has Properly Invoked The Deliberative Process Privilege Here

Dairyland does not seriously contend that the Government has failed properly to invoke the deliberative process privilege over the 27 documents at issue here. In its motion, Dairyland states that, "assuming *arguendo* that the government has properly invoked the deliberative process privilege as to all these documents (a point Dairyland contests)," Dairyland's need for the documents outweighs the privilege. PBr5 (emphasis added). Although stating in passing that it contests the propriety of the Government's invocation of the privilege, Dairyland does not identify any reasons that the Government's invocation was improper.

Here, the Secretary of Energy properly delegated to Mr. Alan Brownstein the authority to invoke the deliberative process privilege upon the agency's behalf. A34-47; see Marriott Int'l, 437 F.3d at 1307 (permitting agency head to delegate authority to invoke deliberative process privilege). Mr. Brownstein, after a careful review of the documents, invoked the privilege over the 27 documents at issue here. In response to Dairyland's prior challenges to the Government's

---

[7] In its June 29, 2007 decision in this case, the Court held that the claimant seeking production does not have to establish a "compelling need" for the documents to which the deliberative process privilege applies. Dairyland, 77 Fed. Cl. at 338. We respectfully disagree with that portion of the Court's prior order, given that the United States Court of Appeals for the Federal Circuit has plainly stated that "a showing of compelling need can overcome the qualified deliberative process privilege." Marriott Int'l, 437 F.3d at 1307 (citing In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997)).

invocation of the deliberative process privilege over other documents in this case, involving a similar delegation and document review, the Court held that the Government had properly invoked the privilege. Dairyland, 77 Fed. Cl. at 340. Dairyland has identified no argument or evidence that would mandate a different result here.

D. Dairyland Has Not Made A Showing Of Need Sufficient To Support Its Motion To Compel The Deliberative Process Documents

1. Overview

In response to the Government's invocation of the deliberative process privilege over the 27 documents at issue here, Dairyland has not established that it has any need for the documents, much less one that overcomes the harm that production of the documents to Dairyland would cause to DOE's interest in encouraging free and open discussions during internal agency deliberations.

As is clear from Mr. Brownstein's declaration, these documents concern a variety of subjects, many of which are wholly irrelevant to the Court's determination of DOE's obligations to Dairyland beginning January 31, 1998. For example, Dairyland seeks production of the documents addressed on page 11, paragraph 1, of Mr. Brownstein's declaration, which concern DOE's evaluation of interim storage. PBr7-8; A11-12. DOE did not pursue interim storage, and the consideration of this possibility cannot inform the Court regarding what DOE's obligations were to Dairyland. Similarly, Dairyland seeks documents regarding DOE's transportation and waste acceptance program to support the Yucca Mountain project. PBr6; A14. Dairyland has failed to explain how a draft OCRWM presentation concerning transportation and waste acceptance for Yucca Mountain could be relevant to its case or that it has shown a "compelling need" for such a document.

Dairyland also failed to establish a need for the documents that reference possible SNF acceptance rates. PBr7; A6. Contrary to Dairyland's contention, these documents do not relate to the rates of acceptance that DOE would have used if it had been able to begin acceptance in 1998. By definition, these documents cannot inform such an inquiry because they were all produced more than three years after DOE was obligated to begin acceptance. Accordingly, these documents cannot be relevant and cannot inform the Court as to DOE's obligation to Dairyland and the other utilities beginning January 31, 1998. Similarly, as we discuss in detail below, the other documents that Dairyland seeks, which relate to scheduling of SNF acceptance, interim storage of SNF, and the nuclear utilities' Private Fuel Storage ("PFS") initiative, are largely irrelevant to the Court's inquiry in this case and are certainly not so critical to this matter so as to justify their release in the face of DOE's legitimate needs to protect the release of these documents as it continues to administer the waste management program.

For the Court's convenience, we have grouped Dairyland's challenges to the Government's assertions of deliberative process privilege to correspond with the manner in which they are set out in Dairyland's motion to compel. This formatting does not indicate agreement by the Government that the documents should be categorized in this fashion for any substantive purpose.[8]

[8] Dairyland modified the Government's September 17, 2007 privilege log, adding an additional column to the document and attaching to each of the Government's Bates-numbered entries a separate "Ref. No." This document is appended to Dairyland's motion to compel. For the sake of clarity in this response, we generally identify the challenged documents by both Dairyland's system (Ref. No.) and the Government's (Bates number).

2. Document Ref. No. S183[9]

Dairyland challenges the Government's assertion of deliberative process privilege over Ref. No. S183 (Bates No. CTR597000556) on the following grounds: (1) the rate at which DOE could have accepted SNF from utilities once it begins performance is "highly relevant"; and (2) the Court has previously released documents of a similar nature. PBr6. Dairyland's challenges are without merit. The Government described this document as follows in its September 17, 2007 privilege log:

> E-MAIL ADDRESSING OCRWM'S ANALYSES OF THE POTENTIAL FOR ACCELERATED ACCEPTANCE OF SNF AND ACCELERATED DEVELOPMENT OF SNF STORAGE AND DISPOSAL FACILITIES TO SUPPORT THE DEVELOPMENT OF YUCCA MOUNTAIN; THE DOCUMENT INCLUDES RECOMMENDATIONS MADE TO DOE'S DEPUTY SECRETARY CONCERNING OCRWM'S TRANSPORTATION PROGRAM, FORMING PART OF THE DELIBERATIVE PROCESS.

Further, Mr. Brownstein's declaration states that, "[b]ecause the contemplation of these goals as program objectives would be of extreme interest to so many of the [OCRWM] program's constituencies, release of [this document] would lead to extensive questioning of program personnel . . . [which would] affect their willingness to freely provide feedback and recommendations in response to further requests from policy makers." A13, ¶1. Thus, as indicated by the description in the privilege log and supported by Mr. Brownstein's declaration,

---

[9] Although Dairyland challenges document S1139 (Bates No.CTRHQR6650001-HQR6650005) as a proposal regarding interim storage, it is a document dealing with accelerated development of facilities at Yucca Mountain. For that reason, Mr. Brownstein addressed both of these documents together. A13, ¶ 1. As was the case with regard to S183, Dairyland has failed to show an evidentiary need for S1139.

disclosure of this document to Dairyland would have an adverse effect upon the ability of Government personnel to freely discuss these matters with policy makers.

In the face of this clear and specific articulation of the harm that the release of this document would have upon DOE, Dairyland attempts to justify production of the document on the grounds that "the rate at which the government would have or could have accepted SNF from utilities once it commenced performance is highly relevant to this litigation." PBr6. This assertion fails for several reasons.

First, the document is not relevant to this litigation. Simply stated, a document that DOE prepared years after DOE was to have begun performance under Standard Contract has no relevance to how DOE would have performed absent a breach. Second, even if the Court were to conclude that the document is somehow relevant to this litigation, there are a myriad of documents that DOE has already produced that directly address the issue of how DOE may begin acceptance of SNF under the Standard Contract. Accordingly, production of this document is cumulative and not necessary to Dairyland's presentation of its case.

Dairyland's mere assertion that this issue is "highly relevant" and that similar documents have been disclosed does not meet its burden to show a compelling need for production of this document, particularly given DOE's conclusion that the release of this document could frustrate DOE's ability to administer this program into the future.

3 . <u>Document Ref. No. S184</u>

Dairyland challenges the Government's assertion of deliberative process privilege over Ref. No. S184 (Bates No. CTR5970654-CTR5970701) on the following grounds: (1) OCRWM's transportation and acceptance program plans are "highly relevant"; and (2) the Court has previously released documents of a similar nature. PBr6-7. Dairyland's challenges are

unfounded. The Government described this document as follows in its September 17, 2007 privilege log:

> DRAFT PRESENTATION PREPARED BY OCRWM PERSONNEL FOR THE THEN UNDERSECRETARY OF ENERGY, CONCERNING OCRWM'S TRANSPORTATION AND WASTE ACCEPTANCE PROGRAM TO SUPPORT THE YUCCA MOUNTAIN PROJECT; THE DOCUMENT CONTAINS ANALYSES AND RECOMMENDATIONS CONCERNING THE STATUS AND RISKS RELATED TO THE PROGRAM AND WAS PREPARED FOR SENIOR DECISION MAKERS, FORMING PART OF THE DELIBERATIVE PROCESS.

In his declaration, Mr. Bronwstein states that, "[b]ecause OCRWM has not finalized its plans for transportation . . . [this document] provide[s] insight into some of the issues that are still under consideration and are the subject of continuing analysis by program personnel . . . [the release of which] would have a chilling effect upon DOE's on-going analysis." A14.

Again, Mr. Brownstein's declaration, consistent with the description in our privilege log, shows that the disclosure of this document would adversely affect DOE's continuing programs. Further, Dairyland has failed to establish that production of this document would not be cumulative in light of the massive amount of previously-produced material that addresses OCRWM's transportation and waste acceptance programs. Again, actions that DOE may take in the future related to the Standard Contract are simply not relevant to how DOE was obligated to perform had it begin SNF acceptance in 1998. Further, even if this document is somehow relevant to this litigation, Dairyland has failed to show how the document is not cumulative of other previously released documents or that it is unique to proving its alleged claim.

Dairyland's bald assertion that this document is "highly relevant" and similar to other documents which have been released does not meet its burden to show an evidentiary need that

outweighs DOE's need for full and open discussion. In fact, it actually establishes that the document contains unique information that is, in any event, not relevant to this litigation. In short, Dairyland has provided no justification for the Court to conclude that the alleged relevance of this document outweigh DOE's legitimate need to protect the information within the document to continue the administration of the waste management program.

4. <u>Document Ref. Nos. S428, S1035, S1139, S1141, S1142, S1143, S1144</u>

Dairyland challenges the Government's assertion of deliberative process privilege protection over Ref. Nos. S428 (Bates No. HQR4921264-HQR1279), S1035 (Bates No. HQR6130953-HQR6130968), S1141 (Bates No. HQR670002-HQR670013), S1142 (Bates No. HQR670015-HQR670026), S1143 (Bates No. HQR670028-HQR670039), and S1144 (Bates No. HQR670041-HQR670053) on the following grounds: (1) the documents address scheduling of SNF acceptance; and (2) the Court has ordered production of similar documents in the past. PBr7. Dairyland's challenges are misplaced.

The documents that Dairyland is seeking are duplicate or different versions of white papers and outlines related to legislative proposals to accelerate DOE's acceptance of SNF. Mr. Brownstein states that these "documents were requested by senior OCRWM decision making officials [which] discuss approaches for legislative initiatives, detailing the advantages and disadvantages that would benefit the Department . . . [and that the disclosure] of these documents would inhibit OCRWM personnel from offering the kind of creative ideas essential to the establishment of Departmental strategy on this controversial subject. A6.

First, Dairyland acknowledges that other similar, but non-privileged, documents were produced in the past. Production of additional documents would simply be cumulative and, in and of itself, does not establish that Dairyland has an evidentiary need for additional documents

on the same subject matter. Second, none of these documents would inform the question concerning the Government's contractual obligations to Dairyland, or any other SNF plaintiff, beginning January 31, 1998. Again, Dairyland has failed to show a compelling need which would overcome the adverse affect that disclosure of these document would have upon the Government and its administration of the waste management program.

5. Document Ref. Nos. S605, S606, S607, S609, S610, S611, S612, S613, S615, S616, S617, S618, S619[10]

Dairyland challenges the Government's assertions of deliberative process privilege over Ref. Nos. S605 (Bates No. HQR5050225-HQR5050228), S606 (Bates No. HQR5050229-HQR5050233), S609 (Bates No. HQR5050963-HQR5050981), S610 (Bates No. HQR5051034-HQR5051035), S611 (Bates No. 5051036-HQR5051038), S612 (Bates No. HQR5051040-HQR5051043), S613 (Bates No. HQR5051045-HQR5051049), S615 (Bates No. HQR5051056-HQR5051060), S616 (Bates No. HQR5051061-HQR5051064), S617 (Bates No. HQR5051065-HQR5051072), S618 (Bates No. HQR5051073-HQR5051079), and S619 (Bates No.HQR5051083-HQR5051089) on the grounds that documents related to interim storage are "highly relevant" regarding the rate and schedule of SNF acceptance, priority for shutdown reactors, and the Private Fuel Storage ("PFS") initiative. PBr7-8. Dairyland also claims that the Court has required the release of similar documents in the past. Id. Dairyland's challenges are insufficient to overcome the Government's assertion of privilege.

10 Although Dairyland suggests that S607 (Bates No. HQR5050268-HQR5050282) is a document that deals with interim storage, it is actually a document which deals with accelerated SNF acceptance, as described in Mr. Brownstein's declaration. A13. As discussed with regard to S183 and S1139, Dairyland has also failed to show an evidentiary need for S607.

Interim storage is an issue that has been repeatedly visited by DOE, the Executive Branch, and Congress for many years, although no final decision has been made. A11-12. The documents in question were prepared for senior Department officials and Office of Management and Budget personnel, analyzing DOE's options for interim SNF storage and the perceived advantages and disadvantages of each option. The specific decision at issue was whether DOE would accept SNF at an interim storage facility, and these documents reflect DOE's policy deliberations on that issue. Because DOE receives numerous inquiries from Congress on this issue, it is important for DOE to gather input from numerous sources within DOE while speaking with one voice in response to those inquiries. Consequently, it would be detrimental to the process of formulating a reasoned and thoughtful response if the individuals who were providing that input knew their input could become public. Thus, disclosure of these document would "have a detrimental effect upon the decision making process" because DOE employees would be afraid to offer "creative ideas and opinions in the future." A12. Dairyland simply has not offered the Court any rationale (other than naked assertions that the documents are "highly relevant to several issues in this litigation," PBr7) to show its need for this category of documents. Once again, other than a blithe assertion of "relevance," Dairyland has failed to explain how these documents relate to DOE's obligations in the "but for" world or are uniquely relevant to its claim in this case. Simply put, Dairyland has failed to show a need that would justify disclosure of these document despite DOE's clearly articulated concerns about the release of these documents.

6. <u>Document Ref. Nos. S1073, S1074, S1127, S1128, S1129</u>

Dairyland challenges the Government's assertion of attorney-client privilege over Ref. Nos. S1073 (Bates No. HQR6440218-HQR6440219), S1074 (Bates No. HQR6440220-

HQR6440221), S1127 (Bates No. HQR654003-HQR654004), S1128 (Bates No. HQR654005-HQR654007), and S1129 (Bates No. HQR654008-HQR654010) on the grounds that these documents relating to PFS would reflect upon DOE's views regarding the "reasonableness of the PFS effort." PBr8. Dairyland's challenge is without foundation.

These are draft documents providing background information and talking points regarding PFS in anticipation of a meeting between Secretary Bodman and Governor Jon Huntsman. A27-28. These papers discuss DOE's position on PFS, as well as discussions with Members of Congress regarding PFS. It is important that DOE staff be able to brief the Secretary regarding sensitive political issues without fear of scrutiny by the public. If DOE personnel believed that their suggestions could become public, they would be reluctant to provide such advice in the future. Id.

Further, Dairyland cannot establish an evidentiary need for these documents simply because "PFS-related expenditures comprise a significant portion of Dairyland's damages claim." PBr8. Dairyland fails to offer any rationale as to why its quantum of expenditures on alleged damages establishes the required need. In short, Dairyland has failed to establish that there is any nexus whatsoever between this documents and Dairyland's claim. Nor has Dairyland shown how these documents uniquely relate to its claim for the recovery of its investment in PFS. Accordingly, Dairyland has failed to show a need for these documents that outweighs DOE's valid concerns related to the release of these documents.

## III. THE COURT NEED NOT ENGAGE IN AN *IN CAMERA* REVIEW OF THE PRIVILEGED DOCUMENTS, GIVEN THAT THE AGENCY'S HARM IS WELL-DOCUMENTED IN THE PRIVILEGE LOG AND ACCOMPANYING DECLARATION

To the extent that the Court takes notice of Dairyland's unsupported allegations of need and finds that they have any relevance to these proceedings, the Court may engage in an in camera inspection of the documents that DOE is claiming as privileged. Vons Cos. v. United States, 51 Fed. Cl. 1, 22-23 (2001). Although we have provided the Court with information and Mr. Brownstein's declaration in an effort to eliminate the Court's need to engage in such a time-consuming effort, a simple review of the documents that the Government has claimed as privileged would completely eliminate any concern about Dairyland's unfounded representations.

Nevertheless, the "purpose of the rules governing the assertion of privileges is, in part, to avoid having the court expend its resources in reviewing every document that every defendant claims is privileged." Torres v. Kuzniasz, 936 F. Supp. 1201, 1213 (D.N.J. 1996); see Ray v. Turner, 587 F.2d 1187, 1995 (D.C. Cir. 1978) (in camera inspection should not be routinely granted on theory that "it can't hurt"). While we respect the Court's authority to conduct in camera inspections, there is simply no need for such a review in this instance.

As evidenced above, the detailed descriptions appearing in the Government's September 17, 2007 privilege log, coupled with Mr. Brownstein's detailed declaration, more than adequately support the privileges asserted by the Government and detail the harm that would result from disclosure of the requested documents. In light of the fact that Dairyland has provided nothing but bald assertions of need for the documents, no in camera review by the Court is necessary here. See Young v. CIA, 972 F.2d 536, 538 (4th Cir. 1992).

Moreover, absent any exceptional circumstances warranting in camera review, the Court need not place itself in the awkward position of having to review, and then disregard for purposes of trial, privileged information gleaned from the Government's documents. However,

prior to the Court ordering the production of any of these documents to Dairyland, the Government asks that the Court undertake the same in camera review that the Court is currently performing (on certain documents that are the subject of Dairyland's earlier January 2007 motion to compel the production of documents withheld on the basis of the deliberative process privilege) so that it may accurately assess and weigh the harm to the Government from the disclosure of any of these documents against Dairyland's need for these documents. See Marriot Int'l, 437 F.3d at 1307; Reino de Espana v. American Bureau of Shipping, No. 03-Civ-3573, 2005 WL 1813017, at *13 (S.D.N.Y. Aug. 1, 2005); Greenpeace v. National Marine Fisheries Service, 198 F.R.D. 540, 545 (W.D. Wash. 2000).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny Dairyland's motion to compel as it pertains to documents withheld by the Government on the basis of the deliberative process privilege. In the alternative, should the Court determine to order the production of any of the documents at issue, the Government requests that the Court restrict the production of such documents for use in this case only.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by Scott R. Damelin
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

October 29, 2007