No. 04-106C
(Chief Judge Damich)

Electronically Filed: November 2, 2007

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

DAIRYLAND'S REPLY TO GOVERNMENT RESPONSE TO DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS

---

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

Table of Contents

I. The Government Has Not Substantiated Any of Its Attorney-Client or Work Product Privilege Claims ....................2

A. The Government Cannot Rely Upon Its Privilege Log Descriptions to Sustain Its Privilege Claims ....................2

1. The Government Has Failed to Establish That an Attorney is an Author or Addressee of a Challenged Document ....................6

2. The Government Has Failed to Demonstrate That Challenged Work Product Documents Were Actually Prepared in Anticipation of Litigation ....................8

B. The Government Has Not Demonstrated That the Drafts of Spent Fuel Disposal Contracts for New Nuclear Reactors are Privileged ....................9

C. The Government Has Failed to Demonstrate That the Challenged Documents Withheld on Attorney-Client Privilege Grounds Were Provided or Communicated to the Client ....................12

II. *In Camera* Review is Not Necessary ....................13

III. At a Minimum, the Government Should be Required to Produce Documents in Redacted Form ....................13

CONCLUSION ....................14

# Table of Authorities

Federal Cases

*AAB Joint Venture v. United States*, 75 Fed. Cl. 432 (2007) .......... 2

*Era Franchise Sys., Inc. v. Northern Ins. Co. of N.Y.*, 183 F.R.D. 276 (D. Kan. 1998) .......... 3

*Evans v. United Fire & Cas. Ins. Co.*, No. 06-6783, 2007 WL 2323363 (E.D. La. Aug. 9, 2007) .......... 3, 4

*Falkner v. Gen. Motors Corp.*, 200 F.R.D. 620 (S.D. Iowa 2001) .......... 3

*Flaherty v. United States*, 610 F.2d 756 (Ct. Cl. 1979) .......... 10

*In re Grand Jury Proceedings*, 33 F.3d 342 (4th Cir. 1994) .......... 11

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997) .......... 3

*In re Smithkline Beecham Corp.*, No. 01-632, 2000 WL 1717167 (Fed. Cir. Nov. 1, 2000) .......... 2

*In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) .......... 5

*Jacobs v. Tapscott*, No. 3-04-CV-1968-D, 2006 WL 1140460 (N.D. Tex. May 1, 2006) .......... 3

*Maldonado v. Ramirez*, 757 F.2d 48 (3d Cir. 1985) .......... 10

*Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35 (D. Md. 2000) .......... 3

*Rohm & Haas Co. v. Brotech Corp.*, 815 F. Supp. 793 (D. Del. 1993) .......... 10

*Schenet v. Anderson*, 678 F. Supp. 1280 (E.D. Mich. 1988) .......... 10, 11

*Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306 (2002) .......... 4

*Zelinski v. Brunswick Corp.*, 185 F.3d 1311 (Fed. Cir. 1999) .......... 9-10

Treatises

2 Paul R. Rice, *Attorney-Client Privilege in the United States* § 11:10 (2d ed. 1999) .......... 4

Federal Rules

RCFC 26(b)(5) .......... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S REPLY TO GOVERNMENT RESPONSE TO DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE GROUNDS

The government's response to Dairyland's attorney-client privilege and work product challenges essentially states that the Court should uphold the government's privilege claims based upon the government's say so and nothing more. But once Dairyland challenged the government's privilege assertions, it was incumbent upon the government to put forth *evidence* establishing that all of the elements of the attorney-client privilege and/or work product doctrine have been met for each challenged document. The government argues that its privilege log "provides ample descriptive information to verify the privileges asserted." Gov't Resp. at 11. A privilege log, however, is not evidence, and the bald, conclusory assertions of counsel contained therein and in the government's response do nothing to substantiate the government's privilege claims. Because the government has failed to provide evidentiary support for any of its attorney-client privilege or work product doctrine claims, the Court should compel production of the 178 documents that Dairyland has challenged here.[1]

[1] The number of attorney-client privilege and work product documents that are being challenged by Dairyland in this motion to compel is 178, not 179 as the government asserts in its

## I. The Government Has Not Substantiated Any of Its Attorney-Client or Work Product Privilege Claims

### A. The Government Cannot Rely Upon Its Privilege Log Descriptions to Sustain Its Privilege Claims

The government's response rests entirely upon an erroneous premise: that, in order to establish that the challenged documents should be withheld from production on attorney-client or work product privilege grounds, the government merely needs to provide a privilege log that complies with the requirements of RCFC 26(b)(5). *See* Gov't Resp. at 7-8. According to the government, once it makes this "rather modest *prima facie* showing," the burden then shifts to Dairyland, which must demonstrate "based upon the privilege log or otherwise, that particular documents appear *not to be* privileged." *Id.* at 8 (emphasis added). The government's argument is flat out wrong and turns the law of privilege directly on its head.

In asserting that providing a privilege log that complies with RCFC 26(b)(5) is all that is necessary for it to meet its privilege burden, the government has confused the procedural requirements for *asserting* a privilege claim with the substantive requirements for *sustaining* a privilege claim once it has been challenged. As this Court has held, a party asserting the attorney-client or work product privilege must set forth *objective facts* to establish that the requirements for asserting the privilege are met. *AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 446-47 (2007) (Damich, C.J.); *see also In re Smithkline Beecham Corp.*, No. 01-632, 2000 WL 1717167, at *3 (Fed. Cir. Nov. 1, 2000). "Objective facts" means more than just the

---

response. The reason for this discrepancy is that Dairyland erroneously listed document S1130 twice in its motion to compel. In addition to the 178 attorney-client privilege and work product documents, Dairyland has also moved to compel the production of 27 documents withheld on deliberative process grounds listed on the government's September 17, 2007 privilege log. Dairyland's reply to the government's response to the deliberative process portion of Dairyland's motion to compel is due on November 8, 2007, and Dairyland expects to meet that deadline.

conclusory, unsworn assertions of government counsel set forth in a privilege log or in an opposition memorandum. *See Evans v. United Fire & Cas. Ins. Co.*, No. 06-6783, 2007 WL 2323363, at *4 (E.D. La. Aug. 9, 2007) ("The mere assertion of a lawyer in defendant's opposition memorandum or in the privilege log that materials were prepared in anticipation of litigation is not evidence sufficient to bear the burden."). It means that the government must put forth *substantive evidence*, typically through supporting affidavits from individuals with personal knowledge of the relevant facts, which demonstrates that all of the elements of the applicable privilege have been met for each challenged document. *See Falkner v. Gen. Motors Corp.*, 200 F.R.D. 620, 622 (S.D. Iowa 2001) (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997)) (party asserting the work product privilege meets its burden of establishing a factual basis for its assertion "by providing the reviewing court with a detailed privilege log and explanatory affidavit of counsel setting forth a factual basis for the privilege"); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 39 (D. Md. 2000) ("[W]hen, as here, plaintiff challenged the sufficiency of defendant's assertions of these privileges, defendant had an affirmative duty to show why they applied to the categories of the documents identified."); *Era Franchise Sys., Inc. v. Northern Ins. Co. of N.Y.*, 183 F.R.D. 276, 279 (D. Kan. 1998) (to carry its burden, the party objecting to discovery on the basis of privilege "must provide sufficient information to enable the court to determine whether each element of the asserted privilege is satisfied"); *Jacobs v. Tapscott*, No. 3-04-CV-1968-D, 2006 WL 1140460, at *1 (N.D. Tex. May 1, 2006) ("The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists.").

A leading authority on the attorney-client privilege has summarized the burden of the privilege proponent as follows:

> Once the proponent has properly asserted the privilege claim and the requisite information about the allegedly privileged document provided to the opponent, the proponent must substantiate all actual assertions about the claim. *This burden is not satisfied by the representations in supporting memoranda. This is usually done through supporting affidavits from individuals with personal knowledge of the relevant facts*, exhibits attached to the motion and briefs, discovery responses, pleadings, and other undisputed facts. . . . *To the extent that evidentiary support for the factual basis of the privilege claim is not forthcoming*, the claim is little more than a bald, conclusory, or *ipse dixit* assertion. *The court will deny such an assertion because it forecloses meaningful independent inquiry by the finder of facts (the judge) into the validity of the claim.* Courts view the assertion as nothing more than a deliberate attempt to delay and obstruct discovery. Although an attorney's word may be "taken on its face," a privilege claim is not self-executing. It requires more proof than a conclusion by the party asserting the claim (or his attorney) that it is justified.

2 Paul R. Rice, *Attorney-Client Privilege in the United States* § 11:10 (2d ed. 1999) (citing cases) (emphasis added); *see also Evans*, 2007 WL 2323363 at *3 (quoting Rice, *supra*).

The only authority the government cites in support of its contrary position is Judge Sypolt's opinion in *Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306 (2002). In that decision, Judge Sypolt denied a motion for clarification brought by the plaintiffs with regard to an unpublished order directing the plaintiffs "as to each document listed in the privilege log, to provide reasons 'why the Government's description of the particular document [sought to be protected] does not constitute *prima facie* grounds for invoking a claim of privilege.'" *Id.* at 308. In denying the plaintiffs' motion, the court stated "[T]he challenger of a privilege has the burden of showing, whether based on the terms of the description, or on extraneous knowledge, that the document appears *not* to be privileged." *Id.* at 309 (emphasis in original). To the extent that Judge Sypolt's opinion holds that the challenging party bears the burden of demonstrating that a document is *not* privileged once the proponent of the privilege properly invokes the privilege (via a privilege log or otherwise), then it is clearly wrong

and should not be followed. As the numerous authorities described above demonstrate, invocation or assertion of the attorney-client privilege or work product protection cannot serve as a substitute for the privilege proponent's showing establishing factually each element of the asserted privilege once it has been challenged. Furthermore, Dairyland has met the standard set out by Judge Sypolt by providing several reasons in its motion to compel why each of the government's claims of privilege are suspect. These reasons include, but are not limited to, that for most of the attorney-client privilege documents, the privilege log does not list an attorney as an author or recipient or show that they were disclosed to the client and, for many of the work product documents, that the log descriptions do not show they were prepared in anticipation of litigation.

The government's reliance on *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) (*see* Gov't Resp. at 6, 15, 19, 36) is similarly misplaced. In that case, the court held that an invention record submitted to a corporate legal department was entirely protected by the attorney-client privilege. In so holding, the court did not merely accept assertions in a privilege log — it relied upon a declaration from Spalding's in-house counsel that substantiated all elements of the attorney-client privilege. *Id.* at 805. Thus, *Spalding* provides no support for the government's position here that a *document description in a privilege log* is sufficient by itself to sustain a privilege claim.

Here, other than providing a conclusory declaration from DOE counsel Jane K. Taylor that addresses in general terms one category of challenged documents (draft contracts for new nuclear reactors), the government has not put forward *any evidence* to support its privilege claims. Instead, the government's response almost entirely consists of unsupported, conclusory arguments of counsel that attempt to explain why the

privilege log descriptions for each challenged document are sufficient to meet its burden. *See, e.g.*, Gov't Resp. at 19 ("[T]he Government's *description* of these documents *plainly demonstrates* that they were prepared at the direction of Ms. Kordyak for litigation purposes relating to the SNF cases currently pending before this Court."); *id.* at 20 ("Dairyland's argument that the absence of a name in the 'addressee' column of the Government's log must mean that this document was not communicated by and between Ms. Taylor and DOE is absurd *given the document's description*."); *id.* at 22 ("The *descriptions by the Government* . . . *demonstrate* that each of these documents are protected by the attorney-client privilege as they all contain legal advice provided to DOE by its Office of General Counsel."); *id.* at 27 ("The Government's *facially sufficient description* of Ref. No. S635 *demonstrates* that Jane Taylor . . . provided the "legal advice and analysis" contained in this document. . . .") (emphasis added). However, a privilege log is nothing more than a detailed assertion of counsel, and the Court can no more accept the document descriptions contained therein as evidence establishing the government's privilege claims than it could accept Dairyland's initial disclosures in this case as evidence establishing Dairyland's damages claim.

1. <u>The Government Has Failed to Establish That an Attorney is an Author or Addressee of a Challenged Document</u>

The most obvious example as to why the government's *ipse dixit* arguments are insufficient to uphold its privilege claims can be found in the government's "explanation" of the privilege log's failure to name an attorney as an author or addressee for almost every challenged document. For most of these documents, the government blithely contends that these glaring deficiencies are of no moment because, in the privilege log's "document description" column, the "AC Attorney," "AW Attorney," or "AC/AW

Attorney" (or the name of a government agency such as DOE-OGC or DOJ) listed at the end of each description is the attorney who purportedly authored, provided the legal advice and/or whose mental impressions are contained in the document. However, the government's conclusory unsworn assertions in its privilege log and brief (*e.g.*, ". . . we know that Ms. Taylor authored this document based on our discovery inquiries," Gov't Resp. at 14-15) are not evidence. And evidence is important. It is an everyday occurrence that advocates for parties in adversarial proceedings make conflicting assertions. Ultimately, the trier of fact (in this instance, the Court) must be able to assess the evidence supporting such assertion to decide who is right. For example, by themselves, the government's assertions that it knows that Jane Taylor authored certain documents tells the Court nothing. The assertions fail to explain to the Court with any specificity *how the government knows this* in light of the fact that it is obviously unable, for some unknown reason, to identify Ms. Taylor in the "author" column of the privilege log as the author of these documents.[2] In particular, we do not know what factual inquiries were made by the government, how specific such inquiries were, or what the responses to these inquiries were. Without knowing this, there exists no evidentiary basis for the Court to conclude that the government's bald assertions are, in fact, true.

Of course, the burden on the government on proving its claims of privilege would not have been onerous if the challenged documents were, in fact, privileged. The government could have readily met its burden by submitting, in support of its response, non-conclusory declarations from the government counsel whose legal advice or work

[2] For example, for Document Ref. No. S6 the government asserts that Ms. Taylor authored this document even though "By their very nature whitepapers do not have identified authors." Gov't Resp. at 14. Such an assertion merely begs the question of what particular inquiries were made by government counsel that enabled it to assert that this document was authored by Jane Taylor.

product is supposedly contained within the subject documents that explained why the applicable privilege elements are satisfied here. In many instances, the government's privilege log asserts that Jane Taylor's legal analysis or work product is implicated in the challenged documents. Given that the government has provided a declaration (albeit a conclusory one) from Ms. Taylor to address one category of challenged documents (draft spent fuel contracts for new nuclear reactors) and also a declaration from Alan Brownstein to address the deliberative process documents listed on its privilege log, it is telling that the government failed to provide a declaration from Ms. Taylor or anyone else that attempts to prove up the government's claims of privilege for the other challenged documents. The government's failure to do so is fatal to its privilege claims.[3]

2. The Government Has Failed to Demonstrate That Challenged Work Product Documents Were Actually Prepared in Anticipation of Litigation

The government also has not met its burden to demonstrate with substantive evidence that certain documents for which it is asserting work product protection were in fact prepared in anticipation of litigation. For Document Ref. Nos. S11, S232, S233 and S234, Dairyland pointed out that, based upon their privilege log descriptions, it appeared that these documents were prepared for non-litigation purposes, such as providing information to Congress. Motion to Compel at 13. In response, the government merely asserts the contrary, *viz.*, "the Government's descriptions of these documents demonstrate

[3] Even assuming *arguendo* that the government could properly rely upon its log descriptions to sustain its privilege claims, the government would still have not met its burden to demonstrate that documents S590, S591, S592, S598, S604 or S641 was authored by an attorney because its privilege log does not identify any specific attorney(s) as the author of these documents. Instead, the government insufficiently asserts that these documents were authored by unnamed attorneys at the Department of Energy's Office of General Counsel or the Department of Justice. *See* Gov't Resp. at 21-23, 25, 28-29. But if the government cannot specifically name the attorney or attorneys who authored a particular document, why should the Court view as anything but speculation the government's assertion that it *was* authored by an attorney?

that they were prepared in anticipation of the SNF litigation currently pending before this Court" (Gov't Resp. at 17), but does not offer a shred of proof to back this assertion up. The government provides essentially identical evidence-free assertions that Document Ref. Nos. S236, S237, S238, S239, S591, S592, S597, S604, S635, S641, S682, S683, S684, S690, S700, S701, S955, S956, S957 and S1130 were also prepared in anticipation of litigation, arguing that Dairyland is somehow engaging in "unfounded speculation" by challenging the factual basis of the government's privilege log descriptions in this regard. *See, e.g.*, Gov't Resp. at 30, 34. The government's failure to provide any evidence showing that these documents were created in anticipation of litigation is yet another basis for rejecting the government's work product claims.

B. The Government Has Not Demonstrated That the Drafts of Spent Fuel Disposal Contracts for New Nuclear Reactors are Privileged

As mentioned above, the government submitted a declaration from DOE counsel Jane Taylor (attached to government's response at A.23-26) that attempts to explain why the 73 challenged documents that purport to be drafts of proposed spent fuel disposal contracts for new nuclear reactors are privileged. However, that declaration is remarkably vague and conclusory and fails to address fundamental elements of the attorney-client privilege. For example, the declaration summarily asserts that each of these draft contracts contain "critical privileged advice and analysis" (A.25), but fails to explain why or how the proposed terms of a draft contract — which, at bottom, concerns an anticipated *commercial* transaction, not a legal matter — would contain such advice or analysis or what subject areas this advice and analysis concerned. Accordingly, the Taylor declaration should be afforded no evidentiary weight. *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (conclusory declarations devoid of facts

upon which the conclusions were reached do not raise a genuine issue of material fact); *Flaherty v. United States*, 610 F.2d 756, 759 n.7 (Ct. Cl. 1979) ("an undetailed and conclusory affidavit can be given little or no weight"); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden.") (citation and internal quotations omitted).

Furthermore and perhaps most importantly, although the Taylor declaration asserts that Ms. Taylor and other identified DOE legal counsel were "involved" in the preparation of these draft contracts (A.25), the declaration (like the government's privilege log) does not identify *any persons* at DOE or elsewhere in the government to whom these documents were provided. In other words, the declaration fails to establish that any of the draft contracts for new nuclear reactors constitute or contain actual communications between an attorney and a client for the purpose of obtaining or rendering legal advice. In fact, the government has not provided any information that indicates that these documents are communications at all.

In this regard, the situation here is distinguishable from the situation in *Rohm & Haas Co. v. Brotech Corp.,* 815 F. Supp. 793 (D. Del. 1993), and *Schenet v. Anderson*, 678 F. Supp. 1280 (E.D. Mich. 1988), upon which the government relies. *See* Gov't Resp. at 42-43. In *Rohm & Haas*, the court held that a draft patent application was protected by the attorney-client privilege based upon actual evidence, *i.e.*, its *in camera* review of the document in question and other related documents, which established that the document constituted a confidential legal communication between an identified client and his attorney. 815 F. Supp. at 796-97. In *Schenet*, the court held that drafts of a

tender offer prepared by the defendants' corporate counsel were privileged where the defendants had demonstrated that the drafts contained confidential information conveyed by them to counsel. 678 F. Supp. at 1283-84. Here, the government does not assert and it has not presented any evidence showing that the draft contracts contain confidential information provided by identifiable persons at DOE for the purpose of obtaining legal advice. Furthermore, the holding in *Schenet* has been rejected by at least one appellate court. *See In re Grand Jury Proceedings*, 33 F.3d 342, 354-55 (4th Cir. 1994).

The government also devotes three pages of its response to argue that documents concerning proposed spent nuclear fuel contracts for new reactors are irrelevant to this case. *See* Gov't Resp. at 38-41. But the government previously raised and lost this argument back in February of this year when the Court granted Dairyland's motion to compel production of these documents, and the government never moved to reconsider the Court's decision. *See* Feb. 5, 2007 Order at 2 (granting Dairyland's motion to compel production of documents responsive to Request No. 4, "Documents related to the development of potential contracts between utilities and the government concerning the storage and/or disposal of spent nuclear fuel and high-level radioactive waste from nuclear reactors that are currently contemplated but not yet built."). Therefore, under the law of this case, the government's relevancy objection — *i.e.*, that production of these documents is not reasonably calculated to lead to the discovery of admissible evidence — has been overruled. In any event, contrary to the government's assertion, these documents are relevant to the issues in this case because they may very well reveal or reflect the government's view of what it considers to be reasonable contract terms concerning the rate and/or schedule of spent fuel acceptance under the current spent fuel

disposal contracts. They may also reveal the government's views on other deficiencies in the current contracts.

C. <u>The Government Has Failed to Demonstrate That the Challenged Documents Withheld on Attorney-Client Privilege Grounds Were Provided or Communicated to the Client</u>

The government does not dispute that the attorney-client privilege protects communications between an attorney and his or her client for the purpose of obtaining legal advice. *See* Gov't Resp. at 6. Yet, as discussed above with regard to the draft contracts for new nuclear reactors, the government does not assert or even attempt to demonstrate in its response that any of the challenged documents withheld on attorney-client privilege grounds were ever provided or otherwise communicated to the client. The government did not attempt to demonstrate this even though its privilege log does not identify *any addressee* for most of these documents.

Particularly illustrative of the deficiency of the government's response on this issue is its response to Dairyland's challenge to Document Ref. No. S570. In its motion to compel, Dairyland pointed out that the government did not identify an addressee for document S570 in its privilege log and, therefore, it had not shown that the document is a communication between an attorney and the client for the purpose of obtaining legal advice. Motion to Compel at 15. In its response, the government asserts that Dairyland's argument is "absurd," yet it tellingly still fails to identify any person who actually received this document. Gov't Resp. at 20. Instead, the government once again relies upon the document's privilege log description to assert, without any evidentiary support,

that this document was provided to unnamed persons at the Department of Energy. *Id.* But the privilege log description for document S570 does not state this anywhere.[4]

II. *In Camera* Review is Not Necessary

The government argues that there is no need for the Court to undertake an *in camera* review of the 178 documents now at issue. Dairyland agrees with the government that *in camera* review is not necessary, but for entirely different reasons. It is neither Dairyland's obligation to disprove the government's assertions of privilege nor the Court's obligation to review the challenged documents for indicia of privilege. If the government wanted the Court to look at the documents because it could not otherwise establish its privilege claims without revealing privileged material, then the government should have requested such review. It has not made such a request. Because it has not made such request, the government is limited to whatever evidence of privilege it could provide in response to Dairyland's challenges, and it has provided nothing. There is absolutely no need for the Court to get involved in the tedious and time consuming process of *in camera* inspection where the government has been given every opportunity to substantiate its privilege claims and it has failed to do so.

III. At a Minimum, the Government Should be Required to Produce Documents in Redacted Form

Finally, to the extent the Court is willing uphold any of the government's privilege claims, the Court should still compel the government to produce the challenged documents in

[4] The description for document S570 in the government's privilege log is as follows:

MEMORANDUM FROM J. TAYLOR (DOE-OGC) CONTAINING LEGAL ADVICE REGARDING DOE ACCEPTANCE OF SPENT NUCLEAR FUEL PROVIDED IN RESPONSE TO REQUEST FOR SAME; ADVICE RENDERED AS PART OF DOE-OGC'S RESPONSIBILITY TO PROVIDE LEGAL SERVICES TO DOE.
AC ATTORNEY: J. TAYLOR (DOE-OGC).

redacted form. Although the government does not dispute that most of the challenged documents do not consist entirely of privileged information, it asserts that redacting them would be somehow unfair and too burdensome. *See* Gov't Resp. at 11. The government's argument is without merit. Contrary to the government's suggestion, there is no recognized exception to a party's redaction obligations because the party has already produced a large quantity of documents or is withholding a large number of documents on privilege grounds. Moreover, the government has offered no declaration from counsel that explains why redacting no more than 178 documents would be too burdensome or estimates how long it might take to perform this task. In other words, the government's burdensomeness argument is just like its privilege claims: all form and no substance.

## CONCLUSION

For the foregoing reasons, as well as those stated in its initial motion, Dairyland respectfully requests that the Court grant its motion to compel and order the production of the 178 documents on the government's September 17, 2007 privilege log that are being withheld on attorney-client privilege and/or work product doctrine grounds.

Respectfully submitted,

November 2, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP
*WDC 371524721v2 11/2/2007*