IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: November 5, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S REPLY ON MOTION TO COMPEL PRODUCITON OF DOCUMENTS WITHHELD ON CLAIM OF PRESIDENTIAL COMMUNICATIONS PRIVILEGE AND OPPOSITION TO MOTION FOR A PROTECTIVE ORDER

The government's opposition to Dairyland's motion to compel the production of five documents the Court has found to be "highly relevant" to this case reflects apparent desperation to hide these documents from Dairyland and the Court's consideration at trial. It is otherwise difficult to explain the government's rampant disrespect for this Court's prior rulings on this issue.

1. The Court Has Already Determined that *In re Sealed Case* Provides the Appropriate Standard for a Showing of Need to Overcome a Claim of Presidential Communications Privilege.

In its October 17, 2007 Order resolving the government's motion for clarification, the Court adopted the standard of need to justify release of materials qualifying for the presidential communications privilege set out in *In re Sealed Case,* 121 F.3d 729, 754 (D.C. Cir. 1997) (requiring a showing that the "materials likely contains important evidence" and "that this evidence is not available with due diligence elsewhere.") *See* Order at 1-2. In the briefing on that motion, the parties addressed fully their views as to the applicable standard of need,

including the government's reliance on *Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367 (2004), and in resolving that motion, the Court noted explicitly that *In re Sealed Case* "provides the most persuasive guidance." Consistent with principles akin to the law of the case doctrine, now is not a time for reconsideration of the Court's decision (less than three weeks old) to follow the *In re Sealed Case* need standard. *See, e.g., Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007). Yet the government largely ignores this Court's October 17 adoption of the *In re Sealed Case* standard and instead repeatedly cites to *Cheney* as providing the applicable standard. *See* Govt. Opp. at 9, 11-12 and n.7, 15, 17. Moreover, beyond its mere repeated citations to *Cheney*, the government offers no reason for the Court to reconsider its adoption of *In re Sealed Case*. The Court should not credit such an approach.

2. *Cheney* Is Not Applicable to the Present Case and There Is No Support for the Government's Arguments for a Heightened Showing of Need by Dairyland.

Furthermore, as explained in Dairyland's response to the government's motion for clarification, *see* Dairyland Opposition to the Government's Motion for Clarification of the Court's Order of October 9, 2007 (filed Oct. 16, 2007) at 1-3, *Cheney* is not helpful to the government. *Cheney* does not purport to set out any standard for a showing of need to overcome a claim of presidential communications privilege over specific documents (regardless whether the claim has been formally invoked). Rather, *Cheney* considered whether the Office of the President would have to engage in a broad *search* for documents. 542 U.S. at 386. *Cheney* did not even adopt the three-part test repeatedly referred to by the government (relevancy, admissibility, and specificity) to establish grounds for a search of the Office of the President's files. It (nor any other authority) also offers no support the government's urged articulations of even more stringent standards for showings of need to overcome presidential communications

claims. *See* Govt. Opp. at 14 (urging imposition of "heightened" standards for relevance, admissibility and specificity), 16 (arguing that "Court must determine in light of 'heightened standard' whether the documents Dairyland seeks are truly necessary to the resolution of the issues be decided by the Court in this case."), 17 (claiming that Dairyland has "burden to demonstrate a critical need for the subject documents"). Rather, *Cheney* noted merely that the discovery requests before the Supreme Court there differed from the criminal subpoenas allowed in *United States v. Nixon*, 418 U.S. 683 (1974), which were required to meet that three-part standard consistent with Fed. R. Crim Proc. 17(c). *Id.*

Unlike the situation in *Cheney*, the present discovery dispute has nothing to do with searching files of the Office of the President. First, no search is at issue; the relevant searching was completed long ago, and five specific documents are at issue. Second, the files in which these documents were located are *DOE files*, not Office of the President files. Each of the disputed documents has been identified by DOE with a Bates number beginning with "HQR0," and the government has previously identified DOE Headquarters as the source of such documents. *See* List of Spent Fuel – Production CDs as of 04/17/07, exhibit 1 hereto.[1] Thus, the government's arguments about "special considerations" applicable when a party seeks information from the President or his close advisors in the White House, Govt. Opp. at 10, are irrelevant.

3. Dairyland Has Established Sufficient Need to Overcome any Claim of Presidential Communications Privilege Over the Five Disputed Documents.

Dairyland established in its October 18, 2007 showing of need that it clearly meets both prongs of the *In re Sealed Case* standard. Dairyland identified important, disputed issues in this

[1] This version of the list was exhibit 11 to Dairyland's June 12, 2007 deposition of Bernie White, the government's custodian of documents designated pursuant to RCFC 30(b)(6).

case to which these documents are relevant – a reasonable schedule and rate of spent fuel acceptance, priority acceptance for spent fuel from permanently shutdown reactors and the reasonableness of Dairyland's effort to mitigate damages through its participation in PFS. The government's position that the five documents at issue have "little (if any) relation to" those issues and its reference to the "highly relevant" status of these documents as being merely Dairyland's position, *see* Govt. Opp. at 15, is obdurate. The government knows well that *this Court*, after an *in camera* review, found the documents to be "highly relevant." *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330-344-45 (2007). And this Court reiterated that finding in the specific context of resolution of the present motion to compel. *See* Order of October 17, 2007 at 2 (" . . . this Court has already found in effect that the five documents meet the first of the requirements articulated in *In re Sealed Case*."). Incredibly, the government does not even acknowledge (much less, deal with) this Court's prior rulings.

Although the government does not explain well why it does not believe that these documents are relevant to the rate and schedule of acceptance and priority for shutdown plant issues, the government appears to take the position that the documents are too recent to be relevant under the government's theory of the spent fuel cases (as reflected in its answer to Dairyland's interrogatories) under which the government argues that it was to determine the applicable rate and schedule of spent fuel acceptance by fiat. *See* Defendant's Response to Plaintiff's First Set of Interrogatories as Amended in Response to the Court's February 5, 2007 Order (served March 23, 2007) at 11-12, excerpt attached hereto as exhibit 2. But Dairyland is clearly permitted to obtain discovery and present evidence at trial consistent with Dairyland's theory of the case, under which the Court must award damages consistent with what would have been a reasonable schedule and rate of spent fuel acceptance. *See, e.g.*, February 5, 2007 Order

at 1; Order of December 21, 2005 in *Pacific Gas and Elec. Co. v. United States,* No. 04-75C at 2-3, attached as exhibit 3 (ruling that a spent fuel plaintiff could obtain discovery to support its theory that it is entitled to damages consistent with a reasonable rate and schedule of acceptance of spent fuel and declining to limit discovery through an artificial date cutoff). The government's claim that statements concerning government efforts to explore interim storage are not relevant to Dairyland's claim for PFS-related damages is meritless. It surely bolsters Dairyland's claim that its efforts and expenditures to mitigate the effects of the government's breach through exploration of an off-site interim storage location for its spent fuel were reasonable, if the government was similarly exploring interim storage as a means of alleviating the affects of DOE's imminent failure to perform.

For these same reasons, the government's claim that Dairyland's request for the five documents at issue constitutes a "fishing expedition," Govt. Opp. at 18-19, is entirely meritless. The government cites *United States v. Zolin,* 491 U.S. 554 (1989) for the proposition that it is not appropriate for a court to engage in an *in camera* review of documents in the face of an unsubstantiated claim that a privilege had been waived through the crime-fraud exception. Here, however, *this Court* has already conducted an *in camera* review of the disputed documents and determined them to be "highly relevant" to the issues of this case. *Zolin* offers no support for the government's contention that highly relevant documents should remain hidden from discovery.

Also contrary to the government's argument, Govt. Opp. at 19, *In re Sealed Case* did not limit the opportunity to overcome a claim of presidential communications privilege to instances where the withheld statements are claimed to be false and thus are potentially the "precise evidence" of wrongdoing. Rather, the Court reiterated that under that circumstance, the movant established that the documents likely "contain important evidence that is not available

elsewhere" and directed the release of "all evidence that might reasonably be relevant to the question" before the trial court. 121 F.3d at 761-62.

Regarding whether the five documents are available elsewhere, the government acknowledges that, "by virtue of the assertion of privilege, these documents would not have been produced previously." Govt. Opp. at 17. But then the government complains that Dairyland has not shown that the information in the withheld documents is not available in any public statements. *Id.* The government's argument is nonsensical both because it attempts to place an impossible burden on Dairyland and because it would vitiate the government's claim of privilege. Since the government is withholding the contents of the documents, only the government knows whether the same statements in the documents have been repeated by the government elsewhere, and the government has not made that assertion. But if the government has made the same statements elsewhere, then it can have no interest in withholding as privileged the versions of those statements contained in the five disputed documents. *See In re Sealed Case*, 121 F.3d at 741-42 (holding that White House had waived presidential communications privilege over documents voluntarily revealed to third parties outside the White House).

4. Formal Invocation of the Presidential Communications Privilege is Now <u>Irrelevant, and the Government Cannot Justify Further Delay of Discovery for that Purpose.</u>

Because Dairyland has established a sufficient need for the five disputed documents, it is entitled to receive them even if (assuming *arguendo*) the government had formally invoked the presidential communications privilege. Thus, it no longer matters whether the government would formally invoke the privilege. The government, conversely, argues that even if the Court concludes that Dairyland has established sufficient need for the documents, the Court should nevertheless delay release of the documents to Dairyland to permit the government "to come forward with a formal invocation of the presidential privilege." Govt. Opp. at 21.

The government misconstrues *In re Sealed Case* and this Court's October 17, 2007 Order. It is not clear from the D.C. Circuit's opinion in *In re Sealed Case* whether the presidential communications privilege had been formally invoked there; like this Court with the present claim of privilege, the D.C. Circuit resolved the claim of privilege before it without the need to focus on the invocation issue. That court discussed the showing of need necessary to overcome a claim of the presidential communications privilege, not merely the burden necessary to require the government to formally assert the claim. The result of that case was a remand for consideration of release of the documents after *in camera* review, not a remand for further invocation of the privilege. 121 F.3d at 762. This Court recognized as much where it noted that *In re Sealed Case* addressed the showing needed by "a party seeking to overcome a presidential communications privilege claim." Order of October 17, 2007 at 1.[2]

If the Court agrees with Dairyland that it has already established sufficient need for the documents to overcome a presidential communications privilege claim, the only effect of providing the government with an opportunity to provide a formal invocation would be to further delay discovery to which Dairyland has been entitled. After such invocation, Dairyland would still be entitled to the documents since formal invocation of the privilege cannot diminish Dairyland's need for the documents. Such pointless delay, especially in light of the many delays already suffered by Dairyland, cannot be justified.

[2] The various authorities cited by the government for the proposition that it should be given a second chance to cure an inadequate invocation of privilege, Govt. Opp. at 21-22 and n.11, are inapposite. Those authorities would only be pertinent if Dairyland were arguing that the government has waived its claim of privilege by not providing a formal invocation earlier. This Court has adopted a procedure under which the invocation of the privilege is irrelevant; waiver of the privilege is not the issue.

5. The Presidential Communications Privilege Is Inapplicable to the Documents.

Even if Dairyland did not have a clear need for the five documents at issue sufficient to overcome the claim of privilege, the documents do not qualify for protection under the presidential communications privilege (even if the privilege had been formally invoked). The government appears to take the position that the presidential communications privilege covers all communications to or from the White House. As outlined in *In re Sealed Case*, the privilege is not nearly so broad. First, that court there explained that "the privilege only applies to communications that [close presidential] advisers and their staff author or solicit and receive in the course of performing their function of advising the president on official government matters. . . The presidential communications privilege should never serve as a means of shielding information regarding governmental operations that *do not call ultimately for direct decisionmaking by the President*." 121 F.3d at 752 (emphasis added).

Here, there is no indication that consideration of interim storage of spent nuclear fuel (the subject matter of the five documents at issue, 77 Fed. Cl. at 344-45) calls for direct decisionmaking by the President. Rather, the NWPA, in all pertinent respects, vests executive authority with the Secretary of Energy, not the President. *See, e.g.*, 42 U.S.C. § 10155 (provided now expired authority for Secretary to provide interim storage capacity); 42 U.S.C. § 10162(b) (authorizing Secretary to site, construct and operate a monitored retrievable storage facility subject to various conditions); 42 U.S.C. § 10222(a)(1) (authorizing Secretary to enter into spent fuel disposition contracts).[3] Therefore, the presidential communications privilege is inapplicable to the five documents at issue.

[3] Under the NWPA, direct presidential decisionmaking is limited to recommendation of a site for a spent fuel repository. *See* 42 U.S.C. § 10132(c); 42 U.S.C. § 10134; 42 U.S.C. § 10107.

Second, there is no indication that the communications embodied in the withheld documents are close enough to the President to qualify for protection under the privilege. Even accepting the extension of the privilege provided by *In re Sealed Case* to communications outside of those between the President and his immediate advisers, that extension is not nearly far enough to encompass the communications at issue here. The D.C. Circuit cautioned as follows:

> Not every person who plays a role in the development of presidential advice, no matter how remote and removed from the President, can qualify for the privilege. In particular, the privilege should not extend to staff outside the White House in executive branch agencies. Instead, the privilege should apply only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate. Only communications at that level are close enough the President to be revelatory of his deliberations or to pose a risk to the candor of his advisers.

121 F.3d at 752.

Here, the government has made no showing that the five documents reflect communications anywhere close to the proximity to the President set out in *In re Sealed Case.* For three of the five documents (E154, E170 and E171), the government provides no author or address information for the documents nor provides any other information that purports to link the document to a close presidential adviser. The most senior author or recipient of the other two documents (E167 and E178) linked to the Executive Office of the President is T.J. Glauthier, then an associate director of the Office of Management and Budget ("OMB"). Although part of the broad Executive Office of the President, OMB is not part of the much narrower Office of the President that would include advisers whose communications might qualify for the protection of the presidential communications privilege. *See Judicial Watch, Inc. v. Department of Justice*, 365 F.3d 1108, 1109 n.1 (D.C. Cir. 2004) (differentiating Office of the President from the

Executive Office of the President and noting that only the former is pertinent to the presidential communications privilege issues before it).

For these reasons, the Court should compel the government to produce the five disputed documents to Dairyland in unredacted form.

Respectfully submitted,

November 5, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP
*WDC 371525139v1 11/5/2007*

**Exhibit 1**

SPENT FUEL - PRODUCTION CDs AS OF 04/17/07

| CD # | TOTAL IMAGES | CONTAINERS | DESCRIPTION |
|---|---|---|---|
| YA001 | 6456 | EDB 001<br>HQR 003<br>HQR 005 | 1999 Ris-Web production docs<br>Miscellaneous<br>Miscellaneous |
| YA002r1 | 9148 | HQR 001<br>HQR 002<br>HQR 004<br>HQR 006 | Miscellaneous<br>Miscellaneous<br>Miscellaneous<br>Miscellaneous |
| YA003r1 | 9474 | HQR 007<br>HQR 008<br>HQR 009<br>HQR 010<br>YMP 001 | Miscellaneous<br>Miscellaneous<br>Contract Files<br>Miscellaneous<br>Miscellaneous |
| YA004r1 | 8579 | ADM 001<br>CTR 001<br>CTR 002<br>CTR 003<br>HQR 011 | 1982 Nuclear Waste Policy Act, Fed. Register, Public Hearing<br>Scott Vance<br>Rulemaking Info, Waste Acceptance Deliverables<br>Miscellaneous<br>CFR/ACR/APR info |
| YA005 | 7224 | CTR 004<br>CTR 005<br>EDB 002<br>HQR 012<br>HQR 013<br>YMP 002 | Billy Cole<br>Ken Beall<br>1999 Ris-Web production docs<br>Robert Wells<br>Wesley Barnes<br>Miscellaneous |
| YA006 | 8794 | FOI 001<br>FOI 002<br>FOI 005<br>FOI 007 | FOIA production<br>FOIA production<br>FOIA production<br>FOIA production |
| YA007 | 10301 | FOI 003<br>FOI 004 | FOIA production<br>FOIA production |
| YA008r2 | 7500 | EDB 003<br>EDB 004<br>EMS 001<br>HQR 014<br>HQR 015<br>ZAB 001 | 1999 Ris-Web production docs<br>1999 Ris-Web production docs<br>Discovery Responses 1998-1999<br>Miscellaneous Waste Management docs<br>Miscellaneous Waste Management docs<br>David Zabransky |

DEPOSITION EXHIBIT
White 11
6/12/07 KS

SPENT FUEL - PRODUCTION CDs AS OF 04/17/07

| CD # | TOTAL IMAGES | CONTAINERS | DESCRIPTION |
|---|---|---|---|
| YA038r3 | 11492 | HQR 027<br>HQR 028<br>HQR 029<br>HQR 032<br>YMP 006 | Dwight Shelor<br>Dwight Shelor<br>Susan Smith<br>Dong Kim<br>Eugene Rollins |
| YA039r4 | 11060 | ANL 001<br>CTR 019<br>CTR 022<br>DER 008<br>EPA 001<br>NRC 001<br>YMP 005 | Argon National Laboratories<br>Scott Vance<br>Joe Rivers<br>Department of Energy (Richland)<br>Environmental Protection Agency<br>Wayne Hodges, Nuclear Regulatory Commission<br>Mark Wisenberg |
| YA040r4 | 10843 | CTR 023<br>HQR 035<br>HQR 036<br>HQR 037<br>YMP 007 | Glenn Vawter/Barrie McLeod<br>Jeff Williams<br>Jeff Williams<br>Jim Carlson<br>Ken Ashe |
| YA041r3 | 14754 | CTR 024<br>CTR 026<br>FER 001<br>FER 002<br>FER 003 | Scott Vance<br>Scott Gillespie<br>Federal Energy Regulatory Commission<br>Federal Energy Regulatory Commission<br>Federal Energy Regulatory Commission |
| YA042r2 | 11043 | CTR 025<br>HQR 034<br>HQR 038<br>HQR 039<br>HQR 040 | Scott Vance<br>Jeff Williams<br>Lake Barrett<br>Susan Klein<br>Susan Klein |
| YA043r1 | 12357 | HQR 041<br>HQR 042<br>HQR 043<br>HQR 044 | Susan Klein<br>Susan Klein<br>Susan Klein<br>FICA Reports |

# Exhibit 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AS AMENDED IN RESPONSE TO THE COURT'S FEBRUARY 5, 2007 ORDER

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following responses to "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006, amended in response to the Court's order dated February 5, 2007, requiring supplementation of our original responses.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to any document so produced, or as to any other document.

had an oversight role; (5) Dennis M. Crutchfield, former Director, Division of Advanced Reactors and Special Projects, Office of Nuclear Reactor Regulation, who had an oversight role; and (6) Herbert N. Berkow, former Project Director, Standardization and Non-Power Reactor Project Directorate, Office of Nuclear Reactor Regulation, who had an oversight role.

INTERROGATORY NO. 3:

Do you contend that the annual receiving capacity listed in any of the Annual Capacity Reports issued by DOE since January 1, 1998 pursuant to the NWPA is binding on DOE and/or DAIRYLAND? If so, explain all bases for such a contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

Without waiving this objection, defendant states that the table titled "Summary of Purchasers' Annual Allocations (MTU)" in the Annual Capacity Reports identifies an acceptance allocation to Purchasers. As set forth in the Standard Contract, the 1991 Annual Capacity Report ("ACR"), in conjunction with the 1991 Annual Priority Ranking ("APR"), was the document by which DOE began making firm acceptance commitments to individual utilities based upon the delivery commitment schedules submitted by Purchasers that DOE approved. After issuance of the 1991 ACR/APR, and in accordance with Article V.B.1 of the Standard Contract, the plaintiff in this action submitted several Delivery Commitment Schedules ("DCSs") to the Department of Energy. DOE also issued annual capacity reports and acceptance priority rankings dated 1992, 1994, and 1995, and many nuclear utility plaintiffs with cases pending before the Court of

Federal Claims submitted DCSs in response to these ACR/APRs. In submitting their DCSs, the plaintiffs ultimately relied upon the allocations identified in the referenced ACR/APRs. DOE approved several DCSs for the plaintiff in this action. Those DCSs identify both the amount of spent nuclear fuel and high-level radioactive waste (collectively, "SNF") and the location of SNF for which an allocation exists under the relevant ACR/APR for a given year. No other binding "schedules" applicable to the Standard Contract were issued by the Department of Energy or accepted by the Department of Energy through the approval of DCSs. The basis for the rate and order of SNF acceptance identified in this interrogatory response are the ACR/APRs issued beginning in 1991, the DCSs that the plaintiff and other contract holders submitted to DOE, and DOE's approval of those DCSs.

With regard to plaintiff's request regarding ACRs issued "since January 1, 1998," the only ACR that DOE issued since that time was the 2004 ACR. That ACR did not result in any approved DCSs and, as the 2004 ACR itself stated, the information contained in the 2004 ACR was for informational purposes only and was not binding on DOE.

<u>SUPPLEMENTAL RESPONSE</u>:

The Court's February 5, 2007 order does not require any further supplemental of this response.

<u>INTERROGATORY NO. 4</u>:

IDENTIFY all PERSONS involved in the review, approval, disapproval, drafting and/or preparation of responses to the delivery commitment schedules DAIRYLAND submitted to DOE. For each PERSON identified, DESCRIBE in detail the activities in which they engaged RELATED TO these activities.

Radioactive Waste Management, January 2005 (MOL.20060121.0173). David Zabransky and Ned Larson, DOE, and Robert Burgoyne, Booz-Allen, had substantial involvement in this recent effort.

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
FAX: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 23, 2007

CERTIFICATION

I, Thomas Pollog, state that I have reviewed Defendant's Response to Plaintiff's First Set of Interrogatories As Amended In Response To The Court's Feburary 5, 2007 Order in connection with Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.), and I provided factual information with regard to the response provided to interrogatories 1, 2, 4, and 18. Based upon my review, I hereby certify under penalty of perjury in accordance with 28 U.S.C. § 1746, that the answers are true and accurate to the best of my knowledge, information, and belief.

Dated: March 23, 2007

THOMAS POLLOG

CERTIFICATION

I, David Zabransky, state that I have reviewed Defendant's Response to Plaintiff's First Set of Interrogatories As Amended In Response To The Court's Feburary 5, 2007 Order in connection with Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.), and I provided factual information with regard to the responses provided to interrogatories 3, 5, 6, 7, 8, 10, 11, 12, 13, and 14. Based upon my review, I hereby certify under penalty of perjury in accordance with 28 U.S.C. § 1746, that the answers are true and accurate to the best of my knowledge, information, and belief.

Dated: March 23, 2007

DAVID K. ZABRANSKY

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 23rd day of March 2007, I caused to served by overnight courier (Federal Express, for next business-day delivery) a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, AS AMENDED IN RESPONSE TO THE COURT'S FEBRUARY 5, 2007 ORDER," addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006

[signature]

# Exhibit 3

Case 1:04-cv-00074-ECH Document 161 Filed 12/21/2005 Page 1 of 3

# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: December 21, 2005)

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The court has before it plaintiff's Motion for Clarification or Reconsideration on Discovery Restriction (Pl.'s Mot. or Motion), Defendant's Response to Plaintiff's Motion for Clarification or Reconsideration on Discovery Restriction (Def.'s Resp. or Response), and plaintiff's Reply in Support of Motion for Clarification or Reconsideration on Discovery Restriction (Pl.'s Reply or Reply). Plaintiff seeks clarification or reconsideration of a statement made by the court in its December 2, 2005 Order. Pl.'s Mot. at 1. In this Order, the court found "that January 28, 2004 is an appropriate cut-off date for document discovery." 12/02/05 Order at 2 n.2. Plaintiff contends that the court should clarify or reconsider this statement because "the issue of a possible 'cut-off date' for discovery has never been briefed in this case and the [c]ourt therefore has not had occasion to fully consider the issue," Pl.'s Mot. at 1, and because "it appears from the context of the discussions at the discovery conferences that the [c]ourt may be conflating the issue of a cut-off date for damages with the issue of a cut-off date for discovery," id. Moreover, plaintiff claims that "there are many . . . examples of documents generated after Janury 2004 [] that are not only relevant to, but compelling evidence concerning, the key disputed issue[s in] this case." Id. at 2.

Defendant responds that "[b]ecause causation is determined by comparing the actual world with the 'but for' world, the cut-off for discovery of documents from the

Government's files should be as early as 1998," let alone January 28, 2004. Def.'s Resp. at 8. Thus, defendant contends, documents that post-date January 28, 2004 "simply are not relevant for purposes of establishing either the Government's liability in this case or PG&E's damages," id. at 12, and therefore the court should not allow plaintiff to "engag[e] in a fishing expedition that is not reasonably calculated to lead to the introduction of admissible evidence in this case," id. (emphasis in original). Defendant concludes that a January 28, 2004 "cut-off date for discovery in this case is not only entirely reasonable and sensible, but is well within this Court's inherent authority to limit the scope of discovery." Id. at 9 (citing Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) (stating that "[q]estions of the scope and conduct of discovery are . . . committed to the discretion of the trial court")).

In its Reply, plaintiff argues that "[t]he substantive issues the government discusses should be resolved by the [c]ourt in substantive rulings, after trial or perhaps through motions in limine, not back-handedly on the basis of an artifical discovery cut-off that actually prevents the [c]ourt from addressing these substantive issues on a full factual record." Pl.'s Reply at 1 (emphasis in original). Indeed, plaintiff contends, "relevance is a substantive issue that should not be resolved by the [c]ourt at a telephonic discovery conference, or in a footnote to a discovery order, without benefit of full briefing and full consideration of the particular substantive issue involved." Id. at 2. Moreover, plaintiff states that, under its theory of the case, "because the contract is silent on acceptance rate and other 'schedule' issues, the [c]ourt must supply a 'reasonable' rate and schedule . . . , [and] what [the Department of Energy (DOE)] is doing now, or plans to do in the future, is plainly evidence of what a 'reasonable schedule would be." Id. at 4-5. Thus, plaintiff concludes that it "should be able to obtain discovery without any cut-off date restriction, and later the parties can argue (and the [c]ourt can decide) what is relevant and/or should be admitted into the trial record." Id. at 5.

The court agrees with plaintiff. The Rules of the Court of Federal Claims (RCFC) call for a "broad scope of discovery in this court." Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 317 (1996). Indeed, RCFC 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," and "the court may order discovery of any matter relevant to the subject matter involved in the action." As the Federal Circuit has explained, "[t]he scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial. . . . The information sought during discovery in a civil case need not be admissible at trial and need only be reasonably calculated to lead to discovery of admissible evidence." Afro Lecon, Inc. v. United States, 820 F.2d 1198, 1203 (Fed. Cir. 1987) (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947)) (interpreting the identical Rule 26(b)(1) of the Federal Rules of Civil Procedure).

Although the court is aware of its "inherent authority to limit the scope of discovery," Def.'s Resp. at 9 (citing Florsheim Shoe, 744 F.2d at 797), the court does not believe it necessary under these circumstances to limit discovery of all documents to those created on or before January 28, 2004, the date of plaintiff's amended complaint. Instead, as plaintiff states, the relevance of such documents can be ruled upon "through motions in limine," during trial, or even after trial, rather than "on the basis of an artificial discovery cut-off that actually prevents the [c]ourt from addressing these substantive issues on a full factual record." Pl.'s Reply at 1 (emphasis in original). While the court notes that the Federal Circuit has stated that "where a 'claim is premised upon the government's partial breach, its damages were limited to those costs incurred prior to the date of its suit,'" Def.'s Resp. at 3-4 (emphasis in original) (quoting Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376-77 (Fed. Cir. 2005)), it does not follow that discovery should be necessarily limited to documents created prior to the date of suit.[1] Indeed, as plaintiff states, "it cannot be said [at this time] that nothing about DOE's current and future plans is relevant." Pl.'s Reply at 6 (emphasis in original).

Accordingly, the court STRIKES footnote 2 of its December 2, 2005 Order.[2] Absent any specific discovery limitations previously ordered by the court and not hereby stricken,[3] the parties shall be able to obtain document discovery without a universal "cut-off date" limitation and in accordance with the discovery rules of the RCFC.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

[1]This Order does not address or rule on the question of whether damages must necessarily be limited to those incurred prior to January 28, 2004.

[2]However, the January 28, 2004 cut-off date for discovery of "all communications between PG&E and either the DOE or the United States Nuclear Regulatory Commission [(NRC)] related to spent fuel" shall still remain, as shall any other limitations placed on the discovery of such communications by the court's December 2, 2005 Order.

[3]For example, the specific limitations on document discovery ordered by the court in its October 18, 2005 Order shall remain in place, as these limitations were ordered after hearing the parties' oral arguments during two telephonic conferences held on October 14 and 17, 2005, and after careful attention by the court to extended arguments.