IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: November 8, 2007

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S REPLY TO GOVERNMENT RESPONSE TO DAIRYLAND'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

The government asserts that Dairyland's motion to compel production of 27 documents withheld on deliberative process grounds listed on its September 17, 2007 privilege log should be denied because Dairyland has not demonstrated any need for such documents. This Court has already concluded otherwise. In its June 29, 2007 Opinion granting Dairyland's motion to compel production of documents withheld on claims of the deliberative process privilege, the Court held that Dairyland had demonstrated sufficient need for documents that concern precisely the same subject matters as the documents that are being challenged here because these types of documents are "highly relevant" to this litigation. *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330 (2007).

In its response, the government does not dispute that the documents at issue here are similar to the documents that the Court ordered produced on June 29, 2007, but instead argues that these documents — contrary to the Court's previous findings — are not relevant to this case

because they were generated after the government had partially breached Dairyland's contract. But the Court has previously rejected this argument by the government, and it should do so again here. The Court should also reject the government's argument that these documents should not be produced because their production would be cumulative of previously produced documents. To the contrary, this fact weighs in favor of production because production of these documents is now less likely to have any detrimental effect on future DOE decision-making. Furthermore, the Court cannot and should not arbitrarily decide that certain documents are not necessary or helpful for Dairyland to prove its case simply because the government untimely asserted the deliberative process privilege for these documents after it had been ordered to produce similar relevant documents.

The government's claim that production of these documents in this case will harm its decision-making process is without merit. The documents would be produced subject to the terms of the protective order in this case, thereby restricting their use to this particular case. The government has not articulated how subsequent decision-making by DOE could be negatively impacted by such limited disclosure. Indeed, the fact that similar documents were previously ordered produced in this case and also in the *Pacific Gas & Elec.* case without the government being able to identify any specific resulting harm to DOE's deliberative process demonstrates that the government's purported concerns are overblown and speculative.

I. Dairyland Has Demonstrated — And the Court Has Already Found — Need For the Subject Documents

The government argues that it should not be compelled to produce any of the documents being withheld on deliberative process privilege grounds because Dairyland has not demonstrated sufficient need for the documents. The government's argument is wrong for several reasons.

First, although the government concedes up front that this Court has already held that, in order to overcome the government's deliberative process privilege claims, Dairyland is *not required* to demonstrate a "compelling need" for the documents (*see* Gov't Resp. at 8 n.7), the government nonetheless argues throughout its response that Dairyland's motion to compel should be denied because Dairyland has not met its burden to show "compelling need" for production of these documents. *See* Gov't Resp. at 9, 12, 15. Because the government apparently believes it can ignore the law of this case, the Court's prior holding regarding the balancing test that is to be applied in this case for overcoming deliberative process privilege claims bears worth repeating:

> The Court agrees that the use of the phrase "compelling need" by the Federal Circuit in *Marriott* did not elevate the standard for overcoming the deliberative process privilege. In evaluating the applicability of the deliberative process privilege, this Court will consider *whether Plaintiff's evidentiary need is sufficient to outweigh the Government's interest in confidentiality*.

*Dairyland*, 77 Fed. Cl. at 338 (emphasis added). Thus, the government's suggestion that Dairyland must demonstrate a compelling need for the subject documents should be disregarded.[1]

Second, contrary to the government's assertion, Dairyland has demonstrated sufficient need for the documents it seeks here because, as this Court has already concluded, the topics these documents concern are "highly relevant" to this litigation. Accelerated acceptance of SNF and accelerated development of SNF storage and disposal facilities (Document Ref. No. S183) and SNF transportation and acceptance program plans (Document Ref. No. S184) are relevant to the rate at which DOE should have accepted SNF from utilities once it commenced performance.

[1] The government also offers no support of its assertion that Dairyland must establish that the documents are "uniquely relevant." *See* Gov't Resp. at 16; *see also id.* at 13 ("unique to proving its alleged claim").

*See Dairyland*, 77 Fed. Cl. at 348, 351, 352, 355, 356. Documents concerning a whitepaper that addresses the scheduling of SNF acceptance (Document Ref. Nos. S428, S1035, S1139, S1141, S1142, S1142, S1143, S1144) may very well inform the schedule on which DOE should have picked up utilities' SNF in the non-breach world. *See id.* at 348, 353, 354, 356. In addition, this Court has held that documents concerning interim storage scenarios and options (Document Ref. Nos. S605, S606, S607, S609, S610, S611, S612, S613, S615, S616, S617, S618, S619) appear highly relevant to this litigation and that documents that are identical or substantially similar to these documents should be produced. *Id.* at 344. And documents that reveal DOE's position and discussions with members of Congress on the PFS initiative (Document Ref. Nos. S1073, S1074, S1127, S1128, S1129) are obviously highly relevant to Dairyland's damages claim for its PFS-related expenditures, where one of the government's principal defenses to this claim is that Dairyland's participation in PFS was unreasonable.[2]

The government does not dispute that the documents at issue here concern topics the Court has already deemed highly relevant and are similar to other documents that the Court has previously ordered produced. Nevertheless, the government still maintains that most of these documents are not relevant to this case because these documents were generated after DOE first partially breached Dairyland and the other utilities' spent fuel contracts. *See* Gov't Resp. at 12, 13, 15, 16. This exact same argument was previously raised by the government when it opposed Dairyland's initial discovery requests and, in granting Dairyland's Motion to Compel Discovery Responses, the Court properly rejected it:

---

[2] Contrary to the government's assertion (Gov't Resp. at 17), Dairyland does not contend that it needs these documents because of the "quantum" of its PFS-related expenditures. *See* Gov't Resp. at 17. Dairyland's need for these documents arises from the government's argument that these expenditures should not be recoverable because they constituted unreasonable mitigation by Dairyland.

> While the Court may indeed eventually discount the value of evidence regarding plans, activities, or actions of the government subsequent to the date of Defendant's partial breach of its contract with Plaintiff or since the date of Plaintiff's claim for damages, discovery (whether interrogatories or document requests) of such matters at this stage in the litigation appears within the bounds of that "reasonably calculated to lead to the discovery of admissible evidence." RCFC 26(b)(1).

Feb. 5, 2007 Order at 1; *see also Pac. Gas & Elec. Co. v. United States*, No. 04-74C, slip. op. at 2-3 (Fed. Cl. Dec. 21, 2005) (attachment 1 hereto). The Court's rationale for rejecting the government's "no relevance" argument with regard to Dairyland's discovery requests is equally applicable here. Evidence of DOE's current and future plans for the spent fuel program, including the anticipated and/or planned rate and method of SNF acceptance is plainly probative of what a "reasonable" schedule for DOE performance would have been in the non-breach world. And evidence of DOE's plans for future performance is also relevant to the assessment of the reasonableness of Dairyland's ongoing response to DOE's breach.

Finally, the government argues that, even if any of the challenged documents are relevant to this case, it should still not be required to produce them because their production would be cumulative of documents previously produced by the government. *See* Gov't Resp. at 12, 13, 14. But the fact that other documents addressing the same topics have previously been produced is a factor weighs in favor, not against, production because disclosure of these additional documents is not likely to have any additional "chilling" effect on future internal DOE deliberations. *See Dairyland*, 77 Fed. Cl. at 339. Moreover, the fact that other documents addressing the same subject matters have already been produced in this case does not establish cumulativeness. The importance of the challenged documents here is that they may contain important admissions from government officials regarding key issues in this case. Because the government has not shown or even asserted that any of the statements contained within the challenged documents are

identical or substantively identical to statements contained in any previously produced documents, it has not demonstrated that their production would be cumulative of anything.[3] Furthermore, the Court cannot and should not arbitrarily decide that these relevant documents are not necessary or helpful for Dairyland to prove its case merely based upon their privilege log descriptions and the fortuitous timing of their disclosure by the withholding party. Indeed, had the government asserted its privilege claims for these documents in a timely manner, *i.e.*, at or around the April 6, 2007 court-ordered document production deadline, the government would have never been in a position to argue cumulativeness, because there is little question that these privilege claims would have been addressed by the Court at or around the same time it addressed Dairyland's other deliberative process privilege challenges. It would be highly unfair and contrary to the well-established principle of subject matter waiver to allow a party to selectively withhold from discovery certain highly relevant documents based upon unproven assertions that the other party already has received "enough" documents on these issues. *Cf. In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (subject matter waiver doctrine "aims to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information"); *United States v. Skeddle*, 989 F. Supp. 917, 919 (N.D. Ohio 1997) (subject matter waiver seeks to prevent the selective,

[3] Only one of the cases cited by the government in its response (at 7-8), *United States v. AT&T*, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981), mentions cumulativeness as a factor to be considered in weighing whether the movant's evidentiary need for a document withheld on deliberative process grounds outweighs the government's confidentiality interest, and the case does not discuss or apply this factor. Accordingly, the statement is pure *dicta*. The other cases cited by the government — *Dairyland*, 77 Fed. Cl. at 338; *Scott Paper Co. v. United States*, 943 F. Supp. 489, 496 (E.D. Pa. 1996); *In re Franklin Nat. Bank Sec. Lit.*, 478 F. Supp. 577, 578 (E.D.N.Y. 1979) — do list "the availability of other evidence" as a factor to be weighed. As discussed above, this factor does not weigh against non-disclosure here because the government has not shown or even asserted that any of the admissions contained in the challenged documents are available in any previously produced documents.

calculated disclosure of privileged communications); *Graco Children's Prods., Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590, at *8 (N.D. Ill. June 14, 1995) ("The purpose of the [subject matter] waiver rule is to prevent partial or selective disclosure of favorable material while sequestering the unfavorable.").

## II. The Government Has Not Demonstrated Sufficient Harm to DOE Decisionmaking That Would Result if the Documents Are Produced Subject to the Terms of the Protective Order to Outweigh Dairyland's Need for the Documents

The government continues to maintain that disclosure of the challenged deliberative process documents in this case will harm future policy deliberations and decision-making at DOE. Yet the government fails to acknowledge the reality that any documents ordered produced pursuant to Dairyland's motion to compel will be produced subject to the terms of the protective order in this case, thereby restricting their disclosure and use to this case. The government has not demonstrated how such limited disclosure of the particular documents being challenged here could negatively impact DOE's decision-making process. *See Dairyland*, 77 Fed. Cl. at 339 ("[I]n a litigation context, where the rules of discovery allow a court 'to protect a party or person from annoyance [or] embarrassment' through a protective order, RCFC 26(c), limited disclosure of deliberative process documents should be less likely to result in significant harm to policy debates within an agency."). Moreover, as the government acknowledges, similar documents that were withheld on deliberative process grounds have already been ordered produced in this case and also in the *Pacific Gas & Elec.* case pursuant to restrictive protective orders, and the government has not identified any harm to DOE decision-making that has resulted. Furthermore, as mentioned above, the fact that other documents addressing the same topics have previously been produced also weighs against the government's interest in maintaining the confidentiality of

the challenged documents because any chilling of internal deliberations that would result from their disclosure should have already occurred. *See Dairyland*, 77 Fed. Cl. at 339.

The government relies upon the Declaration of Alan B. Brownstein to argue that disclosure of the 27 documents at issue here will cause harm to the deliberative process. But the Brownstein declaration is of no help to government in this regard. Mr. Brownstein opines that, with regard to challenged documents that concern interim storage and accelerated SNF acceptance, disclosure of these documents will make DOE employees "less likely to offer creative opinions and ideas in the future" (interim storage) and might lead to "extensive questioning of program personnel" by various interested parties (accelerated SNF acceptance). Gov't Resp. at A12. However, Mr. Brownstein offers no specific facts to support either of these opinions and fails to acknowledge the protections against widespread disclosure that would be afforded by the protective order if these documents are produced. *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (conclusory declarations devoid of facts upon which the conclusions were reached do not raise a genuine issue of material fact); *Flaherty v. United States*, 610 F.2d 756, 759 n.7 (Ct. Cl. 1979) ("an undetailed and conclusory affidavit can be given little or no weight"). Similarly unsupported, conclusory and speculative is Mr. Brownstein's opinion that restricted disclosure of the challenged documents that concern PFS would lead DOE personnel to "believe their suggestions will be taken as the Department's official position, or that their suggestions could be taken out of context, possibly causing embarrassment or inconvenience to the Secretary [of Energy]." Gov't Resp. at A28. In the absence of any specific details, it is simply not plausible that dedicated public servants would be deterred from offering their candid opinions as a result of limited, non-public disclosure of these 27 documents, particularly where there is no credible evidence that they have been deterred by

the prior disclosure of hundreds of thousands of internal documents relating to the spent fuel program, many of which discuss matters identical to the documents that are being challenged here. Moreover, Mr. Brownstein does not and cannot differentiate between any chilling effect on DOE decision-making caused by ongoing scrutiny of the spent fuel program from other interested parties such as Congress and the State of Nevada and potential chilling feared from limited release of the 27 documents at issue here.

In this regard, the Brownstein declaration is almost identical to the Declaration of Ronald A. Milner that was submitted by the government in connection with Dairyland's previous motion to compel production of documents withheld on deliberative process privilege grounds. *Compare, e.g.,* Brownstein Decl. at A11-12 (discussing documents concerning possible interim storage) *with* Milner Decl. (attachment 2 hereto) at 17-19 (discussing documents containing advice concerning possible interim storage).[4] This Court did not find that the Milner declaration established harm sufficient to outweigh Dairyland's need for the documents ordered released on June 29, 2007. Accordingly, the result the Court reached after reviewing the Milner declaration should be the same here, *i.e.*, the challenged documents should be ordered produced.

CONCLUSION

For the foregoing reasons, as well as those stated in Dairyland's initial motion, Dairyland respectfully requests that the Court grant its motion to compel and order the production of the 27 documents on the government's September 17, 2007 privilege log that are being withheld on deliberative process privilege grounds.

[4] The credibility of Mr. Brownstein's assertions in his declaration are also suspect because it appears that he left his employment at OCRWM very shortly after he executed the declaration on September 17, 2007. *See* attachment 3 hereto (OCRWM organizational chart dated September 28, 2007 not showing Mr. Brownstein or any individual serving as Chief Operating Officer).

Respectfully submitted,

November 8, 2007

s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

*WDC 371527520v1 11/8/2007*