including analysis of then-pending legislation and possible litigation. The release of this document will have a chilling effect upon the ability of the Secretary and OCRWM to provide similar recommendations and advice to the President on matters regarding the administration of the NWPA in the future.

9. The documents numbered HQR0283563-HQR0283588 (E151) and HQR290966-HQR290970 (E158) are duplicate memoranda to TJ Glauthier, Associate Director Natural Resources, OMB, from Elgie Holstein, Chief of Staff, and Mary Anne Sullivan, Deputy General Counsel, regarding the Department's response to Indiana Michigan Power Co. v. DOE. The document provides recommendations that the DOE take certain actions in response to the court decision, and requests concurrence with the proposed approach. The document also attaches a draft of a sample letter to contract holders, and includes a draft attachment of the contracting officer's preliminary determination. The document reflects part of the Department's deliberations that led to its decision, and also includes materials prepared at the direction of counsel and attorney-client communications. DOE is continually faced with new legal decisions that affect its programs. It is critical for the Department to be able to examine the effects of such decisions, seek advice upon how to respond, and thoughtfully determine the appropriate course of action. Only with the free and unencumbered exchange of ideas can DOE decision-makers make such a determination. The release of this kind of advice would discourage such an exchange.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

**Advice Concerning Possible Interim Storage:**

The following five documents all address the issue of whether DOE could or would elect to store spent nuclear fuel in an interim storage facility, and if so, the possible ways in which interim storage could be accomplished. This issue has been repeatedly revisited by DOE, the Executive Branch and Legislative Branch, and to date no final decision has been made. DOE decision-makers must be allowed to gather information and determine the viability of all options presented before choosing and presenting their recommendation to the Office of Management and Budget and the President.

10. The documents Bates-Stamped CTR0400568-CTR0400583 (E112) and HQR0320182-HQR0320197 (E166) are duplicates or different versions of an OMB memorandum from TJ Glauthier, Associate Director Natural Resources, and Charles Curtis, Under Secretary of Energy, requesting comments from various offices, including the Department of Justice, regarding an options paper upon the question of interim storage of high-level radioactive waste. The specific decision at issue was whether DOE would elect to store spent nuclear fuel in an interim storage facility, and this document reflects DOE's considerations and deliberations that relate to that decision. The document discusses issues and options relating to that decision, and the advantages and disadvantages of each option. It is critical to the proper functioning of the Executive Branch that the OMB be allowed to examine all options before presenting its recommendation. Release of the options being considered as part of this process would cause a barrage of criticism from outside parties, before the OMB has even had the chance



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

to analyze the suggestions. Such a reaction would overwhelm decision-makers and bring the process to a virtual halt. Further, DOE personnel would be less likely to offer the kind of creative ideas necessary to an informed decision if they are aware of the potential publication of their comments, and the ensuing difficulties.

11. The documents Bates-Stamped HQR0290177-HQR0290190 (E154), HQR04214.52-HQR04214.64 (E178), and HQR0320231-HQR0320245 (E171) are different versions or duplicates of a draft memorandum regarding DOE's policy options for the interim storage of nuclear waste. The documents outline DOE's options for interim storage, and DOE's perceived advantages and disadvantages of each option. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility, and these documents reflect DOE's policy deliberations as they related to DOE's decision. DOE is continually faced with Congressional inquiries regarding this issue, and it is important that the Department speak with one voice in response to Congress' questions. While we consider many ideas in formulating policy, the ideas that we consider are merely the opinions of individuals, and not the Department's policy. It would be detrimental to the process if Congress and other parties could delve into all of suggestions considered. These suggestions, while essential to the decision-making process, could be misconstrued by other parties, or could be erroneously attributed to the Department or the Executive Branch. If employees see that their individual opinions are publicized and ultimately have a detrimental



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

effect upon the decision-making process, they will be less likely to offer creative opinions in the future.

12. The documents numbered HQR0290044-HQR0290051 (E153), HQR0292365-HQR0292368 (E161) and HQR0292428-HQRH292434 (E162) are different versions or duplicates of a memorandum dated January 31, 1997 from Charles Curtis, Acting Secretary of Energy, and Thomas Grumbly, Under Secretary, regarding DOE's proposed position on interim storage written in preparation for the Senate Energy Committee's February 5, 1997 hearing on interim storage. The specific decisions at issue were whether DOE would accept spent nuclear fuel at an interim storage facility, and whether DOE could offer relief to the utilities involved in the lawsuits. The memorandum discusses whether DOE can offer relief to the utilities involved in lawsuits, and outlines DOE's perceived advantages and disadvantages for this proposed relief. The documents reflect DOE's policy deliberations as they related to these decisions. Again, the proposal considered in this document is merely an option being considered by the Executive Branch. It would be impossible for the Department to field all of the questions that would result if each of the options considered were released, regardless of whether they ultimately become the policy of the DOE. Further, the difficulties caused by the release of this information would cause a chilling effect upon employees' future willingness to provide the suggestions that decision-makers require to make informed decisions.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

13. The documents Bates-Stamped HQR0320151-HQR0320156 (E163), HQR0320213-HQR0320220 (E169), HQR0320221-HQR0320227 (E170), HQR0320176-HQR0320181 (E165), and HQR0320207-HQR0320212 (E168) are different versions or drafts of a memorandum entitled "Proposed Presidential Position Regarding Interim Storage of Spent Nuclear Fuel" that discuss the Administration's current position regarding interim storage, and proposed recommendations for the Administration's position. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility. The document reflects DOE's policy deliberations as they relate to DOE's position, and provides analysis supporting the proposed recommendations, including the possibility of expedited acceptance of SNF, legislative implications, costs, and various options regarding interim storage and options for compensating utilities for Federal delays in waste acceptance. Based upon the legislative and cost obstacles alone, it is possible that one or more of the options presented would be rejected, and would never become DOE policy, or the position of the President. Disclosure of options considered would impede the ability of the Executive Branch to speak with one voice with regard to policy decisions. In addition, the difficulties brought about when this kind of analysis and advice is released will cause a chilling effect upon employees' future willingness to provide analysis and advice when it would be beneficial to the Administration.

14. The document Bates-Stamped HQR0320199-HQR0320206 (E167) is a May 13, 1995 draft memorandum from TJ Glauthier of OMB to Kathleen Peroff, Gary L.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

Bennethum and Robert L. Civiak discussing the Administration's policy and guidance to DOE regarding the interim storage of SNF. The specific decision at issue was whether DOE would accept spent nuclear fuel at an interim storage facility. The document reflects DOE's policy deliberations as they relate to this decision, and discusses options available to DOE regarding interim storage, a cost analysis involving paying utilities that experience delays from scheduled shipment dates under various assumptions, and a list of principles to consider for interim storage. Memoranda such as this one represent the free flow of ideas with regard to the interim storage issue, and must be encouraged so that an effective policy decision can be reached. If we believed that discussions such as this one were to be released, we would be reluctant to engage in such candid discussion of the various options, and an effective and well-reasoned decision could not be reached.

15. The document Bates-Stamped HQR0381321(E175) is a March 23, 2000 e-mail message from D. Kim to Mary Louise Wagner at DOE that contains draft language for the President regarding the President's intent to veto S. 1287, the Nuclear Waste Policy Act ("NWPA") of 2000. The specific decision at issue was the Department's recommendation to the Administration concerning S. 1287, and the document reflects DOE's policy considerations that relate to that decision, including proposed reasons for vetoing the 2000 NWPA. This document is example of the fact that the Executive Branch must consider the opinions of many individuals, none of whom are the ultimate decision-makers, regarding important policy decisions, like the language that should be used by the President if and



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

when he decides to veto pending legislation. Individuals within the Department must feel comfortable voicing such opinions, without fear that their superiors may later be embarrassed or inconvenienced if their opinions are disclosed.

16. The document Bates-Stamped HQR0240155-HQR0240182 (E150) is a set of presentations and cost estimates created in approximately March 2000 that discuss the rate at which DOE considered the pick-up of spent nuclear fuel, and the cost estimates to DOE if Congress passed S.1287. The specific policy deliberation at issue is DOE's ongoing deliberation regarding the rate at which it will accept spent nuclear fuel. This document reflects some of DOE's policy considerations as it relates to this deliberation. The presentations include cost estimates and cost assumptions if DOE were to take title of the SNF, and discuss various proposals for the President's budget for a site characterization program, repository development, and waste acceptance. Presentations such as these represent the opinions of many individuals within the Department as to how the program should be run, and have not been determined to be practical or even technically feasible courses of action. If these unexamined opinions were disclosed, DOE would be subject to countless inquiries as to why it chose to manage its program one way as opposed to another, and whether the rejected options could have been viable. When DOE employees are put through the inconvenience and discomfort of several days of deposition based upon the ideas they put forth, the are likely to avoid putting forth ideas in the future.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

17. The documents Bates-Stamped HQR0284037-HQR0284045 (E152), HQR320166-HQR320174 (E164), HQR0320280-HQR0320288 (E172), and HQR0320321-HQR0320327 (E173) are different versions or duplicates of an August 31, 1995 memorandum for the President from Alice Rivlin and Hazel O'Leary asking for President's decision on an Administration position for the storage of spent nuclear fuel and high level waste. The document reflects DOE's policy deliberations as they relate to how the Department will begin acceptance and storage of spent nuclear fuel and high level waste. The memorandum recommends a Presidential position, and includes recommendations to the President regarding various options of storing SNF, and discusses the advantages and disadvantages of each option. There is a danger that the options presented, if disclosed, could be viewed as the position of the President. If DOE decision-makers are faced with the fear that this mistake could be made, they are less likely to present the President with a thorough and well-rounded analysis of options, for fear that their suggestions may be misconstrued or mis-attributed. A thorough analysis of all possibilities must be presented to the President to allow him to make a well-informed policy decision.

18. The document Bates-Stamped HQR0290820-HQR0290832 (E156) consists of three drafts of a memorandum entitled "Talking Points for OMB-White House involving the Release of the Department of Energy letter stating the anticipated delay in 1998." The memorandum also includes talking points regarding the Administration's position on S.1936, radiation standards, environmental



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

protection, and interim storage. The document reflects DOE's policy deliberations as they relate to DOE's response to the delay in its acceptance of spent nuclear fuel. The Department's delay in accepting spent nuclear fuel is an issue that must continuously be addressed by the Administration. Release of the suggestions of DOE personnel would undermine the Administration's ability to speak with one voice regarding such important policy decisions, and would force the Administration to revisit the issue even more often than it already must. DOE personnel will become reluctant to provide suggestions if they believe that it will create additional scrutiny of the Administration.

19. The document Bates Stamped HQR0290839-HQR0290841 (E157) is a September 4, 1996 e-mail from BJ Johnson to Fidler, Holstein, and TJ Glauthier providing draft policy guidance to DOE regarding when and where DOE will begin to accept spent nuclear fuel. The document reflects DOE's policy deliberations regarding the time and place in which DOE intends to begin acceptance of spent nuclear fuel. There is an extremely delicate relationship between DOE and the constituencies being considered for siting an interim storage facility or a permanent disposal facility. Given the sensitivity of these issues, it is important that these constituencies not be provoked with mere ideas and suggestions, which may never become Department policy. The outcome of such provocation would be a future unwillingness of DOE personnel to present ideas, out of fear that their suggestions may result in difficulties for the Department and the Administration.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

20. The document Bates Stamped HQR0290308-HQR0290325 (E155) is a March 31, 1997 predecisional memorandum to TJ Glauthier from Elgie Holstein and Thomas Grumbly regarding DOE's 1997 policy options and alternatives involving DOE's acceptance of spent nuclear fuel. The memorandum was prepared for Secretary Pena's meeting with the nuclear utilities on April 3, 1997, and discusses potential proposals that DOE could offer to the utilities for the acceptance of spent nuclear fuel, and the advantages and disadvantages of each of the proposals. The document also contains potential questions that DOE could pose to utilities, the expected answers from the utilities, potential questions from utilities, and proposed DOE answers to the utilities' questions. The document reflects DOE's policy deliberations as they relate to DOE's response to the utilities' dissatisfaction with the Department's inability to begin acceptance of commercial spent nuclear fuel. It is vital that DOE personnel be able to brief the Secretary upon potential utility questions, and vet proposed responses, without fear that the proposed responses will be subject to the scrutiny of the utilities, even in the event that they do not become the Department's official response. If individuals believe that their suggestions could be misconstrued as the Secretary's official position, or that their suggestions could cause the Secretary embarrassment or inconvenience, they will be reluctant to offer suggestions in the future.

21. The document Bates Stamped HQR0430019 (E179) is a predecisional memorandum from Lake Barrett's files regarding the Administration's policy on nuclear waste, and includes options for the path forward once the Yucca Mountain



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

Viability Assessment is released to the public. The document reflects DOE's policy deliberations as they relate to DOE's response to accepting spent nuclear fuel once Yucca Mountain's Viability Assessment is released. This type of document is generated at each phase of the program, and is eventually developed into document to be submitted to the Secretary, followed by the President. It represents the recommendations of individual DOE personnel, which have not yet been vetted by the Department or the Administration, but which are necessary to assist the Department and the Administration in making policy decisions. The disclosure of the recommendations would hamper the willingness of DOE personnel to provide such recommendations in the future, for fear of the embarrassment that could result from having presented options that conflict with the ultimate policy decision.

22. The document Bates Stamped CTR0193318-CTR0193319 (E111) is an undated draft paper entitled, "Proposal: White Paper on Sabotage Issues Supporting the EIS's Covering Spent Fuel Shipments" that involves discussion of analyses to be performed that relate to the possible sabotage of spent nuclear fuel shipments to Yucca Mountain. The document reflects DOE's policy deliberations regarding how it will address potential sabotage issues in the transportation of spent nuclear fuel. Disclosure of such a document could cause undue criticism of the program, based upon concerns that the Department ultimately analyzed and determined to be unfounded. For security reasons it is vital that DOE personnel feel free to express any and all concerns along these lines. If employees believe that their



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

initial concerns could be publicized before they are put through the appropriate analysis, they will be less likely to express concerns in the future.

23. The documents Bates-Stamped HQR2500218 - HQR2500225 (E302), HQR2500227 - HQR2500234 (E304), and HQR0950014 - HQR0950025 (E185) are draft memoranda for Under Secretary of Energy Moniz from Assistant Secretary of Energy for Environmental Management Carolyn Huntoon regarding the possible acceptance of DOE-owned SNF and other SNF from General Atomic's facility at the request of General Atomics. The document lists a series of options to be decided upon and a recommendation for a specific option. Individuals within OCRWM, the Office of Environmental Management and the Office of General Counsel undertook an effort to analyze whether and how General Atomics' request could be met. [redacted]

REDACTION RETAINED PER CT'S COMMENT AT 5/4/06 TELECONFERENCE THAT REDACTION APPEARED SUPPORTABLE; DETAILS CONTENTS OF DOCUMENT RELATING TO SUGGESTED POSSIBLE OPTIONS FOR RESEARCH REACTOR FUEL, INCLUDING POLITICAL SENSITIVITIES WITH STATE



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

CONTINUATION OF REDACTION FROM PRIOR PAGE

[redacted].

Further, General Atomics and other similarly-situated interested parties presumably would like to question the individuals who drafted this memoranda or contributed to it regarding their opinions as to how this fuel can be moved and how the operation of the repository could be modified to accommodate this request. Such questioning would chill the willingness of individuals within DOE to undertake the analysis of such requests from General Atomics or other Standard Contract holders in the future.

24. The documents Bates-Stamped HQR0291737 - HQR0291739 (E159) and HQR0392003-HQR0392005 (E177) are duplicate copies of a memorandum setting forth talking points for a DOE telephone call to Jack Lew (Office of Management and Budget) regarding issues to be discussed for a proposed settlement of the SNF litigation currently before the Court of Federal Claims. This document was prepared by DOE legal counsel for use in negotiations with the nuclear utility plaintiffs. The document contains recommendations of M.L. Wagner, Senior Policy Advisor to the Secretary, and M.A. Sullivan, General Counsel, to the Secretary for a discussion to be held with Mr. Lew, OMB, regarding possible settlement of the now-pending litigation at the Court of Federal Claims. The discussion includes [redacted]

ATTY-CL PRIV'D INFO



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

[redacted]

ATTY-CL PRIV'D INFORMATION

Such questioning will hamper the development of other settlement ideas in the future.

25. The document Bates-Stamped HQR2360030 - HQR2360037 (E289) are notes of discussions with Under Secretary of Energy Robert Card regarding the possible transfer of program responsibility for disposal of Greater-Than-Class-C radioactive waste pursuant to the Low Level Radioactive Waste Amendments Act from DOE's Office of Environmental Management to another program within DOE, including OCRWM, and e-mails providing information to Under Secretary Card in response to his requests. The notes of the meeting identify the individuals who were assigned to investigate this issue for the Under Secretary. Release of this document would allow those individuals to be questioned about what information they provided to Under Secretary Card to inform his decision, the reasons they selected that information, and the reasons they did not select other information. Because there are many groups that are particularly interested in DOE's progress with regard to the management and disposal of GTCC pursuant to the LLRWPAA, the deliberations of the agency regarding the reassignment of responsibility within the Department could be of great interest. However, if those who assisted the Under Secretary in his consideration of this issue are identified and subsequently questioned about the information that they provided, individuals



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

will be reticent about providing advice and counsel about such reorganizations in the future, although such reorganizations may make the operations of the Department more efficient.

26. The documents Bates-Stamped COF0261673 - COF0261675 (E105), COF0261780 - COF0261781 (E106) and COF0261782 - COF0261785 (E107) are draft memoranda prepared by Mr. David Zabransky addressing the request from Dairyland Power Cooperative (a spent nuclear fuel case utility plaintiff) to DOE seeking assistance in the disposal of its SNF from its shutdown facility. The documents reflect Mr. Zabransky's opinions and recommendations regarding the factors that he believes should be considered in granting the request, including the need to grant priority removal, and contains discussion of the impact of such a policy decision. Decision makers need to be aware of the implications of requests. Release of this document would impinge upon the willingness of Mr. Zabransky and others within OCRWM to offer constructive advice regarding how to proceed in the face of requests like this one.

27. The document Bates-Stamped CTR0141786 - CTR0141787 (E108) is a memorandum recommending the release of a request for expression of interest and comments notice in the Commerce Business Daily and Federal Register supporting the market-driven acquisition approach for OCRWM's fulfillment of the NWPA's provision related to acceptance, transportation and storage of SNF. CTR0141798 - CTR0141799 (E109) is a duplicate version of the above-referenced memorandum. The internal memoranda recommends [redacted]

SEE NEXT PAGE



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

REDACTION OF INFORMATION IDENTIFYING RECOMMENDATION MADE; PROVIDES NO ADD'L INFO REGARDING THE SUBJECT OF THE DOCUMENT

[redacted]. OCRWM still has not made a decision on how to procure transportation services, and as that decision is debated, the availability of this document could lead to questioning by interested parties as to why [redacted]. Moreover, if past recommendations regarding how to approach the transportation requirements of the program are released, program personnel will not be as likely to think creatively as to how best to procure transportation services for the program.

28. The document Bates-Stamped CTR1600071 - CTR1600085 (E115) is a draft presentation regarding the deferral of final waste package closure and emplacement. These documents were prepared at the request of Under Secretary Robert Card and advice and recommendations contained in these pages was provided to Under Secretary Card in a briefing. The draft document contains the opinions of the Yucca Mountain personnel charged with evaluating this idea regarding the benefits and drawbacks of the approach and recommendations regarding whether this course of action should be followed. This idea was not adopted. This type of analysis is often generated when a change in approach for repository operations is considered. Release of this document will lead to questioning as to why this approach is not being followed and such questioning will quell the ability of OCRWM to generate thoughtful consideration of such ideas in the future.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

29. The documents Bates-Stamped HQR2890199 - HQR2890200 (E368) HQR3390001- HQR3390003 (E387), HQR3390004 - HQR3390006 (E388) and HQR3420001 - HQR3420009 (E390) are draft action memoranda to the Secretary of Energy, from Dr. Margaret Chu, the then Director of OCRWM, for review by the Under Secretary, regarding DOE's issuance of the 2004 Annual Capacity Report/Acceptance Priority Ranking and the initiation of the Delivery Commitment Schedule process. The document Bates-Stamped HQR3390007 (E389) is a draft cover letter from the OCRWM contracting officer to the utility standard contract holders, to accompany the 2004 Annual Capacity Report/Acceptance Priority Ranking. These documents were prepared by David Zabransky and Thomas Pollog, and provide their recommendations and opinions regarding the issues that should be addressed when DOE resumed the delivery commitment schedule process. The draft memoranda also address the issues about which Mr. Zabransky and Mr. Pollog believed that the Under Secretary should be aware as this process resumed. The resumption of the Delivery Commitment Schedule process was of interest to every Standard Contract holder and Mr. Zabransky and Mr. Pollog have already been questioned about the resumption of the DCS process in depositions and during trial. Further, Mr. Zabransky and Mr. Pollog are currently the individuals who will be responsible for the issuance of the next ACR and the resumption of the DCS process in the future. If these documents are released, Mr. Zabransky and Mr. Pollog will be required to provide advice to the Director and the Secretary, knowing that they



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

can be questioned about that advice later. Having already experienced the deposition process, Mr. Zabransky and Mr. Pollog would be understandably wary of providing completely candid advice under such circumstances.

30. The document Bates-Stamped HQR3010001 - HQR3010009 (E372) is an e-mail forwarding an attached draft report to the Secretary of Energy regarding the DOE Inspector General's audit of the licensing support network ("LSN") for the repository at Yucca Mountain. Certification of the LSN is the first step in the license application proceeding. The draft report identifies several issues regarding the certification of the LSN and the e-mail forwarding the report identifies the participants in a meeting to coordinate OCRWM's response to this report. If this document is released, these individuals could be called upon to explain their advice regarding what OCRWM's response should be to the report, which would chill the willingness of these individuals to provide further advice in the effort to get the LSN certified. Release of the draft report, which contains the DOE IG's observations [redacted].

REDACTION OF DESCRIPTION OF HARM THAT WOULD RESULT FROM RELEASE OF DOCUMENT; PRIVILEGED; IRRELEVANT TO THIS LITIGATION

**Documents Related to Repository Design:**

Several of the documents that I have re-examined concern aspects of the design of the repository. OCRWM is still working to finalize the design of the repository and our concept of



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

operations at the repository as we prepare the license application. In the documents that follow, individuals within OCRWM are providing advice and recommendations on issues concerning the repository design. It is critical that individuals within the program be able to provide advice and recommendations at this stage in the program. Because of the heightened attention that the program receives from Congress, every design decision is potentially subject to extensive questioning by Congress and others regarding its basis and merits. To the extent that every suggestion regarding possible design, whether well-founded or not, becomes subject to the same level of scrutiny, employees will be significantly less likely to make such suggestions and the program will become less and less effective. Release of these documents would chill employees' willingness to provide such advice and would hinder the Director's ability to obtain the best advice possible in the future.

31. The documents Bates-Stamped CTR1720056 - CTR1720058 (E136), CTR1740067 - CTR1740069 (E141) and HQR2190057 - HQR2190074 (E263) are drafts of a graphic presentation regarding repository design options. The document Bates-Stamped HQR2190054 (E261) is a draft agenda for a briefing for Dr. Chu regarding potential repository design changes. The document Bates-Stamped CTR1720059 (E137) is a table containing background materials for the above-referenced presentation regarding repository design options. These documents reveal options for the design that were considered, but are not currently being pursued, as a way to meet the budgetary restrictions facing the program. For the reasons explained above, releasing these documents now will



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

chill employees' willingness to provide such advice and will hamper the ability of the program to choose the best final design for the repository.

32. The documents Bates-Stamped HQR3130001 - HQR3130003 (E381), HQR3130004 - HQR3130022 (E382) and HQR3130023 - HQR3130096 (E383) are notes, drawings, draft agenda and other materials prepared in connection with a briefing for Under Secretary Card regarding the design of the repository at Yucca Mountain. Under Secretary Card was provided with recommendations on matters such as how OCRWM should proceed with the license application. For the reasons explained above, because the design of the repository has not yet been finalized and the license application has not yet been submitted, release of these documents now will chill employees' willingness to provide such advice and will hinder OCRWM's efforts to finalize the design.

33. The document Bates-Stamped HQR2950001 - HQR2950003 (E371) is believed to be the handwritten notes of Mr. James Owendorf, an assistant to Dr. Chu, former Director, regarding the information and advice that was to be prepared for a meeting between Yucca Mountain Project personnel and Under Secretary Card on April 18, 2003. The YMP office was to provide strategies for how activities could be accomplished in the fiscal years 2003, 2004 and 2005. It is my understanding that this document was previously released by the Government in redacted form. As shown throughout the documents covered by my declaration, Under Secretary Card repeatedly sought advice and recommendations from the program regarding activities that might be accomplished within the budgets given and requested as



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims