part of managing the program, constantly seeking new ideas and suggestions (thinking "outside the box") that may be wholly unrealistic or in conflict with other program needs, none of which ever necessarily become agency policy. Release of this document, which provides insight into the budget formulation process, would violate that principle that the budgets developed within the agency do not become the final budgets of the Executive Branch until issued by the President. Release of these documents now will chill employees' willingness to think "outside the box" about such problems.

34. The document Bates-Stamped HQR3060001 - HQR3060022 (E377) is a draft memorandum for Under Secretary Card regarding DOE's identification of a preferred rail corridor to the repository at Yucca Mountain. The document reveals the deliberations within DOE regarding the identification of the rail corridor and contains a detailed explanation as to why one corridor was recommended over the others. Although seemingly irrelevant to the litigation in the Court of Federal Claims, this decision is the subject of other litigation which could be impacted as the result of the release of this document. That litigation may have an impact upon DOE's ability to commence operations at Yucca Mountain. In addition, there are a myriad of other decisions like this one that will have to be made as the program moves forward in the licensing of Yucca Mountain. If memoranda such as this one are subject to disclosure, the authors may be inclined to be less detailed in providing recommendations regarding the pending decision, which could result in decisions being made without the benefit of a full consideration of the issues.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

35. The document Bates-Stamped HQR2640086 - HQR2640099 (E362) is a January 2004 presentation to Under Secretary Card regarding OCRWM program strategy, waste acceptance and transportation. The document reveals the recommendations presented to the Under Secretary regarding these issues and identifies the OCRWM personnel responsible for providing this information to the Under Secretary. The document specifically discusses the status of the license application and the issues surrounding its development. Because the license application is still in development, the release of this document could impede the development and submission of that application because interested constituencies raise questions based upon this document as well as chill the willingness of OCRWM personnel to provide frank advice regarding these matters. In addition, the presentation contains possible alternatives for the facilities to be included in the license application. As noted above, DOE has not finalized the design of the repository facilities.

36. The documents Bates-Stamped HQR2890184 - HQR2890198 (E367) and HQR2890201 - HQR2890240 (E369) are draft presentations titled "Proposed Approach for Initiating Modifications to Utility Disposal Contracts" prepared by Mr. Zabransky at the request of Under Secretary Card. The documents contain Mr. Zabransky's recommendations and opinions regarding the terms to be modified if modifications are undertaken. DOE has not made a final decision that the Standard Contract should be modified and what terms should be modified. Mr. Zabransky would certainly expect to be questioned in further depositions



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

about his opinions about these possible contract modifications (that the Department has not yet suggested to the Standard Contract holders and to which Standard Contract holders likely would have to agree) if this document is released, even though no decision as to whether the Standard Contract should be modified has been made. Such questioning will quell Mr. Zabransky's willingness and the willingness of others to make similar recommendations in the future or participate further in the deliberations regarding whether and how the Standard Contract should be modified.

**Budget-Related Documents:**

The next set of documents are all documents that were generated in the process of formulating the annual budget for OCRWM. On an annual basis, the submission of OCRWM's budget request to Congress for the upcoming fiscal year constitutes a major effort within the Department. This annual budget request must be approved by high-level DOE officials, submitted to OMB for a detailed review and, usually, following extensive revision, and then submitted to Congress. Many program personnel, including myself, are involved in activities related to the development of each budget submission, from developing the goals that the program expects to be able to accomplish in each budget cycle, to estimating the cost of those activities, to defending OCRWM's request to the Secretary's office and then before OMB before the President's budget is submitted to Congress.

As a DOE employee, I have always understood that the budget is not the budget until it is submitted by the President to Congress. I understand that principle to protect the Executive Branch from criticism of choices that are made in the formulation of the budget. The documents



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

that follow provide insight into that process of how the budget is formulated and what choices were made regarding requesting funding for certain program activities, but not for others. Department employees know that any suggestions that they make, whether adopted or not, could subject the Executive Branch to potentially intense scrutiny regarding the choices that are ultimately made regarding those suggestions, to the extent that unaccepted suggestions are made public. Further, any suggestions are typically vetted by numerous individuals so that the underlying rationale for the original suggestion may have no relationship to the reasons for the ultimate policy adopted. Yet, it is essential that individuals feel free to make candid and creative suggestions to allow the Department to make fully informed decisions.

While the documents referenced in my declaration as part of Under Secretary Card's initiative involved many of these same or similar budgetary issues, the budget-related documents described in this section of my declaration are the type of documents developed for particular fiscal year budget submissions. In addition to documents that address a particular fiscal year, a number of documents also address program activities over a multiple year period. These documents analyze and set forth recommendations within DOE for the longer-term aspects of the program.

As I previously described, numerous personnel within the Department are involved in developing the recommendations that support the annual budget request to Congress. The documents identified in this section of my declaration include recommendations, opinions and advice from DOE personnel, some of which were accepted and included as part of the budget request. Yet at the same time, many of the recommendations were not included in the budget request.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

DOE personnel who engaged in these activities to support the submission of the program's budget request, offered honest, candid recommendations and advice as part of the internal process to develop the budget requests. It is my view that these personnel were able to do so because of an understanding that their opinions and advice regarding these predecisional, deliberative types of matters would reviewed and discussed only within the Department. As a long-serving official with the federal government, in a program that is viewed by most constituencies as a controversial program, DOE employees must be allowed to offer their recommendations, opinions and advice in an environment that encourages them to be as frank, open and honest as possible. I believe that this type of environment encourages efficiency within government, and ultimately helps to produce a more effective and successful program.

At the same time, I recognize that without careful consideration, the deliberative process privilege can become too expansive in its application. Therefore, I have made a substantial effort, both with this declaration as well as my four prior declarations executed as part of the SNF litigation, to accurately identify and describe only those predecisional, deliberative documents whose release would undercut and inhibit the free and candid discussion necessary to ensure a successful, efficient government program.

37. The document Bates-Stamped HQR2500981 - HQR2500981.45 (E331) is an April 18, 2002 e-mail with a draft attachment, prepared for Under Secretary Card, that includes a draft check list and an internal memorandum discussing potential activities reviewed as part of OCRWM's efforts to respond to criticisms from the Nuclear Waste Technical Review Board ("NWTRB"), an independent agency of the Executive Branch with the sole purpose of providing scientific and technical



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

oversight to DOE's program for managing and disposing of spent nuclear fuel and high-level radioactive waste. This effort includes the need to decide how OCRWM could most effectively increase confidence in the planned design and operation of the geologic repository at Yucca Mountain. The document includes a "preliminary candidate list of initial activities" that were potential options to support the enhancement of the OCRWM program. The document addresses the potential impact of the proposed activities in terms of duration and cost for each activity, if selected. Staff members, identified by name, are providing input as to what they perceive to be potential problems for the Director of OCRWM and the Secretary of Energy. If this document is released, and these individuals are asked about these documents in deposition or another forum, it will have a chilling effect upon the willingness of these staff members to provide frank advice in the future because they do not want to be required to explain why they perceive certain problems within the program. Release of this document, which is not the final Department response to the NWTRB, would have a chilling effect on OCRWM's ability to request such comments and advice from contractors and staff members because they do not want to be questioned about their frank advice regarding DOE's potential response.

38. The documents Bates-Stamped CTR1660061 - CTR1660070 (E130), HQR2050015 - HQR2050018 (E206) and HQR2190046 - HQR2190052 (E259) are tables and several brief draft memoranda discussing the effect of the FY 2003 budgetary options upon DOE programs. These documents were prepared in the



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

process of formulating a recommendation for consideration by Under Secretary Card regarding DOE's FY2003 budget request. The documents reveal deliberations regarding the impact of possible budgets for the activities of OCRWM. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests to Congress and this could inhibit the openness of OCRWM employees to participate in and provide complete and uninhibited advice and opinions to Department decision makers.

39. The documents Bates-Stamped HQR3030001 - HQR3030009 (E373), HQR3030010 - HQR3030021 (E374), HQR3030022 - HQR3030023 (E375) and HQR3030024 - HQR3030027 (E376) are documents regarding the need to replan OCRWM's FY2003 budget due to the extended continuing budget resolution. The replan was necessary because the actual appropriation for FY2003 was substantially below OCRWM's budget request. These documents were requested by Dr. Margaret Chu, the then Director of OCRWM, and provide recommendations regarding DOE's policy deliberations on this matter. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests, and it would have a chilling effect on OCRWM's ability to request such comments and advice from contractors and staff members because they do not want to be questioned about their frank advice regarding DOE's potential response.

40. The document Bates-Stamped HQR2930031 - HQR2930044 (E370) is an OCRWM presentation titled "FY2005 OMB Budget Review" and reflects DOE



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

deliberations regarding a budgetary request prepared for submission to OMB. This document was prepared in the process of formulating a recommendation regarding DOE's FY2005 budget request and reflects DOE's policy deliberations in the budgetary process. The document was prepared during the early stages of DOE's internal budget formulation process and does not represent the final budget decisions. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests to Congress regarding the priorities selected by OCRWM for a given budget, especially when particular priorities were not selected or presented for consideration in future budget requests. The release of this document could inhibit the ability of DOE employees to offer complete and frank advice to DOE officials on budgetary matters.

41. The documents Bates-Stamped HQR2540001 - HQR2540083 (E356) are documents prepared for an amendment to DOE's FY 2003 budget request, including draft memoranda, draft presentations, to be given by me and others to the Under Secretary, and other documents generated in the analysis of whether DOE should seek the amendment. The documents contain recommendations of OCRWM personnel regarding how the development of the repository would have been affected and reflect the deliberations of DOE regarding this amendment. Release of these documents would reveal the advice and opinions of OCRWM personnel regarding the need for such an amendment. Such a release could chill and inhibit the willingness of personnel to provide similar input into the development of OCRWM's program activities in the future.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

42. The documents Bates-Stamped CTR0451252 - CTR0451269 (E113), CTR1660055 - CTR1660060 (E129), HQR2040006 (E198), HQR2040007 - HQR2040008 (E199), HQR2040009 - HQR2040011 (E200) , HQR2040012 - HQR2040014 (E201), HQR2070006 - HQR2070008 (E210), HQR2070009 - HQR2070011 (E211), HQR2100005 - HQR2100007 (E219) and HQR2140019 (E232) are several versions of a graphic depiction showing the effect of several budgetary options upon the construction of a repository at Yucca Mountain and SNF acceptance at the repository. The documents include assessments and recommendations by DOE personnel regarding the potential impact of schedules for repository construction and SNF acceptance resulting from potential budget reductions. These documents were prepared in the process of formulating a recommendation for consideration by Under Secretary Card regarding DOE's budget requests, which were ultimately submitted to OMB. The documents reveal DOE's deliberations regarding the budget process and reflect DOE's policy deliberations and form part of the deliberative process. If released, individuals of OCRWM could be questioned in the process of presenting future budget requests to Congress and could be inhibited from providing full and free advice and input into future development of budget requests.

43. The documents Bates-Stamped HQR2500791 - HQR2500911 (E327), HQR2500916 - HQR2500976 (E329), and HQR2501246 - HQR2501272 (E342) are e-mails with attachments that are drafts of graphic presentations from April and June 2002 from Dr. Margaret Chu, Director, OCRWM, for Under Secretary



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

Card regarding the budget strategy for OCRWM for Fiscal Years 2004 to 2010. These documents represent the early stages of OCRWM's budget formulations and address decisions that would be made regarding program activities and strategy going forward. These documents address evolving and developing program activities, with a focus on the budget implications of these activities. Given the need to seek appropriations from Congress on an annual basis, and the anticipated increases in expenditures as the program moved forward with the actual construction of the repository, it was extremely important to provide the Department's officials with different options regarding program activities and goals in conjunction with the budget issues that the program was expected to face before Congress. If this document were to be released, the harm to the agency is the fact that staff members are providing input as to what they perceive to be potential problems for the Director of OCRWM and the Secretary of Energy, in the presentation of the budget. If these individuals are asked about these documents in deposition or another forum, it will have a chilling effect upon the willingness of these staff members to provide frank advice in the future because they do not want to be required to explain why they perceive certain problems for the program.

44. The documents Bates-Stamped HQR2100001 - HQR2100003 (E217), HQR2100004 (E218), and HQR2200001 - HQR2200012 (E265) are draft memoranda addressing the effect of budget reductions upon OCRWM's plans for submission of the license amendment and construction of the repository. The



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

draft memoranda provide recommendations regarding how the effect of budget reductions could be mitigated. These documents were prepared in the process of formulating a recommendation for consideration by Under Secretary Card regarding DOE's FY2003 budget request which was ultimately submitted to OMB. These documents reflect DOE's deliberations regarding the formulation of its budget, deliberations that should be shielded from review.

45. The documents Bates-Stamped HQR 2130028 - HQR2130031 (E228), HQR2140015 - HQR2140018 (E231), and HQR2190039 - HQR2190040 (E257) are spreadsheets presenting possible activities that could be undertaken to reduce the cost and schedule for the construction of the repository and opinions as to the likelihood of successfully implementing each of the ideas. This document was generated by OCRWM personnel in the process of creating a budget request for the program. The thoughtful preparation of documents such as these for decision makers is vital to the proper management of the program because decision-makers need good ideas as to how to reduce costs. If OCRWM personnel know that documents containing such ideas will be released and that they will be questioned about why certain cost reduction activities could or could not be undertaken, they will be unwilling to think creatively about how program costs can be reduced in the future.

46. The document Bates-Stamped CTR1620001 - CTR1620002 (E123) is an e-mail and attached graph prepared by Mr. David Siefken, a contractor, in response to a request by Chris Kouts regarding utilities' estimates of at-reactor storage costs for



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

spent nuclear fuel. Mr. Kouts requested this e-mail as part of OCRWM's preparation of our annual budget, to be able to defend the need for the funding of certain activities in the budget deliberations within the Department and with OMB. Accordingly, the document is one necessary to the development of the budget, a process that should be protected from disclosure. In addition, the e-mail contains Mr. Siefken's personal opinions regarding the accuracy of the estimates, opinions that Mr. Siefken would be less likely to provide if he knew he would be questioned about them.

47. The document Bates-Stamped HQR2500021 - HQR2500025 (E292) is an e-mail requesting assistance in the development of the FY 2002 budget for the Office of Management and Budget ("OMB"). The document contains sample questions that were anticipated to be asked in the budget rollout process, such as the potential schedule problems caused by budget shortfalls. The preparation of sample questions by program personnel is important to ensure that policy makers can properly defend the program's budget request when presented to the OMB and is an important part of the DOE budget preparation process. The document identifies the individual OCRWM staff members that were asked to provide answers to these questions. If this document were to be released, the harm to the agency is the fact that staff members, identified by name, are providing input as to what they perceive to be potential problems for the Director of OCRWM and the Secretary of Energy, in the presentation of the budget. If these individuals are asked about these documents in deposition or another forum, it will have a



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

chilling effect upon the willingness of these staff members to provide frank advice in the future because they do not want to be required to explain why they perceive certain problems for the program. In addition, as discussed above, the release of these documents will impede the proper development of the budget by the Executive.

48. The documents Bates-Stamped HQR2500026 - HQR2500028 (E293) are two e-mails regarding a request for a briefing by OMB on budgetary matters. The topics upon which OMB wanted a briefing are set forth in the e-mail, including a request for "an extensive detailed discussion of [DOE's] spending plans for the next year" and that DOE address the concerns of the [Technical Review Board]. Such briefings to OMB are necessary because the OMB formulates the final budget policy for the Executive Branch and the budget is not final until it is submitted by OMB on behalf of the President to Congress. Accordingly, these briefings should be considered to be the advice and recommendations to the OMB in the formulation of the final budget. The e-mail was sent to those individuals who were expected to provide the information necessary for the briefing to OMB. If these e-mails were released, the individuals identified could be expected to be asked to testify about what information they provided to the OMB regarding these matters, which would violate the principle that the budget is not final until it is issued as the President's budget and chill the willingness of these employees to provide frank and candid advice in the future.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

**Business Case Documents:**

In late 2001/early 2002, Under Secretary of Energy Card initiated a process within DOE, and more specifically, within OCRWM, to review and assess OCRWM's ongoing efforts to develop, construct and operate a geologic repository at Yucca Mountain. As part of this process, the Department conducted an intensive effort to develop, in response to the Under Secretary's direction, detailed recommendations for consideration by the Under Secretary, regarding program priorities, alternative scenarios, and effects upon upcoming fiscal year budget requests. Within OCRWM, the effort initiated by Under Secretary Card was described as an effort to develop the "business case" for the Yucca Mountain repository because it was to be an effort to identify and develop recommendations for the implementation of certain activities and strategies for the development of the Yucca Mountain repository made "business sense." The Yucca Mountain business case, in turn, would support the Secretary's budget request to OMB and, after extensive review, the President's budget request to Congress for OCRWM.

Under Secretary Card's request for analysis and recommendations focused upon two goals: one, to be able to accelerate the rate of waste acceptance once repository operations began; and, two, to reduce overall program costs. During the course of this effort, which lasted through approximately September 2002, the Department developed numerous recommendations and options for OCRWM's program, based upon various scenarios regarding the anticipated operation of the Yucca Mountain repository. Unfortunately, all of this analysis did not produce any viable courses of action to meet the Under Secretary's objectives and no changes in program direction were implemented as a result.



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

Numerous detailed documents were developed by DOE staff and contractor personnel in the effort to respond to Under Secretary Card's requests. Many of these documents focused on issues such as "accelerated" or "high receipt rates" for DOE's acceptance of SNF from nuclear utilities, early acceptance of SNF from shutdown nuclear reactors, and various national transportation strategies, such as acceptance of SNF based upon particular regions of the country. Others focused upon determining which of OCRWM's currently planned activities could be changed to reduce program costs. All of the scenarios and options studied and reviewed also focused upon the effect that the implementation of any items, if accepted as recommendations by the Department, would have upon OCRWM's budget and future program-related expenditures. The recommendations developed addressed both the annual budget process, as well as the long-term, multi-year expenditures that the civilian radioactive waste management program requires, given its massive complexity and scope.

In developing these various recommendations, options, and scenarios for Under Secretary Card and the Department as a whole, DOE personnel and contractors also developed extensive and detailed supporting information to justify, challenge, question and/or disprove the proposed recommendations. This type of supporting information, generally documented in spreadsheets, tables, charts and graphs, and set forth in both separate documents and included as part of more comprehensive documents such as memoranda and white papers, represent an integral part of the recommendations and advice provided to the Department's officials as part of the decision making process.

Another vital and integral part of this process were the numerous meetings conducted within OCRWM and with the Under Secretary to discuss these issues, outline options and



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

provide advice. In some cases, the opinions and advice offered in these meetings were set forth in such documents as "action items" and "meeting notes" and in many cases the opinions and advice offered by DOE personnel at meetings and presentations were incorporated into other documents, examples of which are identified throughout my declaration.

I know that the OCRWM personnel involved in these meetings and presentations within the program, and those OCRWM personnel involved in the drafting of the documents identified in this declaration, participated with an understanding that they could offer straight forward, frank and candid recommendations, opinions, and advice to Under Secretary Card and other DOE decision makers in response to Under Secretary Card's requests, and that these recommendations, opinions, and advice (many of which were, ultimately, never pursued or implemented) would remain part of the predecisional, deliberative process that would be protected from further disclosure. This understanding was particularly important because everyone who participated knew that the subject matter of this analysis and recommendation would be of great interest to Congress and all of the Standard Contract holders who were in litigation with the Department. Given that everyone within the program is well aware that numerous program personnel have been deposed numerous times and questioned about activities, strategies and scenarios that, while possibly discussed or reviewed by the Department, were never adopted, implemented or pursued as Department activities and official policies, the release of these documents will seriously damage the ability of the next decision maker to try to obtain the type of candid analysis and advice that is reflected in the following documents and provided to Under Secretary Card.



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

49. The documents Bates-Stamped HQR2500031 - HQR2500043 (E294) and HQR2500063 - HQR2500076 (E296) are presentations prepared by OCRWM for OMB involving a review of the National Transportation Program, in preparation for the submission of the budget to Congress. These documents were part of OCRWM's effort to validate and support the program's budget request, including decisions regarding the selection of program priorities and goals and the budget implications of selecting the program's priorities. Such briefings to OMB are necessary because the OMB formulates the final budget policy for the Executive Branch and the budget is not final until it is submitted by OMB on behalf of the President to Congress. Accordingly, these briefings should be considered to be the advice and recommendations to the OMB in the formulation of the final budget. The individuals who were expected to provide the information necessary for the briefing to OMB would be inhibited from providing necessary advice and opinions to DOE officials if the individuals identified could be expected to be asked to testify about what information they provided to the OMB regarding these matters.

50. The documents Bates-Stamped HQR2501051 - HQR2501053 (E333) are e-mails with attached notes from a meeting with Under Secretary Card on April 19, 2002 discussing strategy and policy regarding DOE budget requests. The options discussed included accelerated waste acceptance options, identifying program priorities, and decisions on the allocation of funds within and among various OCRWM program activities. The release of these documents, prepared by



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

OCRWM personnel, could chill the willingness of these personnel to provide full and complete responses to DOE decision makers in the future if they know that they could be questioned about their frank advice regarding the program's potential activities.

51. The documents Bates-Stamped CTR1600035 - CTR1600055 (E114), CTR1600091 - CTR1610105 (E116), CTR1600208 - CTR1600225 (E120), CTR1600301 - CTR1600353 (E121), CTR1620012 - CTR1620027 (E126), CR1770015 - CTR1770022 (E147), CTR1770023 - CTR1770049 (E148), CTR1770050 - CTR1770058 (E149), HQR2030005 - HQR2030017 (E194), HQR2150001 - HQR2150064 (E234), HQR2170001 - HQR2170023 (E239), HQR2180001 - HQR2180002 (E247), HQR2180027 - HQR2180039 (E250) and HQR2360013 - HQR2360029 (E288), HQR2501157 - HQR2501232 (E339), HQR2501273 - HQR2501326 (E343), HQR2501335 - HQR2501470 (E345) are copies of slides addressing the impact of high receipt rates on waste site inventories that were used for a graphic presentation for group discussion of options regarding the design and operation of a repository at Yucca Mountain and the effect of those options upon SNF inventories. These documents were produced in response to Under Secretary Card's request for an analysis of how DOE could accelerate the process of waste acceptance once the program began operations. Because of the subject matter, I would expect that the OCRWM personnel that prepared these documents, primarily individuals who report to Mr. Christopher Kouts, including Mr. Zabransky and Mr. Pollog, would be questioned



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims

extensively about these documents in future depositions and trial testimony, even though none of these analyses were adopted as policy or determined to be realistically viable. Such questioning will chill the willingness of these individuals to provide similar analysis and recommendations to decision makers in the future.

52. The documents Bates-Stamped CTR1600106 - CTR1600111 (E117), CTR1770001 - CTR1770006 (E144), and HQR2501327 - HQR2501334 (E344) are draft written answers to questions raised involving a presentation to Under Secretary Card regarding waste acceptance rates and system costs and OCRWM's plans for transportation. In addition to the harm caused by the release of these documents in preceding paragraphs, these documents also should not be released because OCRWM has not finalized its plans for transportation for the program. Accordingly, these documents provide insight into the programs' deliberations regarding those plans that are the subject of continuing analysis and advice by program personnel. Release of these types of documents could have a chilling effect upon the on-going analysis.

53. The documents Bates-Stamped CTR1620033 - CTR1620046 (E128), CTR1720001 - CTR1720027 (E133), CTR1720028 - CTR1720047 (E134), CTR1740004 - CTR1740030 (E139), CTR1740070 - CTR1740089 (E142), HQR2500912 - HQR2500915 (E328), HQR2500977 - HQR2500980 (E330), HQR2640021 - HQR2640040 (E360) and HQR3080073 - HQR3080085 (E380) are presentations titled "Impacts of Accelerated Waste Acceptance" and similar



Protected Material To Be Disclosed Only
In Accordance With Protective Order
Entered By U.S. Court Of Federal
Claims

documents provided information requested by Under Secretary Card in connection with policy decisions to be made within DOE regarding waste acceptance. The document Bates-Stamped CTR1720048 - CTR1720055 (E135) is a set of tables and charts containing background material for the presentation titled "Impacts of Accelerated Waste Acceptance" for Under Secretary Card. Again, because the contemplation of accelerated acceptance as a program objective would be of extreme interest to so many of the program's constituencies, release of these documents would lead to extensive questioning of program personnel, by Congress in its consideration of budgets, in the licensing proceedings by the State of Nevada and other parties, and in the litigation pending before the U.S. Court of Federal Claims. Under Secretary Card was asking program personnel to think creatively about the program and its goals as they prepared these documents. If program personnel are questioned about this work, it will affect their willingness to freely provide feedback and recommendations in response to future requests from policy makers.

54. The documents Bates-Stamped HQR2030001 - HQR2030004 (E193), HQR2030018 - HQR2030031 (E195), HQR2030032-HQR2030041 (E196), HQR2040015 - HQR2040047 (E202), HQR2050019 (E207), HQR2070012 - HQR2070055 (E212), HQR2090001, HQR2090003 (E216), HQR2100008 - HQR2100018 (E220), HQR2140020 - HQR2140030 (E233), HQR2160027 - HQR2160031 (E238), HQR2180040 - HQR2180057 (E251), HQR2190001 - HQR2190013 (E253), HQR2190014 - HQR2190024 (E254), HQR2190033 -



Protected Material To Be Disclosed Only In Accordance With Protective Order Entered By U.S. Court Of Federal Claims