No. 04-106C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE GOVERNMENT'S CROSS-MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFF'S MOTION FOR THE PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 305-7571
Fax: (202) 305-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

November 21, 2007

Attorneys for Defendant

## TABLE OF CONTENTS

DISCUSSION ........ 1

I. DAIRYLAND RELIES UPON A MATERIAL MISSTATEMENT OF FACT IN SUPPORT OF ITS ARGUMENT THAT THE SUBJECT DOCUMENTS SHOULD BE PRODUCED ........ 1

II. NOTWITHSTANDING DAIRYLAND'S UNSUPPORTED ASSERTIONS TO THE CONTRARY, THE SUBJECT DOCUMENTS ARE PRESUMPTIVELY PROTECTED BY THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, AND DAIRYLAND OTHERWISE HAS FAILED TO SATISFY ITS INITIAL BURDEN ........ 4

A. The Court's Prior October 17, 2007 Order, Which Indicated That The Court Had Previously Determined The Relevance Of The Documents Sufficient To Satisfy The Presidential Communications Privilege, Applied The Incorrect Standard For Evaluating Claims Under The Presidential Communications Privilege ........ 4

B. Dairyland Has Not Made The Necessary Showing Of Relevance Necessary Under The Presidential Communications Privilege ........ 5

C. Dairyland Has Not Established That It Cannot Obtain The Relevant Information That It Wants By Other Means ........ 8

III. DAIRYLAND'S NEWLY-RAISED ARGUMENT THAT THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE IS INAPPLICABLE TO THE SUBJECT DOCUMENTS IS WITHOUT MERIT ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## CASES

American Historical Association v. National Archives & Records Administration,
402 F. Supp. 171 (D.D.C. 2005) .......... 10

Cheney v. United States District Court for the District of Columbia,
542 U.S. 367 (2004) .......... passim

INS v. Chadha,
462 U.S. 919 (1983) .......... 13

Indiana Michigan Power Co. v. United States,
422 F.3d 1363 (Fed. Cir. 2005) .......... 7

Myers v. United States,
272 U.S. 52 (1926) .......... 12

Nixon v. Adm'r of Gen. Servs.,
433 U.S. 425 (1977) .......... 13

Pacific Gas & Electric Co. v. United States,
77 Fed. Cl. 205 (2006) .......... 2

Scholl v. United States,
69 Fed. Cl. 395 (2005) .......... 2

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) .......... passim

United States v. Nixon,
418 U.S. 683 (1974) .......... passim

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) .......... 4

## STATUTES

42 U.S.C. § 7131 .......... 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO THE GOVERNMENT'S CROSS-MOTION FOR A PROTECTIVE ORDER
REGARDING PLAINTIFF'S MOTION FOR THE PRODUCTION OF DOCUMENTS
WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

Defendant, the United States, respectfully submits this reply to the "Reply On Motion To Compel Production Of Documents Withheld On Claims Of Presidential Communications Privilege And Opposition To Motion For A Protective Order," that the plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on November 5, 2007.[1]

DISCUSSION

I. DAIRYLAND RELIES UPON A MATERIAL MISSTATEMENT OF FACT IN SUPPORT OF ITS ARGUMENT THAT THE SUBJECT DOCUMENTS SHOULD BE PRODUCED

As a preliminary matter, in its November 5, 2007 brief, Dairyland repeatedly asserts that the Court should order the subject documents produced because "*this* Court, after an in camera review," found the documents sufficiently relevant to overcome the assertion of presidential communications privilege. Pl. Br. at 4, 5 (emphasis in original). Such an assertion is a

[1] The Government included a cross-motion for a protective order in its October 24, 2007 "Opposition To Plaintiff's Motion To Compel Production Of Documents Withheld Pursuant To The Presidential Communications Privilege And Cross-Motion For A Protective Order," to which Dairyland responds in its November 5, 2007 filing. Accordingly, we timely submit this reply brief in support of our October 24, 2007 cross-motion.

misstatement of fact by Dairyland. At no point has the Court in this case undertaken a review in camera of the five subject documents. Consequently, Dairyland has no basis to argue that this Court already has examined these documents and been able to determine from their content that Dairyland has met its initial burden to satisfy the heightened standards of "relevance," "admissibility," and "specificity" that are mandated by the Supreme Court. See Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 386 (2004).[2]

Certainly, the Court can order an in camera review of these documents, if it believes it necessary. United States v. Nixon, 418 U.S. 683, 703 (1974); Scholl v. United States, 69 Fed. Cl. 395, 396 (2005). In fact, to the extent that the Court determines that Dairyland may have satisfied the heightened relevance standard that the Cheney Court has identified (as discussed in our cross-motion for a protective order) and its demonstrated inability to obtain similar information through alternative means, see Nixon, 418 U.S. at 713 (party seeking documents in criminal case needs "to demonstrate that the Presidential material was 'essential to the justice of

---

[2] Further, to the extent that Dairyland intends to rely upon the Court's findings in Pacific Gas & Electric Co. v. United States, 77 Fed. Cl. 205 (2006), in which the Court ordered the subject documents produced following an in camera review, such an argument would be misplaced. As the Court is well aware, in PG&E, the plaintiff (who was represented by the same counsel as Dairyland) only challenged the Government's assertion of deliberative process privilege and did not otherwise attempt to overcome the presidential communications privilege. The Government produced the subject documents to the plaintiff in PG&E in redacted form, just as we did to Dairyland in this instance. The plaintiff never challenged the presidential communications privilege, and, as a consequence, the Court in PG&E never had occasion to rule upon the issue of whether the subject documents were sufficiently relevant to overcome the more stringent standards of relevance, admissibility, and particularity that apply when the presidential communications privilege is involved. See Cheney, 542 U.S. at 386; see also In re Sealed Case, 121 F.3d 729, 741, 746 (D.C. Cir. 1997) (presidential communications privilege and deliberative process privilege "are distinct and have different scopes," and presidential communications privilege otherwise "affords greater protection against disclosure" and is "more difficult to surmount" than deliberative process privilege).

the (pending criminal) case'" (quoting United States v. Burr, 25 Fed. Cas. at 25 (1807))), the Court should review these documents in camera before ordering production of any of them to ensure that the presidential communications privilege is not unnecessarily or inappropriately overridden. See Nixon, 418 U.S. at 713 (approving of district court's order for in camera review after having determined that party seeking production had satisfied relevant criteria). "It is elementary that in camera inspection of evidence is always a procedure calling for scrupulous protection against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues of the trial for which it is sought." Id. at 714.

However, no in camera review is necessary where the plaintiff has not made the threshold showing necessary to overcome the presidential communications privilege. See In re Sealed Case, 121 F.3d 729, 759 (D.C. Cir. 1997) ("showing required to obtain in camera review is governed by the Nixon/Sirica need standard and entails demonstrating with specificity that the subpoenaed materials likely contain important evidence and that this evidence, or equivalent evidence, is not practically available from another source"). As we will discuss below, Dairyland has not made that showing here. In any event, this Court should not credit Dairyland's attempt to distort the facts giving rise to the instant dispute.

II. NOTWITHSTANDING DAIRYLAND'S UNSUPPORTED ASSERTIONS TO THE CONTRARY, THE SUBJECT DOCUMENTS ARE PRESUMPTIVELY PROTECTED BY THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE, AND DAIRYLAND OTHERWISE HAS FAILED TO SATISFY ITS INITIAL BURDEN

A. The Court's Prior October 17, 2007 Order, Which Indicated That The Court Had Previously Determined The Relevance Of The Documents Sufficient To Satisfy The Presidential Communications Privilege, Applied The Incorrect Standard For Evaluating Claims Under The Presidential Communications Privilege

Dairyland asserts that the Government, in its October 24, 2007 brief, "ignores" the Court's October 17, 2007 order, in which the Court identified the two-part test articulated by the United States Court of Appeals for the District of Columbia Circuit in Sealed Case for purposes of determining whether Dairyland has demonstrated sufficient need to overcome the White House's assertion of privilege. Pl. Br. at 2.

Contrary to Dairyland's assertions, we acknowledge that, in its October 17, 2007 order, and prior to full briefing on this issue, the Court recognized that its June 29, 2007 ruling (in the context of Dairyland's challenge on deliberative process grounds) found that the subject documents were "highly relevant." See October 17, 2007 Order at 2. With all due respect, for the reasons articulated in our October 24, 2007 brief and as discussed in greater detail below, the standard applicable to the Court's finding in its June 29, 2007 decision that the subject documents are "highly relevant" for purposes of overcoming the deliberative process privilege differs from the standard necessary to overcome the presidential communications privilege. The presidential communications privilege "affords greater protection against disclosure" and is "more difficult to surmount" than the deliberative process privilege. Sealed Case, 121 F.3d at 746; see Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 310 n.2 (2002) (noting

difference in protection afforded by the presidential communications and deliberative process privileges).

As the United States Supreme Court recognized in United States v. Nixon, 418 U.S. 683 (1974), to overcome the presidential communications privilege, a party seeking documents in a criminal case needs "to demonstrate that the Presidential material was 'essential to the justice of the (pending criminal) case.'" Id. at 713 (quoting United States v. Burr, 25 Fed. Cas. at 25 (1807)). "The need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in Nixon." Cheney, 542 U.S. at 384. Accordingly, here, in the context of a civil suit, the showing necessary to overcome the presidential communications privilege appears to be heightened even above that necessary in a criminal context.

B. Dairyland Has Not Made The Necessary Showing Of Relevance Necessary Under The Presidential Communications Privilege

The Court's October 17, 2007 order required Dairyland to provide a "statement of need" to demonstrate why such documents were necessary for its case, as well as to establish why the necessary and relevant information that Dairyland wishes to extract from them could not be found elsewhere without due diligence. Id. As the Court recognized in its October 17, 2007 order, the United States Court of Appeals for the District of Columbia Circuit in Sealed Case required that a party seeking documents subject to the presidential communications privilege must demonstrate "that each discrete group of. . . materials likely contains important evidence" and "that this evidence is not available with due diligence elsewhere." Sealed Case, 121 F.3d at 754; see Nixon, 418 U.S. at 713 (party seeking documents in criminal case needs "to demonstrate that the Presidential material was 'essential to the justice of the (pending criminal)

case'"). Dairyland has not satisfied these standards, as neither Dairyland's October 18, 2007 "Statement of Need" nor its subsequent November 5, 2007 reply brief provide a sufficient explanation as to how the subject documents are of such critical importance to Dairyland's case to justify overriding the presidential communications privilege here. Dairyland has failed to satisfy either of these criteria.

With regard to first prong of the Sealed Case test – whether the documents contain "important evidence" – Dairyland in its November 5, 2007 reply brief provides no explanation as to how, if at all, the White House's consideration of legislative proposals that were pending in 1995-1997 time frame could in any way inform the Court concerning the extent of DOE's contractual obligations under the Standard Contract (which was executed 12 years earlier in 1983) to accept delivery of SNF at a particular "rate of acceptance," as Dairyland suggests. In fact, in PG&E, the same counsel that represents Dairyland filed a motion to compel the production of the same five documents as those at issue here, challenging the deliberative process privilege claim over those documents. The plaintiff in PG&E never challenged the presidential communications privilege with regard to those five documents, and their contents were never produced to the plaintiff in PG&E. Without those documents, counsel proceeded to participate in trial and obtain a final judgment. Similarly, notwithstanding the fact that the issue of "rate of acceptance" has played a central role in most of the other spent nuclear fuel cases brought in this Court to date, no other spent nuclear fuel plaintiff (besides Dairyland) has ever challenged the privilege claim over the subject documents. These other plaintiffs also were able to secure awards for damages against the Government, without the need for the subject materials.

As these cases demonstrate, the subject documents are not of such vital importance to Dairyland's case as to justify encroaching upon the White House's inner workings.[3]

Nor does Dairyland provide any explanation as to how, if at all, the White House's consideration of legislative proposals in 1995-1997 could assist the Court in resolving Dairyland's claim for damages in connection with the decision of its subsidiary, Genoa Fuel Tech, Inc., to invest in Private Fuel Storage, LLC, a private, for-profit business enterprise that, since the mid-1990s, has been engaged in an effort to open a private SNF storage facility. As Dairyland would have it, the subject documents are relevant to its claim for PFS-related damages because evidence that the Government "considered" interim storage measures supports the "reasonableness" of the Dairyland subsidiary's investments in PFS. Pl. Br. at 5.

As we explained in our August 3, 2007 motion for partial summary judgment, and in our recent October 29, 2007 reply in support thereof, the decision to invest in PFS is an independent and collateral business decision that bears no relation to the central purposes of the Standard Contract. See, e.g., Indiana Michigan Power Co. v. United States, 422 F.3d 1363, 1376 (Fed. Cir. 2005) (denying recovery of PFS-related damages as speculative business venture that was not foreseeable to the Department of Energy at the time of contract formation). Dairyland otherwise fails to explain how the decision to invest in PFS – a private, for-profit business

---

[3] We acknowledge that, by order dated November 19, 2007, this Court, following an in camera review for purposes of evaluating Dairyland's challenges to the Government's deliberative process privilege claims, found that some documents relating to the Executive Branch's consideration of potential legislative proposals for interim storage to be relevant to Dairyland's case. However, as explained above, they do not satisfy the heightened standard applicable to presidential communications privilege claims and, as discussed above, are not relevant to the issues of contract interpretation in the manner that Dairyland has suggested.

venture – relates in any way to the pending legislation before the President in 1995-1997 time frame. Dairyland's failure to provide a convincing explanation of the connection is unsurprising. Because none of these proposed bills were ever signed by the President or otherwise enacted into law, it is difficult to imagine how the subject documents could be of such critical importance to Dairyland's case to justify overriding the presidential communications privilege here.

C. Dairyland Has Not Established That It Cannot Obtain The Relevant Information That It Wants By Other Means

With regard to the second prong of the Sealed Case test – whether the evidence is available "with due diligence elsewhere" – this component, at a minimum, requires the moving party make a showing that it has engaged in "efforts . . . to determine whether sufficient evidence can be obtained elsewhere, and the [party seeking discovery] should be prepared to detail these efforts and explain why evidence covered by the is still needed." Id. at 755 (emphasis added). Here, Dairyland has made no such showing in its either October 18, 2007 "Statement of Need" or its November 5, 2007 reply brief that it undertook any efforts to determine whether the information could be obtained in a manner other than by interfering with the White House and the performance of its constitutional duties.

Indeed, contrary to Dairyland's assertion, there are likely materials available in the public domain that relate to the issue of the Government's consideration of interim storage legislation in the mid-1990s. For example, as we articulated in our October 24, 2007 brief, all of the spent nuclear fuel plaintiffs, including Dairyland, have access to the various pieces of proposed legislation that the President and his staff considered in the 1995-1997 time frame, as these bills are public records. Thus, because Dairyland did not (and cannot) make a proper showing that the subject information could be obtained in a manner other than by interfering with the White

House and the performance of its constitutional duties, Dairyland also has failed to satisfy the second criterion of the Sealed Case. Id. at 755. As a consequence, Dairyland fails to provide a sufficient showing of need to overcome the protections afforded by the presidential communications privilege in this instance.

In its briefing, Dairyland does not deny the fact that, pursuant to the Supreme Court's holding in Nixon, presidential communications are presumptively privileged based upon the "President's generalized interest in confidentiality." United States v. Nixon, 418 U.S. 683, 708, 711 (1974). Nor does Dairyland deny that "special considerations" affecting separation of powers control when "the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." Cheney, 542 U.S. at 382 ("We have, in short, long recognized the 'unique position in the constitutional scheme' that [the Office of the President] occupies."); see id. at 386 (at a minimum, a party seeking to challenge the assertion of presidential communications privilege bears the initial burden to demonstrate "exacting standards of '(1) relevancy; (2) admissibility; [and] (3) specificity'").

Nevertheless, Dairyland asserts that the protections afforded by the presidential communications privilege pursuant to the Supreme Court's holding in Cheney are inapplicable in this context, in light of the fact that the Supreme Court in Cheney faced a situation in which a civil plaintiff attempted to obtain from the White House documents via a subpoena, which required the White House to engage in an effort to search for responsive documents. Pl. Br. at 3.[4] As Dairyland would have it, because the subject documents in this case are already identified

---

[4] In addition, Dairyland argues that, because the particular documents in dispute came from DOE's files, and not the White House, the heightened standards imposed by Cheney should not apply. Pl. Br. at 3. Implicit in Dairyland's argument is the assumption that the heightened

and the White House does not need to conduct a search pursuant to a pending subpoena, the White House is not entitled to the heightened standards of need associated with the presidential communications privilege.

This assertion is unfounded, and Dairyland cites no authority in support of such a position. As discussed previously, the Supreme Court has recognized that the White House is unlike other litigants and has emphasized the necessity of protecting the Executive Branch at its highest level from vexatious litigation that might distract it from the energetic performance of its constitutional duties. See id. at 382. Contrary to Dairyland's assertions, the heightened standards of the presidential communications privilege under Cheney apply outside the context of a pending subpoena that is directed at the White House, and the Supreme Court's ruling applies with equal force to the discovery at issue here. For example, as the district court held in American Historical Association v. National Archives & Records Administration, 402 F. Supp. 2d. 171 (D.D.C. 2005), the "special considerations" articulated by the Supreme Court in Cheney "apply outside the context of a subpoena" and in situations in which only a small number of documents are identified. See id. at 179, 181-84 (holding that 11 documents over which the White House asserted presidential communications privilege were subject to the heightened protections afforded by the Supreme Court in Cheney). Indeed, even in the context of criminal prosecution, where a defendant's rights are acutely at stake, the Supreme Court has held that the party seeking privileged materials must demonstrate a specific need for the materials. See

---

protections afforded the White House under the presidential communications privilege are somehow inapplicable when the subject documents appear in the files of an Executive Branch agency outside the White House's immediate office. Dairyland provides no support for this position, and Cheney does not require such an outcome.

Nixon, 418 U.S. at 713 (1974). As the Supreme Court in Cheney reasoned, at a bare minimum, such "exacting standards" must apply in a civil case where plaintiffs are seeking civil discovery from the Executive Branch at its highest level, as in this case. See id. at 384 ("The need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in Nixon."). By failing to comply with the heightened standards called for by Cheney – and by failing to meet the Sealed Case test as prescribed in the Court's October 17, 2007 order – Dairyland has not satisfied its initial burden to show a particularized need for the subject materials, and the Court should thus grant the Government's request for a protective order.

## III. DAIRYLAND'S NEWLY-RAISED ARGUMENT THAT THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE IS INAPPLICABLE TO THE SUBJECT DOCUMENTS IS WITHOUT MERIT

Dairyland also raises for the first time in its November 5, 2007 reply brief the argument that the presidential communications privilege is inapplicable to the five subject documents as a matter of law because, according to Dairyland, the consideration of interim storage for spent nuclear fuel "does not call for direct decisonmaking by the President." Pl. Reply Br. at 8. Without citing to any case law in support of its position, Dairyland asserts that the Nuclear Waste Policy Act ("NWPA") vests "executive authority" solely upon the Secretary of Energy "in all pertinent respects." Pl. Reply Br. at 8. Thus, as Dairyland would have it, the presidential communications privilege is inapplicable because there is no role for presidential decisionmaking with respect to the Secretary of Energy's enforcement of the NWPA. See id. This argument is legally and factually unfounded.

As an initial matter, because the Secretary of Energy – a member of the President's Cabinet – serves at the pleasure of the President and under the Chief Executive's immediate direction and control, the President is obligated to oversee the Secretary in the discharge of his or her duties to ensure that the NWPA and all other energy-related laws and policies are "faithfully executed." See Myers v. United States, 272 U.S. 52, 164 (1926) (President must have authority to remove and appoint Executive Branch officials to ensure that "the laws [are] faithfully executed"); see also 42 U.S.C. § 7131 (Secretary of Energy is appointed by the President upon advice and consent of the Senate); Resolution of Legal Dispute Between The Department of Energy & The Tennessee Valley Authority, 11 Op. Off. Legal Counsel 70, 71 (1987) (finding that there is no statutory restriction upon the ability of the President to remove the Secretary of Energy, as "there is no question that the Secretary serves at the pleasure of the President"). Thus, contrary to Dairyland's suggestion, in no sense is the White House limited in, or otherwise precluded from, asserting privilege over its communications concerning the Federal Government's spent nuclear fuel program. Indeed, given that the implementation of the NWPA and the Federal Government's continuing efforts to build a permanent spent nuclear waste repository are matters of grave national importance that bear significant environmental, transportation, and national security ramifications, it is only fitting that the White House engage in deliberations concerning the Government's spent nuclear fuel program.

As we discussed in our October 24, 2007 opposition brief and cross-motion for a protective order, the five subject documents at issue directly relate to the then-pending Presidential decision regarding whether to veto legislation in the 1995-1997 time frame relating to certain interim spent fuel storage measures. See Def. Br. at 3-4. Contrary to Dairyland's

assertion, such an activity is a uniquely presidential decision-making function. Indeed, the President's active role in the lawmaking process is a central duty of the Chief Executive and "reflects the Framers' careful efforts to check whatever propensity a particular Congress might have to enact oppressive, improvident or ill-considered measures." INS v. Chadha, 462 U.S. 919, 947, 948 (1983). Accordingly, given the President's need to consider pending legislation with his advisors without the fear of creating inquiries and evidence in civil litigation discovery, the presidential communications privilege is clearly implicated and should protect the documents from disclosure to Dairyland. See Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 449 (1977) (presidential communications privilege applies to communications in performance of the President's responsibilities in office that are made "in the process of shaping policies and making decisions"); see also Cheney, 542 U.S. at 381 ("It is well established that 'a President's communications and activities encompass a vastly wider range of sensitive material than would be true of any ordinary individual.") (citation omitted); Sealed Case,121 F.3d at 750 ("If presidential advisers must assume they will be held to account publicly for all approaches that were advanced, considered but ultimately rejected, they will almost inevitably be inclined to avoid serious consideration of novel or controversial approaches to presidential problems.").

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's cross-motion for a protective order and that the Court otherwise deny Dairyland's motion to compel the production of the five documents subject to the presidential communications privilege.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/Patrick B. Bryan
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 305-7571
Fax: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

November 21, 2007

CERTIFICATE OF FILING

I hereby certify that on this 21st day of November 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE GOVERNMENT'S CROSS- MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFF'S MOTION FOR THE PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Patrick B. Bryan