# In the United States Court of Federal Claims

No. 04-106 C
(Filed: November 20, 2007)

| | | |
|---|---|---|
| **DAIRYLAND POWER COOPERATIVE**, Plaintiff, | * | Enforcement of order compelling document production and responses to contention interrogatories; RCFC 37 (b); sanctions; reciprocal obligations |
| v. | * | |
| **THE UNITED STATES**, Defendant. | * | |

*Jerry Stouck*, Greenberg Traurig LLP, Washington, DC, counsel of record for Plaintiff; of counsel were *Robert Shapiro* and *Kevin Stern*, Greenberg Traurig LLP, Washington, DC.

*Russell A. Shultis*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, United States Department of Justice, Washington, DC; of counsel was *Jane K. Taylor*, Office of General Counsel, United States Department of Energy, Washington, DC, *Alan J. Lo Re*, Senior Trial Counsel, and *Patrick B. Bryan, Joshua E. Gardner,* and *Scott C. Slater*, Trial Attorneys, United States Department of Justice, Washington, DC.

---

## OPINION AND ORDER

---

**DAMICH, Chief Judge.**

Before the Court is Plaintiff Dairyland Power Cooperative's motion to compel Defendant United States's compliance with the Court's February 5, 2007 order compelling discovery responses ("February 5, 2007 Order") relating to interrogatories and document requests. This order had required the government to respond to interrogatories and requests for document production that Dairyland had submitted. The basis of Dairyland's motion to compel is an allegation that the government inadequately responded to these same interrogatories and requests

for document production.

As a remedy for the government's purported failure to comply with the Court's February 5, 2007 Order, Dairyland requests that this Court order the government to supplement specific interrogatory responses that Dairyland views as particularly problematic. In addition, Dairyland seeks monetary sanctions against the government, pursuant to Rule 37(b) of the Rules of the Court of Federal Claims (RCFC), for both the government's allegedly inadequate interrogatory responses and document production efforts. The government also cross-moves this Court for reciprocal, rather than unilateral, obligations on the parties relating to document production, in the event that the Court finds that "Dairyland has no obligation to tie its document production to Government document production requests." Defendant's Response to Plaintiff's Motion to Enforce February 5, 2007 Order and for Sanctions, and Defendant's Motion for Imposition of Reciprocal Obligations Upon the Parties (Def.'s Response) at 23.

For the reasons described herein, the Court finds that Dairyland has adequately responded to the government's document production requests. However, the Court also finds that one of the seven interrogatory responses with which Dairyland has taken issue was not responsive to the inquiry involved and ORDERS the government to supplement this same response.

As for the other six of the interrogatories, the Court finds only one of the responses to be satisfactory, while the five remaining responses at issue require further consideration by this Court. In that regard, the Court ORDERS Dairyland to submit a report as to whether the discovery that has taken place since the completion of briefing on this motion has given Dairyland the information sought in these five other interrogatories. Pending submission of that report, the Court will postpone ruling on Dairyland's request for sanctions.

Finally, the Court acknowledges Dairyland's withdrawal of its initial request for more specific production or indications of certain documents. The Court also finds no need to impose "reciprocal obligations" in regard to document production upon Dairyland. Dairyland's motion to compel, therefore, is GRANTED in part and DENIED in part. The government's motion for so-called "reciprocal obligations" is DENIED.

## I. BACKGROUND

This immediate discovery dispute concerns one of several cases filed by nuclear utilities in the Court of Federal Claims regarding the U.S. Department of Energy's (DOE) compliance with the "Standard Contract"[1] issued pursuant to the Nuclear Waste Policy Act (NWPA) of 1982, 42 U.S.C. §§ 10101-10270. The Standard Contract provides for the government's acceptance, transportation, storage, and disposal of spent nuclear fuel (SNF) and other high-level radioactive waste (HLW), the costs of which would be borne by the "generators and owners" thereof. *Id*. at

[1] "Standard Contract for the Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," published at 10 C.F.R. § 961.11.

§ 10131(b).

Plaintiff Dairyland, an electric generation and transmission cooperative providing electrical power to 25 member electric cooperatives and 14 municipal utility members located in Wisconsin, Minnesota, Iowa, and Illinois, entered into the Standard Contract in 1983 with DOE for the removal of SNF and HLW from Dairyland's La Crosse Boiling Water Reactor (LACBWR) in Genoa, Wisconsin, in exchange for the payment of fees. Compl. ¶¶ 1-2, 4. Dairyland filed its complaint alleging breach of this contract on January 28, 2004. Following the Court's summary judgment in a similar case, *Energy Northwest v. United States*, in favor of the plaintiff on the issue of contractual liability, this Court, on April 27, 2006, also entered summary judgment in Dairyland's favor on the same issue. Order of Summary Judgment (Apr. 27, 2006); *see also Energy Northwest v. United States*, 69 Fed. Cl. 500 (2006).

The parties in this case then entered into discovery concerning the issue of damages. Dissatisfied with the government's response to Dairyland's First Request for Production of Documents and First Set of Interrogatories, Dairyland, on December 28, 2006, filed a motion to compel discovery responses relating to these interrogatories and document requests. Briefing on this motion was completed on January 24, 2007. Oral argument was held in court on the following day. On February 5, 2007, the Court granted Dairyland's motion to compel discovery responses. Order (February 5, 2007). The Court specifically ordered the government, to the extent the government "ha[d] already produced documents in earlier coordinated discovery in the spent nuclear fuel litigation or otherwise" and placed such documents on the secure online database of such documents the government had developed to manage discovery requests in this litigation, to "at least identify with reasonable particularity those documents it deem[ed] responsive to Plaintiff's specific requests." *Id*. at 2.

Contending that the government's amended responses to Dairyland's document identification requests and supplemental interrogatory responses violated the Court's February 5, 2007 Order, Dairyland, on April 2, 2007, moved this Court to compel "proper responses" to Dairyland's document requests, identifying 33 of 42 responses as problematic and specifically requesting the Court's intervention in regard to 20 of these. Dairyland also sought "complete answers" to specified contention interrogatories, namely those numbered 5, 9, 13, 14, 15, 16, and 17 in the First Set of Interrogatories. Dairyland's Motion to Enforce February 5, 2007 Order and for Sanctions (Plf.'s Mot.) at 1-2. Dairyland also requested the imposition of sanctions, pursuant to RCFC 37(b), specifically in the form of awarding Dairyland costs and attorneys' fees incurred in prosecuting this motion and responding to the government's requests for enlargements of time to comply with the February 5, 2007 Order. *Id*. at 3, 9.

On April 20, 2007, the government responded to Dairyland's motion, arguing that Dairyland sought to impose an impractical burden on the government's document production efforts and that the responses to the specified interrogatories were, in fact, appropriate. *See generally* Defendant's Response (Def.'s Response) to Plaintiff's Motion to Enforce February 5, 2007 Order and for Sanctions, and Defendant's Motion for Imposition of Reciprocal Obligations Upon the Parties at 3-14. Criticizing Dairyland's request for sanctions, the government cited

Dairyland's purported lack of cooperation with the government's own document production requests by also failing to identify documents pertaining to this case with sufficient specificity. Reciprocal document production obligations were consequently warranted especially if, impliedly, the Court imposed upon the government additional document production obligations beyond those already in place. *See generally id*. at 18-24. Dairyland filed a reply to the government's response and cross-motion on May 4, 2007, to which the government replied on May 25, 2007. Dairyland's Reply on its Motion to Enforce February 5, 2007 Order and for Sanctions and Response to Defendant's Motion for Imposition of Reciprocal Obligations Upon the Parties (Plf.'s Reply); Defendant's Reply to Plaintiff's Response to Defendant's Motion for Imposition of Reciprocal Obligations Upon the Parties (Def.'s Reply).

In regard to its overall request for relief, Dairyland later withdrew its request for the production or indication of specific documents, but still sought monetary sanctions for both the government's supposedly inadequate document production and interrogatory responses to date. Dairyland did not alter its request for supplementation of the specified interrogatory responses. Joint Status Report Regarding Dairyland's Motion for Sanctions, October 1, 2007, at 2.

## II. DISCUSSION

This immediate discovery dispute encompasses, basically, three issues. First, Dairyland requests that the Court order the government to "fully answer" the specified contention interrogatories by a date certain.[2] Second, Dairyland contends that the government inadequately identified documents responsive to specific inquiries by Dairyland, even though Dairyland later withdrew its request for more specific identification due to time pressures stemming from a looming deadline for the close of discovery and the fact that Dairyland's counsel had elected to more extensively review the government's document database on their own. Third, Dairyland still seeks sanctions for both inadequate interrogatory responses and document identification to date, pursuant to RCFC 37(b), in the form of costs and attorneys' fees for prosecuting this motion and responding to the government's prior motions for enlargements of time to comply with the February 5, 2007 Order. Finally, in the event the Court finds that Dairyland's document production efforts have been satisfactory, or impliedly, that the government merits additional document production obligations, the government seeks the imposition of "reciprocal obligations" in regard to document production upon Dairyland.

---

[2]In its motion, Dairyland sought such answers by the government expert disclosure deadline in place at the time the motion was submitted–June 8, 2007. Because the interrogatories would not have been answered until after the April 30, 2007 deadline for the completion of fact discovery then in effect as well, Dairyland also sought permission to take limited depositions of witnesses after the service of such answers to the extent such answers raised factual matters not previously raised or examined in prior depositions. Given the changes in the discovery and trial preparation schedule that have since occurred, the Court will assume that Dairyland seeks a deadline for supplemental interrogatory answers comfortably before the current deadline for the completion of all discovery–January 15, 2008.

**A. The Government's Interrogatory Responses**

RCFC 33(b)(1) states that interrogatories shall be answered separately and fully in writing and under oath, unless the answering party objects. The party shall also state the reasons for the objection and answer to the extent the interrogatory is not objectionable. RCFC 33(b)(1). The Court now considers the government's supplemental interrogatory responses with which Dairyland has taken issue.

**1. Interrogatory No. 5**

Interrogatory number 5 asked: "On what schedule (measured in Metric Tons Uranium) does DOE contend it is obligated to remove DAIRYLAND's SPENT FUEL pursuant to DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT?" The interrogatory also asked for all factual and legal grounds underlying any such contention. Def.'s Responses to Plf.'s First Set of Interrogatories As Amended in Response to the Court's February 5, 2007 Order, #5.

The government initially objected to this interrogatory on the grounds that Dairyland sought to have the government make legal conclusions and/or conclusions as to the legal significance of certain documents and/or events that the government was not required to make. Nonetheless, the government, in response, incorporated by reference its answer to interrogatory number 3. *Id.*, #5 Original Response. In the supplementation that followed the February 5, 2007 Order, the government stated that the Court had not explicitly required supplementation of its original response to interrogatory number 5. But the government also referred Dairyland to the government's post-trial briefing in another SNF case, *Pacific Gas & Electric Company v. United States*, 73 Fed. Cl. 333 (2006). Def.'s Response to Plf.'s First Set of Interrogatories As Amended in Response to the Court's February 5, 2007 Order, #5 Supplemental Response.

The Court remains troubled by the government's indirect responses to this very direct and specific interrogatory. The government's first response referred to another interrogatory targeting different subject matter.[3] Then the government refers to briefing in another case while contending that the February 5, 2007 Order did not specifically require supplementation of the original response to interrogatory number 5. The Court of Appeals for the Federal Circuit has not extensively addressed how best to comply with RCFC 33(b), or the corresponding Rule 33(b) of the Federal Rules of Civil Procedure.[4] Case law in federal district courts generally disfavors

---

[3]Interrogatory number 3 asked whether the government contended that the annual receiving capacity listed in any of DOE's Annual Capacity Reports since January 1, 1998 pursuant to the NWPA actually bound DOE and/or Dairyland. Def.'s Responses to Plf.'s First Set of Interrogatories As Amended in Response to the Court's February 5, 2007 Order, #3.

[4]The U.S. Court of Federal Claims has endeavored to create a set of rules that conforms to the Federal Rules of Civil Procedure to the extent practicable given differences in jurisdiction between the Court and the United States district courts. Consistent with this objective, case law

attempts to respond to interrogatories by referring to other documents. *See Fresenius Med. Care Hldngs., Inc. v. Roxane Lab.'s*, No. 2:05-cv-0889, 2007 WL 527903, at *2 (S.D. Oh. Feb. 14, 2007) (it was not entirely clear that the defendant swore to the accuracy of allegations in a pleading simply by referring to them in an interrogatory answer); *Mahoney v. Kempton*, 142 F.R.D. 32, 33 (D. Mass. 1992) (interrogatory answers must be full and complete within themselves and shall not refer or incorporate by reference other documents). Even if such documents are relevant, there is a value in clear and precise interrogatory answers in that such answers provide a basis for further discovery, requests for stipulation, and impeachment at trial. *Fresenius*, 2007 WL 527903, at *2. Certainly, clear and direct interrogatory answers more effectively aid finders of fact. And even if an order compelling interrogatory responses in general does not refer to a specific interrogatory, as the February 5, 2007 Order does not refer to interrogatory number 5, a party remains obliged to "separately and fully" respond to that same interrogatory. RCFC 33(b).

As a result, the Court cannot accept the government's contention that no supplementation of the answer to interrogatory number 5 is necessary. The Court, then, will require the government to provide its response to interrogatory number 5 in a form that does not refer to other interrogatory responses or documents, but which more directly responds to the question presented. The Court expects the government to either describe the schedule on which it was obligated to remove Dairyland's SNF pursuant to Dairyland's spent fuel disposal contract within the parameters Dairyland has defined (i.e. providing Metric Tons Uranium measurements), along with the reasons why such a schedule bound the government, or clarify that no such schedule existed.

**2. Interrogatory Nos. 9, 15, 16, and 17**

The government contends that the February 5, 2007 Order did not address the interrogatories numbered 9, 15, 16, and 17, which respectively asked for definitive contentions regarding a) the reasonableness of any move on Dairyland's part to dry storage following DOE's breach, b) the reasonableness of Dairyland's wet storage of SNF following DOE's breach, c) all SNF options Dairyland should have explored following DOE's breach, and d) all failed fuel[5] storage options Dairyland should have explored following DOE's breach. Def.'s Response at 15-16; Def.'s Responses to Plf.'s First Set of Interrogatories As Amended in Response to the Court's February 5, 2007 Order, #9, #15, #16, #17, Original Responses and Supplemental Responses. In addition, the government stated that such contentions required expert analysis that

---

and the Advisory Committee Notes accompanying the Federal Rules of Civil Procedure will guide the interpretation of the Rules of the Court of Federal Claims. In this particular instance, RCFC 34(b) is exactly identical to Rule 34(b) of the Federal Rules of Civil Procedure. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims.

[5]"Failed fuel" means spent nuclear fuel that, while otherwise meeting the Standard Contract's specifications, is contained in defective fuel assemblies (e.g. structural deformity, damage requiring special handling).

would be forthcoming in expert reports. Def.'s Response at 15-16.

Again, even if an order compelling interrogatory responses in general does not refer to a specific interrogatory, a party remains obliged to "separately and fully" respond to the same interrogatory. RCFC 33(b). But RCFC 33(c) allows for the deferral of responses to contention interrogatories until the completion of designated discovery or until the pretrial conference or other later times. RCFC 33(c). The Court understands that the parties have exchanged the pertinent expert reports already. Mindful of how these reports may have provided the information Dairyland sought in these interrogatories, the Court believes that ruling on whether the government has sufficiently cooperated in regard to these inquiries would be premature. The Court will, therefore, postpone ruling on this aspect of Dairyland's motion to enforce the February 5, 2007 Order until receipt of a report from Dairyland stating whether Dairyland has received the information these interrogatories sought.

**3. Interrogatory No. 13**

The government contends that it has adequately responded to the question of whether the government maintains that DOE would have picked up Dairyland's failed fuel later than the rest of its spent fuel had the government commenced spent fuel acceptance from utilities before January 31, 1998. Def.'s Response. at 12-13. However, given the government's admission that additional discovery and expert analysis "regarding the level of failures associated with Dairyland's specific failed fuel" might enable further supplementation of the response to this interrogatory and the fact that discovery has proceeded extensively since the filing of this motion, again with expert reports presumably having already been exchanged, the Court remains mindful of the possibility that Dairyland may have obtained the information it sought with this interrogatory. *Id*. at 13. Believing, therefore, that ruling on whether the government has sufficiently cooperated in regard to this interrogatory would be premature, the Court will postpone ruling on this aspect of Dairyland's motion to enforce the February 5, 2007 Order until receipt of a report from Dairyland stating whether Dairyland has received the information sought by interrogatory number 13.

**4. Interrogatory No. 14**

The government objected to interrogatory number 14, which asked whether Dairyland's expenditures supporting Private Fuel Storage, LLC (PFS) were unreasonable expenditures towards mitigation of Dairyland's damages due to DOE's partial breach. The basis of the government's objection was that the interrogatory was premature, as discovery had not yet ended. Nevertheless, the government went on to state that investment in PFS was unforeseeable at the time of contract formation, wholly speculative, and was an improper mitigation of DOE's delay in commencing SNF acceptance. Def.'s Response to Plf.'s First Set of Interrogatories As Amended in Response to the Court's February 5, 2007 Order, #14, Original Response. The government also referred Dairyland to its post-trial briefing in the *Pacific Gas* case. *Id*., Supplemental Response. Notably, the government did not qualify its answer by hinting that expert findings or the like could somehow alter this conclusion in the future as it did in its

response to interrogatory number 13. Yet somehow, Dairyland still asserts that this answer was not responsive. Plf.'s Reply at 9.

The Court simply does not understand why the government's answer is unsatisfactory to Dairyland, when the government clearly states that the expenditures supporting PFS were an improper mitigation of DOE's delay in commencing spent fuel acceptance, a direct answer to the question asked. As a result, the Court sees no need to compel further supplementation of this interrogatory here.

**B. The Government's Document Production Efforts After February 5, 2007**

In response to the Court's February 5, 2007 Order compelling the identification of documents responsive to Dairyland's document requests, the government has submitted a myriad number of containers through which Dairyland complains it must sift. And even though Dairyland has withdrawn its request for a specific indication of documents relevant to given requests, the Court must still evaluate the government's document production efforts to date in regard to Dairyland's request for sanctions.

RCFC 34 provides the basic framework for document production requests in discovery and compliance with such requests. A party may serve on any other party a request to produce designated documents regarding any matter, not privileged, relevant to the claim or defense of any party in the given dispute. RCFC 26(b), 34(a). The party producing the documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with categories in the request. RCFC 34(b). Most importantly, a request shall set forth, either by individual item or by category, items to be inspected, and describe each with reasonable particularity. *Id*. A party from whom documents are requested, then, has the duty to respond to such requests to the extent the requests are not objectionable. *See id*.

RCFC 34(b), or the provision for the labeling of documents to correspond to categories in a request, actually reflects a 1980 amendment to Rule 34 of the Federal Rules of Civil Procedure, to which RCFC 34 corresponds. And the reasoning underlying that amendment–a finding by an advisory committee that deliberately mixing critical documents with others to obscure significance was "not rare"–provides useful guidance when the volume of documents produced in response to a request turns out to be quite large. Advisory Committee Note to Rule 34(b), Amendments to the Federal Rules of Civil Procedure, 85 F.R.D. 521, 532 (1980). While the Federal Circuit has not addressed how to label documents in response to a discovery request under this rule, this Court finds useful another Court of Federal Claims decision, in the case of *Renda Marine, Inc. v. United States*, that noted a split in case law as to the extent to which a party subject to a document request may produce such documents in a personally preferred manner. *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 64 (2003) (citing *Evanston Bd. Of Educ. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 36 n.20 (N.D. Ill. 1984) (view that the rule should not be interpreted as giving the sole choice to the producing party); *C & T Assocs., Inc. v. Township of Abington*, 1986 WL 14548, at *2 n.3 (E.D. Pa. Dec. 19, 1986)

(finding that the rule appears to give the producing party the option of how to produce the documents)); *see also* 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE § 2213 (2d ed. 1994) ("Whether this provision should be viewed as giving the responding party the option to produce in the manner it prefers has been the subject of some debate."). The *Renda* decision concluded that whether the filing system for the produced documents "[was] so disorganized" that a court could not reasonably expect the party to whom the documents were produced to make its own review constituted the standard of review for RCFC 34(b) discovery challenges. *Id*. at 64 (citations omitted).

Dairyland takes issue with the government's repeated reference, in response to the February 5, 2007 Order, to containers of documents posted on the government's document production website that contain documents "potentially responsive" to Dairyland's requests. In merely identifying containers of documents that "may contain" responsive documents, Dairyland argues, the government has made it "literally impossible for Dairyland to tell if each identified container consists entirely of 'potentially' responsive documents, contains one 'potentially' responsive document, or consists of something somewhere in between." Plf.'s Mot. at 4.

On March 28, 2007, Dairyland's counsel had a telephone conference with the government's counsel to discuss the government's amended responses to document requests, a conference at which Dairyland alleges that the government did not disagree "that it appeared possible that there might be just one responsive document in a listed container." *Id*. n.2 (citation omitted). Nonetheless, the government responded to Dairyland's motion to enforce the February 5, 2007 Order by claiming that the term "potentially responsive" reflected how Dairyland's production requests were broadly worded, could be interpreted more than one way, and that "the matter of whether documents [were] responsive to a particular document production request may depend upon the interpretation placed upon the language in the request." Def.'s Response at 10.

RCFC 34's wording reflects how the party requesting documents bears the burden of presenting the requests with sufficient particularity. Broad language can make the task of deciding which of numerous documents may conceivably fall within a request's scope much more difficult. *W. Res., Inc. v. Union Pac. R. Co.*, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001). In fact, when a request specifies documents "relating to" some issue, as is the case with Dairyland's requests, the request provides no basis for determining which documents may or may not be responsive. *Id*.

The Court, then, must conclude that Dairyland has caused its own predicament through submitting very expansive document production requests that make no effort to limit documents according to such basic criteria as authorship. In this case, the government has highlighted specific containers in response to each document request. Without more, though, the Court cannot expect the government to be more specific. Since the government has organized its responses as well as possible under the circumstances, Dairyland will have to contend with the voluminous results of its document requests.

**C. Sanctions**

When a party fails to obey an order compelling discovery, RCFC 37(b)(2) allows the imposition of sanctions, in the form of attorneys' fees and expenses stemming from the failure to obey the order, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. RCFC 37(b)(2). Dairyland has moved this Court for monetary sanctions for the government's responses to particular document requests and interrogatories. As described previously, however, the Court remains unable to resolve issues regarding certain interrogatories without the receipt of further information from Dairyland. For that reason, the Court will postpone consideration of Dairyland's request for monetary sanctions under RCFC 37(b)(2) until receipt of such information, at which time the Court will be able to consider whether the government's conduct as to the interrogatories at issue, viewed as a whole, merits the imposition of such a penalty. Having found that the government has satisfactorily adhered to its document production obligations, the Court will not consider the government's document production efforts in evaluating whether sanctions are appropriate.

**D. Reciprocal Obligations**

Citing inequitable discovery obligations, the government requests that this Court impose reciprocal obligations upon Dairyland. Def.'s Response at 24. Because the Court imposes no additional document production obligations on the government here, the request of which apparently drove the government's cross-motion, the Court sees no need to impose further document production obligations on Dairyland beyond those already in place.

**CONCLUSION**

For the foregoing reasons, Plaintiff Dairyland's Motion To Compel Defendant United States's Compliance with the Court's February 5, 2007 Order Compelling Discovery Responses relating to interrogatories and document requests by a date certain is GRANTED IN PART and DENIED IN PART. The government's motion for so-called "reciprocal obligations" is DENIED. More specifically:

1. The Court GRANTS Dairyland's motion to compel in regard to the government's response to interrogatory number 5. The government shall, therefore, supplement its response to interrogatory number 5 according to the parameters set forth in part (A)(1) of this opinion's Discussion section and send such supplementation to Dairyland on or before Monday, December 3, 2007. By that date, the government should also send a copy of such supplementation to this Court.

2. The Court ORDERS Dairyland to submit a report, on or by Monday, December 3, 2007, stating whether Dairyland has, in its view, received information since the completion of briefing for this motion that sufficiently answers the interrogatories numbered 9, 13, 15, 16, and 17. If Dairyland believes that these interrogatories have still not been sufficiently answered, the report shall set out for each interrogatory, the information received from the government since briefing

on this motion, and the reasons, with particularity, why the information was insufficient to answer the interrogatory. This report shall not exceed five (5) pages in length.

For each interrogatory identified in Dairyland's report that is alleged still not to be sufficiently answered (if any), the government shall file a response on or by Friday, December 7, 2007, to the extent the government disagrees with the conclusions in Dairyland's report. Any such response should not exceed five (5) pages. Dairyland may file a reply to the government's response on or by Wednesday, December 12, 2007. Any such reply should not exceed five (5) pages.

3. The Court DENIES Dairyland's motion to compel further supplementation of the original response to interrogatory number 14.

4. The Court postpones ruling on Dairyland's motion for sanctions pending receipt from the government of the specified supplementation to interrogatory number 5 and Dairyland's report, and any responses thereto, regarding the interrogatories numbered 9, 13, 15, 16, and 17.

5. The Court DENIES the government's motion for so-called "reciprocal obligations."

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge