IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: November 30, 2007

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, | No. 04-0106C |
| v. | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, Defendant. | |

DAIRYLAND'S MOTION TO CLARIFY AND ENFORCE
ONE PARAGRAPH OF NOVEMBER 19, 2007 ORDER
AND
REQUEST FOR EXPEDITED CONSIDERATION

One paragraph of the Court's November 19, 2007 Order – a paragraph in which the Court directs that "Document E112 shall be produced, with certain limitations," *see* Order of November 19, 2007, at 2 – contains an ambiguity that appears to be a typographical error. When Dairyland's counsel called government counsel to discuss this apparent typo, government counsel responded that regardless of any ambiguity, the government did not intend to produce any part of Document E112. Government counsel further stated that it did not intend to inform the Court of the government's refusal to comply with the Court's directive until December 10, which is the due date under the November 19 Order for the government's production of documents pursuant to that Order.

The government's position is dilatory and unfounded. Therefore, Dairyland requests that the Court resolve the apparent typo in the November 19 Order, and then enforce the pertinent

portion of the Order by again directing that "Document E112 shall be produced, with certain limitations." In addition, in view of the ongoing trial preparation schedule, including upcoming depositions that have already been noticed for early January, Dairyland also requests that the Court immediately direct the government to respond to this motion within five business days and that the Court thereafter consider and rule on this motion in a similarly expedited manner. Such expedited consideration and resolution is warranted given that the Court has already granted Dairyland's motion to compel production of Document E112 – a motion filed more than ten months ago in January 2007. Dairyland should not have to litigate further over document E112.

DISCUSSION

1. Dairyland's motion filed January 18, 2007, sought production of a number of documents that the government had withheld on claims of privilege. The Court's November 19 Order granted that motion in part. With respect to the government document identified as "E112," the Court's ruling is set forth in full below (emphasis added):

> *Document E112 shall be produced*, with certain limitations. The first sentence of the second paragraph of page CTR0400568 may be redacted; the distribution list on page CTR0400569 may be redacted; and the middle paragraph and subtitle on page CTR 0400572 may be redacted. **The remainder of the document need not be produced.** The portions to be produced are essentially factual, not deliberative, and thus do not fall within the protection of the deliberative process privilege.

Order of November 19, 2007, at 2.

The first sentence of this ruling states the Court's basic conclusion regarding document E112 – that it "shall be produced, with certain limitations." This is consistent with the basic format of the November 19 Order, which addresses the contested documents *seriatum* and states the Court's basic conclusion (produce versus not produce) in the first sentence. Also consistent

with the basic format of the November 19 Order, the balance of the paragraph quoted above then purports to explain the "certain limitations" noted in the first sentence.

In this context, the bolded sentence in the paragraph quoted above appears to contain a typographical error. The sentence reads "The remainder of the document need *not* be produced," but it appears from the context that the sentence should state that the remainder of the document "must be" produced. Otherwise, the first sentence of the ruling, directing that document E112 shall be produced "with certain limitations," would be seriously distorted. Document E112 is 16 pages long, running from bates number CTR0400568 to CTR0400583. *See* exhibit 1 attached hereto (excerpt from Table of Challenges). The Court notes in the portion of the Order quoted above that parts of three pages may be redacted. If the government "need not" produce the "remainder" of the document as the sentence in question also states, then the entire document "need not" be produced. But that is contrary to the Court's basic conclusion in the first sentence of its ruling, namely, that "Document E112 *shall be* produced, with certain limitations."

Dairyland therefore requests that the Court correct this apparent typo (or otherwise clarify this apparent ambiguity in the November 19 Order), and then again direct the government to produce document E112 with any permissible redactions by December 10, together with the other documents covered by the November 19 Order.

2. When Dairyland's counsel contacted government counsel to discuss the apparent typographical error discussed above, government counsel responded that the government did not believe the Order contained any typo or ambiguity, but more importantly, informed Dairyland counsel that the government did not intend to produce *any part* of document E112. The government noted – for the very first time since Dairyland's motion to compel was filed in January 2007 – that the government's privilege log mentioned the letters "PC" next to document

E112. For that reason, the government now – for the very first time – intended to claim the presidential communications privilege over document E112.

The government's position is flatly contrary to the Court's specific order that "Document E112 shall be produced, with certain limitations." Dairyland moved to compel production of E112. The Court granted that motion. Yet the government has now blithely informed Dairyland that the government does not intend to comply with the Court's Order as to document E112, necessitating the instant motion as well as Dairyland's request for expedited consideration.

The government's assertion of the presidential communications privilege over document E112 is particularly frivolous for several reasons. First, from the description of that document in the privilege long, there is no indication whatsoever that it involves a presidential communication. The entire privilege log description for document E112 reads: "OMB memo re: review of administration policy for interim storage of radioactive waste." An agency's review of administration policy is not remotely within the presidential communications privilege. If it were, many millions of government documents "would disappear from public view." *See Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990).

Second, as the Court already concluded in the November 19 Order with respect to document E112: "The portions to be produced are essentially factual, not deliberative, and thus do not fall within the protection of the deliberative process privilege." Order of November 19, 2007, at 2. "Essentially factual" material cannot be covered by the presidential communications privilege either. Third, the government has never properly invoked the presidential communications privilege. Instead, the government has wrongly contended that Dairyland must first show a need for documents before the government even has to show that this privilege applies. That is not only precisely backwards as a

matter of law, but also appears calculated to obfuscate the issues and delay this litigation unduly. The Court should not countenance the government's conduct.[1]

## CONCLUSION

For these reasons, the Court should address this motion on an expedited basis as requested above. The Court should clarify and enforce its November 19 Order by again directing the government to produce document E112 "with certain limitations" by December 10. The Court should also sanction the government for its dilatory and unfounded defiance of the November 19 Order by sanctioning the government and directing it to reimburse Dairyland's fees and expenses associated with this motion.

Respectfully submitted,

November 30, 2007

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

[1]Although Dairyland believes the government's suggestion of presidential communications privilege is frivolous, if the Court nonetheless sees any reason to address that privilege with respect to document E112, we ask that the Court do so in conjunction with the five other documents the over which the government is claiming this privilege – and that the Court reject the government's position for the reasons Dairyland has articulated in the briefing applicable to those five documents.

**Exhibit 1**

Pacific Gas and Electric v. United States
United States Court of Federal Claims 04-74C
Table of Challenges

| REFNO | BEGNO | ENDNO | PRIV LOG | DESCRIPTION | PRIV CLAIM |
|---|---|---|---|---|---|
| 110 | CTR0191370 | CTR0191383 | Milner 5/13/02 aff | Document is addressed to the Office of the Secretary from an individual in the DOE's office of Fissile Materials Assurance Working Group (FMAWG). The specific policy decision at issue was the methods through which the Department would safeguard irradiated nuclear materials. The document seeks Secretary-level approval of the attached Program Directions for Safeguarding Irradiated Nuclear Materials. The document also includes a communication from the Acting Deputy Assistant Secretary for Nuclear Material and Facility Stabilization to AMEM field manages regarding the FMAWG drafted program direction, and seeks commetns and estimated costs to implement the proposed Program Directions. The document was part of DOE's policy deliberations that led to the Department's decision, and includes a recommendation from FMAWG to the Office of the Secretary relating to that decision. | DP |
| 111 | CTR0193318 | CTR0193319 | Milner 5/13/02 aff | Undated draft paper entitled, "Proposal: White Paper on Sabotage Issues Supporting the EIS's Covering Spent Fuel Shipments" that involves discussion of analyses to be performed that relate to the possible sabotage of spent nuclear fiel shipments to Yucca Mountain. The document reflects DOE's policy deliberations regarding how it will address potential sabotage issues in the transportation of spent nuclear fuel. | DP |
| 112 | CTR0400568 | CTR0400583 | 12/2003 | OMB memo re: review of administration policy for interim storage of radioactive waste | DP, PC |
| 113 | CTR0451251 | CTR0451270 | 12/2003 | Draft presentation for FY '03 budget request. The first sheet is an attorney review sheet indicating that the document is privileged and a description of the privilege; it was inadvertently numbered and scanned. | DP |
| 114 | CTR1600035 | CTR1600055 | 5/2004 | Graphic presentation and slides from the presentation for a group discussion of options regarding the design and operation of a repository of Yucca Mountain and the effect of those options on SNF inventories. These documents were prepared in the process of formulating a recommendation for consideration by the Undersecretary of energy regarding DOE's fiscal year 2004 budget request which was ultimately submitted to the office of management and budget ("OMB") and reflect DOE's policy deliberations in the budgetary process. | DP |
| 115 | CTR1600071 | CTR1600085 | 5/2004 | E-mail setting forth requested analysis and draft copies of slides prepared for a graphic presentation for group discussion of options regarding the design and operation of a repository at Yucca Mountain. These documents were prepared for and in response to a request by Undersecretary Card for such analysis; the information was provided in a briefing to Undersecretary Card set forth at HQR264 0021-0040. | DP |
| 116 | CTR1600091 | CTR1610105 | 5/2004 | Copies of slides that were used for a graphic presentation for group discussion of options regarding the design and operation of a repository at Yucca Mountain and the effect of those options. These documents were prepared in the process of formulating a recommendation for consideration by the Undersecretary of energy regarding DOE's fiscal year 2003 budget request which was ultimately submitted to office of management and budget ("OMB") and reflect DOE's policy deliberations in the budgetary process. They are substantially similar to portions of the documents bates numbered HQR250 1157-1232, 1246-1272, and 1335-1696, which were the subject of the court's August 25, 2003, ruling upholding the government's assertion of privilege. A duplicate version of these slides (but with different marginalia) appears at HQR236 0013-0029. | DP |
| 117 | CTR1600106 | CTR1600111 | 5/2004 | White paper regarding questions on presentation described at CTR177 0050-0058 . This document was prepared in the process of formulating a recommendation for consideration by the Undersecretary regarding DOE's fiscal year 2003 budget request. | DP |
| 118 | CTR1600112 | CTR1600117 | 5/2004 | White paper presenting information and analysis regarding acceptance rates and system costs for Undersecretary Card; prepared in response to questions and issues raised as part of the deliberative process to assist DOE in making policy decisions in formulating budget requests for OCRWM. A duplicate version of this document appears at HQR250 1230-1245, which was the subject of the court's August 25, 2003, ruling upholding the government's assertion of privilege. | DP |
| 119 | CTR1600143 | CTR1600149 | 5/2004 | White paper concerning shipments from shutdown sites proposed as part of a budgetary analysis presented to Undersecretary Card. This document forms part of the deliberative process. A later version of this document dated November 29, 2002, appears on the privilege log at HQR250 0624-0645, which was the subject of the court's August 25, 2003, ruling upholding the government's assertion of privilege. | DP |
| 120 | CTR1600208 | CTR1600225 | 5/2004 | Slides used in a presentation to the office of management and budget ("OMB") regarding the costs of options for the design and operation of a repository at Yucca Mountain. These slides reflect DOE's policy deliberations in the design of Yucca Mountain and the resulting impacts on the budgetary process. | DP |