IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 5 PURSUANT TO THE COURT'S NOVEMBER 20, 2007 ORDER

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following response to Interrogatory number 5 of "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006, amended in response to the Court's order dated February 5, 2007, and are now being supplemented pursuant to the Court's order regarding the Government's interrogatory responses issued on November 20, 2007.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to

any document so produced, or as to any other document.

2. Exceeding obligations imposed by the Court's rules and orders: Defendant objects to the instructions and definitions accompanying plaintiff's interrogatories to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by RCFC 26 and 34 and the Court's prior orders, including but not limited to, information regarding electronic mail will be produced only in accordance with the requirements provided by the Court's prior order, dated March 14, 2005, limiting the parties' obligations to preserve or search e-mail tapes.

3. Conclusions regarding legal significance of documents: Defendant objects to the plaintiff's interrogatories upon the grounds and to the extent that, by them, plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

4. Work product information: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks information prepared and/or developed in anticipation of litigation and/or for trial when plaintiff has not shown that it has substantial need of such materials in the preparation of its case in that plaintiff is unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

5. Irrelevant material: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks the discovery of information which is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6. Vague, overly broad, and unduly burdensome: Defendant objects to plaintiff's interrogatories on the grounds that the manner in which they are worded, when read with their

definitions and general instructions, are so vague, broad, general, and all inclusive that they do not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive. Defendant further objects to these interrogatories to the extent that, to respond to them, defendant would be required to make an extensive investigation, research, compilation, and evaluation of data and records in its possession, which would constitute annoyance, harassment, oppression, undue burden, and undue expense to defendant.

7. Inferences from interrogatories: Defendant objects to any inference that can be drawn from any portion of plaintiff's interrogatories or the responses to them that the documents requested or events referenced in the requests actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by defendant that such information exists or that such events actually occurred.

8. Scope Of The Government As Responding Party: Defendant objects to plaintiff's interrogatories to the extent that they define the term "DOE," or the Department of Energy, to include any Government agencies, offices, bodies, affiliates, contractors, consultants, or individuals other than the Department of Energy itself. To define the term "DOE" as including entities other than DOE itself would render all of plaintiff's discovery requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, because doing so would require defendant to seek information from, and about, more than one million Federal employees in numerous offices, agencies, and departments, the missions of which have no relation whatsoever to plaintiff's contract and the locations of which are scattered across the nation and around the world. Further, defendant objects to these interrogatories to the extent that they purport to seek information from the files of the entire

Federal Government. In responding to these interrogatories, defendant has focused upon the knowledge of the Department of Energy.

9. The objections set forth above apply to each of the numbered paragraphs of plaintiff's interrogatories.

DEFENDANT'S RESPONSE

INTERROGATORY NO. 5:

On what schedule (measured in Metric Tons Uranium) does DOE contend it is obligated to remove DAIRYLAND's SPENT FUEL pursuant to DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? State all factual and legal grounds for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

Without waiving this objection, defendant incorporates by reference its response to Interrogatory No. 3.

SUPPLEMENTAL RESPONSE:

Although the Court's February 5, 2007 order does not require supplementation of our original response to this interrogatory, defendant further refers plaintiff to the post-trial briefing that the Government filed in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C (Fed. Cl.), dated June 30, 2006, and July 7, 2006, copies of which are available on PACER accessible through the Court of Federal Claims' website.

SUPPLEMENTAL RESPONSE PURSUANT TO NOVEMBER 20, 2007 ORDER

Pursuant to the Standard Contract published at 10 C.F.R. § 961.11, DOE was to begin SNF acceptance from the contract holders by January 31, 1998. However, the Standard Contract itself does not identify any minimum or particular rate at which DOE, once it starts acceptance, must continue that SNF acceptance. Instead, the Standard Contract creates a procedural mechanism which requires each contract holder that wants to deliver any particular amount of SNF to DOE in any particular allocation period (each of which is a 12-month period) to submit a delivery commitment schedule ("DCS") to the contracting officer for approval. The submission, which the contract holder must present to the Department at least 63 months before the date upon which the contract holder wants the Government to accept the SNF, is a condition to the Government's subsequent obligation to accept any SNF. See 10 C.F.R. § 961.11, Art. V. If the DCS is disapproved, the Standard Contract contains an administrative mechanism through which any dispute regarding the SNF acceptance rate or order may be resolved, which the contract holder must also pursue as a "condition" to the Department's SNF acceptance. If the DCS is approved, the delivery commitment is established, committing the contract holder to deliver, and the Government to accept, the amount of SNF identified in the DCS.

Pursuant to Articles IV.5 and V of the Standard Contract, the 1991 Annual Capacity Report ("ACR"), in conjunction with the 1991 Annual Priority Ranking ("APR"), initiated the process through which DOE began making firm acceptance commitments to individual utility contract holders. Specifically, after issuance of the 1991 ACR/APR, many of the nuclear utility plaintiffs (including Dairyland) submitted DCSs to the Government, many of which were approved by the Department of Energy contracting officer. In submitting the DCSs, the utility

contract holders relied upon the allocations identified in the ACR/APR, and, in accordance with Article V of the Standard Contract, DOE approved many of those DCS submissions. The DCSs identify both the amount of SNF and the location of SNF for which an allocation exists under the relevant ACR/APR for a given year. Through the mechanisms created by the Standard Contract, those approved DCSs provide the contractual basis for assessing damages in these cases, based upon the Government's inability to accept the amount of SNF identified in those DCSs.

Dairyland Power Cooperative submitted DCSs to DOE on September 17, 1992, requesting the following allocations: (1) 0.72 Metric Tonnes Uranium ("MTUs") in 1998; (2) 5.99 MTUs in 1999; (3) 3.00 MTUs in 2000; (4) 3.86 MTUs in 2001; (5) 3.37 MTUs in 2003; (6) 1.45 MTUs in 2006; and (7) 3.29 MTUs in 2007. Those DCSs were approved by DOE's contracting officer for the Standard Contract on December 22, 1992. Therefore, pursuant to the terms of Dairyland Power Cooperative's Standard Contract, the parties agreed and contractually committed themselves to the acceptance of Dairyland's SNF in accordance with Dairyland's approved DCSs.

DOE has not obligated itself to accept any additional SNF other than the amounts set forth in the approved DCSs.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
MARIAN E. SULLIVAN
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT C. SLATER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

December 3, 2007

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 3rd day of December 2007, I caused to be sent by first class mail and facsimile a copy of "DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 5 PURSUANT TO THE COURT'S NOVEMBER 20, 2007 ORDER" addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)

[signature]
______________________