Page 65

with the Plaintiff. There has to be some point where that happens. So my initial reaction was, where does this presidential communications thing come out of since we were not talking about this whatsoever?

And I looked back in the log and I saw actually PC, which I presume means presidential communication, so that it was in fact there. And so then I moved over and I said, well, why didn't the Plaintiff then bring that issue up because it was in fact in the log, although my understanding is that the Plaintiff didn't really receive it until the response of the government was filed. It wasn't as if they had it before they wrote the motion.

And at that point, it seems to me to me that the Plaintiff may have been fixated on the two issues it was looking at in terms of privilege and therefore wasn't really looking at the log in terms of the presidential communications privilege.

I mean, I'm just trying to look at, I know I do go on, but if I were trying the case and I got a privilege log and I was looking at it not with a preconceived notion of what I'm looking for but looking for any issue, then I think the Plaintiff can be blamed for saying it was there and it wasn't challenged, okay?

But when it receives a log already in the context of looking for just two, challenging just two of the

Page 66

privileges, I can see psychologically why you wouldn't be looking at the whole log in terms of all privileges, okay? So the bottom is a pox on both your houses.

So the bottom line is is that I think if I wanted to be ultrastrict, which maybe I should have done from the very beginning, then I could have said, well, the Plaintiff had the opportunity because they had the log. There was a PC. So they can't complain now about the presidential communication. In fact, they may have even waived challenging it, okay?

Or I would have said, you guys didn't bring it up in your brief and therefore you were remiss in that, because it looks like you're not being diligent in looking at the case as a whole, and as you discover things in arguments, they come in, which is never the way to efficiently run litigation.

All right. So what my bottom line is that I see a kind of misstep on both sides here. Therefore, the status quo remains the status quo. We'll go forward with the motion.

I just want to point this out by way of an admonition, and that is that you have to look at all of the documents comprehensively and that I will, without saying to you directly if you don't do this by this date, you will have waived it, I want you to realize that I'll

Page 67

apply normal kind of course case management efficiency logic, and that is we can't have things flowing in as you discover them. But there has to be at certain junctures a comprehensive look at least of a set of issues. And if they aren't done at that time, then whichever side it is will have been deemed to waive it. So I just want to point that.

Yes. Go ahead. Ms. Sullivan, do you want to talk?

MS. SULLIVAN: Your Honor, I just really quickly want to clarify the Court's understanding that they did not know that we'd asserted presidential communications until they filed their motion.

THE COURT: Yes.

MS. SULLIVAN: In fact, that was an assertion we would have put on our privilege log. The privilege log was in existence at the time of Mr. Milner's declaration in the PG&E case and I believe prior to that. So just to clarify, it had been a longstanding assertion of that PC privilege on the log that had not been challenged by the Plaintiffs.

THE COURT: No, but what I was saying is my impression was that the Plaintiffs didn't actually see the log in toto until as an appendix to the response of the government to the Plaintiff's challenge.

Page 68

MS. SULLIVAN: And that's an incorrect understanding on Your Honor's part. That log was on the production website with those privilege designations for several years.

THE COURT: But in the context of PG&E.

MS. SULLIVAN: PG&E and before that, but I know that it was there at the time we prepared the Milner declaration in the PG&E case. I don't know because I don't know the date of the documents right now in my head. I believe those documents were collected in response to the coordinated discovery effort in the 2001/2002 timeframe, and we asserted the presidential communications at that time. It was part of the log that was provided to all of the plaintiffs in all of the cases at that time.

THE COURT: Okay. All right.

MS. SULLIVAN: Thank you.

THE COURT: I think I don't want to split the hair on this, because the ultimate conclusion is that we proceed as we did before. I just want to say just as a warning, because the Plaintiff feels that I think I had not been as strict as I should be about deeming a waiver to have occurred, part of it is is because I wasn't exactly clear that I'd ever communicated a date sort of certain, a critical date.