NO. 04-106C
(Judge Damich)

---

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S DECEMBER 12, 2007 ORDER AND PLAINTIFF'S DECEMBER 21, 2007 SUPPLEMENTAL BRIEF

---

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trail Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

January 7, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. SANCTIONS PURSUANT TO RCFC 37 ARE INAPPROPRIATE HERE, AS THE GOVERNMENT'S DESIGNEE ACTED IN GOOD FAITH AND HIS TESTIMONY WAS OTHERWISE SUBSTANTIALLY JUSTIFIED . . . . . . . . 2

A. As We Have Discussed In Prior Briefing, The Court Should Not Award Attorney Fees And Costs Against The Government Pursuant To RCFC 37(b)(2) And 37(d) Where The Government Did Not Act In Bad Faith.... 2

B. Although Dairyland Now Relies Upon RCFC 37(a)(4) To Support The Award Of Attorney Fees And Costs, The Untimely Invocation Of That Additional Rule Should Not Provide A Basis For A Sanctions Award . . . 6

II. WE ARE UNAWARE OF ANY AUTHORITY TO JUSTIFY THE IMPOSITION OF SANCTIONS FOLLOWING THE GOVERNMENT'S GOOD FAITH INVOCATION OF THE DELIBERATIVE PROCESS PRIVILEGE THAT THE COURT ULTIMATELY FINDS IMPROPER. ..............................12

III. IN ANY EVENT, GIVEN THE BREADTH OF DAIRYLAND'S MOTION TO COMPEL AND ITS LIMITED SUCCESS, THE COURT SHOULD NOT IMPOSE COURTS AND FEES ON THE GOVERNMENT WHERE THE COURT DENIED THE BULK OF DAIRYLAND'S MOTION TO COMPEL ..17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### CASES

Alaska Pulp Corp. v. United States,
41 Fed. Cl. 611 (1998) . . . . . . . . . . 5

Alexander v. Federal Bureau of Investigation,
186 F.R.D. 200 (D.D.C. 1999) . . . . . . . . . . 12, 13

Belmont Holdings Corp. v. Unicare Life & Health Insurance Co.,
No. 98-2365, 2000 WL 1920039 (E.D. Pa. Dec. 1, 2000) . . . . . . . . . . 4, 10

Black Horse Lane Assoc. v. Dow Chemical Corp.,
228 F.3d 275 (3rd Cir. 2000) . . . . . . . . . . 5

Boland Marine & Mfg. Co., Inc. v. M/V Bright Field,
No. 97-3087, 1999 WL 280541 (E.D. La. May 3, 1999) . . . . . . . . . . 4

Branhill Realty Co. v. Montgomery Ward & Co.,
60 F.2d 922 (2d Cir. 1932) . . . . . . . . . . 12

Brown v. State of Iowa,
152 F.R.D. 168 (S.D. Iowa 1991) . . . . . . . . . . 8

Caruso v. Coleman Co.,
157 F.R.D. 344,(E.D. Pa. 1994) . . . . . . . . . . 9

Commercial Metals Co. v. United States,
176 Ct. Cl. 343 (1966) . . . . . . . . . . 12

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . 11

Dairyland Power Cooperative v. United States,
77 Fed. Cl. 330 (2007) . . . . . . . . . . 14

Grant v. Sullivan,
134 F.R.D. 107 (M.D. Pa. 1990) . . . . . . . . . . 16

Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,
138 F.R.D. 530 (C.D. Ill. 1991) . . . . . . . . . . 9

Hendler v. United States,
952 F 2d. 1364 (Fed. Cir. 1991) . . . . . . . . . . 4, 7

John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,
845 F.2d 1172 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Morris v. United States,
37 Fed. Cl. 207 (1997) ....................................................................................4

National By-Prods., Inc. v. United States,
186 Ct. Cl. 546, 405 F.2d 1256 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pacific Gas & Electric Co. v. United States,
No. 04-0074C, 2007 WL 4394411 (Fed. Cl. Dec. 12, 2007) . . . . . . . . . . . . . . . . . . . . . 15

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Payne v. Howard,
75 F.R.D. 465 (D.D.C. 1977)........................................................................9

Pierce v. Underwood,
487 U.S. 552 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pulsecard, Inc. v. Discover Card Servs., Inc.,
168 F.R.D. 295 (D. Kan. 1996)....................................................................18

Rivers v. American Express Centurion Services Corp.,
184 F.R.D. 670 (M.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tennessee Valley Authority v. United States,
60 Fed. Cl. 665 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tri-Star Pictures, Inc. v. Unger,
171 F.R.D. 94 (S.D.N.Y. 1997)....................................................................18

United States v. Massachusetts Indus. Fin. Agency,
162 F.R.D. 410 (D. Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Real Property at 2659 Roundhill Drive,...........................................................9
283 F.3d 1146 (9th Cir. 2002)

Yankee Atomic Electric Co. v. United States,
73 Fed. Cl. 249 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-106C<br>(Chief Judge Damich) |

DEFENDANT'S MEMORANDUM OF LAW
IN RESPONSE TO THE COURT'S DECEMBER 12, 2007 ORDER
AND PLAINTIFF'S DECEMBER 21, 2007 SUPPLEMENTAL BRIEF

Defendant, the United States, respectfully responds to the "Supplemental Brief For Sanctions Regarding RCFC 30(b)(6) Deposition," which the plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on December 21, 2007, in response to the Court's December 12, 2007 order. In that order, the Court directed the parties to submit briefs regarding the following questions: (1) "[m]ust a party seeking to impose discovery sanctions in connection with a party's failure to adequately discharge the requirements of RCFC 30(b)(6) demonstrate that the violating party acted in bad faith," and, "[i]f so, does the conduct of the government in regard to the principal motion constitute bad faith?," and (2) "[w]hen, if ever, is an invocation of the deliberative process privilege that the Court finds improper and that prevented a party from answering questions in a deposition, particularly one under RCFC 30(b)(6), sanctionable under RCFC 37?" Order, at 3. We address each of these two topics separately below.

SUMMARY OF ARGUMENT

In its supplemental brief in response to the Court's order, filed on December 21, 2007, Dairyland has changed the basis of the request for attorney fees and costs that it requested in its original July 18, 2007 motion to compel. In that motion, Dairyland sought fees and costs

"pursuant to RCFC 37(b)(2) and 37(d)." Pl. Motion, at 13 (July 18, 2007). We responded to that argument, relying upon the law applicable to the rules upon which Dairyland sought relief, which, in this circuit, generally requires a finding of bad faith to support sanctions under those rules.

In its supplemental brief, Dairyland now seeks to support the Court's award of attorney fees and costs by reference to another of this Court's rules, RCFC 37(a)(4), a rule upon which Dairyland did not appear to rely in its July 18, 2007 motion. At this stage of proceedings regarding Dairyland's request for sanctions, the Court should deem it too late for Dairyland to add a new basis for sanctions here. In any event, although the standards applicable to awards of attorney fees and costs may differ somewhat depending upon which of the rules the Court applies, the end result is the same: the Court should not award attorney fees and costs against the Government where the Government has acted in good faith and has raised and pursued a good faith and genuine discovery dispute that was later resolved by the Court. Dairyland's assertions that an award of attorney fees and costs in response to a genuine discovery dispute is automatic and mandatory are simply erroneous.

## ARGUMENT

### I. SANCTIONS PURSUANT TO RCFC 37 ARE INAPPROPRIATE HERE, AS THE GOVERNMENT'S DESIGNEE ACTED IN GOOD FAITH AND HIS TESTIMONY WAS OTHERWISE SUBSTANTIALLY JUSTIFIED

#### A. As We Have Discussed In Prior Briefing, The Court Should Not Award Attorney Fees And Costs Against The Government Pursuant To RCFC 37(b)(2) And 37(d) Where The Government Did Not Act In Bad Faith

In its July 18, 2007 "Motion For Relief For Government Discovery Violations Regarding Rule 30(b)(6) Deposition Testimony," Dairyland sought sanctions against the Government

"pursuant to RCFC 37(b)(2) and 37(d) by precluding the Government from offering evidence at trial on the topics for which Messrs. Kouts and Zabransky (where designated as RCFC 30(b)(6) witnesses) failed to provide testimony." Pl. Motion, at 13 (July 18, 2007); see id. at 16 (seeking costs and attorney fees pursuant to RCFC 37(b)(2) and 37(d)). In relevant part, pursuant to RCFC 37(b)(2), if a RCFC 30(b)(6) designee "fails to obey an order to provide or permit discovery," the Court may issue an order "refusing to allow the disobedient party to support or oppose designated claims or defenses." Pursuant to RCFC 37(d), the Court may issue a similar preclusion order against a party whose RCFC 30(b)(6) designee fails "to appear" for the deposition.

Dairyland asserted in its July 18, 2007 motion that, because Mr. Zabransky was unprepared to testify concerning Topic Nos. 6 and 7 in Dairyland's deposition notice regarding the Department of Energy's contractual intent in developing the terms of the Standard Contract, the Government failed to obey the Court's January 29, 2007 order granting Dairyland's motion to compel the Government's RCFC 30(b)(6) deposition. See Pl. Motion, at 2 n.2 (July 18, 2007). Dairyland also took the position that, because Mr. Zabransky did not testify fully concerning the Department of Energy's contractual intent in developing the Standard Contract, such an inability to testify amount to a "failure to appear" pursuant to RCFC 37(d). See id. at 2 n. 3.

In its November 20, 2007 order, the Court previously held that to impose sanctions "of any sort," a trial court "must find that the violating party acted willfully and in bad faith." Order, at 6 (Fed. Cl. Nov. 20, 2007). Applying this standard, the Court denied Dairyland's request for a preclusion order pursuant to RCFC 37(b) and 37(d), finding that there was no evidence of willful

evasiveness by Mr. Zabransky, the Government's RCFC 30(b)(6) designee, and otherwise made no finding of bad faith on the part of the United States in responding to Topic Nos. 6 and 7 of Dairyland's deposition notice. See id. at 8 ("Without evidence of willful evasiveness on Mr. Zabransky's part, though, the Court does not believe it should bar further government evidence as to DOE's contractual intent.").

In reviewing a decision in which this Court has imposed sanctions under RCFC 37(b), the United States Court of Appeals for the Federal Circuit clearly stated that, in this circuit, "[n]o Rule 37 sanction is appropriate when a litigant's failure is not the result of bad faith or misconduct." Hendler v. United States, 92 F.2d 1364, 1368 (Fed. Cir. 1991); see Morris v. United States, 37 Fed. Cl. 207, 213 (1997) (quoting Hendler in denying award of sanctions pursuant to RCFC 37(b)(2)). The Court's holding in its November 20, 2007 order in this case that a showing of bad faith or willfulness is a prerequisite for the severe sanction sought by Dairyland in its initial motion – that is, the imposition of preclusion order sought by Dairyland in its original motion to compel pursuant to RCFC 37(b)(2) and 37(d) – is well-supported by additional case law, particularly as it relates to issues that arise through Rule 30(b)(6) deposition questioning. See, e.g., Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., No. 98-2365, 2000 WL 1920039, at *2 (E.D. Pa. Dec. 1, 2000) (sanctions for failure to comply with Rule 30(b)(6) may be brought under Rule 37 when the violating party "acted willfully or in bad faith to obstruct discovery"); Boland Marine & Mfg. Co., Inc. v. M/V Bright Field, No. 97-3097, 1999 WL 280451, at 3 (E.D. La. 1999) (declining to award sanctions under Rule 37(d) where inadequacies of the witness's Rule 30(b)(6) testimony were not "egregious" and did not demonstrate "bad faith" or "willfulness"); United States v. Massachusetts Indus. Fin. Agency,

162 F.R.D. 410, 412 (D. Mass. 1995) (declining to impose sanctions where responding party did not "act[] willfully or in bad faith to obstruct discovery").[1]

In its supplemental brief, Dairyland does not mention the Federal Circuit's decision in Hendler or otherwise attempt to establish any bad faith on the Government's part. Instead, it argues that, pursuant to RCFC 37, it is "mandatory" that Dairyland be awarded both the costs of litigating its motion to compel, as well as the costs of reopening Mr. Zabransky's deposition, even without a finding of willfulness or bad faith by the Government.[2] Nevertheless, the case law to which Dairyland cites for this proposition does not support its argument and otherwise is consistent with the Government's position here. In Alaska Pulp Corp. v. United States, 41 Fed. Cl. 611 (1998), the Court awarded fees and costs incurred in bringing a motion to compel against a party who refused to produce a witness for deposition. Consistent with the Government's position, however, the Court in Alaska Paper awarded the attorney fees and costs as a sanction following a finding that the violating party had "willfully failed" to comply with a Court order that required it to produce the witness at a designated time and place. Alaska Paper, 41 Fed. Cl.

---

[1] Further, as the Court noted in its December 14, 2007 order, Black Horse Lane Assoc. v. Dow Chemical Corp., 228 F.3d 275 (3rd Cir. 2000), to which Dairyland cites in its supplemental brief, supports the proposition that there must be a showing of "bad faith" or "willfulness" to justify the imposition of the preclusion order sought initially Dairyland as a sanctions in connection with the Government's RCFC 30(b)(6) deposition testimony. Order, at 7 (Fed. Cl. Nov. 20, 2007). As the Court noted, in Black Horse Lane, "a witness, in a clear demonstration of bad faith, *inter alia*, denied knowledge of documents he signed even after admitting he never signed documents he did not read first." Id.

[2] In its November 20, 2007 order, the Court ordered the Government to compensate Dairyland "for attorneys' fees and costs incurred" in reopening Mr. Zabransky's deposition. Order, at 8 (Fed. Cl. Nov. 20, 2007). Nevertheless, in its December 21, 2007 supplemental briefing, Dairyland now asks the Court to sanction the Government further by ordering the United States to pay "expenses, including reasonable attorney fees incurred by Dairyland in litigating its motion to compel." Pl. Supp. Br. 3 (Dec. 21, 2007).

at 615-16. Similarly, in John B. Hull, Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172 (2d Cir. 1988), the trial court awarded costs and fees as a sanction following a party's failure to supplement its interrogatory responses pursuant to a Court order. Again, however, consistent with the Government's position, the award of fees and costs came following a showing that the violating party had "acted in bad faith, or at least with gross professional negligence," in failing to provide the required discovery. John B. Hull, 845 F.2d at 1175.

Dairyland has established no basis for an award of sanctions pursuant to RCFC 37(b)(2) or 37(d).[3]

B. Although Dairyland Now Relies Upon RCFC 37(a)(4) To Support The Award Of Attorney Fees And Costs, The Untimely Invocation Of That Additional Rule Should Not Provide A Basis For A Sanctions Award

In its December 21, 2007 supplemental brief, Dairyland now advocates, for the first time, the applicability of RCFC 37(a)(4) in support of an award of costs and fees as an appropriate sanction in light of the Court's finding in the November 20, 2007 order. See Pl. Supp. Br. 2 (Dec. 21, 2007). In relevant part, RCFC 37(a)(4) states as follows:

> [I]f a motion to compel discovery is granted, the Court shall, after affording an opportunity be heard, "require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless...the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."

[3] To the extent that the Court finds that, as Dairyland seems alternatively to propose, an award of sanctions is appropriate under RCFC 37(b)(2) or 37(d) where the Government's conduct is not substantially justified, the Government's conduct here was substantially justified, as we discuss below, given that the Government held a "genuine dispute" with Dairyland regarding the matters at issue here.

RCFC 37(a)(4) (emphasis added).[4] Dairyland asserts that the Court is not required to find "bad faith" or "willfulness" as a prerequisite to awarding costs and attorney's fees as a sanction in accordance with RCFC 37(a)(4). Rather, as a basis for the Court's imposition on costs and fees, Dairyland contends that the Court should find that Mr. Zabransky's testimony concerning DOE's "contractual intent" in issuing the Standard Contract was not "substantially justified."[5]

As an initial matter, the Court should find that Dairyland's invocation of a different rule to justify an award of attorney fees and costs, beyond those rules upon which it relied in its original motion to compel, comes too late.

In addition, RCFC 37(a)(4) does not permit the award of attorney fees and costs associated with reopening the deposition at issue. Instead, "[t]he expenses that may be ordered paid under Rule 37(a)(4) are limited to 'the reasonable expenses incurred in obtaining the order, including attorney's fees.'" 8A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2288, at 660 (2d ed. 1994). Accordingly, this rule does not support the Court's award of fees and costs associated with reopening Mr. Zabransky's deposition.

In any event, the Federal Circuit in Hendler did not indicate that its holding – that "[n]o Rule 37 sanction is appropriate when a litigant's failure is not the result of bad faith or misconduct," Hendler, 92 F.2d at 1368 – applies only to RCFC 37(b)(2) or to requests other than

---

[4] Dairyland emphasizes similar language in RCFC 37(b) and 37(d), which indicate that the Court may impose "reasonable expenses, including attorney's fees," unless the Court finds that the nondisclosure was "substantially justified." Pl. Br. at 2-3; RCFC 37(b)(2) & 37(d).

[5] Dairyland has not taken the position in either its initial briefing in support of its July 18, 2007 motion for sanctions, or in its December 21, 2007 supplemental brief, that the Government's conduct in responding to Dairyland's RCFC 30(b)(6) deposition notice in this case constitutes "bad faith" in any way.

for attorney fees and costs. Nevertheless, other circuits allow for an award of costs and attorney fees pursuant to Rule 37(a)(4) to a party that prevails fully in bringing a motion to compel without requiring as a prerequisite a finding of bad faith or willfulness. See, e.g., Rivers v. American Express Centurion Services Corp., 184 F.R.D. 670, 671 (M.D. Fla. 1998); Brown v. State of Iowa, 152 F.R.D. 168, 173 (S.D. Iowa 1991). However, even in those instances, the courts have not permitted an automatic award of attorney fees and costs, as Dairyland appears to seek to impose here. Instead, to determine whether to award costs or fees pursuant to RCFC 37(a)(4), those courts have applied a "substantial justification" standard.

The United States Supreme Court recognized in Pierce v. Underwood, 487 U.S. 552 (1988), recognized, in discussing the requirement in Rule 37(a)(4) that sanctions should not be imposed for discovery disputes that are "substantially justified," that the rule does not permit an automatic award of attorney fees and costs to the party on the losing side of a genuine discovery dispute: "[t]o our knowledge, that [substantial justification rule] has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].'" Id. at 565 (brackets in original; emphasis added). Similarly, the Advisory Committee Notes to the 1970 Amendment to Fed. R. Civ. P. 37(a)(4), 48 F.R.D. at 540, indicate that, "[o]n many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to the court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." (Emphasis added). "If 'reasonable people could differ' about the appropriateness of the action,

sanctions are unwarranted." United States v. Real Property at 2659 Roundhill Drive, 283 F.3d 1146, 1154 (9th Cir. 2002).

Further, in situations, such as this case, in which the underlying motion to compel that forms the basis for the moving party's request for sanctions was granted in part and denied in part, there is authority to support the proposition that the nondisclosing party was "substantially justified," precluding the imposition of costs and fees as sanction. See, e.g., Caruso v. Coleman Co., 157 F.R.D. 344, 350 (E.D. Pa. 1994) (no award of expenses for costs incurred in bringing discovery motion where neither party could accurately be called the overall "winner" or "loser"); Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 138 F.R.D. 530, 538 (C.D. Ill. 1991) (requesting parties and responding party required to bear their own costs and attorneys incurred concerning motion to compel that was granted in part and denied in part); Payne v. Howard, 75 F.R.D. 465 (D.D.C. 1977) (where both sides had gone farther than permissible in seeking and resisting discovery, each party was required to bear its own expenses in connection with plaintiff's motion to compel).

Regardless of whether the Court requires a finding of bad faith or requires a "substantial justification" for the discovery dispute, either standard is satisfied here. Contrary to Dairyland's assertions in its supplemental brief, and as we discussed in our motion for reconsideration of the Court's order, the Government raised a "genuine dispute" regarding the adequacy of Mr. Zabransky's testimony regarding DOE's contractual intent. As we explained in our motion for reconsideration of the Court's November 20, 2007 order, there is certainly a reasonable dispute as to DOE's purpose in entering into the Standard Contract.

As an initial matter, another court has held that "[a]n inability to fully testify on all topics set forth in a 30(b)(6) notice is not tantamount to a complete failure of the corporate designee to appear that would justify sanctions." Belmont Holdings, 2000 WL 1920039, at *2. Certainly, Mr. Zabransky appeared for his deposition, rendering a sanctions award inappropriate under the rationale of Belmont Holdings.

In any event, Mr. Zabransky did not "fail" to answer questions regarding DOE's understanding and intentions in entering into the Standard Contract. Rather, as the Court held, Mr. Zabransky testified that DOE's intent in entering into the Standard Contract was to fulfill the terms and requirements of the NWPA. Order, at 7 (Fed. Cl. Nov. 29, 2007). Consequently, Dairyland's real basis for its claim for sanctions rests upon the assertion that Mr. Zabransky's testimony was inconsistent with Mr. Pollog's prior testimony.[6]

In its order denying the Government's motion for reconsideration, the Court relied, in part, upon another Court's decision in Yankee Atomic Electric Co. v. United States, 73 Fed. Cl. 249, 265 (2006), which held that "'the intent of the NWPA and the parties to the Standard Contract was to avoid the construction by utilities of additional at-reactor storage after January 31, 1998.' DOE's failure to perform under the Standard Contract thus has led to the very thing the NWPA and the Standard Contract were designed to forestall, i.e., the construction of dry storage facilities for spent nuclear fuel at nuclear power electricity generating plants throughout the United States." Notably, the sole basis for this statement was the Court's decision in

---

[6] As we explained in our motion for reconsideration, Mr. Zabransky's testimony concerning DOE's **contract** intentions is not inconsistent with the testimony of Mr. Pollog regarding DOE's **program** goals. See Def. Motion for Reconsideration, at 10. As we explained in our motion for reconsideration, and as we reiterate below, contractual obligations are distinct from program goals.

Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 674, n.10 (2004), which, in turn, quoted to the decision in Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 667 (2003). Yet, the judge in Commonwealth Edison was the same judge as in Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333 (2006), and the Court in PG&E expressly rejected the argument that DOE's intent at the time of contract formation was to avoid the construction of additional at-reactor storage after January 31, 1998. Indeed, in PG&E, the Court expressly explained the limited precedential value of Commonwealth Edison:

> Reliance on the Commonwealth II opinion, which simply denied the government's motion for summary judgment regarding the rate of DOE's spent fuel acceptance, is inapt. In this case, having gone through trial, the court has conducted the necessary "fact-specific inquiry" and determined that insertion of a "reasonable rate" is not appropriate under the circumstances of this case. Moreover, as will be discussed in more detail below, *see infra* Part I.B.2.b, an examination of the "intent of Congress and the parties" does not lead to the conclusion that a 3,000 MTU/year acceptance rate would have been used by DOE beginning in 1998 had it performed the Standard Contract.

Id. at 383 n.42. Accordingly, there is no inconsistency between Mr. Zabransky's testimony regarding the intent of DOE in entering into the Standard Contract and the findings in Southern Nuclear and Yankee Atomic regarding the "goals" of the DOE program.

In its supplemental brief regarding sanctions, Dairyland seeks to gloss over this critical distinction between contractual obligations and program goals. Pl. Suppl. Br. 5-6 ("Evidence of DOE's intentions for performing under Standard Contracts regarding an acceptance rate (regardless whether expressed as a program goal or contractual obligation) early in the DOE spent fuel acceptance program before breach was anticipated is strong evidence of such a reasonable acceptance rate.") (emphasis added). Yet, Dairyland's attempt to combine

contractual obligations and program goals is improper as a matter of law, and it demonstrates why Mr. Zabransky's testimony regarding the former is not inconsistent with certain testimony regarding the latter. See PG&E, 73 Fed. Cl. at 391 ("[t]he court's role is not to enforce and impose on DOE an obligation to carry out a strategy as it was envisioned at that time in the absence of a contractual understanding"); see also National By-Prods., Inc. v. United States, 186 Ct. Cl. 546, 571, 405 F.2d 1256, 1270 (1969); Commercial Metals Co. v. United States, 176 Ct. Cl. 343, 349 (1966); Branhill Realty Co. v. Montgomery Ward & Co., 60 F.2d 922, 923 (2d Cir. 1932). In any event, the Government's position regarding the sufficiency of Mr. Zabransky's deposition testimony regarding DOE's intent in entering into the Standard Contract represents a genuine dispute with Dairyland, as evidenced by the consistency of the Government's argument with this Court's findings in PG&E as well as the plain language of the NWPA and the Standard Contract. Accordingly, the award of sanctions based upon Mr. Zabransky's testimony regarding DOE's understanding at the time of contract formation is inappropriate.

## II. WE ARE UNAWARE OF ANY AUTHORITY TO JUSTIFY THE IMPOSITION OF SANCTIONS FOLLOWING THE GOVERNMENT'S GOOD FAITH INVOCATION OF THE DELIBERATIVE PROCESS PRIVILEGE THAT THE COURT ULTIMATELY FINDS IMPROPER

The Government is unaware of any case in which the good faith invocation of the deliberative process privilege in the course of a Rule 30(b)(6) deposition that the Court ultimately deems inapplicable may serve as the basis for sanctions pursuant to Rule 37. Indeed, the case law appears to suggest the opposite conclusion.

In Alexander v. Federal Bureau of Investigation, 186 F.R.D. 200 (D.D.C. 1999), which involved the "Filegate" case, plaintiffs sought to compel further deposition testimony from former Associate White House Counsel William H. Kennedy, III, where the Government

objected to questioning on certain topics on several grounds, including the attorney-client and deliberative process privileges, and plaintiffs sought sanctions. Id. at 202. As in this case, the trial court in Alexander rejected the Government's invocation of the deliberative process privilege, as well as certain invocations of the attorney-client privilege, but sustained other invocations of the attorney-client privilege. Id. at 202-06. The trial court further held that sanctions pursuant to Rule 37 "were not warranted by the positions taken by either side in this matter because these positions were substantially justified and turned on reasonable discovery disagreements under applicable law." Id. at 207-08.

In this case, as in Alexander, the Government's invocation of the deliberative process privilege was proper, and the imposition of sanctions pursuant to Rule 37 would be improper. As the Court recognized in its November 20, 2007 order, the Government's invocation of the deliberative process privilege during Mr. Zabransky's deposition was made pursuant to a formal declaration of the deliberative process privilege issued by Mr. Alan Brownstein, the Chief Operative Officer for OCRWM within the Department of Energy. Order, at 12 (Nov. 20, 2007). Indeed, the Court held that the Government's consideration of Transportation, Aging, and Disposal ("TAD") canisters and other terms in contracts for new nuclear reactors were not "solely commercial in nature" and that, with respect to the issue of new reactor contracts, "the Court is not convinced that Dairyland's evidentiary need to question Mr. Zabransky about contract terms for new nuclear reactors, especially as to acceptance rates, outweighs the government's interest in maintaining a zone of confidentiality in its policy process." Id. Clearly, the information here is properly covered by the deliberative process privilege, and the Government's invocation of the privilege was proper.

After a proper invocation of the deliberative process privilege, the only manner by which the requesting party can then obtain that information is by making an appropriate showing of need to the Court that outweighs the harm to the Government. See Dairyland Power Cooperative v. United States, 77 Fed. Cl. 330, 337-38 (2007). At the time of Mr. Zabransky's deposition, Dairyland had not make any any showing of need related to these topics, either to the Government or to the Court, and it acknowledged as much in its motion for relief. See Pl. Motion, at 17-18 (July 18, 2007) (stating that Government's interest in confidentiality is "likely outweighed by Dairyland's need for this information" and that "Dairyland is limited in its ability to show a need for this information . . ."). Accordingly, at the time of the deposition, Dairyland had not satisfied its burden sufficient to overcome the privilege, and the Government's declaration was entirely proper. With respect to the issue of amendments to the Standard Contract regarding TAD canisters and the Booz Allen consulting work, the Court ultimately held that, "[o]n balance, the Court is persuaded that Dairyland's evidentiary need outweighs the government's interest in confidentiality." Id. However, until that finding by the Court, the Government was entirely justified in maintaining its privilege claim here.

In these circumstances, it is beyond dispute that the Government's invocation of the deliberative process privilege was made in good faith and was substantially justified. First, the Government properly relied upon Mr. Brownstein's affidavit, which identified with particularity specific reasons why the Government's internal deliberations should be maintained as confidential, in invoking the privilege during Mr. Zabransky's Rule 30(b)(6) deposition. Second, by engaging in a weighing of Dairyland's evidentiary need against the Government's interest in confidentiality, the Court necessarily found that the privilege was validly invoked. As

the Court correctly noted in its opinion, the privilege may be "overcome upon a showing of evidentiary need weighed against the harm that disclosure of documents upon which the privilege is invoked might cause." Order, at 12 (Fed. Cl. Nov. 20, 2007) (citing CACI Field Serv., Inc. v. United States, 12 Cl. Ct. 680, 687 (1987)) (emphasis added). However, at the time of the deposition, Dairyland had made no showing of need.

Further, the Government could not possibly have known how, if Dairyland presented such a showing, the Court ultimately would weigh the competing interests in analyzing the application of the deliberative process privilege. Indeed, given that counsel for Dairyland, who was counsel for the plaintiff in the Pacific Gas & Electric case, did not seek the admission of a single document produced by the Government pursuant to the Court's order requiring production of documents otherwise protected by the deliberative process privilege in that case, see Pacific Gas & Electric Co. v. United States, No. 04-0074C, 2007 WL 4394411 (Fed. Cl. Dec. 12, 2007) (finding that counsel for Dairyland violated protective order in PG&E case, and noting that counsel for PG&E did not seek to introduce at trial a single document over which the Government had asserted the deliberative process privilege), we reasonably believed, and continue to believe, that Dairyland's need for this information is minimal, at best, and is plainly outweighed by the Government's interest in confidentiality in sensitive, pre-decisional policymaking. The fact that the Court ultimately disagreed with the Government's invocation does not amount to a lack of good faith on the part of the Government, or make the Government's invocation of the deliberative process privilege anything less than substantially justified, and the invocation of the deliberative process privilege in this circumstances does not warrant the imposition of sanctions pursuant to Rule 37(a)(4).

Notably, Dairyland has not identified a single case in which a court has awarded sanctions when a party has invoked the deliberative process privilege in the course of a deposition, and the court ultimately concluded that the Government's need in confidentiality was outweighed by the plaintiff's need for the documents. In its supplemental brief regarding sanctions, Dairyland relies upon Grant v. Sullivan, 134 F.R.D. 107 (M.D. Pa. 1990), for the proposition that "there is precedent for an award of attorneys fees under Rule 37 for an improper claim of deliberative process privilege." Dairyland's reliance upon Grant is misplaced.

In Grant, the "major controversy involved in this discovery dispute concerned the relevancy of the requested information." Grant, 107 F.R.D. at 113 (emphasis added). The defendant objected to many of the interrogatory requests and requests for production of documents on the grounds of relevance and undue burden, and objected to three production requests on the basis of the deliberative process privilege. The trial court ultimately found that the defendant was not substantially justified in its relevancy objections. In addition, the trial court found that, because the defendant had produced substantially similar documents in another lawsuit, "the Defendant was in a position to show some specific harm to the deliberative process from having disclosed these documents," and the defendant failed to make this showing or "provide any factual basis for believing that harm would result from the production of these documents." Id. at 114. Accordingly, the trial court found that the defendant was not substantially justified in its position and, after an evidentiary hearing in which the plaintiff provided expert testimony from two attorneys concerning the reasonableness of plaintiff's counsel fees, awarded plaintiff its attorney fees. Id. at 115.

In contrast to Grant, the Government's assertion of the deliberative process privilege was entirely justified. Indeed, as discussed above, the Government relied upon the detailed affidavit of Mr. Brownstein, who explained the specific reasons why the Department of Energy's decision-making would be significantly chilled if the subject documents were produced in the course of this litigation, and the absence of any showing of need by Dairyland at the time of the deposition. The fact that the Court ultimately concluded that Dairyland's need outweighed the Government's interest in confidentiality, following a motion to compel, in no way undermines the Government's substantial justification in asserting the deliberative process privilege. Accordingly, Grant does not justify the award of sanctions in this case.

## III. IN ANY EVENT, GIVEN THE BREADTH OF DAIRYLAND'S MOTION TO COMPEL AND ITS LIMITED SUCCESS, THE COURT SHOULD NOT IMPOSE COSTS AND FEES ON THE GOVERNMENT WHERE THE COURT DENIED THE BULK OF DAIRYLAND'S MOTION TO COMPEL

As the Court is aware, Dairyland's July 18, 2007 motion to compel sought far greater relief than that which the Court ultimately awarded. Dairyland alleged in its motion that the Government's RCFC 30(b)(6) testimony was deficient with regard to numerous topics and with regard to privilege claims. The Court denied most of Dairyland's challenges.[7] Under Dairyland's theory, the Government risked sanctions every time that it reasonably asserted an objection or viewed its deposition testimony as complete, and Dairyland would require the Government to guess as to which of its challenges would be successful. Given the limited

---

[7] Indeed, not only did the Government prevail on the majority of the issues that were in dispute in Dairyland's motion to compel, after receiving the Government's August 17, 2007 opposition brief in response to Dairyland's initial July 18, 2007 motion to compel, Dairyland withdrew its claim for sanctions in connection with the Government's RCFC 30(b)(6) testimony regarding Topic No. 9 in Dairyland's deposition notice. See Pl. Aug. 22, 2007 Br. at 8-9; Def. Aug. 17, 2007 Br. at 3 n.3.

success of Dairyland's motion, the Court should decline to impose any sanctions here. See, e.g., Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 103-04 (S.D.N.Y. 1997); Pulsecard, Inc. v. Discover Card Servs., Inc., 168 F.R.D. 295, 311 (D. Kan. 1996).

## CONCLUSION

Accordingly, for these reasons, the United States respectfully requests that the Court refrain from imposing sanctions upon the Government in connection with the Government's RCFC 30(b)(6) testimony in this case.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/Joshua E. Gardner
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 305-7571
Tel: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

January 7, 2008

CERTIFICATE OF FILING

I hereby certify that on this 7th day of January 2008, a copy of the foregoing "DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S DECEMBER 12, 2007 ORDER AND PLAINTIFF'S DECEMBER 21, 2007 SUPPLEMENTAL BRIEF," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Patrick B. Bryan