IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 13 PURSUANT TO THE COURT'S DECEMBER 21, 2007 ORDER

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following response to Interrogatory number 13 of "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006 and are now being supplemented pursuant to the Court's order regarding the Government's interrogatory responses issued on December 21, 2007.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to any document so produced, or as to any other document.

2. Exceeding obligations imposed by the Court's rules and orders: Defendant objects to the instructions and definitions accompanying plaintiff's interrogatories to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by RCFC 26 and 34 and the Court's prior orders, including but not limited to, information regarding electronic mail will be produced only in accordance with the requirements provided by the Court's prior order, dated March 14, 2005, limiting the parties' obligations to preserve or search e-mail tapes.

3. Conclusions regarding legal significance of documents: Defendant objects to the plaintiff's interrogatories upon the grounds and to the extent that, by them, plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

4. Work product information: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks information prepared and/or developed in anticipation of litigation and/or for trial when plaintiff has not shown that it has substantial need of such materials in the preparation of its case in that plaintiff is unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

5. Irrelevant material: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks the discovery of information which is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6. Vague, overly broad, and unduly burdensome: Defendant objects to plaintiff's interrogatories on the grounds that the manner in which they are worded, when read with their definitions and general instructions, are so vague, broad, general, and all inclusive that they do

not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive. Defendant further objects to these interrogatories to the extent that, to respond to them, defendant would be required to make an extensive investigation, research, compilation, and evaluation of data and records in its possession, which would constitute annoyance, harassment, oppression, undue burden, and undue expense to defendant.

7. Inferences from interrogatories: Defendant objects to any inference that can be drawn from any portion of plaintiff's interrogatories or the responses to them that the documents requested or events referenced in the requests actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by defendant that such information exists or that such events actually occurred.

8. Scope Of The Government As Responding Party: Defendant objects to plaintiff's interrogatories to the extent that they define the term "DOE," or the Department of Energy, to include any Government agencies, offices, bodies, affiliates, contractors, consultants, or individuals other than the Department of Energy itself. To define the term "DOE" as including entities other than DOE itself would render all of plaintiff's discovery requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, because doing so would require defendant to seek information from, and about, more than one million Federal employees in numerous offices, agencies, and departments, the missions of which have no relation whatsoever to plaintiff's contract and the locations of which are scattered across the nation and around the world. Further, defendant objects to these interrogatories to the extent that they purport to seek information from the files of the entire

Federal Government. In responding to these interrogatories, defendant has focused upon the knowledge of the Department of Energy.

9. The objections set forth above apply to each of the numbered paragraphs of plaintiff's interrogatories.

DEFENDANT'S RESPONSE

INTERROGATORY NO. 13:

Do you contend that DOE would have picked up DAIRYLAND's FAILED FUEL later than the rest of its SPENT FUEL had the government begun SPENT FUEL acceptance from utilities starting not later than January 31, 1998? If so, state all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature prior to the completion of fact discovery, given that defendant does not have adequate information regarding plaintiff's failed fuel to respond appropriately to this interrogatory. Defendant objects to this interrogatory as vague, overly broad, and unduly burdensome. Given that the design parameters for any storage facility that DOE might operate have not yet been defined, it is impossible to identify every technical impediment that could occur in the acceptance of failed fuel from Dairyland's nuclear reactor.

Without waiving these objections, defendant responds that, during his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for a response to this interrogatory.

Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not require any further supplemental of this response.

SUPPLEMENTAL RESPONSE PURSUANT TO DECEMBER 21, 2007 ORDER

In its December 21, 2007 order, the Court stated that, "if indeed the Government cannot say whether it would have accepted failed fuel from Dairyland on a schedule different than that for standard fuel given its lack of experience with such a situation and sufficient information from Dairyland regarding the extent of its failed fuel, it should say so directly." Order, at 4 (Dec. 21, 2007).

Dairyland's interrogatory here seeks a statement regarding the contention that the Government will make in this litigation regarding the schedule upon which DOE "would have" accepted Dairyland's failed fuel. The question that Dairyland asks – whether DOE "would have" picked up Dairyland's failed fuel on the same schedule as standard SNF – is irrelevant to this case. The only relevant question is whether DOE, under the terms of the Standard Contract, was required to do so. In response to the Court's direction, we do not intend to develop a contention regarding what DOE "would have" done regarding failed fuel had it begun SNF acceptance in 1998, given that it is irrelevant and unnecessary to this litigation. Further, we have no basis for asserting what DOE definitively "would have" done had it commenced SNF acceptance in 1998,

given that such performance might have involved extra-contractual activities and contract amendments, pursuant to mutual agreement by the parties, that are irrelevant to any consideration of damages for a breach of the existing contract terms.

Nevertheless, regardless of whether the relevant issue is, on the one hand, whether DOE "would have" accepted or, on the other hand, whether DOE was contractually required to accept Dairyland's failed fuel on the same schedule as standard fuel, we expect to contend at any trial of the matter in this case that, in the "but for" world, Dairyland's failed fuel would not have been accepted pursuant to the terms of the Standard Contract on the same schedule as standard SNF until and unless Dairyland had established that the failed fuel could have been safely handled and transported to a Federal facility, in the transportation cask to be provided by DOE, in accordance with applicable regulations and would not have required special handling as defined by Appendix E of the Standard Contract.

Although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. 3 ¶ A. For any SNF that a contract holder or "Purchaser," such as Dairyland, has designated as other than standard fuel, the Purchaser is required to obtain confirmation from DOE as to the "technical feasibility" of accepting such fuel pursuant to the "currently agreed to schedule." Id. Before DOE can evaluate whether the acceptance of particular failed fuel will require special handling or technology, the Purchaser must advise DOE of the condition of its fuel and ask DOE to confirm that schedule upon which that fuel will be accepted. See id., Art. VI.2(b) & Appendices E & F. To the extent that the Purchaser's description is inaccurate, DOE has the

right to refuse acceptance of the SNF, even if it has traveled to the Purchaser's site for the purposes of acceptance.

Through discovery in this case, we have learned that Dairyland has never inventoried all of its failed fuel, although it knows that it possesses at least some failed fuel with a level of failure that far exceeds much of the failed fuel that is being stored by many other nuclear utilities. Since 1980, Dairyland has maintained its SNF in a two-tiered storage rack in its spent fuel pool. The two-tiered rack configuration does not allow observation of all of Dairyland's SNF without removing fuel assemblies from the rack. Partly because of the risk of further fuel rod segment displacement of Dairyland's damaged fuel assemblies that could occur from additional handling of those assemblies, Dairyland has sought an exemption from Nuclear Regulatory Commission regulations that require Dairyland to perform a complete inventory of its spent fuel pool on an annual basis. Currently, Dairyland does not plan to perform such a complete inventory before 2010.

Dairyland has never advised DOE of the condition of its SNF pursuant to Appendices E and F of the contract. Further, Dairyland has never been in a position to be able to provide the necessary information about its fuel, even though it has been able to determine that at least some of it is grossly failed. Even today, Dairyland does not possess the information that is necessary to allow DOE to make a determination about Dairyland's specific failed fuel. Accordingly, Dairyland cannot meet its burden of establishing that DOE would have accepted Dairyland's SNF on the same schedule as standard SNF had it begun SNF acceptance in 1998, much less that DOE was contractually required to do so.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

Harold D Lester Jr.

HAROLD D. LESTER, JR.
Assistant Director

Russell A Shultis / by Harold D L

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
MARIAN E. SULLIVAN
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT C. SLATER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 9, 2008

CERTIFICATE OF FILING

I hereby certify that on this 9th day of January 2008, I caused to be sent by first class mail and facsimile a copy of "DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 13 PURSUANT TO THE COURT'S DECEMBER 21, 2007 ORDER" addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)

______________________________