IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: January 22, 2008

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, | No. 04-0106C |
| v. | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, Defendant. | |

DAIRYLAND'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL BRIEF ON MOTION FOR PARTIAL SUMMARY JUDGMENT RE PFS-RELATED DAMAGES

It is remarkable that in a supplemental brief that, with signature page and lengthy footnotes, stretches the 10-page limit provided by the Court's December 21, 2007 Order, the government fails to squarely answer the only two questions posed in the Court's Order. The answer to the first question – whether the government seeks in its motion to preclude Dairyland from recovering as damages funds transferred to support GFT – is yes. The answer to the second question – the legal justification for that position – is none.

The government's supplemental brief is merely a rehash (some of it verbatim) of material set out in its motion and reply. As Dairyland explained in its opposition, there is no legal support for the argument that the use of a subsidiary to mitigate damages bars recovery for funds reasonably expended in that effort. Nor does *Indiana Michigan Power Co. v. United States,* 422 F.3d 1369 (Fed. Cir. 2005), hold that expenditures on PFS are legally either unreasonable or unforeseeable. Instead, the reasonableness and

foreseeability of Dairyland's costs of participating in PFS are fact-bound issues, and Dairyland has strong evidence supporting its positions that should be evaluated in the context of a trial.

It is appropriate for Dairyland to address one argument presented in the government's supplemental brief in somewhat more detail because Dairyland has not previously had an opportunity to address it since the government first raised it in its reply brief. The government argues that Dairyland's support of GFT to pursue PFS has been a "collateral undertaking" and, thus, not sufficiently direct to be recoverable. *See* Govt. Supp. Brf. at 3-7; *see also*, Govt. Reply at 9-14.

There is nothing "collateral," as that term is used in this context, about Dairyland's expenditures on GFT to participate in PFS, and the Federal Circuit has made abundantly clear, including in authority cited by the government, that the law supports recovery of the mitigation expenditures sought by Dairyland. As explained in its opposition to the government's motion and supported in its accompanying declarations, Dairyland was motivated to make expenditures to participate in PFS through GFT "solely by concern over DOE's anticipated failure to start picking up spent fuel." *See, e.g.*, Declaration of John Parkyn ¶¶ 5, 9, Declaration of Charles V. Sans Crainte ¶ 3. Those expenditures are, therefore, direct mitigation damages.

*Old Stone Corp. v. United States*, 450 F.3d 1360 (Fed. Cir. 2006), *cert. denied*, 127 S.Ct. 1831 (2007), cited by the government, is instructive in differentiating between recoverable mitigation expenses and unrecoverable unforeseeable damages. In that *Winstar*-related case, the government entered into agreements with a bank holding company (Old Stone Corp. – "OSC") to let its bank (Old Stone Bank – "OSB") use

regulatory capital in exchange for OSC acquiring and making $118 million in financial contributions to support two other thrifts that were merged into OSB. When FIRREA eliminated the regulatory capital provided for in those agreements, OSC attempted unsuccessfully to mitigate that breach by using $74.5 million of its own funds to replace that regulatory capital with cash. Ultimately, however, the government seized OSB and OSC lost all of the money it contributed to OSB.

The Federal Circuit upheld OSC's recovery of the $74.5 million as mitigation damages. *Id.* at 1367-68. The Federal Circuit made clear that such a mitigation award was appropriate under the *Restatement* and prior Federal Circuit precedent. *Id.* at 1368. The government challenged the award, in part, by arguing that the thrift needed only $36 million to remain in regulatory compliance. The Federal Circuit rejected this challenge, explaining that mitigation expenditures need only be reasonable, and the government failed to show that replacement of all of the capital eliminated by FIRREA was unreasonable. Importantly, the facts that a subsidiary of OSC's was involved in the transaction, that OSC considered that subsidiary to have profit potential, and that the mitigation was unsuccessful did not bar OSC from recovering as mitigation damages the funds OSC contributed to that subsidiary. The government cites to the portion of the Federal Circuit's opinion upholding denial of the recovery of the $118 million under restitution and reliance theories of recovery – not mitigation. Regarding that claim, the Federal Circuit held that there was no evidence that FIRREA either caused OSB's seizure or that those losses alleged by OSC were the foreseeable result of the breach in that case. *Id.* at 1375-76.

Dairyland's expenditures to participate in PFS are comparable to the mitigation expenditures approved in *Old Stone*. Although made through a subsidiary, they were made in an effort to provide "cover," *i.e.*, a substitute for the performance (removal of LACBWR's spent fuel) which Dairyland was owed under its contract with the government. GFT had no other or collateral purpose than to facilitate the cover transaction that Dairyland hoped to enter into to mitigate the direct result of the breach. Conversely, collateral undertakings, as referred to in the case law, refers to business activities other than those directly related to the contract that was breached. *See, e.g., Wells Fargo Bank v. United States*, 88 F.3d 1012, 1022-23 (Fed. Cir. 1996). If Dairyland claimed that because it spent $11 million on PFS it lacked funds to support some other part of its business and that lack of funds led to losses, those losses might be unrecoverable as too remote or indirect (for example, if Dairyland claimed that it had to defer maintenance on a coal plant and that deferral led to a failure of that coal plant causing Dairyland to incur large costs to purchase replacement power). But that is not Dairyland's claim.

The government also argues that Dairyland cannot recover its mitigation costs incurred through expenditures on GFT because Dairyland has received GFT stock. Govt. Supp. Brf. at 7, n.4. This government footnote, although somewhat unclear, seems to have two arguments. First, the government appears to argue that Dairyland has not actually suffered damages because it still holds stock in GFT and a corresponding interest in PFS, which may be of some value. *See also* Govt. Supp. Brf. at 8-9, n.5. That is akin to saying that utilities cannot recover the cost of constructing any dry storage facility

because the utility now owns the facility, which has value. As this Court has explained in another spent fuel case:

> The costs plaintiff incurred in pursuit of the off-site private storage facility are conceptually indistinguishable from the costs the utility incurred in developing the similar [dry storage] facility at Prairie Island: each set of costs signifies an expenditure by plaintiff to develop a substitute for the performance lost on account of the breach. Thus, restoring the costs plaintiff expended on the private storage facility does not enhance plaintiff's position (as defendant's argument implicitly assumes); rather, it simply restores plaintiff to the position it was in before the breach.

*See Northern States Power Co. v. United States*, 78 Fed. Cl. 449, 466-67 (2007); *see also Northern States Power Co. v. United States*, 2007 WL 4394415 (Dec. 12, 2007 Fed. Cl., Order Denying Motion for Reconsideration):

> In the instant case, we found that the injury asserted by plaintiff-the need to provide alternative storage for its spent nuclear fuel-was caused by DOE's failure to perform in a timely manner and that the utility's efforts to secure alternative storage were a foreseeable consequence of DOE's inaction. Once such a showing has been made, we believe that the costs associated with all legitimate efforts to ameliorate the breach-induced harm-be it compliance with legislatively imposed mandates, investment in a proposed private storage facility, or the expenditure of labor and overhead resources-are recoverable so long as the court finds them reasonable.

In order to succeed with its offset argument, *the government* would have to establish that Dairyland's interests in GFT or PFS have some value beyond providing cover for the government's failure to perform that should be offset from Dairyland's recovery of expenditures on GFT. But such a defense would require a factual determination that would not be appropriate for resolution on a motion for summary judgment. And the government has offered no evidence on this point in its summary judgment papers. Remarkably, on the same page of the government's supplemental brief, it cites contrary testimony from Dairyland's accounting director, Mr. Stubbendick, that Dairyland has assigned a book value of zero to its GFT stock. *See* Govt. Supp. Brf. at 9.

Second, the remainder of the footnote appears to be merely a rehash of the government's argument that the use of a subsidiary structure bars recovery of Dairyland's mitigation expenditures. Dairyland fully addressed this argument in its opposition. *See* Dairyland Opp. at 11-15. At bottom, Dairyland is not seeking compensation for loss of value in either GFT or PFS; Dairyland seeks only reimbursement for Dairyland's own expenditures on PFS, which happen to have been made through GFT.

The remainder of the government's supplemental brief merely repeats its arguments that *Indiana Michigan Power Co. v. United States* has already held that expenditures on PFS are unrecoverable as a matter of law because the venture was either unforeseeable or unreasonable. *See* Govt. Supp. Brf. at 7-10. Dairyland has already dealt with these arguments thoroughly in its opposition to the government's motion. *See* Dairyland Opp. at 15-28.

For the foregoing reasons, and those set out in Dairyland's opposition to the government's motion, the government's motion for partial summary judgment regarding PFS-related damages should be denied.

Respectfully submitted,

January 22, 2008

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP
*WDC 371,563,733v1 1/22/2008*