IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: February 4, 2008

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S REPLY ON MOTION TO COMPEL
PRODUCTION OF DOCUMENTS WITHHELD ON CLAIMS
OF THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

The government's opposition to Dairyland's motion to compel and declarations formally invoking the presidential communications privilege wrongly attempts to reargue issues this Court has long ago resolved in its prior rulings in this case addressing the presidential communications privilege, including in its recent published opinion. The government's repeated refusal to abide by this Court's rulings is not only disrespectful but it also is hugely wasteful of the time and resources of the Court and parties. The Court should emphatically reject these arguments.

The government does not even attempt to distinguish the five documents at issue in the present motion from the five this Court addressed in its December 19 Order, and there is no reason to treat them differently. Moreover, the more detailed description of these documents supplied by the government in its opposition support a conclusion that these documents are not even covered by the presidential communications privilege. But even if the Court were to conclude that these documents are covered, the government fails to offer any particularized reason for withholding them in light of Dairyland's

showing of need. Accordingly, this Court should continue following the path set out in *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), and review the documents *in camera* and direct the government to produce all relevant parts to Dairyland (subject to the confidentiality protective order).

1. Dairyland Has Established Need for the Documents

This Court's December 19 Opinion and the government's detailed descriptions of the documents supplied with its opposition confirm that Dairyland has established sufficient need for the documents to overcome any claim of the presidential communications privilege. In its December 19 Opinion, the Court reiterated that the *In re Sealed Case* test for need governs this situation. *Dairyland Power Coop. v. United States*, 79 Fed. Cl. 659, 667 (2007). The Court then went on to conclude "that the documents appear highly relevant in this case." *Id.* at 668. More specifically, the Court noted that the documents address "interim fuel storage" and that such documents are relevant to the reasonableness of Dairyland's mitigation expenditures for participation in Private Fuel Storage. *Id.* ("Whether Dairyland's efforts to mitigate its damages by pursuing private fuel storage were reasonable is a central point of contention in this case. These documents may, therefore, shed light on the reasonableness of these efforts."). All five of the documents at issue in the present motion also address interim storage of spent fuel. The descriptions of the documents provided in the government's opposition admit as much regarding E112, E153, E163 and E165. *See* Govt. Opp. at 14-15. The government's description of E156 curiously does not mention interim storage. *Id.* This failure is curious because the declaration under penalty of perjury of Mr. Milner, supplied by the government, does make clear that this document also addresses interim storage. *See* Milner Declaration ¶ T appended to Dairyland's Motion to Compel. The

government's gripe that the documents do not "specifically" address PFS, rate of acceptance or priority acceptance from shutdown reactors, Govt. Opp. at 16, is utterly beside the point. The documents do specifically address interim storage, which certainly is pertinent to PFS. And in addition to the reasonableness of Dairyland's expenditures to participate in PFS, the government's discussion of interim storage may also reveal the government's views regarding a reasonable acceptance rate at such a facility and the appropriateness of according priority acceptance at such facilities to spent fuel from permanently shutdown nuclear reactors such as Dairyland's.

Dairyland cannot be expected to make any more specific showing regarding the relevance of the documents, since Dairyland hasn't seen them. Consistent with *In re Sealed Case*, the appropriate procedure is for the Court to review the documents *in camera* to ensure that all portions "that might reasonably be relevant to" the key issues in this case are produced. 121 F.3d at 762 ("On remand, the district court should identify and release specific items of evidence that might reasonably be relevant to the grand jury's investigation . . .").

The government's repeated references to the statement of Dairyland's counsel at the January 11, 2008 hearing regarding an expectation that release of these documents would be unlikely to cause Dairyland to want to depose officials that it has not previously deposed in this case in order to get to trial in March 2008, Govt. Opp. at 17, n.10; 21; 24, says nothing about Dairyland's need for these documents. The *In re Sealed* standard adopted by the Court is based the relevance of the documents and the availability of the information from other sources. It does not attempt to assess a party's desperation for the documents measured by a willingness to delay trial. Moreover, the Court decided to delay trial; thus, counsel's statement is entirely inapposite. The government's reliance on

the statement of counsel regarding a willingness to sacrifice some modest amount of additional discovery to get to trial in March 2008, Govt. Mot. at 30-31, is particularly inappropriate, because the next words of counsel as reflected in the succeeding paragraphs of the transcript from those quoted by the government make clear that Dairyland was not prepared to sacrifice its entitlement to the 10 documents being withheld pursuant to claims of the presidential communications privilege. *See* Hrg. Tr. at 9-11, appendix to Govt. Opp. at 24-26.

It is also beyond serious dispute that Dairyland cannot obtain the information in the disputed documents elsewhere. Regarding the five documents addressed in the Court's December 19 Order, the Court explained that the documents "may contain statements by senior Government officials on issues specifically pertinent to this case that are not publicly available . . . 'it is the documents themselves, authored by [G]overnment officials, rather than only the factual information in the documents, that makes them uniquely important and certainly not obtainable elsewhere.'" 79 Fed. Cl. at 668, quoting Dairyland's Statement of Need. The government makes no effort to distinguish the five documents at issue here from the five documents addressed in the Court's December 19 Order on this issue, and there is no way to distinguish them.

2. <u>Dairyland is Entitled to All Relevant Portions of the Documents</u>

Consistent with *In re Sealed Case*, now that Dairyland has established sufficient need for the documents (by demonstrating their relevance and unavailability elsewhere), Dairyland is entitled to all relevant portions of the documents. The government argues that the Court should now conduct a balancing of Dairyland's interest in the documents against the government's interest in confidentiality. Govt. Opp. at 22. The government's argument is contrary to *In re Sealed Case* and not supported by any other authority. As

recognized by this Court in its December 19 Order, the D.C. Circuit's test sets the standard "to *overcome* a claim of presidential privilege . . ." 79 Fed. Cl. at 666 (emphasis added), quoting *In re Sealed Case,* 121 F.3d at 754, not merely to engage in further balancing. This understanding of that case is confirmed by the D.C. Circuit's handling of the documents at issue there:

> [T]he OIC has demonstrated that it is likely the subpoenaed documents contain important evidence that is not available elsewhere. On *in camera* review, the district court should isolate and release all evidence that might reasonably be relevant to the question [at issue] . . . .We therefore hold that the OIC has demonstrated sufficient need in order to overcome the presidential communications privilege . . .. On remand, the district court should identify and release specific items of evidence that might reasonably be relevant [to the question at issue]."

*Id.* at 761-62. Following *In re Sealed Case,* this Court should do the same here.

Although the government relies on *Lardner v. United States Dep't of Justice,* 2005 WL 758267 (D.D.C. March 31, 2005), Govt. Opp. at 22, it should not be surprising that *Lardner* is not contrary to *In re Sealed Case,* since it is from the district controlled by that decision.[1] In *Lardner,* the Court did not undertake a balancing after finding that the *In re Sealed Case* test for overcoming a claim of the presidential communications privilege had been met. In the statement referenced by the government, the district court was merely noting that the presidential communications privilege is a qualified privilege that must yield in certain circumstances. *Id.* at *13. In that FOIA case, the court did not even consider whether the party seeking to overcome the privilege had met the *In re Sealed Case* test. Rather, the requesting party sought a ruling that because the documents at issue were 15 years old, the privilege should no longer be deemed to apply. *Id.* The district court declined to issue such a new and broad rule.

---

[1] The Westlaw number referenced by the government for this case is incorrect.

Out of respect for the President, this Court has permitted the government to submit a formal invocation of the privilege. 79 Fed. Cl. at 669. Beyond accordance of that respect for the President, if this Court is to follow the path set out by *In re Sealed Case*, there can be no practical affect to that formal invocation, because Dairyland has already clearly met the *In re Sealed Case* standard for overcoming a formal claim of the privilege.

Furthermore, although the Court has given the government the opportunity to use its formal invocation of the privilege for "justifying specific objections to Dairyland's requests," 79 Fed. Cl. at 669, the government has offered no such "specific objections." The government has proffered a declaration from Fred Fielding to formally invoke the privilege. Beyond the formal invocation of the privilege, Mr. Fielding's justification for withholding the documents is limited to a single paragraph. *See* Fielding Declaration ¶ 6, appendix to Govt. Opp. at 3. In that paragraph, Mr. Fielding offers no specific objections for withholding the 10 documents at issue. Rather, Mr. Fielding merely notes the standard, generalized justification for the presidential communications privilege. Importantly, Mr. Fielding's justification for withholding fails to take into account the fact that Dairyland has only sought disclosure subject to the confidentiality afforded by this Court's protective order. Mr. Fielding compares his generalized desire for confidentiality against a situation where the documents are "publicly disclosed. . . ." But no public disclosure is at issue here. It is also notable that Mr. Fielding did not even bother to review the 10 documents at issue here but merely relied on a description of them supplied by DOE and consultation with a member of his staff who reviewed the documents. *See* Fielding Declaration ¶ 4, appendix to Govt. Opp. at at 2. The government is hardly in a position to allege specific objections and harm from the limited disclosure of these 10

documents when the government official invoking the privilege did not even bother to take the time to review the documents.

The Smith declaration provides no further support for the government's privilege claims. By its terms, the Smith declaration merely purports to describe the documents withheld rather than attempting to justify their withholding.

3. The Presidential Communications Privilege Does Not Apply

As Dairyland explained in its reply to compel the production of the five documents addressed in the Court's December 19 Order, the privilege does not apply to communications "regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d at 752 (emphasis added). As Dairyland has explained, the NWPA vests authority regarding interim storage of spent fuel (the subject matter of the documents at issue here) with the Secretary of Energy, not the President. *See, e.g.,* 42 U.S.C. § 10155 (provided now expired authority for Secretary to provide interim storage capacity); 42 U.S.C. § 10162(b) (authorizing Secretary to site, construct and operate a monitored retrievable storage facility subject to various conditions); 42 U.S.C. § 10222(a)(1) (authorizing Secretary to enter into spent fuel disposition contracts).

The government attempts to link consideration of interim storage as calling for direct decisionmaking by the President by citing *INS v. Chadha*, 462 U.S. 919, 947-48 (1983), for the proposition that the President has an "active role in the lawmaking process." Govt. Opp. at 23. But the active role referred to by *Chadha* is not generalized consideration of potential legislation; rather, *Chadha* refers specifically to the President's veto power. Here, the government's detailed descriptions of the 10 documents at issue in the declaration of Susan Smith give no hint that a presidential veto of any legislation was

at issue in the documents. The government asserts further that the documents address "matters *requiring* a decision by President Clinton." Govt. Opp. at 23 (emphasis added). But this assertion of the government's trial counsel is not supported either by statute or by the declarations proffered in support of the claim of privilege. As explained above, the NWPA does not *require* a presidential decision regarding interim storage. Moreover, the declarations from Mr. Fielding and Ms. Smith do not describe any of the documents as addressing a decision requiring a presidential decision or even that President Clinton ever made any decision in light of the withheld documents. In fact, the government's declarations do not identify any specific decision to be made by the President. Instead, the documents merely reflect deliberations to develop potential advice for President Clinton. Therefore, these documents do not meet the "ultimately call for direct decisionmaking standard" established by *In re Sealed Case.*

In addition, the government has not met its burden of establishing that (with one exception) the withheld documents were received by immediate presidential advisers within the Office of the President to qualify for the protection of the privilege. The D.C. Circuit has emphasized that only communications "'solicited *and received'* by the President or his immediate White House advisers who have 'broad and significant responsibility for investigating and formulating advice to be given the President'" is protected by the privilege. *Judicial Watch, Inc. v. Dep't of Justice,* 365 F.3d 1108, 1114 (D.C. Cir. 2004), quoting *In re Sealed Case*, 121 F.3d at 752 (emphasis added). The D.C. Circuit went on to caution that "[f]urther extension of the privilege to [agency] documents that never make their way to the Office of the President on the basis that the documents were created for the sole purpose of advising the President . . . is unprecedented and unwarranted." 365 F.3d at 1116-17. The D.C. Circuit explained that

the Office of the President is distinct and much narrower than the Executive Office of the President. 365 F.3d at 1109, n.1.

Here, the government does not establish (or even allege) that (with one exception) the withheld documents were *received* by officials in the Office of the President. The descriptions of most of the documents in the declaration of Susan Smith refer to receipt only by officials in the broad Executive Office of the President (including the Office of Management and Budget, the National Economic Council, the White House Council on Environmental Quality and the White House Office of Legislative Affairs) or, more vaguely, "the White House." Declaration of Susan Smith, ¶ 4, appendix to Govt. Opp., at 8-14. Ms. Smith's declaration only notes contact with officials in the Office of the President that might qualify for the protection of the privilege in three instances. Declaration of Susan Smith, ¶ 4.a, 4.c and 4.d (referring to involvement of the Office of the White House Chief of Staff), appendix to Govt. Opp. at 8-11. And in only one of these three instances (E171, the document referenced in ¶ 4.d.) does Ms. Smith claim that the document was *received* (as opposed to being requested by the Office of the Chief of Staff (¶ 4.c), or having its "contents" "conveyed" to the President). But as explained in *Judicial Watch*, for the privilege to apply to a communication, the communication itself must be received by the Office of the President. 365 F.3d at 1116-17.

For these reasons, consistent with its December 19 Order and *In re Sealed Case,* the Court should review the withheld documents *in camera* and direct the production to Dairyland of all portions that are relevant to the issues in this case.

Respectfully submitted,

February 4, 2008

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP
*WDC 371,568,139v1 2/4/2008*