No. 04-106C
(Chief Judge Damich)

Electronically Filed: February 14, 2008

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

DAIRYLAND'S MOTION TO ESTABLISH DUE DATE FOR MOTIONS *IN LIMINE* REGARDING EXPERTS AND REQUEST FOR EXPEDITED CONSIDERATION

---

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

## TABLE OF CONTENTS

Background ........................................................................................................ 1

Discussion ........................................................................................................ 7

Conclusion ........................................................................................................ 12

## INDEX TO APPENDIX

Motion in limine in Pacific Gas and Elec. Co. v. United States,
No. 04-74C, filed May 15, 2006 ........................................................................ A1

Order on Motion in limine in Pacific Gas and Elec. Co. v. United States,
No. 04-74C, dated May 25, 2006 ........................................................................ A3

# TABLE OF AUTHORITIES

## Federal Cases

*Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413 (Fed. Cir. 1997) ......... 7, 8

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ............... 1

## Federal Rules

RCFC 16(b)............................................................................................................. 1

RCFC 26(b)(5) ......................................................................................................... 3

RCFC 53 ................................................................................................................. 4

## Other Authorities

*Pacific Gas and Elec. Co. v. United States*, No. 04-74C, filed May 15, 2006 ................. 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S MOTION TO ESTABLISH DUE DATE FOR MOTIONS *IN LIMINE* REGARDING EXPERTS AND REQUEST FOR EXPEDITED CONSIDERATION

Pursuant to RCFC 16(b), Dairyland respectfully moves the Court to establish a due date for motions *in limine* addressing expert witnesses. Specifically, Dairyland moves the Court to set February 29 as the due date for such motions and March 21 as the due date for responses. Dairyland is concerned that trial could be delayed further given the current absence of a deadline for such motions.

In light of the nature of this motion, Dairyland respectfully requests that it be given expedited consideration.

Background

Through no fault of Dairyland, trial of this case has been delayed three times. After the Federal Circuit issued its decision in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), the parties initially agreed in late 2005 that the Court should schedule trial in 2007. *See* Joint Status Report filed September 30, 2005. In a subsequent Joint Status Report, Dairyland emphasized the need for a firm trial date to prevent discovery from expanding and costs from rising. *See* Report filed January 20,

2006 at 7. The government then changed from the position it took in the September 30, 2005 filing and backtracked to an older position favoring an indefinite stay of proceedings pending decisions in a number of other spent fuel cases before the Court, but agreed that a trial in the Fall of 2007 would be appropriate if the cases were not stayed. *Id.* at 11. Dairyland emphasized the need for a firm trial date at the Court's February 8, 2006 status conference. *See* Tr. at 41-42. The Court agreed with Dairyland, and by Order dated May 1, 2006, the Court scheduled discovery to start on August 28, 2006 and trial to begin fourteen months later on October 29, 2007. Dairyland then served its one and only request for the production of documents on fact issues and its only set of interrogatories on October 10, 2006.[1]

Unfortunately, more than 16 months later, due primarily to remarkable government recalcitrance in responding to Dairyland's discovery requests, the Court is still addressing Dairyland's entitlement to documents sought in that one set of document requests. After the government initially opposed producing virtually any documents (not produced previously in other spent fuel cases) in response to Dairyland's requests and also opposed permitting Dairyland to take any depositions, the Court had to issue Orders compelling discovery, and did so promptly on January 29 and February 5, 2007. The parties agreed to a revised pretrial schedule in light of those developments, and Dairyland emphasized in submitting that proposal that the October 2007 trial date could and should be maintained. *See* Unopposed Motion for Revised Pretrial Schedule, filed February 14, 2007. Nevertheless, the Court determined that a delay of trial was necessary in light of

---

[1] Dairyland subsequently served a second request for documents related solely to expert issues. That request has not been the subject of any discovery motions.

the delays caused by the government's failures to cooperate in discovery, and the Court moved the trial to January 28, 2007 by Order of March 27, 2007.

By the Summer of 2007, notwithstanding the Court's February 5, 2007 Order compelling the production of documents by March 9, 2007 (the Court subsequently extended that deadline twice, to March 23 and then to April 6, 2007 by Orders dated March 9 and March 28, 2007 respectively) and RCFC 26(b)(5)'s requirement that claims of privilege be made expressly, it became apparent that the government was withholding a large volume of documents responsive to Dairyland's document requests and the Court's February 5, 2007 Order without ever having served Dairyland with a privilege log or otherwise expressly claiming privilege over such documents. *See* Joint Status Report filed July 20, 2007 at 2; Tr. of Hrg. of August 7, 2007 at 46-50; Notice of Authority filed August 13, 2007. The government did not produce a privilege log until September 17, 2007. *See* Tr. of Hrg. of September 20, 2007 at 7. That log was massive, revealing 1,496 withheld documents. *Id.* at 9. Nevertheless, the parties reached agreement on a pretrial preparation schedule that the Court adopted that would have maintained the January 28, 2008 trial date. *See* October 3, 2007 Joint Proposal for Pretrial Preparation Schedule and Order of October 5, 2007. That schedule addressed motions *in limine* in greater detail than the draft pretrial preparation order provided on the Court's web site by specifying a due date for responses to such motions and explicitly foregoing replies on such motions. *See* Joint Proposal at 3-4; Order of October 5, 2007 at 4. Under that agreed schedule, motions *in limine* and responses were to be filed 56 and 38 days before trial respectively. *Id.*

The Court attempted to maintain the January 28, 2008 trial date. In order to attempt to address the large volume of privilege claims (and numerous other claims of privilege asserted by the government) and maintain the January, 28, 2008 trial date, the Court seriously considered the appointment of a special master to expedite the review of these documents. *See* Tr. of Hrg. of September 20, 2007 at 15-16. However, the government opposed the appointment of special master. *See* Tr. of Hrg. of October 17, 2007 at 3-5. In addition, the government refused to waive the opportunity to challenge the Special Master's decisions regarding discovery pursuant to RCFC 53. *See* Defendant's Response to Court Order filed October 19, 2007. Rather, the government moved to delay trial. *See* Defendant's Motion to Reschedule Trial filed October 19, 2007. At a hearing held on October 19, 2007, the Court stated that it could not maintain the January trial date and resolve the government's claims of privilege over documents responsive to Dairyland's requests served more than a year earlier. *See* Tr. of Hrg. at 10-11. Instead, the Court suggested that it could resolve the discovery issues and hold trial starting March 24, 2008, though the Court indicated a preference for even later trial dates. *Id.* at 11.[2]

Faced with these options, Dairyland pushed for the earliest possible trial date consistent with receiving the benefit of the discovery to which it has been entitled and had been seeking for more than a year. *See* Tr. of Hrg. of October 22, 2007 at 4-5. Accordingly, the Court moved the trial date to March 24, 2008. *See* Order of October 31,

[2] The Court noted at that hearing that a July or September 2008 trial would be more convenient to the Court. Tr. Hrg. of October 19, 2007 at 14-15. At a hearing on October 22, 2007, the Court maintained the availability for a March 24, 2008 trial but again noted a first preference for a September 2008 trial and second preference for a July 14, 2008 trial. *See* Tr. Hrg. of October 22, 2007 at 3-4.

2007. In addition, the Court implemented the parties' agreed-to pretrial preparation schedule designed to achieve the March 24, 2008 trial date. *See* Joint Proposal for Revised Pretrial Preparation Schedule, filed October 29, 2007 at 1; Order of October 31, 2007. During the October 22, 2007 hearing, Dairyland's counsel noted that, given past experience in the spent fuel cases, it is likely that the parties will file motions *in limine*, and the Court made clear that it was important that the pretrial schedule did not result in the Court's time to address motions *in limine* being "crunched." Tr. of Hrg. of October 22, 2007 at 10-11. Accordingly, the parties agreed to and the Court adopted a revised pretrial preparation schedule (for the March 24, 2008 trial) that set a due date for motions *in limine* of 55 days before trial with responses to be filed 38 days before trial. Order of October 31, 2007 at 3. The Court scheduled a hearing on such motions for 26 days before trial. *Id.* An important premise for keeping the March 24, 2008 trial date was the expectation that the Court would resolve the government's privilege claims by December 21, 2007. *See* Tr. of Hrg. of October 22, 2007 at 3. The Court obviously could not guarantee that it would resolve all of the issues by a date certain, but it noted that it had "every reason to believe" that it would resolve the motions by that date. *Id.* at 8-9.

In the next two months, the Court addressed a significant number of the government's claims of privilege, and some other discovery matters. *See* Orders of November 20 and December 10, 18, 19 and 21, 2007. Nevertheless, a number of the government's claims of privilege and the government's motion for partial summary judgment regarding PFS-related damages remain unresolved. *See* Order of January 14,

2008 (listing motions).[3] The Court then scheduled a status conference for January 11, 2008 to discuss the March 24, 2008 trial date. *See* Order of January 3, 2008. During the status conference, Dairyland indicated a willingness to forego further efforts to resolve the government's claims of privilege in order to maintain the March 24, 2008 trial date, but unlike the situation in October 2007, the Court did not provide Dairyland any option for maintaining the March trial date. Instead, the Court decided to vacate the March trial date and rescheduled trial for July 7, 2008. *See* Order of January 14, 2008.

The Court's concern with having adequate time to address motions *in limine* played a significant role in this most recent delay of trial. The Court emphasized that it viewed the due date for motions *in limine* as "most important." *See* Tr. of Hrg. of January 11, 2008 at 6. The Court also again voiced concern that it not be "squeezed" in its work to address motions *in limine*, *id.* at 11, especially since it is the Court's typical practice to resolve motions *in limine* before trial. *Id.* at 21. At the hearing, Dairyland's counsel suggested that in order to avoid similar problems with the July 7, 2008 trial date, that the Court establish due dates for motions *in limine* that would provide the Court with more time to address them before trial. *Id.* at 28. The Court clearly favored this suggestion, noting that ". . . it probably would be wise then to allow more time for the disposition of those motions *in limine*." *Id.* at 35.

---

[3] The Court did address the PFS motion on December 21, 2007 in a manner that expressed skepticism regarding that motion. *See* Order of December 21, 2007. But instead of simply denying the government's motion, the Court granted the government another round of briefing. Similarly, the Court addressed the presidential communications privilege claims before December 21, 2007 in a manner that clearly indicated that Dairyland should receive those documents. *See* Order of December 19, 2007 at 12-13 (finding that Dairyland has established sufficient need for the documents and that the information was not available to Dairyland elsewhere). Yet again, rather

The Court's January 14, 2008 Order rescheduling trial, however, does not establish, much less advance, the due dates for any motions *in limine*. Instead, the Order vacated the October 31, 2007 pretrial preparation schedule in its entirety and stated that a new pretrial schedule would not be established until the Court had resolved the pending motions listed in the Order and scheduled a status conference to address further proceedings. *See* January 14, 2008 Order.

Discussion

Because the past delays of trial have been very costly and prejudicial to Dairyland and any further delay of trial would significantly compound these costs and prejudice, it is important that all reasonable steps be taken to minimize the risk of any further delay of trial. The Federal Circuit summed-up well the impact of trial delays on plaintiffs in a single sentence: "With the passage of time, memories will fade, litigation costs will balloon, and resolve will dwindle." *Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413, 1418 (Fed. Cir. 1997). Dairyland is already suffering significantly from these problems. The memories of at least one potential witness are not as sharp as they once were. A likely Dairyland witness is planning to retire before July 2008 and has faced serious health concerns. One of Dairyland's expert witnesses recently changed jobs, which could, in the future, make continued work on this matter awkward. More generally, as the plaintiff bearing the ultimate burden of proof, Dairyland is well aware that life is uncertain and that with the continued passage of time other events may transpire that could negatively impact its ability to prove its case.

---

than simply ordering the release of the documents, the Court permitted the government the opportunity to make a further submittal regarding its claims of privilege. *Id.* at 13-14

Regarding litigation costs, Dairyland has already incurred millions of dollars in attorney fees, expert fees and other costs. And Dairyland is facing well over a million dollars in additional costs to see this case through trial. Importantly, each delay of trial causes these costs to rise for at least two independent reasons. First, there is a significant loss of efficiency in working toward trial when trial is delayed. Work preparing for trial gets stopped and restarted, and with each such instance, extra time, effort and, thus, legal expense is incurred to get back up to speed on the matter. This problem is acute at the present time, because Dairyland, mindful of the deadlines in the October 31, 2007 pretrial preparation order leading to the March 24, 2008 trial date (including a January due date for motions *in limine*), has already substantially "geared-up" for trial. Putting that work aside and then picking it up two months hence requires significant duplication of effort – and thus added legal expense – when the work resumes. In addition, attorneys and other individuals working on the case leave, and additional expense gets incurred to bring new individuals up to speed on the case. It is no exaggeration to estimate that these delays of trial have cost Dairyland hundreds of thousands of dollars for this reason. Second, each delay of trial permits more issues to arise, which necessitate more attention from counsel and, thus, more litigation expense to Dairyland. Consistent with the observation of the Federal Circuit in *Cherokee Nation,* experience has taught us that especially in large-stakes, hard-fought litigation such as this case, with the passage of additional time it is almost inevitable that the parties will raise issues requiring additional attention by counsel and the Court.

In addition, with each passing day, and in light of the unavailability of pre-judgment interest in cases such as these, Dairyland is seeing the value of its claim

dwindle. Dairyland is seeking approximately $50 million in this action for costs that it has already incurred and paid. Even at a very conservative interest rate of five percent, each month of delay is costing Dairyland more than $200,000, thousands of dollars per calendar day. It is terribly unfair for Dairyland to suffer such a gradual loss of value of its claim (in addition to the very large additional litigation costs noted above), through no fault of its own. These amounts are very significant to Dairyland. The plaintiff is a small, rural electric cooperative; it is perhaps the smallest entity to hold ultimate ownership of a current or former commercial nuclear power plant in this country. And because of the cooperative structure of Dairyland and its member cooperatives, these costs are borne directly by the electric customers Dairyland serves.

Moreover, Dairyland is concerned that the special duties of the Court as Chief Judge and other calendar issues have the potential to further delay trial and decision of Dairyland's case.[4] As the Court informed the parties during the January 11, 2008 status conference, the transition to a new Clerk of Court has the potential to demand substantial attention from the Court. In addition, Dairyland is aware that the Court is scheduled to try another matter in June 2008. The scheduling of that trial and other matters related to that litigation have the potential to hinder the Court's ability to address motions *in limine* and other issues in this matter in April and May. A further delay of trial beyond July 7, 2008 would compound the already unfortunate and unfair prejudice to Dairyland.

Accordingly, it is more than appropriate for the Court to take all reasonable steps to avoid any further delay of trial. Setting deadlines now for motions *in limine* and

---

[4] Frankly, prior to the most recent status conference on January 11, Dairyland's counsel did not appreciate the extent to which the Court's duties as Chief Judge may impinge on case-specific duties.

responses regarding expert witnesses to provide the Court with ample time to address those motions is such a reasonable step. First, the setting of a due date could forestall further delay of trial. Experience in the spent fuel cases is that the parties are likely to file a number of motions *in limine* regarding expert witnesses. That experience has also been that motions *in limine* concerning fact witnesses and exhibits have been filed much less frequently. The only motion *in limine* addressing exhibits of which Dairyland is aware has been a repetitive motion by the government (that has regularly been denied by the Court) arguing that certain documents linked to government contractors are not admissions under Fed. R. Ev. 801(d) and, thus, subject to hearsay objections. *See, e.g.*, Motion *in limine* in *Pacific Gas and Elec. Co. v. United States,* No. 04-74C, filed May 15, 2006 (excerpt attached at A1-A2), denied as noted in Order of May 25, 2006 at 6 (excerpt attached at A3-A7). Under the January 14, 2008 Order, the filing of motions *in limine* regarding expert witnesses could get delayed indefinitely while the Court addresses the motions listed in the Order. But if the Court establishes a due date for motions *in limine* regarding expert witnesses now, briefing on those motions could be completed while the Court is addressing the other motions thus maximizing the amount of time available to the Court to address the expected bulk of the motions *in limine*, which will address expert witnesses.

Second, there is no reason why the parties cannot file motions *in limine* regarding expert witnesses in short order. Expert discovery, including expert witness reports and depositions was completed months ago. And at the time of the January 11, 2008 status conference during which the Court decided to delay trial, the due date for motions *in limine* was only 18 days away; thus, the parties' work on such motions should have been

well underway. Indeed, Dairyland will be fully prepared to file its motions *in limine* regarding expert witnesses by the February 29, 2007 due date it suggests here. The government's counsel of record has voiced concern that he cannot work on motions *in limine* in this case until pretrial briefing is completed in another spent fuel case. But this government position is unreasonable and is calculated to delay this matter further, as counsel presumably always has other matters on which to work. The government has shown repeatedly that it is capable of meeting deadlines if it is required to so.

Dairyland attempted to reach agreement with the government on this motion to no avail. Dairyland first proposed setting due dates for all motions *in limine* and responses. The government objected on the ground that it might want to include in its motions *in limine* documents addressed in the pending motions to compel the production of documents. Dairyland believed that this concern was overstated and that the small possibility that it would be appropriate to include such documents in a motion *in limine* could be accommodated without delaying other briefing on motions *in limine*. Nevertheless, in an effort to reach agreement, Dairyland proposed the current motion to at least set due dates for motions *in limine* and responses regarding expert witnesses. The government's continued objection (on the ground that briefing such motions now would not necessarily advance the case) is telling. The government cannot seriously contend that it would have any difficulty preparing its motions and responses now. Rather, the government's position appears calculated to "crunch" the Court's time to address motions *in limine*, thereby increasing the chances of a further delay of trial prejudicial to Dairyland.

## Conclusion

For the foregoing reasons, the Court should establish February 29, 2008 and March 21, 2008 as the due dates for motions *in limine* and responses respectively addressing expert witnesses.

Respectfully submitted,

February 14, 2008

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

# APPENDIX

No. 04-0074C
into which has been consolidated No. 00-0075C
(Judge Hewitt)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS AND PROTECTIVE MOTION TO EXCLUDE ALL DOCUMENTS REGARDING THE STANDARD CONTRACT UPON PLAINTIFF'S EXHIBIT LIST

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
SHARON A. SNYDER
JOSHUA E. GARDNER
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 15, 2006

**TABLE OF CONTENTS**

**PAGE(S)**

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. DOCUMENTS PREPARED BY CONTRACTORS OF THE DEPARTMENT OF ENERGY ARE NOT GOVERNMENT DOCUMENTS AND SHOULD BE EXCLUDED FROM EVIDENCE AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. ANY ASSERTION THAT FEDERAL RULE OF EVIDENCE 803(8)(A) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY CONTRACTORS FOR THE DEPARTMENT OF ENERGY IS UNSUPPORTABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. A Contractor For DOE Is Not An "Agency" Of The United States Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. Because The "Contractor" Documents That PG&E Identified as Trial Exhibits Were Not Prepared Or Adopted By The "Agency," They Are Not Admissible Under Federal Rule Of Evidence 803(8)(A) As Public Records Or Reports Of The Agency's Activities . . . . . . . . . . . . . . . . . . . 9

C. Even If They Were Somehow Considered Evidence Of The Activities Of The Agency, The Preliminary Nature Of The Documents At Issue Precludes Use Of Federal Rule Of Evidence 803(8)(A) . . . . . . . . . . . . . 14

III. ANY ASSERTION THAT FEDERAL RULE OF EVIDENCE 803(6) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY CONTRACTORS IS UNSUPPORTABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV. ANY ASSERTION THAT "CONTRACTOR" DOCUMENTS CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) CONFLICTS WITH THE ROLE OF CONTRACTORS . . . . . . . . . 19

V. IF THE COURT AGREES WITH PG&E THAT ALL EXHIBITS UPON THE GOVERNMENT'S EXHIBIT LIST THAT CONCERN THE STANDARD CONTRACT AND DOE'S PERFORMANCE UNDER THAT CONTRACT SHOULD BE EXCLUDED, THE SAME CATEGORY OF DOCUMENTS UPON PG&E'S EXHIBIT LIST SHOULD BE EXCLUDED AS WELL . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0074C, into which has been |
| | ) | consolidated No. 04-0075C |
| THE UNITED STATES, | ) | (Judge Hewitt) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL EXHIBITS PREPARED BY GOVERNMENT CONTRACTORS AND PROTECTIVE MOTION TO EXCLUDE ALL DOCUMENTS REGARDING THE STANDARD CONTRACT UPON PLAINTIFF'S EXHIBIT LIST

Defendant, the United States, respectfully requests that the Court enter an order excluding the admission at trial of certain exhibits prepared by contractors for the Department of Energy ("DOE") that are included on the trial exhibit list filed by plaintiff, Pacific Gas & Electric Company ("PG&E), dated May 3, 2006. Attached to this motion is a list of the 57 exhibits from PG&E's exhibit list that the Government has identified as contractor documents.[1] Additionally, in light of PG&E's May 15, 2006, motion to exclude Government exhibits, the Government files a protective motion to exclude all of the pre- and post-Standard Contract exhibits upon PG&E's exhibit list that concern DOE's waste acceptance program or the Standard Contract.

1/ Although the Government has endeavored to identify all "contractor" documents on PG&E's exhibit list, it reserves the right to assert objections at the pre-trial conference or trial to any additional exhibits that it identifies as contractor documents.

# In the United States Court of Federal Claims

No. 04-74C
(into which has been consolidated No. 04-75C)

(E-Filed: May 25, 2006)

PACIFIC GAS AND ELECTRIC COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ORDER

Further to the Pretrial Conference held on May 23 and May 24, 2006, the court orders the following:

1. Admission of Exhibits. As the court has indicated, no exhibits will be admitted after the close of evidence at the close of trial. The court reminds the parties that any exhibit and/or any portion of an exhibit the import of which with respect to one or more issues in the case is not specifically pointed out by a witness at trial may be disregarded by the court in its determination of the case, unless otherwise agreed to by the parties and the court. "Specifically pointed out" means specific mention, with reference to an exhibit number, and to one or more specific page numbers within, or otherwise identifiable portion of, the exhibit, together with an indication of how the evidence supports or disproves a fact in issue. "Specifically pointed out" shall not, except with respect to designated portions of depositions introduced into evidence and exhibits introduced through such designated portions of depositions, include mention for the first time in post-trial briefing. See Transcript of Pretrial Conference (Tr.) at 184:5-187:3.

contain statements made by the Nuclear Regulatory Commission (NRC). See Tr. at 319; infra ¶ 10.

8. Demonstratives and "May Use" Exhibits. With respect to all demonstratives or "May Use" exhibits that the parties plan to use at trial, unless otherwise agreed to by the parties and the court, the parties shall notify opposing counsel at least two (2) business days prior to their planned date of use. The party against whom a demonstrative or "May Use" exhibit will be used shall file with the court any objections to such use at least one (1) business day before the date of the planned use of such demonstrative or "May Use" exhibit.

9. Protective Order. The parties shall treat any documents previously produced that were "inadvertently . . . not identified as containing Confidential Material" in accordance with Paragraph 8 of the court's April 21, 2005 Protective Order.

10. NRC Documents as Admissions. On or before 5/30/06, defendant shall provide the court with a memorandum in support of its hearsay objections to PX 351, 368, and any other exhibits identified by defendant, providing argument, with points and authorities, as to whether documents created by the Nuclear Regulatory Commission (NRC) constitute admissions of the Department of Energy (DOE) under Fed. R. Evid. 801(d)(2) in the context of this case. See TR. at 319:2-22. Plaintiff shall respond to defendant's memorandum on or before 6/1/06. Id.; see Order of May 25, 2006 (Docket No. 266).

11. Brad Cornell Expert Report. Plaintiff stated that it would submit to defendant a revised expert report on damages from Brad Cornell (Cornell report) on Wednesday, May 24, 2006. Any objections to the Cornell report shall be filed by defendant on or before 5/30/06. Any response to an objection shall be filed by plaintiff on or before 6/1/06.

12. Motions in Limine. For the reasons stated at the Pretrial Conference and based on the parties' briefing and argument, the court makes the following orders with respect to the motions in limine before the court: Pacific Gas & Electric's Corrected Motion In Limine to Exclude Warren K. Brewer's Expert Testimony is GRANTED. Pacific Gas & Electric's Motion to Exclude Testimony from John R. McGrath is DENIED. Defendant's Motion In Limine to Exclude Certain Expert Testimony at Trial is GRANTED with respect to the testimony of Frank C. Graves, Ivan Stuart and Michael Meisner, and is otherwise DENIED. Pacific Gas & Electric Company's Motion to Exclude the Testimony of Jonathan A. Neuberger is GRANTED. Pacific Gas & Electric's Motion In Limine to Exclude R. Larry Johnson's Expert Testimony is DENIED. Defendant's Motion In Limine Regarding

Testimony Concerning the Meaning of the Nuclear Waste Policy Act and the Standard Contract is DENIED. Defendant's Motion In Limine to Exclude from Trial Documents Prepared by Government Contractors and Protective Motion to Exclude All Documents Regarding the Standard Contract Upon Plaintiff's Exhibit List is DENIED. Pacific Gas & Electric's Motion to Have the Court Give Full Consideration to Certain Documentary Evidence Relating to Reasonable Performance and GTCC Waste is DENIED.[3]

13. Trial Schedule. The parties shall confer and agree on a revised proposed schedule of witnesses (the "T.V. Guide") and submit it to the court on or before 5/30/06.

14. David Huizenga. David Huizenga shall be called by defendant as a witness at trial.

15. Electronic Equipment in Courtroom. The trial is scheduled to be held in Courtroom 5. The parties are advised that, with respect to the use of electronic equipment in the courtroom, they may contact Mr. Jim Wang, Systems Manager, at (202) 357-6445; and that, with respect to access to the courtroom, they may contract Mr. Henry Nolan, Chief Deputy Clerk for Administration, at (202) 357-6434. Courtroom 5 will be available for set-up all day on Friday, June 2, 2006.

16. Friday, June 2, 2006. If the parties believe it would be helpful for the court to resolve any issues that remain outstanding on the Friday before trial, the parties shall move jointly for the court to conduct a final pretrial conference, which would be expected to be telephonic, on Friday, June 2, 2006 at a time before 11:00 a.m. or after noon to be suggested by the parties.

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

---

[3]The court hopes to have the opportunity to discuss the foregoing rulings, including matters contained in the parties' extensive briefing, in an evidence appendix to the court's trial opinion in this case. See Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 563-75 (2003).

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge