# In the United States Court of Federal Claims

No. 04-106 C
(Filed: February 22, 2008)

************************************
*
**DAIRYLAND POWER COOPERATIVE,** *
*
Plaintiff, *
*
v. *
*
**THE UNITED STATES,** *
*
Defendant. *
*
************************************

## OPINION AND ORDER

On October 5, 2007, Plaintiff, Dairyland Power Cooperative ("Dairyland"), filed "Dairyland's Motion to Compel Production of Documents Withheld On Deliberative Process Privilege, Attorney-Client Privilege And/Or Work Product Doctrine Grounds." ("Pl.'s Mot. to Compel"). On October 24, 2007, Defendant, the United States ("the Government"), filed its response to Dairyland's attorney-client privilege and work product challenges ("Def.'s Resp. of October 24, 2007"), and on October 29, 2007, the Government filed its response to Dairyland's deliberative process privilege challenge ("Def.'s Resp. of October 29, 2007"). Dairyland filed a reply on November 2, 2007, regarding the claims attorney-client privilege and work product doctrine. ("Pl.'s Reply of November 2, 2007). Dairyland filed a second reply on November 8, 2008, regarding the invocation of deliberative process privilege. ("Pl.'s Reply of November 8, 2007").

## I. Background

On October 5, 2007, Dairyland moved the Court, pursuant to RCFC 37(a)(2), to compel the production of documents the Government retained under deliberative process and attorney-client privileges and/or work product doctrine grounds. Dairyland sought the production of 205 documents listed on the Government's "Privilege Log for Dairyland Production," of September 17, 2007 ("Privilege Log of September 17, 2007").[1] According to Dairyland, 27 of the

---

[1]According to Dairyland, on September 17, 2007, the Government produced a "Privilege Log for Dairyland Production" which listed 1,496 documents that the Government withheld based on an assertion of privilege. On September 27, 2007, Dairyland provided a letter and a "Table of Challenges" to the Government identifying the documents that it asserted should be

documents that are withheld on deliberative process grounds should be produced because Dairyland's evidentiary need for the documents outweighs the Government's interest in confidentiality. The remaining documents are being withheld on attorney-client privilege and/or work product doctrine grounds.[2] Dairyland asserts that the remaining documents should be produced because:

> [T]he government has failed to demonstrate, *inter alia*, that (i) these documents constitute or contain communications between government counsel and the government for the purposes of seeking or rendering legal advice, (ii) the documents were created for the purpose of or in anticipation of litigation, and/or (iii) the documents contain any actual litigation work product.

Pl.'s Mot. to Compel at 2.

On October 24, 2007, the Government first responded to Dairyland's Attorney-Client Privilege and Work Product Challenges asserting that Dairyland's motion to compel was without foundation and should be denied in its entirety. According to the Government, "Dairyland's challenges to the sufficiency of the Government's privilege log are so unfounded as to raise the specter of bad faith, " and are further example of Dairyland's efforts "to impose upon the Government discovery obligations in excess of those required under the Rules . . . ." Def.'s Resp. of October 24, 2007, at 2. On October 29, 2007, the Government then responded to the portion of Dairyland's Motion to Compel that related to the deliberative process privilege, asserting that Dairyland has not established a need for the 27 documents at issue and "certainly has not established that its need outweighs [the Government's] proper invocation of the deliberative process privilege." Def.'s Resp. of October 29, 2007, at 3.

On November 2, 2007, Dairyland replied that the Government had not satisfied the elements of the attorney-client privilege and/or work product doctrine. On November 8, 2007, Dairyland replied that contrary to the Government's assertion that Dairyland had not demonstrated sufficient need for the documents withheld under deliberative process privilege, the Court in its Opinion and Order of June 29, 2007, "held that Dairyland had demonstrated

---

produced. The parties then met and conferred to discuss Dairyland's challenges to the Government's assertion of various privileges. On September 21, 2007, this Court issued an Order requiring that Dairyland file any motion to compel by 5:00 p.m. on Friday, October 5, 2007. According to Dairyland, on October 3, 2007, the Government determined that it would not be able to "concede or substantively address" Dairyland's challenges prior to the October 5, 2007, deadline for filing a motion to compel. Pl.'s Mot. to Compel at 2.

[2] Dairyland requests the production of 178 documents that are being withheld under the attorney-client and/or work product doctrine and 27 documents being withheld under the deliberative process privilege, for a total of 205 documents. Dairyland erroneously asserts that they are seeking 203 documents. Pl.'s Mot. to Compel at 1.

sufficient need for documents that concern precisely the same subject matters as the documents that are being challenged here because these types of documents are 'highly relevant' to this litigation." Pl.'s Reply of November 8, 2007, at 1.

## II. The Deliberative Process Privilege

Dairyland seeks the production of 27 documents that are being withheld by the Government on deliberative process privilege grounds.[3] In the Opinion and Order of June 29, 2007, this Court wrote expansively outlining the deliberative process privilege. *Dairyland Power Cooperative v. United States*, 77 Fed. Cl. 330 (2007) (Damich, CJ).[4] On one point of the Opinion and Order of June 29, 2007, both parties generally agree, "the Federal Circuit has said the policy behind the privilege is 'protect[ing] the agency officials' deliberations, advisory opinions and recommendations in order to promote frank discussion of legal or policy matters in the decision-making process.'" *Id*. at 336 (citing *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985)); *see also* Pl.'s Mot. to Compel at 3 and Def.'s Resp. of October 29, 2007, at 5.

There are three procedural requirements for assertion of the deliberative process privilege:

> 1) the agency head must assert the privilege after personal consideration; 2) the agency head must state 'with particularity' the information subject to the privilege; and 3) the agency must aver 'precise and certain' reasons for preserving the confidentiality of the requested document.

*Dairyland*, 77 Fed. Cl. at 336-37 (citing *Walsky Constr. v. United States*, 20 Cl. Ct. 317, 320 (1990)).

In addition to the procedural requirements for assertion of the deliberative process privilege "the information sought to be protected must itself meet two substantive tests: it must be both pre-decisional and deliberative in nature." *Dairyland*, 77 Fed. Cl. at 337 (citing *Abramson v. United States*, 39 Fed. Cl. 290, 294 (1997)). As this Court stated in its Opinion and Order of June 29, 2007, "pre-decisional" means "antecedent to the adoption of an agency policy." *Dairyland*, 77 Fed. Cl. at 337 (citing *Walsky*, 20 Cl. Ct. at 320 (citing *Jordan v. Dep't of Justice*, 591 F.2d at 774)). However, the agency invoking the privilege over a document does not need to

---

[3] Dairyland added a column to the Government's Privilege Log of September 17, 2007, entitled "Ref. No." For the sake of conformity this Court, as did the Government, refers to documents by the Ref. No. given by Dairyland. Def.'s Resp. of October 29, 2007, at 10.

[4] This Opinion and Order addressed the purposes and policies underlying the deliberative process privilege, the procedural and substantive requirements for invoking the deliberative process privilege and the qualified nature of the deliberative process privilege. The Court will not repeat the level of detail of the Opinion and Order of June 29, 2007.

identify a specific decision for which a document was prepared. *NLRB v. Sears, Roebuck* & Co., 421 U.S. 132, 153 n. 18 (1975) ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process."). "Deliberative" means "containing opinions, recommendations, or advice pertaining to agency decisions." *Dairyland*, 77 Fed. Cl. at 337 (citing *Abramson*, 39 Fed. Cl. at 295 (citing *Renegotiation Board v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S. Ct. 1491, 44 L. Ed. 2d 57 (1975))).

Finally, as the Court has previously noted, the deliberative process privilege is not absolute and "[i]n evaluating the applicability of the deliberative process privilege, this Court will consider whether Dairyland's evidentiary need is sufficient to outweigh the Government's interest in confidentiality." *Dairyland*, 77 Fed. Cl. at 338.[5] The Court will once again use the following systematic approach to consider whether Dairyland's evidentiary need is sufficient to outweigh the Government's interest in confidentiality:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Dairyland*, 77 Fed. Cl. at 338 (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) (citation omitted) (quoting *In re Franklin Nat'l Bank Securities Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979))); *see also In re Sealed Case*, 121 F.3d at 737-38.

## III. Evaluation of the Applicability of the Deliberative Process Privilege

### A. Procedural Requirements

#### 1. The Authority to Invoke the Privilege was Properly Delegated to Alan B. Brownstein and Mr. Brownstein Asserted the Privilege After Personal Consideration

On January 29, 2007, the Secretary of the Department of Energy ("DOE"), Samuel W. Bodman, executed "Delegation Order No. 00-002.00G to the Under Secretary," which pursuant to paragraph 1.8 delegated on a nonexclusive basis the assertion of the deliberative process privilege. That same day, the Under Secretary of the Department of Energy, David K. Garman, executed "Redelegation Order No. 00-002.06B to the Director, Office of Civilian Radioactive Waste Management ("OCRWM")," which pursuant to paragraph 1.4 delegated on a nonexclusive

---

[5] The Government contends that Dairyland should be required to show a compelling need; however, the justification for only requiring a sufficient showing of need has been articulated in depth in *Dairyland*, 77 Fed. Cl. at 338-39, and will not be revisited here.

basis the assertion of the deliberative process privilege to the Director of OCRWM. Paragraph 4.1 of the Redelegation Order allowed for further delegation of authority unless “prohibited by law, regulation or this Order.” *See* Def.’s Resp. of October 29, 2007, at A34-46.

On September 27, 2007, Mr. Alan B. Brownstein, Chief Operating Officer, OCRWM, executed a Declaration formally invoking the deliberative process privilege. The Court finds that delegation to Mr. Brownstein was appropriate.[6] As the Court previously observed regarding the redelegation to Mr. Ronald A. Milner, with the redelegation to Mr. Brownstein, “the chain of redelegation is clear, and . . . ‘promotes both efficiency in judicial administration and actual personal involvement in the complex process of invoking the privilege.’” *Dairyland*, 77 Fed. Cl. at 340 (citing *Marriott Int’l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (2006)).

Mr. Brownstein’s asserted the privilege after personal consideration. According to Mr. Brownstein’s Declaration, he was “involved with and familiar with all aspects of DOE’s civilian radioactive waste management program . . . .” Def.’s Resp. of October 29, 2007, at A1. Mr. Brownstein has worked for OCRWM since 1985 and has served as the Chief Operating Officer since May 2006. In paragraph 10 of Mr. Brownstein’s Declaration he stated, “I have spent more than 40 hours reviewing all of these documents . . . the remaining documents . . . are worthwhile to protect since public disclosure could discourage candid discussion within DOE . . . .” Def.’s Resp. of October 29, 2007, at A4-5.

**2. Mr. Brownstein has Stated with Particularity the Documents Claimed to be Privileged**

The Declaration by Mr. Brownstein and the privilege log are sufficient for the Court and the parties to identify the documents the Government seeks to prevent from disclosure. The Government has described the documents, the reason the documents were prepared, and stated with specificity the reason for withholding the document under deliberative process privilege. The Government has not made a blanket assertion of privilege, but has “state[d] with particularity what information is subject to the privilege.” *Walsky, 20* Cl. Ct. at 320.

**3. Mr. Brownstein has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents**

The Declaration of Mr. Brownstein has provided precise and certain reasons for

---

[6] Dairyland does not challenge the Government’s delegation to Mr. Brownstein of the formal invocation of the deliberative process privilege. Dairyland merely states, “assuming *arguendo* that the government has properly invoked the deliberative process privilege as to all these documents (a point Dairyland contests) . . . .” Pl. Mot. to Compel at 5. As the Government points out, beyond Dairyland’s blanket assertion that they contest the Government’s invocation of the deliberative process privilege, there is no mention of any procedural deficiencies in the invocation with respect to the delegation to Mr. Brownstein. Def.’s Resp. of October 29, 2007, at 8.

preserving confidentiality of the documents it seeks to protect. The Government has further supported preserving confidentiality. *See* Def.'s Resp. of October 29, 2007. The Court has previously noted, "if a document is deliberative and predecisional some harm to the consultive process is presumed to result for disclosure." *Dairyland*, 77 Fed. Cl. at 341; *see also Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 U.S. 1060, 149 L.Ed.2d 87 (2001). As this Court did in its Opinion and Order of June 29, 2007, the Court will balance the precise and certain reasons given by the Government for maintaining confidentiality against Dairyland's need for the documents.

**B. Substantive Requirements – The Government has Shown that the Documents are Pre-decisional and Deliberative in Nature**

As the Government has done with previous assertions of deliberative process privilege, a statement of the particular decision or ongoing evaluation that the documents were prepared for is clearly set out in Mr. Brownstein's Declaration. *See* Def.'s Resp. of October 29, 2007, at App. 1-33. This satisfies the requirement that the documents be generated prior to the adoption of agency policy. Mr. Brownstein's Declaration also establishes the deliberative nature of the documents. The descriptions of the document "contain opinions, recommendations, or advice pertaining to agency decisions." *Dairyland*, 77 Fed. Cl. at 341 (citing *Abramson*, 39 Fed. Cl. at 295). The Court finds that the descriptions provided satisfy the requirement that the documents the Government seeks to protect are pre-decisional and deliberative in nature.[7]

**C. Balancing Test**

Having determined that the procedural and substantive requirements have been met for a proper invocation of deliberative process privilege, the Court now must weigh Dairyland's evidentiary needs for these 27 documents against the Government's interest in confidentiality. The Court will once again use the following five-part systematic approach:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Dairyland*, 77 Fed. Cl. at 338 (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992). As with the Opinion and Order of June 29, 2007, factors (iii) the seriousness of the litigation, and (iv) the role of the government in the litigation, are not disputed and are the same for all the documents considered below. The remaining three factors must be evaluated on a document by document basis. If the Dairyland's evidentiary need clearly

---

[7] Dairyland does not argue that the documents the Government has withheld are not pre-decisional and deliberative in nature, rather that Dairyland's evidentiary need for the documents outweighs the Government's interest in confidentiality. *See* Pl.'s Mot. to Compel at 6-8.

outweighs the Government's interest in confidentiality, then the Court will order the document produced. If the potential harm to the Government outweighs Dairyland's evidentiary need then the document shall be protected from discovery. If the Court is unable to determine an obvious result from the privilege log, the Declaration of Mr. Brownstein and the current pleadings, then the Court will be forced to order the Government to provide the documents for *in camera* review. For the sake of clarity, the documents are referred to by the reference number and in the groupings used in Dairyland's Motion to Compel.

Document Ref. No. S183 (Bates-Stamped CTR5970556 - CTR5970556) need not be produced. It is a one page email addressing analysis of the potential for accelerated acceptance of spent nuclear fuel ("SNF") and accelerated development of SNF storage and disposal facilities to support the development of Yucca Mountain. The email is pre-decisional and deliberative in nature. The email may be relevant to Dairyland's case; however, because it contains advice to support the development of Yucca Mountain, Dairyland's evidentiary need is insufficient to outweigh the Government's interest in preserving confidentiality.

Document Ref. No. S184 (Bates-Stamped CTR5970654 - CTR5970701) shall be produced. It is a draft presentation prepared by OCRWM personnel regarding the transportation and waste acceptance program to support the Yucca Mountain project. The transportation and acceptance of SNF appear highly relevant to the present litigation. Additionally, the Government states that "Dairyland has failed to establish that production of this document would not be cumulative in light of the massive amount of previously-produced material that addresses OCRWM's transportation and waste acceptance programs." Def.'s Resp. of October 29, 2007, at 13. In claiming that the document is cumulative, the Government undermines the argument that a chilling of internal deliberations would result from there disclosure. It is unlikely that disclosure of this substantially similar document under the amended protective order will result in any additional future timidity by government employees.

Documents Ref. Nos. S428 (Bates-Stamped HQR4921264 - HQR4921279), S1035 (HQR6130953 - HQR6130968), S1139 (HQR6650001 - HQR6650005), S1141 (HQR6700002 - HQR6700013), S1142 (HQR6700015 - HQR6700026), S1143 (HQR6700028 - HQR6700039), and S1144 (HQR6700041 - HQR6700053) need not be produced. They are outlines or whitepapers that address scheduling of SNF acceptance. The scheduling of SNF acceptance is highly relevant to the present litigation; however, Mr. Brownstein's Declaration states that the documents "discuss approaches for legislative initiatives, detailing the advantages and disadvantages that would benefit the Department in its efforts to begin accepting SNF . . . ." Documents that discuss proposals for policy initiatives to benefit the Department are pre-decisional and deliberative in nature and Dairyland's need is insufficient to outweigh the Government's interest in preserving confidentiality.

Documents Ref. Nos. S605 (Bates-Stamped HQR5050225 - HQR5050228), S606 (HQR5050229 - HQR5050233), S607 (HQR5050268 - HQR5050282), S609 (HQR5050963 - HQR5050981), S610 (HQR5051034 - HQR5051035), S611 (HQR5051036 - HQR5051038), S612 (HQR5051040 - HQR5051043), S613 (HQR5051045 - HQR5051049), S615 (HQR5051056 - HQR5051060), S616 (HQR5051061 - HQR5051064), S617 (HQR5051065 -

HQR5051072), S618 (HQR5051073 - HQR5051079), and S619 (HQR5051083 - HQR5051089) need not be produced. They are draft memoranda and policy proposals concerning interim storage options for SNF, with the exception of S607 a draft presentation discussing OCRWM's schedule and strategy options to allow for the acceptance of SNF at Yucca Mountain. According to the Declaration of Mr. Brownstein, the documents address potential ways that interim storage could be accomplished and the effects of pursuing interim storage as an option. No final decision has been made regarding interim storage. Def.'s Resp. of October 29, 2007, at App. 11. These documents are pre-decisional and deliberative in nature and Dairyland's need is insufficient to outweigh the Government's interest in confidentiality.

Documents Ref. Nos. S1073 (Bates-Stamped HQR6440218 - HQR6440219), S1074 (HQR6440220 - HQR6440221), S1127 (HQR6540003 - HQR6540004), S1128 (HQR6540005 - HQR6540007), and S1129 (HQR6540008 - HQR6540010) shall be produced. The documents provide background information and talking points regarding Private Fuel Storage ("PFS"). To the extent the documents discuss the Department of Energy's position of PFS they are currently relevant to this litigation as PFS expenditures make up a significant portion of the damages claim.[8] These documents are pre-decisional and deliberative in nature; however, Dairyland's evidentiary need is sufficient to outweigh the Government's interest in confidentiality.

## IV. Attorney-Client Privilege and/or Work Product Doctrine

Dairyland seeks the production of 178 documents that are being withheld under attorney-client privilege and/or work product doctrine. As a starting point, pursuant to the rules of this Court:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

RCFC 26(b)(1). The rules continue:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other

---

[8] The Government filed a Motion for Summary Judgment Regarding Dairyland's Claim for Recovery of Off-Site Fuel Storage Investments on August 28, 2007. Supplemental briefing was completed on January 22, 2008, and a decision is pending.

parties to assess the applicability of the privilege or protection.

RCFC 26(b)(5)(A). Dairyland alleges that the Government has not properly invoked attorney client privilege and/or work product doctrine by failing to "make the claim expressly . . . describ[ing] the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." RCFC 26(b)(5)(A), *see* Pl.'s Mot. to Compel at 11. Dairyland argues that the Government has failed to identify the author and recipient(s) or provide evidence sufficient to assess the validity of the privilege. Pl.'s Mot. to Compel at 11.

In rebuttal, the Government asserts that Dairyland "has not and cannot demonstrate that the Government's assertions of privilege, as described in its September 17, 2007 privilege log, are deficient." Def.'s Resp. of October 24, 2007, at 7. The Government opines that the failure to list an attorney as author or addressee does not automatically invalidate the assertion of attorney client privilege and/or work product doctrine. Furthermore, the Government states that if the requirement existed that an attorney author and addressee be listed to maintain the claim of privilege then Dairyland has also failed to meet this burden for many documents.[9] Def.'s Resp. of October 24, 2007, at 8-9.

**A. Attorney-Client Privilege**

Attorney client privilege is one of the oldest and most recognized privileges invoked to protect the confidential communications between attorneys and their clients. *Upjohn Co., et al. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the

---

[9] The Court has reviewed the privilege logs of both Dairyland and the Government, and is surprised that the Government asserts Dairyland "would forfeit the protections that it now enjoys over *many* documents designated in its own privilege logs as attorney-client or work product privilege, but for which no attorneys are listed as 'authors' or 'recipients.'" Def.'s Resp. of October 24, 2007, at 9, A1-22 (emphasis added). In Dairyland's privilege log, an attorney is listed as the author 155 times or in approximately 80 percent of the entries. In the remaining 20 percent of the entries, an attorney is listed as the recipient or copyee in 20 instances. Only in 17 instances is there no attorney associated with the privilege entry. While the validity of the Dairyland's assertion of attorney-client privilege and/or work product doctrine is not at issue in the instant motion, Dairyland's privilege log has not only listed an author but, as is required, has made the claims of the privilege expressly and "describe[d] the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." RCFC 26(b)(1). As for the Government's Privilege of September 17, 2007, a name is not listed in the author column for 164 out of 178 documents, or for 92 percent of the documents it claims are protected by privilege. The Government claims the author can be found in the description of the document; however, for the sake of clarity and conformity the Court believes that the Government should maintain convention and place the author of the document in the proper location.

privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients . . . . The privilege recognizes that sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client.") (internal citation omitted). The recognized purpose of the privilege is to encourage clients to make a full and frank disclosure to their attorney to obtain legal advice or services. *Id.* ("[W]e recognized the purpose of the privilege to be 'to encourage clients to make full disclosure to their attorneys.'"(*Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services.") (citations omitted). However, our Court of Appeals has noted, it is not necessary for this Court to "dissect the document to separately evaluate each of its components. It is enough that the overall tenor of the document indicates that it is a request for legal advice or services." *In re Spalding Sports*, 203 F.3d at 806.

The requirements for asserting the attorney-client privilege have recently been reviewed by this Court:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . .; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 456 (2007) (Damich, C.J.) (citing *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 481-85 (2000) (quoting *United State v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950))).

Courts have recognized that the assertion of attorney-client privilege "obstructs the search for truth and because its benefits are, at best indirect and speculative, it must be strictly confined with the narrowest possible limits consistent with the logic of its principle." *SmithKline Beecham Corp., et al. v. Apotex, Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005) (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)). The assertion of attorney-client privilege must be decided on a case-by-case basis. *Upjohn*, 449 U.S. at 396 ("the recognition of a privilege based on a confidential relationship . . . should be determined on a case-by-case basis.") (quoting *Trammel v. United States*, 445 U.S. 40, 47 (1980)). The protection afforded under attorney-client privilege applies only to communications and not to facts. *Upjohn*, 449 U.S. at 395 ("[T]he privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing.") (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)). The burden of proving that these communications fall under the aegis of attorney-client privilege rests with the party that claims the privilege; therefore, the burden rests squarely with the Government.[10] *AAB Joint*

---

[10] The Government entitles an entire sub-part of its response "Dairyland Has Not Met Its Burden To Overcome The Government's Properly Asserted Privilege Claims." This assumes

*Venture,* 75 Fed. Cl. at 456 ("The burden of establishing the attorney-client privilege rests upon the party claiming privilege.") (quoting *Energy Capital Corp.*, 45 Fed. Cl at 484).

A party that invokes attorney-client privilege to protect the documents from disclosure must provide a description in the privilege log of each document sufficient to allow the court to determine if the elements have been established. *SmithKline Beecham Corp.*, 232 F.R.D. 467, 475 ("[T]he description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege . . . have been established. Failing this, the documents must be produced.") (citing *SmithKline Beecham Corp. v. Spotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000); *see also* RCFC 26(5)(A) ("the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."). This Court agrees with the Government that the failure to list an attorney as author or addressee does not automatically invalidate the assertion of attorney client privilege. *SmithKline Beecham Corp.*, 232 F.R.D. at 475 ("'The rules do not attempt to define for each case what information must be provided . . . details concerning time, persons, general subject matter, etc. *may* be appropriate.'") (citing *SmithKline Beecham Corp.*, 193 F.R.D. at 534) (emphasis added). The Court must look to the privilege log to determine if attorney-client privilege has been appropriately asserted and, where no author or addressee has been listed, assessing the validity of the privilege could be extremely difficult. *SmithKline Beecham Corp.*, 232 F.R.D. at 476 ("We therefore scrutinize closely any privilege claim where Plaintiff is unable to identify the author or has provided only a general group-wide description of recipients.").

**B. Work-Product Doctrine**

Work-product protection is afforded to "preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Monroe Adleman*, 134 F.3d 1194, 1196 (2nd Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquires into the files and the mental impressions of an attorney. . . . In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." )). Without work-product protection, "much of what is now put down in writing would remain unwritten for fear that the attorney's work would rebound to the benefit of the opposing party." *Id.*, 134 F.3d at 1197 (quoting *Hickman*, 329 U.S. at 511). According to the rules of this Court:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the

---

that the privilege claims have been established, a determination that has not yet been made.

> required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.

RCFC 26(b)(3).[11]

The party seeking work-product protection has the burden of establishing that the material was prepared in anticipation of litigation. *SmithKline*, 232 F.R.D. at 473 ("It is well established that the party asserting work-product protection has the burden of proving that the materials were prepared in anticipation of litigation." (quoting *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir. 2000)). Thus, "the initial inquiry is whether, in light of the nature of the documents and the factual situation in a particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation . . . . Litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation." *Energy Capital Corp.*, 45 Fed. Cl at 485 (quoting *Occidental Chemical v. OHM Remediation Services*, 175 F.R.D. 431, 434 (W.D.N.Y. 1997)). Next, the Government must show that the work product contains "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3), *see also Deseret Management Corp, v. United States*, 76 Fed. Cl. 88, 93 (2007) (quoting *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 663 (3d Cir. 2003) ("Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product . . . is 'generally afforded near absolute protection from discovery.'")).

Once the Government has established that the material was prepared in anticipation of litigation and contains "opinion[]" work product, then the Court will "protect [the document] against disclosure." RCFC 26(b)(3). To determine if this protection is warranted, the Court will "consider the nature of the document for which protection is sought, as well as the facts surrounding its creation and distribution." *SmithKline*, 232 F.R.D. at 473 (quoting *Martin v. Bally's Park Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). The Government in its privilege log must have set out adequate facts to allow for the Court to make this determination, these must be "objective facts to support its claims of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough." *AAB Joint Venture,* 75 Fed. Cl. at 455.

## V. Evaluation of The Government's Invocation of Attorney-Client Privilege and/or Work Product Doctrine

In its Motion to Compel Production of Documents, filed on October 5, 2007, Dairyland asserts that the Government has failed to demonstrate that the documents withheld contain confidential communications that are protected by attorney-client privilege and/or work product

---

[11] Both the rule of the United States Court of Federal Claims and the Federal Rules of Civil Procedure recognize the work product doctrine; therefore, this Court may be guided by the decisions of other federal courts interpreting Fed. R. Civ. Proc. 26(b)(3)(B). *Energy Capital Corp.*, 45 Fed. Cl. at 493 (quoting *Wheeler v. United States*, 11 F.3d 156 (Fed. Cir. 1993)).

doctrine. The Court must therefore evaluate the sufficiency of each privilege claim to determine if the Government will be afforded the protection under attorney-client privilege or work product doctrine.

In reviewing the sufficiency of the Government's assertion of attorney-client privilege for each document or group of documents two criteria, numbers "(1) the asserted holder of the privilege is or sought to become a client; and (4) the privilege has been (a) claimed and (b) not waived by the client,"*AAB Joint Venture v. United States*, 75 Fed. Cl. at 456, have been properly asserted for each document and, therefore, will not be reviewed individually. If the Court determines that the Government has not met the burden to establish that the documents are protected they will have until February 29, 2008, to either produce the challenged documents to Dairyland or amend the privilege log and submit it to the Court to allow for a determination of the sufficiency of attorney-client privilege.

In reviewing the sufficiency of the Government's assertion of work product doctrine, the Government must establish that the document was prepared in anticipation of litigation, then the Government must show that the work product contains "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3), *see also Deseret Manag. Corp*, 76 Fed. Cl. at 93 (2007). Once again, if the Court determines that the Government has not met the burden to establish that the documents are protected they will have until February 29, 2008, to either produce the challenged document to Dairyland or amend the privilege log and submit it to the Court to allow for a determination of the sufficiency of attorney-client privilege.

Document Ref. No. S6 (Bates-Stamped CTR3580612 - CTR3580614) is described as a "whitepaper regarding ACR/DCS process; contains legal analysis of standard contract provided by counsel." Privilege Log of September 17, 2007. The Government asserts that this document is protected by attorney-client privilege. As Dairyland points out, there is no author or addressee listed for the document; however, the Government avers that "Ms. Taylor authored this document based upon our discovery inquiries." Def.'s Resp. of October 24, 2007, at 15. To meet the requirements of attorney-client privilege this "legal analysis" of the standard contract must be a communication between an attorney and his client for the purpose of obtaining legal advice. *Upjohn*, 449 U.S. at 390 ("[T]he fact that the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."). Ms. Taylor was acting as an attorney, as she is in-house counsel with the Department of Energy. Def.'s Resp. of October 24, 2007, at 15. The Government's privilege log fails to indicate the recipient(s) of this whitepaper. This makes it impossible for the Court to determine the ambit of distribution for the whitepaper, and, therefore, impossible to determine if this was a communication between an attorney and a client.[12] To

---

[12] Although the parties do not raise the issue of the boundaries of attorney-client privilege, the Court notes that attorney-client privilege is not restricted to individuals. The privilege can also apply when the client is a corporation. *Upjohn*, 449 U.S. at 390. The privilege does, however, have boundaries and the Court will consider the privilege waived if the communications are disclosed to employees that do not need access to them. *In re SmithKline Beecham Corp.*, 2000 U.S. App. LEXIS 29637, at *9 (Fed. Cir. 2000) (citing *Diversified Industries Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) ("privilege[] waived if

maintain attorney-client privilege the disclosure must be limited to communications between the attorney and the client. *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990) ("The attorney-client privilege evaporates upon any voluntary disclosure of confidential information to a third party."). For Document S6, the Government has failed to support the claim of attorney-client privilege.

Documents Ref. Nos. S11 (Bates-Stamped CTR3587243 - CTR3587261), S232 (CTR6100858 - CTR6100899), S233 (CTR6100900 - CTR6100964), and S234 (CTR6100965 - CTR6101073) are similar documents described as an email and presentations regarding the Standard Contract. According to the description, the presentation includes information related to SNF litigation, settlement and legal analysis, "information and analysis provided by counsel and reflects legal advice and mental impressions of counsel." Privilege Log of September 17, 2007. The Government claims both attorney-client and work product for each of these documents. While there is no author listed for the documents, the Government states that "the specific attorneys who provided this advice and analysis, [are] Jane Taylor and Cathy Reynolds, both of whom serve as lawyers in DOE's Office of General Counsel." Def.'s Resp. of October 24, 2007, at 16.

The Court will first assess the Government's claims of attorney-client privilege. With respect to Document Ref. No. S11, a presentation dated April 18, 2007, the Government's privilege log does not indicate a recipient(s) this recent presentation making it impossible for the Court to determine if this was a communication between an attorney and a client. For S11, the Government has failed to support the claim of attorney-client privilege. Documents Ref. No. S232, S233 and S234 list Pollog, T and Benz, E., employees of DOE as the addressee; consequently, Documents S232, S233, and S234 are protected by attorney-client privilege and need not be produced.

The Government also claims that these documents are protected by work product doctrine. The privilege log indicates that the presentation "includes information related to spent nuclear fuel litigation at the Court of Federal Claims . . . ," Privilege Log of September 17, 2007, which satisfies the burden that the document is prepared in anticipation of litigation. The Government's privilege log also states that the presentation contains "mental impressions of counsel," with no further explanation of these mental impressions. The Court cannot determine from the privilege log "the facts surrounding its [the documents] creation and distribution." *SmithKline*, 232 F.R.D. at 473, and there are no "objective facts to support its claims of privilege . . . ." *AAB Joint Venture* 75 Fed. Cl. at 455. For documents S11, S232, S233 and S234, the Government has failed to support the claim of protection under work product doctrine. Documents S232, S233 and S234 are protected by attorney-client privilege and need not be produced; however, the Court concludes that S11 is not protected by attorney-client privilege or under work product doctrine.

---

communication disseminated beyond those persons who, because of the corporate structure, need to know its contents.")); *see also Pacific Gas and Elec. Co. v. United States*, 69 Fed. Cl. 784, 811 (2006). Further, communications by an attorney for the Government "to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege." *Deseret Manag. Corp*, 76 Fed. Cl. at 91 (2007).

Documents Ref. Nos. S236 (Bates-Stamped CTR6101155 - CTR6101182), S237 (CTR6101183 - CTR6101210), S238 (CTR6101211 - CTR6101211), and S239 (CTR6101212 - CTR6101233) are similar documents described as emails forwarding results of analysis of potential liability arising from cases pending at the Court of Federal Claims. Privilege Log of September 17, 2007. The Government claims that these documents are protected by work product doctrine.

This analysis of liability for cases pending before the Court performed by Ms. Taylor, or at her direction satisfies the burden that the document is prepared in anticipation of litigation. The analysis of liability for cases pending falls under "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). Documents S236, S237, S238 and S239 are protected by work product privilege and need not be produced.

Documents Ref. Nos. S251 (Bates-Stamped CTR6103228 - CTR6103253), and S252 (CTR6103254 - CTR6103279) are both described as an "email and attached whitepaper regarding shipment of SNF to Yucca Mountain; prepared at the direction of counsel, in part, in connection with litigation pending before the Court of Federal Claims." Privilege Log of September 17, 2007. The Government claims that these documents are protected by both attorney-client privilege and work product doctrine.

The Court will first review the Government's attorney-client privilege claim. According to the Government, Angela Kordyak of the DOE's Office of General Counsel provided counsel, Defendant's Response of October 24, 2007, at 19; however, the author of the both documents, S251 and S252, is listed as Benz, E. and the addressee is listed as Best, R., neither of which, to the Court's knowledge, is an attorney. Privilege Log of September 17, 2007. The Government asserts that their "description of these documents plainly demonstrates that they were prepared at the direction of Ms. Kordyak." Def.'s Resp. of October 24, 2007, at 19. The fact that the email and whitepaper may have been prepared at the direction of Ms. Kordyak is insufficient to allow the material to be protected by attorney-client privilege. The description does not indicate that any legal advice was provided by Ms. Kordyak; rather, she requested that the material be prepared. The email and whitepaper created by a non-attorney and sent to a non-attorney, with no indication that legal advice from Ms. Kordyak was conveyed, cannot be considered a communication made for the purpose of obtaining legal advice. *In re Spalding Sports*, 203 F.3d at 805 ("[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services."). For Documents S251 and S252, the Government has failed to support the claim of attorney-client privilege.

The Government has also claimed that S251 and S252 are protected under work product doctrine. According to the description provided by the Government, these two documents are both an "email and attached whitepaper regarding shipment of SNF to Yucca Mountain; prepared at the direction of counsel, in part, in connection with litigation pending before the Court of Federal Claims." Privilege Log of September 17, 2007. The document was prepared at the direction of Ms. Kordyak due to the litigation before this Court; therefore, this satisfies the burden that the document is prepared in anticipation of litigation. There is nothing in the description in the privilege log or in Defendant's Response of October 24, 2007, to indicate that

the documents contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). For S251 and S252, the Government has failed to support the claim of protection under work product doctrine.

Document Ref. No. S570 (Bates-Stamped HQR5010716 - HQR5010721) is described as a "[m]emorandum from J. Taylor (DOE-OGC) containing legal advice regarding DOE acceptance of Spent Nuclear Fuel provided in response to request for same; advice rendered as part of DOE-OGC's responsibility to provide legal services DOE." Privilege Log of September 17, 2007. The Government claims that the memorandum is protected by attorney-client privilege. The Government's privilege log does not indicate precisely who received the document; however, the Court concludes that it was provided to DOE based on the statement that the document contains "legal advice regarding DOE acceptance of Spent Nuclear Fuel provided in response to request for same . . . ." According to the privilege log, this memorandum contains legal advice directly from Ms. Taylor; therefore, it is protected by attorney-client privilege and need not be produced.

Document Ref. Nos. S589 (Bates-Stamped HQR5011446 - HQR5011448), S590 (HQR5011449 - HQR5011452), S591 (HQR5011462 - HQR5011462) and S604 (HQR5050209 - HQR5050215) are described generally as a whitepaper or memorandum containing legal analysis and advice regarding interim storage of SNF. For documents S589, S590 and S59, the Government asserts that the documents are protected by attorney-client privilege. The Government asserts that documents S591 and S604 are protected by work product doctrine.

Assessing the Government's attorney-client privilege claim, S589 lists T. Getz as the attorney who provided the legal advice; unfortunately, the Government's privilege log does not indicate who received this whitepaper making it impossible for the Court to determine if this was a communication between an attorney and client. For S589, the Government has failed to support the claim of attorney-client privilege. Documents S590 and S591 do not list an attorney or recipient, and merely states, "AC Attorney: DOE-OGC." This description fails to provide adequate information to determine if these documents were a communication between an attorney and client; therefore, for S590 and S591, the Government has failed to support the claim of attorney-client privilege.

The Government has also claimed that S591 and S604 are protected under work product doctrine. Both documents are described as draft whitepapers regarding interim storage containing legal advice, and S604 states that the document contains mental impressions of counsel; however, no attorney or recipient is listed for either document. There is no date on the document, and there is nothing to allow the Court to determine if the document was prepared in anticipation of litigation. The Government has failed to supply "objective facts to support its claims of privilege . . . ." *AAB Joint Venture*, 75 Fed. Cl. at 455. For S591 and S604 the Government has failed to support the claim that the material is protected by work product doctrine.

Document Ref. No. S592 (HQR502001 - HQR5020012) is described as a draft whitepaper reflecting "review by and legal advice" concerning SNF acceptance in 2020 or soon thereafter, prepared in anticipation of upcoming licensing litigation. The Government claims that the document is protected by both attorney-client privilege and work product doctrine.

There is no attorney or recipient listed for this document, rather it merely states, "AC Attorney: DOE-OGC." This description fails to provide adequate information to determine if these documents were a communication between an attorney and a client; therefore, for S592, the Government has failed to support the claim of attorney-client privilege.

Looking at the Government's claim that S592 is protected under work product doctrine, there are no facts contained in the description in the privilege log or in Defendant's Response of October 24, 2007, to allow the Court to assess that the document contains the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation," RCFC 26(b)(3); therefore, for S592, the Government has failed to support the claim of work product doctrine.

Document Ref. Nos. S594 (HQR5020097 - HQR5020099), S595 (HQR5020100 - HQR5020103), S596 (HQR5020104 - HQR5020104), S597 (HQR5020105 - HQR5020110) and S598 (HQR5020111 - HQR5020111) are described generally as documents regarding a Delivery Commitment Schedule ("DCS") options paper. The Government claims that all the documents are protected by attorney-client privilege. The Government claims that document S597 is also protected by work product doctrine.

The Court will first review the Government's assertion of attorney-client privilege. For all of the documents, there is no author or addressee listed; however Ms. Taylor is listed as the attorney in the description for documents S594, S595, S586 and S597. There is no attorney listed for S598. Documents S594, S595 and S598 list no date. Documents S594 and S596 are described as a letter requesting legal review and advice of counsel regarding the DCS options paper. It is difficult for the Court to understand how these letters are not addressed to or created by any singular person, and, in the case of document S594, the letter does not contain a date in which it was written. It is impossible for the Court to determine if S594 and S596 are communications between an attorney and a client; therefore, for S594 and S596, the Government has failed to support the claim of attorney-client privilege.

Documents S595 and S597 are both described as draft presentations/papers regarding DCS options (scheduling and status) and they reflect the legal review or advice of counsel. Based on the description, the Court concludes that DOE requested the legal advice or review and that Ms. Taylor provided some type of information; however, the claim of "legal review or advice" is insufficient to determine if the information provided by Ms. Taylor contained in the documents was a communication between an attorney and a client for the purpose of obtaining legal advice or services; therefore, for S595 and S597, the Government has failed to support the claim of attorney-client privilege.

Finally, the Court will review S598, which is described as draft talking points reflecting legal review by counsel for DOE and containing counsel analysis regarding DCS options. This description fails to indicate who the talking points are for, if they were used as part of a presentation or the type of analysis or legal advice provided by an attorney. Additionally, the description states "AC Attorney:DOE-OGC," no individual attorney is named, which is not fatal; however, a review of the entire description leaves the Court unable to determine if the information provided by the DOE, Office of General Counsel was a communication between an attorney and a client for the purpose of obtaining legal advice or services, and to whom the

talking points were disseminated. To maintain attorney-client privilege the disclosure must be limited to communications between the attorney and the client. *Carter*, 909 F.2d at 1451. For Document S598, the Government has failed to support the claim of attorney-client privilege. As discussed previously, the Government has failed to support the claim of attorney-client privilege for documents S594, S595, S596, S597 and S598.

The Government also asserts work product privilege for document S597 described as a draft presentation regarding DCS scheduling and status reflecting legal review by counsel prepared at the direction of an attorney in anticipation of SNF litigation. Privilege Log of September 17, 2007. The description in the privilege log or in Defendant's Response of October 24, 2007, to fails to provide facts to establish that the documents contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). For S597, the Government has failed to support the claim that the document is protected by work product doctrine.

Document S614 (HQR5051051 - HQR5051055) is described as a memorandum for D. Dreyfus, Director of OCRWM, to the Under Secretary of Energy, reflecting review for legal sufficiency and advice of counsel regarding a policy options paper concerning proposals for interim storage of SNF. The attorney listed by the Government is R. Nordhaus of DOE, Office of General Counsel. The Government claims that this document is protected by attorney-client privilege.

Unlike the inadequate information provided with documents S251 and S252, based on the description, the Court concludes that Mr. Nordhaus provided to Mr. Dreyfus legal advice which was then forwarded to individuals at DOE. Attorney-client privilege protects the attorney who is giving the professional advice. *Upjohn*, 449 U.S. at 390 ("[T]he fact [is] that the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."). Additionally, the advice provided by the attorney may be discussed between the clients without a waiver of the privilege. *See generally, Carter*, 909 F.2d at 1451. In this case there is no indication that the legal advice and review of legal sufficiency was disclosed to a third party. Accordingly, this document is protected by attorney-client privilege and need not be produced.

Document S635 (HQR5290109 - HQR5290114) is described as a draft memorandum from E. Sproat, Director of OCRWM, to the file containing legal analysis regarding liability for the breach of the Standard Contract. The Government claims that the memorandum is protected by both attorney-client privilege and work product doctrine.

The attorney listed in the privilege entry is Ms. Taylor of the DOE, Office of General Counsel. The Government asserts that "[t]he log clearly states that Ms. Taylor prepared the memorandum." Def.'s Resp. of October 24, 2007, at 28. It is not clear to the Court that Ms. Taylor prepared the memorandum; in fact, nothing is clear from the privilege log entry which states, "Draft memorandum *from* OCRWM Director, E. Sproat, to file . . . Memo *prepared by counsel* for DOE . . . ." Privilege Log of September 17, 2007 (emphasis added). Regardless of this discrepancy, the Court believes that S635 is protected by attorney client privilege. The memorandum drafted either by Mr. Sproat or Ms. Taylor contains legal advice and analysis regarding issues related to liability for breach of the Standard Contract. It seems clear that this

communication was made for the purpose of obtaining legal advice regarding potential liability for the breach of the Standard Contract. *In re Spalding Sports*, 203 F.3d at 805 ("[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services."). Document S635 is protected by attorney-client privilege and need not be produced. The Government also claims that the document is protected by work product doctrine, because the document is protected by attorney-client privilege and need not be produced, the Court will not review the sufficiency of the work product doctrine.

Document Ref. No. S641 (HQR5320001 - HQR5320002) is described as a memorandum containing legal advice and analysis by counsel for DOE regarding acceptance of SNF from Dairyland. The advice was rendered by the Department of Energy, Office of General Counsel. The Government claims that the document is protected by both attorney-client privilege and work product doctrine.

The privilege log does not list an attorney or recipient, and merely states, "AC/AW Attorney: DOE-OGC." This description fails to provide adequate information to determine if these documents were a communication between an attorney and a client; therefore, for S641, the Government has failed to support the claim of attorney-client privilege.

The Government also claims that S641 is protected by work product doctrine. According to the privilege log the memorandum was prepared by the DOE, Office of General Counsel, to provide legal advice and analysis regarding acceptance of SNF from Dairyland. Based on the description in the privilege log, the Court concludes that the document prepared on January 19, 1996, was in anticipation of litigation and it contains "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). Document S641 is protected by work product privilege and need not be produced.

Document Ref. Nos. S682 (HQR5380006 - HQR5380008), S683 (HQR5380040 - HQR5380042) and S1130 (HQR6540013 - HQR6540015) are all described as an email from S. Smith to D. Zabransky. All the emails are dated October 20, 200, and were prepared at the direction of Ms. Taylor at DOE, Office of General Counsel. According to the Government all the documents are protected by the work product doctrine and S1130 is also protected by attorney-client privilege.

Documents S682, S683 and S1130 all contain analysis of waste acceptance options and the effect of litigation positions. Based on the description in the privilege log, the Court concludes that the documents prepared on October 20, 2003, were in anticipation of litigation and contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). Documents S682, S683 and S1130 are protected by work product doctrine and need not be produced. The Government also claims that S1130 is protected by attorney client privilege, because the document need not be produced the Court will not review the sufficiency of the attorney-client privilege claim.

Document S684 (HQR5380085 - HQR5380086) is described as an email chain between C. Kouts and P. Golan containing comments prepared by counsel in anticipation of SNF litigation. The Government also asserts that the documents reveal the mental impressions of counsel (J. Taylor). The Government claims that S684 is protected by work product doctrine.

The Court is willing to accept that the document of February 17, 2006, was prepared in anticipation of litigation; however, nothing beyond conclusory statements in the privilege log or in Defendant's Response of October 24, 2007, indicates that the documents contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). For S684, the Government has failed to support the claim of work product doctrine.

Document Ref. No. S690 (HQR5510014 - HQR5510015) is described as an email from H. Fitter to A. Brownstein forwarding legal advice and analysis provided to DOE by DOJ regarding proposed legislative testimony regarding SNF acceptance. The Government claims that this document is protected by both attorney client privilege and work product doctrine.

The Court will first review the claim of attorney client privilege. Based on the description it appears that an attorney at the Department of Justice provided legal advice which was then passed to individuals at DOE. Attorney-client privilege protects the attorney who is giving the professional advice. *Upjohn*, 449 U.S. at 390. Additionally, the advice provided by the attorney may be discussed between the clients without a waiver of the privilege. *See generally, Carter*, 909 F.2d at 1451. The legal advice and analysis regarding legislative testimony found in S690 is protected by attorney-client privilege and need not be produced. The Government also claims that S690 is protected by work product doctrine, because the document need not be produced the Court will not review the sufficiency of the work product doctrine claim.

Document Ref. No. S700 (HQR5540549 - HQR5540613) is described as an email chain reflecting advice provided by Mr. Shultis of the Department of Justice regarding SNF litigation before the Court of Federal Claims. The Government asserts that this document is protected by both attorney client privilege and work product doctrine.

The Court will first review the claims of attorney client privilege for document S700. According to the privilege log, Mr. Shultis provided legal advice regarding SNF litigation before the Court of Federal Claims. This advice was then incorporated into an email authored by M. Senderling. Presumably, the email was then sent to a recipient(s). It is difficult for the Court to conceive that the recipient information was not available to the Government to be included in the privilege log. Based on the privilege log the Court cannot determine who received the email. To maintain attorney-client privilege the disclosure must be limited to communications between the attorney and the client. *Carter*, 909 F.2d at 1451. The Court is unable to determine who received this email; therefore, for Document S700, the Government has failed to support the claim of attorney-client privilege.

The Government also asserts that S700 is protected by work product doctrine. According to the privilege log, this email chain reflects advice regarding SNF litigation provided by Mr. Shultis. The Court is willing to accept that the email of July 30, 2002, was prepared in anticipation of litigation; however, nothing in the privilege log or in Defendant's Response of October 24, 2007, indicates that the documents contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). For S700, the Government has failed to support the claim for protection under work product doctrine.

Document Ref. No. S701 (HQR5550013 - HQR550017) is described as a draft report containing the mental impressions of counsel related to authorization of Nuclear Waste Fund ("NWF") collections, mitigation of damages, SNF acceptance and transportation safety concerns which was prepared at the direction of Ms. Taylor, DOE, Office of General Counsel, in connection with litigation before the Court of Federal Claims. The Government claims that it is protected by work product doctrine.

Based on the description in the privilege log, the Court concludes that the document prepared at the direction of Ms. Taylor was in anticipation of litigation and it contains "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative party concerning litigation." RCFC 26(b)(3). The Government also specifically describes the content of the document providing the Court with "objective facts to support its claims of privilege . . . ." *AAB Joint Venture*, 75 Fed. Cl. at 455. Document S701 is protected by work product doctrine and need not be produced.

Document Ref. No. S955 (HQR6120553 - HQR6120556) is described as a draft memorandum providing legal advice and analysis regarding legal authority to provide interim storage, prepared by Ms. Taylor in response to a request by OCRWM, also containing counsel's opinion of litigation pending at the Court of Federal Claims. The Government claims that the document is protected by attorney client privilege and work product doctrine.

The Court will first review the Government's claim of attorney-client privilege. According to the privilege log, the legal advice was provided by Ms. Taylor in response to a request from OCRWM. It is clear that this communication was made for the purpose of obtaining legal advice regarding interim storage. *In re Spalding Sports*, 203 F.3d at 805 ("[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services."). Document S955 is protected by attorney-client privilege and need not be produced. The Government also claims that S955 is protected by work product doctrine, because the document need not be produced the Court will not review the sufficiency of the work product doctrine claim.

Document Ref. Nos. S956 (HQR6120557 - HQR6120564) and S957 (HQR6120565 - HQR6120567) are described as draft proposed legislation and talking points regarding interim storage that were prepared by Ms. Taylor in response to a request by OCRWM in connection with litigation before the Court of Federal Claims. The Government claims that both documents are protected by attorney-client privilege and work product doctrine.

The Court will first review the Government's claim of attorney-client privilege. According to the privilege log the proposed legislation and talking points were prepared by Ms. Taylor in response to a request by OCRWM. It is clear that the draft legislation and talking points contain legal advice regarding interim storage. *In re Spalding Sports*, 203 F.3d at 805 ("[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services."). Document S956 and S957 are protected by attorney-client privilege and need not be produced. The Government also claims that S956 and S957 are protected by work product doctrine, because the document need not be produced the Court will not review the sufficiency of the work product doctrine claim.

Document Ref. No. S1145 (HQR6760001 - HQR6760002) is described as the summary of a meeting concerning acceptance scenarios. The document contains legal advice provided by G. Hellstrom from DOE, Office of General Counsel, provided at the meeting. The Government claims that the document is protected by attorney client privilege.

According to the privilege log, this document is the summary of a meeting about SNF acceptance with Mr. Hellstrom, who provided legal advice. It is clear that this document contains legal advice regarding SNF acceptance provided to employees of DOE at the meeting. It is also likely that employees of DOE sought legal advice at this meeting. "[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *In re Spalding Sports*, 203 F.3d at 805. Document S1145 is protected by attorney-client privilege and need not be produced.

Document Ref. Nos. S310, S371-S376, S379-S382, S385, S395-S405, S409, S410, S415, S420, S421, S424, S433-S439, S455, S472, S491, S492, S556, S557, S559-S561, S600, S601, S889, S946-S948, S973-S982, S984, S993-S1000, S1008, S1009 and S1012 are all described as draft contract or contract amendments for new nuclear reactors. The Government claims that these documents are protected by attorney-client privilege.

The Government in the privilege log entry indicates that these are draft contracts which could be entered into with new nuclear facilities. The draft contracts contain legal advice and analysis by Ms. Taylor, Ms. Reynolds and/or Ms. Neumayr and Mr. McRae. According to the Declaration of Jane K. Taylor, Def.'s Resp. of October 24, 2007, at A23-26, the draft contracts "contain counsel's advice and analysis throughout." *Id.* at 24. Ms. Taylor goes on to state that the draft documents "communicate continuing legal advice regarding the development of potential new reactor contracts." It is clear that these draft contracts contain legal advice provided by attorneys at the DOE, Office of General Counsel to DOE. The privilege applies to these documents because "the person to whom the communications was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; and . . . the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in come legal proceeding . . . ." *AAB Joint Venture*, 75 Fed. Cl. 448, 456 (2007). Documents S310, S371-S376, S379-S382, S385, S395-S405, S409, S410, S415, S420, S421, S424, S433-S439, S455, S472, S491, S492, S556, S557, S559-S561, S600, S601, S889, S946-S948, S973-S982, S984, S993-S1000, S1008, S1009 and S1012 are protected by attorney-client privilege and need not be produced.

Documents Ref Nos. S377, S378, S383, S384, S386-S394, S406, S411-S414, S416-S419, S423, S425, S432, S454, S456-S459, S465, S468, S471, S473, S474, S554, S555, S558, S562-S567, S602, S603, S887, S888, S890-S893, S901, S944, S945, S949, S950, S952, S953, S983, S988, S992, S1001-S1003, S105-S1007, S1011, and S1013 are memoranda, whitepapers, emails and notes that concern the drafting and analysis of proposed contracts for the disposal of nuclear fuel for new reactors. For these documents the attorneys listed are, for example, Ms. Taylor, Ms. Reynolds and/or Ms. Neumayr, Mr. McRae, Mr. Crossland and Mr. Lester (DOJ). According to the Declaration of Jane K. Taylor, Def.'s Resp. of October 24, 2007, at A23-26, "[t]hese documents all stemmed from requests by DOE and especially OCRWM, for legal advice and services to its, regardless of whether an individual document facially identifies a specific author or

recipient." *Id*. at 25. It is clear that these memoranda, whitepapers, emails and notes contain legal advice regarding draft contracts provided by attorneys at the DOE, Office of General Counsel to DOE and OCRWM. Documents S377, S378, S383, S384, S386-S394, S406, S411-S414, S416-S419, S423, S425, S432, S454, S456-S459, S465, S468, S471, S473, S474, S554, S555, S558, S562-S567, S602, S603, S887, S888, S890-S893, S901, S944, S945, S949, S950, S952, S953, S983, S988, S992, S1001-S1003, S105-S1007, S1011, and S1013 need not be produced.

## VI. Conclusion

The Court **ORDERS** the following documents be produced to Dairyland: Document Ref. Nos. S184, S1073, S1074, S1127, S1128, S1129, S6, S11, S251, S252, S589, S590, S591, S604, S592, S594, S595, S596, S597, S598, S684 and S700, on or before February 29, 2008. If upon review, the Government still believes that these documents should be protected, an amended privilege log allowing the Court to assess the sufficiency of the renewed claims of attorney-client privilege and work product doctrine shall be submitted on or before that same date.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge