# In the United States Court of Federal Claims

No. 04-106 C
(Filed: March 17, 2008)

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, v. THE UNITED STATES, Defendant. | * | Presidential communications privilege; compelling document production; RCFC 37(a)(2) |

*Jerry Stouck*, Greenberg Traurig LLP, Washington, DC, counsel of record for Plaintiff; of counsel were *Robert Shapiro* and *Kevin Stern*, Greenberg Traurig LLP, Washington, DC.

*Russell A. Shultis*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, United States Department of Justice, Washington, DC; of counsel was *Jane K. Taylor*, Office of General Counsel, Department of Energy, Washington, DC, *Alan J. Lo Re*, Senior Trial Counsel, and *Patrick B. Bryan, Joshua E. Gardner,* and *Scott C. Slater*, Trial Attorneys, United States Department of Justice, Washington, DC.

## OPINION AND ORDER

**DAMICH, Chief Judge.**

This case involves the "Standard Contract" between nuclear utilities and the United States Department of Energy ("DOE") for the disposal of spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW"). Plaintiff, Dairyland Power Cooperative ("Dairyland"), an electric generation and transmission cooperative, entered into the Standard Contract with DOE in 1983. In 2004, Dairyland filed suit for breach of the Standard Contract in this Court against Defendant, the United States ("the Government"), which acted on DOE's behalf. Following the Court's summary judgment in Dairyland's favor on the issue of contractual liability, the parties entered into discovery on the matter of damages. In the pending motions, Dairyland, pursuant to the Rules of United States Court of Federal Claims ("RCFC") 37(a)(2) moves this Court to compel the Government to produce a total of ten documents that the Government claims are protected by

the presidential communications privilege.

This discovery dispute is one of many that has arisen during the pendency of this case. The parties have filed numerous motions to compel discovery regarding both withheld documents and depositions. As the Court noted in the Order of January 3, 2008, discovery was extended to Tuesday, January 22, 2008, for the limited purpose of preparing the affidavit(s) reflecting a formal invocation of the presidential communications privilege and the response to Plaintiff's Motion to Compel Production of all Five Remaining Presidential Communications Privilege Documents. For all other purposes, discovery closed, as scheduled, on Tuesday, January 15, 2008. Because discovery has closed, the Court expects that with issuance of the instant Opinion and Order, there will be no outstanding discovery issues, thus ending a long and tedious discovery process.[1] Trial is scheduled to begin in this matter at 10:00 a.m. on July 7, 2008.

For the reasons set forth herein, the Court orders the Government to produce to Dairyland, on or before 5:00 p.m. on March 21, 2008, the following: Document Ref. Nos. E154, E171, E112, E178, E153 and E156 page HQR0290826.

## I. Background

On January 18, 2007, Dairyland filed a "Motion to Compel Production of Documents Withheld Under the 'Deliberative Process' and Attorney-Client Privileges." The Government filed its response on February 28, 2007, and Dairyland filed a reply on March 19, 2007. This Court issued an Opinion and Order on June 29, 2007, which ordered the Government to produce certain documents previously withheld on deliberative process privilege grounds. *Dairyland Power Cooperative v. United States*, 77 Fed. Cl. 330 (2007) (Damich, CJ). Five of the documents (E154, E167, E170, E171 and E178), the Government produced on July 20, 2007, were completely redacted pursuant to an assertion of the presidential communications privilege.

On September 18, 2007, Dairyland filed "Dairyland's Motion to Compel Production of 'Presidential Communications' Documents." ("Pl.'s Mot. to Compel of September 18, 2007"). On October 24, 2007, the Government filed its response to Dairyland's challenge of the Government's invocation of the presidential communications privilege ("Def.'s Resp. of October 24, 2007") and a Cross-Motion for a Protective Order. Dairyland filed a reply on November 5, 2007 (Pl.'s Reply of November 5, 2007). During the briefing for this motion, the Government sought an order from the Court which required Dairyland to demonstrate a particularized need for

---

[1]Pursuant to the Order of January 14, 2008, after decisions issued in three pending motions (only Defendant's Motion for Summary Judgment Regarding Plaintiff's Claim for Recovery of Off-site Fuel Storage Investments remains), the Court would hold a status conference, to discuss reopening discovery for a limited time and purpose and to discuss the trial preparation schedule. The status conference is now scheduled for March 20, 2008. It is the Court's intention that no additional motions related to discovery will be filed during this limited discovery period.

the five documents prior to "shifting the burden upon the White House to formally respond to Dairyland's motion to compel." Def.'s Resp. at 6.

On October 17, 2007, the Court then adopted the procedural guidance set forth in *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) ("*Sealed Case*"). And "for the sake of clarity," the Court ordered Dairyland to submit "a statement of need for the documents and why the evidence in the documents [was] not available with due diligence elsewhere." Order of October 17, 2007, at 2. Dairyland submitted their Statement of Need on October 18, 2007. On December 19, 2007, this Court issued an Opinion and Order which reviewed the sufficiency of Dairyland's Statement of Need according to the test in *Sealed Case*. *Dairyland Power Cooperative v. United States*, 79 Fed. Cl. 659 (2007) (Damich, CJ). The Court ruled that Dairyland demonstrated that the five documents contained important evidence and that the documents were not available with due diligence elsewhere, thereby satisfying both prongs of the *Sealed Case* test. In deference to the decision in *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004) ("*Cheney*"), the Government was ordered to submit an affidavit formally invoking the presidential communications privilege. The Government filed the Affidavit on January 22, 2008.

During the time that the briefing and orders were issued regarding Dairyland's Motion to Compel of September 18, 2007, the Court was also reviewing *in camera* 128 documents provided by the Government pursuant to the decision of June 29, 2007. *Dairyland*, 77 Fed. Cl. 330 (2007). In a series of orders after *in camera* inspection, the Court ordered the production of several documents, including E112, E153, E156, E163 and E165. Orders of November 19, 2007 and December 18, 2007. The Government then asserted the presidential communications privilege for these five additional documents.

On December 14, 2007, pursuant to this Court's Order of December 12, 2007, Dairyland filed "Dairyland's Motion to Compel Production of all Five Remaining Presidential Communications Privilege Documents." ("Pl.'s Mot. to Compel of December 14, 2007"). Dairyland's motion contained "a statement of need for the documents and why the evidence in the documents [was] not available with due diligence elsewhere." *See* Order of December 12, 2007. On January 22, 2008, the Government filed its response to Dairyland's Motion to Compel of December 14, 2007. The Court also received the "Declaration of Fred F. Fielding" and "Declaration of Susan A. Smith," formally asserting the presidential communications privilege for all ten documents, along with a binder that contained all ten document for *in camera* inspection. ("Def.'s Resp. of January 22, 2008). Dairyland filed its reply on February 4, 2008. (Pl.'s Reply of February 4, 2008).

## II. Discussion

Dairyland seeks the production of ten documents that are being withheld by the Government on presidential communications privilege grounds. In the decision of December 19, 2007, this Court outlined the presidential communications privilege. *Dairyland*, 79 Fed. Cl. 659 (2007). After comparing *United States v. Nixon*, 418 U.S. 683 (1974) ("*Nixon*"), *Cheney*, 542 U.S. 367 (2004), and *Sealed Case*, and reviewing the guidance in *Sun Oil Company v. United States*, 206 Ct. Cl. 742 (1975), the Court adopted the test in *Sealed Case*. The Court found that

*Cheney*: "(1) did not adopt a particular test for use in civil case discovery disputes; (2) emphasized the overbreadth of the discovery requests at issue; (3) noted that the trial court did not consider the overbreadth objections of the Government; and (4) relieved the Government of the burden of asserting executive privilege with particularity before the issue of separation of powers was joined." *Dairyland*, 79 Fed. Cl. at 665. According to *Sealed Case*, if the President invokes the presidential communications privilege, the documents become presumptively privileged; however, the privilege can be overcome by an adequate showing of need. *Sealed Case*, at 745-46.

The Court, with its adoption of *Sealed Case,* determined that for Dairyland to establish an adequate need they must demonstrate: "first, that each . . . [document] likely contains important evidence; and second, that this evidence is not available with due diligence elsewhere." *Id*. at 754; *see Dairyland*, 79 Fed. Cl. at 666. According to *Sealed Case*, important evidence requires "that the evidence sought . . . [is] directly related to issues that are expected to be central to the trial." *Sealed Case*, at 754. "The second component, unavailability, reflects *Nixon's* insistence that privileged presidential communications should not be treated as just another source of information. . . . Efforts should first be made to determine whether sufficient evidence can be obtained elsewhere, and the subpoena's proponent should be prepared to detail these efforts and explain why evidence covered by the presidential privilege is still needed." *Id.* at 755.

For documents E154 (HQR0290177 - HQR0290190), E167 (HQR0320199 - HQR0329206), E170 (HQR0320221 - HQR0320227), E171 (HQR0320231 - HQR0320245) and E178 (HQR0421452 - HQR0421464),[2] the Court has already determined that Dairyland has demonstrated its need for the subject documents "by demonstrating that the documents likely contain important evidence and that this evidence is not available with due diligence elsewhere." *Dairyland*, 79 Fed. Cl. at 668 (citing *Sealed Case*, 121 F.3d at 754). The Court must now address the five remaining documents.

## II. Analysis

### A. Sufficiency of Dairyland's Statement of Need pursuant to the *Sealed Case* Test for the Five Documents Subject to the Motion to Compel of December 14, 2007.

Dairyland filed a second motion to compel on December 14, 2007, seeking five additional documents. The motion to compel contained a statement of need and unavailability. The five additional documents that Dairyland seeks are described by the Government as follows:

1. E112 (CTR0400568 - CTR0400583) - OMB (Office of Management and Budget) memo re: review of administration policy for interim storage of radioactive waste.

2. E153 (HQR040290177 - HQR0290051) - Memo re: nuclear waste lawsuit.

[2]The Court refers to the reference number Dairyland has given the document, as well as the Bates-stamped number used by the Government.

3. E156 (HQR0290826)[3] - Facsimile enclosing talking points for OMB-White House, release of DOE letter stating anticipated delay, marginalia and notes.

4. E163 (HQR0320151 - HQR0320156) - Memo re: proposed presidential position regarding interim storage of spent nuclear fuel and currently stated administration positions and proposed recommendations.

5. E165 (HQR0320176 - HQR0320181)[4] - Duplicate or different version of document starting at HQR0320151 - Memo re: options for a position on the interim storage of high level nuclear waste and enclosed memo re: acceptance of fuel.

Dairyland must demonstrate that the documents likely contain important evidence and that this evidence is not available with due diligence elsewhere. *Sealed Case*, 121 F.3d at 754. The Court concludes for the five remaining documents–E112, E153, E156, E163 and E165–that Dairyland has met the *Sealed Case* standard.

The Court ordered the production of documents E112, E153, E156 and E163 in its Order of November 19, 2007 and the production of E165 in its Order of December 18, 2007. The Court overruled the Government's invocation of deliberative process privilege and determined that Dairyland's need for the documents outweighed the Government's interest in confidentiality. *Dairyland*, 77 Fed. Cl. at 338; *see* Orders of November 19, and December 18, 2007.

According to the Government, "Dairyland has failed to establish a sufficient showing of heightened need for the five remaining documents at issue in Dairyland's December 14, 2007 motion to compel, as required by Cheney and this Court's December 19, 2007 Order." Def.'s Resp. of January 22, 2008 at 8.[5] The Government also asserts that "Dairyland's reliance upon the

---

[3]Pursuant to this Court's Order of November 19, 2007, document E156 "contains three drafts of talking points for the 'OMB-White House' regarding the anticipated delay in SNF acceptance scheduled to begin in 1998. The drafts do not appear to be significantly relevant. Page HQR0290826, however, shall be produced because Plaintiff's evidentiary interest can be seen to outweigh Defendant's desire for confidentiality." The Government produced HQR0290826 in completely redacted form based on the assertion of presidential communications privilege.

[4]Pursuant to this Court's Order of November 19, 2007, document E163 "shall be produced . . . . On page HQR0320151, the last sentence of the first paragraph (beginning, 'The storage. . .') may be redacted."

[5]The Government continues to urge the Court to apply a test found in the *Cheney* decision, that Dairyland must "satisfy exacting standards of (1) relevancy; (2) admissibility; and (3) specificity." *Dairyland*, 79 Fed. Cl. at 662. However, the Court adopted the test in *Sealed Case*. ("After comparing *Nixon*, *Sealed Case* and *Cheney*, and examining the guidance *Sun Oil* provides, this Court concludes that the *Sealed Case* test comes closest to what the Supreme Court

Court's findings . . . made in the context of Dairyland's deliberative process privilege challenge, are insufficient to meet its burden to overcome the White House's assertion of presidential communications privilege here." Def.'s Resp. of January 22, 2008 at 12.

Notwithstanding the assertions of the Government, the five documents appear to contain important evidence. According to the descriptions, each of the documents refers to either interim storage, the pending litigation or anticipated delays in the removal of SNF.[6] As Dairyland has stated, "discussion[s] of interim storage may reveal the government's' [sic] views regarding a reasonable rate of acceptance at such facilities or the appropriateness of according priority acceptance at such facilities to spent fuel from permanently shutdown reactors, such as Dairyland's." Pl.'s Mot. to Compel of December 14, 2007, at 5. In the decision of December 19, 2007, the Court ruled that documents pertaining to interim fuel storage, mitigation of damages by pursuing private fuel storage, spent fuel acceptance rates and considerations of what the Government determined constituted an appropriate rate for such acceptance according to the Standard Contract potentially bear a great deal of relevance to issues to be raised at trial. *Dairyland*, 79 Fed. Cl. at 668. Therefore, as the Court concluded with the previous five documents, the five remaining documents (E112, E153, E156 and E163) likely contain important evidence.

The Government claims that Dairyland "has failed to show that the evidence it seeks is unavailable from other, non-privileged sources." Def.'s Resp. of January 22, 2008, at 19. However, the Government fails to address the Court's previous finding of agreement with Dairyland's assertion that "it is the documents themselves, authored by [G]overnment officials, rather than only the factual information in the documents, that makes them uniquely important and certainly not obtainable elsewhere." *Dairyland*, 79 Fed. Cl. at 668 (citing Dairyland's October 18, 2007, Statement of Need at 3). Based on the description of the documents, they are substantially similar to the five documents subject to the decision of December 19, 2007, in that they may contain private statements by senior Government officials that are not publicly available elsewhere.

**B. Review of the Formal Invocation of the Presidential Communications Privilege**

On January 22, 2008, the Government submitted the Declarations of Fred F. Fielding, Counsel to the President of the United States, and Susan A. Smith, Senior Policy Analyst in the

---

was concerned about in *Cheney*." *Dairyland*, 79 Fed. Cl. at 667.)

[6]The Court has previously reviewed these five documents during *in camera* inspection based on the Government's assertion of deliberative process privilege. However, the Court will review the sufficiency of Dairyland's Statement of Need based on the description in the privilege log or the Declaration of Ronald Milner, because this is the only information that Dairyland has available. (The Court agrees that "Dairyland cannot be expected to make any more specific showing regarding the relevance of the documents, since Dairyland hasn't seen them." Pl.'s Reply of February 4, 2008 at 3.)

Office of Civilian Radioactive Waste Management, which formally invoked the presidential communications privilege for all ten documents. Having received the formal invocation of the presidential communications privilege and all documents for *in camera* inspection, the Court must now review the sufficiency of the Government's invocation of the presidential communications privilege.

The presidential communications privilege is not absolute. *Sealed Case*, 121 F.3d 745-46. The Court recognizes the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties; the importance of this confidentiality is too plain to require further discussion." *United States v. Nixon*, 418 U.S. at 705. However, "the privilege can be overcome by an adequate showing of need." *Sealed Case*, 121 F.3d 745-46.

In this case the presidential communications privilege is not invoked by the current President. The ten documents at issue were created from 1995 through 1997, during the administration of President William J. Clinton. Declaration of Fred F. Fielding at 2-3; Declaration of Susan A. Smith at 3-4. While a former President can assert the presidential communications privilege, "his claim . . . [will] be given less weight than that of an incumbent President." *Sealed Case*, 121 F.3d at 744 (citing *Nixon v. GSA*, 433 U.S. 425, 449 (1997)).

None of the ten documents were directly communicated to President Clinton. ("Although these documents are not, on their face, directed to the President, each of these documents concern areas of presidential decision-making . . . and reflect the deliberations of White House advisors in the process of developing advice for President Clinton." Declaration of Fred F. Fielding at 3). Simply because the documents were not directed to President Clinton does not vitiate the presidential communications privilege. ("[C]ommunications made by presidential advisers in the course of preparing advice for the President come under the presidential communications privilege, even when these communications are not made directly to the President." *Sealed Case*, 121 F.3d at 752.) That is not to say that the privilege encompasses everyone in the executive branch involved in the President's decision-making process no matter how "remote or removed" from the President. *Id.* In keeping with the confines of *Sealed Case*, the Court will construe the presidential communications privilege

> as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected . . . [where] the privilege should apply only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate.

*Id.* "The presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *Id.* The Government has the burden of proving that these ten documents were prepared by members of the White House staff who had broad and significant responsibility in formulating advice for President Clinton. "This restriction is particularly

important in regard to those officials who exercise substantial independent authority . . . . If the government seeks to assert the presidential communications privilege in regard to particular communications of these 'dual hat' presidential advisers, the government bears the burden of proving that the communications occurred in conjunction with the process of advising the President." *Id*.

**C. *In Camera* Review**

The Court, having determined that Dairyland's Statement of Need for all ten documents is sufficient because Dairyland has shown that they likely contain important evidence and are unavailable elsewhere, must now review the documents *in camera*. According to *Sealed Case*, the presidential communications "privilege is qualified, not absolute, and can be overcome by an adequate showing of need. If a court believes that an adequate showing of need has been demonstrated, it should then proceed to review the documents *in camera* to excise non-relevant material. The remaining relevant material should be released." *Sealed Case*, 121 F.3d at 745.

As in *Sealed Case*, "*in camera* review . . . aims to ensure that presidential confidentiality is not unnecessarily breached, but it operates on the presumption that some privileged material will probably be released. The court's task during its *in camera* review is simply to ensure that privileged materials that would not be of use . . . are not released." *Id*. at 759 (citing *Nixon*, 418 U.S. at 714; *Nixon v. Sirica*, 486 F.2d 700, 719-21 (1973)). Now that the Government has submitted the Declarations of Fred F. Fielding and Susan A. Smith, the Court will review the declarations, the contents of the documents including the author and recipient, and determine which, if any, documents shall be produced.

Documents Ref. Nos. E154 (HQR0290177 - HQR0290190) and E171 (HQR0320231 - HQR0320245) are similar documents. E154 is titled "Policy Options for Interim Storage of Radioactive Waste." According to the notation on the document it is a draft created on November 7, 1996, at 1:22 p.m. There is no author or recipient listed on the document; however, according to the Declaration of Susan A. Smith,

> [t]his document was prepared at the request of the White House by senior officials within DOE, including Charles Curtis, Under Secretary of Energy; OMB, including T.J. Glauthier, then serving as the Associate Director for Natural Resources, Energy and Science, and other senior-level officials from the Executive Office of the President, including Elgie Holstein of the National Economic Council and John Angell, senior advisor to the White House Chief of Staff.

Declaration of Susan A. Smith at 4. Document E171 is an earlier draft of Document E154 dated June 13, 1995. According to Ms. Smith, the findings of the analysis found in both documents "were discussed by senior White House officials and were ultimately conveyed to the President to assist in his decisionmaking concerning the appropriate Federal policy with respect to interim storage." Declaration of Susan A. Smith at 5, 7. Pursuant to this description, the documents are clearly "communications made by presidential advisers in the course of preparing advice for the

President [which] come under the presidential communications privilege, even . . . [if] these communications are not made directly to the President." *Sealed Case*, 121 F.3d at 752.

According to Dairyland, "[i]nterim storage scenarios are highly relevant to several issues in this case, including the schedule and rate of SNF acceptance, priority acceptance for shutdown reactors in general and Dairyland in particular, and the Private Fuel Storage ("PFS") initiative pursued by Dairyland and other utilities." Dairyland's October 18, 2007, Statement of Need at 2.

After *in camera* review of documents E154 and E171, the Court rules that they both shall be produced. The documents directly address policy options for interim storage and specifically address private fuel storage. It is relevant material and should be released. *Sealed Case*, 121 F.3d at 745. The court further concludes that all the material could be of use to Dairyland. ("The court's task during its *in camera* review is simply to ensure that privileged materials that would not be of use . . . are not released." *Id*. at 759).

The Court now turns to document E112 (CTR0400568 - CTR0400583), which is not described in the Government's privilege log as similar to E154 or E171. Rather, document E112 is described with E166 as "duplicate or different versions of an OMB memorandum from TJ Glauthier, Associate Director Natural Resources, and Charles Curtis, Under Secretary of Energy, . . . regarding an options paper upon the question of interim storage of high-level radioactive waste." Declaration of Ronald A. Milner at 17 ¶10.

However, document E112 is substantially similar to E154 and E171. In the decision of June 29, 2007, this Court determined that Plaintiff's need for E154 and E171 substantially outweighed the Government's interest in confidentiality, superceding the assertion of deliberative process privilege. *Dairyland*, 77 Fed. Cl. at 344. The Government was ordered to produce E154 and E171. The Court, not knowing that E112 was substantially similar[7] to E154 and E171, ordered that E112 be produced for *in camera* review. On November 19, 2007, after reviewing E112 the Court ordered its production in redacted form. This is the first time the Court has reviewed all three documents *in camera* and is surprised to find that they are substantially similar in content and the Court's decisions of June 29, 2007, and November 19, 2007, are in direct

---

[7]Document E112 is almost identical to E154 and E171, with the exception of the first two pages of E112 (CTR0400568 and CTR0400569), which are not part of E154 and E171. Additionally, E112 contains information about the storage of military high-level radioactive waste not found in E154 or E171 and the statistical information is slightly different. For example, in E154 and E171, the last sentence of the first paragraph of the memorandum ends, "institutional arrangements for a transportation system that can safely carry wastes from the sites in 40 states where it is stored," whereas in E112 the same sentence ends, "institutional arrangements for a transportation system that can safely carry wastes from the sites in 34 states where it is stored." Because this is the first time the Court has had the opportunity to review all ten documents together, it is the first time the Court could determine the similarities. However, the Government has had possession of these documents since they were created and has failed to notify Dairyland or the Court of these similarities.

conflict.

After *in camera* review of document E112, the court rules that the document shall be produced. In light of the similarities between this document and E154 and E171 and this Court's decision of June 29, 2007, the Court determines that Dairyland's need for all of document E112 substantially outweighs the Government's interest in confidentiality. The Court reverses its previous determination regarding the Government's invocation of deliberative process privilege found in the Order of November 19, 2007, and orders that the entire document be produced. Additionally, because of the similarities to E154 and E171 and for the reasons set forth above, the Court concludes that E112 shall be produced over the Government's assertion of presidential communications privilege.

Document E167 (HQR0320199 - HQR0320206) is a memo regarding interim storage of SNF from T.J. Glauthier of the Office of Management and Budget to Kathleen Peroff, Gary L. Bennethum and Robert L. Civiak. According to the Declaration of Susan Smith, document E167 was prepared "at the request of senior officials within the White House, including the Chief of Staff's office, to assist the President in formulating the Administration's position . . . . The contents of the paper were extracted from options papers generated by Mr. Dreyfus." Declaration of Susan A. Smith at 5. While the description does not indicate that the contents of the document were discussed with the President, the document contains communications by Presidential advisors regarding potential policy options for interim storage of SNF; therefore, the Government has properly invoked presidential communications privilege. *Sealed Case*, 121 F.3d at 752.

Dairyland, in the Statement of Need, has demonstrated the relevance of interim storage scenarios and the Court has previously agreed. In the decision of December 19, 2007, the Court held that documents pertaining to interim fuel storage bear a great deal of relevance to issues to be raised at trial. *Dairyland*, 79 Fed. Cl. at 668.

After *in camera* review of Document E167, the Court rules that it need not be produced. The document contains information regarding expedited acceptance of SNF at Yucca Mountain, including the legislative implications and licensing; however, the document only briefly mentions interim storage. The Court previously concluded that documents pertaining to interim fuel storage, mitigation of damages by pursuing private fuel storage, spent fuel acceptance rates and considerations of what the Government determined constituted an appropriate rate for such acceptance according to the Standard Contract potentially bear a great deal of relevance to issues that the trial will concern. *Dairyland*, 79 Fed. Cl. at 668. Additionally, according to Dairyland's Statement of Need, "[i]nterim storage scenarios are highly relevant to several issues in this case, including the schedule and rate of SNF acceptance, priority acceptance for shutdown reactors in general and Dairyland in particular, and the Private Fuel Storage ("PFS") initiative pursued by Dairyland and other utilities." Document E167 does not contain anything beyond a mention to interim fuel storage; therefore, it is not relevant to Dairyland's case and need not be produced.

Document E170 (HQR0320221 - HQR0320227) is a seven page document titled "Option for Expedited Acceptance of Spent Fuel at a Yucca Mountain Repository." According to the Government Document E163, E165 and E170 "are different versions or drafts of a memorandum . . . that discusses the Administration's current position regarding interim storage, and proposed recommendations for the Administration's position." Declaration of Ronald A. Milner at 20 ¶13.

Document E163 was drafted November 7, 1996 and is titled "Proposed Presidential Position Regarding Interim Storage of Spent Nuclear Fuel." Document E165 was drafted on May 18, 1995, and is titled "Presidential Principles Regarding Interim Storage (with suggested revisions)." Upon review of the documents, the Court finds that E170 and E163 are not different versions or drafts of the same memorandum; however, the information contained in the memoranda is similar. Both contain a commitment for the disposal of SNF, support of the existing program to determine the suitability of Yucca Mountain and expedited receipt of SNF at Yucca Mountain.

Comparing E170 and E165, some portions of the documents are identical; for example, HQR0320227 from E170 is identical to HQR0320177 from E165, and the cost penalty chart from E170 (HQR0320226) is identical to E165 (HQR0320179). The remainder of E165 contains similar information, but is not identical.

These three documents are clearly drafts of proposed policy positions. According to Ms. Smith regarding E170, "the findings of this analysis were discussed by senior White House advisors at the time and its contents were ultimately conveyed to the President to assist in his decisionmaking concerning the appropriate Federal policy to implement." Declaration of Susan A. Smith at 6 ¶ c. Documents E163 and E165, were prepared by senior officials at the request of the White House. Declaration of Susan A. Smith at 9-10 ¶ i-j.

According to Dairyland, "[i]nterim storage scenarios are highly relevant to several issues in this case, including the schedule and rate of SNF acceptance, priority acceptance for shutdown reactors in general and Dairyland in particular, and the Private Fuel Storage ("PFS") initiative pursued by Dairyland and other utilities." Dairyland's October 18, 2007, Statement of Need at 2; Pl.'s Mot. to Compel of December 14, 2007, at 4.

After *in camera* review the Court rules that E170, E163 and E165 are not relevant and need not be produced. The documents are three separate but overlapping documents. Each document contains proposed policy positions regarding accelerated acceptance of SNF, the legislative concerns and costs. The Court does not understand the Government's invocation of presidential communications privilege for documents that were prepared approximately twelve years ago and previously found to be potentially relevant when reviewed by the Court on deliberative process privilege grounds. *Dairyland*, 77 Fed. Cl. at 344; Order of November 11, 2007, at 3. However, neither in Dairyland's October 18, 2007, Statement of Need, nor in the Motion to Compel of December 14, 2007–which contained a Statement of Need–did Dairyland indicate a specific need for proposed policy from 1995 or 1996 regarding accelerated acceptance of SNF at Yucca Mountain. Nor can the Court discern the relevance. The Court therefore rules that E170, E163 and E165 need not be produced. ("The court's task during its *in camera* review is simply to ensure that privileged materials that would not be of use . . . are not released." *Sealed Case* at 759).

Document E178 (HQR0421452 - HQR0421464) is described with E154 and E171 as a "different versions or duplicates of a draft memorandum regarding DOE's policy options for the interim storage of nuclear waste." Declaration of Ronald A. Milner at 18 ¶11. However, E178 is very different than E154 and E171 and could hardly be called a different version or duplicate of the same memorandum. E154 and E171 deal specifically with policy options for interim storage,

while E178 contains information about SNF litigation, settlement options and proposed monetary relief for utility companies.

According to Ms. Smith, "the document which was prepared at the request of senior White House officials, offered a proposal for the President's consideration, to be presented to the Senate Energy Committee during a forthcoming hearing on Federal interim storage policy . . . ." Declaration of Susan A. Smith at 7 ¶ e. The description does not indicate that the contents of the document were discussed with the President; however, the document was created by Acting Secretary of Energy, Charles Curtis, and communicated to senior White House officials; therefore the Government has properly invoked the presidential communications privilege. *Sealed Case*, 121 F.3d at 752.

The Court has previously determined that E178, is "highly relevant to the present litigation." *Dairyland*, Fed. Cl. at 344.[8] Dairyland has also stated that "interim storage scenarios are highly relevant to several issues in this case, including the schedule and rate of SNF acceptance, priority acceptance for shutdown reactors in general and Dairyland in particular . . . ." Dairyland's October 18, 2007, Statement of Need at 2.

After *in camera* review the Court rules that E178 shall be produced. The document directly addresses a proposed monetary settlement with utility companies and reviews the cost of interim storage which are relevant to issues to be raised at trial. *Dairyland*, 79 Fed. Cl. at 668. (The presidential communications "privilege is qualified, not absolute, and can be overcome by an adequate showing of need. If a court believes that an adequate showing of need has been demonstrated, it should then proceed to review the documents *in camera* to excise non-relevant material. The remaining relevant material should be released." *Sealed Case*, 121 F.3d at 745.)

The first four pages of Document E153 (HQR0290044 - HQR0290051) are identical to E178.[9] The remainder of E153 (HQR0290048 - HQR0290051) contains charts showing the payments that utility companies have made into the Nuclear Waste Fund. The charts are the same as those found in E178, except that a single column was added to list the amount that each utility has paid into the Nuclear Waste Fund.

After *in camera* review the Court rules that E153 shall be produced. Because E153 is almost identical to E178, and for the reasons set forth above, E153 shall be produced.

---

[8]The Court's determination that the material was "highly relevant to the present litigation" was based on the description by Mr. Milner, in his Affidavit, that E178, E154 and E171 are "different versions or duplicates of a draft memorandum regarding DOE's policy options for the interim storage of nuclear waste." Declaration of Ronald A. Milner at 18 ¶11. While this description is not completely accurate, upon review of E178, the Court still views E178 as highly relevant.

[9]The description of E153 states that it is similar to E161 and E162. There is no mention of similarities to E178. It is clear to the Court that E178 was mistakenly placed with E154 and E171, and should have instead been grouped with E153, E161 and E162.

Document E156 (HQR0290826 only)[10] is a single handwritten page that analyzes the current production of SNF and acceptance rate needed to meet the production of SNF. According to Ms. Smith, "the document was prepared by senior officials within DOE and the Executive Office of the President at the direction of the White House in or around 1997 . . . ." Declaration of Susan Smith at 9 ¶ h. The description does not indicate that the contents of the document were discussed with the President; however, the document was prepared by senior officials within DOE, at the direction of the White House. The Government has properly invoked the presidential communications privilege. *Sealed Case*, 121 F.3d at 752.

The Court has already determined after *in camera* review that this page of E156 is relevant. Order of November 19, 2007, at 3. According to Dairyland, "[i]nterim storage scenarios are highly relevant to several issues in this case, including the schedule and rate of SNF acceptance . . . ." Pl.'s Mot. to Compel of December 14, 2007, at 4.

After *in camera* review the Court rules that E156 page HQR0290826 shall be produced. This single page concerns the rate of SNF acceptance which is relevant to the issues in this case. ("If a court believes that an adequate showing of need has been demonstrated, it should then proceed to review the documents *in camera* to excise non-relevant material. The remaining relevant material should be released." *Sealed Case*, 121 F.3d at 745).

## III. Conclusion

After *in camera* inspection, the Court **ORDERS** the Government to produce the following documents to Dairyland: Document Ref. Nos. E154, E171, E112, E178, E153 and E156 page HQR0290826, on or before 5:00 p.m. on March 21, 2008.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

[10]The Government asserts that "[t]he Court instructed the Government to redact the page Bates-stamped HQR0290826 prior to producing the document to Dairyland." Def.'s Resp. of January 22, 2008, at 15 n. 8. Rather, pursuant to the Court's Order of November 19, 2007, after *in camera* review the majority of the document did not appear relevant. Only one page (HQR0290826) was ordered to be produced. Order of November 19, 2007, at 3.