IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed: April 29, 2008

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) |
| Plaintiff, | ) No. 04-0106C |
| v. | ) (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

DAIRYLAND'S MOTION TO EXCLUDE EVIDENCE OF THE REASONS FOR DOE'S "DELAY" IN PERFORMANCE – I.E., ITS BREACH OF CONTRACT

Dairyland Power Cooperative ("Dairyland") respectfully moves to exclude any evidence of the reasons for DOE's breach of contract, which the government generally refers to as DOE's "delay" in performance.

INTRODUCTION AND BACKGROUND

In recent spent fuel trials in other cases, the government has delayed and confused the proceedings by introducing evidence concerning the reasons for DOE's breach. The government has announced its intention to attempt the same thing here. For example, the government's witness list states that a DOE official, Mr. Christopher Kouts, proposes to testify concerning, among other things, "the reasons for the delays in the Yucca Mountain project" as well as "DOE's ability to accept utility spent nuclear fuel" and "budgetary issues." Based on testimony he has given in other cases, Mr. Kouts' testimony about DOE's "ability" to accept spent fuel will in fact be to the effect that DOE purportedly is precluded by law now from accepting commercial spent fuel at any location, since the Yucca Mountain repository is incomplete. And again based on past cases, Mr. Kouts' testimony about "budgetary issues" will be to the effect that DOE has

been hampered in performing its contract obligations by Congress' appropriation each year of only a fraction of the amounts DOE's requested for the spent fuel program.

This testimony, and other evidence concerning the reasons for DOE's "delay," is not relevant to the sole issue to be tried this case – damages – nor is it relevant to any of the issues underlying a determination of damages – causation, foreseeability, and the reasonable certainty of Dairyland's costs. None of those issues depends on the reasons for DOE's breach. Instead, the government evidently seeks to introduce this evidence in order to support an argument that DOE's breach is the result of an "unavoidable delay" within the meaning of the clause in the parties' contract governing such delays.

But for multiple reasons, the question whether or not DOE's breach is actually an "unavoidable delay" will not and cannot be addressed at the trial in this case. First, that question goes to the issue of contract liability, not damages, and the government's liability to Dairyland has already been established. Second, the Federal Circuit has determined that DOE's conduct here is not a "delay" within the meaning of the parties' contract. Third, the mandamus order that the D.C. Circuit issued against the government in *Northern States Power Co. v. U. S. Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997), which is still in force, precludes the government from relying on evidence of unavoidable delays. Fourth, the government also has waived its ability to argue unavoidable delay by failing to plead the matter as an affirmative defense.

Accordingly, evidence concerning whether or not DOE's breach was actually an "unavoidable delay" is not relevant to any issue that may be raised at the forthcoming trial. Such evidence therefore should be excluded. Under Federal Rule of Evidence 402, "Evidence which is not relevant is not admissible." Moreover, because it is irrelevant and precluded by the *Northern States Power* mandamus order, introduction of evidence concerning the reasons for

DOE's breach would waste time and resources, confuse the issues that are before the Court, and thereby prejudice Dairyland.

ARGUMENT

I. Evidence Concerning The Reasons for DOE's Breach, Or "Delay," Go to the Issue of Liability, Which Has Already Been Conclusively Decided Against the Government.

The unavoidable delays provision in the DOE spent fuel contract, which is contained in the contract's "Delays Clause," Article IX, provides:

> A. Unavoidable Delays by Purchaser or DOE
>
> Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE — such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather — cause delay in the scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

DOE Contract, Art. IX.A. By its terms, this clause provides that neither party is liable for damages in the event of "unavoidable delays." As such, the clause addresses an issue concerning the *liability* of the contracting parties in the event of certain delays. The clause expressly does not address any issue concerning damages – which the clause, when it applies, specifically precludes.

Here, the government's liability to Dairyland *for damages* for breach of contract has already been established. More than two years ago, this Court issued an Order "find[ing] for Plaintiff on the issue of liability." Order of April 27, 2006. In so holding, the Court accepted the government's concession that this case cannot be distinguished "from the legal reasoning of the

Court's opinions in *Energy Northwest v. United States*, 69 Fed. CL. 500 (2006)] or in *Consumers Energy v. United States*, 65 Fed. Cl. 364 (2005)." *Id.* (quoting Defendant's Response to the Court's Show Cause Order dated February 22, 2006 at 1). In *Energy Northwest*, "this court followed the clear guidance of the Federal Circuit in *Maine Yankee* that the government breached *every* utility's contract when it failed to being SNF acceptance as of January 31, 1998." 69 Fed. Cl. at 504 (emphasis in original). And as the Court also explained *Energy Northwest*, "[n]ot only is such liability clear from the decision of the Federal Circuit in *Maine Yankee* , . . . but also in the appellate court's more recent *Indiana Michigan* decision. . . . Inherent in the court's holding [in *Indiana Michigan*] is a recognition of the contractual liability of the government industry-wide as of the date set in the standard Contract for the beginning of SNF acceptance, i.e., January 31, 1998." *Id*. at 505.

In short, the government's liability to Dairyland was long ago established generally by the Federal Circuit and specifically in this case by this Court. The only remaining issue for trial is damages. And testimony such as Mr. Kouts proposes to give – on "the reasons for the delays in the Yucca Mountain project," as well as "DOE's ability to accept utility spent nuclear fuel" and "budgetary issues" that have hampered DOE's performance – is relevant (if at all) not to any damages issues but only in support of a possible defense to liability. It is therefore irrelevant and should be excluded.

## II. Evidence of Unavoidable Delays Is Also Irrelevant Because the Federal Circuit Has Determined that DOE's Conduct Here Is Not a Contract "Delay."

*Maine Yankee*, and the companion Federal Circuit decision in *Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000), make evidence of unavoidable delays irrelevant for another (albeit related) reason. In *Maine Yankee,* the Federal Circuit held that DOE's conduct here – beginning with its failure to commence performance by January 31, 1998, and

continuing to the present time – is simply not a "delay" under the contract clause in question. The Federal Circuit explained that the clause addresses "the kind of delays that routinely may arise during the performance of the contract. For them to arise, however, the parties must have begun performance of their obligations relating to disposal of the nuclear waste." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d. 1336, 1341 (Fed. Cir. 2000). In its *Northern States Power* decision, the Federal Circuit confirmed that "we hold that the unavoidable delays provision deals with delays arising after performance of the contract begun." 225 F.3d at 1367.

Because DOE has not yet "begun" performance, the Delays Clause of the DOE contract is inapplicable, and evidence of "unavoidable delays" is irrelevant for this reason as well.

Indeed, this Court has already recognized that any effort by the government to rely on the unavoidable delays clause is precluded by the Federal Circuit decisions in *Maine Yankee* and *Indiana Michigan*. In *Energy Northwest*, the Court noted it was "cognizant of the government's contention that *Maine Yankee* and *Northern States* did not dispositively address issues concerning liability that the government proposes to advance based on the unavoidable delays clause." 69 Fed. Cl. 505 n.8. The Court properly refused to entertain that "contention" in *Energy Northwest*, and should do the same here, because as the Court explained:

> [U]nless and until the Federal Circuit reopens the issue of contractual liability, its decisions in *Maine Yankee* and *Indiana Michigan* clearly establish such liability.

*Id. See Southern Nuclear Operating Co. v. United States*, 77 Fed. CL. 396, 459 ("[T]he defense [of unavoidable delay] is not viable in view of the Federal Circuit's holding in *Northern States Power*.").

## III. The Government Is Precluded By the D.C. Circuit Mandamus Order From Relying on "Unavoidable Delays."

The D.C. Circuit, in its *Northern States Power* decision, entered a writ of mandamus that explicitly precludes the government from relying on the unavoidable delays clause, or indeed

from making any argument that "excuses its [DOE's] failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity.'" 128 F.3d at 760. That litigation first arose in 1995,when DOE announced that it had no obligation to remove spent fuel form commercial reactors in the absence of a completed repository. Initially, in its *Indiana Michigan* decision, the D.C. Circuit rejected DOE's pronouncement, holding instead that DOE's obligation to commence spent fuel acceptance by January 31, 1998 was "without qualification or condition." *Indiana Michigan Power Co v. U.S. Dep't of Energy*, 88 F.3d 1272, 1276 (D.C. Cir. 1996) . As the D.C. Circuit explained, "that Congress contemplated such a facility [i.e., a repository] would be available does not mean that Congress conditioned DOE's obligation to begin acceptance of SNF on the availability of such a facility." *Id.* at 1277.

Remarkably, following the D.C. Circuit's determination that DOE's obligation was "unconditional," DOE again announced it would not perform by January 31, 1998, since no receiving facility was available. *See Northern States Power*, 128 F.3d at 755-756. That led to the mandamus order:

> Given DOE's repeated attempts to excuse its delay on the ground that it lacks an operational repository or interim storage facility, we find it appropriate to issue a writ of mandamus to correct the Department's misapprehension of our prior ruling.

128 F.3d at 760.

Since the D.C. Circuit's mandamus order is still in force, the government is still precluded from relying on the unavoidable delays clause. It follows that the government evidence of unavoidable delays is irrelevant, for this additional reason also.

IV. <u>Unavoidable Delays Is an Affirmative Defense that Has Not Been Pled.</u>

The government has suggested in other cases that it should be allowed to preserve the defense of unavoidable delays in the event that the Federal Circuit should conclude that the D.C.

Circuit mandamus order exceeded that Court's jurisdiction and is void. One judge of this court has so held, and the issue is currently before the Federal Circuit. *See NPPD v. United States*, Fed. Cir. No. 2007-5083.

This final government argument should be rejected for two separate reasons. First, as explained above the D.C. Circuit mandamus order is only one of a number of separate and independent reasons why evidence of unavoidable delays is not relevant in this case. And it is not even the most important reason, which is that the Federal Circuit has squarely held *both* that DOE has breached all of its spent fuel contracts – "[t]he breach involved all the utilities that had signed the contract – the entire nuclear industry," *Maine Yankee*, 225 F.3d at 1342 – and that DOE's breach is *not* a "delay" within the meaning of the contract's Delays Clause.

But even apart from those substantive legal holdings, and yet another independent reason why evidence of unavoidable delays should be excluded at trial, the government has waived the issue. Court of Federal Claims Rule ("RCFC") 8(c) requires that a party "set forth affirmatively" defenses such as "laches, license, payment, release, res judicata…and *any other matter* constituting an avoidance or affirmative defense" (emphasis added). As the court recently held in another spent fuel case, the issue of unavoidable delays is a defense required to be "set forth affirmatively" because the "contractual 'out' that defendant would suggest is an avoidance – refuge under a clause that in certain circumstances absolves liability for breach." *Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 457 (2007) (internal citations omitted). In *Southern Nuclear*, the court found that the government did not properly raise the defense, (or mention that it would raise the defense but for the D.C. Circuit mandamus order), in its answer or motion for partial summary judgment. *Id.* at 455. The court noted that, in contrast, the government had affirmatively raised the defense in two other spent nuclear fuel cases, but not the present case. *See id.* at 456-57.

Here, the government filed its answer only recently, in November 2007, and did not raise the affirmative defense of unavoidable delays. The government could have raised the defense (as it has in other similar cases), and did not; it has, therefore, waived any right it may have had to do so.

V. Evidence Explaining Delays Is Not Relevant To The Acceptance Rate Issue.

The Kouts testimony is also not relevant to the issue of when Dairyland's spent fuel would have been removed about the breach. Under the government view, as a matter of contract interpretation (i.e., law), its obligation to remove Dairyland's spent fuel is limited to the amount of spent fuel on approved delivery commitment schedules. *See* Defendant's Supplemental Response to Interrogatory No. 5, exhibit 1. The Kouts testimony does not affect that argument. Under Dairyland's view, the schedule rate term in the parties' contract is open, thus requiring the Court to supply a reasonable term. *See David Nassif Assocs. v. United States*, 557 F.2d. 249, 262-63 (Ct. Cl. 1977). The determination of such a reasonable term depends on the intentions of the parties at the time of contracting, *see, e.g., Firestone Tire & Rubber Co. v. United States*, 444 F.2d. 547, 551 (Ct. Cl. 1971), and conduct before a controversy arose, *John & Goldman's Egg City v. United States*, 697 F.2d 1051, 1058 (Fed. Cir. 1983). That determination does not depend on later developments, *see Alvin Ltd. V. United States Postal Serv.*, 816 F.2d 1562, 1565 (Fed. Cir. 1987), much less the creation of hurdles erected by the government itself. *See, Winstar v. United States*, 518 U.S. 839, 863 (1996).

VI. Evidence Explaining Delays Would Be Wasteful, Confusing And Prejudicial.

In addition to being irrelevant for the several reasons set out above, to allow evidence of the reasons for DOE's breach would needlessly waste trial time and resources, confuse the issues that are before the Court and be prejudicial to Dairyland.

Indeed, even *relevant* evidence may be excluded under FRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of undue delay [or] waste of time." Where, as here, similar harms are threatened by the government's attempt to introduce *irrelevant* evidence, the Court's duty to exclude such evidence is clear.

CONCLUSION

For the foregoing reasons, Dairyland respectfully requests that this Court grant Dairyland's motion to exclude evidence of the reasons for DOE's breach.

Respectfully submitted,

April 29, 2008

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)

*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

NOTICE OF SUPPLEMENTAL RESPONSE TO INTERROGATORY NUMBER 5

On November 20, 2007, this Court ordered defendant, the United States, to supplement the Government's response to plaintiff, Dairyland Power Cooperative's ("Dairyland's"), interrogatory number 5. The Government was also required to send a copy of that supplemental response to this Court. Pursuant to that order, the Government submits the supplemental response to interrogatory number 5 that was sent to counsel for Dairyland on December 3, 2007.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
MARIAN E. SULLIVAN
Senior Trial Counsel

s/Russell A. Shultis
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT C. SLATER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

December 3, 2007

Attorneys for Defendant

<u>CERTIFICATE OF FILING</u>

I hereby certify that on this 3rd day of December 2007, a copy of foregoing "NOTICE OF SUPPLEMENTAL RESPONSE TO INTERROGATORY NUMBER 5" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>s/Russell A. Shultis</u>

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 5 PURSUANT TO THE COURT'S NOVEMBER 20, 2007 ORDER

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following response to Interrogatory number 5 of "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006, amended in response to the Court's order dated February 5, 2007, and are now being supplemented pursuant to the Court's order regarding the Government's interrogatory responses issued on November 20, 2007.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to

any document so produced, or as to any other document.

2. Exceeding obligations imposed by the Court's rules and orders: Defendant objects to the instructions and definitions accompanying plaintiff's interrogatories to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by RCFC 26 and 34 and the Court's prior orders, including but not limited to, information regarding electronic mail will be produced only in accordance with the requirements provided by the Court's prior order, dated March 14, 2005, limiting the parties' obligations to preserve or search e-mail tapes.

3. Conclusions regarding legal significance of documents: Defendant objects to the plaintiff's interrogatories upon the grounds and to the extent that, by them, plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

4. Work product information: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks information prepared and/or developed in anticipation of litigation and/or for trial when plaintiff has not shown that it has substantial need of such materials in the preparation of its case in that plaintiff is unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

5. Irrelevant material: Defendant objects to plaintiff's interrogatories on the grounds and to the extent that, by them, plaintiff seeks the discovery of information which is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6. Vague, overly broad, and unduly burdensome: Defendant objects to plaintiff's interrogatories on the grounds that the manner in which they are worded, when read with their

definitions and general instructions, are so vague, broad, general, and all inclusive that they do not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive. Defendant further objects to these interrogatories to the extent that, to respond to them, defendant would be required to make an extensive investigation, research, compilation, and evaluation of data and records in its possession, which would constitute annoyance, harassment, oppression, undue burden, and undue expense to defendant.

7. Inferences from interrogatories: Defendant objects to any inference that can be drawn from any portion of plaintiff's interrogatories or the responses to them that the documents requested or events referenced in the requests actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by defendant that such information exists or that such events actually occurred.

8. Scope Of The Government As Responding Party: Defendant objects to plaintiff's interrogatories to the extent that they define the term "DOE," or the Department of Energy, to include any Government agencies, offices, bodies, affiliates, contractors, consultants, or individuals other than the Department of Energy itself. To define the term "DOE" as including entities other than DOE itself would render all of plaintiff's discovery requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, because doing so would require defendant to seek information from, and about, more than one million Federal employees in numerous offices, agencies, and departments, the missions of which have no relation whatsoever to plaintiff's contract and the locations of which are scattered across the nation and around the world. Further, defendant objects to these interrogatories to the extent that they purport to seek information from the files of the entire

Federal Government. In responding to these interrogatories, defendant has focused upon the knowledge of the Department of Energy.

9. The objections set forth above apply to each of the numbered paragraphs of plaintiff's interrogatories.

DEFENDANT'S RESPONSE

INTERROGATORY NO. 5:

On what schedule (measured in Metric Tons Uranium) does DOE contend it is obligated to remove DAIRYLAND's SPENT FUEL pursuant to DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? State all factual and legal grounds for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents and/or events which it is not required to make.

Without waiving this objection, defendant incorporates by reference its response to Interrogatory No. 3.

SUPPLEMENTAL RESPONSE:

Although the Court's February 5, 2007 order does not require supplementation of our original response to this interrogatory, defendant further refers plaintiff to the post-trial briefing that the Government filed in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C (Fed. Cl.), dated June 30, 2006, and July 7, 2006, copies of which are available on PACER accessible through the Court of Federal Claims' website.

SUPPLEMENTAL RESPONSE PURSUANT TO NOVEMBER 20, 2007 ORDER

Pursuant to the Standard Contract published at 10 C.F.R. § 961.11, DOE was to begin SNF acceptance from the contract holders by January 31, 1998. However, the Standard Contract itself does not identify any minimum or particular rate at which DOE, once it starts acceptance, must continue that SNF acceptance. Instead, the Standard Contract creates a procedural mechanism which requires each contract holder that wants to deliver any particular amount of SNF to DOE in any particular allocation period (each of which is a 12-month period) to submit a delivery commitment schedule ("DCS") to the contracting officer for approval. The submission, which the contract holder must present to the Department at least 63 months before the date upon which the contract holder wants the Government to accept the SNF, is a condition to the Government's subsequent obligation to accept any SNF. See 10 C.F.R. § 961.11, Art. V. If the DCS is disapproved, the Standard Contract contains an administrative mechanism through which any dispute regarding the SNF acceptance rate or order may be resolved, which the contract holder must also pursue as a "condition" to the Department's SNF acceptance. If the DCS is approved, the delivery commitment is established, committing the contract holder to deliver, and the Government to accept, the amount of SNF identified in the DCS.

Pursuant to Articles IV.5 and V of the Standard Contract, the 1991 Annual Capacity Report ("ACR"), in conjunction with the 1991 Annual Priority Ranking ("APR"), initiated the process through which DOE began making firm acceptance commitments to individual utility contract holders. Specifically, after issuance of the 1991 ACR/APR, many of the nuclear utility plaintiffs (including Dairyland) submitted DCSs to the Government, many of which were approved by the Department of Energy contracting officer. In submitting the DCSs, the utility

contract holders relied upon the allocations identified in the ACR/APR, and, in accordance with Article V of the Standard Contract, DOE approved many of those DCS submissions. The DCSs identify both the amount of SNF and the location of SNF for which an allocation exists under the relevant ACR/APR for a given year. Through the mechanisms created by the Standard Contract, those approved DCSs provide the contractual basis for assessing damages in these cases, based upon the Government's inability to accept the amount of SNF identified in those DCSs.

Dairyland Power Cooperative submitted DCSs to DOE on September 17, 1992, requesting the following allocations: (1) 0.72 Metric Tonnes Uranium ("MTUs") in 1998; (2) 5.99 MTUs in 1999; (3) 3.00 MTUs in 2000; (4) 3.86 MTUs in 2001; (5) 3.37 MTUs in 2003; (6) 1.45 MTUs in 2006; and (7) 3.29 MTUs in 2007. Those DCSs were approved by DOE's contracting officer for the Standard Contract on December 22, 1992. Therefore, pursuant to the terms of Dairyland Power Cooperative's Standard Contract, the parties agreed and contractually committed themselves to the acceptance of Dairyland's SNF in accordance with Dairyland's approved DCSs.

DOE has not obligated itself to accept any additional SNF other than the amounts set forth in the approved DCSs.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
MARIAN E. SULLIVAN
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT C. SLATER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

December 3, 2007

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 3rd day of December 2007, I caused to be sent by first class mail and facsimile a copy of "DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 5 PURSUANT TO THE COURT'S NOVEMBER 20, 2007 ORDER"addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)