No. 04-106C
(Chief Judge Damich)

Electronically Filed: April 29, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

# DAIRYLAND'S MOTION TO EXCLUDE R. LARRY JOHNSON'S TESTIMONY

JERRY STOUCK
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:

Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP

TABLE OF CONTENTS

ARGUMENT ........................................................................................................ 5

I. THIS COURT SHOULD PRECLUDE TESTIMONY THAT IS NEITHER RELEVANT NOR RELIABLE..............................................................5

II. MR. JOHNSON'S "OPINIONS" THAT CERTAIN CLAIMED DAMAGES ARE "NOT INCREMENTAL" ARE BASED ON AN ERRONEOUS LEGAL STANDARD AND ARE IMPERMISSIBLE LEGAL CONCLUSIONS...............6

III. MR. JOHNSON EMPLOYS NO "SPECIALIZED KNOWLEDGE," "RELIABLE PRINCIPLES AND METHODS," OR "QUALIFICATIONS" OF ANY TYPE TO CONCLUDE THAT CERTAIN OF DAIRYLAND'S CLAIMED COSTS ARE NOT "INCREMENTAL" .............................................9

A. Mr. Johnson Simply Weighs The Evidence Without Applying Any "Specialized Knowledge" And Thus Intrudes On The Sole Province Of The Court ........................................................................................ 11

B. Mr. Johnson Uses No "Specialized Knowledge" And Merely Echoes Mr. Brewer's Conclusions And Subtract The "Incremental" Costs He Suggests From Dairyland's Damages Claim ......................................................... 13

IV. MR. JOHNSON EMPLOYS NO "SPECIALIZED KNOWLEDGE" TO CONCLUDE THAT CERTAIN OF DAIRYLAND'S CLAIMED COSTS ARE NOT "REASONABLE" ........................................................................14

A. Mr. Johnson's Opinion That Mr. Smith's Rpv Removal Cost Estimates Are Not "Reasonable" Is Not Based On "Specialized Knowledge;" Nor Is Any "Specialized Knowledge" Required To Echo Mr. Brewer's Conclusions And Subtract The Not "Reasonable" Costs Mr. Brewer Suggests From Dairyland's Rpv Removal Damages Claim..................... 15

B. Mr. Johnson Employs No "Specialized Knowledge" To Simply Subtract PFS Costs Per Counsel's Instructions..................................................... 18

C. Mr. Johnson Uses No Expertise And Offers No Basis For Excluding Dairyland's Lobbying Costs ................................................................... 19

V. MR. JOHNSON'S OPINIONS ON ALTERNATIVE SCENARIOS EXHIBIT THE SAME FLAWS AS HIS OTHER "OPINIONS" AND SHOULD BE EXCLUDED UNDER RULES OF EVIDENCE 702 AND 403...........................20

CONCLUSION.................................................................................................... 22

# APPENDIX INDEX

Expert Report of R. Larry Johnson dated 6/15/07 ........................................................1

Excerpts from Deposition of Larry Johnson
dated 6/17/07..........................................................................................................36

Excerpts from Deposition of Larry Johnson
dated 3/7/06............................................................................................................58

Excerpt from Deposition of Michael Brasel
dated 12/13/06........................................................................................................61

Excerpt from Expert Witness Report of
Warren K. Brewer dated 6/15/07 .............................................................................64

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939 (Fed. Cir. 1991)................... 6

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) ...................................................... 5

*Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297 (Fed. Cir. 2001)........................ 6

*Coast Fed. Bank v. United States*, 48 Fed. Cl. 402 (2000) ............................................. 11

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001) ....................................... 6

*Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993) ........................................ 2, 5

*Energy Capital Corp. v. United States*, 302 F.3d 1314 (Fed. Cir. 2002)............................ 7

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................ 5

*Haberen v. Kaupp Vascular Surgeons Ltd.*, 812 F. Supp. 1376 (E.D. Pa. 1992)............... 9

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ............... 7

*Inwood Laboratories Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982)............... 11, 15

*Pacific Gas & Elec. Co. v. United States*, 73 Fed. Cl. 333 (2006) ................................ 5, 8

*Sacramento Mun. Util. v. United States*, 70 Fed. Cl. 332 (2006) .................................. 7, 8

*Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396 (2007) ................... 7, 8

*Sparton Corp. v. United States*, 77 Fed. Cl. 1 (2007).................................................. 9, 11

*Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006) ............................... 8

*United States v. Gwaltney*, 790 F.2d 1378 (9th Cir. 1986),
*cert. denied*, 479 U.S. 1104 (1987)................................................................................... 6

*Westfed Holdings v. United States*, 55 Fed. Cl. 544 (2003)......................................... 5, 11

Federal Rules

Fed R. Evid. 403 .......................................................................................... 6, 20, 21

Fed R. Evid. 702 ........................................................................ 1, 2, 5, 6, 18, 20, 21

RCFC 16 ........................................................................................................... 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | No. 04-0106C |
| v. | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DAIRYLAND'S MOTION TO EXCLUDE R. LARRY JOHNSON'S TESTIMONY

Pursuant to RCFC 16, Dairyland respectfully moves to preclude R. Larry Johnson from testifying as an expert witness.

Mr. Johnson's report primarily critiques the expert opinions of Dairyland's experts, Charles Wilkins and Todd Smith. Mr. Johnson offers three general conclusions: (1) Dairyland's asserted damages include costs that are not "incremental" and should be subtracted from Dairyland's damage claim; (2) Dairyland's asserted damages include costs that are not "reasonable" and should be subtracted from Dairyland's claim; and (3) under two scenarios government counsel instructed him on, Dairyland's damages should be reduced. *See* Report at 6-24; App. at 8-26. Mr. Johnson's proposed testimony on all three of his "opinions" fails to satisfy the requirements of Rule 702 of the Federal Rules of Evidence ("Rule 702").

Mr. Johnson's proposed testimony should be precluded because his "opinions" do not satisfy the requirements of Federal Rule of Evidence ("FRE") -- they are not based on relevant "scientific, technical, or other specialized knowledge" and are not "relevant,

reliable, and helpful to the trier of fact." Rule 702; *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). Mr. Johnson applies no such "specialized knowledge" to assert that certain of Dairyland's claimed costs are "not incremental" or are not "reasonable." In fact, Mr. Johnson offers no "expert" opinion or analysis of his own on those or any other issues. Instead, he (a) explicitly and unquestioningly adopts the opinions of another government witness and subtracts out the sums that witness suggests from Dairyland's claim; (b) follows the advice of government counsel and subtracts out the sums they suggest; (c) intrudes on the exclusive province of the Court by weighing Dairyland's evidence and subtracting out the sums he asserts are inappropriate; or (d) offers no discernable basis for his objection to certain claimed costs, but subtracts them out nonetheless. Further, Mr. Johnson offers opinions based on a definition of "incremental" costs that has already been rejected by this Court in other spent nuclear fuel cases, thus rendering his opinions based on that legally-incorrect definition unhelpful.

A table identifying the various items of cost that Mr. Johnson addresses in his Report and identifying the flaws in Mr. Johnson's "opinion" concerning each cost appears below:[1]

[1] The reference numbers in the left-hand column in the table below are cited in the body of this brief when the particular referenced opinion is discussed – *e.g.*, "Opinion Ref. No. 7."

| Opinion Number | Outline of Johnson Report | Opinion | Flaw |
|---|---|---|---|
| | **Elements Not Incremental** | | |
| | | | |
| 1 | Indirect Overhead and G&A (p. 7-9) | Not incremental | Simply weighs evidence (makes a conclusion based on reading the deposition testimony of Mr. Wilkins and Mr. Stubbendick);<br>Requires no "specialized knowledge" |
| 2 | Baseline Activity Costs (p. 9) | Not incremental | Simply weighs evidence (makes a conclusion based on reading deposition testimony of Mr. Christians);<br>Requires no "specialized knowledge" |
| 3 | WPI activities (pp. 10-12) | Not incremental | Simply weighs evidence (makes a conclusion based on reading the deposition testimony of Mr. Brasel);<br>Parrots Mr. Brewer;<br>Requires no "specialized knowledge" |
| 4 | Nukem Resin Removal and Disposal (p. 13) | Not incremental | Simply weighs evidence (makes a conclusion based on reading the deposition testimony of Mr. Christians);<br>Requires no "specialized knowledge" |
| 5 | NRC Fees (p. 13-14) | Not incremental | Simply weighs evidence (makes a conclusion based on reading the deposition testimony of Mr. Stubbendick);<br>Requires no "specialized knowledge" |
| | **Elements Not Reasonable** | | |
| 6 | RPV Removal Project (p. 15-16) | Not reasonable | Simply weighs evidence (criticizes Mr. Smith's conclusions and credentials); Repetitive of Brewer's report |
| 7 | Nozzle Cutting (pp. 16-17) | Not reasonable | Simply weighs evidence (makes a conclusion based on reading the |

| | | | |
|---|---|---|---|
| | | | deposition testimony of Mr. Smith);<br>Requires no "specialized knowledge" |
| 8 | Self-performance (pp. 17-19) | Not reasonable | Simply weighs evidence (makes a conclusion based on reading the deposition testimony of Mr. Smith);<br>Requires no "specialized knowledge" |
| 9 | Polar Crane (pp. 19-20) | Not reasonable | Simply weighs evidence (compares testimony of Mr. Brasel and Mr. Smith);<br>Requires no "specialized knowledge" |
| 10 | Contractors estimates (p. 20) | Not reasonable | Simply weighs evidence (makes a conclusion based on reading the deposition testimony of Mr. Smith);<br>Requires no "specialized knowledge" |
| 11 | Included costs not yet incurred (pp. 20-21) | Not reasonable | Simply weighs evidence (makes a conclusion based on reading a document and the deposition testimony of Mr. Smith);<br>Requires no "specialized knowledge" |
| 12 | Bio-Shield (p. 21) | Not reasonable | Parrots Mr. Brewer |
| 13 | Private Fuel Storage (pp. 21-22) | Not reasonable | Counsel's instructions;<br>Requires no expertise or "specialized knowledge" |
| 14 | Lobbying Costs (including lobbying payments to Mr. Barrett) (p. 22) | Not reasonable | Simply weighs evidence (reads the lobbying agreements);<br>Does not even rely on reading Mr. Barrett's deposition testimony to make a conclusion |
| | **Scenarios** | | |
| 15 | Scenario 2 | | Parrots Mr. Brewer and subtracts |
| 16 | Scenario 3 | | Parrots Mr. Brewer and subtracts;<br>Counsel's instructions |

In short, the Court should preclude Mr. Johnson's proposed testimony because he offers no "expert" opinion or analysis at all – the opinions he offers do not require, and

therefore do not reflect, any "specialized knowledge." Mr. Johnson therefore is nothing more than an improper advocate for the government's litigation positions.

## ARGUMENT

### I. THIS COURT SHOULD PRECLUDE TESTIMONY THAT IS NEITHER RELEVANT NOR RELIABLE

This Court functions as a "gatekeeper," admitting only expert testimony which is "relevant[,] reliable," and, ultimately, helpful. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). Expert testimony under Rule 702 is "relevant" where a witness offers "scientific, technical, or *specialized knowledge*" to the court, the knowledge "will *assist the trier of fact to understand the evidence* or determine a fact in issue," and the "witness qualifie[s] as an expert by knowledge, skill, experience, training or education." *Id.* (italics added). Further, the witness's "specialized knowledge" must be relevant to the particular opinions he gives, not just the general topics at issue. *See Westfed Holdings v. United States*, 55 Fed. Cl. 544, 571 (2003) ((quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). To also be "reliable," proposed expert testimony must be: (1) "the product of sufficient facts and data," (2) "based on reliable principles and methods," and (3) the product of a reliable application of these principles and methods to the facts of the case. *See* Rule 702. Expert testimony which "is connected to existing data only by the ipse dixit of the expert" is inadmissible. *General Electric Co. v. Joiner*, 522 U.S. 136, 139 (1997).

"The court has discretion to exclude expert testimony for its lack of helpfulness or relevance or for the expert's lack of qualifications on the issue about which he is being proffered to testify." *Pacific Gas & Elec. Co. v. United States*, 73 Fed. Cl. 333, 433

(2006) (citing *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942 (Fed. Cir. 1991)). The Court's gatekeeping function permits it to exclude such testimony if not relevant. *See Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1303 (Fed. Cir. 2001) (one purpose of gatekeeping role is to ensure that all expert testimony is both relevant and reliable). The Court should exercise this discretion and exclude expert testimony where the proponent fails to meet its burden and show that the proposed testimony meets Rule 702's standard. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987).

Moreover, the court has the discretion to exclude evidence where its probative value is substantially outweighed by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed R. Evid. 403 ("Rule 403").

## II. MR. JOHNSON'S "OPINIONS" THAT CERTAIN CLAIMED DAMAGES ARE "NOT INCREMENTAL" ARE BASED ON AN ERRONEOUS LEGAL STANDARD AND ARE IMPERMISSIBLE LEGAL CONCLUSIONS

In his Report, Mr. Johnson draws several conclusions based on whether he believes that particular items of Dairyland's claimed costs are "incremental" to Dairyland's damages. He defines his "incremental" standard as follows:

> In my opinion, costs includable as an element of damages must be incremental to the partial breach in order to be characterized as damages. As such, those costs must be directly related and necessary to the activities caused by the breach and reflect expenditures that would not have been made but for the breach.

Report at 6; App. at 8. This "incremental" standard, that Dairyland must prove that the damages it incurred were made "but for" the breach, is incorrect as a matter of law and

has repeatedly been rejected by this Court. There is no material difference in the standards applied by Mr. Johnson here.

In particular, Mr. Johnson's "but for" damages standard is contrary to the governing standard in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005) ("Damages for breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a *substantial causal factor* in the damages; and (3) the damages are shown with reasonable certainty.") (italics added) (citing *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1320 (Fed. Cir. 2002)). In *Indiana Michigan*, the Federal Circuit rejected the "but for" damages standard Mr. Johnson uses, finding instead that a utility could recover its damages where DOE's breach was a "substantial factor" in the utility's decision to expend the claimed costs. *See id.*; *see also Sacramento Mun. Util. v. United States*, 70 Fed. Cl. 332, 363 (2006) ("The United States Court of Appeals for the Federal Circuit, however, requires that a plaintiff need only demonstrate a 'substantial causal factor,' a lesser standard than the 'but for' standard.").

Mr. Johnson's opinions on incremental costs regarding indirect overhead and G&A, *see* Report at 7-9; App. at 9-11, were recently specifically rejected in *Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 442 (2007). Here, Mr. Johnson opines that overhead costs, such as costs related to Dairyland's Corporate Headquarters and cafeteria costs, and "baseline" internal labor costs, should not be awarded as damages because they "would not have been incurred but for the breach." Report at 7-10; App. at 9-12. Similarly, in *Southern Nuclear*, Mr. Johnson opined that the plaintiff had to prove that labor and overheard costs were incurred "but for the assertion of the partial breach."

*Id.*; *see also* Dep. 165:20-166:14; App. at 42-43. The *Southern Nuclear* Court rejected Mr. Johnson's opinion, citing and quoting from *Tennessee Valley Authority v. United States*, where the Court explained the governing legal principle as follows:

> The fact that TVA used its own internal resources to support its mitigation is not fatal to its claim for damages in mitigating a breach of contract. Rather the test for recovery is a targeted one: whether use of the internal resources by TVA deprived it of the ability to employ those resources on other projects. *That TVA would have paid its employees in all events is not material to this inquiry*.

*Southern Nuclear*, 77 Fed. Cl. at 442 (emphasis added) (citing *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515, 539 (2006)); *see also Pacific Gas & Elec. v. United States*, 73 Fed. Cl. 333, 408 (2006 ) ("To the extent that the costs of [the utility's] internal labor were in fact performed on a 'breach related project'…the court finds that such labor costs should properly be awarded to plaintiff."); *Sacramento Mun. Util. v. United States*, 70 Fed. Cl. 332, 376 (2006) ("The fact that an injured party has used internal resources to mitigate a breach does not foreclose the injured party from recovering such costs."). Because Mr. Johnson's opinions employ a legally-incorrect understanding of incremental costs, and given that his opinions about incremental labor costs have already been rejected for depending on this overly strict "but for" understanding, his opinions about incremental costs should likewise be excluded here for this reason alone. They are neither relevant nor helpful to the trier of fact.

Moreover, in opining on whether Dairyland's claimed costs are incremental, Mr. Johnson is a making a legal conclusion. Offering legal conclusions is not a proper subject for expert testimony. Mr. Johnson opines that in his analysis of incremental costs he considered whether "Dairyland represented costs that were incremental, that is, were

related to, or wouldn't have been incurred but for the breach, and to the extent that that involves causation, I did it to that extent." Dep. 67:16-22; App. at 41. It is well established that expert testimony expressing a legal conclusion must be excluded (with narrow exceptions not applicable here). *See, e.g., Sparton Corp. v. United States*, 77 Fed. Cl. 1, 9 (2007) ("Expert testimony is an improper mechanism for offering a legal opinion to the Court."); *Haberen v. Kaupp Vascular Surgeons Ltd.*, 812 F. Supp. 1376, 1378-79 (E.D. Pa. 1992) (an "expert may not opine legal conclusions drawn by applying the law to the facts."). The government has the opportunity to present its legal arguments through counsel and should not be permitted to do so "in the guise of expert testimony." *Haberen*, 812 F. Supp. at 1379. Because this Court is tasked with determining whether Dairyland's costs are recoverable, Mr. Johnson may not substitute his judgment for the Court's by issuing purportedly "expert" opinions on whether aspects of Dairyland's claim are "incremental" to the government's breach.

## III. MR. JOHNSON EMPLOYS NO "SPECIALIZED KNOWLEDGE," "RELIABLE PRINCIPLES AND METHODS," OR "QUALIFICATIONS" OF ANY TYPE TO CONCLUDE THAT CERTAIN OF DAIRYLAND'S CLAIMED COSTS ARE NOT "INCREMENTAL"

In addition to applying a legally-incorrect definition of "incremental," Mr. Johnson employs no "specialized knowledge" to categorize Dairyland's claimed costs as "not incremental." For each item of damages that Mr. Johnson criticizes on this ground, he manages to avoid offering any expert opinion in one of three ways:

1.) He unquestioningly adopts the conclusion of Mr. Brewer, and subtracts the costs Mr. Brewer suggests without adding any opinion of his own;

2.) He intrudes on the Court's exclusive power to weigh the evidence presented; or

3.) He provides no reason, principle, or method to support his conclusion, rendering it mere *ipse dixit.*

Mr. Johnson does not identify what qualifications he relies on when making his opinions. Although Mr. Johnson's "process…included inspection of accounting and cost related documents...," he also does not identify what expertise he relies on in offering his opinions. Report at 2; App. at 4. Mr. Johnson is an accountant, but does not claim to apply accounting expertise beyond his "inspection" and "review" of documents. *See* Dep. 6:2-6:4 (App. at 38); Report at 2 (App. at 4). Mr. Johnson is not an economist, forensic accountant, or fraud examiner, and he has no experience with the costs of operating, maintaining, or decommissioning a nuclear plant or with Reactor Pressure Vessel ("RPV") removal – the principal subjects of his opinions. Dep. 7:20-8:17; App. at 39-40. Mr. Johnson's only other competence listed on his resume is "litigation consultant." But that is not expertise that is helpful to the Court, and he does not claim it is. *See* Report at 25; App. at 27. Indeed, Mr. Johnson admitted at his deposition that his opinion relies on no "specialized knowledge" or expert analysis:

Q So in this instance the expertise in which you rely upon is your understanding of what constitutes incremental damages; is that fair?

A Incremental costs, which my opinion is how you measure economic harm in this situation.

****

Q Is there any particular reason why a lawyer, for example, couldn't make the simple determination that you made?

A I don't know how smart you are.

Q Well, assuming I'm of average intelligence…is there any particular reason that I couldn't read Mr. Brasel's testimony and Mr. Brower's [sic] opinion and come to the same conclusion and make a similar deduction?

A Do you believe incremental cost was necessary for damages? If you do, then you would reach the same conclusion.

Dep. 217:5-218:7; App. at 44-45. Mr. Johnson's opinions admittedly are the same opinions anyone of average intelligence who merely agreed with his (incorrect) definition of incremental could make, and as such, are not proper Rule 702 expert testimony.

A. Mr. Johnson Simply Weighs The Evidence Without Applying Any "Specialized Knowledge" And Thus Intrudes On The Sole Province Of The Court

Moreover, Mr. Johnson's "opinions" on incremental costs are merely weighing the evidence and offering inadmissible (and unhelpful) conclusions. The Court, not Mr. Johnson, has the exclusive authority to weigh the evidence and reach a conclusion as to its weight and sufficiency. *See Inwood Laboratories Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."); *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 8 (2007) (expert testimony excluded where it "invades the province of the court and is not helpful"); *Westfed Holdings Inc. v. United States*, 55 Fed. Cl. 544, 574 (2003) (Expert testimony "is not helpful if it draws inferences or reaches conclusions within the [trier of fact's] competence or within an exclusive function of the [trier of fact]." "[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process" and courts are free to exclude such testimony. *Coast Fed. Bank v. United States*, 48 Fed. Cl. 402, 439 (2000) (citation omitted).

All but one of Mr. Johnson's opinions to exclude the "incremental" costs are based not on "specialized knowledge," but rather are based on his reading, interpretation,

and weighing of deposition testimony by Dairyland fact witnesses: i) Mr. Stubbendick, Dairyland's Director of Accounting, ii) Mr. Christians, LACBWR's Plant Manager, and iii) Mr. Brasel, Dairyland's RPV Removal Project Manager. Based solely on Mr. Stubbendick's testimony, Mr. Johnson concludes that Dairyland's overhead and G&A costs related to its corporate headquarters are not incremental, and that NRC annual fees are not incremental. Report at 9 (App. at 11); 13-14 (App. at 15-16); Opinion Ref. No. 1, 5. Similarly, Mr. Johnson relies solely on Mr. Christians' testimony to conclude that baseline activity costs are not incremental, and that Nukem's resin removal and disposal was not incremental. Report at 10 (App. at 12), 13 (App. at 15); Opinion Ref. No. 2, 4. With regard to the Worldwide Performance and Innovation ("WPI") activities costs, Mr. Johnson relies solely on Mr. Brasel's deposition testimony to subtract two of the three costs, the GTCC Waste Determination and the scope of work entitled "Other Radioactive Materials Packaging/Disposal." Report at 11-12 (App. at 13-14); Opinion Ref. No. 3.

Mr. Johnson never offers an opinion in this section of his Report based on any "specialized knowledge." Instead, he cites a specific portion of a witness's deposition testimony, weighs the witness's deposition testimony, and concludes that Dairyland's costs should be excluded. In doing so, Mr. Johnson offers no expertise and has intruded on the exclusive province of this Court to determine whether such testimony represents sufficient evidence. Thus, Mr. Johnson's conclusions are both impermissible and unhelpful.

B. <u>Mr. Johnson Uses No "Specialized Knowledge" And Merely Echoes Mr. Brewer's Conclusions And Subtract The "Incremental" Costs He Suggests From Dairyland's Damages Claim</u>

Mr. Johnson stated his reliance on Mr. Brewer's opinion to support his conclusion that the "WPI Activities" cost claimed by Dairyland is not incremental. Report at 12; App. at 14; Opinion Ref. No. 3. Mr. Johnson all but admits that he adds nothing to Mr. Brewer's conclusion – that if a certain cost was a decommissioning related cost it is not a cost related to the government's breach – other than the ability to subtract:

> Q But the instances in your report where you've relied in part or in whole on Mr. Brower's [sic] opinions, was that based upon an independent assessment as to the correctness of those opinions or was it based upon something else?
>
> A It was based upon the opinions. When Mr. Brewer opines that something was a decommissioning required activity, I -- I neither agreed nor disagreed with the substance of the opinion. Rather, I considered and relied upon it where I've identified.
>
> ****
>
> Q If he said it's a decommissioned related cost, that was all you needed to know in order to determine whether it's not incremental or not?
>
> A That plus the amount of what the cost was.
>
> Q And to do that you presumably looked at Dairyland's data that was provided and made the appropriate deduction?
>
> A Correct.
>
> Q You didn't do anything to independently determine whether or not any particular cost was a decommissioning related cost or not, correct?
>
> ****
>
> A No….I do not have and have not offered the technical opinion that it was something that would have been required as a part of decommissioning activities.
>
> ****
>
> Q Now, other than what Mr. Brewer opined, do you have any other reason or

basis for making this deduction?

A No.

Dep. 221:3-221:13 (App. at 46); 221:20-222:18 (App. at 46-47); 224:2-5 (App. at 49). Clearly, Mr. Johnson's ability to subtract adds no "specialized knowledge," leaving him to act as nothing more than an echo chamber for Mr. Brewer's own unsupported opinions (which themselves are deficient, as set forth in Dairyland's separate motion).[2]

## IV. MR. JOHNSON EMPLOYS NO "SPECIALIZED KNOWLEDGE" TO CONCLUDE THAT CERTAIN OF DAIRYLAND'S CLAIMED COSTS ARE NOT "REASONABLE"

Mr. Johnson employs no "specialized knowledge" to categorize Dairyland's claimed costs for RPV removal, Private Fuel Storage ("PFS"), and lobbying costs as not "reasonable." For each item of damages that Mr. Johnson criticizes on this ground, he manages to avoid offering any expert opinion in one of four ways:

1.) He unquestioningly adopts the conclusion of Mr. Brewer, and subtracts the costs Mr. Brewer suggests without adding any opinion of his own;

2.) Per the instructions of government counsel, Mr. Johnson simply subtracts costs without adding any "specialized knowledge;"

3.) He intrudes on the Court's exclusive power to weigh the evidence presented; or

4.) He provides no reason, principle, or method to support his conclusion, rendering it mere *ipse dixit.*

[2] Should the Court grant Dairyland's pending Motion to Exclude Warren K. Brewer's Expert Testimony, filed on April 29, 2008, it would ipso facto require exclusion of these conclusions since they rely on that proposed testimony.

A. <u>Mr. Johnson's Opinion That Mr. Smith's Rpv Removal Cost Estimates Are Not "Reasonable" Is Not Based On "Specialized Knowledge;" Nor Is Any "Specialized Knowledge" Required To Echo Mr. Brewer's Conclusions And Subtract The Not "Reasonable" Costs Mr. Brewer Suggests From Dairyland's Rpv Removal Damages Claim</u>

Mr. Johnson does not offer any "expert" opinion of his own on Mr. Smith's RPV removal estimates, let alone one based on "specialized knowledge." Indeed, he admitted a non-expert could perform the same analysis he engages in here:

> Q And on what expertise do you rely upon to make that judgment in this instance, other than being able to read Mr. Brasel's testimony?
>
> A I -- I certainly am not in a position to judge the truthfulness of Mr. Brasel's sworn testimony. I can't rely on expertise. And to my knowledge only God has that expertise. What I have said is Mr. Brasel has testified about something that is contradictory to one of Mr. Smith's assertions in his but-for world….
>
> Q Well, why couldn't a nonaccounting expert or damages expert read the same testimony and draw the same conclusion?
>
> A Oh, I think you could.

Dep. 278:18-279:15; App. at 50-51 (objection omitted). Mr. Johnson's ability to cite deposition transcripts and weigh the evidence does not rise to the level of expert testimony and is not admissible. *See, e.g., Inwood Laboratories Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856 (1982).

Mr. Johnson criticizes Mr. Smith's conclusions as "not reasonable" based on Mr. Smith's (1) alleged failure to utilize Dairyland's "known" breach-world costs, such as the costs for nozzle-cutting; (2) conclusion that Dairyland would have self-performed in the non-breach world; (3) inclusion of engineering costs such as the scope of work related to Dairyland's Polar Crane; (4) alleged failure to provide adequate evidence for his

estimates; (5) inclusion of costs beyond 2006;[3] and (6) failure to consider activities that would have been required in the non-breach world such as the removal of the Bio-Shield. Report at 15-21; App. at 17-23. Mr. Johnson's "opinions" on these subjects are nothing more than possible cross-examination questions for Mr. Smith.

In his first five criticisms, Mr. Johnson merely takes a portion of Mr. Smith's deposition testimony and pastes it in his own Report to "prove" that Mr. Smith's approach is flawed:

- In his first criticism, Mr. Johnson opines that Mr. Smith's Report estimates a different non-breach world cost than the actual world cost, citing the nozzle cutting costs, and then pastes the portion of Mr. Smith's testimony where Mr. Smith explains how he used the non-breach world cost. Report at 16-17 (App. at 18-19); Opinion Ref. No. 6, 7. However, there is no "actual" world cost to use for the discrete tasks within the overall contract for RPV removal costs that Dairyland actually obtained, because the contract had a single fixed-price. Dairyland's contract did not contract for the individual elements separately.

- In his second criticism, Mr. Johnson opines that Mr. Smith had no basis to believe Dairyland would have self-performed the RPV removal. He then pastes the portion of Mr. Smith's testimony where Mr. Smith asserts he believed it to was reasonable to assume Dairyland would self-perform, and then pastes portions where Mr. Smith admitted he has not talked to Dairyland personnel as to why they hired a general contractor in the actual world. Report at 17-18 (App. at 19-20); Opinion Ref. No. 8. There is ample support for Mr. Smith's conclusion that Dairyland would have self-performed in the non-breach world (a conclusion within Mr. Smith's area of expertise) because absent the breach, there would have be no rush and no need to contract with a Barnwell-affiliated contractor. In addition, Dairyland is self-performing other tasks.

- In his third criticism, Mr. Johnson claims that Mr. Smith improperly included engineering judgments that are inconsistent with Mr. Brasel's, then pastes Mr. Brasel's testimony that the polar crane would have to be removed to remove the RPV through the top, and then merely pastes Mr. Smith's testimony where Mr. Smith states that the dismantlement of the polar crane was not necessary in order to remove the RPV through the top. Report at 19-20 (App. at 21-22);

[3] In an Order that post-dated Mr. Johnson's Report, the Court concluded that RPV removal costs incurred after 2006 may properly be considered in the upcoming trial.

Opinion Ref. No. 9. Mr. Brasel did not testify that the crane would have to be removed; he testified to what would have been done if it was hypothetically removed through the roof. Brasel Dep., 12/13/06, p. 142 (App. at 63). Regardless, the removal of the RPV through the top would not have required modification of the polar crane "as the outside diameter of the RPV will fit between the main girders of the polar crane when being lifted vertically." Smith Report at 4.

- In his fourth opinion, Mr. Johnson opines that Mr. Smith failed to provide adequate evidence for his contractors' estimates, and then pastes a portion of Mr. Smith's testimony where Mr. Smith relied on an estimate for part of his non-breach estimate. Report at 20 (App. at 22); Opinion Ref. No. 10. However, this is the manner in which people in the field, such as Mr. Smith, use estimates.

- In his fifth criticism, Mr. Johnson cites a document and pastes two sentences from Mr. Smith's deposition transcript to opine that Mr. Smith's tally of marginal costs included costs that have not been expended by year-end 2006. Report at 21 (App. at 23); Opinion Ref. No. 11. Although what Mr. Johnson asserts may be true, it has already been rejected by the Court, and Dairyland can recover costs incurred after 2006.

Mr. Johnson's "opinions" noted above are nothing more than an evaluation of *other* evidence. Mr. Johnson offers no "expert" opinion and employs no "specialized knowledge" because none is required to assess the evidence Mr. Johnson cites and relies upon for these "opinions." And here again, the evaluation of evidence that Mr. Johnson presents is ultimately a task for the Court – not a government witness.

With respect to his sixth and last criticism on the cost of the removal of the Bio Shield not being "reasonable," Mr. Johnson states that Mr. Brewer has opined on the subject, and simply accepts Mr. Brewer conclusion that the Bio Shield would have been removed "using the same method" in the same manner in both worlds. Report at 21

(App. at 23).[4] Indeed, Mr. Johnson testified that he does nothing more than simply accept Mr. Brewer's conclusion that the Bio Shield wall would have been removed:

> Q. And my next question was, is this [Bio Shield wall] opinion here based solely upon Mr. Brewer's opinion?
>
> A. It is.
>
> Q. Do you know whether or not the bioshield wall would have to be removed as part of the RPV removal process if the RPV is removed from the top of the reactor building?
>
> A. Of my own knowledge and expertise?
>
> Q. Yes.
>
> A. I do not.

Dep. 298:9-298:18; App. at 52. Mr. Johnson's ability to parrot Mr. Brewer's conclusion without applying any expertise of his own is not "specialized knowledge" and Mr. Johnson's resulting "opinion" is not admissible under Rule 702.

B. Mr. Johnson Employs No "Specialized Knowledge" To Simply Subtract PFS Costs Per Counsel's Instructions

In subtracting PFS costs, Mr. Johnson relies on nothing more than counsel's instruction where he explicitly states in his Report: "I have been instructed by DOJ counsel to remove the costs for PFS from the damage claim in their entirety" and then subtracts the cost. Report at 22; App. at 24; Opinion Ref. No. 13. At no point does Mr. Johnson offer his own opinion, let alone one based on "specialized knowledge."[5] His

---

[4] Mr. Brewer did not, as Mr. Johnson asserts, opine that the Bio-shield would be removed in the same manner; rather, Mr. Brewer opined that the "but-for world costs for removal of part of the shield wall (no matter what the method) should be included in the but-for world estimate." Brewer Report at 14 (App. at 65).

[5] In his deposition in *Pacific Gas & Electric*, Mr. Johnson's mere application of his "expertise" in subtraction was made even more explicit:

ability to subtract the costs suggested by counsel does not rise to the level of admissible expert testimony.

C. Mr. Johnson Uses No Expertise And Offers No Basis For Excluding Dairyland's Lobbying Costs

Mr. Johnson opines that certain lobbying costs Dairyland incurred - paying Government Strategies Incorporated ("GSI") and Mr. Barrett - are not "claimable as an element of damages." Report at 22; App. at 24; Opinion Ref. No. 14. GSI is a lobbying firm which Dairyland hired from 1999 through 2006 to assist Dairyland's efforts in Congress to get Dairyland's spent fuel removed. Mr. Barrett, currently a consultant, is the former head of DOE's spent fuel program. His lobbying work for Dairyland entailed working with DOE and lobbying Congress to try to get Dairyland's spent fuel moved. Absent the presence of the spent fuel - *i.e.*, if DOE had performed - there would have been no need for Dairyland to hire a lobbying firm or consultant to attempt to get Dairyland's spent fuel moved. Clearly, hiring a lobbyist and lobbying firm was part of Dairyland's reasonable efforts at mitigating costs "caused" by the government's breach.

Mr. Johnson's opinion that the lobbying costs are not reasonable and should be subtracted from damages is not based on any "specialized knowledge," but rather on his evaluation of just two facts. Report at 22; App. at 24. First, he read GSI's quarterly dues invoices. Report at 22; App. at 24; Dep. 317:6-318:2; App. at 53-54. Next, he read Mr.

---

Q. Have you added to Mr. Brewer's opinion about but for loading costs except the ability to subtract the 6.4 million dollars from the damages?

A. I'm really good at subtraction and I have subtracted it because it's a cost avoided.

PG&E Dep. 234:12-16; App. at 60.

Barrett's contract with Dairyland, and then made the determination that providing "advice to Dairyland regarding nuclear fuel related policies" is "not a necessary cost for the storage of spent fuel." Report at 22; App. at 24. Mr. Johnson is not qualified to provide an interpretation of an invoice and a contract, and even if he was, this is merely weighing the evidence, and not expert testimony. Moreover, Mr. Johnson offers this opinion despite acknowledging that Mr. Barrett's contract "might" include lobbying on the storage of spent fuel, and, more importantly, that he had never read Mr. Barrett's deposition testimony to find out what Mr. Barrett was actually engaged to do. Dep. 319:19-321:21; App. at 55-57. This "opinion" adds nothing; the Court is more capable of weighing this evidence and it alone has the power to do so.

## V. MR. JOHNSON'S OPINIONS ON ALTERNATIVE SCENARIOS EXHIBIT THE SAME FLAWS AS HIS OTHER "OPINIONS" AND SHOULD BE EXCLUDED UNDER RULES OF EVIDENCE 702 AND 403

Mr. Johnson's opinions concerning alternative scenarios that government counsel instructed him to create, based on assuming different performance dates by DOE, suffer from the same flaws as his other opinions. First, he opines in Scenario 2 on the impact of Dairyland's damages assuming completion of acceptance of Dairyland's spent nuclear fuel by 2005. Report at 23 (App. at 25); Opinion Ref. No. 15. Here, he merely parrots Mr. Brewer – "Mr. Brewer has opined that the costs of maintaining Dairyland's fuel in its spent fuel pool are not dependent on the number of assemblies that are stored in the pool" – and consequently, Mr. Johnson claims that Dairyland would bear all costs associated with the wet storage of fuel and reduces Dairyland's asserted damages claim by subtracting "all costs [prior to 2006] associated with the wet storage of its fuel." Report at 23; App. at 25.

Next, Mr. Johnson opines in Scenario 3 on the impact on damages if acceptance of Dairyland's spent nuclear fuel occurred after 2008. Report at 24; App. at 26; Opinion Ref. No. 16. Again, Mr. Johnson relies on the same statement as above by Mr. Brewer to subtract all costs prior to 2009 associated with wet storage. Report at 24; App. at 26. He then follows government counsel's instructions that Dairyland's asserted fuel storage related activities and costs would be no different in the breach and non-breach world, and then subtracts all the storage costs. *See id.* This instruction depends on another, underlying instruction that Mr. Johnson also received from government counsel, namely "that certain Dairyland fuel should be characterized as other than standard fuel and that Dairyland would be required to store such fuel for an indeterminate period of time."[6]

Mr. Johnson's "opinion" in both of these scenarios adds nothing useful and only demonstrates his ability to listen to others and to subtract. It is improper under Rule 702 and Rule 403 for Mr. Johnson to gain the imprimatur of "expert" testimony to support and parrot the government's argument when his testimony does not rely on any "specialized knowledge." Accordingly, this testimony is not helpful, not admissible under Rule 702, an undue delay and waste of time under Rule 403, and should be precluded.

---

[6] The latter instruction has no possible evidentiary basis and in fact is directly contrary to the government's sworn supplemental response to Dairyland's interrogatory no. 7, addressing failed fuel. In that response, the government explicitly refused to take a position on whether or not Dairyland's failed fuel would be removed at the same time as its other spent fuel, stating that Dairyland had the burden of proof on the issue. Dairyland's evidence, including testimony from Mr. Stuart, which is thus uncontroverted, will show that there is no problem with accepting and transporting Dairyland's failed fuel, and Mr. Parkyn will testify that there is no problem with storing it dry.

CONCLUSION

For the foregoing reasons, the Court should preclude Mr. Johnson's "expert" testimony.

Respectfully submitted,

April 29, 2008

s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
Kevin E. Stern
GREENBERG TRAURIG, LLP