No. 04-106C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

---

# DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE ADMISSION AT TRIAL OF DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
JOSHUA E. GARDNER
ANTHONY W. MOSES
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice

April 29, 2008

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX TO APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. DOCUMENTS PREPARED BY DOE'S CONTRACTORS ARE NOT GOVERNMENT DOCUMENTS AND, THEREFORE, SHOULD BE EXCLUDED FROM EVIDENCE AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. DOCUMENTS PREPARED BY DOE CONTRACTORS ARE NOT ADMISSIBLE PURSUANT TO FEDERAL RULE OF EVIDENCE 803(8)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. A Contractor For DOE Is Not An "Agency" Of The United States Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. Because The Contractor Documents That Plaintiff Identified As Trial Exhibits Were Not Prepared Or Adopted By The "Agency," They Are Not Admissible Under FRE 803(8)(A) As Public Records Or Reports Of The Agency's Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C. The Court's Decisions in Yankee Atomic and Pacific Gas, Admitting Contractor Documents as DOE "Admissions," Are In Error . . . . . . . . . . 14

D. Even If The Contractor Documents Were Somehow Considered Evidence Of The Activities Of The Agency, The Preliminary Nature Of The Documents At Issue Precludes Use Of FRE 803(8)(A) . . . . . . . . . . . . . . 18

III. ANY ASSERTION THAT FRE 803(6) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY DOE CONTRACTORS IS UNSUPPORTABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV. ANY ASSERTION THAT CONTRACTOR DOCUMENTS CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2) CONFLICTS WITH THE ROLE OF CONTRACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TABLE OF CONTENTS (cont'd)

PAGE

V. CONTRACTOR DOCUMENTS DO NOT CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VI. ANY ARGUMENT THAT DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS MANIFESTED AN ADOPTION OR BELIEF IN THEIR TRUTH UNDER FRE 801(d)(2)(B) IS MISPLACED . . . . . . . . . . . 30

VII. ANCIENT DOCUMENTS ADMISSIBLE UNDER FRE 803(16) ARE SUBJECT TO CHALLENGE AT TRIAL UNDER FRE 805 AS HEARSAY WITHIN HEARSAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

TABLE OF AUTHORITIES

CASES PAGE(S)

Air Land Forwarders, Inc. v. United States,
172 F.3d 1338 (Fed. Cir. 1999) ... *passim*

Alexander v. Estepp,
95 F.3d 312 (4th Cir. 1996) ... 11

Blue Water Envtl., Inc. v. United States,
60 Fed. Cl. 48 (2004) ... 8, 26

Brown v. ASD Computing Ctr.,
519 F. Supp. 1096 (S.D. Ohio 1981) ... 19, 20

Butler v. S. Pac. Co.,
431 F.2d 77 (5th Cir. 1970) ... 17

Chemtool, Inc. v. Lubrication Techs., Inc.,
148 F.3d 742 (7th Cir. 1998) ... 7

Coast Fed. Bank, FSB v. United States,
48 Fed. Cl. 402 (2000) ... 21

Columbia First Bank, FSB v. United States,
58 Fed. Cl. 333 (2003) ... *passim*

Connecticut Yankee Atomic Power Co. v. United States,
No. 98-154C (Fed. Cl.) ... 9

Ellis v. Kneifl,
834 F.2d 128 (8th Cir. 1987) ... 26

Erickson v. Baxter Healthcare, Inc.,
151 F. Supp. 2d 952 (N.D. Ill. 2001) ... 15

Glendale Fed. Bank, FSB v. United States,
39 Fed. Cl. 422 (1997) ... 25

## TABLE OF AUTHORITIES

CASES PAGE(S)

Hawthorne Partners v. AT&T Technologies, Inc.,
No. 91-C-7167, 1994 WL 63054 (N.D. Ill. Feb. 17, 1994) .................................... *passim*

Kirk v. Raymark Indus., Inc.,
61 F.3d 147 (3rd Cir. 1995) .................................................................................... 24, 28

Lockheed Martin Corp. v. United States,
50 Fed. Cl. 550 (2001), aff'd,
48 Fed. Appx. 752 (Fed. Cir. 2002) ........................................................................... 7, 26

Maine Yankee Atomic Power Co. v. United States,
No. 98-474C (Fed. Cl.) ........................................................................................ 9

Marsee v. United States Tobacco Co.,
866 F.2d 319 (10th Cir. 1989) ........................................................................... 12

Merrick v. Farmers Ins. Group,
892 F.2d 1434 (9th Cir. 1990) ........................................................................... 26

Pacific Gas & Elec. Co. v. United States,
73 Fed. Cl. 333 (2006) ........................................................................................ 14

Paul v. Federal Mine Safety & Health Review Comm'n,
812 F.2d 717 (D.C. Cir. 1987) ........................................................................... 29

Reid Bros. Logging Co. v. Ketchikan Pulp Co.,
699 F.2d 1292 (9th Cir. 1983) ........................................................................... 25, 28

Reynolds v. Green,
184 F.3d 589 (6th Cir. 1999) ........................................................................... *passim*

Rotec Indus., Inc. v. Mitsubishi Corp.,
215 F.3d 1246 (Fed. Cir. 2000) ........................................................................... 7, 29

Sabel v. Mead Johnson & Co.,
737 F. Supp. 135 (D. Mass. 1990) ........................................................................ *passim*

Sanford v. Johns-Manville Sales Corp.,
923 F.2d 1142 (5th Cir. 1991) ........................................................................... 26

## TABLE OF AUTHORITIES

CASES PAGE(S)

Smith v. Isuzu Motors Ltd.,
137 F.3d 859 (5th Cir. 1998) ........ 18

United States v. Davis,
826 F. Supp. 617 (D.R.I. 1993) ........ 13, 16

United States v. Guerrero,
114 F.3d 332 (1st Cir. 1997) ........ 12

United States v. Johnson,
752 F.2d 206 (6th Cir. 1985) ........ 24

United States v. Johnson Controls, Inc.,
713 F. 3d 1541 (Fed. Cir. 1983) ........ 7

United States v. Loera,
923 F.2d 725 (9th Cir. 1991) ........ 11

United States v. Lykes Bros. Steamship Co.,
432 F.2d 1076 (5th Cir. 1970) ........ 17

United States v. Orleans,
425 U.S. 807 (1976) ........ 8, 9

United States v. Portsmouth Paving Corp.,
694 F.2d 312 (4th Cir. 1982) ........ 24

United States v. Ramirez,
45 F.3d 1096 (7th Cir. 1995) ........ 11

United States v. Rojas,
53 F.3d 1212 (11th Cir. 1995) ........ 12

United States v. Rollins,
862 F.2d 1282 (7th Cir. 1988) ........ 31

United States v. Smith,
521 F.2d 957 (D.C. Cir. 1975) ........ 20

TABLE OF AUTHORITIES

CASES PAGE(S)

United States v. Vidaure,
861 F.2d 1337 (5th Cir. 1988) ........ 11

Wade v. South Bend Public Transp. Corp.,
No. S86-488, 1989 WL 516281 (N.D. Ind. May 16, 1989) ........ 24

Watts v. City of Hartford,
No. 00-681, 2004 WL 717132 (D. Conn. Mar. 31, 2004) ........ 16

Westfed Holdings, Inc. v. United States,
55 Fed. Cl. 544 (2003) ........ 31

Westinghouse Elec. Corp. v. United States,
Nos. 93-445C & 93-446C, 1997 WL 1068204 (Fed. Cl. June 4, 1997) ........ 9

Yankee Atomic Elec. Co. v. United States,
No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) ........ *passim*

Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.,
190 F.3d 238 (4th Cir. 1999) ........ *passim*

**STATUTES**

36 U.S.C. § 251 ........ 15

**MISCELLANEOUS**

5 J. Weinstein & M. Berger, Weinstein's Federal Evidence
§ 801.32[1], at 801 68-71 (2d ed. 2006) ........ 24, 27

Fed. R. Civ. P. 43(a) ........ 17

Fed. R. Evid. 801 ........ *passim*

Fed. R. Evid. 803 ........ *passim*

Fed. R. Evid. 805 ........ 32

H.R. Rep. No. 93-650, 93rd Cong., 2d Sess.
reprinted in 1974 USCCAN 7051, 7075, 7091 ........ 19

# INDEX TO APPENDIX

DOCUMENT PAGE

Contractor Documents Included on Plaintiff's Exhibit List ........................................................1

Excerpts of Deposition of Alan Brownstein, April 10, 2002..................................................12

Excerpts of Deposition of Alan Brownstein, May 23, 2002 ..................................................21

Excerpts of Deposition of Ronald Milner, May 3, 2002.........................................................25

Excerpts of Trial Transcripts in Sacramento Municipal Utility District v. United States, March 23, 2005...........................................................................................28

Memorandum, dated March 12, 1984, from Ron Liikala regarding Waste Management Program Strategy ...........................................................................................30

Cost Estimates of Operating Onsite Spent Fuel Pools After Final Reactor Shutdown, dated August 1991 ...........................................................................................35

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-106C<br>(Chief Judge Damich) |

DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE ADMISSION AT TRIAL OF DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

Defendant, the United States, respectfully requests that the Court enter an order to exclude the admission at trial of certain documents, which were prepared by Department of Energy ("DOE") contractors, included on the exhibit list provided to the Government in the above captioned matter on April 18, 2008.

SUMMARY OF ARGUMENT

Dairyland included on its exhibit list several exhibits, identified at pages 1 through 11 of our appendix to this motion,[1] that were prepared by contractors to DOE and were never adopted as policy by DOE. In fact, it appears that some of these documents were never even delivered to DOE and that they, instead, represent internal documents from within the contractors' files of which DOE, during the events at issue in this case, was never aware and that DOE never saw. Yet, Dairyland asserts that this Court should deem all of these documents, including documents

[1] The Government identified as contractor documents 137 of the exhibits on Dairyland's exhibit list. The 137 exhibits identified as contractor documents are listed on pages 1 through 11 of the appendix attached to this motion in limine. Although we have attempted to identify all contractor documents on Dairyland's exhibit list, we reserve the right to assert objections at the pre-trial conference and/or trial to any additional exhibits we identify as contractor documents.

that DOE never even saw relating to work that DOE never requested, as "admissions" of DOE and admit them into the trial record in this case. For the reasons set forth below, the Court should reject Dairyland's wholesale attempt to define every contractor document – regardless of whether DOE ever saw the document – as an admission of the Government.

## DISCUSSION

### I. DOCUMENTS PREPARED BY DOE'S CONTRACTORS ARE NOT GOVERNMENT DOCUMENTS AND, THEREFORE, SHOULD BE EXCLUDED FROM EVIDENCE AT TRIAL

Extensive trial testimony and deposition testimony from prior spent nuclear fuel ("SNF") cases specifically establishes that the contractors for DOE do not operate as part of DOE, and that documents created by such contractors do not constitute Government or public documents. For example, Alan Brownstein, then a Senior Policy Advisor to the Director of the Office of Civilian Radioactive Waste Management ("OCRWM"), specifically stated that documents created by the Pacific Northwest National Laboratory ("PNNL") in Richland, Washington, which is operated by a DOE contractor, do not represent DOE positions:

> Q. You're saying that for something to be adopted as department policy, additional people would have to review it and approve it?
>
> A. What I'm saying is that a contractor product is not departmental policy.
>
> Q. How would a contractor product become departmental policy?
>
> A. One way it would become that would be for it to be issued under DOE letterhead.
>
> Q. By issue, what do you mean?

> A. Number of ways – issued could be instructions or it could be a report. It could be a letter by a program official or, or contracting officer. Those are three ways.
>
> Q. So if it were incorporated into a DOE document or a DOE letter, then it could become departmental position, departmental position?
>
> A. Sure.

Dep. of Alan Brownstein, April 11, 2002, 574:7-576:2 (App. 19-20).[2] Similarly, Mr. Lake Barrett, then Deputy Director of OCRWM, testified that PNNL was a contractor and that DOE used PNNL to provide nothing more than advice, not to make policy decisions:

> Q. What is Pacific Northwest Laboratory?
>
> A. It's a contractor in Richland, Washington.
>
> Q. Were those contractors relied on often by the Department of Energy in connection with the development, design, and construction of the waste management system?
>
> MS. HERRMANN: Objection. Vague.
>
> A. We use them as advisors and analysts for the waste management system.
>
> * * *
>
> Q. Did you ever rely on the work of Pacific Northwest Laboratory?
>
> MS. HERRMANN: Objection. Vague.
>
> A. I used it as input.
>
> Q. For what purposes?

---

[2] "App. __" refers to the appendix attached to this motion.

A. For advice on systems analysis.

Dep. of Lake Barrett, May 10, 2002, Tr. 1150:3-1151:4 (App. 24).

In fact, Mr. Brownstein reiterated this point on several occasions with regard to contractor documents generally. With regard to another contractor document, he stated that "[t]his was a, this was, clearly was a contractor document. . . . That automatically means to me that it was, it was a, it was something that DOE had not signed off on. . . . The contractor documents . . . regularly go through extensive review and modification before they're, if they're ever accepted as a DOE document." Dep. of Alan Brownstein, April 10, 2002, 319:23-320:11 (App. 14). When questioned about a third contractor document, he clarified that "[t]his is a contractor document. Contractors make suggestions and recommendations to the department all the time. Because a contractor says something doesn't mean, you know, the department either wanted it or agrees with it." Dep. of Alan Brownstein, May 23, 2002, 140:3-9 (App. 22). Furthermore, with regard to a fourth document, Mr. Brownstein stated that "the contractor often made a lot of statements. . . . They write words, but because the contractor writes words does not mean it's departmental policy." Dep. of Alan Brownstein, April 11, 2002, 596:18-597:1 (App. 18).

Mr. Ronald Milner, then Chief Operating Officer of OCRWM, similarly testified that contractor documents do not speak for DOE:

> A. . . . In any event this is a contractor report which would never relate to a position the Department took, simply input data to it.
>
> Q. You say it would never relate to a position?
>
> A. It would never reflect, I'm sorry; not relate, it would never reflect the Department's position, it would simply input data to it.

> Q. The Department would have to subsequently take a separate position which might or might not approve or reflect what the contractor recommended?
>
> A. The Department would take a position based on information from a number of sources including its contractor's input.

Dep. of Ronald Milner, May 3, 2002, Tr. 443:19-444:8 (App. 26-27).

Mr. Christopher A. Kouts, Director, Office Systems Analysis and Strategy Development of OCRWM, similarly testified that contractor documents do not speak for DOE:

> Q. How does DOE regard these types of reports prepared by contractors?
>
> A. They're essentially the view of the contractor, and unless the Department issues its own report under its own letterhead, with the DOE stamp, as well as a document number, that's not DOE position or DOE policy.
>
> Court. Right. You're just getting advice?
>
> A. Right, that's correct.
>
> Q. And in terms of, I think you said putting it on DOE letterhead or the equivalent of that, who makes that decision regarding a contractor report or study or document?
>
> A. It's typically a DOE official, and that's routed through our senior management, and a decision is made that that document is acceptable and will be issued under a DOE letterhead. Let me give you an example. For instance, when we went through the site recommendation process [for Yucca Mountain], we went through many, many drafts of documents that were related to the Secretary's recommendation. And those drafts were prepared by contractors, but it wasn't until the Department issued those final documents that became part of the site

> recommendation that we adopted and we accepted the language in those reports, and therefore, it was issued under a DOE identification number, and it was considered a DOE document.

Testimony of Christopher A. Kouts, March 29, 2005, Tr. 2110:25-2112:4 (App. 28-29).

Given the significant evidence that these contractor documents do not constitute DOE documents and the lack of any evidence to the contrary, the Court should reject the underlying premise for Dairyland's apparent evidentiary argument to support the admission of these documents at trial.

## II. DOCUMENTS PREPARED BY DOE CONTRACTORS ARE NOT ADMISSIBLE PURSUANT TO FEDERAL RULE OF EVIDENCE 803(8)(A)

### A. A Contractor For DOE Is Not An "Agency" Of The United States Government

Dairyland seeks to introduce as substantive evidence numerous documents created by contractors for DOE. Documents created by Government contractors do not constitute Government or public documents admissible under Federal Rule of Evidence ("FRE") 803(8)(A) as records, reports, statements, or data compilations of public offices or agencies setting forth the activities of the offices and agencies.

The first hearsay exception upon which Dairyland may rely in seeking wholesale admission of all contractor documents for the truth of the matters asserted in those contractor documents is FRE 803(8)(A). That rule provides an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices and agencies, setting forth (A) the activities of the office or agency . . . ." The public records exception to the hearsay rule is justified by "the assumption that a public official will perform his duty properly and the

unlikelihood that he will remember details independently of the record." Zeus Enterprises, Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241 (4th Cir. 1999) (quoting FRE 803(8), Advisory Committee's Note to Paragraph (8)) (emphasis added); see Reynolds v. Green, 184 F.3d 589, 596 (6th Cir. 1999) (quoting same).

To the extent Dairyland claims that activities performed by a contractor to an agency are the same as those performed by the agency itself, and that all contractor activities should be attributed to the agency, Dairyland is simply wrong. To the extent Dairyland may assert that management and operations ("M&O") contractors function as DOE, there is no support for that assertion. Although the United States Court of Appeals for the Federal Circuit has found that "an agency relationship can be created by contract," it has determined that "not all contracts create agency relationships and not all conduct creates agency relationships." Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1256 (Fed. Cir. 2000) (quoting Chemtool, Inc. v. Lubrication Techs., Inc., 148 F.3d 742, 745 (7th Cir. 1998)). The determination of whether the relationship between contracting parties creates an agency relationship "focuse[s] on contract provisions [and] not day-to-day Government involvement in the performance of the subcontract." Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 557 (2001) (involving M&O contractor) (citing United States v. Johnson Controls, Inc., 713 F.3d 1541 (Fed. Cir. 1983)), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002). Specifically, the test for determining agency "requires an interpretation of the contract" and findings that "(1) the prime [M&O] contractor was acting as a purchasing agent for the Government; (2) the agency relationship between the Government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the Government would be directly liable to the vendors for the purchase price." Lockheed, 50 Fed.

Cl. at 562.

In Blue Water Envtl., Inc. v. United States, 60 Fed. Cl. 48 (2004), this Court held that a private contractor that operated a laboratory under an M&O contract with DOE could not be deemed a Federal "agency" for purposes of Tucker Act bid protest jurisdiction even if, as alleged, DOE exercised day-to-day supervision of the contractor's activities. Id. at 52. The Court further determined that, even if such supervision was sufficient to establish "agency," evidence was required to establish that DOE supervised or directed the subcontracting process about which the plaintiffs were complaining. Id. at 52-53. In sum, the plaintiffs was required to prove that an agency relationship was established by the contract, and that it created an agency relationship with regard to the specific work for which agency was being claimed, before the contractor could be deemed an "agent" for purposes of that work.

The difficulty with Dairyland's apparent assertion (given the inclusion of such contractor documents on its exhibit list) that the contractor statements at issue represent the views of DOE is highlighted by the United States Supreme Court's decision in United States v. Orleans, 425 U.S. 807 (1976). The Supreme Court explained that the critical element in distinguishing an "agency" of the Federal Government from a "contractor" for purposes of the Federal Tort Claims Act is the power of the Federal Government to control the detailed physical performance of the contractor. Id. at 814. Therefore, the issue is not whether the entity receives Federal money and must comply with Federal regulations, but whether its daily operations are supervised by the Federal Government. Id. at 815. The Supreme Court explained that any contrary finding would be inconsistent with general contracting principles:

> Billions of dollars of federal money are spent each year on projects performed by people and institutions which contract with the Government. These contractors act for and are paid by the United States. They are responsible to the United States for compliance with the specifications of a contract or grant, but they are largely free to select the means of its implementation . . . . Similarly, by contract, the Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs – or of state governmental bodies – into federal governmental acts.

Id. at 815-16.

Other SNF plaintiffs have cited as support for this "agency" argument the Court of Federal Claims' decision in Westinghouse Elec. Corp. v. United States, Nos. 93-445C & 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. June 4, 1997).[3] Yet, that decision only describes the general character of an M&O contractor. It does not purport to identify an M&O contractor as an "agent" of the Federal Government. As previously discussed, both this Court and its appellate court have rejected the concept that M&O contractors constitute "agents" of the Government. As explained in Orleans, the simple fact that the documents at issue were generated by DOE M&O contractors does not establish that any DOE contractor is an "agent" of DOE or that the contractor's documents are those reflecting the activities of the "agency." In fact, many documents evidence on their face that they do not express the views of an agency. For example, the first page of Dairyland's Exhibit No. 75 is a cover letter, dated March 12, 1984, from Battelle

---

[3] The plaintiffs in Yankee Atomic Elec. Co. v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.), previously cited to this case in support of their arguments for the admission of contractor documents at trial.

Pacific Northwest Laboratories seeking an internal contractor review of a "draft waste management program strategy." App. 30. The letter's author writes –

> [h]eadquarters [DOE] would like our [Battelle's] review and comments on this [draft waste management program] strategy and have asked us if we would be willing to provide help in flushing it out. . . . Please provide your comments to this office . . . along with your thoughts on providing the assistance they ask for in developing it further.

App. 30-34. As the cover letter shows, Battelle was asked to provide contractor services to DOE in the form of review and comment. Thus, Battelle did not act as an agent of DOE. Dairyland's otherwise unsupported assertions of agency cannot provide a basis for admitting documents under FRE 803(8)(A).

B. Because The Contractor Documents That Plaintiff Identified As Trial Exhibits Were Not Prepared Or Adopted By The "Agency," They Are Not Admissible Under FRE 803(8)(A) As Public <u>Records Or Reports Of The Agency's Activities</u>

As previously discussed, the public records exception to the hearsay rule is justified by "the assumption that a <u>public official</u> will perform his duty properly and the unlikelihood that he will remember details independently of the record." <u>Zeus Enterprises, Inc.</u>, 190 F.3d at 241 (quoting FRE 803(8), Advisory Committee's Note to Paragraph (8)) (emphasis added); <u>see</u> <u>Reynolds</u>, 184 F.3d at 596 (quoting same). Dairyland would expand this exception to the hearsay rule to include not only public records issued by "public officials" and Federal agencies, but also internal contractor documents prepared by Government contractor employees working under a contract with the Government. Dairyland apparently believes that the fact that these documents may have been prepared by a contracting party, albeit working for DOE, is irrelevant to their

admissibility as public records. Dairyland's apparent interpretation of the rule would create a ridiculous result. Under Dairyland's theory, all documents generated by a construction contractor with a contract to construct a Federal courthouse would become "public records" that are admissible in court proceedings without regard to their hearsay nature. A contractor could potentially generate documents that could be used against the Government in any litigation arising from that contract. Thus, documents created in the course of these working Government relationships with private industry would also appear to constitute the "public records" of DOE in Dairyland's view.

Dairyland's apparent assertions that Government contractor documents, even those of M&O contractors, somehow constitute Government documents for the purposes of FRE 803(8)(A) are unsupported by relevant case law. As an initial matter, the documents that courts have found appropriate to admit under the first clause of FRE 803(8) are typically classic public records – the type of documents that would spring to mind when thinking of a "public" record. See, e.g, Hawthorne Partners v. AT&T Technologies, Inc., No. 91-C-7167, 1994 WL 63054, at *5 (N.D. Ill. Feb. 17, 1994) ("the fact that the preliminary report is preliminary and that certain sections were not released until Hawthorne Partners subpoenaed them suggest that the preliminary report would not be easily construed as a public record under Rule 803(8)."). For instance, courts have admitted copies of a conviction, see United States v. Vidaure, 861 F.2d 1337, 1340-41 (5th Cir. 1988); an automobile's title history, see United States v. Ramirez, 45 F.3d 1096, 1101 (7th Cir. 1995); a county's registry of applicants for firefighter position, Alexander v. Estepp, 95 F.3d 312, 314 (4th Cir. 1996); a certified copy of docket entries in another court, United States v. Loera, 923 F.2d 725, 730 (9th Cir. 1991); and certifications

specifically authorized by statute made by a cabinet official or his designee, United States v. Guerrero, 114 F.3d 332, 340 (1st Cir. 1997); United States v. Rojas, 53 F.3d 1212, 1214 (11th Cir. 1995). Such documents are a far cry from the reports and memoranda, including those internal to the contractor that were never shared with DOE, that Dairyland would have this Court admit as substantive evidence of DOE policy or decisions.

More importantly, the contractor documents identified by Dairyland should not be admitted under FRE 803(8) simply because, as previously explained, they are not agency documents in any sense. See Marsee v. United States Tobacco Co., 866 F.2d 319, 325 (10th Cir. 1989) (neither an International Agency for Research on Cancer nor a National Institute of Health report qualified as a Government record under FRE 803(8)(B) because their contents were drawn from "a conference attended by scientists from various countries" and "a panel of scientists and non-scientists after a conference at which invited speakers presented papers," rather than the agencies themselves). As such, the reports did not fit the rationale for the FRE 803(8) hearsay exception. See Zeus Enterprises, Inc., 190 F.3d at 241. There is simply no reason to believe that the reliability attributed to documents created by public officials should be attributed to documents created by their contractors, especially where the relevant public officials have generally disavowed those documents as not representing the Government's position. Dairyland cannot establish that the documents at issue are, in fact, public records in the first place. Only after Dairyland makes that showing would the burden shift to require the Government to establish reasons that the public records in question should not be admitted.

Even where the admission of contractor documents as public records has been contemplated, in situations in which the Government has essentially adopted reports as its own,

an analysis has been conducted to demonstrate reliability that simply cannot be assumed for these documents. See, e.g., Hawthorne Partners, 1994 WL 63054, at *5 (discussing trustworthiness in the context of FRE 803(8)(C)). Courts have carefully considered whether the "work and analysis were performed at the direction and under the guidance of" the agency; whether "proposed work plans were reviewed for conformity with [agency] methodology and standards;" whether the agency "remained in close contact with" the contractors; whether the agency "required its contractors to submit regular reports concerning the project;" and whether the agency "reviewed prior drafts . . . requiring all necessary changes and additions to ensure the report's accuracy." Id. at *5 (citing United States v. Davis, 826 F. Supp. 617 (D.R.I. 1993)).

Dairyland cannot make a showing that the contractor documents have these indicia of "trustworthiness." In fact, the record in other SNF cases establishes that there was great variability in the degree of involvement and control that DOE exercised over contractor work. For instance, Alan Brownstein testified that "PNL did, did a number of pieces of work, some at my direction, and some that they pursued on their own consistent with work tasks that we gave them," and that DOE may, or may not, comment on PNNL documents. Dep. of Alan Brownstein, April 11, 2002, 562:18-564:2 (App. 16). Without specific showings of DOE involvement as well as adoption of contractor documents, such documents should be found to lack sufficient trustworthiness to be admitted as "public records" under FRE 803(8). See Hawthorne Partners, 1994 WL 63054, at *5 (finding "no indicia of reliability" where agency's working relationship and supervision of contractor was unknown).

C. The Court's Decisions in Yankee Atomic and Pacific Gas, Admitting Contractor Documents as DOE "Admissions," Are In Error

In two decisions, this Court has found that documents created by contractors of DOE should constitute "public records" of the United States pursuant to FRE 803: Yankee Atomic Elec. Co. v. United States, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004)[4] (unpublished), the rationale of which was adopted by the Court in Pacific Gas & Elec. Co. v. United States, 73 Fed. Cl. 333 (2006). However, as previously discussed, it is well-settled that even an M&O contractor is not the "agent" of the United States absent specific language in the contract between the M&O and the Federal agency that creates such a relationship. With all due respect, for the reasons discussed above, both of these decisions were wrongly decided.

The Court in Yankee incorrectly found that Government contractors working on behalf of DOE were essentially "public agencies" for purposes of FRE 803(8)(A). The legal authorities that the Court cited were construed much too broadly and do not support its conclusion that FRE 803(8)(A) automatically extends to Government contractors, because a contractor for DOE is not an "office" or "agency" of the Federal Government. The public records exception to the hearsay rule is justified by "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Zeus Enterprises, 190 F.3d at 241 (quoting FRE 803(8), Advisory Committee's Note to Paragraph (8)) (emphasis

[4] The Court deferred ruling on the admissibility of contractor documents as admissions of the defendant under FRE 801(d)(2) (finding that the circumstances "counsel against finding statements made in these documents to be 'admissions' by the DOE absent specific evidence that the contractual relationship included binding the government in this regard"). Id. at *11-12. The Court also deferred ruling on any additional theories of admissibility for the contractor documents, including the admission of such documents for their truth as business records under FRE 803(8) or 801(d)(2)(B). Id. at *12.

added); see Reynolds, 184 F.3d at 596 (quoting same).

The Government contractors that Dairyland has identified are not public officials as characterized by FRE 803(8)(A). Dairyland's argument in support of the admission of contractor documents effectively discards any distinction between the work conducted by a DOE employee within OCRWM (for example, Thomas Pollog, a long-time DOE employee working within OCRWM, including service as technical assistant to the contracting officer for the Standard Contract), and an engineer employed by Batelle, working at a Government laboratory managed by Batelle and writing a report or recommendation under a Government contract. The conclusion that a report authored by such an engineer meets the standard for a report of a public office or agency, when not approved in final form by DOE and not accepted and identified as an official DOE document, is unsupported by a plain reading of FRE 803(8)(A).

The cases that the Court cited in Yankee do not support the conclusion that Government contractors are the equivalent of public offices or agencies under FRE 803(8)(A). For example, Erickson v. Baxter Healthcare, Inc., 151 F. Supp. 2d 952 (N.D. Ill. 2001), involved a report prepared by the Institute of Medicine. The Court explained that, although the parties agreed that the Institute of Medicine was not a public office or agency, the National Academy of Sciences – the parent of the Institute of Medicine – was "created by an Act of Congress specifically to conduct investigations for, and report to, Congress." Baxter, 151 F. Supp. 2d at 966 (citing 36 U.S.C. §§ 251, 253). The Court concluded that the National Academy of Sciences is a "quasi-public entity" created to assist the Government and that "it was performing that function in this case." Id. at 966-67. The Court found that the Institute of Medicine had a "legal duty" to provide reports and the report at issue was a "report of a public office or agency." Id. at 967.

The Court analyzed the admissibility of the report under FRE 803(8)(C), not FRE 803(8)(A), and never addressed the issue of Government contractors under FRE 803.

In United States v. Davis, 826 F. Supp. 617 (D. R.I. 1993), the Government moved the Court in limine for the admission of a final Draft Remedial Investigation Report in a CERCLA case, pursuant to FRE 803(8)(C). In its findings, the Court explained that, although the work for the remedial investigation and feasibility study for the site was performed by a contractor, "[i]n November, 1986, the [Remedial Investigation] Report was approved by EPA and released to the public." Id. at 619 (emphasis added). This type of approval by the Government agency is absent from all of the contractor documents at issue in this case, and most were not released to the public.

In Watts v. City of Hartford, No. 00-681, 2004 WL 717132 (D. Conn. Mar. 31, 2004) (unpublished), the Court concluded that an annual report prepared by Hartford's Civilian Police Review Board "is admissible, in substantial part at least, under the public records exception to the hearsay rule." 2004 WL 717132 at *4. The Court explained that the review board was "established by ordinance" and was required to "submit an annual report to the City's Human Relations Commission . . . ." Id. at *3 n.2. The Court determined that such a non-governmental entity may be deemed a public agency for purposes of this exception when "it has an ongoing legal duty to provide the government with information or when it is a quasi-public entity created by the government to serve its needs." Id. at *4 n.8. Again, the Court never discussed or referenced any Government contractor in its decision. These cases and others that the Court in Yankee cites fail to address documents created by Government contractors (versus quasi-public agencies or offices created by ordinance or statute) and fail to provide any legal authority for the

proposition that documents created by Government contractors are the equivalent of documents created by public or governmental offices or agencies.[5]

The documents that courts have found appropriate to admit under the first clause of FRE 803(8) are typically classic public records. See, e.g, Hawthorne Partners, 1994 WL 63054, at *5 ("the fact that the preliminary report is preliminary and that certain sections were not released until Hawthorne Partners subpoenaed them suggest that the preliminary report would not be easily construed as a public record under Rule 803(8)"). Such documents are far different from the reports and memoranda that Dairyland would have this Court admit as substantive evidence of official DOE policy and decisions under FRE 803(8)(A).

---

[5] The Court's decision in United States v. Lykes Bros. Steamship Co., 432 F.2d 1076 (5th Cir. 1970), a case cited by other SNF plaintiffs seeking the admission of contractor documents, also fails to support the Yankee Court's finding that "public agency" should be construed broadly under FRE 803(8)(A). In Lykes, the United States Court of Appeals for the Fifth Circuit addressed the admissibility of evidence in Federal courts under a former version of Federal Rule of Civil Procedure ("FRCP") 43(a), which read, in relevant part: "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held." See Butler v. S. Pac. Co., 431 F.2d 77, 79 (5th Cir. 1970). The Court reviewed "several documents certified by the Department of Agriculture as being authenticated government documents, . . . all offered in evidence as official records under Title 28, U.S.C., § 1733, the government records statute." Lykes, 432 F.2d at 1079. The documents at issue were prepared by Republic of Korea officials pursuant to specific Federal Government regulations setting forth the method for preparation of certain commodity shipment reports, the substantive contents required for each report, and the process for inspecting the commodity shipments that were detailed in the reports. Id. at 1079. Emphasizing the "liberal application" of FRCP 43(a), and citing specific Government regulations applicable to the commodity-related reports, the court found that the duty to prepare the reports could be delegated, under Government regulations, to an independent agency or foreign government "without the report losing its character, when submitted through the appropriate United States agency, as a report of a 'department or agency of the United States.'" Id. at 1079-80. The court emphasized the existence of Government regulations – not present in the instant case – that permitted and authorized the delegation to prepare the reports. Lykes fails to support a broad interpretation of "public agency" under FRE 803(8)(A).

D. Even If The Contractor Documents Were Somehow Considered Evidence Of The Activities Of The Agency, The Preliminary Nature Of The Documents At Issue Precludes Use Of FRE 803(8)(A)

Even if Dairyland somehow could view contractor documents as the equivalent of records or reports of public officers or agencies, those documents still would not fall within the hearsay exception of FRE 803(8)(A) because of their preliminary or interim nature. In Smith v. Isuzu Motors Ltd., 137 F.3d 859 (5th Cir. 1998), cert. denied, 525 U.S. 1142 (1999), the plaintiffs attempted to introduce three memoranda prepared by staff members of the National Highway Traffic Safety Administration relating to a petition filed with the agency by Congressman Wirth, which asked the agency to establish stability standards for certain types of passenger vehicles. Smith, 137 F.3d at 861-62. Although the agency ultimately rejected the Wirth petition, the plaintiffs sought to introduce the three memoranda in which the staff members expressed opinions supporting the petition and the plaintiffs' theory of their case. Id. at 862. The United States Court of Appeals for the Fifth Circuit rejected the plaintiffs' argument that the preliminary memoranda fell within FRE 803(8)(A), finding that FRE 803(8)(A) does not apply to allow the admission of preliminary or interim evaluation opinions of agency staff members:

> Smith first argues that the memoranda qualify as public records within the meaning of Rule 803(8)(A). We disagree. Although NHTSA staff members prepared the memoranda in the course of evaluating the Wirth petition, the memoranda do not 'set forth' the 'activities of the agency' within the meaning of Rule 803(8)(A).
>
> Smith cites no case law in which Rule 803(8)(A) has been applied to allow the admission of the preliminary or interim evaluative opinions of agency staff members. Indeed, to apply Rule 803(8)(A) in the

> fashion Smith suggests would swallow whole Rule 803(8)(C) and its limitations. Rule 803(8)(C) provides a hearsay exception for 'factual findings resulting from an investigation made pursuant to authority granted by law' unless those findings lack trustworthiness. If memoranda reflecting the preliminary opinions of agency staff members were admissible under Rule 803(8)(A), then Rule 803(8)(C)'s limitations would be meaningless.

Id. at 862 (emphasis added) (citations omitted).

If the contractor documents were adopted by DOE and issued as the agency's public positions, Dairyland would have much better grounds for attempting to introduce contractor documents as public records. However, the contractor documents on Dairyland's exhibit list are not the agency's adopted positions, but, instead, at best, are nothing more than preliminary or interim evaluations of various issues that may, or may not, have ever been communicated to DOE. Even if these evaluations had been conducted by DOE employees, they would not necessarily fall within the requirements of FRE 803(8)(A), given their preliminary or interim nature.

"Prior to the adoption of the Federal Rules of Evidence in 1975, hearsay contained in agency memoranda or records could be admitted into evidence either under 28 U.S.C. § 1732 (1970) . . . , as writings made in the ordinary course of business, or under 28 U.S.C. § 1733 (1970) . . . as official records of an agency . . . ." Brown v. ASD Computing Ctr., 519 F. Supp. 1096, 1103 n.2 (S.D. Ohio 1981). "When the Federal Rules of Evidence were enacted, Rule 803(8) was considered to have been derived from § 1733 . . . ." Id. (citing H.R. Rep. No. 93-650, 93rd Cong., 2d Sess. reprinted in 1974 USCCAN 7051, 7075, 7091). "The assumption must be made that Congress was aware of the current status of court interpretations of [section] . . . 1733

when it enacted Rule[] . . . 803(8)." Brown, at 1103 n.2 (citing United States v. Smith, 521 F.2d 957, 968 n.24 (D.C. Cir. 1975)). "Despite this awareness, Congress failed to manifest an intention to alter the traditional interpretation of [section] . . . 1733 . . . ." Id. "Although Rule 803(8)(A)," on its face, "appears to be broad enough to include hearsay which is contained in agency documents not required or authorized by law, that provision cannot be read in so expansive a manner," and "interpreting subsection (A) to include matters such as internal agency memoranda would establish an undesirable precedent." Id. "[T]he House debate on the Proposed Rules of Evidence indicates that Congress intended to restrict, rather than broaden, the application of Rule 803(8)" from the admissibility standards contained in section 1733, as evidenced by Congressional debate regarding the need to narrow the exception contained in FRE 803(8)(B). Id. (citing various Congressional Record provisions). Given "the express concern of Congress over restricting subsection (B)" of FRE 803(8), "it would be incongruous to conclude that legislative intent could be circumvented by interpreting subsection (A) so expansively" to render the limitations imposed upon FRE 803(8)(B), and (C), irrelevant. Id.

## III. ANY ASSERTION THAT FRE 803(6) PROVIDES FOR THE ADMISSION OF DOCUMENTS GENERATED BY DOE CONTRACTORS IS UNSUPPORTABLE

To the extent Dairyland asserts that the Court can admit the contractor documents as "business records" pursuant to FRE 803(6), the Federal Circuit's decision in Air Land Forwarders, Inc. v. United States, 172 F.3d 1338 (Fed. Cir. 1999), makes plain that the contractor documents cannot be admitted on that basis. The Air Land Forwarders case involved claims by service members for damage to property by common carriers and freight forwarders. Id. at 1340. The service members submitted their claims to the United States with estimates done by third

parties. Id. The United States adjudicated the claims and, where appropriate, compensated the service member and sought reimbursement from the carriers or offset against payments due to the carriers. Id. The trial court admitted the third party estimates, which were in the files of the military, as "business records" of the military, and the carrier appealed. Id. at 1341-42.

In reaching its decision, the Federal Circuit reviewed authorities regarding the circumstances in which documents produced by third parties have been considered the business records of another entity in whose files they appear. Air Land Forwarders, 172 F.3d at 1342-43. The court concluded that a third party document may be admitted as another entity's business record where "the incorporating business rel[ies] upon the accuracy of the document incorporated and . . . there are other circumstances indicating the trustworthiness of the document." Id. at 1343. The circumstances upon which the Court relied included the fact that military personnel could be fined or imprisoned for submitting a false claim and that "Military Claims Office personnel were responsible for becoming familiar with the competency of estimators." Id. at 1343-44. The Court also held that admission of such documents would require "foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business." Id. at 1343; see Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 447 (2000) (testimony of individual could not secure the admission as business records of the records of various institutions because it did not establish requisite foundation), aff'd *en banc*, 323 F.3d 1035 (Fed. Cir. 2003).

This Court adopted the Air Land Forwarders approach in Columbia First Bank, FSB v. United States, 58 Fed. Cl. 333 (2003), finding that, "when a document produced by a third party is incorporated into the business records of another entity this circuit applies a two-factor

standard of reliability in order to admit a record that has an otherwise appropriate foundation." Id. at 339. With regard to the requirement that the entity must have "rel[ied] upon" the accuracy of the document, the Court found that "[r]eliance can be shown if the entity used the document in its dealings." Id. With regard to the requirement that there be "other circumstances indicating the trustworthiness of the document," the Court determined that "[i]ndicia of trustworthiness can be shown, to cite one example, by demonstrating the existence of legal consequences for falsity or inaccuracy in the document." Id. The Court further found that "[t]hird party documents," such as documents created by DOE's contractors, "kept in the records of a party in this case must be shown to have been received and incorporated, to have been relied upon, and to have indicia of trustworthiness to meet the Air Land Forwarders test for the business records exception in Fed. R. Evid. 803(6)" and that "[t]he proponent of such evidence at trial must show that this test has been met to overcome a hearsay objection." Id.

Under the applicable case precedent, there is no basis for admitting the contractor documents under FRE 803(6). With regard to contractor materials that made their way to DOE files or into individual files of employees at DOE, Dairyland cannot establish the foundation necessary to admit the documents. Dairyland has not identified as a trial witness anyone who is familiar with DOE's record-keeping procedures, will not establish whether particular documents came from individual employee files or official DOE files, will not call any witness to establish the reliability of the record-keeping practices of individual employees regarding documents that might have come from their own personal files or that they kept these documents "in the regular course of business," will not be able to establish that DOE has relied on the accuracy of the documents, and will not be able to identify other circumstances that support the trustworthiness

of the documents. Indeed, it is difficult to imagine how they could do so, even with a knowledgeable witness, considering the significant previously discussed testimony to the contrary at trial and in the depositions.

## IV. ANY ASSERTION THAT CONTRACTOR DOCUMENTS CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2) CONFLICTS WITH THE ROLE OF CONTRACTORS

Dairyland may also assert that the documents generated by contractors to DOE are admissible pursuant to FRE 801(d)(2)(C) or 801(d)(2)(D). FRE 801(d)(2) provides that a statement is not hearsay if –

> [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment . . . . The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), [or] the agency or employment relationship and scope thereof under subdivision (D) . . . .

FRE 801(d)(2).

With regard to subdivision (C), Dairyland has not identified any testimony or documents to establish that the DOE contractors were "authorized" to speak for the Government under FRE 801(d)(2)(C). In fact, other SNF plaintiffs have not cited to a single case in which a Government contractor was found to be "authorized" to make admissions upon behalf of the Government. To the contrary, for the same reasons previously explained, a contractor serves as just that: a contractor. It does not make policy for DOE, and it does not speak for DOE, unless that authority

is expressly identified in a contract. Dairyland and the other SNF plaintiffs have not identified any basis for finding DOE's contractors "authorized" to make admissions upon DOE's behalf.

FRE 801(d)(2)(C) treats a statement as non-hearsay if it is "offered against a party" and is "a statement by a person authorized by the party to make a statement concerning the subject." However, even with regard to "many forms of employment, the authority of the declarant to make a statement on behalf of the party must be indicated expressly or demonstrated by particular circumstances, because the relationship between the declarant and the party does not itself imply the authority in question." 5 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 801.32[1], at 801-69-70 (2d ed. 2008). Moreover, "[c]ourts have historically applied agency law to determine whether the declarant was authorized by the party to make the statement at issue." Id. § 801.32[2], at 801-70; see Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3rd Cir. 1995) ("Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered"); United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir. 1982) (FRE 801(d)(2)(C) "demands as a prerequisite to admissibility a showing based on evidence independent of the alleged hearsay that the declarant is an agent of the party with authority to speak on the subject"); United States v. Johnson, 752 F.2d 206, 210 (6th Cir. 1985) (citing FRE 801(d)(2)(C), "[o]rdinarily, agency doctrine is applied in determining whether a party will be held to the statements of his or her attorney"); Sabel v. Mead Johnson & Co., 737 F. Supp. 135, 138 (D. Mass. 1990) (admissibility under FRE 801(d)(2)(C) "is governed not by the trustworthiness of the statement, but by the existence and scope of the principal-agent relationship as determined under the common law of agency"); Wade v. South Bend Public Transp. Corp., No. S86-488, 1989 WL 516281, at *5 (N.D. Ind. May 16, 1989) ("admissibility of

statements under Rule 801(d)(2)(C) and (D) is determined by applying principles of agency law").[6]

"An agency relationship has three essential characteristics: 1) the power of the agent to alter the legal relationships between the principal and third parties and the principal and himself; 2) the existence of a fiduciary relationship toward the principal with respect to matters within the scope of the agency; and 3) the right of the principal to control the agent's conduct with respect to matters within the scope of the agency." Sabel, 737 F. Supp. at 138. However, "[t]he courts have looked primarily at the issue of control in determining whether an agency relationship

---

[6] To the extent the Court in Glendale Fed. Bank, FSB v. United States, 39 Fed. Cl. 422 (1997), found that the speaker at issue need not be an "agent" of the party, that finding conflicts with the weight of authority regarding FRE 801(d)(2)(C). Nevertheless, the Court in Glendale recognized that the statement of the expert witness at issue "reflect[ed] the position of the party who retain[ed]" him when the Government, by the time of trial, had listed the expert as its testifying witness. Id. at 424. Here, Dairyland is seeking to admit statements of M&O contractor employees, regardless of whether DOE ever adopted their statements as DOE policy or as an official statement of DOE. There has been no showing that the DOE contractors' views are the views of the Government or that they were adopted by the Government. The Government receives numerous reports and statements from contractors and could not possibly adopt or agree with all recommendations or scenarios promoted in these documents. Unlike Glendale, there was not any explicit authorization for any of the contractors at issue to speak on behalf of DOE prior to the contractor documents at issue being officially approved by DOE and issued as DOE documents.

In another case previously cited by SNF plaintiffs as support that agency is not a requirement for the application of FRE 801(d)(2)(C), Reid Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292 (9th Cir. 1983), the appellate court held that an employee of a subsidiary company of the party challenging the admission of the document at issue was "authorized" under FRE 801(d)(2)(C) to make statements regarding the entire scope of a company's operations, the subject of the report prepared by the employee. The court's findings and analysis focused on the fact that the individual at issue was a company employee, that he was given extensive access and guidance in order to prepare a report, and that the report was presented to company executives and circulated to company officers and managers. Id. at 1306. In sum, neither Glendale nor Reid Bros. supports the argument that DOE contractors are authorized to make statements that qualify as admissions under FRE 801(d)(2)(C).

exists." Id. This Court has found in numerous cases that M&O contractors are not agents of the United States agency with which they have a contract. See Blue Water Envtl., 60 Fed. Cl. at 52; Lockheed Martin, 50 Fed. Cl. at 558-59, aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002); see also Sanford v. Johns-Manville Sales Corp., 923 F.2d 1142, 1149-50 (5th Cir. 1991) (doctor hired by asbestos makers to examine claimants was independent contractor, not agent); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1440 (9th Cir. 1990) (proponent failed to show that speakers were agents as opposed to independent contractors).

Dairyland may assert that DOE "authorized" its M&O contractor to make statements concerning the subjects in the documents that it seeks to admit as "party admissions" of DOE in this case. Even for those matters that DOE specifically requested the M&O contractor to consider and upon which it requested the contractor to report that action does not render the M&O contractor an "agent" of DOE or make its recommendations "admissions" of the Government:

> In addition to Mead Johnson's apparent lack of control, there is no evidence that the consultants were empowered to speak or act on Mead Johnson's behalf. *See Ellis v. Kneifl*, 834 F.2d 128, 131 (8th Cir. 1987) (statements of clerk of state court not admissible in suit against state court judge because clerk not authorized to act on judge's behalf). Mead Johnson never expressed an intent to be bound by the recommendations of the outside experts, nor did it even authorize or request them to prepare a written report on their findings and recommendations. The diversity of opinions expressed at the meeting, and the lack of resolution of differences among the experts, supports defendant's characterization of the meeting as a 'brainstorming session,' intended to generate ideas for defendant's further consideration, but not meant to establish its official position in any way.

Sabel, 737 F. Supp. at 139 (emphasis added).

Dairyland may also assert that some of the documents are admissible on their face under FRE 801(d)(2)(C) because some of them contain language providing that "[t]his report was prepared as an account of work sponsored by an agency of the United States Government." See App. 35-36 (PX 219). Although Dairyland may assert that this statement is tantamount to an assertion that the report is authorized by the Government, the statement merely reflects that the contractor preparing the document did so pursuant to a contract. It says nothing about the M&O contractor being "authorized" as an "agent" of the Government to prepare public reports or statements speaking for the agency. Moreover, pursuant to FRE 801(d)(2), the "contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C)." "Thus, the trial court will consider the declarant's statement in making the preliminary determination, but independent proof of the existence of the declarant's authority to speak for the party will also be required." 5 J. Weinstein & M. Berger, supra, § 801.32[2], at 801-71. Here, Dairyland relies on language in draft documents – without any other evidence or testimony – to suggest that the documents are actually final and "authorized" by DOE. Dairyland cannot meet its burden of establishing authorization simply through the documents themselves.

In addition, Dairyland has not identified any evidence to show that the DOE contractors' views are the views of the Government or that they were adopted by the Government. The Government receives numerous reports and statements from contractors and could not possibly adopt or agree with all recommendations or scenarios promoted in these documents. Furthermore, M&O contractors are not "agents" of the United States. The Court should find the

challenged documents are not admissible under FRE 801(d)(2)(C).

In Kirk v. Raymark Indus., Inc., 61 F.3d 147 (3rd Cir. 1995), the Court held that the testimony of an expert witness on behalf of a party could not later be used against that party in unrelated litigation unless there was a finding that the expert witness was "authorized to speak" on behalf of that party under FRE 801(d)(2)(C). The Court stated that "Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered." Id. at 164. The Third Circuit continued that, "[s]ince an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent." Id. Furthermore, "one can call an expert witness even if one disagrees with the testimony of the expert," so that proof must exist that an agency relationship was established. Id. In addition, even if the Court finds factual evidence of authorization to speak for a party, the statements must be within the scope of that authorization. See, e.g., Reid Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1306 (9th Cir. 1983) (holding that an employee was "authorized" under FRE 801(d)(2)(C) to make statements regarding the entire scope of a company's woods operations, the subject of the report prepared by the employee).

Barring evidence that the DOE contractors were subject to the control of the Government, or "authorized to speak" on behalf of DOE under FRE 801(d)(2)(C), the contractor documents at issue are inadmissible. Similar to an expert witness that can be called "even if one disagrees with the testimony of the expert," and is therefore not "authorized to speak" for that party, a DOE contractor could produce a report for the Government with which the Government disagrees. Kirk, 61 F.3d at 163. Analogous to the problem discussed by the Supreme Court in Orleans,

under the SNF plaintiffs' broad interpretation of the hearsay exception, all reports or statements by an M&O contractor, or any contractor, would become statements of the Government, regardless of whether the Government adopted, agreed with, or even was aware of these statements.

## V. CONTRACTOR DOCUMENTS DO NOT CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2)(D)

Dairyland may also assert that the contractor documents at issue may be admissible pursuant to FRE 801(d)(2)(D) under the theory that an agency relationship can be created by contract. However, Dairyland has not identified or cited to any contract creating an agency relationship between DOE and its M&O contractors. Instead, Dairyland simply relies upon the fact that DOE has entered into contracts with its M&O contractors in an attempt to create an agency relationship. Indeed, other plaintiffs' reliance upon Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246 (Fed. Cir. 2000), actually demonstrates the fallacy in Dairyland's argument. In Rotec, the Federal Circuit affirmed the trial court's rejection that certain statements fell within FRE 801(d)(2)(D), explaining that a contract must contain language creating an agency relationship for that rule to apply. The Federal Circuit reasoned that, although "an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships." Id. at 1256 (citations omitted).[7] The court

---

[7] Any reliance upon Paul v. Federal Mine Safety & Health Review Comm'n, 812 F.2d 717 (D.C. Cir. 1987), is equally unavailing. In Paul, a mining engineer worked under contract for Battelle Memorial Institute ("Battelle") in connection with "an experimental program for the underground storage of nuclear waste," known as the Exploratory Shaft Facility ("ESF"). Id. at 717-18. The ESFs, which occurred in 1981 – before the Nuclear Waste Policy Act ("NWPA") was passed – "were designed to permit testing of underground salt formations as a medium for storing nuclear waste." Id. at 718. The court explained that the ESF was sponsored by DOE and, in passing, explained that it was sponsored by DOE's "agent" for the project, Battelle. Id.

must decide "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." Id. (citations omitted). Here, Dairyland has not demonstrated that DOE has the right "to control the manner or method" in which its M&O contractors carried out their work. Consequently, any contention that the DOE contractor documents are admissible under FRE 801(d)(2)(D) is without merit. Absent such evidence, Dairyland has failed to satisfy its burden of proof regarding admissibility pursuant to FRE 801(d)(2)(D).

With regard to subdivision (D), it is clear that a contractor – even an M&O contractor – is not an "agent" of DOE. As previously discussed, Dairyland and the other SNF plaintiffs have failed to present any evidence that any of the particular contractors which authored documents that Dairyland now seeks to admit as admissions by DOE are agents of DOE, as evidenced by specific contractual provisions granting them that authority. Absent such evidence, Dairyland has failed to satisfy its burden of proof regarding admissibility under FRE 801(d)(2)(D).

## VI. ANY ARGUMENT THAT DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS MANIFESTED AN ADOPTION OR BELIEF IN THEIR TRUTH UNDER FRE 801(d)(2)(B) IS MISPLACED

Any claim that DOE's actions in making certain documents publicly available constitutes a manifestation of an adoption or belief in the truth of such documents, making them admissible pursuant to FRE 801(d)(2)(B), should fail. FRE 801(d)(2)(B) provides that a statement is not hearsay where it is offered against a party and is "a statement of which the party has manifested

---

However, this passing reference to Battelle as DOE's "agent" should be accorded little, if any, significance. First, this statement was dicta. Second, the project to which this case refers is not the permanent Federal repository, but, rather, related to DOE's early exploratory efforts that pre-dated the NWPA.

an adoption or belief in its truth." This Court has rejected the application of FRE 801(d)(2)(B) where the party seeking to introduce the evidence failed to establish either an agency relationship or adoption by the agency:

> Beyond its conclusory argument in briefing that Westfed relied upon the statements of these consultants, defendant did not demonstrate a manifestation of adoption. In order for a statement to be admitted as an adoptive admission, the proponent of the evidence must show a manifestation of [the other] party's intent to adopt another's statements, or evidence of the party's belief in the truth of the statements . . .' United States v. Rollins, 862 F.2d 1282, 1296 (7th Cir. 1988). Absent a showing of either an agency relationship or adoption, the statements made by these individuals and entities were not admitted as party admissions.

Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 565 (2003), aff'd in part, rev'd in part, 407 F.3d 1352 (Fed. Cir. 2005).

As in Westfed, the conclusion, unsupported by any case law, that certain exhibits prepared by DOE's M&O contractors are admissible under FRE 801(d)(2)(B), absent a showing that DOE had an agency relationship with these contractors or otherwise adopted the contractors' statements, should be rejected.

## VII. ANCIENT DOCUMENTS ADMISSIBLE UNDER FRE 803(16) ARE SUBJECT TO CHALLENGE AT TRIAL UNDER FRE 805 AS HEARSAY WITHIN HEARSAY

A number of the contractor documents on Dairyland's exhibit list may be "ancient documents." Pursuant to FRE 803(16), statements in ancient documents may not be excluded by the hearsay rule if the document has been in existence 20 years or more and the authenticity of the document is established. However, hearsay statements that are contained within ancient

documents, which themselves may be admissible pursuant to FRE 803(16), are not automatically admissible. In Columbia First Bank, FSB v. United States, 58 Fed.Cl. 333 (2003), the Court reasoned that "[c]ourts that have dealt with the issue of hearsay statements within ancient documents that are brought in by Fed.R.Evid. 803(16) have concluded that the hearsay within hearsay problem persists, and that excluding parts of such documents because of double hearsay is an appropriate application of [FRE] 805." Id. at 338 (emphasis added). Ultimately, the Court concluded that it "will consider at trial Fed. R. Evid. 805 hearsay within hearsay challenges to hearsay statements incorporated within documents admitted under Fed. R. Evid. 803(16)." Id. If the documents identified as ancient documents are admitted under FRE 803(16), the Government reserves its right to assert FRE 805 hearsay challenges to statements contained within the documents.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion and exclude from evidence at trial all documents prepared by Government contractors that are identified on Dairyland's trial exhibit list.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/Anthony W. Moses
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
JOSHUA E. GARDNER
ANTHONY W. MOSES
SONIA ORFIELD
SCOTT SLATER
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice

April 29, 2008