# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S WITNESS LIST

Pursuant to the Court's pretrial scheduling order entered February 21, 2008, and paragraph 13(b) of Appendix A to the Rules of the Court of Federal Claims, defendant, the United States, provides the following list of trial witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to: (1) identify additional witnesses for authentication of documents based upon the objections ultimately asserted by plaintiff, Dairyland Power Cooperative ("Dairyland"), in response to the exhibit lists served in this case; (2) amend this list as described in the Court's rules or based upon the Court's rulings upon motions *in limine* filed by Dairyland; and (3) call all witnesses listed on the witness list provided by Dairyland.

FACT WITNESSES

Government Employees (Present and Former)

1. Alan Brownstein
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

Mr. Brownstein may testify concerning the implementation of the Standard Contract, including the development of acceptance rates, the issuance and content of the Annual Capacity Report ("ACR"), the issuance and content of the Acceptance Priority Ranking ("APR") report, delivery commitment schedules, schedule negotiations, and other relevant matters.

Estimated Time For Direct Examination: 1 hour

2. Christopher Kouts
Director, Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts is expected to testify concerning the Department of Energy's ("DOE") plans to accept spent nuclear fuel at a geological repository and a Monitored Retrievable Storage ("MRS") facility, the reasons for the delays in the Yucca Mountain project, and DOE's ability to accept utility spent nuclear fuel, budgetary issues, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

3. Ronald Milner
15102 Carlbern Drive
Centreville, VA 20120

Mr. Milner, former Chief Operating Officer for DOE's Office of Civilian Radioactive Waste Management ("OCRWM"), may testify concerning the implementation of the Standard Contract, including the development of acceptance rates, the issuance and content of the Annual Capacity Report ("ACR"), the ACR issue resolution process conducted with industry representatives, the issuance and content of the Acceptance Priority Ranking ("APR") report, delivery commitment schedules, schedule negotiations, and other relevant matters.

Estimated Time For Direct Examination: 1 hour

4. Robert L. Morgan
P. O. Box 2584
Monument, Colorado 80132

Mr. Morgan, former Director of DOE's Nuclear Waste Policy Act ("NWPA") Project Office, is expected to testify concerning the early implementation of the NWPA, the formation of the Standard Contract, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

5. David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky is expected to testify concerning the Government's implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, and other relevant matters. Mr.

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 18th day of April, 2008 I caused to be served by hand and mailed via first-class mail a copy of "DEFENDANT'S WITNESS LIST" to:

Jerry Stouck, Esq.
Greenberg Traurig LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 04-0106C<br>(Chief Judge Damich) |

DAIRYLAND'S WITNESS LIST

Pursuant to the Court's Trial Preparation Order of February 21, 2008, Dairyland provides the following witness list:

1. Lake E. Barrett. 7805 Potters Mill Court, Derwood, Maryland 20855 (301) 519-8636. Mr. Barrett is a former Deputy Director and Acting Director of the Office of Civilian Radioactive Waste Management ("OCRWM") within the U.S. Department of Energy ("DOE") and he has been a consultant to Dairyland. Mr. Barrett may testify regarding the history of DOE's planning to accept spent fuel from utilities, a reasonable rate and schedule for DOE's acceptance of spent fuel from utilities and DOE's plans and expectations for exchanges amongst utilities of spent fuel acceptance allocations. One half hour of direct examination

2. John W. Bartlett. 1300 Crystal Drive, Arlington, Virginia 22202, (703) 415-4541. Dr. Bartlett, who is a former Director of OCRWM, will testify regarding the objectives and planning for and operation of DOE's commercial spent fuel acceptance and disposition program. He will also testify about his other work on matters related to

6. Frank C. Graves. 44 Brattle Street, Cambridge, Massachusetts 02138, (617) 864-7900. Mr. Graves is an expert in economics and the electric utility industry. Mr. Graves' testimony will address opinions described in his expert witness report and his rebuttal expert witness report, as well as matters addressed at his depositions. He may also testify on other related matters. Three and a half hours of direct examination.

7. Christopher Kouts. DOE.[3] Mr. Kouts is an official with OCRWM. Dairyland may call Mr. Kouts to testify regarding the history of DOE's planning to accept spent fuel from utilities, a reasonable rate and schedule for DOE's acceptance of spent fuel from utilities and DOE's plans and expectations for exchanges amongst utilities of spent fuel acceptance allocations. One half hour of direct examination.

8. Loring E. Mills. 132 Eareckson Lane, Stevensville, Maryland 21666, (410) 643-1244. Mr. Mills worked at the Edison Electric Institute ("EEI"), a utility trade association, from 1976 to 1993. Mr. Mills was a vice president of EEI from 1982 to 1993. Mr. Mills will testify concerning the background leading to the enactment of the Nuclear Waste Policy Act of 1982 and the development of the parties' contract. Mr. Mills will testify about the understandings and intentions of the contracting utilities regarding the pace and schedule of spent fuel acceptance. Mr. Mills also may testify about other related matters. Two hours of direct examination.

9. John D. Parkyn. DPC (608) 787-1236. Mr. Parkyn is a manager of special projects at Dairyland and Chairman of Private Fuel Storage ("PFS"). Mr. Parkyn will testify regarding LACBWR's history, Dairyland's contract with DOE, consideration of exchanges of approved delivery commitment schedules and the history and

---

[3] This abbreviation refers to individuals at the U.S. Department of Energy. The address there is 1000 Independence Avenue, SW, Washington, DC 20585.

Certificate of Service

I certify that the foregoing Witness List was served by hand on the following on April 18, 2008:

Russell A. Shultis
Trial Attorney
Commercial Litigation Branch
Federal Claims Section 1100 L Street, NW
Washington, D.C. 2053

Robert L. Shapiro

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 13 PURSUANT TO THE COURT'S DECEMBER 21, 2007 ORDER

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following response to Interrogatory number 13 of "Plaintiff's First Set Of Interrogatories," which were served on October 10, 2006 and are now being supplemented pursuant to the Court's order regarding the Government's interrogatory responses issued on December 21, 2007.

GENERAL OBJECTIONS

1. Disclosure of privileged or protected information: Defendant objects to each interrogatory to the extent that it is deemed to require disclosure of classified, confidential, or proprietary information or matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction upon disclosure, including the Privacy Act, 5 U.S.C. § 552a. Defendant will not produce privileged or protected documents, materials, or information in response to the document requests. The inadvertent production by defendant of documents protected by the attorney-client privilege, or any other privilege, shall not constitute a waiver of the applicable privilege or protection as to any document so produced, or as to any other document.

Federal Government. In responding to these interrogatories, defendant has focused upon the knowledge of the Department of Energy.

9. The objections set forth above apply to each of the numbered paragraphs of plaintiff's interrogatories.

DEFENDANT'S RESPONSE

INTERROGATORY NO. 13:

Do you contend that DOE would have picked up DAIRYLAND's FAILED FUEL later than the rest of its SPENT FUEL had the government begun SPENT FUEL acceptance from utilities starting not later than January 31, 1998? If so, state all bases for this contention.

ORIGINAL RESPONSE:

Defendant objects to this interrogatory upon the grounds that plaintiff seeks to have defendant make certain legal conclusions. Defendant also objects to this interrogatory because it is premature prior to the completion of fact discovery, given that defendant does not have adequate information regarding plaintiff's failed fuel to respond appropriately to this interrogatory. Defendant objects to this interrogatory as vague, overly broad, and unduly burdensome. Given that the design parameters for any storage facility that DOE might operate have not yet been defined, it is impossible to identify every technical impediment that could occur in the acceptance of failed fuel from Dairyland's nuclear reactor.

Without waiving these objections, defendant responds that, during his trial testimony on August 5, 2004, in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), David Zabransky explained the issues that might arise relating to the acceptance of failed fuel at any repository. Defendant refers plaintiff to that testimony for a response to this interrogatory.

Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

SUPPLEMENTAL RESPONSE:

The Court's February 5, 2007 order does not require any further supplemental of this response.

SUPPLEMENTAL RESPONSE PURSUANT TO DECEMBER 21, 2007 ORDER

In its December 21, 2007 order, the Court stated that, "if indeed the Government cannot say whether it would have accepted failed fuel from Dairyland on a schedule different than that for standard fuel given its lack of experience with such a situation and sufficient information from Dairyland regarding the extent of its failed fuel, it should say so directly." Order, at 4 (Dec. 21, 2007).

Dairyland's interrogatory here seeks a statement regarding the contention that the Government will make in this litigation regarding the schedule upon which DOE "would have" accepted Dairyland's failed fuel. The question that Dairyland asks – whether DOE "would have" picked up Dairyland's failed fuel on the same schedule as standard SNF – is irrelevant to this case. The only relevant question is whether DOE, under the terms of the Standard Contract, was required to do so. In response to the Court's direction, we do not intend to develop a contention regarding what DOE "would have" done regarding failed fuel had it begun SNF acceptance in 1998, given that it is irrelevant and unnecessary to this litigation. Further, we have no basis for asserting what DOE definitively "would have" done had it commenced SNF acceptance in 1998,

given that such performance might have involved extra-contractual activities and contract amendments, pursuant to mutual agreement by the parties, that are irrelevant to any consideration of damages for a breach of the existing contract terms.

Nevertheless, regardless of whether the relevant issue is, on the one hand, whether DOE "would have" accepted or, on the other hand, whether DOE was contractually required to accept Dairyland's failed fuel on the same schedule as standard fuel, we expect to contend at any trial of the matter in this case that, in the "but for" world, Dairyland's failed fuel would not have been accepted pursuant to the terms of the Standard Contract on the same schedule as standard SNF until and unless Dairyland had established that the failed fuel could have been safely handled and transported to a Federal facility, in the transportation cask to be provided by DOE, in accordance with applicable regulations and would not have required special handling as defined by Appendix E of the Standard Contract.

Although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. 3 ¶ A. For any SNF that a contract holder or "Purchaser," such as Dairyland, has designated as other than standard fuel, the Purchaser is required to obtain confirmation from DOE as to the "technical feasibility" of accepting such fuel pursuant to the "currently agreed to schedule." Id. Before DOE can evaluate whether the acceptance of particular failed fuel will require special handling or technology, the Purchaser must advise DOE of the condition of its fuel and ask DOE to confirm that schedule upon which that fuel will be accepted. See id., Art. VI.2(b) & Appendices E & F. To the extent that the Purchaser's description is inaccurate, DOE has the

right to refuse acceptance of the SNF, even if it has traveled to the Purchaser's site for the purposes of acceptance.

Through discovery in this case, we have learned that Dairyland has never inventoried all of its failed fuel, although it knows that it possesses at least some failed fuel with a level of failure that far exceeds much of the failed fuel that is being stored by many other nuclear utilities. Since 1980, Dairyland has maintained its SNF in a two-tiered storage rack in its spent fuel pool. The two-tiered rack configuration does not allow observation of all of Dairyland's SNF without removing fuel assemblies from the rack. Partly because of the risk of further fuel rod segment displacement of Dairyland's damaged fuel assemblies that could occur from additional handling of those assemblies, Dairyland has sought an exemption from Nuclear Regulatory Commission regulations that require Dairyland to perform a complete inventory of its spent fuel pool on an annual basis. Currently, Dairyland does not plan to perform such a complete inventory before 2010.

Dairyland has never advised DOE of the condition of its SNF pursuant to Appendices E and F of the contract. Further, Dairyland has never been in a position to be able to provide the necessary information about its fuel, even though it has been able to determine that at least <u>some</u> of it is grossly failed. Even today, Dairyland does not possess the information that is necessary to allow DOE to make a determination about Dairyland's specific failed fuel. Accordingly, Dairyland cannot meet its burden of establishing that DOE would have accepted Dairyland's SNF on the same schedule as standard SNF had it begun SNF acceptance in 1998, much less that DOE was contractually required to do so.

CERTIFICATE OF FILING

I hereby certify that on this 9th day of January 2008, I caused to be sent by first class mail and facsimile a copy of "DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NUMBER 13 PURSUANT TO THE COURT'S DECEMBER 21, 2007 ORDER" addressed as follows:

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)

ORIGINAL

IN THE UNITED STATES CLAIMS COURT

ORIGINAL

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 91-1676C<br>(Judge Tidwell) |

FILED
OCT 19 1992
U.S. CLAIMS COURT

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S RESPONSE OPPOSING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Charles C. Thebaud, Jr.
John C. Person
Newman & Holtzinger, P.C.
1615 L Street, N.W.
Suite 1000
Washington, D.C. 20036
(202) 955-6600

Counsel for
Dairyland Power Cooperative

October 19, 1992

Dairyland
04-106C
Defendant's Exhibit
0135

D135.001

TABLE OF CONTENTS


| | |
|---|---|
| TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . | i |
| TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . | iv |
| TABLE OF CONTENTS TO APPENDIX TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . | xi |
| **PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** . . . . . . . . . . . . | 1 |
| STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . | 1 |
| STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| I. Summary . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. Statement of Facts . . . . . . . . . . . . . . . . . . . | 3 |
| ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| I. The Standard For Granting Summary Judgment . . . | 9 |
| II. The LACBWR Sale Agreement Should Be Rescinded Because Performance Is Commercially Impracticable And Because The Purpose Of The Contract Has Been Frustrated . . . . . . . . . . . . . . . . . | 10 |
| A. The Unavailability Of Reprocessing Was An Unexpected Intervening Act, The Non-occurrence Of Which Was A Basic Assumption Of The LACBWR Sale Agreement . . . . | 12 |
| B. The Elimination Of Reprocessing Makes DPC's Performance Under The Contract Impracticable And Frustrates Its Purpose In Entering Into The Contract . . . . . . . . . . . . . . . . | 18 |
| III. DPC Is Entitled To Rescind The LACBWR Sale Agreement Because Of The Mutual Mistakes Of The Parties . . . . . . . . . . . . . . . . . . | 23 |
| A. The Mutual Mistakes Relate To Basic Assumptions Underlying The Contract . . . . | 24 |
| B. The Mutual Mistakes Had A Material Effect On The Agreed Upon Exchange Of Performance | 25 |
| C. DPC Did Not Assume The Risk Of Mistake . . | 28 |
| IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . | 33 |




D135.002

PLAINTIFF'S RESPONSE OPPOSING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT . . . 34

I. The Alleged "Releases" Do Not Bar DPC's Suit . . 34

A. The Release Contained In LACBWR Sale Agreement Cannot Be Enforced . . . . . . . . 35

B. The "Releases" Of March 8, 1983, February 21, 1986, And March 31, 1986, Lack Consideration . . . . . . . . . . . . . . . . 36

C. The Settlement Agreement Of June 27, 1985 Does Not Bar DPC's Suit . . . . . . . . 39

D. Alternatively, The "Releases" Of March 8, 1983, June 27, 1985, February 21, 1986, And March 31, 1986 Were Based On The Mutual Mistakes Of The Parties . . . . . . . . . . 42

E. Summary . . . . . . . . . . . . . . . . . . . 45

II. DPC's Claim Is Not Barred By The Sovereign Acts Doctrine . . . . . . . . . . . . . . . . . . . 46

A. The U.S. Cannot Invoke The Sovereign Acts Doctrine . . . . . . . . . . . . . . . . . . 46

B. The Collapse Of The Commercial Reprocessing Industry Was Not Attributal To A Sovereign Act . . . . . . . . . . . . . . . . . . . . . . 48

C. The Sovereign Acts Doctrine Is Not Applicable To Equitable Claims . . . . . . . . . . . . 53

III. The Doctrine Of Laches Does Not Bar DPC's Suit 56

IV. Rescission Of The LACBWR Sale Agreement Is An Appropriate Remedy . . . . . . . . . . . . . 63

A. The Reprocessing Of Spent Fuel Is An Executory Obligation Under The LACBWR Sale Agreement . . . . . . . . . . . . . . . . . . 63

1. DPC Is Obligated Under The LACBWR Sale Agreement To Dispose Of The Spent Fuel Generated By The LACBWR Reactor . . . . . . . . . . . . . . . 63

2. The Parties Contemplated That DPC Would Dispose Of The Spent Fuel By Commercial Reprocessing . . . . . . . 68

B. Even If The Contract Has Been Fully Performed, Rescission Of The LACBWR Sale Agreement Is Still Appropriate . . . . . . . . 71

V. The Mutual Mistakes Concerned Matters In Existence At The Time Of The Making Of The Contract, And DPC Did Not Assume The Risk Of The Nonavailability Of Commercial Reprocessing 74

A. The Mutual Mistakes Concern Matters In Existence At The Time Of The Making Of The Contract . . . . . . . . . . . . . . . 74

B. DPC Did Not Assume The Risk Of The Non-Availability Of Commercial Reprocessing 76

VI. DPC's Claims Of Commercial Impracticability And Frustration Purpose Survive The Sale Of The LACBWR Reactor . . . . . . . . . . . . . . . . . . . . . . 81

VII. The Relief Sought By DPC Is Reasonable And Appropriate . . . . . . . . . . . . . . . . . . . . 84

VIII. Conclusion . . . . . . . . . . . . . . . . . . . . 88

CERTIFICATE OF SERVICE



D135.004

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES


A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992) . . . . . 62

Air Terminal Services, Inc. v. United States, 165 Ct. Cl. 525, 330 F.2d 974, cert. denied, 379 U.S. 829 (1964) . . . . . 48

ALCOA v. Essex Group, Inc., 499 F. Supp. 53 (W.D. Pa. 1980) . . . . . 13, 19, 72, 76

Acme Process Equip. Co. v. United States, 171 Ct. Cl. 324, 347 F.2d 509 (1965), rev'd on other grounds, 385 U.S. 138 (1966) . . . . . 87

Albermarle Bank and Trust Co. v. United States, 12 Cl. Ct. 704 (1987), aff'd mem., 845 F.2d 1033 (Fed. Cir. 1988) . . . . . 85

Allied-General Nuclear Services v. United States, 839 F.2d 1572 (Fed. Cir. 1988) . . . . . 50, 53

American Employers Ins. Co. v. United States, 812 F.2d 700 (Fed. Cir. 1987) . . . . . 73

American Satellite Co. v. United States, 20 Cl. Ct. 710 (1990), later proceeding, 22 Cl. Ct. 547 (1991) . . . . . 47, 48

American Trading and Production Corp. v. Shell Int'l Marine Ltd., 453 F.2d 939 (2d Cir. 1972) . . . . . 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . 9

Appeal of Int'l Gunnery Range Services, ASBCA No. 34152, 90-1 B.C.A. ¶ 22,601 (1989) . . . . . 75

Asphalt Int'l, Inc. v. Enterprise Shipping Corp., 514 F. Supp. 1111 (S.D.N.Y. 1981) . . . . . 19

Atlas Corp. v. United States, 895 F.2d 745 (Fed. Cir.), cert. denied, 111 S. Ct. 46 (1990) . . . . . 74, 75

California Sand and Gravel, Inc. v. United States, 22 Cl. Ct. 19 (1990), aff'd mem., 937 F.2d 624 (Fed. Cir. 1991) . . . . . 68

CCM Corp. v. United States, 15 Cl. Ct. 670 (1988) . . . . . 85

Celotex Corp. v Catrett, 477 U.S. 317 (1986) . . . . . 9

Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F. Supp. 49 (S.D. Ohio 1986) . . . . . 71

Commonwealth Edison Co. v. Allied-General Nuclear Services, 731 F. Supp. 850 (N.D. Ill. 1990) . . . . . 85

Cornetta v. United States, 851 F.2d 1372 (Fed. Cir. 1988) . . . . . 56, 60, 62

Dahl v. United States, 695 F.2d 1373 (Fed. Cir. 1982) . . . . . 71

David Nassif Assoc. v. United States, 214 Ct. Cl. 407, 557 F.2d 249 (1977) . . . . . 64

Dean v. United States, 10 Cl. Ct. 563 (1986) . . . . . 61

Design and Production, Inc. v. United States, 18 Cl. Ct. 168 (1989) . . . . . 64

Dillon v. United States, 140 Ct. Cl. 508, 156 F. Supp. 719 (1957) . . . . . 54

Edwards v. United States, 19 Cl. Ct. 663 (1990) . . . . . 32

Everett Plywood Corp. v. United States, 22 Ct. Cl. 415, 651 F.2d 723 (1981) . . . . . 52

Far West Federal Bank v. Director, Office of Thrift Supervision, 787 F. Supp. 952 (D. Oregon 1992) . . . . . passim

Florida Power & Light Co. v. Westinghouse Elec. Corp., 826 F.2d 239 (4th Cir. 1987), cert. denied, 485 U.S. 1021 (1988) . . . . . passim

Freedman v. United States, 162 Ct. Cl. 390, 320 F.2d 359 (1963) . . . . . 52

Glassman Constr. Co. v. Maryland City Plaza, Inc. 371 F. Supp. 1154 (D.Md. 1974), aff'd mem., 530 F.2d 968 (4th Cir. 1975) . . . . . 86

Gulf Oil Corp. v. FPC, 563 F.2d 588 (3d Cir. 1977), cert. denied, 434 U.S. 1062 (1978) . . . . . 10

Harrison Engineering & Construction Corp. v. United States, 68 F. Supp. 350 (Ct. Cl. 1946) . . . . . 43

Hartle v. United States,
22 Cl. Ct. 843 (1991) . . . . . . . . . . . . . . . . . . . . 24

Hedstrom Lumber Co. v. United States,
7 Cl. Ct. 16 (1984) . . . . . . . . . . . . . . . . . . . . 53

Higgs v. United States,
212 Ct. Cl. 146, 546 F.2d 373 (1976) . . . . . . . . . . . 24

Horowitz v. United States,
267 U.S. 458 (1925) . . . . . . . . . . . . . . . . . 53, 54, 55

Houdaille Industries, Inc. v. United States,
138 Ct. Cl. 301, 151 F. Supp. 298 (1957) . . . . . . . . . 36

Hughes Communications Galaxy, Inc. v. United States, 26 Cl. Ct. 123 (1992) . . . . . . . . . 47, 53

International Union of Elec., Radio & Mach. Workers v. Singer Co., 540 F. Supp. 442 (D.N.J. 1982) . . . . . . . . . . . . . . . . . . . . 67

International Fidelity Ins. Co. v. United States,
25 Cl. Ct. 469 (1992) . . . . . . . . . . . . . . . . 64, 68

J.G. Watts Construction Co. v. United States,
161 Ct. Cl. 801 (1963) . . . . . . . . . . . . . . . . 35, 43

Jennie-O Foods v. United States,
217 Ct. Cl. 314, 580 F.2d 400 (1978) . . . . . . . . . . . 10

Jones v. United States,
1 Ct. Cl. 383 (1865) . . . . . . . . . . . . . . . . . . . 55

Kansas City, Mo. v. Kansas City, Ka.,
393 F. Supp. 1 (W.D. Mo. 1975) . . . . . . . . . . . . . . 19

L.K. Comstock & Co. v. United Eng. & Constructors,
880 F.2d 219 (9th Cir. 1989) . . . . . . . . . . . . . . . 69

McNamara Const. of Manitoba, Ltd. v. United States,
206 Ct. Cl. 1, 509 F.2d 1166 (1975) . . . . . . . . . . . 80

Miller v. United States,
135 Ct. Cl. 1, 140 F. Supp. 789 (1956) . . . . . . . . . . 52

National Presto Ind., Inc. v. United States,
167 Ct. Cl. 749, 338 F.2d 99 (1964), cert. denied, 380 U.S. 962 (1965) . . . . . . . . . . . . . . 75, 80-81

Natural Resources Defense Council v. Nuclear Regulatory Comm'n, 539 F.2d 824 (2d Cir. 1976), remanded, 434 U.S. 1030 (1978) . . . . . . . . . . . 51

Nossen v. United States,
189 Ct. Cl. 1, 416 F.2d 1362 (1969) . . . . . . . . . . . . 47

O'Neill v. United States,
231 Ct. Cl. 823 (1982) . . . . . . . . . . . . . . . . . . . . 55

Paccon, Inc. v. United States,
185 Ct. Cl. 24, 399 F.2d 162 (1968) . . . . . . . . . . . . . 36

Pacificorp Capital, Inc. v. United States,
25 Cl. Ct. 707 (1992) . . . . . . . . . . . . . . . . . . . . 65

Paragon Energy Corp. United States,
645 F.2d 966 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . 34

Pathman Constr. Co. v. United States,
817 F.2d 1573 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . 56

Paxson Elec. Co. v. United States,
14 Cl. Ct. 634 (1988) . . . . . . . . . . . . . . . . . . . . . 9

Quinault Allottee Ass'n v. United States,
453 F.2d 1272 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . 34

Research, Analysis & Development Inc. v.
United States, 8 Cl. Ct. 54 (1985) . . . . . . . . . . . . . 47

S.E.R., Jobs For Progress, Inc. v. United States,
759 F.2d 1 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . 56

Sacramento Navigation Co. v. Salz,
273 U.S. 326 (1927) . . . . . . . . . . . . . . . . . . . . . 66

Shedd-Bartush Foods of Illinois v. Commodity Credit
Corp., 135 F. Supp. 78 (N.D. Ill. 1955) . . . . . . . . . . . 54

So Good Potato Chip Co. v. Frito-Lay, Inc.,
462 F.2d 239 (8th Cir. 1972) . . . . . . . . . . . . . . . . . 67

Story Parchment Co. v. Paterson Parchment Paper
Co., 282 U.S. 555 (1931) . . . . . . . . . . . . . . . . . . . 87

Suannee River Finance, Inc. v. United States,
7 Cl. Ct. 556 (1985) . . . . . . . . . . . . . . . . . . . . . 64

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1978) . . . . . . . . . . . . . 52

Sylvannia Elec. Products, Inc. v. United States,
198 Ct. Cl. 106, 458 F.2d 994 (1972) . . . . . . . . . . . 65, 68

The Opera Co. of Boston v. Wolf Trap Foundation,
817 F.2d 1094 (4th Cir. 1987) . . . . . . . . . . . . . . . . 11

Tibshraeny Bros. Const., Inc. v. United States,
6 Cl. Ct. 463 (1984) . . . . . . . . . . . . . . . . . . . . . 70

Transatlantic Financing Corp. v. United States,
363 F.2d 312 (D.C. Cir. 1966) . . . . . . . . . . . . 10, 13, 22

Travelers Indem. Co. v. United States, 16 Cl. Ct. 142 (1988) . . . . . . . . . . . . . . . . . 56, 61

Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 459 F. Supp. 507 (S.D. Fla. 1978), aff'd sub nom. Florida v. Treasure Salvors, 621 F.2d 1340 (5th Cir. 1980), rev'd on other grounds, 458 U.S. 670 (1982) . . . . . . . . . 72

Triad Systems Corp. v. Alsip, 880 F.2d 247 (10th Cir. 1989) . . . . . . . . . . . . . . . . 71

United States v. Amdahl Corp., 786 F.2d 387 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . 87

United States v. Texarkana Trawlers, 846 F.2d 297 (5th Cir. 1988), cert. denied, 488 U.S. 943 (1988) . . . . . . . . . . . . . . . . . . . . 71, 73

Urban Data Sys., Inc. v. United States, 699 F.2d 1147 (Fed. Cir. 1983) . . . . . . . . . . . . . . . 87

Waegemann v. Montgomery Ward & Co., 713 F.2d 452 (9th Cir. 1983) . . . . . . . . . . . . . . . 10

Wah Chang Corp. v. United States, 151 Ct. Cl. 41, 282 F.2d 728 (1960) . . . . . . . . . . . . 55

Wilner v. United States, 23 Cl. Ct. 241 (1991) . . . . . . . . . . . . . . . . . . . . 87

Winstar Corp. v. United States, 25 Cl. Ct. 541 (1992) . . . . . . . . . . . . . . . . . . . 48, 52

Yerxa v. United States, 11 Cl. Ct. 110 (1986), aff'd mem., 824 F.2d 978 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . 62


**STATE CASES**


City of Vernon v. City of Los Angeles, 290 P.2d 841 (Cal. 1955) . . . . . . . . . . . . . . . . . 19

Leigh v. Hertzmark, 427 P.2d 668, 77 N.M. 789 (1967) . . . . . . . . . . . . . . 67

Office of Consumer Advocate v. Iowa State Commerce Commission, 428 N.W.2d 302 (Iowa 1988) . . . . . . . . . . . 18

Purnell v. Guaranty Bank, 624 S.W.2d 357 (Tex. Civ. App. -- Dallas 1981) . . . . . . . 71

Washington State Hop Producers, Inc. v. Goschie Farms, Inc., 773 P.2d 70, 112 Wash. 2d 694 (1989) . . . . . 82, 83

FEDERAL STATUTES

42 U.S.C. §§ 10101-10226 (1988) . . . . . 57

42 U.S.C.A. §10131 (1983) . . . . . 43

Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (1988) . . . . . 56

Department of Energy Organization Act, Pub. L. No. 95-91, 91 Stat. 565 (1977) . . . . . 61

Energy Reorganization Act of 1974, Pub. L. No. 93-438, 88 Stat. 1233 (1974) . . . . . 61

FEDERAL REGULATIONS

FAR § 15.160(e)(2) . . . . . 73

40 Fed. Reg. 42801 (1982) . . . . . 70

R.U.S.C.C. Rule 8(c)(1992) . . . . . 47

R.U.S.C.C. Rule 56 (1992) . . . . . 1

R.U.S.C.C. Rule 83.2 (1992) . . . . . 1

STATE STATUTES

U.C.C. § 1-205(3) . . . . . 70

U.C.C. § 2-615(a) . . . . . 10

MISCELLANEOUS

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure (1990)
§ 1270 . . . . . 48
§ 1278 . . . . . 48

6 Corbin on Contracts § 1331 (1962) . . . . . 10, 19

George E. Palmer, The Law of Restitution, (1978)
§ 7.2 . . . . . 71

J. Calamari et al., The Law of Contracts (3d ed. 1987)
§ 1-12 . . . . . 86
§ 3-4 . . . . . 65
§ 9-26 . . . . . 23, 25
§ 13-12 . . . . . 11

2A James W. Moore, Moore's Federal Practice (1992)
¶ 8.19[1] . . . . . 47
¶ 8.27[3] . . . . . 48
¶ 8.28 . . . . . 48

2 Pomeroy, A Treatise on Equity Jurisprudence (5th Ed. 1941)
§ 378 . . . . . 76

Restatement (Second) of Contracts (1981),
§ 152 . . . . . 28
§ 152, Comment c . . . . . 26
§ 152, Comment f . . . . . 36
§ 154 . . . . . 28
§ 210, Comment c . . . . . 65
§ 216, Comment b . . . . . 66-67
§ 222(1) . . . . . 69
§ 222(3) . . . . . 70
§ 261 . . . . . 9-10
§ 261, Comment a . . . . . 10, 18
§ 261, Comment b . . . . . 11, 15
§ 261, Comment d . . . . . 10, 18
§ 263 . . . . . 10, 15
§ 265, Comment a . . . . . 11, 19
Chapter 11, Introductory Note . . . . . 13

13 Williston on Contracts (3d ed. 1970)
§ 1557 . . . . . 84, 86
§ 1575 . . . . . 86

18 Williston on Contracts (3d ed. 1978)
§ 1937 . . . . . 10