IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE OF THE REASONS FOR THE DEPARTMENT OF ENERGY'S DELAY IN PERFORMANCE

Pursuant to RCFC 16, defendant, the United States, responds to the "Motion To Exclude Evidence Of The Reasons For DOE's 'Delay' In Performance – I.e., Its Breach Of Contract," that the plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on April 29, 2008. As set forth in greater detail below, because Dairyland's motion is premature, the Court should deny its request.

## ARGUMENT

### I. DAIRYLAND'S REQUEST IS PREMATURE, AS MR. KOUTS' PROPOSED TESTIMONY MAY BE RELEVANT TO COUNTER THE TESTIMONY BY DAIRYLAND'S WITNESSES AT TRIAL REGARDING THE RATE OF SNF ACCEPTANCE

Notwithstanding the acerbic rhetoric that Dairyland employs throughout its motion, the only specific evidence that Dairyland identifies as the subject of its request to exclude is the anticipated testimony by Mr. Christopher A. Kouts, a senior official at the Department of Energy ("DOE"), insofar as it relates to (1) "the reasons for the delays in the Yucca Mountain project;" (2) "DOE's ability to accept spent nuclear fuel;" and (3) "budgetary issues." Pl. Mot. at 1.

According to Dairyland, such testimony should be excluded because it could only be relevant to support the Government's assertion of an unavoidable delays defense at trial.[1] Pl. Mot. at 1; A2 (Def. Witness List at 2 ¶ 2).[2]

Contrary to Dairyland's assertions, at the present time, we are barred from invoking the "Unavoidable Delays" provision of the Standard Contract as a defense in this case. The United States Court of Appeals for the District of Columbia Circuit issued a writ of mandamus in 1997 in Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998) ("Northern States I"), that precludes DOE from relying upon that clause.[3] Although Mr. Kouts' proposed testimony concerning "the reasons

---

[1] On its witness list, in addition to the three specific areas of testimony that Dairyland identifies in its motion, the Government identified Mr. Kouts as a witness to testify at trial concerning, among other things, DOE's "plans to accept spent nuclear fuel at a geological repository and a Monitored Retrievable Storage ('MRS') facility." A2. Dairyland does not challenge this aspect of Mr. Kouts' proposed testimony. Mr. Kouts' testimony is relevant to establish DOE's understanding of the purpose and operation of the Standard Contract, including the agency's issuance of the 1991 Annual Capacity Report and the contractual rate-of-acceptance obligations identified therein. The determination of the contractually-required rate of acceptance is critical to the Court's evaluation of Dairyland's damages claim in this case, and Mr. Kouts' testimony will be helpful to the Court in determining DOE's obligations under the Standard Contract. The date at which Dairyland would have had the last of its SNF removed is wholly dependent upon the rate of acceptance of that fuel. Mr. Kouts' testimony will focus, in part, upon the intention of the Standard Contract, including the reasons behind the development of DOE's issuance of the 1991 Annual Capacity Report and Annual Priority Ranking. In short, the entire focus of the upcoming trial in this matter should center upon what, if any costs Dairyland has incurred as a result of DOE's delay in performance. Part of that analysis includes a determination of when Dairyland would have had the last of its fuel removed had DOE timely performed its contract obligations. See, e.g., Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 386 (2006) ("Plaintiff bears the burden of 'establishing what might have been' with reasonable certainty had defendant performed the Standard Contract."), appeal pending, No. 2007-5046 (Fed. Cir.)..

[2] "A__" refers to a page in the appendix that is attached to this brief.

[3] In Northern States Power Co. v. United States Dept. of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997), the United States Court of Appeals for the District of Columbia circuit issued a writ of mandamus enjoining the Government from relying upon the "Unavoidable Delays" clause of the

for the delays in the Yucca Mountain project," "DOE's ability to accept spent nuclear fuel" and "budgetary issues" could be relevant to support an unavoidable defense. Mr. Kouts' proposed testimony, depending upon the evidence that Dairyland introduces at trial, also may be relevant to other matters at issue that are separate and apart from the unavoidable delays defense.

In this regard, to the extent that Dairyland presents evidence at trial that DOE acted in "bad faith" or somehow breached an implied duty of good faith and fair dealing in discharging its performance obligations under the Standard Contract or otherwise in issuing DOE's 1991 Annual Capacity Report ("ACR") and Annual Priority Ranking ("APR"), which defines the maximum rate at which DOE was obligated to perform had DOE begun timely performance under the Standard Contract by January 31, 1998, Mr. Kouts' proposed testimony would be highly relevant to refute such allegations. For example, plaintiffs in other SNF cases have presented testimony at trial suggesting that, rather than acting in good faith, DOE has acted solely to reduce its potential litigation exposure when it defined the rate of acceptance in the 1991 ACR and APR. See, e.g., Yankee Atomic v. United States, 73 Fed. Cl. 249, 273-74 (2006); Amended Compl. ¶ 28, dated Dec. 26, 2000, Northern States Power Co. v. United States, No. 98-484C (Wiese, S.J.) ("DOE's

---

Standard Contract to excuse its delayed performance. We have consistently argued that the D.C. Circuit overstepped its jurisdiction and authority in issuing this writ of mandamus (given that the judicial review provision of the NWPA, 42 U.S.C. § 10139, does not permit the D.C. Circuit to review contract administration matters). In Nebraska Public Power District v. United States, 73 Fed. Cl. 650, 673 (2006), this Court determined that the writ of mandamus was void because, in issuing the writ, the D.C. Circuit "operated in excess of its jurisdiction and, specifically, without an appropriate waiver of sovereign immunity." This Court subsequently certified its decision for interlocutory appeal to the United States Court of Appeals for the Federal Circuit, Nebraska Public Power District v. United States, 74 Fed. Cl. 762 (2006), and, on December 3, 2008, the Federal Circuit heard oral argument. The Government reserves the right to challenge any determination of liability with respect to the Standard Contract if the writ of mandamus is lifted or otherwise deemed inapplicable.

failure to act has not been the result of inadequate resources."). [4] In such instances, the United States in the past has offered the testimony of Mr. Kouts – a member of the Senior Executive Service with nearly 30 years of experience at DOE who serves as the Principal Deputy Director of DOE's Office of Civilian Radioactive Waste Management – to refute the plaintiffs' allegations of "bad faith." For example, Mr. Kouts has testified in the past that, prior to 1998, DOE was hampered in performing its contract obligations by Congress' appropriation each year of only a fraction of the funding that DOE has requested for the SNF program.

Hence, in this case, the Government similarly intends to offer Mr. Kouts' proposed testimony regarding "the reasons for the delays in the Yucca Mountain project", "DOE's ability to accept spent nuclear fuel," and "budgetary issues" to rebut any allegations which Dairyland may present through trial testimony that the Government has somehow acted willfully or in "bad faith" in carrying out its obligations under the Standard Contract. Because we do not yet know the extent to which Dairyland will seek to introduce evidence at trial to challenge the "good faith" that DOE has displayed in discharging its obligations under the Standard Contract, the Court should refrain from prematurely excluding such testimony from Mr. Kouts at this stage of the litigation to avoid any unjust prejudice to the United States.

## II. THE UNITED STATES HAS NOT WAIVED THE RIGHT TO INVOKE THE UNAVOIDABLE DELAYS CLAUSE AS A DEFENSE TO LIABILITY

Dairyland erroneously asserts that, pursuant to RCFC 8, the Government has "waived" the right to offer any testimony that might relate to an unavoidable delays defense because it did

---

[4] The same counsel who represented the Yankee Atomic plaintiffs also represents Dairyland in this case.

not assert the clause as an "affirmative defense" in its answer to Dairyland's complaint. Dairyland's position is untenable and should be rejected.[5]

Although the Court need not resolve this issue at this time, where, as here, "a defense is bound up in the respective rights of the parties in light of the contract as a whole, a party lodging a general denial of contractual liability need not identify a specific contractual provision in its answer or responsive pleading to avoid waiver," and, thus, RCFC 8 cannot prevent a defendant in a contract claim "from invoking a part of the contract to defend against [plaintiffs'] claims." PYCA Industries, Inc. v. Harrison County Waste Water Mgmt. Dist., 177 F.3d 351, 363 (5th Cir. 1999). Accordingly, a specific article in a contract, such as one that excuses or limits performance because of "acts of Government" or other causes or contingencies clearly beyond the control of the contracting parties, is not an "affirmative defense" that must be specifically asserted in a defendant's answer pursuant to RCFC 8. PYCA Industries, 177 F.3d at 361 (a "no damage for

[5] As an initial matter, Dairyland's assumption that the Government could in some way "waive" the right to raise the unavoidable delays defense – when the Government was barred from raising that defense pursuant to the D.C. Circuit's writ of mandamus – is fundamentally flawed. It is "a well established rule of law that '[w]aivers of rights must be voluntary, knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" Reliance Ins. Co. v. United States, 20 Cl. Ct. 715, 723 (1990), aff'd, 931 F.2d 863 (Fed. Cir. 1991). Therefore, in this Court, waivers require (1) a voluntary intention to relinquish a right, privilege, advantage or benefit; (2) the existence at the time of the waiver of such right, privilege, advantage, or benefit at issue; and (3) actual or constructive knowledge thereof. See Youngdale & Sons Contr. Co. v. United States, 22 Cl. Ct. 345, 346 (1991) (citing Matter of Garfinkle, 672 F.2d 1340, 1347 (11th Cir. 1982)). Here, none of these three requirements for waiver is satisfied – nor could they be, as a matter or law. A court's injunction, such as the Northern States writ of mandamus, "must be obeyed . . . however erroneous the action of the court may be." Walker v. City of Birmingham, 388 U.S. 307, 314 (1967) (citing Howat v. State of Kansas, 258 U.S. 181, 189 (1922)). Because the Government's choice of action in this instance was in no sense voluntary, it may not operate as a waiver of the Government's right to invoke the unavoidable delays defense in this case pending the outcome of the Federal Circuit's determination of the Nebraska Public Power appeal.

delay clause" excusing performance for, among other things, "acts of Government" is not waived if not raised specifically as an "affirmative defense"); United States ex rel. H & S Indus., Inc. v. F. D. Rich Co., Inc., 525 F.2d 760, 767 (7th Cir. 1975) (availability of a particular contract clause as a defense for breach is not waived for failure to affirmatively plead the defense, as such a matter is to be resolved by interpreting the provisions of the contract as a whole); cf. Bull v. United States, 68 Fed. Cl. 212, 272, n.66 (2005) (an affirmative defense is viewed as encompassing "two types of pleadings: ones that admit the allegations of the complaint but suggest some other reason why there is no right to recovery, and ones that concern allegations outside of the plaintiff's prima facie case that defendant cannot raise by a simple denial in the answer.") (citation omitted).[6] Hence, a party's assertion of a contractual right is not an affirmative defense for purposes of RCFC 8. See, e.g., Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 321 (3d Cir. 2006) (a party's assertion of a contractual right "is not an affirmative defense"). Accordingly, the United States cannot be deemed to have foregone the right to invoke the "Unavoidable Delays" clause simply because the government did not expressly cite that clause of the Standard Contract in its answer to Dairyland's complaint.[7]

---

[6] Nevertheless, the Court in Southern Nuclear Operating Co. v. United States, 77 Fed. Cl. 396, 452-459 (2007), found that the Government waived the right to invoke the Unavoidable Delays clause as a potential defense to liability by not raising the defense at the outset of the litigation as a defense in the answer in response to the plaintiff's complaint. For the discussed in this brief, among others, the United States respectfully disagrees with the Court's holding regarding waiver in Southern Nuclear, and we have filed an appeal of that decision with the Federal Circuit, Southern Nuclear Operating Co. v. United States, No. 08-5028 (Fed. Cir.).

[7] In addition, Dairyland mischaracterizes in its motion the scope of the Federal Circuit's decisions in Maine Yankee Atomic Power Co. v United States, 225 F.3d 1336 (Fed. Cir. 2000), and Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States II"). In Maine Yankee, the Federal Circuit examined whether the Government could rely upon Article IX.B of the Standard Contract, the avoidable delays clause, to avoid liability for failing to begin acceptance of SNF in 1998. The Federal Circuit concluded that the avoidable delays clause only

CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Dairyland's "Motion To Exclude Evidence Of The Reasons For DOE's 'Delay' In Performance – I.e., Its Breach Of Contract," dated April 29, 2008.

---

applied to delays that occurred after performance began, and thus could not excuse DOE from liability for delay in the commencement of SNF acceptance. Id. The same day, the Federal Circuit issued its decision in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States II"), in which we had advanced precisely the same avoidable delay position as in Maine Yankee. In rejecting the Government's argument, the Federal Circuit expressly referred to its holding in Maine Yankee concerning the avoidable delays clause, but inadvertently used the words "unavoidable delays clause" rather than the avoidable delays clause when referencing the issue that Maine Yankee had decided. Id. at 1367 (emphasis added). Consequently, contrary to Dairyland's assertions, neither the decision in Maine Yankee nor in Northern States II addresses the argument that, pursuant to Article IX.A of the Standard Contract, the Government is excused from liability for delays in meeting its contractual obligations because of events beyond the control of DOE. This precise issue was fully briefed in the pending Nebraska Public Power appeal before the Federal Circuit.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/ Patrick B. Bryan
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

May 15, 2008

# APPENDIX

# INDEX TO APPENDIX


| DOCUMENT | PAGE |
| --- | --- |
| Defendant's Witness List | 1-9 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, Plaintiff, | ) | |
| v. | ) | No. 04-0106C (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S WITNESS LIST

Pursuant to the Court's pretrial scheduling order entered February 21, 2008, and paragraph 13(b) of Appendix A to the Rules of the Court of Federal Claims, defendant, the United States, provides the following list of trial witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to: (1) identify additional witnesses for authentication of documents based upon the objections ultimately asserted by plaintiff, Dairyland Power Cooperative ("Dairyland"), in response to the exhibit lists served in this case; (2) amend this list as described in the Court's rules or based upon the Court's rulings upon motions *in limine* filed by Dairyland; and (3) call all witnesses listed on the witness list provided by Dairyland.

FACT WITNESSES

Government Employees (Present and Former)

1. Alan Brownstein
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

Mr. Brownstein may testify concerning the implementation of the Standard Contract, including the development of acceptance rates, the issuance and content of the Annual Capacity Report ("ACR"), the issuance and content of the Acceptance Priority Ranking ("APR") report, delivery commitment schedules, schedule negotiations, and other relevant matters.

Estimated Time For Direct Examination: 1 hour

2. Christopher Kouts
Director, Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts is expected to testify concerning the Department of Energy's ("DOE") plans to accept spent nuclear fuel at a geological repository and a Monitored Retrievable Storage ("MRS") facility, the reasons for the delays in the Yucca Mountain project, and DOE's ability to accept utility spent nuclear fuel, budgetary issues, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

3. Ronald Milner
15102 Carlbern Drive
Centreville, VA 20120

Mr. Milner, former Chief Operating Officer for DOE's Office of Civilian Radioactive Waste Management ("OCRWM"), may testify concerning the implementation of the Standard Contract, including the development of acceptance rates, the issuance and content of the Annual Capacity Report ("ACR"), the ACR issue resolution process conducted with industry representatives, the issuance and content of the Acceptance Priority Ranking ("APR") report, delivery commitment schedules, schedule negotiations, and other relevant matters.

Estimated Time For Direct Examination: 1 hour

4. Robert L. Morgan
P. O. Box 2584
Monument, Colorado 80132

Mr. Morgan, former Director of DOE's Nuclear Waste Policy Act ("NWPA") Project Office, is expected to testify concerning the early implementation of the NWPA, the formation of the Standard Contract, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

5. David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky is expected to testify concerning the Government's implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, and other relevant matters. Mr.

Zabransky is also expected to testify concerning his knowledge of issues concerning the Standard Contract based upon his experience in the nuclear utility industry prior to his employment with DOE.

Estimated Time For Direct Examination: 1-2 hours

Plaintiff's Employees (Present and Former)

1. Michael Brasel
Dairyland Power Cooperative

Mr. Brasel is expected to testifying concerning Dairyland's rector pressure vessel removal project, spent fuel storage management issues at LACBWR, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

2. Robert Brimer
1218 Redwood Street
Onalaska, Wisconsin 54650-2367

Mr. Brimer is expected to testify concerning the investment by Genoa Fuel Tech in Private Fuel Storage, Dairyland's investigation of the exchange of approved Delivery Commitment Schedules, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

3. Roger Christians
Dairyland Power Cooperative

Mr. Christians is expected to testify about Dairyland's rector pressure vessel removal project, spent fuel storage management issues at LACBWR, decommissioning at LACBWR, accounting for internal labor and overhead costs, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

4. John Parkyn
Dairyland Power Cooperative

Mr. Parkyn is expected to testify about the formation of Genoa Fuel Tech and its investment in Private Fuel Storage, spent fuel management issues at LACBWR, decommissioning at LACBWR, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

5. Dr. Seymour Raffety
Dairyland Power Cooperative

Mr. Raffety is expected to testify concerning contract formation issues, spent fuel acceptance issues, the rate of acceptance, Dairyland's failed spent nuclear fuel, Dairyland's reactor pressure vessel removal project, decommissioning at LACBWR, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

6. Charles Sans Crainte
Dairyland Power Cooperative

Mr. Sans Crainte is expected to testify concerning Dairyland's investment in Genoa Fuel Tech and involvement in Private Fuel Storage, spent fuel management issues at LACBWR, Dairyland's reactor pressure vessel removal project, decommissioning at LACBWR, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

7. Keith Stubbendick
Dairyland Power Cooperative

Mr. Stubbendick is expected to testify concerning Dairyland's investment in Genoa Fuel Tech and involvement in Private Fuel Storage; Dairyland's costs, including the allocation of

indirect overhead and general and administrative overhead at Dairyland; Dairyland's accounting systems, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

Third Party Witnesses

1. Loring E. Mills
132 Eareckson Lane
Stevensville, MD 21666

Mr. Mills, formerly with the Edison Electric Institute, a utility trade association, from 1976 to 1993, is expected to testify concerning the development of the Standard Contract, the utilities' alleged understanding regarding the rate and schedule of spent nuclear fuel acceptance by DOE, and other relevant matters.

Estimated Time For Direct Examination: 1-2 hours

GOVERNMENT'S EXPERT WITNESSES

1. Warren Brewer
ABZ, Inc.
4451 Brookfield Corporate Drive
Suite 101
Chantilly, VA 20151

Mr. Brewer is expected to testify concerning his technical critique of the opinions offered by Dairyland's expert, Todd Smith, as well as offer other technical critiques of Dairyland's damages claim, including the identification of activities that would have occurred at Dairyland regardless of DOE's partial breach of the Standard Contract. Mr. Brewer's opinions and the bases for those opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Brewer's expert witness report.

Estimated Time For Direct Examination: 1-2 hours

2. R. Larry Johnson
Veris Consulting, LLC
11710 Plaza American Drive
Suite 300
Reston, VA 20190

Mr. Johnson is expected to testify concerning accounting issues associated with Dairyland's damages claim, including the identification of activities and costs that would have occurred at Dairyland regardless of DOE's partial breach of the Standard Contract and certain costs that are either unsupported or unreasonable from an accounting perspective. In addition, Mr. Johnson will testify concerning his critique of Dairyland's expert, Charles Wilkins. Mr. Johnson's opinions and the bases for those opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Johnson's expert witness report.

Estimated Time For Direct Examination: 1-2 hours

3. Jonathan Neuberger
Economists, Inc.
5980 Horton Street
Emeryville, CA 94608

Dr. Neuberger is expected to testify concerning an economic critique of the opinions of Frank Graves, Dairyland's expert witness, regarding Dairyland's claimed damages. Dr. Neuberger's opinions and the bases for those opinions are set out in his expert witness report. The information specified in Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B) is attached to Dr. Neuberger's expert witness report.

Estimated Time For Direct Examination: 1-2 hours

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Civil Division
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LORE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SCOTT SLATER
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

April 18, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 18th day of April, 2008 I caused to be served by hand and mailed via first-class mail a copy of "DEFENDANT'S WITNESS LIST" to:

Jerry Stouck, Esq.
Greenberg Traurig LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20006

CERTIFICATE OF FILING

I certify that on this 15th day of May, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE OF THE REASONS FOR THE DEPARTMENT OF ENERGY'S DELAY IN PERFORMANCE," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Patrick B. Bryan