**No. 04-106C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DAIRYLAND POWER COOPERATIVE,**

**Plaintiff,**

**v.**
**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE INCONSISTENT WITH THE GOVERNMENT'S CONTENTION INTERROGATORY ANSWERS

---

**GREGORY A. KATSAS**
**Acting Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**RUSSELL A. SHULTIS**
**Commercial Litigation Branch**
**Civil Division**
**U.S. Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tel: (202) 305-7571**
**Fax: (202) 305-2503**

**Attorneys for Defendant**

**OF COUNSEL:**

**JANE K. TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**1000 Independence Ave., S.W.**
**Washington, D.C. 20585**

**ALAN J. LO RE**
**Senior Trial Counsel**

**PATRICK B. BRYAN**
**JOSHUA E. GARDNER**
**SCOTT SLATER**
**Trial Attorneys**
**U.S. Department of Justice**

**May 15, 2008**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . 2

A. Interrogatory Nos. 9, 15, 16, and 17 . . . . . . . . . . 2

B. Interrogatory No. 13 . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . 6

I. STANDARD OF REVIEW . . . . . . . . . . 6

II. DAIRYLAND IS SEEKING TO EXCLUDE PROBATIVE EVIDENCE THAT IS CONSISTENT WITH GOVERNMENT INTERROGATORY RESPONSES . . . . . . . . . . 6

A. Interrogatory No. 13 . . . . . . . . . . 6

B. Interrogatory Nos. 9, 15, 16, 17 . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . 12

# TABLE OF AUTHORITIES

CASES PAGE(S)

Abbott Laboratories v. Brennan,
952 F.2d 1346 (Fed. Cir. 1991) . . . . . . . . . . 6

Alaska Pulp Corp. v. United States,
59 Fed. Cl. 400 (2004) . . . . . . . . . . 7

Bluebonnet Savings Bank v. United States,
67 Fed. Cl. 231 (2005) . . . . . . . . . . 7

Coast Federal Bank v. United States,
49 Fed. Cl. 53 (2001) . . . . . . . . . . 7

Deters v. Equifax Credit Info. Servs., Inc.,
202 F.3d 1262 (10th Cir. 2000) . . . . . . . . . . 6

Finch v. Monumental Life Ins. Co.,
820 F.2d 1426 (6th Cir. 1987) . . . . . . . . . . 6

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . 10

Laney v. Celotex Corp.,
901 F.2d 1319 (6th Cir.1990) . . . . . . . . . . 6

Pacific Gas & Electric v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . 8

San Carlos Irrigation & Drainage Dist. v. United States,
111 F.3d 1557 (Fed. Cir. 1997) . . . . . . . . . . 7, 10

Fawick Corp. v. United States,
149 Ct. Cl. 623 (1960) . . . . . . . . . . 7

Southern National Corp. v. United States,
57 Fed. Cl. 294 (2003) . . . . . . . . . . 7

United States v. Tan,
254 F.3d 1204 (10th Cir. 2001) . . . . . . . . . . 6

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Willems Indus., Inc. v. United States,
155 Ct. Cl. 360, 295 F.2d 822 (1961) . . . . . . . . . . 10

STATUTES

10 C.F.R. § 961.11 . . . . . . . . . . 4, 5, 8

Fed. R. Evid. 401 . . . . . . . . . . 6

Fed. R. Evid. 402 . . . . . . . . . . 6

Fed. R. Evid. 403 . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-0106C<br>(Chief Judge Damich) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE INCONSISTENT WITH THE GOVERNMENT'S CONTENTION INTERROGATORY ANSWERS

Pursuant to Rule 16 of the Rules of this Court ("RCFC"), defendant, the United States, respectfully responds to "Dairyland Power Cooperative's Motion *In Limine* To Exclude Evidence Inconsistent With The Government's Contention Interrogatory Answers" which plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on April 29, 2008.

SUMMARY OF ARGUMENT

Although by no means clear from its motion, Dairyland appears to be arguing that, based upon the Government's responses to certain interrogatories during discovery, the Court should preclude the Government from making certain arguments during the upcoming trial. As we explain below, to the extent that this is the argument Dairyland is making, the Court should deny Dairyland's motion because it appears to be nothing more than a veiled attempt by Dairyland to improperly shift the burden of proof regarding damages onto the Government and then make it impossible for the Government to meet that burden. Neither of these positions has merit.

## BACKGROUND

A. Interrogatory Nos. 9, 15, 16, and 17

Dairyland Interrogatory No. 9 states: "Do you contend that it was or would have been unreasonable for DAIRYLAND to study, analyze, investigate and/or implement dry storage of its SPENT FUEL at any time subsequent to DOE's partial breach of DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, explain all bases for this contention."

On August 7, 2007, the Government submitted the following supplemental response to Dairyland Interrogatory No. 9:

> The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.
>
> However, defendant states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that it was unreasonable for Dairyland to study, investigate, and/or implement dry storage. Further, the Government does not concede that any such studies were caused by DOE's partial breach of the Standard Contract.

Dairyland Interrogatory No. 15 states: "Do you contend that it was unreasonable for DAIRYLAND to store its SPENT FUEL in the LACBWR wet fuel storage pool at any time after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT? If so, DESCRIBE when you contend it became unreasonable for DAIRYLAND to continue to store its SPENT FUEL in the LACBWR wet fuel storage pool and DESCRIBE the specific alternative storage options you believe would have been reasonable for DAIRYLAND to employ to store its SPENT FUEL from that point onward."

On August 7, 2007, the Government submitted the following supplemental response to Dairyland Interrogatory No. 15:

> The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.
>
> However, defendant states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that it was unreasonable for Dairyland to store its spent fuel at LACBWR in wet storage. Further, the Government does not concede that Dairyland has been required to maintain its spent fuel pool for a longer period of time because of DOE's partial breach of the Standard Contract.

Dairyland Interrogatory No. 16 states: "DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its SPENT FUEL after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its SPENT FUEL that are different from those options explored and/or implemented to store DAIRYLAND'S FAILED FUEL, DESCRIBE how and why they should have been different."

On August 7, 2007, the Government submitted the following supplemental response to Dairyland Interrogatory No. 16:

> The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.
>
> However, defendant states that it is not its obligation to develop contentions regarding alternative options that Dairyland could have pursued. Defendant further states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that Dairyland should have explored and/or implemented any particular strategy for the storage of its spent fuel. However, defendant does not concede that DOE's partial breach of the Standard Contract was the cause of any particular method chosen by Dairyland.

Dairyland Interrogatory No. 17 states: "DESCRIBE all options that you contend DAIRYLAND should have explored and/or implemented for the storage of its FAILED FUEL

after DOE partially breached DAIRYLAND'S SPENT FUEL DISPOSAL CONTRACT. If you contend that DAIRYLAND should have explored or implemented options for storage of its FAILED FUEL that are different from those options explored or implemented to store DAIRYLAND'S SPENT FUEL, DESCRIBE how and why they should have been different."

On August 7, 2007, the Government submitted the following supplemental response to Dairyland Interrogatory No. 17:

> The Court's February 5, 2007 order does not address the interrogatories that defendant viewed as premature. Further, we are still developing our positions regarding Dairyland's activities as part of our evaluation of Dairyland's claims in this litigation. Accordingly, Dairyland's request remains premature.
>
> However, defendant states that it is not its obligation to develop contentions regarding alternative options that Dairyland could have pursued. Defendant further states that, except to the extent otherwise identified in the expert reports that we recently issued, defendant does not currently plan to argue that Dairyland should have explored and/or implemented any particular strategy for the storage of its failed fuel. However, Defendant also states that, although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is <u>not</u> necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

B. <u>Interrogatory No. 13</u>

Dairyland Interrogatory No. 13 states: "Do you contend that DOE would have picked up DAIRYLAND's FAILED FUEL later than the rest of its SPENT FUEL had the government begun SPENT FUEL acceptance from utilities starting not later than January 31, 1998? If so, state all bases for this contention."

On January 9, 2008, pursuant to the Court's December 21, 2007 order, the Government submitted the following supplemental response:

> In its December 21, 2007 order, the Court stated that "if indeed the Government cannot say whether it would have accepted failed fuel from Dairyland on a schedule different than that for standard fuel given its lack of experience with

such a situation and sufficient information from Dairyland regarding the extent of its failed fuel, it should say so directly." Order, at 4 (Dec. 21, 2007).

DOE does not have a plan regarding the acceptance of SNF from Dairyland, beyond the contract mechanisms in Articles IV and V of the Standard Contract that detail the manner in which SNF acceptance allocations are assigned and approved. Although DOE is required to accept failed fuel and nonstandard fuel under the Standard Contract, DOE is not necessarily obligated to accept them under the same schedule as standard fuel, as the plain language of the contract indicates. 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A. Thus, for any SNF which has been designated by the purchaser, such as Dairyland, as other than standard fuel, the purchaser is required to obtain confirmation from DOE as to the "technical feasibility" of disposing of such fuel pursuant to the "currently agreed to schedule." 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A.

The determination as to whether it is technically feasible for DOE to accept Dairyland's fuel on the same schedule as standard fuel is an analysis that can only be done on a case-by-case basis by comparing the characteristics of the particular failed fuel in question against the license requirements for the repository. DOE does not currently have a licensed repository for the disposal of SNF. As a result, DOE has not yet identified the schedule upon which it will actually accept, or by which it plans to accept, Dairyland's failed fuel. Similarly, the precise condition of all of Dairyland's SNF is currently unknown. Since 1980, Dairyland has maintained its SNF in a two-tiered storage rack in its spent fuel pool. The two-tiered rack configuration does not allow observation of all of Dairyland's SNF without removing fuel assemblies from the rack. Partly due to the risk of further fuel rod segment displacement of Dairyland's damaged fuel assemblies that could occur from additional handling of those assemblies, Dairyland has sought an exemption from Nuclear Regulatory Commission regulations that require Dairyland to perform a complete inventory of its spent fuel pool on an annual basis. Currently, Dairyland does not plan to perform such a complete inventory before 2010.

Therefore, DOE cannot state, directly, whether Dairyland's failed fuel would have been accepted upon the same schedule as standard fuel because the license requirements of the repository are currently unknown. Similarly, we cannot state whether it would have been technically feasible for DOE to accept Dairyland's failed fuel because the precise condition of all of Dairyland's fuel is currently unknown.

ARGUMENT

I. STANDARD OF REVIEW

Under Federal Rule of Evidence 401, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible," except as otherwise provided by statute or the Federal Rules of Evidence. Fed. R. Evid. 402.

Pursuant to Rule 403, the exclusion of evidence that is otherwise admissible is an extraordinary remedy that should be used sparingly. United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001). "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." Comments to 1972 Proposed Rules for Fed. R. Evid. 403. In performing the Rule 403 balancing, the Court should give evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000); Abbott Laboratories v. Brennan, 952 F.2d 1346, 1352 (Fed. Cir. 1991) (citing Laney v. Celotex Corp., 901 F.2d 1319, 1320 (6th Cir.1990)). When balancing probative value against possible prejudice, the trial court has broad discretion. See Fed. R. Evid. 403; Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir. 1987).

II. DAIRYLAND IS SEEKING TO EXCLUDE PROBATIVE EVIDENCE THAT IS CONSISTENT WITH GOVERNMENT'S INTERROGATORY RESPONSES

A. Interrogatory No. 13

Dairyland argues that, because the Government "has acknowledged that it has no contention regarding what the Department of Energy would have done with regard to the timing

of acceptance of failed fuel absent the breach . . . the [G]overnment should not be heard at trial to argue that failed fuel may have been accepted later than other fuel due to the breach." Pl. Mot. 4. Similarly, Dairyland argues that DOE should be precluded from challenging Dairyland's "mitigation" efforts. Pl. Mot. 7. However, Dairyland is seeking to shift its burden of establishing the "but for" world while preventing the Government from offering probative evidence regarding that issue.

The burden of demonstrating the "but for" world for purposes of establishing an entitlement to the recovery of damages falls squarely upon Dairyland, and not the Government. Alaska Pulp Corp. v. United States, 59 Fed. Cl. 400, 413-14 (2004); San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997) (plaintiff must show that "but for" the breach, the damages alleged would not have been suffered) (emphasis added); Fawick Corp. v. United States, 149 Ct. Cl. 623, 637 (1960) (holding that the loss must be one which the non-breaching party can show that, "but for" the breach of contract, would not have been suffered); Bluebonnet Savings Bank v. United States, 67 Fed. Cl. 231, 238 (2005) (holding that because plaintiffs in this case are seeking expectancy damages, it is incumbent upon them to establish a plausible "but for" world); Southern National Corp. v. United States, 57 Fed. Cl. 294, 306 (2003) (rejecting plaintiffs argument in Winstar case that they were not required to provide detailed evidence of the but-for world to recover expectancy damages); Coast Federal Bank v. United States, 49 Fed. Cl. 53, 55 (2001) (holding that plaintiff bears the burden of propounding a realistic but-for scenario). This burden relates both to the reasonableness of the costs that Dairyland seeks as damages and the date by which all of Dairyland's fuel, including failed fuel, would have been removed from Dairyland's site had DOE timely performed under the Standard

Contract between DOE and Dairyland for the removal and disposal of SNF and radioactive waste. Those burdens remain notwithstanding our responses to Dairyland's interrogatories.

As we explained in our response to Interrogatory No. 13, the Government cannot state whether, absent DOE's delay, Dairyland's failed fuel would have been accepted on the same schedule as Dairyland's standard fuel. As we explain, however, both in response to Interrogatory No. 13 and below, our response by no means shifts, from Dairyland, the burden of establishing the schedule under which its failed fuel must have been removed absent DOE's partial breach, nor does it preclude the Government from responding at trial to evidence adduced by Dairyland at trial on that topic. Pacific Gas & Electric v. United States, 73 Fed. Cl. 333, 386 (2006) (plaintiff failed to meet its burden of proving rate of acceptance)

The Standard Contract provides that, for any SNF which has been designated by the purchaser, such as Dairyland, as other than standard fuel, the purchaser is required to obtain confirmation from DOE as to the "technical feasibility" of disposing of such fuel pursuant to the "currently agreed to schedule." 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E ¶ A. The determination as to whether it is technically feasible for DOE to accept Dairyland's fuel on the same schedule as standard fuel is an analysis that can only be done on a case-by-case basis by comparing the characteristics of the particular failed fuel in question against the license requirements for the repository. Because DOE does not currently have a licensed repository for the disposal of SNF, DOE cannot specify a schedule upon which it will actually accept, or by which it plans to accept, Dairyland's failed fuel.

However, the precise condition of all of Dairyland's SNF is also currently unknown because of Dairyland's failure to characterize it. Since 1980, Dairyland has maintained its SNF in a two-tiered storage rack in its spent fuel pool. The two-tiered rack configuration does not

allow observation of all of Dairyland's SNF without removing fuel assemblies from the rack. Partly because of the risk of further fuel rod segment displacement of Dairyland's damaged fuel assemblies that could occur from additional handling of those assemblies, Dairyland has not performed a complete inventory of its SNF and does not plan to do so before 2010. Thus, Dairyland has been wholly unable to identify what the requirements for acceptance of its failed fuel wold be because it does not know what characteristics its SNF has.

Dairyland would have this Court exclude evidence regarding the condition of Dairyland's failed fuel even though it is Dairyland's burden to show what effect that has upon DOE's ability or obligation, absent any delay, to accept that SNF. Additionally, Dairyland is suggesting that the Government has an obligation to know, and prove, conditions that are unknowable because Dairyland has not conducted the analysis necessary to identify them. While Dairyland states that it will offer "ample evidence establishing that its failed fuel would have been removed on the same schedule as the rest of its spent fuel," Dairyland proposes to do so only so long as the evidence is "undisputed," Pl. Mot. 5, and it will have to do so based upon pure speculation. Dairyland is well aware that the Government is unable to establish an acceptance schedule for Dairyland's fuel until the Government knows the condition of Dairyland's fuel. Indeed, Dairyland has not inspected some of its fuel since 1987. If Dairyland, at trial, plans to attempt to establish that its failed fuel would have been accepted on the same schedule as Dairyland's standard fuel, the Government should, at a minimum, have an opportunity to respond to such evidence. Plainly, preventing the Government from offering evidence to dispute an issue that is Dairyland's burden to establish would be highly prejudicial to the Government. Dairyland has offered no credible reason that the Court should do so.

B. Interrogatory Nos. 9, 15, 16, 17

As we explained in our responses to these interrogatories, the Government does not currently plan to challenge the reasonableness of the actions that Dairyland took regarding its storage decisions at LACBWR. Our position does not, however, relieve Dairyland of proving the reasonableness of those actions or to establish that DOE's delay "caused Dairyland to incur such costs, which it otherwise would not have incurred. Dairyland argues that "the government has conceded that Dairyland's mitigation efforts were reasonable, thus any evidence to the contrary at trial would confuse the issues and distract the Court." Pl. Mot. 7. In essence, Dairyland would have the Court assume that its damages can be fairly characterized as "mitigation." Well established law in this Circuit, holds that, in order to recover costs as damages, a plaintiff must establish that those costs were foreseeable, reasonable, and caused by the delay in SNF acceptance. Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376 (Fed. Cir. 2005).

In light of the Federal Circuit's holding in Indiana Michigan, the question is not simply whether the actions that plaintiff took were the product of a "reasonable" business judgment. As a threshold matter, Dairyland must prove, as a means of demonstrating that the costs that it incurred were "caused" by the partial breach, that it would not have incurred these so-called mitigation costs absent any delay. See San Carlos Irr. & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1989) ("A plaintiff must show that but for the breach, the damages alleged would not have been suffered."); Willems Indus., Inc. v. United States, 155 Ct. Cl. 360, 295 F.2d 822, 831 (1961) ("[T]he measure of damages to be applied in the particular case is irrelevant until the claimant has established the fact of losses that were the natural and proximate

result of the breach of contract. Were this not true, the doctrine of mitigation of damages would lose much of its significance.”).

To the extent Dairyland fails to meet this burden regarding any of its claimed damages, they should not be awarded. Further, based upon the evidence that Dairyland offers at trial, the Government may, of course, choose to rebut such evidence with evidence of its own. Although we have repeatedly indicated that we do not currently plan to challenge the reasonableness of Dairyland’s incurred costs in this matter, the Government has a right to respond to all of the evidence that Dairyland chooses to adduce at trial regarding its dry storage project, particularly as they relate to causation.

Dairyland’s suggestion that the Government has “conceded that Dairyland’s mitigation efforts were reasonable” is contrary to the Government’s statement in response to Interrogatory No. 9 that the “Government does not concede that any such studies were caused by DOE’s partial breach of the Standard Contract.” Once again, Dairyland is seeking to avoid its burden of having to show that DOE’s partial breach caused its damages by calling them “mitigation efforts.” Ultimately, whether Dairyland’s costs are “mitigation” is a determination that only this Court can determine after considering the relevant evidence. Dairyland has failed to show why the Court should prevent the Government from offering evidence relating to the causation of damages. Therefore, Dairyland’s motion to exclude this evidence should be denied.

## CONCLUSION

For the foregoing reasons, Dairyland's motion should be denied.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
SONIA ORFIELD
SCOTT SLATER
ANTHONY MOSES
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 15, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of May 2008, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE INCONSISTENT WITH THE GOVERNMENT'S CONTENTION INTERROGATORY ANSWERS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Russell A. Shultis