IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed electronically on June 16, 2008

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 04-106C<br>(Chief Judge Damich) |

DAIRYLAND'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO DAIRYLAND'S TRIAL EXHIBITS

Pursuant to the Court's June 4, 2008 Order, Dairyland responds to the government's objections to Dairyland's trial exhibits. On May 2, 2008, the government filed its objections to Dairyland's trial exhibits, lodging a total of 1,700 objections to 650 exhibits.[1] Due to the incredible number of objections lodged, as a matter of necessity and practicality Dairyland's response here focuses on the 243 exhibits on Dairyland's "will use" trial exhibit list filed with the Court on June 6, 2008. The government has objected to 147 of these 243 exhibits. Attached as an appendix to this response is a spreadsheet detailing the government's objections and Dairyland's specific responses to those objections. As discussed below, the government's objections to these exhibits, principally on grounds of relevance, authentication, hearsay and/or "contractor documents," are meritless. The vast majority of these exhibits were produced from the government's own files, address or concern issues that are highly relevant to this case, and/or

[1] After Dairyland objected to the excessive number of objections and requested the government to reconsider its positions, the government eventually withdrew a handful of its objections.

constitute non-hearsay admissions or fall within one of the recognized exceptions to the hearsay rule. It is for these reasons that the government's objections were overruled and most of these documents were admitted into evidence in *Yankee Atomic Elec. Co. v. United States*, No. 98-126C and/or *Pacific Gas & Elec. Co. v. United States*, Nos. 04-74C, 04-75C. Indeed, by Dairyland's count, 88 of these 147 exhibits are government-produced documents that were previously admitted into evidence in *Yankee Atomic* and/or *PG&E*.[2] The Court should likewise do the same in this case. The Court should also overrule the government's objections to the 52 "will use" exhibits that were produced by Dairyland. The government has not offered and cannot offer any legitimate basis for challenging the authenticity of any of these Dairyland-produced exhibits and they either constitute non-hearsay or fall within a recognized hearsay exception.

## I. THE GOVERNMENT'S OBJECTIONS TO GOVERNMENT-PRODUCED DOCUMENTS

Of the 147 exhibits on Dairyland's "will use" exhibit list that the government has objected to, 89 of these documents were produced by the government from its own files or the files of its M&O contractors. The government's objections to the documents are almost without exception misplaced and easily overcome by a cursory review of the documents or, in many cases, by a cursory review of the exhibit list descriptions.

### A. The Government's Relevance Objections

The government has lodged a relevance objection to 87 "will use" exhibits that were produced by the government. Of these 87 exhibits, 83 were admitted by the Court in *Yankee Atomic* and/or *PG&E*. The government argues that these exhibits are not relevant because they

[2] Of Dairyland's 59 other "will use" exhibits, 52 of them are Dairyland-produced documents which were never introduced into evidence in these other cases.

"[do] not address [a] fact that is of consequence to determination of this case." *See, e.g.,* App.[3] at 1. The government's position is untenable. Under Fed. R. Evid. 401, relevant evidence is defined as "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action *more probable or less probable* than it would be without the evidence." (emphasis added) Further, the rules of evidence are appropriately construed broadly to further the admission of all probative evidence. *See Butler v. Southern Pacific Co.,* 431 F.2d 77, 79 (5th Cir. 1970) ("We begin consideration of the question of admissibility with the proposition that 'the Federal Rules and practice favor admission of evidence rather than exclusion if the proffered evidence has any probative value at all.'" (citations omitted)); *Globe Savings Bank, F.S.B. v. United States,* 61 Fed. Cl. 91, 99 (June 24, 2004) ("[t]he Rule's basic standard of relevance is thus a liberal one." (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 587 (1993)). In other words, the relevance bar is not high, and it is obvious just from the exhibit list descriptions of many of these exhibits that they address issues that are directly relevant to the determination of issues in this case. These issues include determining a reasonable rate and schedule for acceptance, DOE's decision-making, interim storage of spent nuclear fuel, and the costs related to DOE's breach. For example, PX 175, which was produced from DOE headquarters' files (as indicated by its "HQR" bates prefix) is a report prepared for DOE entitled "Acceptance of Failed SNF Assemblies by the Federal Waste Management System." Notwithstanding the concession in its response to Dairyland's contention interrogatories that it has no contention on the issue, the government elsewhere attempts to make the acceptance of failed fuel an issue in this case, making it difficult to imagine a reasonable basis for objecting to this exhibit on the basis of relevance. The government has

[3] "App." refers to the Appendix to this response.

also inexplicably challenged the relevance of PX 588, which is the July 2004 Acceptance Priority Ranking and Annual Capacity Report (which repeats DOE's longstanding projection of a 3,000 MTU acceptance rate). These reports are a requirement of Dairyland's contract, and are obviously of at least some relevance to this case in terms of reflecting the government's view of a reasonable acceptance rate. Other exhibits challenged on the basis of relevance are directly related to the rate and schedule for spent fuel acceptance, central issues in this case, including (but are not limited to) PXs 88, 102, 108, 110, 113, 134, 136, 139, 141, 158, 166, 172, 174, 201, 205, 241, 243, 246, 255 and 262. In sum, the government's relevance objections have no legitimate basis. The government apparently views any document that does not support its theory of the case or litigation positions – namely, that the government is entitled to fiat the rate and sequence of spent fuel acceptance – to be irrelevant. That, however, is not the standard for admissibility under the rules.

B. The Government's Authentication Objections

The government has challenged the authenticity of 26 Dairyland "will use" exhibits that were produced by the government, arguing the exhibits "lack[] indicia which establish that exhibit is what proponent claims."[4] *See, e.g.,* App. at 6-7. All but one of these 26 exhibits (PX 111) were admitted in *Yankee Atomic* and/or *PG&E*. The government has also made a general objection to 30 "will use" exhibits on grounds that they are contractor documents.[5] This includes 20 of the 26 exhibits for which it also challenges their authenticity. Fed. R. Evid. 901(b)(7) provides that a document can be authenticated where it is shown that it is "a purported public

---

[4] The Dairyland "will use" exhibits that were produced by the government to which the government maintains an authentication objection are PXs 74, 108, 110, 111, 136, 139, 141, 149, 158, 174, 175, 179, 201, 219, 241, 255, 262, 267, 294, 405, 461, 479, 551, 807, 810 and 811.

[5] The Dairyland "will use" exhibits to which the government maintains a "contractor document" objection are PXs 68, 75, 79, 108, 110, 134, 136, 139, 141, 149, 158, 166, 174, 175, 179, 189, 201, 215, 219, 241, 246, 248, 255, 262, 303, 405, 461, 807, 810 and 811.

record, report, statement, or data compilation, in any form, [that] is from the public office where items of this nature are kept." In its May 15, 2008 response to the government's motion *in limine* to exclude the admission of documents prepared by government contractors ("Contractor Response"), Dairyland demonstrated that DOE contractor documents are, for all intents and purposes, public records which are maintained in DOE's files or the contractor's files maintained at DOE-owned national laboratories. *See* Contractor Response at 10-15. Indeed, in *Yankee Atomic,* Judge Merow held that such contractor documents are admissible as public records under Fed. R. Evid. 803(8)(A) as "records, reports, [etc.] of public offices or agencies setting forth the activities of the office or agency." *Yankee Atomic*, 2004 WL 2450874 at *7 (Fed. Cl. Sept. 17, 2004). And "[p]ublic records are regularly authenticated by proof of custody, without more." Advisory Committee's Note, Fed. R. Evid. 901(b)(7). Accordingly, the government's authentication objections are easily defeated for PXs 108, 110, 136, 139, 141, 149, 158, 174, 175, 179, 201, 219, 241, 255, 262, 405, 461, 807, 810 and 811. Similarly, while the government did not identify PXs 74, 111, 267, 294, 479 and 551 as contractor documents in its objections, all of these exhibits have similar characteristics to those documents the Court has previously deemed admissible as public records under Fed. R. Evid. 803(8)(A), which includes documents that were collected from DOE, PNNL or other government agency files. As such, the documents are "[r]ecords, reports, statements, or data compilations . . . of public offices or agencies, setting for the activities of the office or agency. . . ," thereby satisfying the standard for authentication outlined in Fed. R. Evid. 901(b)(7).

Finally, Rule 901(b)(4) recognizes that "ancient" documents, *i.e.*, documents that have been in existence more than twenty years at the time they are offered, are self-authenticating. PXs 108, 110, 111, 136, 139 and 141 all fall under this rule.

C. <u>The Government's Hearsay Objections</u>

The government has objected to 39 Dairyland "will use" exhibits that were produced by the government on hearsay grounds.[6] However, every one of these exhibits is either admissible as a non-hearsay admission by a party-opponent under Fed. R. Evid. 801(d)(2) or fits squarely within one of the hearsay exceptions under Fed. R. Evid. 803. Indeed, 38 of these 39 documents were admitted by this Court in the *Yankee Atomic* and/or *PG&E* trials.

Most of the 39 documents are characterized by the government as "contractor documents," and Dairyland fully addressed the admissibility of these documents in its Contractor Response. As Dairyland explained in its Contractor Response (at 3-9, 16-19), the unique symbiotic relationship between DOE and its M&O contractors warrants admission of DOE contractor documents as non-hearsay under Fed. R. Evid. 801(d)(2) as, among other things, statements of a party's agent or servant concerning a matter within the scope of the agency or employment or statements by persons authorized by a party to make a statement concerning the subject. Moreover, these documents should also be deemed admissible under the public record hearsay exception in that they are records, reports or statements of public agencies setting forth the activities of the agency. *See* Fed. R. Evid. 803(8)(A). Many of these 39 documents were collected from the government's own files, including 10 produced from the files of the PNNL national laboratory, which is part of DOE,[7] and several others were produced from the contractor's files located at the national laboratories.

---

[6] These 39 exhibits are PXs 68, 69, 75, 79, 81, 108, 110, 111, 134, 136, 139, 141, 142, 149, 158, 166, 174, 175, 179, 189, 201, 215, 228, 231, 241, 246, 248, 255, 262, 292, 303, 321, 405, 461, 480, 506, 807, 810 and 811.

[7] PXs 68, 75, 79, 108, 110, 136, 139, 141, 142 and 149 bear a Bates prefix of "PNL," which means they were collected from the files at PNNL.

Finally, 12 of these 39 exhibits are also admissible under hearsay exception Fed. R. Evid. 803(16) as "ancient" documents that are more than twenty years old.[8]

## II. THE GOVERNMENT'S OBJECTIONS TO DOCUMENTS PRODUCED BY DAIRYLAND

### A. The Government's Authentication Objections

The government has challenged the authenticity of nearly every document that was produced by Dairyland that is listed on its "will use" exhibit list. Indeed, of the 52 Dairyland-produced documents on its "will use" list, only PX 602, which is a DOE letter to Dairyland, escaped without a challenge to its authenticity.[9] Fed. R. Evid. 901 requires for admissibility of evidence "foundation from which the fact-finder can infer that the evidence is what the proponent claims it to be." *Air Land Forwarders, Inc., v. United States,* 38 Fed. Cl. 547, 554 (1997). The burden for proving authenticity is low:

> [T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

*Link v. Mercedes-Benz of North America*, 788 F.2d 918. 927 (3d Cir. 1986) (internal citation and quotations omitted). It goes without saying that, for each of these exhibits, Dairyland can easily satisfy this low burden through testimony and other evidence that will establish that the documents are what Dairyland claims them to be. For example, for PXs 732 through 765, which

---

[8] PXs 68, 69, 79, 81, 108, 110, 111, 134, 136, 139, 141 and 142.

[9] The Dairyland "will use" exhibits that were produced by Dairyland to the government, and to which the government maintains an authenticity objection are PXs 286, 373, 375, 506, 518, 595, 614, 716, 717, 718, 719, 720, 721, 722, 723, 724, 725, 730, 732, 733, 734, 735, 736, 737, 738, 739, 740, 741, 742, 743, 744, 745, 746, 747, 748, 749, 750, 751, 754, 755, 756, 757, 758, 759, 760, 761, 762, 763, 764, 765 and 785.

constitute 32 of the 52 "will use" exhibits produced by Dairyland, Dairyland intends to have Dairyland's director of accounting, Keith Stubbendick, testify that these documents were generated or obtained from Dairyland's accounting system, and that the cost data and documentation contained therein are the Dairyland business records that underlie Dairyland's damages claim. Similarly, Dairyland's cost accounting expert, Charles Wilkins, will authenticate PXs 717 through 724 because these exhibits are the overhead and G&A rate models he developed that underlie the basis for his calculations of Dairyland's overhead and G&A rates. The government has not articulated and cannot articulate any legitimate dispute regarding the authenticity of these exhibits. The government's authentication objections are frivolous, and can only be understood as a vexatious attempt to prolong and complicate pretrial and trial proceedings.

B. The Government's Hearsay Objections

The government has lodged hearsay objections to the same 51 Dairyland-produced "will use" exhibits that it has lodged authentication objections to. At trial, Dairyland will show that many of these exhibits are admissible under Fed. R. Evid. 803(6) as business records (*e.g.,* PXs 506, 518, 732-765) or are being offered as Rule 1006 summaries (PX 730). And the others are not hearsay because Dairyland does not intend to offer any of the statements contained therein to prove the truth of what they assert (*e.g.,* PXs 286, 373, 375, 717-724).

C. The Government's Relevance Objections

Finally, the government has objected to eight Dairyland-produced "will use" exhibits – PXs 286, 373, 375, 506, 518, 595, 602 and 614 – on relevance grounds. PXs 373, 595 and 602 are relevant because they each concern the rate and schedule for the acceptance and removal of spent fuel. More specifically, PX 373 is a letter from Edlow International to Dairyland proposing

a contractual relationship where Edlow would be tasked with serving as a broker or middleman for Dairyland in swapping or exchanging its acceptance allocations and capacity with other utilities to accelerate the removal of its spent fuel from LACBWR and thereby "move up the queue." As the Court is aware, this concept is part of Dairyland and other utilities' spent fuel contracts and an integral part of Dairyland's case, and is therefore obviously relevant. PXs 595 and 602 are relevant because they concern the time in July 2004 when DOE informed utilities it was issuing a new Acceptance Priority Ranking/Annual Capacity Report and utilities would need to fill out new delivery commitment schedules in the anticipation that Yucca Mountain would begin accepting spent fuel in 2010. PXs 286, 375 and 614 are relevant because they are related to Dairyland's calculation and proof of damages in this case. PX 286 discusses the scope of work related to the removal of LACBWR's reactor pressure vessel. PXs 375 and 614 are Dairyland documents that explain the organization and structure of Dairyland's cost accounting system and were relied and relied upon by Dairyland's cost accounting expert in connection with his overhead and G&A rate calculations in this case. The last two exhibits, PXs 506 and 518 are both Dairyland business records, with the latter being a Dairyland Power Cooperative "Management Organization" chart that will be used in connection with the presentation of Dairyland's damages claim. And PX 506 is an excerpt from Dairyland's corporate bylaws that relates to the corporate structure and relationship between Dairyland and Genoa Fuel Tech, an issue which the government has raised in arguing against Dairyland's ability to recover costs it has incurred in connection with the Private Fuel Storage initiative. As such, they are both clearly relevant to this case.

CONCLUSION

For the foregoing reasons, the government's objections to Dairyland's trial exhibits should be overruled.

Dated: June 16, 2008

Respectfully submitted,

s/ Jerry Stouck

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3173
(202) 261-4751 fax
Counsel for Plaintiff
Dairyland Power Cooperative

Of Counsel:
ROBERT L. SHAPIRO
KEVIN E. STERN
Greenberg Traurig, LLP