# In the United States Court of Federal Claims

No. 04-106 C
(Filed: July 2, 2008)

**************************************

| | | |
|---|---|---|
| **DAIRYLAND POWER COOPERATIVE,** Plaintiff, | * | Summary judgment; RCFC 56(c); privity of contract; recovery of mitigation costs incurred through subsidiary; foreseeability |
| v. | * | |
| **THE UNITED STATES,** Defendant. | * | |

**************************************

*Jerry Stouck*, Greenberg Traurig LLP, Washington, DC, counsel of record for Plaintiff; of counsel were *Robert Shapiro* and *Kevin Stern*, Greenberg Traurig LLP, Washington, DC.

*Alan J. Lo Re*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, United States Department of Justice, Washington, DC; of counsel was *Jane K. Taylor*, Office of General Counsel, Department of Energy, Washington, DC, *Patrick B. Bryan, Joshua E. Gardner, Scott C. Slater* and *Anthony W. Moses*, Trial Attorneys, United States Department of Justice, Washington, DC.

---

**OPINION**

---

**DAMICH, Chief Judge.**

This matter arises from one of several cases concerning a standardized contract ("the Standard Contract") between nuclear utilities and the United States Department of Energy ("DOE") for disposal of spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW"). Plaintiff, Dairyland Power Cooperative ("Dairyland"), an electric generation and transmission cooperative, entered into the Standard Contract with DOE in 1983. In 2004, Dairyland filed suit for breach of the Standard Contract in this Court against Defendant, the United States ("the Government"). Following the Court's summary judgment in Dairyland's favor on the issue of contractual liability, the parties entered into discovery on the matter of

damages. Before the Court is the Government's motion for summary judgment for the portion of damages Dairyland seeks to recover for costs expended in the exploration and development of private off-site fuel storage. For the reasons discussed herein, the Government's motion for summary judgment is DENIED.

## I. Background

On January 7, 1983, Congress enacted the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270 (1982). The NWPA authorized DOE "to enter into contracts with any person who generates or holds title to [HLW] or [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." *Id.* § 10222(a)(1). Pursuant to the NWPA, DOE drafted the Standard Contract[1] providing for the Government's acceptance, transportation, storage, and disposal of SNF and HLW, the costs of which would be borne by the "generators and owners" thereof. *Id.* § 10131(b).

Dairyland, an electric generation and transmission cooperative, provides electrical power to 25 member electric cooperatives and 14 municipal utility members located in Wisconsin, Minnesota, Iowa, and Illinois. Under the Standard Contract, DOE was to begin the acceptance of SNF from commercial utility contract holders including Dairyland's La Crosse Boiling Water Reactor (LACBWR) not later than January 31, 1998, in exchange for the utilities' payment of fees. First Amended Complaint ("Am. Compl. ) ¶¶ 1-2, 4; 10 C.F.R. § 961.11. However, DOE failed to commence accepting SNF from Dairyland by that date. Defendant's Proposed Findings of Uncontroverted Fact Regarding Plaintiff's Claim for Recovery of Off-Site Fuel Storage Investments ("DPFUF") ¶ 3.

On April 27, 2006, the Court entered summary judgment for Dairyland on the issue of liability, and the parties began to prepare for a trial on the matter of damages. Dairyland includes among its claimed damages costs purportedly incurred "in connection with exploring, supporting and developing private off-site alternatives for storage of its spent fuel." DPFUF ¶ 4 (citing Plaintiff's RCFC 26(a)(1) Disclosures at 4), A16. According to Dairyland, these costs total $10,936,901. Dairyland's Opposition to the Government's Motion for Summary Judgment Regarding Private Fuel Storage ("Pl.'s Resp.") at 9 (citation omitted); DPFUF ¶ 4 (citing Plaintiff's Revised Summary of Damages), A19.

To attempt to develop private off-site storage of SNF, Dairyland created Genoa Fuel Tech, Inc. ("GFT"), a separate and distinct for-profit corporation which then invested in Private Fuel Storage, LLC ("PFS"). DPFUF ¶ 5 (citing Deposition of Keith Stubbendick[2] ("Stubbendick Dep.") 188:12–189:5; 200:22–201:3; 223:19–224:5). PFS is a limited liability company formed

---

[1]"Standard Contract for the Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," published at 10 C.F.R. § 961.11.

[2]Mr. Stubbendick is Dairyland's Chief of Accounting.

in the early 1990s by a consortium of nuclear utility companies to explore private SNF storage options. DPFUF ¶ 6 (citing Deposition of John Parkyn[3] ("Parkyn Dep.") 96:18–98:14). Dairyland participated in PFS through a subsidiary to avoid potential legal liability and unfavorable tax treatment. Pl.'s Resp. at 6; Dairyland's Response to DPFUF at 6 ("RDPFUF"). Of the $10,936,901 that Dairyland claims for "private off-site storage" costs, $8,669,517 is for capital contributions to PFS, made through GFT, and $2,267,384 is for administrative costs to support GFT. Pl.'s Resp. at 9.

On August 28, 2007, the Government filed its motion for summary judgment regarding Dairyland's claim for damages for off-site fuel storage, or PFS-related investments. After a review of the pleadings, the Government's Proposed Findings of Uncontroverted Fact Regarding Plaintiff's Claim for Recovery of Off-Site Fuel Storage Investments and Dairyland's response thereto, the Court ordered supplemental briefing, which was completed on January 22, 2008. *See* Order of December 21, 2007.

The Government's argument for summary judgment in its initial brief was twofold. First, the Government contended that GFT, a separate legal entity, is not in privity of contract with the Government, and therefore, is precluded from recovery for PFS-related costs. Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Claim For Recovery Of Off-Site Fuel Storage Investments ("Def.'s Mot.") at 7-12. Second, even if Dairyland could maintain an action for GFT's expenditures, the Federal Circuit's decision in *Indiana Michigan vs. United States*, 422 F.3d 1369 (Fed. Cir. 2005) mandates that this Court deny the recovery of PFS-related damages as a matter of law. Def.'s Mot. at 13-14. Dairyland, in its Opposition, nuanced its argument, arguing less that it had made the investment in PFS (rather than GFT) and more that, although GFT had made the investment in PFS, Dairyland was entitled to recover its costs of funding and administering GFT for the purpose of investing in PFS. Pl.'s Resp. at 10-15. The Government countered that the creation of GFT, as a pass-through corporation, was not foreseeable and therefore the costs related to GFT were not recoverable. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply") at 9-14. In order to better explore this aspect of the parties' argument, the Court ordered supplemental briefing, asking the Government specifically, "[w]ould the summary judgment the Government requests preclude Dairyland from recovering damages stemming from funds transferred to support GFT? If so, what is the legal justification for such a result?" Order of December 21, 2007, at 2.

## II. Discussion

### A. Summary Judgment Standard.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the United

---

[3]Mr. Parkyn is Dairyland's Manager of Special Nuclear Projects.

States Court of Federal Claims ("RCFC"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue as to a material fact–that is, one that would change the outcome of the litigation. *Id*. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). "A material fact is one that might affect the outcome of the litigation." *Agwiak v. United States*, 64 Fed. Cl. 203, 208 (2005) (citing *Anderson*, 477 U.S. at 248)). Such a genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Anderson*, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The party seeking summary judgment may prevail by demonstrating the absence of issues of material fact or by showing the absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the [] court of the basis for its motion, and identifying those portions of the 'pleadings, depositions [etc] . . .which it believes demonstrates the absence of a genuine issue of material fact."). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . . In such a situation, there can be 'no genuine issue as to material fact' . . . ." *Id*. at 322-23. If the movant makes such a showing, the burden shifts to the non-movant to demonstrate that there is an issue of material fact. *Id*. at 324 ("[T]he nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

### B. Dairyland Is Not Precluded from Recovery of PFS-Related Damages Made by GFT.

#### 1. GFT's Lack of Privity of Contract with the Government is Irrelevant.

It is undisputed that GFT, not Dairyland, invested in PFS. Pl.'s Resp. at 6-7. As GFT never entered into any contract with the Government regarding SNF, GFT is not in privity of contract with the Government. Therefore, GFT cannot recover damages for its investment in PFS; indeed, GFT cannot sue the Government at all. *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984) ("[t]he government consents to be sued only by those with whom it has privity of contract."). The Government's initial argument, then, is simply stated and the conclusion follows quickly, although not the conclusion that the Government argued for. For it is *Dairyland* that is suing the Government, not GFT, and the Government's privity of contract argument is therefore irrelevant. Thus, the problem really is: Can *Dairyland* recover as damages the cost of investing in PFS when it was GFT, a separate corporation, that did the investing?

**2. The Money Invested in PFS is Dairyland's.**

Dairyland claims that GFT constituted "a mere pass-through vehicle to facilitate Dairyland's participation in PFS" and that it "would not have existed absent the government's breach." Pl.'s Resp. at 10. Dairyland points out that the funds that Dairyland transferred to GFT equal GFT's expenditures in PFS. *Id.*; Declaration of Keith Stubbendick ("Stubbendick Decl.") ¶ 5. Consequently, according to Dairyland, their claim for PFS-related damages is for Dairyland's own investment in GFT. *Id.* ("Dairyland, and not its subsidiary GFT, or any other party, has incurred the costs Dairyland claims as mitigation damages related to PFS.") Dairyland has transferred $10,936,955 to GFT, which used these funds to support PFS. Pl.'s Resp. at 9 ("Consistent with the framework of structuring its participation in PFS through a subsidiary, Dairyland has incurred all theses [sic] costs through GFT. Dairyland has transferred $10,936,955 to GFT to support PFS.").[4]

It is undisputed that any money that GFT had was derived from Dairyland and that GFT could not have made any corporate decision that was not approved by Dairyland.[5] Pl.'s Resp. at 7. GFT has no offices or facilities apart from Dairyland's. *Id.* at 9. GFT had no assets other than those provided by Dairyland for the sole purpose of investing in PFS. Dairyland transferred $10,936,955 to GFT to support PFS, and Dairyland incurred $2,267,384 in administrative costs to support GFT.[6] *Id.* Thus, there is no difficulty in following Dairyland's money through GFT to the investment in PFS.[7] *Id.* at 11.

The Government asserts that Dairyland seeks to have it "both ways," shielding itself from potential liability and tax consequences while claiming that it should be able to recover the amounts that GFT contributed to PFS in this litigation. Def.'s Reply at 5. It is important to note, however, that the Court is not disregarding GFT's separate corporate form. Rather, it is imputing

---

[4]The Court notes that there is a fifty-four dollar difference between the $10,936,901 that is claimed as mitigation of damages related to PFS in Mr. Stubbendick's Declaration and the $10,936,955 that Dairyland asserts was transferred to GFT in support of PFS. *Comparing* Stubbendick Decl. ¶ 5 and Pl.'s Resp. at 9.

[5]"All of GFT's officers and directors have been employees of Dairyland. And Dairyland's executives determine what actions GFT takes." Pl.'s Resp. at 7.

[6]Administrative costs were initially incurred by Dairyland. Dairyland then billed GFT, and GFT reimbursed Dairyland. GFT obtained the funds to reimburse Dairyland from prior transfers to GFT from Dairyland. Pl.'s Resp. at 9.

[7]Dairyland is the sole shareholder of GFT and was far more than just a shareholder, as has been noted. The relationship of GFT to Dairyland was very different from the relationship of Transohio to TransCapital Financial Corp. in *Am. Capital Corp. v. FDIC*, cited in the Government's initial brief. Def.'s Mot. at 11 (citing *Am. Capital Corp. v. FDIC*, 472 F.3d 859, 865-66 (Fed. Cir. 2006)).

GFT's assets and expenditures on PFS to Dairyland for potential recovery by Dairyland as damages due to the Government's breach. Dairyland set up GFT because Wisconsin law required it to do so in order to make an investment in other than electricity generating activities and to insulate itself from liability. Def.'s Mot. at 5; Pl.'s Resp. at 6-7. This is the benefit that Dairyland derived from the creation of GFT. GFT made the investment in PFS. Def.'s Mot. at 5. But it was Dairyland that made the decision to mitigate its damages by investing in PFS, and it was Dairyland's funds that were ultimately invested by GFT in PFS. Pl.'s Resp. at 6-7. The issue is not one of corporation law, but rather the issues are whether the money that GFT invested in PFS was really Dairyland's and whether the decision to invest in PFS to mitigate was Dairyland's. This Court holds that there is no legal barrier to so arguing raised by the separate corporate form of GFT under the circumstances of this case.

The Government cites no precedent from the Federal Circuit that concerns a Spent Nuclear Fuel case that precludes this conclusion. Instead, it relies primarily upon *Southern Nuclear Operating Co., v. United States*, 77 Fed. Cl. 396 (2007) ("*Southern Nuclear*"), in support of the proposition that expenditures by a third party cannot be included in damages claimed by a principal party. Def.'s Reply at 7. According to Dairyland, *Southern Nuclear* is factually distinguishable from Dairyland and, furthermore, "the creation of a new rule restricting the recoverability of reasonable mitigation expenses solely because they are incurred through a subsidiary would be inappropriate, particularly in this case." Pl.'s Resp. at 12-13.

The Government focuses on the following language in *Southern Nuclear*:

> Even if foreseeability were not foreclosed by the Federal Circuit decision in *Indiana Michigan*, mitigation does not extend to contractual proportional reimbursement of investments of a third party. Furthermore, any recovery would require a finding that the retained equity interest, represented by the PFS investment, is of no value, a finding the court declines to make on this record.

*Southern Nuclear,* 77 Fed. Cl. at 446; *see generally*, Def.'s Reply at 7.

Although this language seems straightforward, Dairyland argues that the Court's discussion in *Southern Nuclear* of third party expenditures as a whole is "cryptic . . . and . . . appears to be merely dicta." Pl.'s Resp. at 12. There is some truth to this assertion. First, the first-captioned plaintiff, Southern Nuclear Operating Company (SNC), was not a party to the Standard Contract. *Southern Nuclear,* 77 Fed. Cl. at 399. Second, although Plaintiffs, Georgia Power Company (GPC) and Alabama Power Company (APC), were in privity of contract with DOE, not SNC, SNC was not dismissed from the case, despite the Government's request to do so. *Id.* at 452. Third, it is not completely clear how SNC was funded and controlled by GPC and APC. Fourth, Judge Merow in *Southern Nuclear* found that PFS expenditures were not recoverable as damages because "on this record, foreseeability and substantial causation were not established," regardless of which entity had made the investment. *Id.* at 445.

In *Southern Nuclear*, the Standard Contract was signed by Georgia Power Company (GPC) and Alabama Power Company (APC), owners of three electrical power plants. *Id.* at 399. SNC was incorporated "for the express purpose of acting as operating agent and licensee of APC and GPC."[8] *Id.* at 452. Southern Nuclear operated all three of the plants owned by GPC and APC and administered the contracts with DOE. *Id.* at 399. Presumably, APC and GPC provided the capital for SNC and SNC was controlled by them. (As has been noted, SNC is variously referred to in the opinion as "agent," "licensee," and "attorney-in-fact.") Judge Merow did not go into further detail regarding the corporate relations between SNC and APC and GPC.[9]

Southern Nuclear contributed over $8 million dollars to PFS for the development of off-site private fuel storage.[10] *Id.* at 443. On its books SNC divided the total PFS contribution into thirds, allocating the cost equally between its three plants. *Id.* at 445. GPC and APC were the actual parties in suit, and although they did not pay anything for PFS, they relied on Southern Nuclear's PFS cost allocation as their PFS expenses when they contended that PFS-related costs were incurred in mitigation. *Id.* at 445-446. Thus, unlike the case of Dairyland and GFT, where Dairyand's funds can be traced clearly, the relation between APC, GPC and SNC is a matter of proper accounting principles.

As previously mentioned, the fact that SNC, not APC and GPC, made the investment in PFS prompted the Government to move the Court in *Southern Nuclear* to dismiss SNC. In its Order of Apr. 7, 2004, the Court stated that "[a]bsent contractual privity between SNC and the United States, no judgment can be rendered in favor of SNC," but Judge Merow allowed SNC to continue its voluntary participation in the case because it might "facilitate discovery and trial proceedings." *Id.* at 452. It does not seem that the "pass through" issue–as opposed to the privity of contract issue–had been joined in the Government's motion. The Government at the time of trial renewed a request that SNC be dismissed from the suit because it lacked privity of contract with the Government. *Id.* In its opinion after trial, the Court recounted the grounds for the earlier motion and its decision and concluded: "No purpose is seen in dismissing SNC at this stage of the proceedings."[11] *Id.*

---

[8]SNC is also referred to as "attorney-in-fact." *Southern Nuclear,* 77 Fed. Cl. at 452.

[9]Relationships between the various entities are complicated because, in addition to Southern Nuclear Operating Company (SNC), the Southern Company, a holding company, was the parent of SNC, as well as of APC and GPC. *Southern Nuclear*, 77 Fed. Cl. at 399.

[10]The opinion refers to Southern Nuclear as "plaintiffs' parent corporation." *Southern Nuclear*, 77 Fed. Cl. at 443. This appears to be an error, confusing Southern Nuclear with the Southern Company, which earlier in the opinion is identified as the parent corporation of SNC, APC and GPC. *Id.* at 449.

[11]Here, too, there is slight confusion. In the paragraph discussing the renewed motion to dismiss, the Court first refers to Southern Nuclear as SNC. Then, it switches to "Southern

In the end, this Court is not persuaded by the finding and opinion in *Southern Nuclear* for three reasons: (1) the relationship between APC and GPC and SNC does not appear to be the same as that between Dairyland and GFT, (2) the issue of "pass through" versus privity of contract does not appear to have been clearly joined in *Southern Nuclear*, and (3) the decision in *Southern Nuclear* not to award PFS damages was made irrespective of the relationship between the parents and the subsidiary.

### 3. Dairyland As A Shareholder In GFT.

In addition to the question of the recovery of investments of a third party, *Southern Nuclear* states: "Furthermore, any recovery would require a finding that the retained equity interest, represented by the PFS investment, is of no value, a finding the court declines to make on this record." *Southern Nuclear*, 77 Fed. Cl. at 446. In other words, GPC and APC received shares in SNC in return for its investment. Presumably, the inference to be drawn here is that GPC and APC cannot be "damaged" if they received value for their expenditure. According to the Government, Dairyland received stock in GFT in exchange for its monetary investment. Therefore, Dairyland has already been compensated for this investment. Def.'s Reply at 7.

It is difficult, however, to see the significance of this argument on the Court's determination that Dairyland's funds can be followed into and through GFT. The fact that Dairyland is the sole shareholder of GFT does not affect a determination that funds used to create GFT and the expenditures of GFT regarding PFS could be imputed to Dairyland. It should also be noted that Dairyland, as the Government pointed out in its Supplemental Brief, estimates the book value of its stock in GFT to be zero. Def.'s Supp. Br. at 9.

### 4. Summary.

The Government has argued that the investment in PFS, made by GFT, cannot be an element of Dairyland's damages as a matter of law because GFT is not in privity of contract with the Government. This Court does not propose to award GFT any damages, because GFT is not a party to this suit, and, indeed, is not in privity of contract with the Government. The Government's argument and this decision, however, do not eliminate Dairyland's damages claim, as Dairyland *is* in privity of contract with the Government and is claiming GFT's expenditures on PFS as its own.

The Court holds that Dairyland is not precluded as a matter of law in arguing that its investment in GFT and GFT's investment in PFS can be recoverable as damages, and certainly not because GFT is not in privity of contract with the Government.

---

Nuclear." Finally, it refers to "Southern." It seems, however, that the Court's reference to "Southern" toward the end of the paragraph means Southern Nuclear, not the Southern Company, which is the parent of SNC, APC and GPC. *See Southern Nuclear*, 77 Fed. Cl. at 399; *see* Note 9, *supra*, at 7.

### C. A Genuine Issue of Material Fact Exists Regarding the Foreseeability of the Establishment of GFT in Mitigation of Damages.

The Government in its reply and supplemental brief elaborates on the contention that Dairyland's investment in GFT constituted an independent and collateral undertaking that did not grow out of the Standard Contract. Def.'s Reply at 9; Def.'s Supp. Br. at 3-7. According to the Government, Dairyland's creation of GFT to invest in PFS was not foreseeable to the Government at the time that the parties entered into the Standard Contract. *Id*. For Dairyland to recover any form of contract damages the loss must be more than "merely a remote or possible" consequence of the harm at issue. Def.'s Supp. Br. at 5 (*citing Old Stone Corp. v. United States*, 450 F.3d 1360, 1375 (Fed. Cir. 2006)(internal citations omitted)). And the Government continues, "a contract holder's formation of a subsidiary, for-profit corporation (such as GFT) to serve as a tax shield to facilitate a utility's investment in such a private SNF storage venture as PFS is a transaction wholly separate and distinct from the purpose of the Standard Contract." Def.'s Reply at 13.

According to Dairyland the creation of subsidiaries is a well-established means of limiting legal liability and avoiding unfavorable tax treatment. Pl.'s Resp. at 13-14 (citations omitted). Consequently, "if recovery of 'the most reasonable and appropriate method of mitigating a non-breaching party's foreseeable damages' were denied by the court, 'non-breaching parties to contracts would have a significant disincentive to taking reasonable and appropriate steps to mitigate a breach of contract.'" *Id*. at 14-15 (quoting *Pacific Gas & Elec. Co.*, 73 Fed. Cl. 333, 419, n.71 (2006)). Dairyland argues that there was nothing collateral about their expenditures on GFT, "Dairyland was motivated to make expenditures to participate in PFS through GFT 'solely by concern over DOE's anticipated failure to start picking up spent fuel.'" Dairyland's Response to Def.'s Supp. Br. ("Pl.'s Resp. to Supp. Br.") at 2 (citing Declaration of John Parkyn ¶ 5,9; Declaration of Charles V. Sans Crainte ¶ 3).

The Government, in arguing that GFT was an independent and collateral undertaking, fails to acknowledge Dairyland's stated purpose for GFT and Dairyland's investment in GFT to serve that purpose. The Government states that GFT made $8,669,517 in capital contributions from its own capital accounts and that Dairyland was not involved in any of these capital transfers. DPFUF ¶ 16. According to Dairyland's Chief Accounting Officer, Keith Stubbendick, however, Dairyland made $8,669,517 in capital contributions to GFT. Stubbendick Decl. ¶ 4. GFT then supposedly transferred those funds to PFS. *Id.* The Government also maintains that GFT's board members billed administrative and other costs to Dairyland. Dairyland then submitted bills to GFT to recoup the costs. DPFUF ¶ 17. According to Dairyland, GFT obtained the money to recoup those costs from Dairyland's prior monetary transfers to GFT. Stubbendick Decl. ¶4.

The Government raises a meritorious issue regarding the foreseeability of the creation of a subsidiary corporation in mitigation of damages. This issue must be distinguished, however, from the pass-through issue. The former focuses on the creation of the corporation; the latter

focuses on tracing Dairyland's money through GFT into investment in PFS. Insofar as the cost of *creating* GFT can be identified separate from the money that went from Dairyland to GFT to PFS, this cost may not be recoverable as unforeseeable.

The Court concludes that there exists a genuine issue of material fact as to whether Dairyland's efforts to mitigate its damages by forming GFT were foreseeable. Foreseeability, a prerequisite to establishing proximate cause of damages stemming from mitigation efforts, is a question of fact. *Home Sav. of America v. United States*, 399 F.3d 1341, 1353 (Fed. Cir. 2005); *Landmark Land Co., Inc. v. F.D.I.C.*, 256 F.3d 1365, 1379 (Fed. Cir. 2001). Generally, foreseeability is determined at the time of contracting, although there may exist situations in which foreseeability may be more properly measured at the time of the breach. *Indiana Michigan*, 422 F.3d at 1373; *Gardner Displays v. United States*, 346 F.2d 585, 589 (Ct. Cl. 1965). The Government's contention that Dairyland's formation of GFT was unforeseeable at the time of formation of the Standard Contract is a genuine issue of material fact properly determined during trial in this matter.

### D. *Indiana Michigan* Does Not Preclude PFS-Related Damages.

The Government contends that *Indiana Michigan* precludes the recovery of PFS-related costs as a matter of law. The Court does not agree. The United States Court of Appeals for the Federal Circuit limited its findings in *Indiana Michigan* to the factual record. The opinion specifically states, "on these facts, the trial court's findings that Indiana Michigan is not entitled to damages is supportable." *Indiana Michigan*, 422 F.3d at 1375. Additionally, "[t]he credited evidence also showed that the utility's investment in the private storage facility was speculative and that the high cost of the venture was unforeseeable." *Id*. at 1376.

This Court is not alone in concluding that *Indiana Michigan's* preclusion of PFS-related costs is limited to that factual record. The *Southern Nuclear* decision held, "[t]he Federal Circuit limited its findings in *Indiana Michigan* to the factual record . . . noting that based 'on these facts' and the 'credited evidence' of utility witnesses that PFS was 'too speculative,' neither causation nor foreseeability were established." *Southern Nuclear*, 77 Fed. Cl. at 445 (*Southern Nuclear* declined to award PFS-related damages and held "that on this record, foreseeability and substantial causation were not established.") Recently, regarding PFS-related expenses, Senior Judge Wiese in *Northern States Power Co. v. United States* concluded:

> Defendant maintains that the Federal Circuit's ruling in *Indiana Michigan* governs the outcome of the instant case . . . .We do not accept defendant's argument. Northern States was not a party to the *Indiana Michigan* litigation, nor were its interests represented by the plaintiff in that suit. Northern States, in other words, has not had its day in court. . . plaintiff is entitled to have this court decide on the basis of the utility's own evidence whether the efforts directed toward the development of a private fuel storage facility were foreseeable or, as defendant maintains 'speculative.'

78 Fed. Cl. 449, 465. This Court also declines to find that *Indiana Michigan* precludes the recovery of PFS-related expenses as a matter of law.

**III. Conclusion**

For the reasons set forth previously, the Government's Motion for Summary Judgment Regarding Plaintiff's Claim for Off-Site Fuel Storage Investments is DENIED.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge