IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed electronically on July 21, 2008

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 04-106C<br>(Chief Judge Damich) |

DAIRYLAND'S MEMORANDUM IN SUPPORT
OF ORAL MOTION TO ADMIT TRIAL EXHIBITS

At the conclusion of its case-in-chief on July 21, 2008, Dairyland moved for the admission into evidence 22 exhibits that have been included in Dairyland's "will use" exhibit list. The Court asked Dairyland to submit the support for its oral motion in writing.

In all 22 instances, either the government has not disputed the admissibility of the exhibits or the Court has overruled the government's objections, finding the exhibits both relevant and admissible. The sole issue concerning the admission of these documents into evidence is that Dairyland is not offering these documents for admission into evidence in connection with the testimony of a witness heard at trial (or whose testimony was received by the Court in the form of designated prior testimony).

Dairyland is mindful of the Court's "rule of thumb that [it] will follow" that "a document that has not been discussed by a witness and admitted during the course of the trail day will not be admitted." Tr. at 1018-19 (July 11, 2008). Dairyland respectfully has disagreed that this rule

is supported by the Federal Rules of Evidence,[1] Dairyland has succeeded in offering the great bulk of exhibits it has sought to introduce in the course of witness testimony. However, both in the course of the Court's announcement of its rule on this issue ("Of course, the reason why you have judges is that the application of a rule to the circumstances before you are always a matter of judgment."), tr. at 1019, and during its meeting with counsel in chambers on this issue, the Court indicated some flexibility on this issue. Specifically, in chambers, the Court invited the parties (particularly, Dairyland, since Dairyland was opposing this rule) to make a proffer of additional documents it might want the Court to receive at the end of its case. Dairyland's oral motion to admit 22 documents into evidence is that proffer.

In the attached chart, Dairyland has listed the documents and, where appropriate, pointed the Court to specific references of probative material. The documents Dairyland is offering fall into three categories. First, PX 8 and PX 15 are documents that Dairyland could not practically offer into evidence with a witness due to the old age of the documents. These government documents date from 1980 and reflect the need for away from reactor spent fuel storage that informed the development of the NWPA and the Standard Contract. Due to the age of these documents, none of the witnesses on either party's exhibit list had a connection to them. That does not mean, however, that the documents should be deemed less probative. To the contrary, Fed. R. Ev. 803(b)(16) recognizes that statements in such venerable documents should be accorded a measure of reliability merely because they have been retained for such an extended period.

---

[1] *See* Fed. R. Ev. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court, pursuant to statutory authority.")

Second, PX 76, PX 77, PX 113 and PX 234 represent significant program documents that the Court should have in the interest of having a complete record of such documents on the issues presented at trial. For example, the Court has heard extensive testimony regarding the 1985 Mission Plan and the December 1983 draft of that mission plan. PX 76 and PX 77 comprise the 1984 publicly-distributed second draft of that mission plan. PX 113 is a 1987 Draft Mission Plan Amendment. Similarly, the Court has heard extensive testimony regarding ACRs and APRs. Indeed, in the course of considering the admission of exhibits addressed in designated testimony, the Court looked with favor on receiving a complete record of the ACRs and APRs. *See* Tr. 2426-27 (July 18, 2008). PX 234 is the 1991 APR.

The third category of exhibits is comprised of probative evidence addressing DOE's recognition of 3000 MTU per year as a reasonable acceptance rate (PX 79, PX 82, PX 90, PX 94, and PX 105), DOE's anticipation of exchanges of approved delivery commitment schedules (PX 108, PX 136, PX 139, 149, 241, 274, and 284), DOE's expectation that acceptance of failed fuel would not be delayed (PX 175), and knowledge of the costs utilities were facing to manage their spent fuel in light of the impending breach (PX 136, PX 189 and PX 292). Dairyland would be remiss if it did not offer this probative evidence to the Court. The receipt of such evidence would not overburden the Court, as Dairyland, on the attached list, has pointed the Court to the specific references in the documents relevant to the issues in this case. Nor can the government identify any legitimate prejudice from the admission of this probative evidence. Dairyland acknowledges that, to some extent, the Court has already received evidence addressing these issues. If the Court concludes that it needs no further evidence on these issues, it could decide not to admit them pursuant to Fed. R. Ev. 403 on cumulativeness grounds. But if these exhibits are not to be

admitted into evidence, it should be because the Court has made that cumulativeness determination and not because Dairyland has not offered them.

For the foregoing reasons, Dairyland respectfully requests that the Court admit into evidence the documents noted on the attached list.

Dated: July 21, 2008

Respectfully submitted,

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3173
(202) 261-4751 fax
Counsel for Plaintiff
Dairyland Power Cooperative

Of Counsel:
ROBERT L. SHAPIRO
KEVIN E. STERN
Greenberg Traurig, LLP

**ATTACHMENT**

**"UNTETHERED" EXHIBITS WHICH DAIRYLAND SEEKS ADMISSION**

## A. Pre-NWPA/Standard Contract Documents

| Exhibit No. | Description | Doc Date | Specific References/Relevance |
|---|---|---|---|
| PX 8 | Spent Fuel Storage - Facts Booklet (Doe/Ne-0005 | 4/00/1980 | DOE report discusses existing away-from reactor storage facilities (*see* PA-164440-41). Relevant to foreseeability of development of PFS and other away-from reactor storage solutions as a result of the government's breach. |
| PX 15 | June 1982 - Spent Fuel Storage Requirements - An Update Of Doe/Sr-0007 | 6/00/1982 | DOE report identifying the need for away from reactor spent fuel storage that informed the development of the NWPA and the Standard Contract. |

## B. Spent Fuel Program Documents

| Exhibit No. | Description | Doc Date | Specific References/Relevance |
|---|---|---|---|
| PX 76 | 1984 Draft Mission Plan for the Civilian Radioactive Waste Management Program, Volume I | 3/28/1984 | Significant program document that the Court should have in the interest of having a complete record of such documents. |
| PX 77 | 1984 Draft Mission Plan for the Civilian Radioactive Waste Management Program, Volume II | 3/30/1984 | Significant program document that the Court should have in the interest of having a complete record of such documents. |
| PX 113 | Draft Mission Plan Amendment | 1/00/1987 | Significant program document that the Court should have in the interest of having a complete record of such documents. |
| PX 234 | 1991 Acceptance Priority Ranking | December 1991 | Significant program document that the Court should have in the interest of having a complete record of such documents. |

## C. Total System Life Cycle Cost ("TSLCC") Analyses and Fee Adequacy Reports

| Exhibit No. | Description | Doc Date | Specific References/Relevance |
|---|---|---|---|
| PX 79 | Preliminary Analysis of the Total System Life Cycle Cost of the Commercial High-Level Radioactive Waste Disposal Program, Final Draft | 4/27/1984 | DOE periodically published analyses which were used for the purposes of estimating the costs of its spent fuel and HLW acceptance program. This analysis calculates program costs based on a 3000 MTU acceptance rate that is preceded by a brief ramp-up period (*see* PNL-020-1505). Relevant to the issue of a reasonable acceptance rate. |
| PX 82 | Nuclear Waste Fund Fee Adequacy: An Assessment. Second Annual Report | 7/00/1984 | Fee adequacy reports were prepared annually by DOE to evaluate the adequacy of the waste disposal fees to cover the government's SNF and HLW program costs (*see* PA-177338). This report uses the 3000 MTU acceptance rate (*see* PA-177342). Relevant to the issue of a reasonable acceptance rate. |
| PX 90 | Nuclear Waste Fund Fee Adequacy: An Assessment | 2/00/1985 | This is the third annual fee adequacy report prepared by DOE to evaluate the adequacy of the waste disposal fees to cover the government's SNF and HLW program costs (*see* DER-003-0970). This report uses the 3000 MTU acceptance rate (*see* DER-003-0972). Relevant to the issue of a reasonable acceptance rate. |
| PX 94 | Analysis of the Total System Life Cycle Cost for the Civilian Radioactive Waste Management Program | 4/00/1985 | DOE periodically published analyses which were used for the purposes of estimating the costs of its spent fuel and HLW acceptance program. This analysis calculates program costs based on a 3000 MTU acceptance rate that is preceded by a brief ramp-up period (*see* PA-176464). Relevant to the issue of a reasonable acceptance rate. |

| | | | |
|---|---|---|---|
| PX 105 | Nuclear Waste Fund Fee Adequacy: An Assessment | 3/00/1986 | This is the fourth annual fee adequacy report prepared by DOE to evaluate the adequacy of the waste disposal fees to cover the government's SNF and HLW program costs (*see* PNL-023-0471). This report uses the 3000 MTU acceptance rate (*see* PNL-023-0474). Relevant to the issue of a reasonable acceptance rate. |

**D. <u>Documents Showing DOE Anticipation of DCS Exchanges and/or the Utility of Exchanges</u>**

| Exhibit No. | Description | Doc Date | Specific References/Relevance |
|---|---|---|---|
| PX 108 | Allocation Of DOE Nuclear Waste Acceptance Capacity And Utility Behavior: Overview And Status--Draft (With 4/25/1986 Cover Letter From Thomas Wood To Carl Conner) | 4/00/1986 | Draft PNL Report prepared for DOE discusses the role of an acceptance rights market in achieving an optimal system. *See* PNL-046-0714 through 0724. |
| PX 136 | Letter To Michael S. Karol (DOE) From Gordon H. Beeman (Battelle, PNL) Re: Attached Draft - At-Reactor Spent Fuel Storage Requirements With And Without Acceptance Rights Trading | 9/8/1987 | Draft PNL Report prepared for DOE concludes that the potential savings to utilities from acceptance rights trading "appears to be sufficient to attract significant interest from the utilities once acceptance schedules are firmly established." PNL-144-1717 through 1718. |
| PX 139 | Memorandum To H.J. Hale, Office Of Storage And Transportation Systems, From M.S. Karol, Director Of Storage And Transportation Division, Enclosing Draft Report, "At-Reactor Spent Fuel Storage Requirements With And Without Acceptance Rights Trading" | 10/6/1987 | Draft PNL Report prepared for DOE concludes that the potential savings to utilities from acceptance rights trading "appears to be sufficient to attract significant interest from the utilities once acceptance schedules are firmly established." PNL-046-0002. Substantially similar to PX 136 except this exhibit includes a cover letter from DOE System Integrations Program Manager to the DOE Storage and Transportation Division Director. |
| PX 149 | Letter To Joseph Sutey (DOE) From B. Cole (Battelle) Re: Attached DCS - Processing, Approval, And Management Control System - Rev 4 [And Rev 3] | 8/30/1988 | PNL Report prepared for DOE sets forth criteria for DOE approval of DCS exchange requests. PNL-098-1113. |

| | | | |
|---|---|---|---|
| PX 241 | Preliminary Draft -- DCS Exchange Requests (And Accompanying Letters) | 1/27/1992 | Draft DOE contractor report prepared for DOE discusses DCS exchange scenarios and sample letters for requests for DOE approval of such exchanges HQR-001-2015 through 2017 |
| PX 274 | Letter To J.M. Buchheit (YA) From B. Tomasoni (Contracting Officer, DOE) | 4/8/1993 | DOE letter to Yankee Atomic disapproving submitted DCSs and encouraging Yankee Atomic to pursue exchange allocations with other utilities rather than seek shutdown priority. |
| PX 284 | Letter To J.M. Buchheit (YA) From B. Tomasoni (Contracting Officer, DOE) | 7/15/1993 | DOE letter to Yankee Atomic denying request for shutdown priority and encouraging Yankee Atomic to exchange approved DCSs with other utilities. |

**E. <u>Failed Fuel</u>**

| **Exhibit No.** | **Description** | **Doc Date** | **Specific References/Relevance** |
|---|---|---|---|
| PX 175 | Acceptance of Failed SNF Assemblies by the Federal Waste Management System | 3/00/1990 | March 1990 report prepared for DOE, which was produced from DOE headquarters' files (as indicated by its "HQR" bates prefix), is relevant to show that there would have been no technical impediments to the removal of all of LACBWR's spent fuel in 1998, including its failed fuel, had DOE been performing. On pages HQR-034-1130, the DOE concludes that the analyses "show that cans of failed SNF assemblies…can be accepted and handled routinely." The DOE also concluded that failed SNF assemblies "could also be accepted on the same scheduling basis as standard fuel assemblies provided they are encapsulated in cans…." HQR-034-1131. |

**F. Documents Regarding DOE's Knowledge of Costs Utilities Were Facing in Light of the Impending Breach**

| Exhibit No. | Description | Doc Date | Specific References/Relevance |
|---|---|---|---|
| PX 219 | Cost Estimates of Operating On-Site Spent Fuel Pools After Final Reactor Shutdown | 08/00/1991 | Study prepared for the DOE which shows that DOE knew that utilities (especially shutdown utilities) would incur large spent fuel storage costs if the government did not promptly remove their spent fuel after 1998. On Table 2.3 on page CTR006 0525, the range of pre-9/11 annual wet pool storage costs (net of security) in 1989 dollars ranges from $2,270,000 to $6,000,000. On page CTR006 0526, the document notes that "[t]he expensive outliers are all older facilities with relatively small pools," like LACBWR. |
| PX 189 | Draft - Cost Estimates of Operating On-Site Spent Fuel Pools After Final Reactor Shutdown | 11/00/1990 | Draft study of PX 219 and is relevant for the same reasons. On page HQ0013589, Table 1 shows that the estimated annual operation of costs of on-site spent fuel storage at shut-down reactors (in 1989 dollars) approximately $3,670,000. |
| PX 292 | Timely Topics on Spent Nuclear Fuel Storage, Ivan Selin, Journal of Nuclear Materials Management | 10/00/1994 | Text of a July 19, 1994 speech given by the NRC Chair affirming that due to the government's inability to pick up spent fuel, shutdown plants would have to plan for additional at-reactor storage costs. On page PPL-000075, Mr. Selin stated that "[t]he obvious conclusion is that an increasing number of plants, both operating and permanently shutdown reactors will have to provide for additional spent fuel storage on-site for a longer period than originally planned…." |