IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed on September 8, 2008

| | |
|---|---|
| FLORIDA POWER AND LIGHT CO, | |
| Plaintiff, | No. 98-483 C |
| v. | (Judge Baskir) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

DAIRYLAND POWER COOPERATIVE'S RESPONSE
TO GOVERNMENT'S MOTION TO COORDINATE
DISCOVERY AND DEVELOP A LITIGATION PLAN FOR SPENT FUEL CASES[1]

The government's motion to coordinate discovery and develop a litigation plan for spent fuel cases was filed in all of the spent fuel cases pending in this Court, including *Dairyland Power Cooperative v. United States*, as reflected in Attachment A to the motion. As recently confirmed by the government's counsel of record in *Dairyland*, however, the government's motion is not relevant to *Dairyland*. *See* Tr. of hearing of August 28, 2008 at 18-19, exhibit 1 hereto. The inapplicability of the government's motion to *Dairyland* should be clear in light of the fact that trial has already concluded in that case (though as discussed during the August 28 hearing, there remains the possibility of the Court receiving a very small amount of additional evidence in light of the Federal Circuit's recent decisions in the spent fuel cases). Accordingly, there is no further discovery or pretrial proceedings to be coordinated or planned in *Dairyland*. And any

[1] Because the government motion used the *Florida Power and Light Co. v. United States* caption, Dairyland is likewise using that caption for its response, and filing a copy of this response in that case as well, in an effort to avoid needless confusion.

involvement of *Dairyland* in such proceedings would merely delay resolution of that case.

For the foregoing reasons, the government's motion should be denied with respect to *Dairyland*.

Respectfully submitted,

September 8, 2008

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiff*
DAIRYLAND POWER COOPERATIVE

Of Counsel:
Robert L. Shapiro
GREENBERG TRAURIG, LLP

*WDC 371,677,388v1 9-8-08*

# EXHIBIT 1

UNITED STATES COURT OF FEDERAL CLAIMS

DAIRYLAND POWER COOPERATIVE, )
Plaintiff, )
)
v. ) Docket No. 04-0106C
UNITED STATES, )
Defendant. )

Thursday,
August 28, 2008

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on August 29, 2008.)

APPEARANCES: (Via Telephone)

On Behalf of Plaintiff:

ROBERT SHAPIRO, Esquire
KEVIN STERN, Esquire
Greenberg Traurig LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 331-3100

APPEARANCES: (Cont'd.)

On Behalf of Defendant:

ALAN J. LO RE, Esquire

SCOTT SLATER, Esquire

SONIA ORFIELD, Esquire

U.S. Department of Justice

1100 L Street, N.W., #7050

Washington, D.C. 20005

(202) 616-0478



P R O C E E D I N G S

(9:55 a.m.)

THE COURT: We're on the record now. This is the case of Dairyland Power Cooperative v. The United States, Docket No. 04-106. Representing the Plaintiff is Mr. Robert Shapiro. Is that correct, Mr. Shapiro?

MR. SHAPIRO: Yes, it is, Your Honor.

THE COURT: Okay. And I understand with you is Mr. Kevin Stern, is that correct?

MR. SHAPIRO: That's also correct.

THE COURT: Okay. Anyone else there with you, Mr. Shapiro?

MR. SHAPIRO: No. Just the two of us.

THE COURT: Okay. Great. Thanks. And representing the United States, the Defendant, is Mr. Alan Lo Re. Mr. Lo Re, are you there?

MR. LO RE: Good morning, Your Honor. Yes.

THE COURT: Okay. And you have someone with you?

MR. LO RE: Yes, I do. I have Mr. Scott Slater.

THE COURT: Okay.

MR. LO RE: I also have Sonia Orfield, both of whom appeared before you during the trial.



THE COURT: Okay. Great. Thank you. Welcome to you all. The purpose of the status conference is to determine the impact of the Federal Circuit's recent decisions in the spent nuclear fuel cases on the Dairyland litigation.

And let me just say that currently according to the schedule that I set up, the closing arguments and initial posttrial briefs are currently due from both parties on September 12, 2008, and then the plan was after the Court got those briefs, we would then order a supplemental briefing with specific questions that might remain.

Now of course we have the determination by the Federal Circuit of a rate of acceptance based on the 1987 ACR. Seems to me that this would call for a revision of expert reports, so let me begin with that specific topic but of course open the floor to any comments on the impact of those decisions on the Dairyland litigation. Let me begin with Mr. Shapiro. Mr. Shapiro?

MR. SHAPIRO: Thank you, Your Honor. The Court of Appeals decisions are obviously helpful in clarifying a number of issues, particularly the acceptance rate, and I think it makes the job of the parties for briefing and the Court ultimately somewhat



easier than it might have been. And it's certainly our view that it bolstered kind of Dairyland's position. The acceptance rate adopted by the Federal Circuit is certainly consistent with the position Dairyland has put forward.

It's actually our position, and I don't know that there will be any disagreement from the government, that I don't think there's any need to have revision of expert witness reports and perhaps not even any supplement of the record, although there may be a small caveat to that as it turns out that the key witness, I think in this regard expert witness, would be that of Mr. Graves. And Mr. Graves as it turns out in his expert witness report considered an acceptance rate that is the same rate as that in the 1987 ACR.

The 1987 ACR, which is in evidence in the case, Plaintiff's Exhibit 126, notes right in there, it's actually page 10 of the exhibit where it notes the acceptance rate and it identifies the source of the acceptance rate there, the 1987 mission plan amendment, which is also in evidence, Plaintiff's Exhibit 127.

Mr. Graves, as the Court may recall, considered a number of different sensitivity analyses

or scenarios, whatever term might have been used, for different acceptance rates. One of those was the 1987 mission plan rate, so that rate was specifically considered by Mr. Graves. It was in his expert witness report. It was also in his demonstratives at trial, and he of course found as he noted. All of his sensitivity analyses had Dairyland getting out in the same year, 1998.

And in fact, in his trial testimony, Mr. Graves bracketed if you will all of the acceptance rates that he considered, those ramping up fairly quickly to 3,000, one that got to 3,000 in 1998 even and even the slower rates preferred by the government, the 900 MTU rate, and he found that all of those had Dairyland getting out in 1998.

Now, if we had known that the Court of Appeals was going to rule, I frankly would have perhaps spent an additional five minutes of trial time having him focus more on that one particular sensitivity analysis that obviously was in his expert witness report. It was listed on the last page of his demonstrative.

And it may be helpful to avoid any question on the issue to -- I mean, there are a couple different options of having, you know, that one slide



about flat rate of his demonstrative accepted as substantive evidence or, if the Court would prefer, we could offer a debrief, either written testimony, very brief, like less than five pages or five minutes of oral testimony, whether it be by video or even if necessary in person.

But that's really the only possible change in the record at least from Plaintiff's view, we can certainly hear from the government, that we would view as possibly desirable in light of the Court of Appeals decision. As it turns out, it really is quite consistent with Dairyland's presentation.

THE COURT: Okay. Thank you, Mr. Shapiro. Mr. Lo Re?

MR. LO RE: Yes, Your Honor. I think in the first instance, we are in agreement with the Plaintiffs in that we think that, really maybe even moreso than the Plaintiffs, we think really nothing is left to be done from our perspective.

As the Court is aware, we are still in the period of time where the government is considering the opinions and deciding what action to take. However, in the meantime, our position is that the record is closed in this case, and we would not be agreeable to simply have Mr. Graves' expert report, which was not



admitted into evidence, come into evidence or to have the demonstrative slides be made into evidence unless and until the Court decided that it wanted to actually hear some testimony on that.

If you recall, Mr. Graves testified about a number of different scenarios, but he did not testify about the actual 1987 rate of acceptance, and I think Mr. Shapiro recognized that in his presentation to the Court. So if the Court were to take in evidence on that matter, we would certainly want the opportunity to review whatever it is Mr. Graves specifically has to say about that rate and would ask for an opportunity to either cross-examine Mr. Graves or at least to respond to what Mr. Graves has to say on that issue.

THE COURT: Okay. Let me see if I understand correctly, that my interpretation is that Mr. Shapiro is content not to revise or supplement the expert witness reports. The only thing that he would suggest I guess is that the possibility of a slide in the demonstrative testimony would be actually admitted into evidence, although I don't hear that as a sine qua non, and Mr. Lo Re also does not want to revise or supplement the government's expert reports and cautions that if the Court were to consider that slide



going into evidence that that would trigger the government's desire to reopen the testimony I guess of Mr. Graves at least on that point so that there could be cross-examination. Is that correct, Mr. Shapiro?

MR. SHAPIRO: It's certainly correct in terms of our position. I'd like to respond at least briefly to something that Mr. Lo Re said, which is that it's his assertion that Mr. Graves did not address the 1987 mission plan, later the 1987 ACR rate, in his testimony.

THE COURT: Yes.

MR. SHAPIRO: It's our interpretation of the testimony that he addressed all of his scenarios. He did not specifically name that one in his testimony, but he certainly said under all the acceptance rates he considered, and he obviously considered that one, he got the same results. Dairyland still was out in 1998. But at the same time, we don't want any dispute on that issue. We feel that Mr. Graves' opinion is obviously clear. If the government really feels that it has to question him more, I don't want any dispute on that.

THE COURT: Okay. So I think that it really is a matter of interpretation then which ultimately I guess is for the Court, and that is that if you feel,

Page 10

Mr. Shapiro, that the testimony is adequate, then of course the Court will look to that testimony and not expect any supplementation and try to determine the outcome using the Federal Circuit's guidance whether Mr. Lo Re is correct or not on his interpretation of whether Mr. Graves testified on that issue. I mean, he's your witness, Mr. Shapiro, so if you say that, then I will obviously accept that and then just look at his testimony.

MR. SHAPIRO: Well, maybe I haven't made myself clear when I said I don't want any dispute on the issue.

THE COURT: Okay.

MR. SHAPIRO: If the government really prefers some additional testimony from Mr. Graves because they want to be able to cross-examine him on that, we wouldn't oppose that.

Given that Mr. Graves obviously considered this rate, it's in his report, it's in his demonstrative, we think it would behoove the Court not to have a potential dispute from the government in posttrial briefing as to whether or not there is adequate evidence in the record on Mr. Graves' consideration of the '87 ACR rate. And if we have to go through the inconvenience of somehow making that

Page 11

clearer, so be it, but it just does not seem appropriate to have a dispute over it. I think it's clear right now, but apparently it's not so clear to Mr. Lo Re.

THE COURT: Well, let me ask this. You feel that Mr. Graves' testimony, and that means not including the demonstrative exhibit, is sufficient for the Court to come to a conclusion what the result would be applying the 1987 ACR rate as mandated by the Federal Circuit, is that correct, Mr. Shapiro?

MR. SHAPIRO: I think minimally so, yes. Could it have been clearer and would I have done it differently if we had known, if I had predicted in advance what the Federal Circuit would have done, sure, I would have made it clearer. But is it minimally there by bracketing a 3,000 MTU rate to 900 MTU? Sure, it's there.

THE COURT: Okay, because I think that Mr. Lo Re's position was that I think he would certainly allow you to take that position. I think his concern was that if more evidence was to be let in, then he would want the right to cross-examine Mr. Graves. Is that correct, Mr. Lo Re?

MR. LO RE: That's exactly correct, Your Honor. If Mr. Shapiro takes the position that the

Page 12

record is full and that his witness has covered the topic, that's certainly his prerogative to do so. We're not necessarily challenging that. We can look into that and address that in posttrial briefing.

My concern is exactly what you articulated, Your Honor, that if Mr. Shapiro were to take the tactic to supplement the record, our first response would be, well, we think the record is closed. Our second response would be if that is going to come in, then we certainly would like an opportunity to respond.

THE COURT: Okay. I think that there really is agreement here then between the two of you. And we could make it even more definitive by adhering to the schedule that is already set up with regard to the posttrial briefs on September 12 by expecting, and I think you would do this in any event, Mr. Shapiro, even if I didn't ask for it, by in the posttrial brief highlighting the evidence that has been admitted at the trial insofar as it is relevant to the 1987 ACR rate. Is that correct, Mr. Shapiro?

MR. SHAPIRO: Yes, I would certainly highlight it and I think I've described it generally here. Mr. Graves does not specifically reference that rate, but he references 3,000 MTU rate, 900 MTU rate.

Page 13

The '87 ACR rate is obviously a little bit in between.

THE COURT: Okay. But you would specifically address the 1987 ACR rate then in your posttrial briefing due on September 12, is that correct, Mr. Shapiro?

MR. SHAPIRO: Certainly.

THE COURT: Okay.

MR. LO RE: Your Honor, if I may respond to that?

THE COURT: Yes. Mr. Lo Re?

MR. LO RE: Thank you. One issue on the dates, and I had spoken with Mr. Shapiro about this. As the Court may know and as I alluded to earlier, there is a 45-day window that we're in with respect to any action that any party may take with respect to the three opinions that came down on August 7.

And given that the government is certainly examining the decisions now closely, we were wondering if the Court would be amenable to having the first briefs due rather than the 12th, moving that two weeks to the 26th of September. This would give us an opportunity to, presuming that the schedule is phased for the hearing or any petition that may be filed, we would then be filing those briefs after that period. And we think from the government's perspective, it may

inform our briefing and the posttrial briefing in the Dairyland case.

THE COURT: Okay. Mr. Shapiro?

MR. SHAPIRO: Yes, and we're in accord with that request. Frankly, also the Court of Appeals decision has diverted some attention to those issues and some more time would be helpful.

THE COURT: Okay. Is that an accommodation to the Defendant, Mr. Shapiro, or is it that you could use the extra time as well?

MR. SHAPIRO: I would say both.

THE COURT: Okay. All right.

MR. SHAPIRO: I had suggested a shorter period to Mr. Lo Re. He had suggested two weeks to take it out to perhaps a 45-day window.

MR. LO RE: I appreciate that candor on Mr. Shapiro's part.

THE COURT: Okay. The reason why I ask is because it had occurred to me before I heard from you that insofar as Mr. Lo Re has some I guess reservations about Mr. Graves' testimony that maybe a staggered brief might be better in the sense that if the Plaintiff submitted its brief earlier and then the posttrial brief from the government would come later that then if the government saw anything in your



brief, Mr. Shapiro, that it wanted to bring to the attention of the Court, then we could have a status conference soon thereafter and sort of resolve any difficulties that might arise. How do you see that, Mr. Shapiro? Is that a good idea or a bad one?

MR. SHAPIRO: I think it may have the potential to complicate matters frankly, Your Honor. I don't think there's going to be a whole lot of mystery to the government in terms of what we're going to be citing in the record on the acceptance rate issue. The pages in the transcript are pretty obvious, the two exhibits are the ones I just mentioned, so I can't imagine that there's going to be a whole lot of new information that the government gets when we actually file our brief on that issue.

THE COURT: Okay. Mr. Lo Re, do you want to comment?

MR. LO RE: This is an issue, Your Honor, I think we've talk about before. We kind of go through this in every trial. Typically, because it is the Plaintiff's burden to go forth in the first instance, we do prefer to have the responsive brief. We think that there's always the concern, and I know you've heard this term before, of sort of two ships passing in the night both looking at the same issue but not



focusing their briefs on what the Court may be most interested in.

And so, in light of that, I think it would be our preference, particularly since there may be some question about what Mr. Graves said or didn't say about the acceptance rate, our preference would be to go sequentially. Having said that, Your Honor, if the Court wants to go simultaneous, we certainly can live with that. That's fine.

THE COURT: Okay. I'm a little bit concerned that we may end up having to have briefing after the posttrial briefing because of maybe some lack of clarity as to what is actually the record with regard to Mr. Graves' testimony. That's why I think the staggered briefing might be helpful.

Mr. Shapiro, I don't want to hold you to September 12 because you said you needed more time. What about September 19? Is that possible?

MR. SHAPIRO: That would be fine, Your Honor.

THE COURT: Okay. Well, let's have the Plaintiff's brief then on September 19, and the Defendant's brief, you can still have that on the 26th, Mr. Lo Re?

MR. LO RE: Your Honor, how about if we took



that out to Wednesday, October 1?

THE COURT: Okay. We'll do that. All right. So September 19 then for the Plaintiff and October 1 for the Defendant. And the Court understands that there's no need for supplemental briefing, expert reports, that is to say no need for supplementing the expert reports from either side.

The only other thing I want to discuss is the government's motion to coordinate discovery and develop a litigation plan for the cases that were filed on August 21. And there's an aspect of it that I want to ask Mr. Lo Re about, and that is I thought there was a mention in the brief about guidance on the part of the Federal Circuit with regard to exchanges.

And I am unable to pinpoint where in the three cases that came down from the Federal Circuit there is such guidance. Do you at least off the top of your head? I know that you weren't prepared for this question.

MR. LO RE: That's fine, Your Honor.

THE COURT: But do you remember what the government was referring to?

MR. LO RE: No, and I'm afraid I don't remember. However, I know that there was some I think passing mention of exchanges I believe in the PG&E

Page 18

case, but I do not think that there was an extended ruling on the issue of exchanges.

THE COURT: Oh, good. We're in agreement on that.

Mr. Shapiro, I presume you're in agreement also?

MR. SHAPIRO: Yes. The passing reference as I recall was really to Mr. Graves' testimony where the Court found it really within the Court's discretion. It upheld Judge Hewitt's exclusion to Mr. Graves, but in that same paragraph, it said it had no problem with the fact that Judge Merow accepted the testimony and found it compelling.

THE COURT: Okay. Let me just opine a little bit without actually having heard from the Plaintiff, which you are there, just to make your comments, and that is obviously this motion doesn't seem to have much relevance to the Dairyland case.

Would you agree with that, Mr. Lo Re?

MR. LO RE: Yes, Your Honor. As the Court knows, pursuant to the Court's rules, we filed the case, first of all the Florida Power and Light case, because that is I believe the oldest case that is currently still on the docket. We filed again pursuant to the rules, and I don't know the rule off

Page 19

the top of my head. Just by notice, we filed the motion in all of the cases, so I'm sure we did a nice job of gumming up your docket there.

THE COURT: Yes, there is a bit of a problem there. Let me go off the record to just talk about this briefly.

MR. LO RE: Sure.

(Discussion held off the record.)

THE COURT: Okay. Mr. Lo Re, you said that you had looked at the government's brief with regard to its statement on guidance from the Federal Circuit on exchanges?

MR. LO RE: Yes, Your Honor. The passage I'm reading is at page 7 of our motion that we filed on the 21st of August. We reference theories regarding exchanges and whether they constitute a viable basis for increasing damages awards. That is a reference I believe, Your Honor, with respect to Mr. Graves' testimony as to whether it was properly excluded in the PG&E case.

So, again, I think that reiterates what I said earlier, which was our position is not that the Federal Circuit has made a substantive ruling on exchanges. It came up I think as Mr. Shapiro said in the context of Mr. Graves' testimony being excluded in

Page 20

the PG&E case.

THE COURT: So how did it provide guidance? In the sense that the Federal Circuit did not say that Mr. Graves' testimony ought to have been excluded?

MR. LO RE: No. They affirmed the Court's exclusion of Mr. Graves and they said in that particular case, it was within the Court's prerogative to decide in Judge Hewitt's case whether or not that testimony could properly be heard. In other words, it didn't say that she erred in excluding Mr. Graves' testimony.

THE COURT: Yes.

MR. LO RE: They're just pointing out that the Court has sort of looked at the issue in the broad terms in terms of whether or not it's viable in one case versus another case. And I think Your Honor has already made a decision on the threshold question of whether Mr. Graves got to testify. I think that's all we're addressing in that passage of our motion.

THE COURT: Okay. Do you want to comment on that, Mr. Shapiro?

MR. SHAPIRO: Just to reiterate that the Court really did make it a matter of the Trial Court's discretion because it specifically noted that while it did not reverse Judge Hewitt's decision, it

Page 21

specifically noted that it had no problem with Judge Merow's contrary decision to, as this Court did, deny the motion, the government's motion in limine and hear Mr. Graves' testimony.

THE COURT: Okay. Okay. I think that we have a plan at least for the near future, which was the purpose of the status conference. Is there anything else that the Court should consider at this time? Mr. Shapiro?

MR. SHAPIRO: Well, I'm frankly a little bit unclear on what the Court's plan would be after getting the parties' briefs on the 19th and 26th on this one issue with Mr. Graves' testimony. I think it's certainly our position that the evidence is sufficient. I'm hearing some indications from Mr. Lo Re that they may have a contrary view.

Would the contemplation be that the Court is then going to look at those briefs and decide whether there should be, as I said, five minutes of additional testimony and whatever cross-examination the government wants from Mr. Graves or not, or does the Court contemplate something else?

THE COURT: No, that's what I was thinking of. The dates, by the way, are September 19 and October 1.

MR. SHAPIRO: Oh, I'm sorry. Yes, October 1.

THE COURT: That's precisely the issue, to make sure that there isn't hanging out there the need for additional testimony by Mr. Graves to make sure that you have clearly set forth your case, Mr. Shapiro, so I actually think it's in your interest. But what I can do is if I think there is an issue, we can have a status conference after the briefs have been submitted and a short time for consideration by the Court to see if there is a potential problem and then see if we need testimony or not.

MR. SHAPIRO: That's definitely in our interest and we appreciate it.

THE COURT: Okay. Great. Anything on your side further, Mr. Lo Re?

MR. LO RE: No. Just there is one procedural matter, Your Honor.

THE COURT: Sure.

MR. LO RE: And Mr. Shapiro and I talked about this. We are in the process of going through the list of exhibits that Heritage provided to us, admitted exhibits, for any discrepancies that are on our list that don't appear on the final list.

I think Mr. Shapiro mentioned yesterday, and



I don't mean to burden the Court with this, but this is really just by more of an FYI, but there appear to be some, I think there was one or two, two days, that seem to be omitted from the list, documents that were admitted on a particular day. So we're just sorting through that with Heritage. I don't see a need to bring that to the Court's attention any further than to say that's something we're working on behind the scenes.

THE COURT: Okay. I hope it can be resolved behind the scenes as well, but if not, we can have another conference and try to make sure that we're all on the same page in that regard. Okay, Mr. Lo Re?

MR. LO RE: Thank you, Your Honor.

THE COURT: All right. Great. Okay. There being no further business before the Court then, we will go off the record.

(Whereupon, at 10:40 a.m., the hearing in the above-entitled matter was concluded.)

//
//
//
//
//
//



CERTIFICATE

DOCKET NO.: 04-0106C
CASE TITLE: Dairyland Power Cooperative v. U.S.
HEARING DATE: August 28, 2008

I certify that the foregoing is a true and correct transcript made to the best of our ability from a copy of the official electronic digital recording provided by the United States Court of Federal Claims in the above-entitled matter.

Date: August 29, 2008

Karen Widlock
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018