# In the United States Court of Federal Claims

No. 04-106 C
(Filed:  March 2, 2012)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | \* |
| **DAIRYLAND POWER COOPERATIVE**, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| **THE UNITED STATES**, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER ON MOTION TO REOPEN EVIDENTIARY RECORD

On December 14, 2011, concurrent with its brief regarding Plaintiff's claim on remand for damages relating to Private Fuel Storage ("PFS") in this Spent Nuclear Fuel ("SNF") case, Defendant filed a Motion to Re-Open the Evidentiary Record ("Def.'s Mot. to Re-Open").  In its motion, Defendant seeks admission into the record of 16 previously unadmitted documents[1] and 11 lines of deposition testimony.  It also seeks to take limited discovery (depositions and document requests) into whether Plaintiff has contributed capital to PFS since 2005.  Briefing on this evidentiary motion concluded on January 20, 2012.

For the reasons stated below, the Court denies Defendant's motion.[2]

### I.  Background

The issue whether Plaintiff should recover mitigation damages for its investment in PFS is back before the court upon remand by the Court of Appeals for the Federal Circuit.  In its trial decision, this court had, inter alia, awarded Plaintiff $11,999,125 in damages (inclusive of overhead and general and administrative costs) for PFS.  *Dairyland Power Coop. v. United States*, 90 Fed. Cl. 615, 651 (2009) ("*Dairyland I*").

On remand, the Federal Circuit vacated the award of damages for PFS and directed this court to apply a more detailed inquiry to its causation analysis.  The Circuit explained that

---

[1]  In its brief in reply to Plaintiff's opposition to the instant motion, the Government notes that it no longer seeks to admit a seventeenth exhibit, PX265.

[2]  The 11 lines of deposition testimony were offered by the Government to establish that the handwriting on Defendant's trial exhibit, DX281, was that of Mr. Sans Crainte.  Plaintiff has offered to stipulate that the handwriting is his.  Pl.'s Reply Br. on Remand 19.  The court accepts Plaintiff's stipulation and therefore the admission of the deposition testimony is denied as moot.

damages for "the cost of actions taken in mitigation" are available "only to the extent the nonbreaching party can show that the damages were actually caused by the breach." *Dairyland Power Coop. v. United States*, 645 F.3d 1363, 1376 (Fed. Cir. 2011) ("*Dairyland II*"). Specifically, in response to the Government's argument that "Dairyland's investment in PFS was more profit speculation than mitigation," *id*. at 1375, the Circuit emphasized that the burden was on Plaintiff to prove "how much, if any, of its PFS investment was speculative as opposed to mitigation-oriented." *Id*. at 1376.

II.  Legal Standard

"Whether to re-open the record is entrusted to the sound discretion of the trial court." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 833 (Fed. Cir. 2010).

Defendant appropriately cites authority that "liberality in favor of reopening is to be encouraged to afford the fullest possible hearing (particularly in nonjury cases)."  Michael H. Graham, *Handbook of Federal Evidence* § 611:5 (6th Ed. 2009).  Nevertheless, there are three factors a trial court must consider: 1) the probative value of the evidence proffered, 2) why the evidence was not offered earlier, and 3) the likelihood of undue prejudice to the opposing party. *Precision Pine*, 596 F.3d at 833-34.  In keeping with the third factor above, "[a]n important criterion for properly reopening a case is taking care that reopening does not 'preclude an adversary from having an adequate opportunity to meet the additional evidence offered.'" *United States v. Peay*, 972 F.2d 71, 74 (4th Cir. 1992) (quoting *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir. 1982) *overruled on other grounds*, *United States v. Calverley*, 37 F.3d 160, 164 n.27 (5th Cir. 1994)).

It is not uncommon for a trial court to re-open the evidentiary record where a higher court has remanded a case for further consideration.  *E.g.*, *In re Grimm*, 168 B.R. 102, 106-10 (Bankr. E.D. Va. 1994); *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 947 n.9 (3d Cir. 1985); *In re Harker*, 357 F.3d 846, 849-50 (8th Cir. 2004).  A change in legal standards on remand weighs in favor of reopening the record.  *Grimm*, 168 B.R. at 107; *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 464 (6th Cir. 1991).

With respect to the three factors, first, a trial court considers whether "the evidence sought to be introduced is especially important and probative." *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995); *see also Precision Pine*, 596 F.3d at 844.  "The evidence proffered should be relevant, admissible, technically adequate, and helpful to the [factfinder] in ascertaining [the facts at issue]." *Thetford*, 676 F.2d at 182.  Trial courts act within their discretion in refusing to reopen a case where proffered evidence is of little probative value or is cumulative.  *Rivera-Flores*, 64 F.3d at 746 (*citing Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir.1994); *Thomas v. SS Santa Mercedes*, 572 F.2d 1331, 1336 (9th Cir.1978)); *Kelly v. Commercial Union Ins. Co.*, 709 F.2d 973, 980 (5th Cir. 1983).

Second, a trial court considers whether "the moving party's explanation for failing to introduce the evidence earlier is *bona fide*." *Rivera-Flores*, 64 F.3d at 746; *see also Precision Pine*, 596 F.3d at 844.  In other words, "the party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief." *Thetford*, 676 F.2d at 182. The moving party may be justified if it can show "reasonably genuine surprise." *See, e.g.,*

2

*Davignon v. Hodgson*, 524 F.3d 91, 114 (1st Cir. 2008) (allowing reopening in part because the movants had a bona fide expectation that they could introduce their evidence at a later stage). A change in legal standards on appeal may also justify reopening to the extent that the issue "emerged after the original record was made." *Patterson v. American Tobacco Co.*, 586 F.2d 300, 304 (4th Cir. 1978). However, "inadvertence is not a compelling explanation" for failing to offer available evidence in the first instance. *Love v. Scribner*, 691 F. Supp. 2d 1215, 1235 (S.D. Cal. 2009).

Third, the court must consider whether reopening would cause "undue prejudice to the nonmoving party." *Rivera-Flores*, 64 F.3d at 746; *see also Precision Pine* 596 F.3d at 844. An important consideration is whether the evidence sought to be admitted is immediately available or portends a significant delay in the trial. *Blinzler v. Marriott Int'l*, 81 F.3d 1148, 1160 (1st Cir. 1996). Nevertheless, "reopening proof on the motion of one party long after trial has been completed can put the opposite party at a distinct disadvantage." *Ramsey v. United Mine Workers*, 481 F.2d 742, 753 (6th Cir. 1973). Reopening of the record "should not imbue the [new] evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered." *Thetford*, 676 F.2d at 182 (citations omitted). In particular, the non-moving party is prejudiced if it lacks the opportunity to cross-examine the proponent of the new evidence. *See, e.g., Greater Dallas Home Care Alliance v. United States*, 1998 U.S. Dist. LEXIS 9656, *4-5 (N.D. Tex. June 22, 1998) (refusing to reopen the record because it would require another hearing to give the non-movant the opportunity to cross-examine the author of a document); *c.f. Harker*, 357 F.3d at 849 (noting, in upholding a reopening of the record, that the non-movant was given an opportunity to cross-examine the proponent witness).

III. Discussion

As to the first factor, "[t]he evidence proffered should be relevant, admissible, technically adequate, and helpful to the [factfinder] in ascertaining [the facts at issue]." *Thetford*, 676 F.2d at 182. It appears to the court that the documents in question are, to varying degrees, probative of underlying issues of causation and the reasonableness of Dairyland's expenditures for private, off-site fuel storage. The parties disagree, however, on the admissibility of the documents and whether some of them are cumulative of evidence already in the record.

Even accepting the probative value of the documents in question, however, the court finds that Defendant's motion to reopen the record founders especially on the failure of the Government to have offered them at trial. The issue before this court on remand – the extent to which, if any, Dairyland's investment in PFS was made for profit-oriented, as distinct from mitigatory, purposes – was plainly before the court at trial. In its post-trial brief, citing trial transcript testimony and exhibits admitted at trial, Defendant argued

> the evidence demonstrates that Dairyland participated in PFS as a business venture designed to net profits, strongly suggesting that factors other than DOE's delay prompted the investment. According to Dairyland's John Parkyn, although the totality of LACBWR's SNF could be stored in approximately six storage

> casks, Dairyland's significant ownership interest in PFS amounted to 500-600 of the 4,000 casks at the PFS facility.
>
> After using six casks to store its own SNF at PFS, Dairyland plans to lease its substantial remaining cask space to utilities that are not members of the PFS enterprise.  Should this occur, GFT[3] will receive a share of the profits derived from these leases.  The PFS business plan projects a return to its members of net profit in the amount of $324 million.  After the Goshute Indians receive a $49 million share compensating them for the use of their land, PFS's 11 members are to receive the remaining $275 million in proportion to their percentage ownership interests.  Given GFT's 13.5 percent interest in PFS, Dairyland stands to profit substantially should PFS commence operations – which Dairyland maintains is a real possibility.
>
> The Court should not compel the Government to fund Dairyland's business decision to invest in such a speculative, potentially lucrative venture.

Defendant's Post-Tr. Br. 49-50 (citations omitted).

In addition, the admission of these documents, even those that were listed on either Plaintiff's or Defendant's pre-trial list of proposed exhibits but never offered at trial, may nevertheless be prejudicial to Plaintiff at this point.  Defendant proposes to admit the bare documents without the opportunity for Plaintiff to provide relevant context or conduct cross-examination.  By contrast, the cases that Defendant's cites in support of reopening the record upon remand from a higher court generally indicate that the reopened record included more than simply the admission of bare documents.  *Kona Tech. Corp. v. South. Pac. Transp. Co.*, 225 F.3d 595, 609 (5th Cir. 2000) (trial court allowed additional time for discovery and direct and cross examination of additional witnesses); *Bankers Trust Co.*, 761 F.2d at 947 (reopened record included evidentiary hearing); *Harker*, 357 F.3d at 849 (witness testimony and opportunity to cross-examine).

For example, Plaintiff argues that the Government's proposed document, DX 111, which the Government offers to indicate an $8 million cost to construct on-site dry storage, "applies to an option that would not have been helpful to Dairyland."  Dairyland's Reply Br. on Remand 20.  Had Defendant offered this document at trial, Plaintiff would have had a fuller opportunity to attempt to explain, distinguish, or otherwise counter the inference that Defendant would have the court draw now.

Defendant leans heavily on the argument that the documents are particularly pertinent in light of the Federal Circuit's "new guidance about the parties' burdens and the law governing Dairyland's PFS claim."  Def.'s Mot. to Re-Open 7.  Defendant cites the following language of

---

[3]  GFT, Genoa Fuel Tech, was the intermediate entity that Dairyland created through which to fund its PFS investment.  Dairyland I, 90 Fed. Cl. at 617 n.5, 647.

the Federal Circuit's opinion in *Dairyland II* as "important new language about the parties' burdens and the operative legal standard upon remand," *id.* at 8:

> The government having raised the specter of a bounty accruing to Dairyland from its PFS investment, Dairyland had the burden to prove how much, if any, of its PFS investment was speculative as opposed to mitigation-oriented. The government, of course, was entitled to contest that proof, and the trial court to determine which party the evidence best favored.

*Dairyland II*, 645 F.3d at 1376.

Defendant concludes that the Federal Circuit's directive to this court on remand – "to determine in the first instance the amount to offset Dairyland's award of its PFS investment to account for speculation (if indeed there was speculation)," *id.* – constitutes a new legal standard.

This court does not find it so. The Federal Circuit's directive on remand was premised on its recitation of well-established precedent that the recovery by "a plaintiff for the cost of actions taken in mitigation" was no more than "an extension of the requirement that damages are recoverable only to the extent the nonbreaching party can show that the damages were actually caused by the breach." *Id.* (citing *Ind. Mich. Power v. United States*, 422 F.3d 1369, 1376 (Fed. Cir. 2005). The Circuit did not set out any new legal standard or change either party's burden of proof. Rather, the Circuit clearly directed this court to apply a greater "level of detailed inquiry to the causation analysis" bearing on the "speculative as opposed to mitigation-oriented" character of Dairyland's PFS investment. *Id.*

The cases upon which Defendant relies in support of reopening an evidentiary record where the legal standard changed on appeal are thus inapplicable here.

In weighing the three factors regarding reopening an evidentiary record, the court finds that the probative value of the documents is outweighed by the failure of the Government to have offered them at trial and the potential for prejudice to Plaintiff. Were the court to allow them into the record at this stage, in fairness it would find it only fair to do by reopening the trial or otherwise convening a proper hearing in order to enable their admission via witnesses laying a proper foundation. Such a proceeding would then afford both sides to elicit the appropriate context for any argument advanced by the admission of the document whether through direct or cross-examination. After such proceeding, it would then be more orderly to have the parties re-brief the issue(s) on remand based on the more complete record.

Clearly such steps would delay the resolution of the issue of PFS damages on remand.[4] Thus, while the evidence sought to be admitted currently meets "the important consideration" of immediate availability, *see Blinzler v. Marriott Int'l.*, 81 F.3d 1148, 1160 (1st Cir. 1996), it is not now presently available in the context that the court would find most helpful and non-prejudicial. Because the Federal Circuit did not send the PFS issue back to this court under any new legal

---

[4]  The court's concerns here apply as well to Defendant's request to reopen the record to take additional discovery via depositions and document requests.

standard, this court is ultimately disinclined to reopen the record when Defendant was previously on notice and able to have offered these documents at trial.

The issue on remand was argued by the parties at trial.  Defendant did not choose to introduce then the documents that it now proposes to add to the record, although they would have been fully as probative then as Defendant argues they are now on remand.  Plaintiff bore then, and bears now, the burden of proving that its PFS investment was a mitigation expense actually caused by the Government's breach.  Defendant contested Plaintiff's proof.  This court is tasked with conducting a more detailed inquiry of the causation analysis, focusing on whether "to offset Dairyland's award to account for speculation," *id*., based on Dairyland's proof and the Government's rebuttal of that proof.  The issue was joined and the record established at trial.

Oral argument on PFS damages on remand has been set for March 22, 2012.

IV. Conclusion

For the reasons stated above, the court finds no compelling basis for reopening the evidentiary record.  Defendant's motion is denied.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge