# In the United States Court of Federal Claims

No. 04-106 C

(Filed: July 20, 2012)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DAIRYLAND POWER COOPERATIVE**,

Plaintiff,

v.

**THE UNITED STATES**,

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Robert L. Shapiro*, Hughes Hubbard & Reed LLP, Washington, DC, counsel of record for Plaintiff; of counsel was *Daniel T. Lloyd*, Hughes Hubbard & Reed LLP, Washington, DC.

*Scott Slater*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for Defendant, with whom were *Harold D. Lester*, Assistant Director, *Jeanne E. Davidson*, Director, and *Stuart F. Delery*, Acting Assistant Attorney General; of counsel were *Jane K. Taylor*, Office of General Counsel, United States Department of Energy, Washington, DC, *Marian E. Sullivan*, Senior Trial Counsel, and *Luke A. Pazicky*, Trial Attorney, United States Department of Justice, Civil Division.

_____

**OPINION**

_____

**DAMICH**, Judge:

In this spent nuclear fuel case, Defendant has moved the Court to reconsider its decision reinstating its post-trial award to Plaintiff of the full amount of mitigation damages that Dairyland has sought for costs incurred relating to Private Fuel Storage, LLC ("PFS"). *Dairyland Power Cooperative v. United States*, No. 04-106 C, 2012 WL 1571012 (Fed. Cl. Apr. 27, 2012) ("*Dairyland III*").

This Court's reinstatement of the $11,999,125 in damages awarded to Plaintiff for PFS was made pursuant to remand from the United States Court of Appeals for the Federal Circuit in order to examine more closely whether there is any basis to offset Plaintiff's damages to account for profit-oriented speculation. *Dairyland Power Cooperative v. United States*, 645 F.3d 1363,

1376 (Fed. Cir. 2011) ("*Dairyland II*"). More specifically, in light of the Government's argument that "the size of Dairyland's investment in PFS far outstrips Dairyland's actual need for off-site interim storage," *id*., the Federal Circuit directed this Court on remand to apply a more "detailed inquiry to the causation analysis." *Id*.

For the reasons stated below, the Court denies Defendant's motion for reconsideration.

I.     Standards for Reconsideration

Defendant has moved for reconsideration pursuant to Rule 59 of the Rules of the Court of Federal Claims ("RCFC"). Under RCFC 59(e), the Court may alter or amend a judgment. Although the standard for reconsideration of a judgment has been described as somewhat more rigorous than that for reconsideration of an interlocutory order, *see Wolfchild v. United States*, 68 Fed. Cl. 779, 784 (2005), the decision whether to grant reconsideration lies largely within the discretion of the trial court. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

Reconsideration is not to be construed as an opportunity to relitigate issues already decided. *Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812, 814 (2000). Rather, the moving party must demonstrate either an intervening change in controlling law, previously unavailable evidence, or a manifest error of law or mistake of fact. *Entergy Nuclear FitzPatrick, LLC v. United States*, 101 Fed. Cl. 464, 468 (2011).

Defendant argues here that the Court has erred as a matter of law in two respects, improperly shifting the burden to the Government to prove how much should be offset to account for speculation and failing to conduct the detailed inquiry directed by the Federal Circuit.

II.    Discussion

A. The Federal Circuit Decision on Appeal

The context of the Federal Circuit's remand was the argument raised by the Government that the size of Dairyland's investment in PFS was demonstrably greater than its "actual need for off-site interim storage" and that therefore the extent of the overinvestment was not caused by the Government's breach. *Dairyland III* at 1375, 1376. Under the heading, "The Court of Federal Claims Was Required to Award the Costs of Dairyland's PFS Investment Only to the Extent Those Costs Were Taken for Mitigation," the Federal Circuit recognized that the reasonableness and foreseeability of Dairyland's quest for interim off-site storage were not at issue. "The government does not contend that it was unreasonable or unforeseeable that Dairyland would seek interim off-site storage for its SNF." *Id*. at 1374.

Instead, the appellate court referred to the issue as whether to award "the entire cost" or "full cost" of Dairyland's participation in PFS. *Id*. Its discussion characterized the Government's two arguments on appeal as concerning "the size and the specific manner of that participation." *Id*.

First, the Federal Circuit disposed of the Government's objection to any Dairyland recovery for PFS damages incurred by Genoa Fuel Tech ("GFT") as a conduit for Dairyland's investment in PFS. "We see no problem with the trial court's method of computing Dairyland's damages by looking at the investment made by GFT on Dairyland's behalf." *Id*. at 1375. Thus the "specific manner" issue raised by Defendant on appeal proved no impediment to Dairyland's recovery of mitigation damages for PFS costs.

That left the "size" issue. The Federal Circuit recited the details of the Government's argument regarding the excessive number of storage casks that Dairyland purportedly purchased according to its percentage investment in the PFS venture. "The government points out that this amount of storage dramatically exceeds Dairyland's storage requirements." *Id*. at 1376. "From this, the government argues that the investment in PFS is not recoverable or, if it were, the trial court should have either performed an accounting of the value of Dairyland's PFS stake or ordered disgorgement of the shares to avoid unjust enrichment." *Id*.

The Federal Circuit further explained,

> The government having raised the specter of a bounty accruing to Dairyland from its PFS investment, Dairyland had the burden to prove how much, if any, of its PFS investment was speculative as opposed to mitigation-oriented. The government, of course, was entitled to contest that proof, and the trial court to determine which party the evidence best favored.

*Id*.

Thus, the Federal Circuit remanded the PFS issue to this Court "for further development" of a more "detailed inquiry to the causation analysis." *Id*.

B.  This Court's Decision on Remand

On remand, this Court reviewed Dairyland's proof of causation. Dairyland presented persuasive evidence of its interest, in light of the Government's breach of the Standard Contract, in minimizing its SNF wet pool maintenance costs and furthering its ability to decommission its LaCrosse Boiling Water Reactor ("LACBWR"). Because of perceived geographical limitations on its site and its estimate of the prohibitive cost of building its own dry storage facility, it determined that participation in the collaborative PFS venture was its most effective mitigation solution for off-site, dry storage of its SNF. The Court further noted that Dairyland "metered" its investment in PFS in accordance with the actions of other members. In comparison with the cost of going it alone on a dry storage facility, "the Court finds that Dairyland's approximately $12 million investment in PFS to get the collaborative facility up and running was objectively reasonable." *Dairyland III* at *5. This Court also carefully reviewed the cask storage space issue and determined that Dairyland's investment in PFS was not equivalent to the purchase of a specific amount of cask storage spaces and not excessive compared to its need to pursue off-site dry storage.

Having reviewed Dairyland's proof of causation and having examined the Government's arguments in rebuttal, this Court determined that the costs that Dairyland incurred pursuing off-site storage via PFS through 2005 were caused by the Government's breach and necessarily mitigatory, rather than speculation-oriented. "It was necessary for Dairyland to spend the amount that it did in the manner that it did. Dairyland could not, as the government suggests, simply have been a customer of PFS. In the 1990s, there was no PFS of which to be a customer." *Id*. at *6 (internal citation omitted).

This Court also found that it was reasonable for Dairyland to have kept its PFS option open, "under the circumstances exigent in 2005," when Dairyland, based on an updated review of its site considerations, in 2005 committed itself to the pursuit of on-site dry storage. *Id*.

C.  Defendant's Assertions of Error

Defendant argues that this Court impermissibly shifted the burden of proof to Defendant when it discounted the Government's arguments in rebuttal of Plaintiff's proof of causation. "[I]t is clear . . . that the Court assigned to the Government the burden of persuasion and the responsibility for quantifying the amount to offset Dairyland's damages to the Government." Mot. at 3. In support, Defendant cites the Court's language that the government's arguments were "unpersuasive" and its reference to "the government's arguments for offsetting the damages." *Id*., citing *Dairyland III* at 6, 8.

The Court finds this complaint to be quibbling. It did not shift any burden of proof. This Court on remand found Dairyland's proof of causation convincing. But as the Federal Circuit explicitly set out, "The Government, of course, [is] entitled to contest that proof, and the trial court to determine which party the evidence best favored." *Dairyland II* at 1376. Regardless of whether the trial court used the term "unpersuasive," suffice it to say that this Court did not find that the evidence that the Government produced in contesting Plaintiff's proof to be the "best favored." In this respect, this Court appropriately heeded the sequence of burden of proof, contest of that proof, and outcome of the preponderance of the evidence that the Federal Circuit laid out.

Accordingly, this Court finds no legal error, much less clear error, based on burden of proof in its post-remand award of PFS damages in full to Plaintiff.

Defendant also finds error in this Court's alleged failure to conduct a sufficiently detailed inquiry into how much to reduce Dairyland's PFS damages claim to account for speculation. Because Dairyland would have received a proportional amount of any profits that PFS might have obtained, Defendant argues, this Court was required to "isolate the portion of those investments attributable solely to mitigation efforts" and reduce Dairyland's award accordingly. Mot. at 5. Here the Government seems to be arguing that the very possibility of profits by PFS inherently establishes that some portion of Dairyland's investment in PFS was non-mitigatory. However, just because the possibility of a return on its investment raised the "specter" of a bounty, it doesn't mean that this Court's inquiry had necessarily to lead to a reduction in Dairyland's award.

The Federal Circuit emphasized that it drew "no conclusion as to the ultimate outcome of the trial court's inquiry" because the trial court might find, as indeed it did on remand, that Dairyland's PFS investment, through the date of the damages period in this litigation, was entirely for mitigation.

This Court fairly considered Defendant's argument that "the possibility of returns renders at least some portion of Dairyland's investment potentially speculative." *See* Mot. at 7. The mere color of profitability, however, did not necessarily render Dairyland's mitigation efforts any less mitigatory.[1] This Court carefully reviewed the core issue of the size of Dairyland's PFS investment and determined, under the circumstances exigent through 2005 (that is, through the stage of getting the PFS venture off the ground), that Dairyland's PFS participation was both tied to its need for off-site storage, reasonable, and caused by the Government's breach. The Federal Circuit directed this Court to inquire "if any" of Dairyland's PFS investment was speculative. This Court found to the contrary.

Defendant also takes issue with this Court's award of Dairyland's PFS investments through 2005 while it also pursued on-site dry storage. This Court noted Dairyland's testimony that it only resumed serious consideration of on-site storage in 2005, the last year of its PFS expenditures (under the damages period encompassed in this claim). The Court found it reasonable that Dairyland would "keep its PFS option open at least while it pursued the viability of on-site dry storage." *Dairyland III* at *6. On the reasonableness of mitigation damages, moreover, the breaching party bears the burden of proof. *First Heights Bank, FSB v. United States*, 422 F.3d 1311, 1317 (Fed. Cir. 2005); *Dairyland Power Cooperative v. United States*, 90 Fed. Cl. 615, 624-25 (2009) ("*Dairyland I*").

Finally, Defendant complains that this Court – in order to avoid unjust enrichment – was obliged to determine the residual value of Dairyland's retained equity in PFS and to reduce damages accordingly. In other words, it would be unjust enrichment for Dairyland to be awarded damages for all of its PFS mitigation expenses but nevertheless to be allowed to retain its equity interest in a potentially profitable investment. But reducing damages for this reason is an issue distinct from causation or mitigation and is premature, as this Court noted in *Dairyland I*. *Dairyland I* at 651. This Court found on remand that "the inquiry into the remaining value, if any, of Dairyland's equity is distinct from the inquiry into whether any portion of Dairyland's PFS investment was non-mitigatory speculation." *Dairyland III* at *8. Being distinct from causation or mitigation, it was not an issue directed by the Federal Circuit to be addressed on remand.

The Government mistakenly argues that, because the Federal Circuit cited to page 651 of the trial opinion in *Dairyland I*, that court "specifically disagreed with the [trial] Court's initial determination that the evaluation of residual value or unjust enrichment was premature." Mot. at 9. The Government is mistaken in its reading of the Federal Circuit reference. Its reference,

---

[1] *See*, e.g., *Pac. Gas & Elec. Co., Inc. v. United States*, 668 F.3d 1346, 1352 (Fed. Cir. 2012), wherein PFS mitigation damages were affirmed without incorporating any offset respecting the potential profitability in that utility's investment in the same venture.

-6-

rather, was in the context of this Court's *causation* analysis in its trial decision and specifically to the part of page 651 under the heading, "3. The Court's Conclusion regarding PFS."

As Plaintiff notes, this Court's opinion on remand "contemplates that, if PFS were to come to fruition, the value of PFS to Dairyland can be revisited in the context of a subsequent Dairyland claim for damages." Plaintiff's Opp'n to Recons. at 8.

III.     Conclusion

The Court finds no basis for reconsideration of its decision on remand and Defendant's motion is therefore denied.

s/ Edward J. Damich  
EDWARD J. DAMICH  
Judge